IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JANE DOE,                               )

                      )

        Plaintiff,           )

                      )

v.                                  )      Civil No. 1:19-cv-00917-RDA-TCB

                      )

FAIRFAX COUNTY SCHOOL BOARD,   )

et al.,                         )

                      )

        Defendants.     )

# BRIEF IN SUPPORT OF
# <u>FAIRFAX COUNTY SCHOOL BOARD'S MOTION TO DISMISS</u>

Stuart A. Raphael (VSB No. 30380)
Ryan M. Bates (VSB No. 74661)
Perie Reiko Koyama (*pro hac vice* pending)
Kelly R. Oeltjenbruns (*pro hac vice* pending)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
sraphael@HuntonAK.com
rbates@HuntonAK.com

*Counsel for Defendant Fairfax County
School Board*

November 15, 2019

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

STANDARDS OF REVIEW ............................................................................................ 4

ARGUMENT ................................................................................................................... 5

I. The complaint should be dismissed because Plaintiff did not obtain leave to proceed pseudonymously and her claims are now untimely. ...............................5

II. The complaint fails to state a claim for punitive damages against the School Board. ...........................................................................................................................7

III. Count II fails to state a § 1983 claim against the School Board. .....................................11

    A. *Respondeat superior* liability is not recognized under § 1983. .............................11

    B. The Due Process Clause of the Fourteenth Amendment imposes no duty on States to protect public school students from the tortious conduct of classmates. ...........................................................................................................12

IV. The claim for injunctive relief should be dismissed as moot...........................................20

V. The School Board should be dismissed as a defendant to the remaining counts...............21

CONCLUSION................................................................................................................. 21

CERTIFICATE OF SERVICE ...................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................... 2, 12

*B.M.H. v. Sch. Bd. of City of Chesapeake,*
    833 F. Supp. 560 (E.D. Va. 1993) ................................................... 18

*Barnes v. Gorman,*
    536 U.S. 181 (2002)....................................................................... 9, 10

*Baynard v. Malone,*
    268 F.3d 228 (4th Cir. 2001) ........................................................... 9

*Bd. of Sch. Comm'rs of Indianapolis v. Jacobs,*
    420 U.S. 128 (1975).......................................................................... 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................... 4, 12

*Cannon v. Univ. of Chicago,*
    441 U.S. 677 (1979)....................................................................... 9, 10

*Capers v. Nat'l RR. Passenger Corp.,*
    673 F. App'x 591 (8th Cir. 2016) ............................................... 5, 6, 7

*Citizens for a Strong Ohio v. Marsh,*
    123 F. App'x 630 (6th Cir. 2005) ..................................................... 5

*City of Newport v. Fact Concerts, Inc.,*
    453 U.S. 247 (1981).......................................................................... 8

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988).......................................................................... 12

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992).......................................................................... 12

*Company Doe v. Public Citizen,*
    749 F.3d 246 (4th Cir. 2014) ........................................................... 5

*Constantine v. Rectors & Visitors of George Mason Univ.,*
    411 F.3d 474 (4th Cir. 2005) ........................................................... 20

*Corr v. Metro. Wash. Airports Auth.,*
    800 F. Supp. 2d 743 (E.D. Va. 2011),
    *aff'd,* 740 F.3d 295 (4th Cir. 2014)................................................ 4

*D.R. v. Middle Bucks Area Vocational Technical Sch.*,
  972 F.2d 1364 (3d Cir. 1992) (en banc) ..................................................... 18, 19

*Davis v. Carter*,
  555 F.3d 979 (11th Cir. 2009) ..................................................................... 18

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999) ........................................................................... 9, 10, 17

*DeShaney v. Winnebago County Dep't of Soc. Servs.*,
  489 U.S. 189 (1989) ............................................................................... passim

*Doe v. Barrow Cty.*,
  219 F.R.D. 189 (N.D. Ga. 2003) .................................................................... 6

*Doe v. Bd. of Educ. of Prince George's Cty.*,
  605 F. App'x 159 (4th Cir. 2015) .................................................................. 9

*Doe v. City of Simi Valley*,
  No. CV 12-8377 PA (VBKX), 2012 WL 12507598 (C.D. Cal. Oct. 29, 2012) ............... 6

*Doe v. Claiborne Cty.*,
  103 F.3d 495 (6th Cir. 1996) ..................................................................... 18

*Doe v. Covington Cty. Sch. Dist.*,
  675 F.3d 849 (5th Cir. 2012) (en banc) ...................................................... 19

*Doe v. Hillsboro Indep. Sch. Dist.*,
  113 F.3d 1412 (5th Cir. 1997) (en banc) .................................................... 18

*Doe v. McDonald's Rests. of N.C., Inc.*,
  No. 3:15-cv-00037, 2015 WL 4389528 (W.D.N.C. July 17, 2015) ........................ 6

*Doe v. N. Orange Cty. Cmty. Coll. Dist.*, No. SACV 17-01776,
  2018 WL 6137623 (C.D. Cal. Feb. 2, 2018) .................................................. 6

*Doe v. Rosa*,
  795 F.3d 429 (4th Cir. 2015) ..................................................................... 16

*Dorothy J. v. Little Rock Sch. Dist.*,
  7 F.3d 729 (8th Cir. 1993) ...................................................................... 18, 19

*Fitzgerald v. Barnstable Sch. Comm.*,
  555 U.S. 246 (2009) .................................................................................... 9

*Franklin v. Gwinnett Cty. Pub. Sch.*,
  503 U.S. 60 (1992) .................................................................................. 9, 10

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ................................................................................ 9, 10

*Graham v. City of Manassas Sch. Bd.*,
    390 F. Supp. 3d 702 (E.D. Va. 2019) .......................................................... 6, 7

*Herrera v. Finan*,
    709 F. App'x 741 (4th Cir. 2017) ................................................................. 20

*J.O. v. Alton Cmty. Unit Sch. Dist. 11*,
    909 F.2d 267 (7th Cir. 1990) ......................................................................... 18

