## IN THE UNITED STATES DISTRICT COURT IN THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JANE DOE**<br><br>**Plaintiff,**<br>**v.**<br><br>**FAIRFAX COUNTY SCHOOL BOARD; SYBIL TERRY; AUGUST FRATTALI; PHILIP A. HUDSON; TAMARA B. BALLOU; BRENDA HUMPHREY MONIQUE PATWARY-FARUQUE; MEGAN CARR; FRANCIS TARRANT; JOANNE FRAUNDORFER; CHRISTIAN KORNEGAY; JENNA OFANO; MIKE AND MARY ROES 1-15**<br>**Defendants.** | Civ. No. 1:19-cv-00917-RDA-TCB |

## <u>AMENDED COMPLAINT</u>

Plaintiff, Jane Doe, by and through her undersigned counsel, submits this Amended Complaint against Defendants and avers:

## I.    INTRODUCTION

1.    This case involves the horrible mistreatment of 12-year-old student, Jane Doe, by officials in Fairfax County Public Schools ("FCPS").

2.    Jane Doe, a former honor roll student, made specific and repeated complaints to FCPS administrators about the horrific environment and the discrimination she suffered. She begged them for help.

3.    She told them that she was "scared to come to school."

4.    Deliberately indifferent to her complaints, they did nothing.

5.    Worse, presented with credible and compelling allegations of abuse by other students, FCPS officials retaliated against Jane Doe by falsely insinuating to her parents that she

1

was to blame for her mistreatment.

6.      Jane Doe now expects to endure the same mistreatment at the hands of FCPS officials that she faced when she was 12-years old.

7.      She knows they will attack her.

8.      She knows they will blame her.

9.      They have already done that.

10.     She is proceeding with this case anyway.

11.     Jane Doe brings this civil rights case because she was raped, sexually assaulted, sexually harassed, terrorized, extorted, bullied, and threatened with death by other students at the Rachel Carson Middle School from October 2011 until February 2012.

12.     Matters worsened for Jane Doe after FCPS school officials got involved.

13.     After FCPS administrators deflected, minimized, and ignored Jane Doe's serious complaints, and blamed her for her mistreatment, her attackers were emboldened.

14.     As a result of this deliberate indifference to Jane Doe's suffering, FCPS subjected seventh-grader Jane Doe to life-altering trauma which she endured daily at the Rachel Carson Middle School ("RCMS").

15.     When Jane Doe reported being sexually harassed, the school's assistant principal brushed off her complaint as a "boy-girl thing."

16.     The school's assistant principal failed to stop Jane Doe's assailant and, instead, told her not to "ruin a young man's life."

17.     The School's Assistant Principal turned Doe's assailant into the victim and discredited Doe's reports to her parents and other officials.

18.     When Jane Doe reported to administrators that she began receiving death threats,

one school official shockingly told her that the threats were "just something kids say."

19.     After Jane Doe advised one teacher that another student had sexually assaulted her "down there," the teacher forced her to sit next to her assailant in class.

20.     After Jane Doe began receiving in-home education she reported being raped at a bus stop by another middle school student, the FCPS did not do anything at all.

21.     FCPS permitted Doe's assailant to remain in school, on campus, while simultaneously instigating a smear campaign against Doe in communications with Doe's parents, Doe's peers at school, and Doe's educators at her grade school.

22.     This case is not about some "public school playground incident," but one which rises to the level of a constitutional violation actionable under 42 U.S.C. § 1983. *Cf. Waybright v. Frederick Cty.*, 528 F.3d 199, 208 (4th Cir. 2008).

23.     FCPS' misconduct created a tortuous environment at the Rachel Carson Middle School which lasted months causing Jane Doe to suffer permanent physical, neurological, emotional, and psychological injuries for which she requires ongoing medical and psychiatric care.

24.     The actions of the FCPS were so reprehensible that it entered into a Voluntary Resolution Agreement with the United States Department of Education to resolve issues raised by Jane Doe in an Administrative Complaint she filed with the Office of Civil Rights ("OCR Complaint").

25.     Pursuant to the Voluntary Resolution Agreement, FCPS agreed to make a series of significant changes to its policies, procedures, and practices to comply with Title IX of the Education Amendments of 1972 ("Title IX").

26.     In a supplemental filing to the U.S. Department of Education, Plaintiff advised of additional instances of rape, anal rape, and physical assault with weapons she endured, as well as

death threats directed to her and her entire family.

27. The Voluntary Resolution Agreement, however, did not address Jane Doe's life-long and permanent physical and psychological injuries.

28. Under the Voluntary Resolution Agreement, FCPS was required to provide Jane Doe written notice of the outcome of the investigation and any remedial steps it would take to correct the recurrence of the sexually hostile environment at Rachel Carson Middle School.

29. FCPS never supplied any such information to Jane Doe.

30. In the Voluntary Resolution Agreement, the United States Department of Education and the FCPS expressly acknowledged Jane Doe's "right to file a private suit in federal court."

31. Through this Complaint, Plaintiff seeks money damages under 42 U.S.C. 1983 and 20 U.S.C. §§1681-1688. Plaintiff also raises supplemental state law claims against Christian Kornegay, Jenna Ofano, August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant.

32. Contemporaneous with the filing of this Amended Complaint, Jane Doe has moved to proceed under a pseudonym.

## II. STATEMENT OF JURISDICTION

33. The Court has federal subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States of America, including Title IX, 20 U.S.C. §§1681-1688, 42 U.S.C. §1983, 42 U.S.C. § 1985 and the United States Constitution.

34. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims under state law because Plaintiff's state law claims arise out of a common nucleus of operative facts.

35. Venue is proper in the Eastern District of Virginia because Plaintiff's claims arise primarily from unlawful conduct occurring in Fairfax County, Virginia.

## III.   PARTIES

### A.   All Defendants Know Jane Doe's Identity

36. Plaintiff, **Jane Doe** (fictitious and anonymous name) is an adult individual and citizen of the United States of America.

37. Plaintiff's name and address is not contained in this Complaint to protect the privacy and identity of Jane Doe, who incurred serious physical, neurological, psychiatric, and emotional injuries and damages of a sensitive nature as a result of the intentional, reckless, and outrageous acts and failures of Defendants as outlined below. Information which could identify Jane Doe is not contained herein.

38. Good cause exists for Plaintiff to use a pseudonym due to the harmful effect of the public disclosure of her identity and the harm inflicted by defendants to Jane Doe. All Defendants are or should be aware of Plaintiff's identity and suffer no prejudice by reason of concealing Plaintiff's identity in the Complaint and public records filed with the Court.

39. Plaintiff seeks to proceed as a Jane Doe in this case because of the FCPS' prior betrayal of the promises to protect her anonymity.

40. It is believed, and therefore averred, that the School District will argue to this Court that her case should be dismissed because she has not identified herself by her real name.

41. But they know who she is.

42. They knew when she first informed them of her initial mistreatment.

43. They know her name now.

44. The Defendants previously promised to protect her anonymity.

45. After making her initial written statement to school officials in 2011, FCPS

officials immediately told her attackers and betrayed the promise to keep her identity private.

