IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00917 (RDA/TCB) |
| | ) | |
| F.C.S.B., *et al.* | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

This matter comes before the Court on four categories of filings.

The first category concerns motions to strike Plaintiff B.R.'s ("Plaintiff") Amended Complaint (Dkt. 37). Included in this category of motions are Defendant Fairfax County School Board's ("Defendant F.C.S.B.") Motion to Strike Amended Complaint ("Motion to Strike") (Dkt. 42); Defendants A.F., P.A.H., T.B., B.H., M.P.F., M.C., F.T., and J.F.'s ("Individual School Defendants") Notice Joining in Motion to Strike (Dkt. 45) and Defendant J.O.'s Motion to Join Defendant F.C.S.B.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike Amended Complaint (Dkt. 46) (collectively referred to as the "Motions to Join F.C.S.B.'s Motion to Strike"); and Plaintiff's Opposition to Defendant F.C.S.B.'s Motion to Strike (Dkt. 70).

The second category pertains to motions to dismiss Plaintiff's Amended Complaint (Dkt. 37). The filings in this category are Defendant F.C.S.B.'s Motion to Dismiss Amended Complaint (Dkt. 53); the Individual School Defendants' Motion to Dismiss Amended Complaint (Dkt. 56); Defendant J.O.'s Motion to Dismiss Amended Complaint (Dkt. 66); Defendant C.K.'s Motion to Dismiss Amended Complaint (Dkt. 59); Plaintiff's Opposition to Defendant F.C.S.B.'s Motion to

Dismiss Amended Complaint (Dkt. 71); Plaintiff's Opposition to the Individual School Defendants' Motion to Dismiss the Amended Complaint (Dkt. 72); Defendant F.C.S.B.'s Reply to Plaintiff's Opposition to Defendant F.C.S.B.'s Motion to Dismiss Amended Complaint (Dkt. 74); and the Individual School Defendants' Reply (Dkt. 75).

The third category is centered around the motions to dismiss Plaintiff's original Complaint ("Original Complaint") (Dkt. 1). This category of filings is comprised of Defendant F.C.S.B.'s Motion to Dismiss ("Defendant F.C.S.B.'s Motion to Dismiss Original Complaint") (Dkt. 17); Defendant J.O.'s Motion to Join F.C.S.B.'s Motion to Dismiss Original Complaint (Dkt. 46); the Individual School Defendants' Motion to Dismiss ("The Individual School Defendants' Motion to Dismiss the Original Complaint") (Dkt. 19); and Defendant C.K.'s ("Defendant C.K.") Motion to Dismiss ("Defendant C.K.'s Motion to Dismiss Plaintiff's Original Complaint") (Dkt. 30), and Motion to Join Motion to Dismiss filed by Co-Defendants ("Motion to Join the Individual School Defendants' Motion to Dismiss Plaintiff's Original Complaint") (Dkt. 30).

The fourth category concerns Plaintiff's Motion for Leave to Proceed Under Pseudonym ("Pseudonym Motion") (Dkt. 38). This category includes Plaintiff's Pseudonym Motion (Dkt. 38); Defendant F.C.S.B.'s Response to Plaintiff's Pseudonym Motion (Dkt. 62); the Individual School Defendants' Opposition to Plaintiff's Pseudonym Motion (Dkt. 63); Defendant C.K.'s Response to Plaintiff's Pseudonym Motion (Dkt. 64); and Defendant J.O.'s Opposition to Plaintiff's Pseudonym Motion (Dkt. 65).

Considering the Complaint (Dkt. 1), the Amended Complaint (Dkt. 37), Defendant C.K.'s Answer to Plaintiff's Original Complaint (Dkt. 9), Defendant J.O.'s Answer to Defendant C.K.'s Original Complaint (Dkt. 11), Defendants' Supplemental Brief on the Policy Aspects of the Jurisdictional Question (Dkt. 81), Plaintiff's Supplemental Brief in Support of Motion to Proceed

Under a Pseudonym (Dkt. 80), each of the aforementioned motions and the accompanying briefs in support, and oral argument before this Court on January 24, 2020, it is hereby ORDERED that Defendant F.C.S.B.'s Motion to Strike (Dkt. 42) is DENIED;

IT IS FURTHER ORDERED that the Individual School Defendants' and Defendant J.O.'s Motions to Join (Dkt. Nos. 45 and 46) Defendant F.C.S.B.'s Motion to Strike are GRANTED;

IT IS FURTHER ORDERED that Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 53) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that the Individual School Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 56) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Defendant J.O.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 66) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Defendant C.K.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 59) is DENIED;

IT IS FURTHER ORDERED that Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 17) is DENIED as moot;

IT IS FURTHER ORDERED that Defendant J.O.'s Motion to Join Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 46) is DENIED as moot;

IT IS FURTHER ORDERED that the Individual School Defendants' Motion to Dismiss the Original Complaint (Dkt. 19) is DENIED as moot;

IT IS FURTHER ORDERED that Defendant C.K.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 30) is DENIED as moot;

IT IS FURTHER ORDERED that Defendant C.K.'s Motion to Join the Individual School Defendants' Motion to Dismiss Plaintiff's Original Complaint (Dkt. 3), is DENIED as moot; and

3

IT IS FURTHER ORDERED that Plaintiff's Pseudonym Motion (Dkt. 38) is GRANTED in part and DENIED in part.

The Clerk of Court is directed to amend the names of all parties listed on the docket to reflect the initials set forth on page one of this Order.

## I.   BACKGOUND

### A.   Factual Background

The following facts are set forth by Plaintiff in the Amended Complaint. Dkt. 37. For purposes of considering the motions to dismiss for failure to state a claim, the Court assumes all facts in the Amended Complaint to be true.

The allegations in Plaintiff's Amended Complaint are as follows.

During the 2011 – 2012 school year, Plaintiff was a 12-year-old, seventh-grade student at a certain middle school in Fairfax County, Virginia. *Id.* at ¶¶ 6, 11, 14.

Beginning around October 30, 2011, Plaintiff began receiving unwelcomed sexual advances from one of her fellow classmates.[1] *Id.* at ¶ 92. Following these unwelcomed advances, other students at Plaintiff's middle school began to spread rumors about Plaintiff and called her sexually explicit and distasteful names. *Id.* at ¶ 94.

On about October 31, 2011, while at school and before classes had begun, multiple students[2] surrounded Plaintiff at her locker. *Id.* at ¶ 95. These students called Plaintiff names, "thrusted their pelvises at [Plaintiff], [and] made unwelcomed sexual advances towards [Plaintiff]." *Id.* at ¶ 95.

---

[1] This individual is not a party to this lawsuit, and their name is not relevant for purposes of considering the pending motions before the Court.

[2] The names of these students were not specified in Plaintiff's Amended Complaint.

One day,[3] after Plaintiff left her homeroom class, "Plaintiff's peers surrounded, touched, and called her names when she changed classes [and] returned to her locker to change textbooks." *Id.* at ¶ 105. "[M]ale students"[4] at the middle school "accosted [Plaintiff] at her locker" not only "before [Plaintiff's] first period class," but also "in between her classes." *Id.* at ¶ 97. These "peers fondled [Plaintiff] and placed their hands under her shirt, down her pants, up her skirt, made lewd sexual comments to her, teased her, and threatened her." *Id.* at ¶ 98. These encounters caused Plaintiff to be afraid to go to her locker and to be late to class. *Id.* at ¶ 99.

On November 1, 2011, Plaintiff told "her teachers" and the school's hallway monitors that were stationed near Plaintiff's locker that "a group of teenage boys called her names, touched her, hurt her, and made her feel uncomfortable when she went to her locker." *Id.* at ¶ 96.

Specifically, Plaintiff told her homeroom teacher, Defendant M.C., that she was late for class because, while at her locker, she was being "hurt" by her classmates. *Id.* at ¶ 101. In response, Defendant M.C. was "deliberately indifferent" and did not investigate Plaintiff's claims. *Id.* at ¶ 103.

Defendant F.T., another one of Plaintiff's teachers, was a hallway monitor near Plaintiff's locker, and he witnessed the attacks against Plaintiff. *Id.* at ¶ 106. Although Defendant F.T. witnessed the unwelcomed indiscretions, and Plaintiff "frequently" asked Defendant F.T. for help, Defendant F.T. remained "deliberately indifferent," "did nothing to help [Plaintiff]," and "did not investigate or discipline [Plaintiff's assailants]."[5] *Id.* at ¶ 109.

---

[3] The Amended Complaint is silent as to the specific dates when these actions took place.

[4] The names of these students were not specified in Plaintiff's Amended Complaint.

[5] The names of these assailants were not specified in Plaintiff's Amended Complaint.

5

Additionally, Plaintiff told Defendant M.P.T., another one of Plaintiff's teachers, that Plaintiff felt "unsafe and was bullied in the hallways." *Id.* at ¶ 110. Defendant M.P.T. was also "deliberately indifferent," and did not investigate Plaintiff's claims. *Id.* at ¶ 111.

"School officials"[6] directed Plaintiff to speak with one of the school's guidance counselors, Defendant B.H., for help. *Id.* at ¶ 112. Defendant B.H., however, was also "deliberately indifferent," and told Plaintiff she was "too busy" to meet with Plaintiff. *Id.* at ¶ 113. Defendant B.H. told Plaintiff to come back "the following day." *Id.* at ¶ 114.

"At school the next day," Plaintiff's peers continued to harass her, and so Plaintiff returned to Defendant B.H. for guidance. *Id.* at 115. However, Defendant B.H. remained "deliberately indifferent" and maintained that she was unavailable to speak with Plaintiff. *Id.* at ¶ 117.

"Later that week," Plaintiff saw Defendant B.H. in one of the middle school's hallways. *Id.* ¶ 118. There, Plaintiff told Defendant B.H. that she still felt unsafe and needed help. *Id.* However, Defendant B.H. was steadfast in her unwillingness to help Plaintiff. *Id.* at ¶ 119. Despite Plaintiff's "repeated[ ]" requests for help, Defendant B.H. "made no effort to meet with" Plaintiff. *Id.*

"After [Defendant B.H.] repeatedly ignored [Plaintiff's] pleas for help, [Plaintiff] returned to the student services office and asked to speak with another [ ] guidance counselor." *Id.* at ¶ 122. Accordingly, Plaintiff then told Defendant J.F., another guidance counselor, that "she felt uncomfortable in the hallways and that she feared for her safety because she was being touched

---

[6] The Amended Complaint is silent as to which school officials instructed Plaintiff to see B.H. *Id.* at ¶ 112. It is unclear whether the school officials that gave Plaintiff these instructions are Defendants in the instant matter.

6

inappropriately by male students."[7] *Id.* at ¶ 123. Defendant J.F. was also "deliberately indifferent" and merely advised Plaintiff that "the bullying would cease over time." *Id.* at ¶ 124.