*J.S. ex rel. Simpson v. Thorsen*,
    766 F. Supp. 2d 695 (E.D. Va. 2011) .......................................................... 17

*James v. Jacobson*,
    6 F.3d 233 (4th Cir. 1993) ............................................................................... 5

*Lee v. Pine Bluff Sch. Dist.*,
    472 F.3d 1026 (8th Cir. 2007) ...................................................................... 19

*Maldonado v. Josey*,
    975 F.2d 727 (10th Cir. 1992) ...................................................................... 18

*Medtronic, Inc. v. Lee*,
    151 F. Supp. 3d 665 (E.D. Va. 2016) ............................................................ 4

*Mellen v. Bunting*,
    327 F.3d 355 (4th Cir. 2003) ....................................................................... 20

*Mercer v. Duke Univ.*,
    50 F. App'x 643 (4th Cir. 2002) .................................................................. 10

*Monell v. N.Y.C. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ............................................................................... 11, 12

*Morgan v. Town of Lexington*,
    823 F.3d 737 (1st Cir. 2016) ........................................................................ 18

*Morrow v. Balaski*,
    719 F.3d 160 (3d Cir. 2013) (en banc) ......................................................... 18

*Munive v. Fairfax Cty. Sch. Bd.*,
    No. 1:18-cv-1566, 2019 WL 2374869 (E.D. Va. June 5, 2019) ..................... 8

*Myers v. Loudoun Cty. Sch. Bd.*,
    500 F. Supp. 2d 539 (E.D. Va. 2007) ............................................................ 8

*Nat'l Commodity & Barter Ass'n v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989) ..................................................................... 5

*Owens v. Balt. City State's Attorneys Office*,
    767 F.3d 379 (4th Cir. 2014) ......................................................................... 7

*Patel v. Kent Sch. Dist.*,
648 F.3d 965 (9th Cir. 2011) ............................................................ 18, 19

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ............................................................................ 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) ................................................................................ 10

*Philips v. Pitt Cty. Mem'l Hosp.*,
572 F.3d 176 (4th Cir. 2009) ............................................................... 4

*Pinder v. Johnson*,
4 F.3d 1169 (4th Cir. 1995) (en banc) ...................................... 15, 16, 17

*Plaintiff Doctor v. Hosp. Serv. Dist. #3*,
No. 18-7945, 2019 WL 351492 (E.D. La. Jan. 29, 2019) .................... 6

*Riddick v. Sch. Bd. of Portsmouth*,
238 F.3d 518 (4th Cir. 2000) ............................................................. 11

*Shores v. Stafford Cty. Sch. Bd.*,
No. 04-1325, 2005 WL 2071730 (E.D. Va. Aug. 26, 2005) ............... 18

*Smith v. Sch. Bd. of City of Chesapeake*,
No. 2:18cv589, 2019 WL 2656204 (E.D. Va. June 27, 2019) ........... 17

*Stevens v. Umsted*,
131 F.3d 697 (7th Cir. 1997) ............................................................. 19

*Stevenson v. Martin Cty. Bd. of Educ.*,
3 F. App'x 25 (4th Cir. 2001) .................................... 16, 17, 18, 19

*Stiles v. Grainger Cty.*,
819 F.3d 834 (6th Cir. 2016) ............................................................. 19

*Turner v. Thomas*,
930 F.3d 640 (4th Cir. 2019),
*petition for cert. filed*, No. 19-529 (U.S. Oct. 22, 2019) .................... 16

*United States ex rel. Garzione v. PAE Gov't Servs., Inc.*,
164 F. Supp. 3d 806 (E.D. Va.),
*aff'd*, 670 F. App'x 126 (4th Cir. 2016) ............................................. 4

*W.N.J. v. Yocom*,
257 F.3d 1171 (10th Cir. 2001) ........................................................... 5

*Waybright v. Frederick Cty.*,
528 F.3d 199 (4th Cir. 2008) ...................................................... 13, 15

*Williams v. Spencer*,
622 F.2d 1200 (4th Cir. 1980) ........................................................... 20

*Wilmink v. Kanawha Cty. Bd. of Educ.*,
    214 F. App'x 294 (4th Cir. 2007) ...................................................... 7

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ........................................................................ 7

*Wilson v. Isle of Wight Cty.*,
    939 F. Supp. 2d 568 (E.D. Va. 2013) .......................................... 17

## Statutes

§ 202 of the Americans with Disabilities Act,
    104 Stat. 337, 42 U.S.C. § 12132 ................................................. 9

§ 504 of the Rehabilitation Act,
    87 Stat. 394, 29 U.S.C. § 794(a) ............................................. 9, 10

42 U.S.C. § 1983 ................................................................................... passim

Title IX of the Education Amendments of 1972,
    86 Stat. 373, 20 U.S.C. §§ 1681–1688 ................................... passim

    20 U.S.C. § 1681(a) .................................................................... 8

Title VI of the Civil Rights Act of 1964,
    42 U.S.C. § 2000d et seq. .......................................................... 9, 10

Va. Code Ann. § 8.01-229(A)(2)(a) (2015) ....................................... 7

Va. Code Ann. § 8.01-243(A) (2015) .................................................. 7

## Constitutional Provisions

U.S. Const. amend. XIV, § 1, cl. 3 ................................................... 13

## Rules

Fed. R. Civ. P. 10(a) ................................................................... 5, 7, 21

Fed. R. Civ. P. 12(b)(1) ...................................................................... 4

Fed. R. Civ. P. 12(b)(6) ................................................................... 2, 4

Fed. R. Civ. P. 17(a) ............................................................................ 7

## Treatises

28 Fed. Proc., L. Ed. § 65:48 (2019) ................................................ 5

## <u>INTRODUCTION</u>

The adult plaintiff in this case claims that she was sexually assaulted in 2011 and 2012 by numerous classmates when she was a seventh-grade student at Rachel Carson Middle School in Fairfax County, Virginia. She seeks compensatory damages, punitive damages, and injunctive relief against the Fairfax County School Board under Title IX of the Education Amendments of 1972 (Count I), and under 42 U.S.C. § 1983 (Count II), for alleged deliberate indifference in response to those alleged assaults. Plaintiff has also sued nine teachers, counselors, and school administrators who allegedly failed to prevent the assaults, asserting claims under § 1983 (Count V) and under Virginia law (Count VI). She has also sued two former middle-school classmates for assault and battery under Virginia law (Counts III and IV). She claims that 15 other students, male and female, whose names she does not know, also participated in the alleged rapes; she expects to add them as defendants once identified.