46.     This betrayal caused Jane Doe to endure additional harassment and abuse.

47.     They retaliated against her before and exposed her identity to her assailants.

48.     The officials with the FCPS knew who she was when they informed her attackers that she had filed a complaint with the school.

49.     They knew who she was when Jane Doe made her report to the Office of Civil Rights of the United States Department of Education.

50.     They knew her name when the U.S. Department of Education investigated her complaints about the FCPS.

51.     They knew who she was when the FCPS responded to the Office of Civil Rights Complaint.

52.     They knew who she was when the FCSB entered into a Voluntary Resolution Agreement with the Office of Civil Rights.

53.     They know who she is now.

54.     Notably, FCPS officials directed teachers to use pseudonyms to refer to Jane Doe in internal communications about her.

55.     To claim that this Court lacks jurisdiction because Jane Doe has not used her real name in the caption of this case, is a procedural gimmick.

56.     But Jane Doe's use of a pseudonym is not a gimmick.

57.     Given the reprisals and retaliation Jane Doe previously endured because the School District revealed her identity, she is terrified that the School District will again attempt to hurt her.

58.     She believes they will do it again and their insistence that she reveal her identity on a federal docket available to the whole world on the internet confirms Jane Doe's greatest

suspicions.

**B.     The Defendants**

59.     **Defendant Fairfax County School Board** ("FCSB") is a public school board that is responsible for the operation, management, and oversight of the public education system of the Fairfax County Public Schools ("FCPS"). Defendant FCSB is the public body "that governs [the] school division" of FCPS, within the meaning of Va. Code Ann. § 22.1-1, VA. Const., Art. VIII, § 7 ("The supervision of schools in each school division shall be vested in a school board"), Va. Code Ann. § 22.1-28 ("supervision of schools in each school division shall be vested in a school board"), and Va. Code Ann. § 22.1-71 (stating that the "school board" is the "body corporate" with the power to "sue" and "be sued"). The FCSB is the "body corporate" for the FCPS and is vested with all the powers and charged with all the duties, obligations, and responsibilities imposed upon FCPS.

60.     As the corporate body for FCPS, Defendant FCSB is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

61.     Defendant FCSB provided educational, supervisory, and childcare services to children directly and through Fairfax County Public Schools, including the Rachel Carson Middle School, its principals, vice principals, teachers, staff, and other personnel, including, but not limited to defendants, August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, who acted as its agents, ostensible agents, servants and/or employees.

62.     Defendant, **Christian Kornegay**, is an adult individual residing at 2405 Tatnuck Court in Herndon, Virginia 20171.

63.     At all times material, Christian Kornegay was a minor, Jane Doe's peer, and a student at Rachel Carson Middle School ("the middle school"), located at 13518 McLearen Road

in Herndon, Virginia 20171.

64. Defendant, **Jenna Ofano**, is an adult individual residing at 13611 Floris Street in Herndon, Virginia 20171.

65. At all times material, Jenna Ofano was a minor and a student with Plaintiff at the middle school.

66. Defendant, **Philip A. Hudson** ("Assistant Principal Hudson") is, at all times material, an adult individual and Assistant Principal and/or educator at the middle school and maintains a personal address and residence at 14803 Haymarket Lane in Centerville, Virginia 20152. At all times material hereto, Mr. Hudson was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

67. Defendant, **August Frattali** ("Principal Frattali") is, at all times material, an adult individual and Principal, and/or educator at the middle school and maintains a personal address and residence at 42448 Leesylvania Court, in Ashburn, Virginia 20148. At all times material hereto, Principal Frattali was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

68. Defendant, **Sybil Mack Terry** ("Assistant Principal Terry") is, at all times material, an adult individual and Assistant Principal, and/or Educator at the middle school and maintains a personal address and residence at 47 Eisentown Drive, Lovettsville in Virginia, 20180. At all times material hereto, Principal Terry was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

69. Defendant, **Tamara B. Ballou** ("Assistant Principal Ballou") is, at all times material, an adult individual and Assistant Principal, and/or Educator at the middle school and maintains a personal address and residence at 1506 Crane Street in Falls Church, Virginia 22046. At all times material hereto, Assistant Principal Ballou was acting as an employee, agent, servant

and/or ostensible agent of Fairfax County School Board.

70. Defendant, **Brenda Humphrey** ("Counselor Humphrey") is, at all times material, an adult individual and guidance counselor of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, Counselor Humphrey was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

71. Defendant, **Joanne Fraundorfer** ("Counselor Fraundorfer") is, at all times material, an adult individual and guidance counselor of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, Counselor Fraundorfer was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

72. Defendant, **Megan Carr** ("Mrs. Carr") is, at all times material, an adult individual and educator of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, Mrs. Carr was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

73. Defendant, **Monique Patwary-Faruque** ("Mrs. Patwary-Faruque") is, at all times material, an adult individual and educator of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, Mrs. Patwary-Faruque was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

74. Defendant, **Francis Tarrant** ("Mr. Tarrant") is, at all times material, an adult individual and educator of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls

Church, Virginia 22042. At all times material hereto, Mr. Tarrant, was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

75. FCPS is responsible for the policies, procedures, practices, and training of the principals, vice principals, teachers, staff, and other personnel, including, but not limited to defendants, August Frattali, Sybil Terry, Philip A Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, under the employ of the Fairfax County Public Schools.

76. FCPS is responsible for the actions and omissions of its principals, vice principals, teachers, staff, and other personnel under its employ.

77. Defendants August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, were at all times relevant to this complaint, duly appointed and acting as educators, employees, agents, and/or servants on behalf of the Fairfax County Public Schools, acting under the color of law and under the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Virginia.

78. At all times relevant hereto, Defendants August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant were responsible for educating, safeguarding, and protecting students of RCMS from harm, including from the conduct of other RCMS students.

79. At all times relevant hereto, defendants, August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, were acting within the course and scope of their employment with RCMS and/or FCPS.

80. Defendants, August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou,

Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, are being sued in their individual and official capacities.

81.     The FCSB educators, administrators and principals were responsible to provide a safe and enabling learning environment for Miss Doe that was free of discrimination and harassment based on her sex, which they failed to do, thus breaching their constitutional, statutory, fiduciary, and common law duties to the Plaintiff.

82.     Defendants, FCSB, August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant not only failed to provide a safe learning environment for Jane Doe, but also failed to stop and/or prevent harm to students, including Jane Doe, despite knowing of the sexual harassment and verbal and physical abuse to which other students subjected Jane Doe.

83.     Defendants, **Mike/Mary Roes, Nos. 1-15** are unknown students of the middle school and other individuals who, upon information and belief, and at all times relevant and material hereto, participated in the physical and sexual assaults, rapes, and/or gang rapes of Miss Doe.

84.     Plaintiff avers state law claims and complied with all requirements of the Virginia Tort Claims Act.

## THE FACTS

85.     The FCPS claims publicly that "it does not tolerate acts of sexual or gender-based harassment."

86.     That is untrue.

87.     The FCPS also falsely boasts that it is "committed to conducting a prompt, thorough and impartial investigation" of reports of sexual harassment.