However, the bullying "grew worse." *Id.* at ¶ 126. Students began bullying Plaintiff not only before and in between classes, but "on her bus ride home from school and off campus." *Id.* at ¶ 127.

Then, "in early November of 2011," Plaintiff was "sexually assaulted" by two of her classmates – Defendants C.K. and J.O. *Id.* at ¶ 128. That day, Defendant J.O. approached Plaintiff in gym class and asked Plaintiff if, after school that day, Plaintiff wanted "hang out" with both Defendant J.O. and an older student at the middle school, Defendant C.K. *Id.* at ¶ 129. Plaintiff said no. *Id.* at ¶ 130. Nevertheless, Defendants J.O. and C.K. followed Plaintiff as she was walking home from school, and Defendants J.O. and C.K. "tackled [Plaintiff] from behind and held [Plaintiff] to the ground." *Id.* at ¶ 132. Defendants J.O. and C.K. then "removed [Plaintiff's] clothing, digitally penetrated [Plaintiff's] vagina, and fondled [Plaintiff's] breasts." *Id.* at ¶ 133. Defendant C.K. proceeded to sit on top of Plaintiff while Defendant J.O. "photographed [Plaintiff], using a cell phone as [Plaintiff] lay helpless with her shirt and pants removed." *Id.* at ¶ 134. Defendants C.K and J.O. threatened Plaintiff that if she refused to perform oral sex on Defendant C.K., that Defendants C.K. and J.O. would send the nude pictures of Plaintiff to other middle school students. *Id.* at ¶ 136. Defendants C.K. and J.O. then forced Plaintiff to "perform oral sex on [Defendant C.K.]." *Id.* at ¶ 135.

The day after the attack, at school Defendants C.K. and J.O. told students that Plaintiff was "sexually promiscuous." *Id.* at ¶ 137. Students then further "bullied" Plaintiff at school. *Id.* at ¶ 138.

---

[7] The names of these "male students" are not specified in the Amended Complaint.

On November 9, 2011, Plaintiff took the "late bus" home from school. *Id.* at ¶ 139. When Plaintiff arrived at her bus stop, Defendant C.K. was there waiting for Plaintiff. *Id.* at ¶ 139. Defendant C.K. proceeded to "brandish[ ] a knife and threaten[ ] [Plaintiff] with physical violence if [Plaintiff] did not follow [Defendant C.K.] to a secluded area nearby." *Id.* at ¶ 140. Defendant C.K. then "cut [Plaintiff] with his knife, held her to the ground against her will, and removed her clothing." *Id.* at ¶ 141. Again, Defendant C.K. forced Plaintiff "to perform oral sex." *Id.* at ¶ 142. During this attack, Defendant C.K. "threatened to kill [Plaintiff] and her family if [Plaintiff] did not satisfy [Defendant C.K.'s] sexual demands." *Id.* at ¶ 143.

Defendant C.K. then "raped [Plaintiff] nearly every day after school, at or near her bus stop until November 21, 2011." *Id.* at ¶ 144. Plaintiff described "each rape" as increasingly more violent and more emotionally abusive and threatening. *Id.* at ¶ 145. On days where Plaintiff tried to avoid Defendant C.K., Defendant C.K. "caught [Plaintiff] and beat [Plaintiff] with his fist until [Plaintiff] submitted." *Id.* at ¶ 146. Not only did Defendant C.K. beat Plaintiff, but he "burn[ed] her with his lighter and cut [Plaintiff] with his knife." *Id.* at ¶ 147. Defendant C.K. also "penetrated [Plaintiff's] vagina with his foot or his hand," telling Plaintiff that he was "grooming Plaintiff for the enjoyment of his 'friends.'" *Id.* at ¶¶ 148, 149. Defendant C.K. told Plaintiff that she was Defendant C.K.'s property, and that he would kill Plaintiff and her family if Plaintiff "ever told anyone of the violent rapes." *Id.* at ¶ 150.

From November 9, to November 21, 2011, Defendant C.K. followed Plaintiff to and from her classes causing Plaintiff to be "constantly in fear for her life." *Id.* at ¶¶ 151, 153. Even though Plaintiff "repeatedly sought the assistance of [Fairfax County Public School][8] personnel and

---

[8] "Fairfax County Public School" is not a party to this lawsuit.

guidance counselors during this time frame, they did not provide her any help because of their deliberate indifference." *Id.* at ¶ 154.

On November 21, 2011, Plaintiff and her mother met with Defendants S.T. and P.H., who were then assistant principals at Plaintiff's middle school, and Defendant B.H., to discuss a "sexually explicit voicemail that [Defendant C.K.] placed to [Plaintiff] on November 14, 2011." *Id.* at ¶ 155. At the meeting, Plaintiff's mother told Defendants B.H., S.T., and P.H. that Defendant C.K. stole $50.00 from Plaintiff. *Id.* at ¶ 156. Plaintiff also told Defendants S.T., P.H., and B.H. that Plaintiff was "scared to come to school, feared for her safety . . . , and that she was the victim of peer-to-peer sexual harassment" at the school, identifying Defendants C.K. and J.O. as the assailants. *Id.* at ¶¶ 157, 158. Plaintiff also provided Defendants S.T., P.H., and B.H. with a written statement summarizing the accounts. *Id.* at ¶ 159. During the meeting, Plaintiff further mentioned that other students were sexually harassing her at school, but she did not know their names. *Id.* at ¶ 163.

In response, Defendant S.T., who had a personal relationship with Defendant C.K. and his family "warned" Plaintiff and her mother that Defendant C.K. "had been in enough trouble," and asked Plaintiff and her mother not to "ruin a kid's life." *Id.* at ¶ 160 (internal citations omitted). However, Defendants S.T., P.H., and B.H. advised Plaintiff and her mother that they would investigate. *Id.* at ¶ 161. Yet, Defendants S.T., P.H., and B.H. did nothing to investigate the identities of the other students, which were sexually harassing Plaintiff. *Id.* at ¶ 163. Defendant B.H. told Plaintiff's mother that the school did not "'have the manpower to protect [Plaintiff].'" *Id.* at ¶ 210.

Further, during the pendency of the investigation, administrators at Plaintiff's school did nothing to "safeguard" Plaintiff from Defendants C.K., J.O., or any of the other students that

attacked Plaintiff. *Id.* at ¶ 164. On the same day that Plaintiff and her mother met with Defendants S.T., P.H., and B.H., Defendant J.O. "physically assault[ed Plaintiff] before the school day ended," and Plaintiff's "peers sexually harassed [Plaintiff]." *Id.* at ¶ 165.

Plaintiff's mother told employees of the Fairfax County Public Schools that Plaintiff "would be removed from [the middle] school until after the Thanksgiving break until [Fairfax County Public Schools] completed its 'investigation' into [Plaintiff's] complaints." *Id.* at ¶ 166. Within 24 hours of this notification, however, administrators completed the investigation, contacted Plaintiff's parents, and asked that Plaintiff's parents come to the middle school to discuss their findings. *Id.* at ¶ 167.

On November 22, 2011, "[Fairfax County Public School] administrators claimed [Plaintiff] mutually agreed to meet [Defendant C.K.]."[9] Defendant S.T. told Plaintiff's parents that "her investigation" caused her to believe that Plaintiff was "'sexually active' with [Defendant C.K.]." *Id.* at ¶ 169. Defendant S.T. "ignored, however, signs that [Defendant C.K.] forcibly [and] sexually assaulted [Plaintiff]." *Id.* at ¶ 170. Defendant S.T. denied that Defendant C.K. was bullying Plaintiff, describing what happened between Plaintiff and Defendant C.K. as a "boy-girl thing." *Id.* at ¶ 171. Defendant S.T. did note, however, that Defendant C.K. "extorted'" $50.00 from Plaintiff but declined to "punish or reprimand" Defendant C.K. for this action. *Id.* at ¶ 174.

Defendants S.T. and P.H. told Plaintiff and her parents that they would put Plaintiff's teachers on notice of the reports of harassment and bullying, so that the teachers could be on the lookout for 'such behavior in the hallways and near [Plaintiff's] locker throughout the school day." *Id.* at ¶ 177. However, "[Fairfax County Public Schools]" failed to do so. *Id.* at ¶ 183. Plaintiff's

---

[9] The Amended Complaint does not specify every administrator that was present at the meeting.

drama teacher[10] admitted to Plaintiff that she was never advised that Plaintiff was being bullied. *Id.* at ¶ 184.

Additionally, Defendant P.H. and S.T. indicated that they would move Plaintiff's locker for her physical education class away from Defendant J.O.'s in closer view of the physical education teacher. *Id.* at ¶ 178. Yet, Plaintiff's physical education class locker was moved to an area outside of the view of the physical education teacher, where Plaintiff was "subjected to physical assault and bullying at the hands of Defendant [J.O.]" *Id.* at ¶ 180.

Plaintiff's classmates then began to "retaliate" against Plaintiff for "snitching." *Id.* at ¶ 185. Students told Plaintiff that Defendant C.K. "had a gun . . . [,] that [he] was not afraid to use it, and that [Defendant C.K.] was going to kill [Plaintiff]." *Id.* at ¶ 186.

On December 14, 2011, during Plaintiff's history class, a "male classmate put his hands down [Plaintiff's] pants." [11] *Id.* at ¶ 188. When Plaintiff reported to Defendant M.P.F. that a student was "grabbing [Plaintiff] by her genitalia . . . down there," Defendant M.P.F. told Plaintiff that "she 'needs to learn to be a big kid'" and that Plaintiff needed to "'deal with the situation [her]self.'" *Id.* at ¶¶ 189, 212, 213. When Plaintiff tried to "move away from this attacker," Defendant M.P.F. "commanded that [Plaintiff] sit near her attacker." *Id.* at ¶ 215.

In early December of 2011, Plaintiff had to stay late at the middle school to receive help from her Spanish teacher.[12] *Id.* at ¶ 190. When Plaintiff left the classroom, "a male student accosted [Plaintiff] in the hallway."[13] *Id.* at ¶ 191. This unnamed student "forced [Plaintiff] into

---

[10] The Amended Complaint is silent as to the name of Plaintiff's former drama teacher.

[11] The name of the male classmate is not specified in the Amended Complaint.

[12] The Amended Complaint does not specify who this teacher was.

[13] The Amended Complaint does not specify who the male student was.

a maintenance closet where [Plaintiff] was assaulted by three, unidentified, Spanish[-]speaking adult males."[14] *Id.* at ¶ 192. This incident was "the first time [Plaintiff] was raped at school." *Id.* at ¶ 193.

"Beginning in December 2011 and continuing through February 2012, [Defendant C.K.] and other students[15] raped [Plaintiff] on . . . campus *during* and *after* school hours." *Id.* at ¶ 194 (emphasis in original). "Each and every time [Plaintiff] was raped on [school] property, a . . . teacher and/or staff member [of the school] was located nearby." *Id.* at ¶ 195.