The two named classmates have answered, denying Plaintiff's allegations. The School Board also denies that it had any knowledge of any rapes or assaults of the Plaintiff on school grounds. But for purposes of this motion to dismiss, the Court must assume any properly pleaded factual allegations to be true.

Even so, the complaint should be dismissed. The Plaintiff's failure to seek permission to proceed pseudonymously is a jurisdictional defect that requires dismissal. On the merits, Plaintiff has failed to state a § 1983 claim because she has no underlying substantive-due-process claim against the individual school defendants and, in any case, may not recover on a *respondeat superior* theory against the School Board. Plaintiff has also failed to state a claim against the School Board for punitive damages, which are not available under either § 1983 or Title IX. And Plaintiff's claim for injunctive relief is moot in light of her graduation from secondary school.

1

**STATEMENT OF FACTS**

Plaintiff's allegations are extreme and shocking. But in considering a motion to dismiss under Rule 12(b)(6), the Court must assume as true all well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court, however, is not required to credit plaintiff's mere "legal conclusions." *Id.*

Plaintiff claims that, when she was a seventh-grade student at Rachel Carson Middle School, one of her classmates, Christian Kornegay, "forcibly raped and tortured [her] on multiple occasions," Compl. ¶ 235, including raping her "nearly every day after school" from November 9 to November 21, 2011, *id*. ¶ 110. She claims that he "penetrated her vagina and anus with sex toys" and also penetrated her vagina "with his foot or his hand." *Id*. ¶ 114. She claims that another classmate, Jenna Ofano, participated in at least one of the rapes, digitally penetrating her and forcing her to perform oral sex on Kornegay. *Id*. ¶¶ 98–101. Plaintiff alleges that, "[b]eginning in December 2011 and continuing through February 2012, Kornegay and other students raped Jane Doe on RCMS campus *during* and *after* school hours." *Id*. ¶ 151 (emphasis in original). She claims that 15 other male and female "unknown students"—sued here as "Mike and Mary Roes 1–15"—participated in the alleged "physical and sexual assaults, rapes, and/or gang rapes" of Plaintiff. *Id*. ¶ 56.

Although the Complaint contains far less detail about *what* Plaintiff allegedly reported to Fairfax County Public Schools (FCPS), she asserts generally that she "and her parents reported the sexual assaults and sexual harassment to FCPS administrators and employees." *Id*. ¶ 207. Plaintiff sued nine teachers and administrators as defendants. She alleges that "FCPS administrators knew Jane Doe was sexually and physically assaulted, sexually harassed, bullied, and extorted by other FCPS students based on multiple reports from Jane Doe and other students and based on personal observations by FCPS employees." *Id*. ¶ 208. Plaintiff complains that

school administrators did not take her alleged complaints of harassment seriously. Instead, she says, they "labeled" her "as an 'emotionally disturbed' child." *Id.* ¶ 188.

The Complaint contains six counts. Although each count has a title identifying the particular defendant or defendants against whom relief is sought, each also concludes with a generic prayer for relief requesting judgment "against *all defendants*, individually and/or jointly and severally." *Id.* at 29, 32, 33, 34, 37, 39 (emphasis added).

According to their title and allegations, only Counts I and II are directed against the School Board. Plaintiff claims in Count I that the School Board violated Title IX by acting with "deliberate indifference" in response to Plaintiff's reports of sexual assault. *Id.* ¶ 213. She claims in Count II that the School Board violated her constitutional rights, in violation of § 1983, based on the conduct of the teachers and administrators. *Id.* ¶¶ 220–21. And although Plaintiff is now an adult and is no longer an FCPS student, *see id.* ¶ 1 (identifying her as a "former" student), she seeks unspecified "injunctive relief to correct government procedure to prevent future injury," *id.*, Prayer for Relief, ¶ e.

Counts III and IV seek damages against Kornegay and Ofano for assault and battery under Virginia law. Both defendants have answered, denying all substantive allegations against them. ECF Nos. 9, 11.

Count V seeks to impose liability on the individual school defendants under § 1983 on the ground that they failed to "engage in efforts that were reasonably calculated to end the peer-on-peer harassment of plaintiff." Compl. ¶ 258. Count VI seeks damages against them on a theory of gross negligence under Virginia law. *Id.* ¶¶ 265–69. The individual school defendants are represented by separate legal counsel who, the School Board understands, will be moving to dismiss Counts V and VI.

**STANDARDS OF REVIEW**

With regard to the School Board's motion under Rule 12(b)(1)—seeking to dismiss the complaint for failure to seek leave to proceed pseudonymously and to dismiss Plaintiff's injunctive relief claim as moot—the motion can be based either on the allegations in the complaint (accepted as true for purposes of testing jurisdiction), or on evidence outside of the pleadings. *Medtronic, Inc. v. Lee*, 151 F. Supp. 3d 665, 671 (E.D. Va. 2016). Either way, however, the plaintiff "bears the burden of proof for establishing that federal subject matter jurisdiction is proper." *Id.*

"To survive a motion to dismiss [under Federal Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading "must 'possess enough heft'—that is, 'factual matter,'" to make the plaintiff's claims "plausible," not merely "conceivable." *United States ex rel. Garzione v. PAE Gov't Servs., Inc.*, 164 F. Supp. 3d 806, 811 (E.D. Va.) (Trenga, J.) (citations and quotations omitted), *aff'd*, 670 F. App'x 126 (4th Cir. 2016). While properly pleaded facts must be construed "in the light most favorable to the plaintiff," *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009), the Court "need not accept legal conclusions drawn from the facts nor accept as true unwarranted inferences, unreasonable conclusions or arguments." *Corr v. Metro. Wash. Airports Auth.*, 800 F. Supp. 2d 743, 745 n.2 (E.D. Va. 2011) (Trenga, J.) (citing *Philips*, 572 F.3d at 180), *aff'd*, 740 F.3d 295 (4th Cir. 2014).