88.     The FCPS Anti-Harassment Statement also provides: "If the investigation reveals that sexual harassment created a sexually hostile environment PCPS will take prompt and effective steps to end the harassment, eliminate the hostile environment and prevent its recurrence, including …. protect[ing] the complainant and ensur[ing] her safety."

89.     In this case, the FCPS not only failed to take steps to protect Jane Doe and ensure her safety, it took affirmative steps to ensure that Jane Doe would endure repeated and ongoing sexual assaults.

### A.     FCPS Students Sexually Harassed, Assaulted, Taunted, and Bullied Jane Doe at School

90.     This matter involves peer-to-peer physical assault and bullying while Jane Doe was a student at the Rachel Carson Middle School from October, 2011 through February, 2012.

91.     During the 2011-2012 school year, Jane Doe, was a seventh-grade student in the care, custody, and control of FCPS.

92.     Beginning on or about October 30, 2011, Jane Doe fended off the unwelcomed sexual advances of her peer, David Neill.

93.     Jane Doe's peers then began spreading rumors at RCMS that she was sexually promiscuous and that she gave "blow jobs" and "hand jobs."

94.     Jane Doe's peers called her names, stating that she was a "slut," "whore," "hoe," "lesbian," and "bi-sexual."

95.     When Jane Doe arrived to RCMS on the morning of October 31, 2011, male students surrounded her at her locker before her first period class, called her names, thrusted their pelvises at her, and made unwelcomed sexual advances towards her.

96.     On or about November 1, 2011, Jane Doe reported to her teachers and to RMCS' hallway monitors stationed at or near her locker, that a group of teenage boys called her names,

touched her, hurt her, and made her feel uncomfortable when she went to her locker.

97.     Male students at RCMS accosted Jane Doe at her locker before her first period class and in between her classes.

98.     Jane Doe's peers fondled her and placed their hands under her shirt, down her pants, up her skirt, made lewd sexual comments to her, teased her, and threatened her.

99.     Jane Doe feared going to her locker to get textbooks for her classes.

100.    The boys' unwelcomed sexual touching and harassment of Jane Doe prevented her from getting to class on time.

101.    On or about November 1, 2011, when the seventh-grade honor student Jane Doe reported to her homeroom teacher, Megan Carr, that she was tardy because she was being "hurt" by other students at her locker.

102.    Mrs. Carr did nothing to help Miss Doe.

103.    Deliberately indifferent, Mrs. Carr did not investigate Jane Doe's report.

104.    After homeroom, Jane Doe's male peers followed her into the hallway.

105.    Plaintiff's peers surrounded, touched, and called her names when she changed classes or returned to her locker to change textbooks.

106.    Jane Doe's science teacher, Francis Tarrant, monitored the hallway near Miss Doe's locker.

107.    Defendant Tarrant witnessed students' abuse and harass Jane Doe at her locker.

108.    In fact, Jane Doe frequently asked Mr. Tarrant for help opening her locker to deter her male assailants.

109.    Deliberately indifferent, Mr. Tarrant did nothing to help Jane Doe and did not investigate or discipline Jane Doe's assailants.

110.    On or about November 1, 2011, Jane Doe told her history teacher, Monique

Patwary-Faruque, that she felt unsafe and was bullied in the hallways.

111.    Deliberately indifferent, Ms. Patwary-Faruque did not investigate Jane Doe's report of feeling unsafe or being bullied.

112.    School officials, however, instructed Jane Doe to seek help from the guidance counselor, Brenda Humphrey.

113.    Deliberately indifferent, Counselor Humphrey told Jane Doe that she was "too busy" to meet.

114.    Counselor Humphrey advised Jane Doe to return the following day.

115.    Jane Doe's peers harassed her at school the next day, and she returned to Counselor Humphrey's office seeking protection from her peers.

116.    Jane Doe asked to speak with Counselor Humphrey because she was afraid to walk the hallways at RCMS and needed help.

117.    Again, deliberately indifferent, Counselor Humphrey was unavailable to speak with Jane Doe.

118.    Later that week, Jane Doe observed Counselor Humphrey in the hallways of RCMS and told Mrs. Humphrey she felt unsafe at RCMS and needed help.

119.    Even after that, Counselor Humphrey made no effort to meet with Jane Doe.

120.    Jane Doe repeatedly sought out and begged Counselor Humphrey for help.

121.    Deliberately indifferent, Counselor Humphrey did nothing.

122.    After Counselor Humphrey repeatedly ignored Jane Doe's pleas for help, Jane Doe returned to the student services office and asked to speak with another FCPS guidance counselor.

123.    Jane Doe reported to Counselor Fraundorfer that male students at RCMS bullied her, that she felt uncomfortable in the hallways and that she feared for her safety because she was

being touched inappropriately by male students.

124. Deliberately indifferent, Counselor Fraundorfer did not investigate Jane Doe's requests, but simply advised her that the bullying would cease over time.

125. It didn't.

126. The harassment, touching, taunting, and bullying that Miss Doe experienced at RCMS did not cease; it grew worse.

127. FCPS students now bullied Jane Doe at school, on her bus ride home from school, and off campus.

**B.    FCPS Students Raped, Tortured, Abused, Threatened, And Extorted Jane Doe**

128. In early November of 2011, Jane Doe was sexually assaulted by two RCMS students, Christian Kornegay and Jenna Ofano.

129. Jenna Ofano approached Jane Doe in gym class and asked about hanging out with an older FCPS student, Christian Kornegay, after school.

130. Jane Doe declined Jenna's invitation.

131. Christian Kornegay and Jenna Ofano, however, followed Jane Doe when she was walking home.

132. Jenna Ofano and Christian Kornegay then tackled Jane Doe from behind and held her to the ground.

133. They removed Jane Doe's clothing, digitally penetrated her vagina, and fondled Jane Doe's breasts.

134. Christian Kornegay sat on top of Jane Doe while Jenna Ofano photographed Jane Doe, using a cell phone, as she lay helpless with her shirt and pants removed.

135. Kornegay and Ofano then forced Jane Doe to perform oral sex on Kornegay.

136.    They threatened to send the topless photographs of Jane Doe to other FCPS students if she refused.

137.    At school the next day, Kornegay and Ofano fueled rumors among peers that Jane Doe was sexually promiscuous.

138.    FCPS's students increasingly bullied Jane Doe at school.

139.    On November 9, 2011, Jane Doe took the late bus home from school and encountered Kornegay waiting for her at her bus stop.

140.    Kornegay brandished a knife and threatened Jane Doe with physical violence if she did not follow him to a secluded area nearby.

141.    Kornegay cut Jane Doe with his knife, held her to the ground against her will, and removed her clothing.

142.    He then, again, forced Jane Doe to perform oral sex.

143.    During the course of this violent encounter, Kornegay threatened to kill her and her family if she did not satisfy his sexual demands.

144.    Thereafter, Kornegay raped Jane Doe nearly every day after school, at or near her bus stop until November 21, 2011.