Plaintiff continued to report to her teachers that she was "repeatedly sexually harassed and bullied and that she feared for her life and safety." *Id.* at ¶ 219. On January 27, 2012, Plaintiff emailed the principal of the school, Defendant A.F., recounting how she had been "'sexual[ly] harass[ed], physical[ly] harass[ed], and [called] name[s].'" *Id.* at ¶ 220. Plaintiff also asked Defendant A.F. to "educate [the school's] students on the meaning [of] bullying and its effect on victims to prevent further sexual harassment, physical assaults, and name calling." *Id.* at ¶ 221.

On January 27, 2012, Defendants A.F., P.H., and T.B. met with Plaintiff's parents to discuss the school's handling of Plaintiff's reports that students were retaliating against Plaintiff for "snitching." *Id.* at ¶ 222. Defendants P.H. and T.B. expressed that they did not know "what else the school could do to help," and did not investigate additional threats. *Id.* at ¶ 224. "They[16] discouraged [Plaintiff] from reporting and speaking out against her bullies and instead treated [Plaintiff] as if *she* was a 'distraction' to her peers." *Id.* at ¶ 226 (emphasis in original).

---

[14] The Amended Complaint does not specify who the adult males were.

[15] The Amended Complaint does not specify who these other students were.

[16] The Amended Complaint does not specify who "they" were.

On February 9, 2012, in the cafeteria, "an unknown . . . student called [Plaintiff]" sexually explicit and derogatory names. *Id.* at ¶ 227. Plaintiff was disciplined for "standing up for herself." *Id.* at ¶ 228. That same day, Plaintiff reported that she received multiple death threats from classmates and that she felt unsafe. *Id.* at ¶ 229. "Fairfax County Public Schools" did not investigate the threats. *Id.* at ¶ 231. Defendant T.B. described the reported death threats as "just something kids say." *Id.* at ¶ 230.

That same day, Plaintiff's parents picked Plaintiff up from school early, out of concern for Plaintiff's safety. *Id.* at ¶ 232. The next day, Plaintiff's parents withdrew Plaintiff from school at the recommendation of Plaintiff's physicians. *Id.* at ¶ 233.

On February 10, 2012, Plaintiff's parents advised the school's "superintendents"[17] of "the sexual harassment and abuse [Plaintiff] endured at school." *Id.* at ¶ 237.

At a meeting on February 16, 2012, one of the superintendents advised Plaintiff's parents that "Fairfax County Public Schools" would investigate the allegations of bullying and harassment. *Id.* at ¶ 238.

On March 1, 2012, Plaintiff's parents learned that Defendant C.K. had raped Plaintiff. *Id.* at ¶ 239. Consequently, the next day, Plaintiff's parents filed a police report. *Id.* at ¶ 240. Plaintiff was then interviewed by a detective and underwent a "Sexual Assault Nurse Examiner" evaluation, which "corroborated [Plaintiff's] report[s] . . . ." *Id.* at ¶ 241-243. On March 6, 2012, the investigating detective met with Defendant A.F. *Id.* at ¶ 244. On March 7, 2012, Plaintiff's physician forbade Plaintiff from returning to her former school. *Id.* at ¶ 245.

"Fairfax County Public Schools" did not require the students who Plaintiff claimed attacked her to leave the middle school. *Id.* at ¶ 247.

---

[17] The "superintendents" names were not specified in the Amended Complaint.

On June 29, 2012, "upon inquiry from [Plaintiff's] mother, one of the school's superintendents advised [Plaintiff] and her parents that the allegations of sexual harassment, touching, taunting, name-calling, physical violence, and bullying reported by [Plaintiff], could not be verified by" school officials. *Id.* at ¶ 257.

For the remainder of Plaintiff's seventh-grade and all of Plaintiff's eighth-grade years, Plaintiff received "Homebound Instruction." *Id.* at ¶ 258.

These are the allegations supporting Plaintiff's Amended Complaint.

## B.  Procedural Background

On July 12, 2019, Plaintiff filed her Original Complaint in this Court. Dkt. 1. The Original Complaint set forth the following six claims: (1) a Title IX violation, (2) a § 1983 claim, (3) a claim of assault and battery under Virginia state law, (4) a second claim of assault and battery under Virginia state law, (5) a second § 1983 claim, and (6) gross negligence under Virginia state law. Dkt. 1. Defendant C.K. was the first of the Defendants to respond to this action when, on October 10, 2019, he filed an answer to Plaintiff's Original Complaint. Dkt. 9. On October 30, 2019, Defendant J.O. filed her answer to Plaintiff's Original Complaint. Dkt. 11.

Then, on November 15, 2019, Defendant F.C.S.B. filed a Motion to Dismiss Plaintiff's Original Complaint for lack of jurisdiction and failure to state a claim. Dkt. 17. Defendant J.O. moved to join Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Original Complaint. Dkt. 46. That same day, the Individual School Defendants also filed a Motion to Dismiss Plaintiff's Original Complaint for lack of jurisdiction and failure to state a claim. Dkt. 19. Ten days later, Defendant C.K. also filed a Motion to Dismiss Plaintiff's Original Complaint, similarly alleging that the Court lacked jurisdiction over Plaintiff's claims and that the claims that Plaintiff did plead,

failed to state a claim. Dkt. 30. On November 26, 2019, Defendant C.K. also moved to join Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Amended Complaint. Dkt. 33.

On November 27, 2019, while the Defendants' motions to dismiss were pending, Plaintiff filed her Amended Complaint. Dkt. 37. Plaintiff's Amended Complaint set forth the following five claims: (1) a violation of Title IX; (2) a § 1983 claim; (3 and 4) two counts of assault and battery under Virginia State law; and (5) gross negligence in violation of the Virginia Code. Dkt. 37. The same day, Plaintiff also filed her Motion to Proceed Under Pseudonym. Dkt. 38.

Five days later, Defendant F.C.S.B. moved to strike Plaintiff's Amended Complaint. Dkt. 42. The Individual School Defendants (Dkt. 45) and Defendant J.O. (Dkt. 46) moved to join Defendant F.C.S.B.'s Motion to Strike Plaintiff's Amended Complaint. On December 16, 2019, Plaintiff opposed the Motion to Strike Plaintiff's Amended Complaint. Dkt. 70.

On December 4, 2019, Defendant F.C.S.B. filed its Motion to Dismiss Plaintiff's Amended Complaint, arguing that Plaintiff lacked the requisite permission from the Court to amend her Original Complaint; reiterating its argument that the Court lacked jurisdiction over Plaintiff's claims; and maintaining that Plaintiff's Amended Complaint failed to state a claim. Dkt. 53. That same day, the Individual School Defendants also filed a Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 56), followed by Defendant C.K., who, on December 10, 2019, filed a Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 59). On December 11, 2019, Defendant J.O., also filed a Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 66). Plaintiff opposed Defendant F.C.S.B.'s and the Individual School Defendants' Motions to Dismiss Plaintiff's Amended Complaint. Dkt. Nos. 71, 72.

On December 11, 2019, all of the Defendants responded to Plaintiff's Motion to Proceed by Pseudonym. Dkt. Nos. 62-65.

On January 24, 2020, this Court heard argument on all of the pending motions. Dkt. 76. At argument, the Court requested supplemental briefing on the policy considerations relating to the issue of subject matter jurisdiction. Dkt. 77, 25:1-10. Accordingly, Plaintiff and Defendant F.C.S.B., who was joined by the other Defendants, submitted supplemental briefs on the issue of subject matter jurisdiction. Dkt. Nos. 80, 81.

This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). A district court must dismiss an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that the federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Contr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the district court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district

court is then free to weight the evidence to determine the existence of jurisdiction. *Adams*, 697

F.2d at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence

of disputed material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### B. Motion to Dismiss for Failure to State a Claim

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately

stated claim is "supported by showing any set of facts consistent with the allegations in the

complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see*

Fed. R. Civ. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation

of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions

devoid of further factual enhancement." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief

that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most

favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.

*E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Mylan Lab., Inc.*

*v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also

examine "documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

"Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted.

*Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc.*, 213 F.3d at 180

("While we must take the facts in the light most favorable to the plaintiff, we need not accept the

legal conclusions drawn from the facts . . . . [s]imilarly, we need not accept as true unwarranted

inferences, unreasonable conclusions, or arguments.").

## III. DISCUSSION

### A. Category One: The Motions to Strike Plaintiff's Amended Complaint

#### i. Defendant F.C.S.B.'s Motion to Strike

Defendant F.C.S.B. moves this Court to strike Plaintiff's Amended Complaint for two

reasons. First, because Plaintiff filed her Amended Complaint without leave of Court in violation

of Federal Rule of Civil Procedure 15(a)(1).

Second, Defendant F.C.S.B. maintains that the Court should deny Plaintiff's request for

leave to amend[18] because "the Amended Complaint would not save the federal claims from the

statute-of-limitations bar." Dkt. 44, 5. Defendant F.C.S.B. maintains that Plaintiff's failure to

"obtain permission [from the Court]" prior to filing her original Complaint to proceed under

pseudonym is a subject matter jurisdictional defect. *Id.* at 5-6. Defendant F.C.S.B. urges that this

defect could not now be cured because even if Plaintiff now obtained leave to proceed by

pseudonym, "that permission would not relate back to the time of [filing of] the original

[C]omplaint." Dkt. 44, 1.

Considering Defendant F.C.S.B.'s first point, the Court notes that pursuant to Rule 15,

Plaintiff was required to obtain leave of Court before filing her Amended Complaint.

---

[18] After Defendant F.C.S.B. filed its Motion to Strike, Plaintiff filed her Opposition Brief in which though vehemently opposing Defendant's Motion to Strike, requested "that this Court grant her leave to file the Amended Complaint" in the first full paragraph of page five of her Opposition Brief. Dkt. 70, 5.

With respect to Defendant F.C.S.B.'s second argument, this Court declines to find that, in this case, failure to receive leave to proceed under pseudonym is a jurisdictional defect. Accordingly, this Court grants Plaintiff's request to amend her Complaint because justice so requires.

### a.   *Whether Plaintiff was Required to seek Leave to Amend*

Plaintiff was required to seek leave to amend her Complaint as directed by the plain language of Rule 15, the Advisory Committee Notes, and highly-persuasive caselaw.