## ARGUMENT

**I.     The complaint should be dismissed because Plaintiff did not obtain leave to proceed pseudonymously and her claims are now untimely.**

Federal Rule 10(a) requires that the "title of the complaint *must name all the parties*. . . ." Fed. R. Civ. P. 10(a) (emphasis added). As the Fourth Circuit has put it, the "Federal Rules of Civil Procedure *require* that the identities of the parties to a case be disclosed." *Company Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (emphasis added). In "exceptional circumstances," where "compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings," a district court may allow a plaintiff to proceed pseudonymously. *Id*. But the plaintiff must affirmatively move for such a "rare dispensation." *Id*. (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)).

Because Plaintiff did not seek leave to proceed anonymously, her "Jane Doe" complaint violates Rule 10(a) and should be dismissed. "Where no permission is granted, the federal courts lack jurisdiction over the unnamed parties as a case has not been commenced with respect to them." *See* 28 Fed. Proc., L. Ed. § 65:48 (2019). Three federal circuits—the Sixth, Eighth, and Tenth—hold that the failure to seek leave to proceed pseudonymously upon filing the initial complaint is a fatal jurisdictional defect. *See W.N.J. v. Yocom*, 257 F.3d 1171, 1172–73 (10th Cir. 2001); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636–37 (6th Cir. 2005); *Capers v. Nat'l RR. Passenger Corp.*, 673 F. App'x 591, 594–95 (8th Cir. 2016); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) ("Absent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them."). To be sure, a number of district courts in other circuits have disagreed, holding that a district

judge has the power to consider a belated motion to proceed anonymously.[1]  But this Court

should follow the weightier authority of the appellate courts in the Sixth, Eighth, and Tenth

Circuits, the only circuit courts to have addressed the question.  The complaint should therefore

be dismissed.

If Plaintiff chooses to file a new lawsuit (and even if she is belatedly granted leave here

to proceed anonymously), her claims will be time-barred.  *See Capers*, 673 F. App'x at 593–96

(denying relation-back and holding complaint to be time-barred when the plaintiff failed to seek

leave to proceed pseudonymously).  The wrongdoing alleged in the complaint occurred in 2011

and 2012, during Plaintiff's seventh-grade year.  *E.g.*, Compl. at 28–29.  Plaintiff was 12-years

old at that time.  *Id.* ¶ 2.  The statute of limitations for her Title IX and § 1983 claims against the

School Board is two years, and the limitations period accrued in July 2017, when she turned 18.

*See Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 709–10 (E.D. Va. 2019)

---

[1] *See, e.g.*, *Plaintiff Doctor v. Hosp. Serv. Dist. #3*, No. 18-7945, 2019 WL 351492, at *2–3
(E.D. La. Jan. 29, 2019) (holding that court had jurisdiction to consider belated motion to
proceed anonymously but noting a "split as to whether proceeding anonymously without leave of
court deprives the Court of jurisdiction.  Courts in several circuits take the view that a federal
court lacks jurisdiction over such unnamed parties, and that jurisdiction cannot be retroactively
granted by a *nunc pro tunc* order that would grant leave to use a fictitious name.") (collecting
cases); *Doe v. N. Orange Cty. Cmty. Coll. Dist.*, No. SACV 17-01776, 2018 WL 6137623, at *4
(C.D. Cal. Feb. 2, 2018) ("[D]istrict courts within the Ninth Circuit have concluded that
dismissal for lack of jurisdiction is not warranted when the plaintiff files a motion to proceed
under a pseudonym, even if that motion is filed after the defendant filed a motion to dismiss.'")
(quoting *Doe v. City of Simi Valley*, No. CV 12-8377 PA (VBKX), 2012 WL 12507598, at *2
(C.D. Cal. Oct. 29, 2012)); *Doe v. Barrow Cty.*, 219 F.R.D. 189, 191–92 (N.D. Ga. 2003)
(holding that district court had jurisdiction to consider motion to proceed pseudonymously that
was filed after the complaint); *cf. Doe v. McDonald's Rests. of N.C., Inc.*, No. 3:15-cv-00037,
2015 WL 4389528, at *5 (W.D.N.C. July 17, 2015) (holding that court had jurisdiction to
consider motion to proceed pseudonymously when "the Plaintiff filed her motion to proceed
anonymously *contemporaneous with her Complaint*") (emphasis added).

(Brinkema, J.).[2]  Plaintiff filed this action on July 12, 2019, only a few days before her 20th birthday, when the statute of limitations expired.

In *Capers*, the Eighth Circuit held that even though the district court granted a late-filed motion to proceed anonymously, the jurisdictional defect was not cured and the order did not relate back to the date of the original filing, rendering the claim in that case time barred.  *Capers*, 673 F. App'x at 594–95.  Here as in *Capers*, "there would be no valid action to which [Plaintiff's] amended complaint could relate back.  Under Federal Rule 10(a), [Plaintiff] failed to initiate a valid action at least until she sought to amend her complaint, by which time the statute of limitations had run, as she was not properly before the court until then, if at all."  *Id.*  Thus, there was no relation-back for statute-of-limitations purposes, either under Federal Rule 15(c) or under the real-party-in-interest provisions of Rule 17(a).  *Id*. at 595–96.

So whether the complaint is dismissed and Plaintiff refiles it, or whether she is granted leave to proceed anonymously here, the claims against the School Board are now time-barred.

## II.    The complaint fails to state a claim for punitive damages against the School Board.

If the Court reaches the merits of the complaint against the School Board, it should start by striking the punitive damages claims in Counts I and II.  Compl. at 29, 32.  As a local governmental entity, the School Board is not liable for punitive damages under either Title IX or § 1983.