145.     Each rape grew more violent with increasing emotional abuse and threats of physical violence to Jane Doe and her family.

146.    When Jane Doe tried to avoid Kornegay at her bus stop and when she tried to escape Kornegay, he caught her and beat her with his fist until she submitted.

147.    Kornegay tortured Jane Doe, burning her with his lighter and cutting her with his knife.

148.    Kornegay penetrated Jane Doe's vagina and anus with sex toys and, other times, he penetrated Jane Doe's vagina with his foot or his hand.

149.    Kornegay told Jane Doe that he was grooming her for the enjoyment of his "friends."

150.    He repeatedly threatened to kill Jane Doe and her family if she ever told anyone of the violent rapes.

151.    Kornegay told Jane Doe and other FCPS students that Jane Doe was his "property."

152.    During school, between November 9, 2011 and November 21, 2011, Kornegay followed Jane Doe to and from her classes.

153.    Jane Doe was constantly in fear for her life.

154.    Although Jane Doe repeatedly sought the assistance of FCPS personnel and guidance counselors during this time frame, they did not provide her any help because of their deliberate indifference.

**C.    FCPS' Deliberate Indifference to Jane Doe's Abuse Emboldened Her Attackers**

155.    On the morning of November 21, 2011, Jane Doe and her mother met with RCMS assistant principals, Sybil Terry and Philip Hudson, and guidance counselor Brenda Humphrey, to discuss a sexually explicit voicemail that Christian Kornegay placed to her on November 14, 2011.

156.    Jane Doe's mother also told Brenda Humphrey, Sybil Terry, and Philip Hudson that Kornegay stole fifty dollars ($50.00) from her daughter.

157.    Jane Doe gave Sybil Terry, Philip Hudson, and Brenda Humphrey a written and verbal report that she was "scared to come to school," that she feared for her safety in the hallways of RCMS, and that she was the victim of peer-to-peer sexual harassment at RCMS.

158.    Jane Doe identified Jenna Ofano, David Neill, and Christian Kornegay as FCPS

students who bullied her.

159.    Jane Doe's written statement is included here:



**STUDENT STATEMENT**

STUDENT NAME (Printed) ████████████

Teacher Name _____ Period _3_ Subject _____

**STATEMENT OF FACTS**

I am scared to come to school for the following reasons:
Christian Kornegay and David Neill come to my locker
every morning before first pd. They come very close
to me, they say "Hey ████" then laugh at me, harass me,
tease me, and give me seductive looks. Christian Kornegay
left me a very inappropriate voicemail with lots of sexual
terms. Christian says David Neill wants to come up to me
and call me vulgar names like whore, bitch, and lesbian
people. I don't even know call me lesbian. Jenn Ofano + Christian
make fun of me for being half Indian and basically say
offensive terms. Jenn Ofano calls me bitch and
makes offensive wall post on my facebook calling
me bitch and a whore. On Donny McFarland's
bus he told everyone. David Neill said I gave him
oral sex which is completly false and I sent naked
pictures which again isn't true. Also that I
let anyone get a my chick and pants which is offensive
because I've never done so.

Student Signature: ████████████     Date: 11/21/11

It all started 3 weeks ago but really escalated
_____

160.    In response to Jane Doe's complaints, Sybil Terry warned Jane Doe and her

mother that Kornegay "had been in enough trouble" and asked Jane Doe and her mother not to

"ruin a kid's life."

161.    Assistant Principal Terry, Assistant Principal Hudson, and Counselor Humphrey

advised Jane Doe and her mother that they would investigate.

162.    Assistant Principal Terry had a personal relationship with Defendant Kornegay and his family.

163.    Though Jane Doe reported there were additional FCPS students sexually harassing her at school, she did not know the students' names, and FCPS did nothing to investigate these students' identities.

164.    FCPS administrators did nothing to safeguard Jane Doe from Kornegay, Ofano, or any one of the other students who bullied Jane Doe during the course of FCPS's "investigation."

165.    In fact, not only did Jenna Ofano physically assault Jane Doe before the school day ended on November 21, 2011, her peers sexually harassed her that day.

166.    Jane Doe's mother notified FCPS employees that Jane Doe would be removed from school until after the Thanksgiving break until FCPS completed its "investigation" into her complaints.

167.    Within twenty-four hours, however, FCPS administrators completed the sham "investigation" and contacted Jane Doe's parents and requested they return to the middle school for a meeting to discuss their "findings."

168.    At the November 22, 2011 meeting, FCPS administrators claimed Jane Doe mutually agreed to meet Kornegay.

169.    Assistant Principal Terry advised Jane Doe's parents that her investigation led her to believe that Miss Doe was "sexually active" with Kornegay.

170.    Assistant Principal Terry ignored, however, signs that Kornegay forcibly sexually assaulted Jane Doe.

171.    Assistant Principal Terry rejected Jane Doe's claims that Kornegay was "bullying" her.

172.　Sybil Terry dismissed Kornegay's misconduct with Jane Doe as a "boy-girl thing."

173.　Sybil Terry, however, acknowledged that Kornegay extorted fifty ($50) dollars from Jane Doe.

174.　FCPS did not punish or reprimand Defendant Kornegay for extorting Jane Doe.

175.　Instead, Assistant Principal Terry insulated Kornegay from reprisal by any responsible adults or authorities.

176.　In fact, Assistant Principal Kornegay related information supposedly gleamed from Defendant Kornegay to Doe's parents in order to dissuade Doe and Doe's parents from any further reports.

177.　FCPS, by and through Philip Hudson and Sybil Terry, advised Jane Doe and her parents the middle school would advise Jane Doe's teachers of Jane Doe's reports of harassment and bullying by her peers and to be on the lookout for such behavior in the hallways and near Jane Doe's locker throughout the school day.

178.　Hudson and Terry also said that they would move Miss Doe's physical education locker away from Jenna Ofano and closer to the view of the teacher.

179.　Instead, FCPS moved Doe's physical education locker to an area outside the view of the teacher.

180.　As a result, Doe was subjected to physical assault and bullying at the hands of Defendant Ofano.

181.　With deliberate indifference, FCPS failed to implement their "plan."

182.　FCPS left Jane Doe vulnerable to further harassment and abuse despite Jane Doe's and her mother's November 21, 2011 verbal and written reports.

183.　FCPS also failed to advise Jane Doe's teachers that she was the victim of

bullying.

184. For example, Jane Doe's drama teacher, Josh Bickford, admitted to Jane Doe that he was never advised by FCPS staff or principals that she was bullied.

185. As a result of FCPS's sham investigation into Jane Doe's reports of sexual harassment and bullying at RCMS, FCPS emboldened Jane Doe's peers to retaliate against her for "snitching."

186. When Jane Doe returned to school after Thanksgiving break, students relayed Kornegay's threats to Jane Doe including that Kornegay had a gun, that Kornegay was not afraid to use it, and that he was going to kill her.

187. As FCPS students grew more confident in their ability to assault Jane Doe and escape the consequences, they became more overt with their advances.