As reflected in the chart below, on July 12, 2019, Plaintiff filed her Original Complaint. Dkt. 1. On October 10, 2019, Defendant C.K. responded to Plaintiff's Complaint with an answer, followed by Defendant J.O., who on October 30, 2019, answered Plaintiff's Original Complaint on October 30, 2019. Dkt. Nos. 9 and 11. Without ever filing an answer to Plaintiff's Complaint, on November 15, 2019, Defendant F.C.S.B. moved to dismiss Plaintiff's Original Complaint arguing that it failed to state a claim and that the Court lacked jurisdiction over Plaintiff's claims. Dkt. 17. The same day, the Individual School Defendants and Defendant C.K.[19] filed another Motion to Dismiss for lack of jurisdiction. Dkt. Nos. 19 and 30. On November 27, 2019, Plaintiff filed the Amended Complaint – 36 days after Defendant C.K. filed the first responsive pleading to Plaintiff's Complaint, and 12 days after Defendant F.C.S.B., the Individual School Defendants, and Defendant C.K. filed their Motions to Dismiss Plaintiff's Original Complaint. Dkt. Nos. 37 and 9.

| Filing | Date Filed |
| --- | --- |

---

[19] Defendant C.K. moved to join the Individual School Defendant's Motion to Dismiss Plaintiff's Original Complaint. Dkt. 30. For the reasons provided below, this Court grants Defendant C.K.'s Motion to Join the Individual School Defendant's Motion to Dismiss Plaintiff's Original Complaint (*supra,* p. 28-29).

| Plaintiff's Original Complaint (Dkt. 1) | July 12, 2019 |
|---|---|
| Defendant C.K.'s Answer (Dkt. 9) | October 10, 2019 |
| Defendant J.O's Answer (Dkt. 11) | October 30, 2019 |
| Defendant F.C.S.B.'s Motion to Dismiss Original Complaint (Dkt. 17) | November 15, 2019 |
| Individual School Defendants' Motion to Dismiss Original Complaint (Dkt. 19) | November 15, 2019 |
| Plaintiff Filed Amended Complaint (Dkt. 37) | November 27, 2019 |

Defendant F.C.S.B. explains that leave of Court was required because "[u]nder [Federal Rule of Civil Procedure] 15(a)(1)(B), the 21 days' time in which a plaintiff [may] amend without leave of court runs from the 'earlier' date that the first-responding defendant answered, not from the later date that the remaining defendants filed their Rule 12(b) motions." Dkt. 44, 2-3. Defendant F.C.S.B. thereby reasons that "[t]he period to amend was not extended by the Rule 12(b) motions filed by the [Defendant F.C.S.B.] and Individual School Defendants." Dkt. 44.

Plaintiff counters that her "right to file an amended complaint in response to a motion to dismiss exists even if other defendants have filed responsive pleadings," and effectively, her period to amend runs specific as to each Defendant. Dkt. 70. Plaintiff's position is that because she filed her Amended Complaint within 21 days of Defendant F.C.S.B.'s filing of its Motion to Dismiss Plaintiff's Original Complaint, Plaintiff did not need leave of Court to amend. *Id*. Plaintiff avers that it is of no moment that more than 21 days had elapsed since Defendant C.K. filed his Answer to Plaintiff's Original Complaint. *Id*.

The Court finds that Plaintiff's argument on this point is not supported by the plain language of the rule. Federal Rule of Civil Procedure 15(a)(1)(B) expressly provides that

> [a] party may amend its pleading *once* as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is

required, 21 days after service of a responsive pleading or 21 days after service of
a motion under Rule 12(b),(e), or (f), *whichever is earlier*.

Fed. R. Civ. P. 15(a)(1)(B) (emphasis added).

There are three key words and phrases in the plain language of Rule 15, which demonstrate
why Plaintiff's argument fails: "once," "or," and "whichever is earlier." *See* Fed. R. Civ. P.
15(a)(1)(B).

First, Rule 15 indicates that a party only has *one* opportunity to amend as of course. Fed.
R. Civ. P. 15(a)(1)(B) ("[a] party may amend its pleading *once* as a matter of course . . . ."). To
apply Plaintiff's reading of Rule 15 would allow litigants multiple opportunities to amend as of
right – once after one defendant moves to dismiss or responds to a pleading and again when another
defendant does the same.

Second, when a plaintiff files a pleading that requires a responsive pleading, such as a
complaint, that party may amend without leave of court either 21 days after "a responsive
pleading" is filed "*or* 21 days after service of a motion." The word "or," though only two letters,
has a profound impact on how Rule 15(a)(1)(B) must be read.  The use of the word "or" is
disjunctive and indicates that only one of the two referenced timeframes is applicable.

Third, the phrase "whichever is earlier" provides further clarity as to when a party may
amend its pleading.  Because there is only one opportunity to amend, the phrase "whichever is
earlier" indicates the time from which a plaintiff would have 21 days to amend its complaint. *See*
Fed. R. Civ. P. 15(a)(1)(B). The Merriam-Webster Dictionary defines the word "whichever" as
"being whatever one or ones out of a group . . . ." MERRIAM-WEBSTER DICTIONARY,
http://www.merriam-webster.com/dictionary/whichever (last visited Feb. 21, 2020). The relevant
"group" contemplated by Rule 15(a) is a group of possible timeframes from which a litigant may
amend its responsive pleading. Fed. R. Civ. 15(a)(1)(B). The timeframes considered in the group

21

are either 21 days after service of a responsive pleading or 21 days after service of specified motions. *Id.* Bearing in mind the definition of the word "whichever," the notion that only one of the two potential timeframes can be applicable, is only bolstered.

Notably, Rule 15 does not prescribe the applicable timeframe relative to the specific *defendant* that files the responsive pleading or motion. Rule 15 merely provides that once either a responsive pleading or an appropriate motion is filed, without concern to who files it, then a plaintiff has a right to amend up to 21 days after the earlier filing. While Plaintiff declares that this meaning cannot be garnered from the plain language of the rule, any other reading would render the express language of the rule superfluous. Fed. R. Civ. P. 15(a)(1)(B). Therefore, based on the plain language of Rule 15(a)(1)(B), this Court finds that Plaintiff had 21 days after Defendant C.K. filed his answer to Plaintiff's Original Complaint to amend the Original Complaint as a matter of course.

Further, the Fed. R. Civ. P. 15 Advisory Committee Notes ("the Notes") only provide further support that Plaintiff only had 21 days from the fling of Defendant C.K.'s Answer to amend her Complaint without leave. The Notes explain that "[t]he 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative. If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period." Fed. R. Civ. P 15 advisory committee's note to 2009 amendment.

The case at bar is similar to the example contemplated by the Notes. Because the 21-day period is not cumulative, that means that Plaintiff does not get a renewed period to file as of course simply because one of the 12 Defendants in this matter filed a motion after another Defendant filed a responsive pleading. Such a reading of this rule would fly in the face of not only the plain

language of the rule, as denoted above (*supra*, p. 20-22), but also the Notes' explanation. Though the Notes provide an example of a motion being filed first in time followed by the filing of a responsive pleading, there is no reason why the inverse would not be true. Plaintiff has neither provided the Court with a logical reason as to why the inverse cannot be true. Thus, considering the Notes' proscription of cumulative 21-day periods to amend, this Court is constrained to find that Plaintiff only had 21 days after Defendant C. K. filed his Answer to Plaintiff's Original Complaint to amend as of course.

To be sure, this Court's jurisprudence counsels that Plaintiff has only one 21-day period to amend as of right. Defendant F.C.S.B., in support of its position, cites to *U.S. ex rel. Carter v. Haliburton Co.*, 144 F. Supp. 3d 869, 877-78 (E. D. Va. 2015) *modified on other grounds on denial of reconsideration*, 315 F.R.D. 56 (E.D. Va. 2016), *aff'd on other grounds, United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 2674 (2018). In *Haliburton*, the Court considered "when the 21-day amendment period begins in cases involving multiple motions to dismiss." 144 F. Supp. 3d at 877-78. In *Haliburton Co.*, the same defendants filed multiple motions to dismiss, years apart from one another. *Id.* Thus, the Court did not consider precisely the issue at hand here, which is whether the 21-day period should begin against all Defendants when only one defendant files a responsive pleading. Nevertheless, despite the analytical distinctions, the *Haliburton* Court noted that "it is clear that [Rule 15(a)(1)(B)] does not grant a cumulative right to amend after both a responsive pleading *and* at 12(b) motion." 144 F. Supp. 3d at 878.

Thus, given the plain language of Rule 15(a)(1)(B), the correlating Advisory Committee notes, and the highly-persuasive precedent, Plaintiff could not properly amend her Complaint as of right.

*b.*     ***Whether the Court Should Grant Plaintiff's Request for Leave to Amend Her Complaint***

Although Plaintiff did not have the right to amend as of course, Plaintiff has now requested leave to amend her Original Complaint.

"[F]ederal policy favor[s] . . . resolving cases on their merits instead of disposing of them on" nuanced circumstances. *Logar v. West Virginia Univ. Bd. of Governors*, No. 12—1133, 2012 WL 3871757 at *2 (4th Cir. 2012) (internal citations omitted). As such, Fed. R. of Civ. P. 15(a)(2) provides that absent amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and courts should "freely give leave to amend when justice so requires." Interpreting Rule 15(a)(2), the United States Court of Appeals for the Fourth Circuit has provided that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006).

Defendant F.C.S.B. argues that amendment would be futile because amendment would not save Plaintiff's claims from the statute of limitations bar. Dkt. 44. Defendant F.C.S.B.'s argument is premised on the notion that Plaintiff's failure to provide her name in her Original Complaint is a jurisdictional defect, which cannot now be cured because the applicable statute of limitations period has accrued. Defendant F.C.S.B. bases its position regarding the jurisdictional nature of Plaintiff's failure to move to proceed under pseudonym on out-of-circuit case law. Dkt. 44 (citing Dkt. 18, 5-7 (citing *W.N.J. v. Yocom*, 257 F.3d 1171, 1172–73 (10th Cir. 2001); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636–37 (6th Cir. 2005); *Capers v. Nat'l RR. Passenger Corp.*, 673 F. App'x 591, 594–95 (8th Cir. 2016); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)). Candidly, Defendant F.C.S.B. has cited authority

24

indicating that courts have adopted divergent views on this matter, thus forming the circuit split. Dkt. 44 (citing Dkt. 18, 5-5, and n.2 (citing *Plaintiff Doctor v. Hosp. Serv. Dist. #3*, No. 18-7945, 2019 WL 351492, at *2–3 (E.D. La. Jan. 29, 2019); *Doe v. N. Orange Cty. Cmty. Coll. Dist.*, No. SACV 17-01776, 2018 WL 6137623, at *4 (C.D. Cal. Feb. 2, 2018); *Doe v. City of Simi Valley*, No. CV 12-8377 PA (VBKX), 2012 WL 12507598, at *2 (C.D. Cal. Oct. 29, 2012); *Doe v. Barrow Cty.*, 219 F.R.D. 189, 191–92 (N.D. Ga. 2003); *Doe v. McDonald's Rests. of N.C., Inc.*, No. 3:15-cv-00037, 2015 WL 4389528, at *5 (W.D.N.C. July 17, 2015).