---

[2] The statute of limitations for a § 1983 claim is borrowed from the State statute of limitations for personal injury claims, *Wilson v. Garcia*, 471 U.S. 261, 271–76 (1985), which in Virginia is two years, Va. Code Ann. § 8.01-243(A) (2015).  Every circuit to consider the question has held that the same limitations period applies to Title IX claims.  *See Graham*, 390 F. Supp. 3d at 709 (following *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per curiam)).  Both statutory claims accrue "'when the plaintiff knows or has reason to know of his injury,'" *id*. at 710 (quoting *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014)), although the limitations period is "tolled for any period before that plaintiff turned 18," *id.* (citing Va. Code Ann. § 8.01-229(A)(2)(a) (2015)).

For nearly forty years, the Supreme Court has made clear that punitive damages are not available against local governmental entities under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The Court reasoned that "municipal immunity from punitive damages was well established at common law by 1871." *Id*. at 263. It found nothing in the history of § 1983 to suggest that Congress intended to abrogate that immunity. *Id*. at 264–66. The Court also found that no considerations of public policy warranted a different conclusion. *Id*. at 266–71.

This Court has repeatedly dismissed punitive-damage claims against Virginia school boards on the authority of *City of Newport*. *See, e.g.*, *Munive v. Fairfax Cty. Sch. Bd.*, No. 1:18-cv-1566, 2019 WL 2374869, at *7 (E.D. Va. June 5, 2019) (Brinkema, J.) ("Plaintiff's claim against the FCSB for punitive damages must be dismissed with prejudice because the FCSB is immune from punitive damages in § 1983 claims."). As Judge Cacheris put it, "school boards are exempt from punitive damages" under § 1983. *Myers v. Loudoun Cty. Sch. Bd.*, 500 F. Supp. 2d 539, 547 n.13 (E.D. Va. 2007).

Punitive damages are also not available under Title IX. Title IX provides that no person shall "on the basis of sex" be "excluded from . . . denied the benefits of . . . or . . . subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Congress expressly authorized an administrative enforcement mechanism in the statute. *Id*. § 1682. But the Supreme Court has also recognized an implied private right of action under Title IX, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709

(1979), which allows plaintiffs to recover compensatory damages from the funding recipient, *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 76 (1992).[3]

The only proper defendant in a Title IX action is the funding recipient itself, not the individual employees who have power to take corrective action on the funding recipient's behalf. "Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as *not* authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (emphasis added). Thus, a Title IX claim is "properly pursued against the [School] Board only." *Bd. of Educ. of Prince George's Cty.*, 605 F. App'x at 165 n.8.

Punitive damages, however, are *not* available to enforce private rights of action created under Spending Clause statutes like Title IX. *Barnes v. Gorman*, 536 U.S. 181, 186–90 (2002). *Barnes* addressed private rights of action under § 504 of the Rehabilitation Act and § 202 of the Americans with Disabilities Act. Section 504 is a Spending Clause statute, and the ADA expressly borrows its remedies from Title VI of the Civil Rights Act of 1964, another Spending Clause statute. *Id*. at 184–85. The Court offered various reasons why punitive damages are not

---

[3] School boards may be liable under Title IX to a victim of student-on-student sexual harassment "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). The "actual knowledge" requirement is demanding: school officials with the power to take corrective action "must actually be aware of the discrimination and fail to remedy it." *Baynard v. Malone*, 268 F.3d 228, 237 (4th Cir. 2001); *Doe v. Bd. of Educ. of Prince George's Cty.*, 605 F. App'x 159, 165 n.8 (4th Cir. 2015) (stating that "liability may be imputed to an educational entity (such as the Board) premised on the actual knowledge of a school official . . . who has 'authority to address the alleged discrimination and to institute corrective measures on the [educational entity's] behalf'") (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Moreover, a school board "may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis*, 526 U.S. at 644–45 (citation omitted).

available under Spending Clause statutes. First, if Congress is going to impose conditions on grant recipients, "it must do so unambiguously," *id*. at 186 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)), and Congress has *not* made it unambiguously clear that private plaintiffs may recover punitive damages for a grant recipient's violation of its program obligations. Second, recipients receiving federal funds are on notice that they can be liable *only* for "remedies traditionally available in suits for breach of contract," but "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract." *Id*. at 187. And third, it is doubtful that recipients would have elected to accept federal funding had they known that "accepting funds, implicitly consented to liability for punitive damages." *Id*. at 188.

Although Title IX was not specifically at issue in *Barnes*, there is no reason why punitive damages would be permitted under *that* Spending Clause statute but not other Spending Clause statutes like § 504 and Title VI. Indeed, the Court in *Barnes* explained that it "has interpreted Title IX consistently with Title VI." *Id*. at 185. The Court's opinion also cited various Title IX cases in support of its Spending Clause analysis. *Id*. at 185–86 (citing *Cannon*, 441 U.S. at 677; *Franklin*, 503 U.S. at 73; *Davis*, 526 U.S. at 640; *Gebser*, 524 U.S. at 274).

Following *Barnes*, the Fourth Circuit ruled in *Mercer v. Duke University* that punitive damages are not available under Title IX. 50 F. App'x 643, 644 (4th Cir. 2002). The Court said [i]t is well established that Title IX, upon which [plaintiff's] claim is based, is also modeled after Title VI and is interpreted and applied in the same manner as Title VI." *Id*. "Thus, the Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX." *Id*.

So too here.  The claim for punitive damages against the School Board should be dismissed with prejudice.

**III.    Count II fails to state a § 1983 claim against the School Board.**

The § 1983 claim against the School Board in Count II fails for two independent reasons.  First, Plaintiff admittedly relies on a theory of *respondeat superior* liability—*i.e.*, that the School Board is liable for alleged actions and inaction of its employees.  That argument fails because the Supreme Court has expressly held that municipalities cannot be liable under § 1983 based on a *respondeat superior* theory.  Second, under controlling Supreme Court precedent applied in the Fourth Circuit (and in every other circuit to address the question), school employees do not owe a *constitutional* duty to protect students from the tortious conduct of other students at school.  These defects are not curable and require that Count II be dismissed with prejudice.