188. On or around December 14, 2011, during history class, a male classmate put his hands down Jane Doe's pants.

189. When Doe reported the incident to her teacher, Monique Patwary-Faruque told Jane Doe that she "needs to learn to be a big kid" and to "deal with the situation yourself."

190. One afternoon in December of 2011, Miss Doe had to stay late at RCMS with her Spanish teacher for additional instruction.

191. When Jane Doe left the classroom, a male student accosted her in the hallway.

192. The student forced Doe into a maintenance closet where Doe was assaulted by three, unidentified, Spanish speaking adult males.

193. This was the first time Doe was raped at school.

194. Beginning in December 2011 and continuing through February 2012, Kornegay and other students raped Jane Doe on RCMS campus *during* and *after* school hours.

195. Each and every time Jane Doe was raped on RCMS property, an RCMS teacher

and/or staff member was located nearby.

**D.    FCPS' Actions Constitutes a State Created Danger Within the Meaning of 42 U.S.C. § 1983.**

196.    As set forth above, this is worse than a case where a state actor fails to act in the response to a deprivation of a citizen's constitutional rights.

197.    In response to Jane Doe's complaints, the FCPS took plenty of actions.

198.    Each affirmative act by the FCPS created, fostered and maintained a danger for Jane Doe in violation of her constitutionally protected rights.

199.    For instance, on November 22, the day after she submitted her written statement to FCPS officials, Defendant Terry informed Jane Doe's parents that she had finished her "investigation" of the sexual harassment and invited them in for a meeting to discuss her findings. OCR Complaint at ¶ 18.

200.    During that meeting later in the day, Defendant Terry told Jane Doe's parents that she had spoken with Defendant Kornegay and concluded that the situation appeared to be a "boy-girl thing." *Id.*

201.    Defendant Terry then told the Jane Doe's parents that Jane Doe herself may have engaged in sexual behavior about which they were not aware. *Id.*

202.    Far from attempting to determine whether Jane Doe's complaints were correct, Defendant Terry attempted to turn the tables on the complainant and insinuate her wrongdoing to her parents. *Id.*

203.    The insinuation that Jane Doe was promiscuous created danger which protected and enabled the perpetrator to continue his assaults on her. *Id.*

204.    The state created danger is prohibited and actionable under 42 U.S.C. § 1983.

205.    During this meeting with Jane Doe's parents, Defendant Terry also explained that

she had been able to recover the $50 that Defendant Kornegay extorted from Jane Doe, and jokingly told Jane Doe's mother that she needed to return the money to her before she spent it herself on Christmas shopping. *Id.*

206. The FCSB's response to Jane Doe's serious complaint that extortion was something to joke about fostered a state created danger to Plaintiff. *Id.*

207. In response to Jane Doe's reports of bullying and threats, FCSB insulated Defendant Kornegay from reprisal and intervention by his parents or any responsible authorities.

208. Sybil Terry dealt directly with Defendant Kornegay only.

209. Insulating Defendant Kornegay from reprisal by responsible adults subjected Plaintiff to a state created danger.

210. When Jane Doe's mother met with school officials she informed them that Jane Doe was receiving death threats at school, Counselor Humphrey stated that the school did not "have the time or the manpower" to protect her. *Id.* at ¶21.

211. During another instance, FCPS officials created an environment in which her constitutional rights were trampled.

212. Jane Doe told Teacher Patwary-Faruque that a student was assaulting her by grabbing her genatalia.

213. Jane Doe specifically advised Teacher Patwary-Faruque that her classmate was grabbing her "down there."

214. In response, Teacher Patwary-Faruque scolded Jane Doe and told her that she would have to tolerate the abuse "like a big girl" and "deal with it yourself."

215. When Jane Doe tried to move away from this attacker, Teacher Patwary-Faruque commanded that Jane Doe sit near her attacker.

### E. Jane Doe's Parents Removed Her from the Dangerous and Discriminatory School Environment

216.    From October 2011 through February of 2012, Doe was repeatedly threatened with violence and was the victim of physical and emotional abuse while a student at the middle school.

217.    As a result of the severe physical and emotional torment she was suffering at the hands of her abusers both on and off school property, Jane Doe's school performance began to suffer.

218.    Following the November 21, 2011 meeting with RCMS administrators and staff, Jane Doe received an increased number of death threats directed to her and to her family for "snitching."

219.    From November 22, 2011 through February 8, 2012, Jane Doe continued to report to her teachers and FCPS staff that she was repeatedly sexually harassed and bullied and that she feared for her life and safety.

220.    On January 27, 2012, Jane Doe emailed Principal Frattali and recounted the "sexual harassment, physical harassment, and name calling" she endured at the middle school.

221.    Jane Doe told Principal Frattali that the middle school needed to educate its students on the meaning bullying and its effect on victims to prevent further sexual harassment, physical assaults, and name calling.

222.    Principal Frattali, Assistant Principal Phillip Hudson, and Assistant Principal Tamara Ballou, met Doe's parents on January 27, 2012 to discuss FCPS's handling of Jane Doe's reported peer-on-peer abuse to FCPS staff.

223.    Specifically, Jane Doe reported verbally and in writing that FCPS students retaliated against her for "snitching."

224. Assistant Principal Hudson and Assistant Principal Ballou did not know "what else the school could do to help [Doe]," but FCPS did not investigate the students that threatened Doe.

225. Rather, FCPS's staff treated Jane Doe as a nuisance.

226. They discouraged her from reporting and speaking out against her bullies and instead treated Doe as if *she* was a "distraction" to her peers.

227. On February 9, 2012, an unknown FCPS student called Doe a "douchebag," "asshole," and a "bitch" in the school cafeteria.

228. FCPS staff reprimanded Jane Doe and threatened her with disciplinary action for standing up for herself.

229. That same day, Jane Doe made verbal and written reports to FCPS staff that she felt unsafe in school because she received multiple death threats from her peers.

230. Assistant Principal Ballou dismissed Doe's reports calling the death threats "just something kids say."

231. FCPS did not investigate the death threats and they did nothing to protect Doe from her peers.

232. Jane Doe's parents picked their daughter up from school early on February 9, 2012 out of concern for their daughter's safety.

233. On February 10, 2012, Jane Doe's parents withdrew Doe from school at the recommendation of Jane Doe's physicians.

234. Jane Doe's parents picked her up from school at RCMS for the last time.

235. Jane Doe did not return to school because FCPS failed to protect her from ongoing, peer-on-peer sexual harassment and violence.

236. Because she had withdrawn from school, Jane Doe was prohibited from

participating in RCMS' academic and extracurricular programs.

237.    On February 10, 2012, Jane Doe's parents advised FCPS school superintendents, Jack Dale and Fabio Zuluaga, of the sexual harassment and abuse their daughter endured at school.

238.    On February 16, 2012, Zuluaga met with Jane Doe's parents and advised that the FCPS would investigate FCPS' students' bullying and harassment of Jane Doe.