Nevertheless, it does not appear that the Fourth Circuit, nor any other District Court in this circuit has adopted Plaintiff's view. This Court declines to do so in the instant matter. The Court finds that although an improper procedure, Plaintiff's failure to include her name in her Original Complaint does not divest this Court of subject matter jurisdiction in a case premised on a question of federal law.

Defendants[20] further maintain that the Court should find that Plaintiff's failure to obtain leave to proceed by pseudonym is a jurisdictional defect because "when a complaint is filed anonymously, it is impossible for the Court to know whether there is a 'case or controversy,' whether [the Court] has subject-matter jurisdiction, and whether there is even a real plaintiff at all." Dkt. 81, 1. However, setting aside at this juncture, the question of whether Plaintiff has pleaded sufficient facts to state claim, the Court finds that for purposes of determining whether Plaintiff has met her burden of establishing subject matter jurisdiction, Plaintiff has provided the Court with sufficient information, despite her failure to adhere to the proper protocol.

Plaintiff has brought two claims of federal question against Defendant F.C.S.B. – (1) a violation of Title IX, and (2) a violation of 42 U.S.C. § 1983. To establish her standing as the

---

[20] All defendants have joined in this argument.

claimant of these alleged violations, Plaintiff has averred that at the time of the relevant incidents, Plaintiff was a 12-year-old, seventh grade, student at a certain middle school in Fairfax County during the 2011-2012 school year. Dkt. 37, ¶¶ 1, 14, 91. Plaintiff's name alone would not establish her standing beyond the facts already articulated in Plaintiff's Complaint.[21]

Should this Court take a contrary view, the Defendants contend that the Court's judgment might negatively impact other cases where plaintiffs "mischievous[ly] use[ ] John Doe . . . ." Dkt. 81, 7. Based upon representations made by both counsel in the instant matter, including that Defendants are aware of Plaintiff's true identity, it does not appear that this case is one in which the Plaintiff has mischievously used Jane Doe. Rather, it appears that that Plaintiff simply did not adhere to the rules attendant to use of a pseudonym. Thus, this case is different from any potential case in which a plaintiff uses a Jane Doe pseudonym with such mischief.

Conversely, the Court recognizes that the allegations in this case are egregious and grave and should be handled accordingly. Dkt. 1, ¶ 1 (Plaintiff avers she was "raped, sexually assaulted, sexually harassed, terrorized, extorted, bullied, and threatened with death"). Bearing in mind the nature of these allegations, this Court does not find it appropriate, in the interest of justice, to dispose of the matter based on a nuanced circumstance, of which reasonable jurists have established divergent views. Given the nature of the allegations and federal policy, *Logar v. West Virginia Univ. Bd. Of Governors*, which counsels the Court to resolve cases based on their merit, and not nuanced circumstances, the Court finds that in this instance, justice requires amendment. No. 12 – 133, 2012 WL 3871757 at *2 (4th Cir. 2012).

*c.*     ***Whether Amendment Relates Back***

---

[21] Notably, Defendant F.C.S.B., nor any of the other Defendants, attack Plaintiff's standing to bring a claim beyond the fact that Plaintiff has failed to include her name in her Original and Amended Complaints.

Defendant F.C.S.B. argues that Plaintiff should not be granted leave to amend her Original Complaint as amendment would be futile because any amendment would not relate back in time to the filing of Plaintiff's Original Complaint. Dkt. 44, 5-6. Defendant F.C.S.B. relies, in part, on *Haliburton*, to support its argument that Plaintiff's desired amendment would not back. Dkt. 44 5-6 (citing 144 F. Supp. 3d 869 (E.D. Va. 2015). However, *Haliburton* was in a different procedural context from the instant matter. As Defendant F.C.S.B. notes, in *Haliburton*, the plaintiff was precluded from amendment due to the first-to-file bar of the federal False Claims Act. 144 F. Supp. 3d at 879. In *Haliburton*, the plaintiff's claims had been dismissed both with and without prejudice multiple times before the Court ultimately denied the plaintiff amendment because it would not cure the issue with the first-to-file bar. *Id.* at 871-72, 879. That is not the procedural posture of the instant matter. Plaintiff's claims here are not barred by the first-file-bar contained within the federal False Claims Act. Therefore, Defendant F.C.S.B.'s reliance on *Haliburton* is misplaced.

Defendant F.C.S.B. also relies on *Capers v. Nat'l RR. Passenger Corp.*, to support its position that this Court should find amendment would not relate back. 673 F. App'x 591, 594–95 (8th Cir. 2016). Dkt. 44, 5-6 (incorporating Dkt. 17, 5-7 & n. 2 by reference). In *Capers*, the United States Court of Appeals for the Eighth Circuit considered whether under both federal law and Arkansas state law, the plaintiff's request to amend her pseudonymously-filed complaint would relate back in time to the date she filed her original complaint. *Id.* at 534. In the Eighth Circuit's discussion of federal law, the court found that the plaintiff's request to amend was precluded pursuant to "Federal Rule [of Civil Procedure] 10(a)." *Id.* at 594. The court reasoned that the plaintiff "failed to initiate a valid action at least until she sought to amend her complaint,

by which time the statute of limitations had run as [the plaintiff] was not properly before the court

until then, if at all." *Id.* at 594-95.

Considering the plain language, Federal Rule of Civil Procedure 10(a) provides that

"[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a)

designation. The title of the complaint must name all the parties; the title of other pleadings, after

naming the first party on each side, may refer generally to other parties." Notably, Rule 10(a) is

silent regarding whether an error with respect to any one of these requirements is a jurisdiction

flaw or whether violation of this rule precludes relation back. Defendant F.C.S.B. has not provided

this Court with any controlling authority from the Fourth Circuit or the Supreme Court, or

persuasive authority from a district court in this circuit, adopting the Eighth Circuit's interpretation

of Rule 10(a). The Court declines to read Rule 10(a) as prohibiting relation back where a plaintiff

asks to amend to adhere to the Rule.

Accordingly, this Court will grant Plaintiff leave to amend her Complaint because it does

not appear that amendment is futile.

### ii. *The Individual School Defendants' and Defendant J.O.'s Motions to Join Defendant F.C.S.B.'s Motion to Strike*

This Court grants the Individual School Defendants' and Defendant J.O.'s Motions to Join

Defendant F.C.S.B.'s Motion to Strike (Dkt. Nos. 45 and 46).

Federal Rule of Civil Procedure 12(g)(1), Joining Motions, provides that "[a] motion under

this rule may be joined with any other motion allowed by this rule." Thus, a motion to join may

not be joined with another valid motion to join. Subsection (2) of Fed. R. Civ. P. 12(g) limits when

a party may move to join a particular type of motion. This subsection provides that "[e]xcept as

provided in Rule 12(h)(2) or (3),[22] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

It does not appear that the Individual School Defendants, nor Defendant J.O.'s Motion to Strike is precluded by Rule 12(g), and thus, the Court grants these motions.

### B. Category Two: The Motions to Dismiss Plaintiff's Amended Complaint

#### i. Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Amended Complaint

Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Amended Complaint attacks Plaintiff's Amended Complaint on jurisdictional grounds and posits that Plaintiff's § 1983 and Fourteenth Amendment Claims fail to state a claim from which relief may be granted. Dkt. 55.

Defendant F.C.S.B.'s jurisdictional basis for dismissal is the same argument Defendant F.C.S.B. posed in its Motion to Strike (*supra*, p. 24-26) – that Plaintiff's failure to receive leave of Court to proceed by way of pseudonym is a jurisdictional defect that cannot now be cured. Dkt. 55, 6-10. The Court denies Defendant F.C.S.B's Motion to Dismiss Plaintiff's Amended Complaint on jurisdictional grounds for the same reasons the Court rejected Defendant F.C.S.B's argument when raised in Defendant F.C.S.B.'s Motion to Strike (*supra*, p. 11-15).

Accordingly, the Court must now consider whether Plaintiff states a plausible claim for relief in Count Two of her Amended Complaint, in which she alleges that Defendant F.C.S.B., amongst other Defendants, violated Plaintiff's due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. Dkt. 37, 35 36. Specifically, Plaintiff's claim is that "[a]s a

---

[22] Rule 12(h)(2) governs when to raise the defenses of failure to state a claim, compulsory joinder of another person, or to state a legal defense to a claim. Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."

direct, substantial[,] and proximate result of the danger created by [ ] [Defendant F.C.S.B.],

[Plaintiff] was deprived of her civil rights under the Fourteenth Amendment to the United States

Constitution." Dkt. 37, ¶ 287.

Defendant F.C.S.B. counters that Plaintiff's Fourteenth Amendment pleading fails

"because the Due Process Clause of the Fourteenth Amendment imposes no duty on states to

protect public school students from the tortious conduct of private actors." Dkt. 55, 11.

The Court is constrained to find that Plaintiff's Fourteenth Amendment claim fails pursuant

to Rule 12(b)(6) because, under established precedent, Defendant F.C.S.B.'s alleged failure to

protect Plaintiff against private violence, is not a violation of Due Process.

Defendant F.C.S.B. also avers that Count II of Plaintiff's Amended Complaint fails under

Fed. R. Civ. P. 12(b)(6) because *respondeat superior* liability is not recognized under § 1983. Dkt.

55, 10-11. Defendant F.C.S.B. notes that Plaintiff, in her Original Complaint, expressly pleaded

that Defendant F.C.S.B. violated § 1983 under a theory *respondeat superior*, and that Plaintiff has

now "dropped" that claim. Dkt. 55, 10-11. However, Defendant F.C.S.B. asserts, that

> [a]lthough [Plaintiff's] Amended Complaint drops that concession, it adds no
> factual allegations to show how [Defendant F.C.S.B.] could be responsible *other
> than under a respondeat superior* theory for the actions of its subordinate
> employees. Indeed, the Amended Complaint retains the admission that the
> individual school employees 'acted as [Defendant F.C.S.B.'s] agents, ostensible
> agents, servants and/or employees.'

Dkt. 55, 11 (emphasis in original) (citing Dkt. 37, ¶ 61).

The Court holds that Plaintiff's § 1983 fails to defeat Defendant F.C.S.B.'s attack because

Plaintiff has not pleaded a viable theory of municipal liability to support her § 1983 claim.

**a.    *Whether Count II of Plaintiff's Amended Complaint states a plausible due process
       claim under the Fourteenth Amendment of the United States Constitution***

This Court's judgment is guided by the principle that

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not
> as a guarantee of certain minimal levels of safety and security . . . . its language
> cannot fairly be extended to impose an affirmative obligation on the State to ensure
> those interests do not come to harm through other means.

*DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989); *see e.g. Stevenson v.*

*Martin Cty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001) (finding "the state, simply by virtue of

its maintenance of a public school system does not become constitutionally liable for failing to

prevent all student-on-student violence" where "the school officials . . . may have been

irresponsible and ineffective in not heeding the warnings that [plaintiff] was helpless at the hands

of bullies . . ."). Thus, "a State's failure to protect an individual against private violence simply

does not constitute a violation of Due Process." *DeShaney*, 489 U.S. at 197; *Stevenson*, 3 F. App'x

at 31. To the extent that this may be Plaintiff's theory concerning how Defendant F.C.S.B. violated

her Fourteenth Amendment due process rights, this Court finds that such a theory does not provide

a sufficient basis for a plausible claim from which relief may be granted.

Yet, Plaintiff explains that her pleadings asserting violation of the Fourteenth Amendment

are brought under a theory of "constructive expulsion." Dkt. 71, 19-21. Plaintiff argues that her

pleadings are sufficient because she has pleaded facts to show that Defendant F.C.S.B. deprived

her of her property interest in education when Defendant F.C.S.B. constructively expelled Plaintiff

from her middle school. Dkt. 71. Plaintiff cites to *Stevenson v. Martin Cty. Bd. of Educ.*, an

unpublished opinion, in support of her position. 3 F. App'x 25, 30 (4th Cir. 2001).

However, Plaintiff's reliance on *Stevenson* is misplaced. Even in light of the obligatory

precedential value of *Stevenson*, the *Stevenson* court expressly opined that "it [could] [ ] not be

plain error for the district court to [have] conclude[d] that the school officials did not deprive [the

plaintiff in that matter] of a property interest in public education when [t]he [plaintiff] voluntarily

withdrew from school." 3 F. App'x at 30. Further, the *Stevenson* court indicated that this idea that

31

constructive expulsion deprives a student of its Fourteenth Amendment due process rights is "a novel theory that has not yet been accepted by any court." *Id.* In *Stevenson*, the United States Court of Appeals did not decide to adopt the constructive expulsion theory. As such, this Court rejects Plaintiff's argument. *Id.*

Additionally, and perhaps in the alternative, Plaintiff argues that she has sufficiently pleaded a violation of due process under a state-created danger theory. Dkt. 71, 21. Plaintiff's position is that because she has pleaded that Defendant F.C.S.B. took affirmative actions which created the danger that Plaintiff alleges she suffered, her pleadings are sufficient. *Id.* Plaintiff specifically points to paragraphs 202 – 204 of her Amended Complaint, which provide the alleged affirmative actions that Defendant F.C.S.B. took to create the danger. *Id.* Plaintiff urges that Defendant F.C.S.B. took affirmative action when faculty members at Plaintiff's former middle school insinuated to Plaintiff's parents that Plaintiff's own wrongdoing was the reason why she was attacked. *Id.*

To be sure, "[t]he Fourth Circuit has recently held that 'to establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission.'" *Smith v. Sch. Bd. Of City of Chesapeake*, No. 2:18-cv-589, 2019 WL 2656204 at *6 (E.D. Va. June 27, 2019) (quoting *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015)). Indeed, the Fourth Circuit in *Pinder v. Johnson*, has cautioned that "[w]hile it is true that inaction can often be artfully recharacterized as 'action,' courts should resist the temptation to inject this alternate framework into omission cases by stretching the concept of 'affirmative acts' beyond the context of immediate interactions between the officer and the plaintiff." 54 F.3d 1176, 1169 n. *6 (4th Cir. 1995).

Plaintiff's Amended Complaint is riddled with allegations that both Defendant F.C.S.B. and the Individual School Defendants were "deliberately indifferent" to Plaintiff's requests for help, suggesting that these Defendants took no affirmative action. Dkt. 37, ¶¶ 111, 113, 117, 121, 124, 154, 181, 261, 278, 280, 260-261. It cannot be said that the Defendants both took affirmative action and no action at the same time, for the two positions are mutually exclusive.

The situation which the Fourth Circuit cautioned against in *Pinder*, is precisely the case here. *Pinder v. Johnson*, 54 F.3d 1176, 1169 n. *6 (4th Cir. 1995). Not only does Plaintiff all but consistently aver that Defendant F.C.S.B. was "deliberately indifferent" to Plaintiff's requests for help, even the gist of what Plaintiff now urges is Defendant F.C.S.B.'s affirmative action is laced with the underpinnings of inaction. Plaintiff, by taking issue with the fact that the mere extent of Defendant F.C.S.B.'s actions was merely placing the blame on Plaintiff, is effectively arguing that Defendant F.C.S.B. did nothing at all. Because Plaintiff has not pleaded facts that demonstrate an affirmative action taken by or on behalf of a state actor, the Court must grant Defendant F.C.S.B.'s Motion to Dismiss with respect to Plaintiff's Fourteenth Amendment due process claim.

***b.    Whether Plaintiff states a plausible claim of violation of § 1983***

The Court also grants Defendant F.C.S.B.'s motion to dismiss Plaintiff's § 1983 claim. 42 U.S.C. § 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The Supreme Court of the United States has held that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs. of City*

*of New York*, 436 U.S. 658, 691 (1978).  Accordingly, to the extent that Plaintiff in her Amended Complaint may still be relying on a theory of *respondeat superior*, such a claim is not plausible, and the Court must dismiss her pleading under this theory.

However, a municipality may be held liable "when execution of [the municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible [for] under § 1983." *Monell*, 436 U.S. at 694; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[W]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them are the act of the municipality.").  "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.*

The question of who has policymaking authority is a matter of state law. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F. 3d 518, 523 (4th Cir. 2000).  "The Constitution of Virginia vests control of the public school system in the local school boards," inclusive of the authority to supervise personnel. *Id.* ("The school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals, suspensions[,] and placing on probation").  Additionally, "[f]inal policymaking authority may be delegated." *Riddick*, 238 F.3d at 523 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority . . . .").

In the instant matter, as Plaintiff concedes, Defendant F.C.S.B. cannot be held liable for the actions of its employees, including the Individual School Defendants, by virtue of the fact that

it has employed such persons. *Monell*, 436 U.S. at 691. Yet, Plaintiff may be said to have pleaded a plausible claim of relief where she sufficiently shows that Defendant F.C.S.B. had policies or customs made by those with authority, which caused Plaintiff to be injured in the ways in which she alleges. *Id.* Plaintiff's Amended Complaint provides that Defendant F.C.S.B.'s policy is that "it does not tolerate acts of sexual or gender-based harassment," and it is "committed to conducting a prompt, thorough[,] and impartial investigation of reports of sexual harassment." Dkt. 37, ¶¶ 85, 87.   Moreover, Defendant F.C.S.B.'s Anti-Harassment Statement indicates that "[i]f the investigation reveals that sexual harassment created a sexually hostile environment PCSB (sic) will take prompt and effective steps to end the harassment, eliminate the hostile environment and prevent its recurrence, including . . . protect[ing] the complainant and ensur[ing] her safety." Dkt. 37, ¶ 88. Thus, based on the facts asserted in Plaintiff's Amended Complaint, it does not appear that Defendant F.C.S.B. itself has implemented a policy that has led to the injuries Plaintiff has asserted but constitute a framework for dealing with certain concerns.

However, Plaintiff maintains that Defendant F.C.S.B.'s ratification of its employees' actions is what holds Defendant F.C.S.B. liable in this instance. Dkt. 71, 26-28. Yet, caselaw indicates a municipality may only be said to have ratified the actions of its subordinates when a person with policymaking authority approves of such action. *Praprotnik*, 485 U.S. at 127. Indeed, in Virginia, the local school board has policymaking authority. *Riddick*, 238 F.3d at 523 (citing Va. Const. art. VIII, § 7; Va. Code Ann: 22.1-313(A)). Thus, to survive Defendant F.C.S.B.'s 12(b)(6) attack, Plaintiff must aver that Defendant F.C.S.B. ratified the actions of its employees. Plaintiff, at this juncture has not done so. Plaintiff's Complaint is devoid of facts that show that Defendant F.C.S.B. took official action outside of any action by its subordinates that would tend

to show that Defendant F.C.S.B. ratified any action by its employees. Plaintiff has also not pleaded

any acts to show that Defendant F.C.S.B. delegated its authority.

Thus, the Court must dismiss Plaintiff's § 1983 claim for failure to state a claim.

c.    ***Whether Counts III – V of Plaintiff's Amended Complaint should be dismissed as to Defendant F.C.S.B.***

Only Counts I and II of Plaintiff's Amended Complaint are specifically asserted against

Defendant F.C.S.B. *Compare*, Dkt. 37, 29 ("Count I . . . Jane Doe v. Fairfax County School

Board"); *and*, Dkt. 37, 35 ("Count II . . . Jane Doe v. Fairfax County School Board . . ."); *with* Dkt.

37, 36 ("Count III . . . Jane Doe v. [Defendant C.K.]); *and*, Dkt. 37, 37 ("Count IV . . . Jane Doe

v. [Defendant J.O.]); *and*, Dkt. 37, 38 ("Count V . . . Plaintiff v. [the Individual School Defendants

and Defendant J.O.]). However, within each count, Plaintiff includes a prayer for relief as to all

of the Defendants in the instant matter. Dkt. 37, 35, 36, 37, 38, 39-40 ("WHEREFORE, Plaintiff

Jane Doe demands judgment against *all defendants*, individually and/or jointly and severally, for

compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest

and costs, nominal damages, punitive damages, and any and all relief this Honorable Court deems

necessary and just.") (emphasis added). Defendant F.C.S.B. raised its concern with Plaintiff's

apparent inclusion of Defendant F.C.S.B. in Counts III-V of Plaintiff's Amended Complaint, and

motioned that the Court dismiss each of these counts with prejudice as to Defendant F.C.S.B.

Plaintiff has not opposed this motion.

Accordingly, this Court grants Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's

Amended Complaint as to Count III – V of Plaintiff's Amended Complaint with respect Defendant

F.C.S.B.

ii.   *The Individual School Defendants' Motion to Dismiss Plaintiff's Amended Complaint*

a.    ***Whether Plaintiff lacks subject matter jurisdiction***

36

The Individual School Defendants also maintain their claim that Plaintiff's Amended Complaint should be dismissed for lack of jurisdiction because Plaintiff failed to timely receive leave of Court to proceed pseudonymously.   For the reasons set forth with respect to the Defendants' Motion to Strike Plaintiff's Amended Complaint (*supra*, p. 24-26), this Court denies the Individual School Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

*b.*      *Whether Plaintiff's due process claim states a plausible claim for relief*

Similarly to Defendant F.C.S.B., the Individual School Defendants argue that Plaintiff's Amended Complaint fails to articulate a state-created danger theory. Dkt. 57, 6-7. Like Plaintiff's response to Defendant F.C.S.B., Plaintiff appears to counter the Individual School Defendants' argument by indicating that not only is her state-created danger theory sufficiently pleaded, but she has also sufficiently pleaded a claim under a theory of constructive expulsion.