**A.    *Respondeat superior* liability is not recognized under § 1983.**

Section 1983 does not permit liability to be imposed on local governmental entities like the School Board based on a *respondeat superior* theory.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000).  The Supreme Court held in *Monell* "that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  Instead, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id*. at 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered.").  The critical test is whether the entity "*itself* is the wrongdoer."  *Collins*

*v. City of Harker Heights*, 503 U.S. 115, 122 (1992) (emphasis added).  Where liability is premised on the actions of subordinates who do not have final policymaking authority for the municipality, the entity itself is liable only if it ratifies both the subordinate's decision as well as the unconstitutional "basis for it."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Plaintiff's § 1983 claim against the School Board in Count II is squarely barred by *Monell*'s prohibition against *respondeat superior* liability.  The Complaint readily admits its reliance on that theory: "Defendant FCSB is being sued under the theories of *responde[a]t superior* and *vicarious liability*."  Compl. ¶ 52.  That concession is fatal.

In fairness to Plaintiff, we note several stray allegations in Count II that might suggest something more than a *respondeat superior* theory, but those allegations likewise fail to state a § 1983 claim.  Plaintiff alleges that the School Board "approved, condoned, and/or ratified the actions of" the individual school defendants, and that the individual defendants' liability is therefore "imputed" to the School Board.  *Id.* ¶ 218.  Such "bare assertions," however, "amount to nothing more than a 'formulaic recitation of the elements,' of a constitutional discrimination claim . . . .  As such, the allegations are conclusory and not entitled to be assumed true."  *Iqbal*, 556 U.S. at 671 (quoting *Twombly*, 550 U.S. at 555).  Those allegations are insufficient to show that the School Board itself ratified a subordinate's unconstitutional action and the unconstitutional basis for it.

So whether premised on *respondeat superior* or express ratification, Count II is defective and must be dismissed.

**B.      The Due Process Clause of the Fourteenth Amendment imposes no duty on States to protect public school students from the tortious conduct of classmates.**

Count II is fatally defective for the additional reason that public school systems do not owe a *constitutional* duty to protect students from the tortious conduct of other students at

school.  As discussed above, a school board may be liable under *Title IX* for acting with deliberate indifference in response to known sexual harassment.  But a school board has no such duty under the United States Constitution.  So even if Plaintiff could plead that the School Board somehow ratified the individual school employees' alleged conduct in this case, it would not support a § 1983 claim.  In other words, the § 1983 claim against the individual defendants provides "the gateway" for municipal liability.  *Waybright v. Frederick Cty.*, 528 F.3d 199, 203 (4th Cir. 2008).  If the claims against the individual school employees fail, the claim against the School Board likewise fails.  *Id*. at 204, 208.

The seminal case here is *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), where the Court held that a social services department owed no constitutional duty to protect a minor from abuse inflicted by his father, even though the department was aware of the abuse and returned the minor to the abusive home.  *Id*. at 201–03. The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1, cl. 3.  As *DeShaney* explained, however, the Due Process Clause acts only "as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  *Id*. at 195.  "[I]ts language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."  *Id*.  The Due Process clause serves to "protect the people from the State, not to ensure that the State protected them from each other." *Id*. at 196.  As a result, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id*. at 197.

With that general rule in mind, the Court identified "limited circumstances," *id.* at 198, where the State assumes an affirmative constitutional duty to protect an individual from harm.

Such a duty arises "when the State takes a person into its custody and holds him there against his will." *Id*. at 199–200. Caring for prisoners in State custody or involuntarily committed mental patients are two examples. *Id*. at 198–99. The "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id*. at 200.

But *DeShaney* held that no such affirmative duty exists in the context of State social workers who fail to rescue children from abusive homes. *Id*. at 201. It did not matter that the State had previously removed the victim from the father's custody and returned him to the home, where the father beat him, inflicting permanent brain damage. The State "placed [the child] in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id*.

*DeShaney* acknowledged that the facts there were "undeniably tragic," *id*. at 191, and that "[j]udges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them," *id*. at 202–03. But the Court cautioned that it was addressing *constitutional* duties, not duties created by legislation or "under state tort law." *Id.* at 201. The claim was solely "based on the Due Process Clause of the Fourteenth Amendment, which . . . does not transform every tort committed by a state actor into a constitutional violation." *Id*. at 202. The Court said that if States want to impose liability on government officials in such situations, they are free to do so "by changing the tort law of the State in accordance with the regular lawmaking

process." *Id.* at 203. "But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment." *Id.*

The Fourth Circuit has consistently applied *DeShaney* in other non-custodial settings, including the public-school context, to reject a constitutional duty by State actors to protect individuals from harm inflicted by third parties. In *Pinder v. Johnson*, the Fourth Circuit held that a police officer had no clearly established constitutional duty to protect a mother and her family from the mother's violent former boyfriend; the ex-boyfriend set fire to her home, killing her three children. 54 F.3d 1169, 1175-76 (4th Cir. 1995) (en banc). It did not matter that the officer knew of the ex-boyfriend's violent propensities and assured the mother (incorrectly) that the ex-boyfriend would not be released from overnight detention. *Id.* at 1172, 1175–76. Writing for the *en banc* Court, Judge Wilkinson warned that the "recognition of a broad constitutional right to affirmative protection from the state would be the first step down the slippery slope of liability. Such a right potentially would be implicated in nearly every instance where a private actor inflicts injuries that the state could have prevented." *Id.* at 1178.

In *Waybright*, the Court held that a county fire department owed no constitutional duty to a trainee who died as a result of the trainer's negligence. 528 F.3d at 208. *Waybright* recognized that, when a plaintiff's due-process claim "overlaps" with "a state tort law" claim, as in that case and here, there is "a presumption against" the constitutional claim. *Id.* at 205–06. The Court also rejected the argument that the State itself had created the danger by establishing a fire department and requiring that its employees be trained. Apropos of this case, the Court reasoned that there was no limiting principle to curb the reach of such constitutional liability: "The practical consequences would be immense; by finding a state-created danger here, we might well

inject federal authority into *public school playground incidents,* football (or even ballet) practice sessions, and class field trips . . . ." *Id*. at 208 (emphasis added).