239.    On March 1, 2012, Jane Doe's parents learned that Kornegay had raped Jane Doe.

240.    Jane Doe's parents filed a police report on March 2, 2012.

241.    Detective Fred Chambers, a former FCPS employee, interviewed Jane Doe on March 5, 2012.

242.    Jane Doe underwent a SANE (Sexual Assault Nurse Examiner) evaluation on March 5, 2012.

243.    The evaluation revealed contusions inside Jane Doe's anus which ultimately corroborated her report of anal penetration.

244.    Detective Chambers met with Principal Frattali on March 6, 2012 to discuss Doe's rape.

245.    On March 7, 2012, Jane Doe's physician prohibited Doe from returning to classes at RCMS, stating "the boy who perpetrated this crime plus many of his friends who assisted him remain in Rachel Carson Middle School."

246.    FCPS took no steps to investigate the rape.

247.    FCPS permitted Jane Doe's rapist to remain on campus but took no steps to facilitate Jane Doe's return to a safe and supportive school environment.

248.    Instead, FCPS punished Jane Doe for reporting the harassment and rape to Fairfax police.

249.    FCPS retaliated against Jane Doe by interfering with her ability to complete Homebound Instruction.

250.    FCPS also refused to address the fact that Jane Doe suffered serious emotional trauma and disability as a result of abuse that she experienced at RCMS.

251.    Instead, FCPS officials labeled the former honor student as an "emotionally disturbed" child.

252.    Under the guise of a school investigation, and in the course and scope of his authority as principal of RCMS, Principal Frattali visited Miss Doe's elementary school to dig up "dirt" on Jane Doe and inquire if she was a "troubled child."

253.    Jane Doe then spent the next one-and-a-half years under homebound instruction.

254.    During that time, FCPS officials banned Jane Doe's parents from picking up her assignments from RCMS.

255.    FCPS officials directed that Jane Doe's homebound instructors to use "code names" in emails regarding Jane Doe so as not to be subject to discovery in a lawsuit and to avoid public disclosure requirements.

256.    During the remainder of Jane Doe's seventh grade school year, students were advised not to discuss any matters concerning Jane Doe with anyone given the potential that FCPS was facing liability for their reckless indifference to Jane Doe's rights, and/or their failure to safeguard Jane Doe against sexual harassment and assault on school property.

257.    It was not until June 29, 2012, and only upon inquiry from Jane Doe's mother, that Fabio Zuluaga advised Jane Doe and her parents that the allegations of sexual harassment, touching, taunting, name-calling, physical violence, and bullying reported by Jane Doe could not be verified by RCMS officials.

258. During her eighth-grade year, Jane Doe continued to receive Homebound Instruction.

259. Jane Doe lived as a prisoner in her own home and felt unsafe to leave her residence for fear of retaliation by Kornegay.

260. In failing to take meaningful steps to address her sexual assault, sexual harassment, rape, and extortion, FCPS officials forced Jane Doe to endure one of the most hostile educational environments imaginable.

261. Such misconduct by school officials constitutes both "deliberate indifference" under Title IX and a state created danger under §1983.

262. FCPS' failure to respond adequately to Jane Doe's complaints of sexual assault, sexual harassment, rape, and extortion by other FCPS students constitutes sex discrimination in violation of Title IX of the Education Amendments of 1972 ("Title IX").

## INJURIES

263. By reason of the sexual harassment, assault, touching, taunting, name-calling, bullying, and rape suffered by Jane Doe beginning in October 2011 and lasting through February 2012, Jane Doe suffered in the past, and will continue to suffer in the future, the following injuries/damages:

    a. Past and future embarrassment;

    b. Past and future humiliation;

    c. Past and future loss of dignity;

    d. Past and future pain and suffering;

    e. Pelvic pain, physical deformities, and internal derangement of her vagina, cervix, uterus, and anus;

    f. Depression, anxiety, fear, emotional distress and mental anguish;

g.  Severe Acute Traumatic Stress Disorder, Severe Post-Traumatic Stress Disorder, Severe depression and anxiety, Nightmares and Flashbacks, Eating Disorders, and other psychiatric disabilities and deficits;

h.  Physical manifestations of emotional and psychiatric distress;

i.  Traumatic brain injury with neurological, cognitive, physical, and emotional deficits;

j.  Stress induced cardiac injuries, conditions, deformities, and deficits;

k.  Past and future loss of enjoyment of life and life's pleasures;

l.  Past and future loss of earnings;

m.  Past and future medical expenses; and

n.  Other injuries, damages, and losses as more fully described herein.

## -COUNT I-
## TITLE IX
## JANE DOE V. FAIRFAX COUNTY SCHOOL BOARD

264.  Plaintiff incorporates each and every allegation set forth above.

265.  Title IX of the Education Amendments of 1972 ("Title IX") 20, U.S.C. §1681(a), states that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

266.  Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 34 C.F.R. §106(b) provides:

… A Recipient shall adopt and publish grievance procedures providing for prompt equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

267.  Jane Doe was a student at an educational institution receiving federal funds.

268.  In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme held that a recipient of federal funds violates Title IX and is subject to a private damages action, where the funding recipient is "deliberately indifferent" to known acts of student-on-student

29

sexual harassment.

269.    The United States Supreme Court has held that a plaintiff in a student-on-student harassment case may prevail in a Title IX damages action against a school board where: a) the school board is deliberately indifferent to known sexual harassment; b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to education opportunities or benefits provided by the school; and, c) the school exercised substantial control over the harasser and the context in which the harassment occurred.

Davis, 526 U.S. at 645-46, 650.

270.    Jane Doe was subjected to harassment and assault at the hands of other students at FCPS based on her sex.

271.    The harassment was so severe and pervasive that it created a hostile and abusive environment in an educational setting.

272.    Jane Doe and her parents reported the sexual assaults and sexual harassment to FCPS administrators and employees.

273.    FCPS administrators knew Jane Doe was sexually and physically assaulted, sexually harassed, bullied, and extorted by other FCPS students based on multiple reports from Jane Doe and other students and based on personal observations by FCPS employees.

274.    FCPS was obligated to address these reports because student-on-student sexual assault is a form of sex discrimination prohibited by Title IX.

275.    Jane Doe suffered sexual assault and sexual harassment that was severe, pervasive, objectively offensive, and created a hostile educational environment for Jane Doe based on her sex.

276.    The individuals with actual knowledge of Jane Doe's sexual assaults, sexual harassment, extortion, and verbal and physical abuse had the authority to investigate and take

corrective action to address the sexual assault.

277.     FCPS was further obligated to address these reports under Title IX because FCPS had substantial control over the student who sexually assaulted, sexually harassed, and extorted Jane Doe, as well as the context in which the harassment occurred – during school hours on school grounds.