For the reasons set forth above (*supra*, p. 29-36), Plaintiff's claim fails under both theories of constructive expulsion and a state-created danger.

*c.*      *Whether the Court should dismiss Count II of Plaintiff's Amended Complaint because the Individual School Defendants, in their official capacities, have qualified immunity for the claims asserted*

Plaintiff brings suit against the Individual School Defendants in both their personal and official capacities. Dkt. 37, ¶ 80.  Accordingly, the Individual School Defendants now move to dismiss Count II of Plaintiff's Amended Complaint to the extent that Plaintiff brings these charges against the Individual School Defendants' in their civilian capacities. Dkt. 57, 7-8. The basis for the Individual School Defendants motion is that they have qualified immunity. *Id.*

Because the Court has found that Count II of Plaintiff's Amended Complaint fails to state claims that might implicate the Individual School Defendants in only their official capacities as state actors (*supra*, p. 17-23), the Court must now address whether the doctrine of qualified

37

immunity shields the Individual School Defendants from suit in their personal capacities. The Court grants the Individual School Defendants' motion on this point.

The Supreme Court of the United States has indicated that "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). The Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("immunity ordinarily should be decided by the court long *before trial*) (emphasis added)).

The Court in *Raub v. Brown*, noted that "a defendant can raise . . . qualified-immunity . . . at both the motion to dismiss and summary judgment stage . . . [s]o long as qualified immunity does not turn on *disputed facts* . . . ." 960 F. Supp. 2d 602, 608, n. 8 (E.D. Va. 2013). The *Raub* Court noted that there is a " . . . recognized suitability of summary judgment as a vehicle to resolve qualified immunity." *Id.* at 614. The Court in that matter ultimately found that the issue of qualified immunity was better suited for summary judgment. *Id.*

However, the Fourth Circuit has determined that

> Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the 'qualified immunity test'): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'

*Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2013).

While Plaintiff avers that the Individual School Defendants' qualified immunity argument is better suited for a summary judgment motion, the Court finds that the issue is now ripe, and

disposition at this stage in litigation is most consistent with the Supreme Court's directives. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Here, qualified immunity does not turn on a dispute of facts, for it is clear that even accepting all of the underlying allegations as true, for the reasons set forth above (*supra*, p. 32-33), the Individual School Defendants *inaction* did not violate the federal statutory and constitutional rights alleged.

Further, there has been no violation of a "clearly established right of which a reasonable person would have known." *See Ridpath*, 447 F.3d at 306 (internal citations omitted). Count II of Plaintiff's Amended Complaint rests on the theories of constructive expulsion and a state-created danged. The Fourth Circuit has commented on the constructive expulsion describing it as "a novel theory that has not yet been accepted by any court." *Stevenson*, 3 F. App'x at 30. Thus, it cannot be said that the constructive expulsion theory of a due process violation is a "clearly established right of which a reasonable person would have known." *See Ridpath*, 447 F.3d at 306 (internal citations omitted).

Further, Plaintiff has not pleaded sufficient facts to state a violation of due process under a state-created danger theory because Plaintiff has not indicated the Individual School Defendants took any affirmative action in violation of Plaintiff's due process rights (*supra*, p. 19- 20).

Accordingly, the Court grants the Individual School Defendants' Motion to Dismiss Plaintiff's Amended Complaint with respect to Count II to the extent that Plaintiff brings claims against the Individual School Defendants in their civilian or official capacities.

**d.     *Whether the Court should decline to exercise supplemental jurisdiction over Plaintiff's state tort claims brought against the Individual School Defendants***

This Court will exercise supplemental jurisdiction over Plaintiff's state tort claims brought against the Individual School Defendants.

The Individual School Defendants argue that because "[n]o viable underlying federal claim was commenced against the Individual School Defendants," the Court should decline to exercise supplemental jurisdiction over Count V of Plaintiff's Amended Complaint.   Dkt. 57, 9. Accordingly, because the only federal claim which appears to implicate the Individual School Defendants has been dismissed (*supra*, p. 37-39),[23] this Court must decide whether to exercise supplemental jurisdiction over Count V of Plaintiff's Complaint, which asserts a state law theory of gross negligence against the Individual School Defendants.

28 U.S.C. § 1367(c) indicates that a district court "*may*" decline to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(c) (incorporating 28 U.S.C. § 1367 (a) by reference).   Section 1367(c) further provides that courts may decline supplemental jurisdiction over a claim if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

"[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when *all* federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).   In making this determination, district courts may consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and

---

[23] For the reasons set forth above (*infra*, p. 42), the Court dismisses Counts I, III, and IV as to the Individual School Defendants.

considerations of judicial economy." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

350 n. 7 (1988). However, the Fourth Circuit has noted that

> the Supreme Court has established a strong presumption that § 1983 due process
> claims which overlap state tort law should be rejected and the case, if diversity is
> lacking, sent to state court. The presumption is rebuttable: [i]t can be overcome by
> showing governmental conduct so "arbitrary" and "egregious" that it "shocks the
> conscience," usually because a state actor intended harm without justification. But
> the presumption should be vigorously applied, for without it, a problem arises that
> we . . . never want to see in law: basic difficulty and extensive litigation over the
> forum in which a case belongs—a threshold question that tells plaintiffs and
> defendants nothing about the merits of the case and delays resolution for all.

*Waybright v. Frederick Cty., Md.*, 528 F.3d 199, 205 (4th Cir. 2008) (citing *Cty. of Sacramento*,

523 U.S. at 845–46, 849).

To be sure, Plaintiff's claim of gross negligence brought against the Individual School

Defendants arises out of the same case and controversy as the remaining claims brought against

the other Defendants in this matter. Yet, this Court, in its discretion, may decline to exercise

supplemental jurisdiction over Plaintiff's gross negligence claim. The parties have not specifically

addressed the policy and economic implications that the Court's decision on supplemental

jurisdiction would have. The Court notes, however, that it would be more judicially economical

and efficient to have the matters of which Plaintiff complains all litigated together. It would be

more cumbersome to require Plaintiff to refile this matter in a state court. Thus, the factors appear

to weigh in Plaintiff's favor.

Further, while there is a strong presumption that that Plaintiff's gross negligence claim

should be "rejected and sent to a state court," the Court finds that the allegations set forth in the

Amended Complaint rebut this presumption. *See Waybright*, 528 F.3d at 205. The facts alleged

in the Amended Complaint certainly set forth "governmental conduct so 'arbitrary' and

'egregious' that it 'shocks the conscience.'" *Id.*; *see also* Dkt. 37, ¶ 316 (alleging that the

Individual School Defendants were grossly negligent where they "continual[ly] fail[ed] to timely investigate [Plaintiff's] multiple written and verbal reports of death threats, sexual harassment, extortion, and peer-on-peer bullying . . .").

Therefore, the Court will exercise supplemental jurisdiction over Plaintiff's claim of gross negligence brought against the Individual School Defendants because the claim arises out of the same case and controversy as the remaining claims and because the facts supporting the gross negligence claim overcome the presumption of dismissal.

*e.*     ***Whether the Court should dismiss Counts I, III, and IV of the Amended Complaint with prejudice as to the Individual School Defendants***

Only Counts II and V of Plaintiff's Amended Complaint are specifically asserted against the Individual School Defendants. *Compare*, Dkt. 37, 35 ("Count II . . . Jane Doe v. . . . [the Individual School Defendants] . . . "); *and*, Dkt. 37, 38 ("Count V . . . Plaintiff v. [the Individual School Defendants]. . ."); *with* Dkt. 37, 29 ("Count I . . . Jane Doe v. [Defendant F.C.S.B.]); *and,* Dkt. 37, 36 ("Count III . . . Jane Doe v. [Defendant C.K.]); *and*, Dkt. 37, 36 ("Count IV . . . Jane Doe v. [Defendant J.O.]). However, within each count, Plaintiff includes a prayer for relief as to all of the Defendants in the instant matter. Dkt. 37, 35, 36, 37, 38, 39-40 ("WHEREFORE, Plaintiff Jane Doe demands judgment against *all defendants*, individually and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, nominal damages, punitive damages, and any and all relief this Honorable Court deems necessary and just.") (emphasis added). The Individual School Defendant raised their concern with Plaintiff's apparent inclusion of the Individual School Defendants in Counts I, III, and IV of Plaintiff's Amended Complaint, and motioned that the Court dismiss each of these counts with prejudice as to the Individual School Defendants. Plaintiff has not opposed this motion.

Accordingly, the Court grants the Individual School Defendants' Motion to Dismiss Plaintiff's Amended Complaint as to Counts I, III, and IV, to the extent Plaintiff brings these claims against the Individual School Defendants.

### iii.  Defendant J.O.'s Motion to Dismiss Plaintiff's Amended Complaint

Defendant J.O. adopts the argument of the Defendant F.C.S.B. with respect to subject matter jurisdiction. Dkt. 67, 1. Accordingly, the Court rejects this subject matter jurisdiction argument as to Defendant J.O. for the same reasons the Court rejected Defendant F.C.S.B.'s argument (*supra*, p. 11-14).

Only Count IV of Plaintiff's Amended Complaint is specifically asserted against Defendant J.O. *Compare*, Dkt. 37, 37 ("Count IV . . . Jane Doe v. [Defendant J.O.]"); *with*, Dkt. 37, 38 ("Count I . . . Plaintiff v. [the Individual School Defendants]. . ."); *with* Dkt. 37, 29 ("Count I . . . Jane Doe v. [Defendant F.C.S.B.]); *and,* Dkt. 37, 36 ("Count II . . . Jane Doe v. [Defendant F.C.S.B. and the Individual School Defendants]); *and,* Dkt. 37, 36 ("Count III . . . Jane Doe v. [Defendant C.K.]); *and,* Dkt. 37, 38 ("Count V . . . Plaintiff v. [the Individual School Defendants]"). However, within each count, Plaintiff includes a prayer for relief as to all of the Defendants in the instant matter. Dkt. 37, 35, 36, 37, 38, 39-40 ("WHEREFORE, Plaintiff Jane Doe demands judgment against *all defendants*, individually and/or jointly and severally, for compensatory damages in excess of $150,000.00 and local arbitration limits, together with interest and costs, nominal damages, punitive damages, and any and all relief this Honorable Court deems necessary and just.") (emphasis added). The Defendant J.O. raised her concern with Plaintiff's apparent inclusion of Defendant J.O. in Counts I, II, III and V of Plaintiff's Amended Complaint, and motioned that the Court dismiss each of these counts with prejudice as to Defendant J.O. Plaintiff has not opposed this motion.

43

Accordingly, the Court grants the Defendant J.O.'s Motion to Dismiss Plaintiff's Amended Complaint as to Counts I, II, III, and V, to the extent Plaintiff brings these claims against Defendant J.O.