In *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015), the Court held that the president of the Citadel had no constitutional duty to protect a summer-camp student from being molested by a camp counselor, a former Citadel student, despite that the president allegedly covered up allegations of an earlier sexual assault committed by that counselor. *Id*. at 439–42. And just this year, in *Turner v. Thomas*, 930 F.3d 640 (4th Cir. 2019), *petition for cert. filed*, No. 19-529 (U.S. Oct. 22, 2019), the Court held that Charlottesville police had no constitutional duty to protect bystanders from violent protesters at the infamous Unite the Right rally. *Id*. at 646–47. The Court rejected the argument that the State itself had created the danger by controlling the security arrangements at the rally. The Court wrote that, "[f]ollowing *Pinder*'s narrow reading of the state-created danger doctrine, we have never issued a published opinion recognizing a successful state-created danger claim." *Id*. at 646.

The Fourth Circuit specifically applied *DeShaney* and *Pinder* to the public school setting in *Stevenson v. Martin County Board of Education*, 3 F. App'x 25 (4th Cir. 2001). *Stevenson* held that neither the school board nor school officials had a constitutional duty to protect a sixth-grade boy from physical abuse inflicted by his classmates, despite that the abuse was so severe that it caused him to withdraw from school. *Id*. at 27–28, 30–33. The Court observed that "[s]everal circuits have been faced with the issue of whether a school-student relationship is a special relationship triggering the protections of the Due Process Clause. They have held *uniformly* that *no special relationship* exists because the student is not in physical custody and, along with parental help, is able to care for his basic human needs." *Id*. at 30–31 (emphasis added). The Court added that, "[w]hen a student attends public school, his liberty is not

restrained to the extent contemplated in *DeShaney*. Attending school is not the equivalent of incarceration or institutionalization." *Id*. at 31. "Although the school officials . . . may have been irresponsible and ineffective in not heeding the warnings that [the victim] was helpless at the hands of bullies, they have not committed a constitutional violation." *Id*.

This Court has consistently followed *Stevenson* in holding that school boards and school officials owe no constitutional duty to protect students from harm suffered at the hands of non-State actors at school. *See Smith v. Sch. Bd. of City of Chesapeake*, No. 2:18cv589, 2019 WL 2656204, at *5–9 (E.D. Va. June 27, 2019) (Davis, J.) (following *DeShaney*, *Pinder*, and *Stevenson* in dismissing § 1983 claim by student injured in P.E. class while playing "Sharks & Minnows"); *Wilson v. Isle of Wight Cty.*, 939 F. Supp. 2d 568, 571 (E.D. Va. 2013) (Jackson, J.) (following *Stevenson* in dismissing § 1983 case alleging student-on-student harassment, noting that "several circuits, including the Fourth Circuit . . . , have uniformly held that a school-student relationship is not a "special relationship" that triggers the protections of the Due Process Clause"); *J.S. ex rel. Simpson v. Thorsen*, 766 F. Supp. 2d 695, 709 (E.D. Va. 2011) (Davis, J.) ("[S]ince no 'special relationship' exists in this context, the Defendants have not committed a substantive due process violation by failing to affirmatively act to protect J.S. from harm allegedly caused by mold under a special relationship theory."). Indeed, the recent decision in *Smith* shows that *Stevenson* continues to correctly state the law in the Fourth Circuit:

> Despite the fact that Virginia's school attendance laws impose some limit on a student's freedom to act on his own behalf, the Fourth Circuit, in an unpublished decision, has joined other circuits in finding that such a relationship between the school and the student does not create a special relationship sufficient to trigger the substantive protections of the Due Process Clause.

*Smith*, 2019 WL 2656204, at *5 (citing *Stevenson*, 3 F. App'x at 31).

What is more, this Court has followed *DeShaney*, both before and after *Stevenson*, in refusing to impose constitutional liability on school boards and school officials for failing to protect students against sexual assault or sexual harassment inflicted by fellow students. *See Shores v. Stafford Cty. Sch. Bd.*, No. 04-1325, 2005 WL 2071730, at *1–3 (E.D. Va. Aug. 26, 2005) (Lee, J.) (dismissing § 1983 claim against school board for permitting sexual harassment of ninth-grade student); *B.M.H. v. Sch. Bd. of City of Chesapeake,* 833 F. Supp. 560, 571 (E.D. Va. 1993) (Clarke, J.) (dismissing § 1983 claim for failing to properly respond to rape threats, stating that "[e]ven if public schools have some duty under state law to protect students, that is not enough to place the affirmative burdens of the Fourteenth Amendment Due Process Clause upon teachers, principals, and administrators to protect each child from possible harm by third parties.").

This Court is in good company. *Every* court of appeals to consider the question has agreed. The list of six circuits cited in *Stevenson*[4] has grown by three.[5] Some circuits have since revisited and reaffirmed their original rulings.[6] And although the factual contexts vary, many

---

[4] *See Stevenson*, 3 F. App'x at 30–31 (citing *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372 (3d Cir. 1992) (en banc); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); *Doe v. Claiborne Cty.*, 103 F.3d 495, 510 (6th Cir. 1996); *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993); *Maldonado v. Josey,* 975 F.2d 727, 731 (10th Cir. 1992)).

[5] *See Morgan v. Town of Lexington*, 823 F.3d 737, 742–44 (1st Cir. 2016) (dismissing § 1983 claim involving non-sexual bullying by classmates); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 973–76 (9th Cir. 2011) (dismissing § 1983 claim involving sexual misconduct by classmates); *Davis v. Carter*, 555 F.3d 979, 982 n.2 (11th Cir. 2009) ("Voluntary attendance at a school event does not create a custodial relationship with the school sufficient to give rise to a constitutional duty of protection. Even compulsory school attendance laws do not constitute a restraint on personal liberty sufficient to give rise to such an affirmative duty.") (citations omitted).