278.     By its acts and omissions, FCPS was deliberately indifferent to Jane Doe's sexual assault and created a hostile education environment for her. FCPS's deliberate indifference included, without limitation:

1. Failing to timely address Jane Doe's November 21, 2011 written and verbal reports of sexual harassment, extortion, physical and verbal abuse at the hands of FCPS's students, including Christian Kornegay and Jenna Ofano;

2. Conducting a sham investigation and confirming Jane Doe's report that she was extorted by her assailant for fifty dollars ($50.00), but dismissing knowledge of a sexual relationship between Jane Doe and her assailant as a "boy-girl thing" on account of FCPS's assistant principal's objectively outrageous insinuation that the then seventh-grade Jane Doe was sexually promiscuous and FCPS's assistant principal's reluctance to ruin an already troubled teenage boy's life;

3. Learning of Jane Doe's sexual assault at the hands of a male FCPS student and disregarding the assault as a "boy-girl" thing;

4. Discouraging Jane Doe from reporting sexual harassment, bullying, and verbal and physical abuse at the hands of her assailant by telling Jane Doe's parents that seventh-grade Jane Doe had engaged in consensual sexual encounters with the assailant, and implying to Jane Doe and her parents that FCPS would not validate Jane Doe's November 21, 2011 reports of sexual harassment and abuse because it would harm Jane Doe's male assailant;

5. Conducting a sham investigation into the identities of the older male students who harassed Jane Doe by

refusing to permit Jane Doe to search an RCMS yearbook but instead recommending that Jane Doe follow her assailants to their classes after they sexually harassed Jane Doe in order for Jane Doe to identify the students to FCSB's staff, specifically Sybil Terry;

6. Failing to take disciplinary action against Jane Doe's assailants, Christian Kornegay and Jenna Ofano;

7. Emboldening Jane Doe's assailants and other FCPS students to retaliate against Jane Doe for Jane Doe's November 21, 2011 written and verbal reports of sexual harassment, extortion, physical and verbal abuse to FCPS's administrators, including:

    a.  threatening Jane Doe's life and the lives of her family members for being a "snitch";

    b.  sexually harassing, intimidating, and verbally abusing Jane Doe on School grounds on November 21, 2011;

    c.  physically assaulting and torturing Jane Doe with weapons during school hours *on* school grounds, and after hours *on* and *off* school grounds, until February 10, 2012 when Jane Doe was removed from RCMS at the request of her physician;

    d.  raping Jane Doe during and after school hours *on* school grounds until February 10, 2012 when Jane Doe was removed from RCMS at the request of her physician;

    e.  forcibly grabbing Jane Doe and touching Jane Doe under her shirt and down her pants *during* class; and,

    f.  Verbal abuse and bullying on the basis of her sex;

8. Leaving Jane Doe's assailants to roam RCMS's halls free and without securing Jane Doe's safety and ensuring Jane Doe was not vulnerable to further assault by her assailants after FCPS's November 21, 2011 meeting with Jane Doe and Jane Doe's parents;

9. Failing to protect Jane Doe from the retaliation of her assailants as a result of her November 21, 2012 verbal

and written report of sexual harassment, verbal and physical abuse, extortion, and bullying at the hands of FCPS's students including on November 21, 2012;

10. Proposing inadequate measures on November 22, 2011 to address Jane Doe's November 21, 2012 written and verbal reports to FCPS's assistant principal *after* Jane Doe was assaulted on school grounds on November 21, 2012;

11. Unreasonably delaying and failing to implement half-hearted measures discussed at Jane Doe's November 22, 2012 meeting with FCSB's assistant principal, Sybil Terry, including failing to move Jane Doe's P.E. locker away from Jane Doe's female assailant, and failing to inform Jane Doe's teachers of:

   a.   Jane Doe's November 21, 2011 verbal and written reports to Sybil Terry that Jane Doe was "scared to come to school" because of verbal abuse by other FCPS students, sexual harassment at Jane Doe's locker and on her school bus at the hands of FCPS students, extortion by Christian Kornegay, verbal abuse, and cyber bullying;

   b.   The results of FCSB's and more specifically, Sybil Terry's sham investigation into Jane Doe's November 21st verbal or written reports, including that she was touched;

   c.   Sybil Terry's findings that Jane Doe was threatened and extorted by another FCPS student, Christian Kornegay;

   d.   Sybil Terry's findings that Christian Kornegay sexually abused Jane Doe.

12. Failing to investigate and take seriously Jane Doe's written and verbal reports of "death threats" communicated to Jane Doe by other FCPS students beginning in December 2011 through February 10, 2012, including Jane Doe's report to Tamara Ballou on February 9, 2012 which was dismissed by Assistant Principal Ballou as "just something kids say";

13. Ignoring Jane Doe's notable distress from November 2011 until February 2012 when Miss Doe was removed from school;

14. Threatening Jane Doe with possible punishment for reporting verbal abuse, death threats, and harassment at the hands of other FCPS students, including on February 8, 2012 when Jane Doe was verbally assaulted;

15. Failing to investigate Jane Doe's rape at the hands of another FCPS student;

16. Failing to provide a safe learning environment for Doe to return to RCMS *after* February 10, 2012;

17. Failing to take disciplinary action against Doe's assailants;

18. Failing to notify Jane Doe or her parents of Jane Doe's rights under Title IX;

19. Isolating Jane Doe from school activities instead of providing accommodations that would permit her to continue her education in a safe environment;

20. Intimidating Jane Doe and her parents from pursuing legal rights;

21. Retaliating against Jane Doe and her parents for reporting peer-on-peer rape and harassment by FCPS students;

279.    FCPS actions and inactions caused Jane Doe to undergo harassment and make her liable or vulnerable to it.

280.    FCPS's deliberate indifference to Jane Doe's sexual harassment and sexual assault deprived her of access to educational opportunities and benefits provided by FCPS.

281.    As a direct and proximate cause of FCPS's violation of Jane Doe's rights under Title IX, Jane Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety, trauma, lost future earnings and earning capacity, and expenses for past and future medical and psychological care.

WHEREFORE, Plaintiff, Jane Doe, demands judgment against all defendants, individually and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, and any relief deemed just and necessary by this Honorable Court.

**-COUNT II-**
**DEPRIVATION OF CONSTITUTIONAL RIGHTS PURSUANT TO THE**
**CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983**
**JANE DOE V. FAIRFAX COUNTY SCHOOL BOARD SYBIL TERRY; AUGUST**
**FRATTALI PHILIP A. HUDSON; TAMARA B. BALLOU; BRENDA HUMPHREY**
**MONIQUE PATWARY-FARUQUE; MEGAN CARR; FRANCIS TARRANT;**
**and JOANNE FRAUNDORFER**

282.    Plaintiff incorporates each and every allegation set forth above.

283.    Generally, state actors are not liable for the acts of third parties unless the state itself creates the danger.

284.    In order to create a danger, the state has to take some affirmative steps.

285.    Liability does not arise when the state stands by and does nothing in the face of danger.

286.    Defendants, acting under the color of state law, Fairfax County School Board, August Frattali, Sybil Terry, Philip A. Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, took affirmative steps which created a danger to Jane Doe which deprived her of her constitutional rights.

287.    As a direct, substantial and proximate result of the danger created by the FCSB, Jane Doe was deprived of her civil rights under the Fourteenth Amendment to the United States Constitution.

288.    As a direct, substantial, and proximate result of the of the state-created danger set forth herein, Jane Doe, was wrongfully and unlawfully deprived of her civil rights which were

afforded to her under the United States Constitution.