### iv. *Defendant C.K.'s Motion to Dismiss Plaintiff's Amended Complaint*

Defendant C.K.'s Motion to Dismiss the Amended Complaint incorporates every argument raised by Defendant F.C.S.B.'s Motion to Strike (Dkt. Nos. 42, 44). To the extent that Defendant C.K. reiterates these arguments concerning subject matter jurisdiction in his Motion to Dismiss the Amended Complaint, these arguments fail for the same reasons set forth by the Court with respect to Defendant F.C.S.B.'s Motion to Strike (*supra*, p. 24-26) .

Defendant C. K. also argues that this Court should decline to exercise supplemental jurisdiction over Count III of Plaintiff's Amended Complaint which sets forth claims against Defendant C.K. and alleges assault and battery in violation of Virginia law. Dkt. 59. The Court notes the law concerning the Court's discretion to exercise supplemental jurisdiction (*supra*, p40-41). This Court finds supplemental jurisdiction as to Count III is proper because the alleged conduct that supports the claims set forth in Count III are not only of the same case and controversy as the remaining claims, but these alleged actions are central to this suit. It would certainly be more prudent to consider each of these claims together, as opposed to requiring that the claims be refiled and then relitigated in state court. Accordingly, the Court will exercise supplemental jurisdiction over Count III of Plaintiff's Complaint.

### C.  Category Three: The Motions to Dismiss Plaintiff's Original Complaint

Because the Court has granted Plaintiff leave to amend her Complaint (*supra*, p. 11 -14), Defendant F.C.S.B.'s Motion to Dismiss Original Complaint (Dkt. 17); Defendant J.O.'s Motion to Join F.C.S.B.'s Motion to Dismiss Original Complaint (Dkt. 46); the Individual School

Defendants' Motion to Dismiss Original Complaint (Dkt. 19); and Defendant C.K.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 30) Motion to Join the Individual School Defendants' Motion to Dismiss Plaintiff's Original Complaint (Dkt. 30) are now DENIED as moot.

### D. Category Four: Plaintiff's Pseudonym Motion

On November 27, 2019, Plaintiff moved to proceed by pseudonym. Dkt. 38. The Defendants took various positions.

Defendant F.C.S.B.

> does not object to the Court requiring that public court filings refer to Plaintiff as *Jane Doe*, provided that: (1) this does not waive [Defendant F.C.S.B.'s] position, set forth in its motion to dismiss under Rule 12(b)(1), that an order permitting Plaintiff to proceed anonymously will not relate back to the time of the original complaint for purposes of the saving the Title IX and § 1983 claims from the two-year statute of limitations; and (2) an order requiring that filings in this case refer to Plaintiff as *Jane Doe* will not hamper defendants' ability to thoroughly investigate Plaintiff's claims or conduct party and non-party discovery using her real name.

Dkt. 62, 2.

The Individual School Defendants maintain their argument that Plaintiff lacks subject matter jurisdiction due to her failure to seek leave of Court to proceed by pseudonym. The Individual School Defendants further aver that Plaintiff has "neither demonstrated that the stated interest in anonymity overcomes the public's right of access to judicial proceedings nor justified permitting an extraordinary departure from proceeding regularly and openly in federal litigation, as required by controlling precedent." Dkt. 63.

Defendant C.K. also urges that the Court deny Plaintiff's Motion to Proceed by Pseudonym because "[i]t is fundamentally unfair to the private party defendants in this case for the Plaintiff to lodge such incredible allegations while hiding her own identity." Dkt. 64, 2. Defendant C.K.

further argues that allowing Plaintiff to proceed by pseudonym will "hamper the Defendants' ability to thoroughly investigate Plaintiff's outrageous claims" and conduct discovery. *Id.*

Finally, Defendant J.O. vehemently opposes Plaintiff's Motion to Proceed by Pseudonym. Dkt. 65. Defendant J.O. argues that Plaintiff's Motion to Proceed by Pseudonym fails based on the factors the United States Court of Appeals set forth in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993). *Id.* at 3.

Having considered each of the Defendants' arguments, and the controlling jurisprudence, this Court will do what Plaintiff's counsel should have done at the outset of this litigation, and order that, from this point forward, in this litigation, each party will be referred to by the initials set forth on page one of this Order. The Court recognizes the seriousness of the alleged offenses and the wide-ranging ramifications that these accusations may hold for each of the named parties. The Court finds it necessary to not only protect the privacy interests of the accuser, but also the accused. Thus, for the following reasons, the Court will require that each party in the instant matter be referred to by initial, as designated on the first page of this Order.

It is uncontested that the Court must apply the factors from *James*, to determine whether a plaintiff may proceed pseudonymously. 6 F.3d at 238. This non-exhaustive list of factors tasks the Court to consider

> whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 238. Accordingly, this Court will address each of these factors in turn.

*i.   Whether the Justification Asserted by Plaintiff is to Preserve Privacy of a Sensitive and High Personal Nature*

46

To be sure, the nature of the claims – that Plaintiff was repeatedly "raped, tortured, extorted and sexually assaulted" while she was a middle school-aged student – are *highly* sensitive and of an *immensely* personal nature. Dkt. 37, ¶¶ 15-17. The subject matter of such claims certainly warrants the utmost level of privacy. The Court recognizes that "there is unlikely to be a categorical answer to the question of anonymity across all civil cases involving sexual assault[,] [and thus] [d]iscretion must be exercised on a case-by-case basis, depending on the particular circumstances before the court [,which] illustrate[ ]the need for such careful analysis of the factual record." *Doe v. Del Rio*, 241 F.R.D. 154, 160 (S.D.N.Y. 2006). However, Plaintiff's claims in her Complaint are *egregious*. Thus, the Court finds that this factor favors use of a pseudonym.

### ii.   *Whether There is a Risk of Retaliation*

Plaintiff argues that the students, which she attended middle school with approximately eight years ago, might physically or mentally retaliate against her for her decision to bring this suit. Dkt. 38-1, 6. However, the two students are already named as defendants – Defendants C.K. and J.O. By Plaintiff's own admission, Defendants C.K. and J.O. already know Plaintiff's first and last name, and to this Court's knowledge, they have *not*, and *vehemently represent that they will not*, physically and mentally retaliate against Plaintiff. Based on the representations by Defendants C.K. and J.O., the Court finds that this factor cuts against Plaintiff's use of a pseudonym in the instant matter.

### iii.   *The Ages of the Persons Whose Privacy Interests are Sought to be Protected*

Although Plaintiff was 12 years of age at the time these incidents occurred, she is now a college-age adult. This case poses no risk that the privacy rights of a person who is presently a child are in jeopardy. *See Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 810 (E.D. Va. 2012). Therefore, the Court finds that this factor does not favor Plaintiff's use of a pseudonym.

### iv. *Whether the Action is Against a Governmental or Private Party*

Plaintiff argues, in part, that because Defendant F.C.S.B. is a "governmental entity in the Commonwealth of Virginia," the Court should find Plaintiff's use of a *pseudonym* is proper. However, Plaintiff's argument does not account for the remaining 11 Defendants who oppose Plaintiff's Motion to Proceed by Pseudonym – the Individual School Defendants, Defendant C.K., and Defendant J.O. Each of these Defendants are either being sued, at least in part, in their individual capacities, or they are purely not government entities. Thus, because the majority of the Defendants in the instant matter are private parties, the Court finds that this factor weighs against Plaintiff's use of a pseudonym.

### v. *Risk of Unfairness to the Opposing Party*

To require Defendants to "defend themselves publicly while [P]laintiff [ ] make[s] her accusations from behind a cloak of anonymity" is fundamentally unfair. *See Doe v. Court of Common Pleas of Butler Cty.*, No. CV 17-1304, 2017 WL 5069333, at *3 (W.D. Pa. Nov. 3, 2017). The Court recognizes and appreciates Plaintiff's privacy concerns attendant with the nature of the allegations Plaintiff brings. However, Plaintiff is not the only litigant in this matter whose privacy, safety, and reputation ought to be considered.

Defendants C.K. and J.O. have privacy concerns as well. Defendants C.K. and J.O. are college students and are roughly the same age as Plaintiff. Since this case has ensued, Defendant J. O. has "been the target of media inquiries from persons holding themselves out as journalists for the Washington Post and the Associated Press . . . ." Dkt. 65, 12. Undoubtedly, Plaintiff's accusations have the potential to severely impact Defendants C.K. and J.O.

Further, the Individual School Defendants have privacy concerns. Each of the Individual School Defendants are teachers, staff members, and administrators whose professional reputation may very well be soiled by the claims presented by Plaintiff.

To be sure, this Court is not ruling on the merits in this instance nor counseling that Plaintiff should not have brought these claims. However, the Court does find it fundamentally unfair that Plaintiff be permitted to use a pseudonym while the Defendants lie vulnerable to publicly litigating such a sensitive matter. Thus, the Court finds that this factor cuts against Plaintiff's use of a pseudonym.

However, given the nature of the charges and the serious implications that these allegations hold, the Court finds that the most appropriate remedy is to allow each party to use initials as this case proceeds.

## IV. CONCLUSION

Accordingly, for the foregoing reasons it is hereby ORDERED that Defendant F.C.S.B.'s Motion to Strike (Dkt. 42) is DENIED;

IT IS FURTHER ORDERED that the Individual School Defendants' and Defendant J.O.'s Motions to Join (Dkt. Nos. 45 and 46) Defendant F.C.S.B.'s Motion to Strike are GRANTED;

IT IS FURTHER ORDERED that Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 53) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that the Individual School Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 56) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Defendant J.O.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 66) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Defendant C.K.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 59) is DENIED;

IT IS FURTHER ORDERED that Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 17) is DENIED as moot;

IT IS FURTHER ORDERED that Defendant J.O.'s Motion to Join Defendant F.C.S.B.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 46) is DENIED as moot;

IT IS FURTHER ORDERED that the Individual School Defendants' Motion to Dismiss the Original Complaint (Dkt. 19) is DENIED as moot;

IT IS FURTHER ORDERED that Defendant C.K.'s Motion to Dismiss Plaintiff's Original Complaint (Dkt. 30) is DENIED as moot;

IT IS FURTHER ORDERED that Defendant C.K.'s Motion to Join the Individual School Defendants' Motion to Dismiss Plaintiff's Original Complaint (Dkt. 3), is DENIED as moot; and

IT IS FURTHER ORDERED that Plaintiff's Pseudonym Motion (Dkt. 38) is GRANTED in part and DENIED in part.

The Clerk of Court is directed to amend the names of all parties listed on the docket to reflect the initials set forth on page one of this Order.

It is SO ORDERED.

Alexandria, Virginia
March *10* 2020

/s/

Rossie D. Alston, Jr.
United States District Judge