[6] *See Morrow v. Balaski*, 719 F.3d 160, 170 (3d Cir. 2013) (en banc) (stating that "every other Circuit Court of Appeals that has considered this issue in a precedential opinion has rejected the argument that a special relationship generally exists between public schools and their students,"

cases applying *DeShaney* in the public-school setting involved allegations of sexual assault by students or strangers as serious as the claims Plaintiff alleges here.[7]

In short, Plaintiff cannot viably allege that the individual school defendants have any *constitutional* liability for failing to protect her from sexual assault or harassment committed by her peers. So "it follows that the school board likewise cannot be held constitutionally liable." *Stevenson*, 3 F. App'x at 33; *see also Covington Cty.*, 675 F.3d at 869 ("[A]s we have found that Jane has not alleged an underlying constitutional violation (under either the special relationship theory or the purported state-created danger theory), there is no other potential basis for municipal liability.").

---

and "[w]e know of nothing that has occurred in the twenty years since we decided [*D.R.*] that would undermine this conclusion"); *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 857–58 (5th Cir. 2012) (en banc) ("We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors. Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody."); *Stiles v. Grainger Cty.*, 819 F.3d 834, 854 (6th Cir. 2016) ("[T]he Sixth Circuit has consistently rejected the existence of a special relationship between school officials and students based on compulsory attendance laws or the school's knowledge of a student's vulnerability."); *Stevens v. Umsted*, 131 F.3d 697, 703 (7th Cir. 1997) ("Following *DeShaney*, the federal appellate courts have generally agreed that public schools are not liable for injuries to one student caused by another."); *Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1031 (8th Cir. 2007) ("As with compulsory public school attendance in *Dorothy J.*, we cannot say that voluntary participation in an out-of-town extracurricular activity is analogous to confinement in a prison or mental institution, such that the Constitution imposes on state officials an affirmative duty to care for individuals who are participating in the event.").

[7] *E.g.*, *D.R.*, 972 F.2d at 1366 ("offensive touching" by classmates of plaintiff's "breasts and genitalia, sodomization and forced acts of fellatio"); *Covington Cty.*, 675 F.3d at 853 (school repeatedly released 9-year old student to unrelated adult male who then sexually abused her); *Patel*, 648 F.3d at 970 (nonconsensual sex with developmentally disabled student); *Stevens*, 131 F.3d at 700 (disabled student "subjected to numerous sexual assaults by an unidentified student or students of the facility"); *Dorothy J.*, 7 F.3d at 731 (sexual assault by mentally disabled classmate in boys' shower at high school).

**IV.    The claim for injunctive relief should be dismissed as moot.**

In her final prayer for relief, Plaintiff adds a request for "injunctive relief to correct government procedure to prevent future injury."  Compl. at 39, ¶ e.  Because Plaintiff is now an adult and no longer an FCPS student, any claim for injunctive relief is moot and must be dismissed.

"When students challenge the constitutionality of school policies, their claims for declaratory and injunctive relief generally become moot when they graduate."  *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003) (citing *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs,* 420 U.S. 128, 129 (1975) (per curiam)).  In *Mellen*, the plaintiffs' graduation from the Virginia Military Institute mooted their request to enjoin VMI's practice of requiring a "supper prayer," even though their claim for damages was not rendered moot.  327 F.3d at 365.  In *Jacobs*, cited by *Mellen*, six high-school students had won an injunction prohibiting the school from enforcing restrictions on the distribution of the student newspaper.  When their counsel admitted at oral argument that the students had graduated, however, the Supreme Court found their claim for injunctive relief moot and ordered the injunction vacated.  420 U.S. at 129.

As *Mellen* reflects, the Fourth Circuit has consistently followed *Jacobs* in holding that graduation moots a student's claims for injunctive relief to challenge school policies.  *See also Herrera v. Finan*, 709 F. App'x 741, 745–46 (4th Cir. 2017) (per curiam) (same); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 496 n.15 (4th Cir. 2005) (same); *Williams v. Spencer*, 622 F.2d 1200, 1204 (4th Cir. 1980) (same).  "This is so because once a student has graduated, 'a case or controversy no longer exists between the [plaintiff] and the [defendants] with respect to the validity of the rules at issue.'"  *Herrera*, 709 F. App'x at 745 (quoting *Jacobs*, 420 U.S. at 129).

In short, because Plaintiff is now an adult who is no longer an FCPS student, her claim for "injunctive relief to correct government procedure to prevent future injury" must be dismissed as moot.

## V.     The School Board should be dismissed as a defendant to the remaining counts.

As noted earlier, every count of the complaint contains a prayer for relief that requests joint and several liability against "all defendants."  Compl. ¶¶ 29, 32, 33, 34, 37, 39.  But only Counts I and II purport to be against the School Board itself.  Compl. at 24, 29.  To avoid confusion, the Court should dismiss the School Board as a defendant to Counts III–VI.

## CONCLUSION

The Court should dismiss the complaint because Plaintiff's failure to seek leave of court to proceed pseudonymously violates Rule 10(a) and constitutes a fatal jurisdictional defect.  If the Court reaches the merits, it should dismiss the claims for punitive damages against the School Board, dismiss the § 1983 claim in Count II, dismiss Plaintiff's claim for injunctive relief, and dismiss the School Board as a defendant to all remaining counts.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

By:  _____/s/_____
     Stuart A. Raphael (VSB No. 30380)
     Ryan M. Bates (VSB No. 74661)
     Perie Reiko Koyama (*pro hac vice* pending)
     Kelly R. Oeltjenbruns (*pro hac vice* pending)
     HUNTON ANDREWS KURTH LLP
     2200 Pennsylvania Avenue, NW
     Washington, D.C.  20037
     Telephone: (202) 955-1500
     Facsimile: (202) 778-2201
     sraphael@HuntonAK.com
     rbates@HuntonAK.com

*Counsel for Defendant Fairfax County School Board*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2019, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

By: _____/s/_____
       Stuart A. Raphael (VSB No. 30380)