289.    As a direct, substantial and proximate result of the state-created danger set forth herein, Plaintiff suffered life-altering injuries.

290.    As a direct, substantial, and proximate result of the of the state-created danger set forth herein, Plaintiff suffered life-altering abuse and trauma described herein.

WHEREFORE, Plaintiff Jane Doe demands judgment against all defendants, individually and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, and any and all relief this Honorable Court deems necessary and just.

### -COUNT III-
### ASSAULT AND BATTERY
### VIRGINIA STATE LAW CLAIMS
### <u>JANE DOE V. CHRISTIAN KORNEGAY</u>

291.    Plaintiff incorporates each and every allegation set forth above.

292.    Defendant, Christian Kornegay, by and through his repeated threats and violent, forcible sexual contact with Jane Doe intended to cause harmful or offensive contact with Jane Doe's person.

293.     Kornegay intended to cause Jane Doe to perceive immediate apprehension of his groping, physical abuse, and unwanted sexual advances.

294.    Jane Doe reasonably believed Kornegay would grope her, physically abuse her, and engage in unwelcomed sexual advances by groping her person.

295.    As a direct, substantial, and proximate result of Kornegay's intended harmful and offensive contact with Jane Doe's person, Jane Doe suffered life-altering neurological, psychiatric, emotional, and physical injuries.

296.    At no point did Jane Doe consent to oral sex, vaginal sex, nor anal sex with

Christian Kornegay.

297.    Kornegay forcibly raped and tortured Jane Doe on multiple occasions.

298.    Kornegay's violent rape of Jane Doe was not excused nor justified.

299.    As a direct, substantial, and proximate result of Kornegay's violent rape and objectively offensive contact with Jane Doe's person, Jane Doe suffered life-altering neurological, psychiatric, emotional, and physical injuries.

WHEREFORE, Plaintiff Jane Doe demands judgment against all defendants, individually and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, nominal damages, punitive damages, and any and all relief this Honorable Court deems necessary and just.

### -COUNT IV-
### ASSAULT AND BATTERY
### VIRGINIA STATE LAW CLAIMS
### JANE DOE V. JENNA OFANO

300.    Plaintiff incorporates each and every allegation set forth above.

301.    Defendant, Jenna Ofano, by and through her repeated threats of violence, intended to cause harmful or offensive contact with Jane Doe's person when threatening Jane Doe's life and bullying Jane Doe as described in this Complaint.

302.    On each of those occasions, Jenna Ofano intended to cause Jane Doe to perceive immediate apprehension of physical abuse and/or unwanted sexual advances.

303.    Jane Doe reasonably believed Jenna Ofano would strike her and/or engage in unwelcomed sexual advances by groping her person.

304.    As a direct, substantial, and proximate result of Ofano's intended harmful and offensive contact with, Jane Doe's person, Jane Doe suffered life-altering neurological, psychiatric, emotional, and physical injuries.

305. At no point did Jane Doe consent to being digitally penetrated, fondled, or physically attacked by Jenna Ofano.

306. As set forth elsewhere in this Complaint, Jenna Ofano intended to and did contact Jane Doe when she held Jane Doe down to the ground, stripped her clothes, and digitally penetrated her vagina.

307. Ofano's violent sexual abuse of Jane Doe was not excused nor justified.

308. Moreover, Jenna Ofano intended to, and did, strike and physically abuse Jane Doe on multiple occasions including in the locker room when Jane Doe was changing for Physical Education class.

309. Ofano's physical abuse of Jane Doe was not excused nor justified.

310. Ofano's conduct was objectively offensive.

311. As a direct, substantial, and proximate result of Ofano's abusive and unwanted sexual touching and objectively offensive contact with Jane Doe's person, Jane Doe suffered life-altering neurological, psychiatric, emotional, and physical injuries.

WHEREFORE, Plaintiff Jane Doe demands judgment against all defendants, individually and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, nominal damages, punitive damages, and any and all relief this Honorable Court deems necessary and just.

**-COUNT V-**
**STATE LAW - GROSS NEGLIGENCE**
**PLAINTIFF V. SYBIL TERRY; AUGUST FRATTALI PHILIP A. HUDSON; TAMARA B. BALLOU: BRENDA HUMPHREY MONIQUE PATWARY-FARUQUE: MEGAN CARR; FRANCIS TARRANT; and JOANNE FRAUNDORFER**

312. Plaintiff incorporates by reference each and every allegation set forth above.

313. Defendants, August Frattali, Sybil Terry, Philip A Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis

Tarrant, had a responsibility to supervise and ensure that all RCMS students, including Jane Doe, have an education in an atmosphere conducive to learning, free of disruption, and threat to person.

314. Defendants, August Frattali, Sybil Terry, Philip A Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, failed to discharge their duties to Jane Doe in a reasonable manner under the circumstances set forth in this Complaint.

315. The conduct and/or inaction of defendants, August Frattali, Sybil Terry, Philip A Hudson, Tamara Ballou, Brenda Humphrey, Joannie Fraundorfer, Megan Carr, Monique Patwary-Faruque, and Francis Tarrant, amounted to an utter disregard of prudence amounting to complete neglect of the safety of Jane Doe.

316. The aforementioned defendants' continual failures to timely investigate Jane Doe's multiple written and verbal reports of death threats, sexual harassment, extortion, and peer-on-peer bullying, their repeated failure to reprimand her reported assailants, their outrageous efforts to blame the victim of peer-on-peer harassment, and their ultimate and pervasive failure to protect Jane Doe from the hostile and disruptive educational environment which they created and that existed from October 2011 until February 2012 when Jane Doe's parents were forced to remove Plaintiff from school, evinced a reckless disregard for Jane Doe's safety.

317. Defendants' gross negligence in failing to supervise and ensure that Jane Doe had an education in an atmosphere conducive to learning, free of disruption, and threat to person as described elsewhere in this Complaint was a direct and substantial cause of the Plaintiff's injuries, damages, and losses.

WHEREFORE, Plaintiff Jane Doe demands judgment against all defendants, individually

and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, and any relief deemed just and necessary by this Honorable Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

    a.  This Court grant Plaintiff compensatory damages.

    b.  This Court award Plaintiff attorney's fees, costs, and expenses related to this action.

    c.  This Court award Plaintiff all such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Respectfully submitted,

By:    */s/ William H. O'Brien*
        **DOUMMAR & O'BRIEN**
        William H. O'Brien
        Counsel for Plaintiff
        1397 Laskin Road
        Virginia Beach, VA 23451
        happy@doummarandobrien.com
        Telephone 757-422-0061
        Fax 757-422-5512

BY:    */s/ Thomas N. Sweeney*
        **MESSA & ASSOCIATES, P.C.**
        Thomas N. Sweeney, Esquire
        (Virginia Bar No. 94276)
        Joseph L. Messa, Jr., Esquire
        (Virginia Bar No. 94393)
        Attorneys for Plaintiff

Dated: November 27, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2019, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to counsel of record for all parties.

*/s/ William H. O'Brien*
**DOUMMAR & O'BRIEN**
William H. O'Brien (VSB No. 45715)
Counsel for Plaintiff