IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:19-cv-00917-RDA-TCB |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT
FAIRFAX COUNTY SCHOOL BOARD'S
ANSWER TO AMENDED COMPLAINT**

Defendant Fairfax County School Board, by counsel and pursuant to Federal Rule

12(a)(4)(A) and General Orders 3 and 7, answers the allegations against it in Plaintiff B.R.'s

Amended Complaint as follows:

**1.     INTRODUCTION**

1.     This case involves the horrible mistreatment of 12-year-old student, [B.R.], by

officials in Fairfax County Public Schools ("FCPS").

Response:  Denied.

2.     [B.R.], a former honor roll student, made specific and repeated complaints to FCPS

administrators about the horrific environment and the discrimination she suffered. She begged

them for help.

Response:  Denied.

3.     She told them that she was "scared to come to school."

Response:  Denied.

1

4.      Deliberately indifferent to her complaints, they did nothing.

Response:  Denied.

5.      Worse, presented with credible and compelling allegations of abuse by other students, FCPS officials retaliated against [B.R.] by falsely insinuating to her parents that she was to blame for her mistreatment.

Response:  Denied.

6.      [B.R.] now expects to endure the same mistreatment at the hands of FCPS officials that she faced when she was 12-years old.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph (including what Plaintiff "expects") and, therefore, denies the allegations.

7.      She knows they will attack her.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph (including what Plaintiff "knows") and, therefore, denies the allegations.

8.      She knows they will blame her.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph (including what Plaintiff "knows") and, therefore, denies the allegations.

9.      They have already done that.

Response:  Denied.

10.     She is proceeding with this case anyway.

Response:   Admitted in part and denied in part.   The School Board acknowledges that Plaintiff is proceeding with this case.   The School Board denies this allegation to the extent that it implies that FPCS or the School Board mistreated Plaintiff in any way or is liable for causing any alleged injury.

11.      [B.R.] brings this civil rights case because she was raped, sexually assaulted, sexually harassed, terrorized, extorted, bullied, and threatened with death by other students at the Rachel Carson Middle School from October 2011 until February 2012.

Response:   The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph (including Plaintiff's motivation for bringing this case) and, therefore, denies the allegations.

12.      Matters worsened for [B.R.] after FCPS school officials got involved.

Response:   Denied.

13.      After FCPS administrators deflected, minimized, and ignored [B.R.]'s serious complaints, and blamed her for her mistreatment, her attackers were emboldened.

Response:   The School Board denies that its administrators acted in the manner portrayed above.   The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff's unidentified "attackers" were "emboldened," but denies that any such emboldening was caused by the School Board.   All remaining allegations are denied.

14.      As a result of this deliberate indifference to [B.R.]'s suffering, FCPS subjected seventh-grader [B.R.] to life-altering trauma which she endured daily at the Rachel Carson Middle School ("RCMS").

Response:   Denied.

15.     When [B.R.] reported being sexually harassed, the school's assistant principal brushed off her complaint as a "boy-girl thing."

<u>Response</u>:  Denied.

16.     The school's assistant principal failed to stop [B.R.]'s assailant and, instead, told her not to "ruin a young man's life."

<u>Response</u>:  Denied.

17.     The School's Assistant Principal turned [B.R.]'s assailant into the victim and discredited [B.R.]'s reports to her parents and other officials.

<u>Response</u>:  Denied.

18.     When [B.R.] reported to administrators that she began receiving death threats one school official shockingly told her that the threats were "just something kids say."

<u>Response</u>:  Denied.

19.     After [B.R.] advised one teacher that another student had sexually assaulted her "down there," the teacher forced her to sit next to her assailant in class.

<u>Response</u>:  Denied.

20.     After [B.R.] began receiving in-home education she reported being raped at a bus stop by another middle school student, the FCPS did not do anything at all.

<u>Response</u>:  Admitted in part and denied in part.  The School Board admits that, while Plaintiff was out of school and receiving homebound instruction, the Fairfax County Police Department reported to the school's principal that it was investigating Plaintiff's report to the police that she had been raped by another student after getting off the school bus.  The School Board denies the remaining allegations.

21.     FCPS permitted [B.R.]'s assailant to remain in school, on campus, while simultaneously instigating a smear campaign against [B.R.] in communications with [B.R.]'s parents, [B.R.]'s peers at school, and [B.R.]'s educators at her grade school.

Response:  The School Board lacks knowledge or information sufficient to respond to the allegation that the "assailant … remained in school, on campus" because Plaintiff does not identify the "assailant" that she is referencing; thus, this allegation is denied.  The School Board denies all remaining allegations.

22.     This case is not about some "public school playground incident," but one which rises to the level of a constitutional violation actionable under 42 U.S.C. § 1983. *Cf. Waybright v. Frederick Cty.*, 528 F.3d 199, 208 (4th Cir. 2008).

Response:  Because Count II under 42 U.S.C. § 1983 was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.  To the extent that a response it required, all allegations are denied.

23.     FCPS' misconduct created a tortuous [sic] environment at the Rachel Carson Middle School which lasted months causing [B.R.] to suffer permanent physical, neurological, emotional, and psychological injuries for which she requires ongoing medical and psychiatric care.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to Plaintiff's injuries and, thus, they are denied.  All remaining allegations are denied.

24.     The actions of the FCPS were so reprehensible that it entered into a Voluntary Resolution Agreement with the United States Department of Education to resolve issues raised by [B.R.] in an Administrative Complaint she filed with the Office of Civil Rights ("OCR Complaint").

Response:  Admitted in part and denied in part.  The School Board admits that it entered into a Voluntary Resolution Agreement with the Department of Education, which resolved Plaintiff's OCR Complaint without any finding of wrongdoing.  The remaining allegations are denied.

25.     Pursuant to the Voluntary Resolution Agreement, FCPS agreed to make a series of significant changes to its policies, procedures, and practices to comply with Title IX of the Education Amendments of 1972 ("Title IX").

Response:  Admitted in part and denied in part.  The School Board admits that, pursuant to the Voluntary Resolution Agreement, FCPS agreed to make certain changes to its policies, procedures, and/or practices.  All remaining allegations are denied.

26.     In a supplemental filing to the U.S. Department of Education, [B.R.] advised of additional instances of rape, anal rape, and physical assault with weapons she endured, as well as death threats directed to her and her entire family.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the allegations.

27.     The Voluntary Resolution Agreement, however, did not address [B.R.]'s lifelong and permanent physical and psychological injuries.

Response:   The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff has suffered any "lifelong and permanent physical and psychological injuries," and therefore denies that allegation.  The remaining allegations are denied.

28.     Under the Voluntary Resolution Agreement, FCPS was required to provide [B.R.] written notice of the outcome of the investigation and any remedial steps it would take to correct the recurrence of the sexually hostile environment at Rachel Carson Middle School.

_Response_:  Denied as phrased.  The Voluntary Resolution Agreement speaks for itself and no further characterization is necessary.

29.     FCPS never supplied any such information to [B.R.].

_Response_:  The School Board denies that it was obligated to provide such information to Plaintiff and, thus, all allegations are denied.

30.     In the Voluntary Resolution Agreement, the United States Department of Education and the FCPS expressly acknowledged [B.R.]'s "right to file a private suit in federal court."

_Response_:  Denied.

31.     Through this Complaint, [B.R.] seeks money damages under 42 U.S.C. 1983 and 20 U.S.C. §§1681-1688. [B.R.] also raises supplemental state law claims against [C.K., J.O., A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.].

_Response_:  The language of the Amended Complaint speaks for itself.

32.     Contemporaneous with the filing of this Amended Complaint, [B.R.] has moved to proceed under a pseudonym.

_Response_:  Admitted.

**2.     STATEMENT OF JURISDICTION**

33.     The Court has federal subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 because [B.R.]'s claims arise under the laws of the United States of America, including Title IX, 20 U.S.C. §§1681-1688, 42 U.S.C. §1983, 42 U.S.C. § 1985 and the United States Constitution.

_Response_:  This paragraph calls for a legal conclusion to which no answer is required.

34.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over [B.R.]'s additional claims under state law because [B.R.]'s state law claims arise out of a common nucleus of operative facts.

Response:  This allegation relates to claims not brought against the School Board and so no response is required. To the extent that a response is required, the allegations are denied.

35.     Venue is proper in the Eastern District of Virginia because [B.R.]'s claims arise primarily from unlawful conduct occurring in Fairfax County, Virginia.

Response:  This paragraph calls for a legal conclusion to which no answer is required.

3.     **PARTIES**

A.     **All Defendants Know [B.R.]'s Identity[1]**

36.     [B.R.] is an adult individual and citizen of the United States of America.

Response:  Admitted.

37.     [B.R.]'s name and address is not contained in this Complaint to protect the privacy and identity of [B.R.], who incurred serious physical, neurological, psychiatric, and emotional injuries and damages of a sensitive nature as a result of the intentional, reckless, and outrageous acts and failures of Defendants as outlined below. Information which could identify [B.R.] is not contained herein.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff suffered injuries and, therefore, denies that allegation. All remaining allegations are denied.

38.     Good cause exists for [B.R.] to use a pseudonym due to the harmful effect of the public disclosure of her identity and the harm inflicted by defendants to [B.R.]. All Defendants are or should be aware of [B.R.]'s identity and suffer no prejudice by reason of concealing [B.R.]'s identity in the Complaint and public records filed with the Court.

_____

[1] All headings are copied verbatim from the Amended Complaint.  To the extent that they contain substantive allegations, they are denied unless expressly admitted.

Response:  The School Board admits that it is aware of Plaintiff's identity.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, all remaining allegations are denied.

39.     [B.R.] seeks to proceed as a [B.R.] in this case because of the FCPS' prior betrayal of the promises to protect her anonymity.

Response:  The School Board lacks knowledge or information sufficient to form a belief about the Plaintiff's motivation to proceed pseudonymously and, therefore, it denies those allegations.  All remaining allegations are denied.

40.     It is believed, and therefore averred, that the School District will argue to this Court that her case should be dismissed because she has not identified herself by her real name.

Response:  The School Board lacks knowledge or information sufficient to form a belief about what Plaintiff believes and, therefore, it denies those allegations.

41.     But they know who she is.

Response:   The School Board admits that it is aware of Plaintiff's true identity.

42.     They knew when she first informed them of her initial mistreatment.

Response:   The School Board admits that it is aware of Plaintiff's true identity.   All remaining allegations are denied.

43.     They know her name now.

Response:  The School Board admits that it is aware of Plaintiff's true identity.

44.     The Defendants previously promised to protect her anonymity.

Response:  Denied.

45.     After making her initial written statement to school officials in 2011, FCPS officials immediately told her attackers and betrayed the promise to keep her identity private.

Response:  Denied.

46.     This betrayal caused [B.R.] to endure additional harassment and abuse.

Response:  Denied.

47.     They retaliated against her before and exposed her identity to her assailants.

Response:  Denied.

48.     The officials with the FCPS knew who she was when they informed her attackers that she had filed a complaint with the school.

Response:  The School Board admits that it knows Plaintiff's identity and has been aware of her identity at all relevant times.  All remaining allegations are denied.

49.     They knew who she was when [B.R.] made her report to the Office of Civil Rights of the United States Department of Education.

Response:  Admitted.

50.     They knew her name when the U.S. Department of Education investigated her complaints about the FCPS.

Response:  Admitted.

51.     They knew who she was when the FCPS responded to the Office of Civil Rights Complaint.

Response:  Admitted.

52.     They knew who she was when the FCSB entered into a Voluntary Resolution Agreement with the Office of Civil Rights.

Response:  Admitted.

53.     They know who she is now.

Response:  Admitted.

54.     Notably, FCPS officials directed teachers to use pseudonyms to refer to [B.R.] in internal communications about her.

Response:  Denied.

55.     To claim that this Court lacks jurisdiction because [B.R.] has not used her real name in the caption of this case, is a procedural gimmick.

Response:  Denied.

56.     But [B.R.]'s use of a pseudonym is not a gimmick.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the allegations.

57.     Given the reprisals and retaliation [B.R.] previously endured because the School District revealed her identity, she is terrified that the School District will again attempt to hurt her.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff being "terrified that the School District will again attempt to hurt her" and, therefore, denies the allegations.  All remaining allegations are denied.

58.     She believes they will do it again and their insistence that she reveal her identity on a federal docket available to the whole world on the internet confirms [B.R.]'s greatest suspicions.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the allegations.  The School Board avers that, as set forth in previously filed papers, it did not take a position on Plaintiff's request to proceed anonymously.

B.     **The Defendants**

59.     **Defendant Fairfax County School Board** ("FCSB") is a public school board that is responsible for the operation, management, and oversight of the public education system of the

Fairfax County Public Schools ("FCPS").  Defendant FCSB is the public body "that governs [the] school division" of FCPS, within the meaning of Va. Code Ann. § 22.1-1, VA. Const., Art. VIII, § 7 ("The supervision of schools in each school division shall be vested in a school board"), Va. Code Ann. § 22.1-28 ("supervision of schools in each school division shall be vested in a school board"), and Va. Code Ann. § 22.1-71 (stating that the "school board" is the "body corporate" with the power to "sue" and "be sued"). The FCSB is the "body corporate" for the FCPS and is vested with all the powers and charged with all the duties, obligations, and responsibilities imposed upon FCPS.

Response:  Admitted in part and denied in part.  The School Board admits only that it manages and operates FCPS.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

60.    As the corporate body for FCPS, Defendant FCSB is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

Response:  Admitted in part and denied in part.  The School Board admits that it receives federal funds.  The remaining allegations state a legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

61.    Defendant FCSB provided educational, supervisory, and childcare services to children directly and through Fairfax County Public Schools, including the Rachel Carson Middle School, its principals, vice principals, teachers, staff, and other personnel, including, but not limited to defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], who acted as its agents, ostensible agents, servants and/or employees.

Response:  Admitted in part and denied in part.  The School Board admits that it provides educational services through FCPS.  The School Board also admits that the above individuals were employed by FCPS during the 2011-12 academic year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

62.     Defendant, **[C.K.]**, is an adult individual residing at 2405 Tatnuck Court in Herndon, Virginia 20171.

Response:  Admitted in part and denied in part.  The School Board admits that C.K. is an adult individual.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegation and, therefore, denies the allegations.

63.     At all times material, [C.K.] was a minor, [B.R.]'s peer, and a student at Rachel Carson Middle School ("the middle school"), located at 13518 McLearen Road in Herndon, Virginia 20171.

Response:  Admitted.

64.     Defendant, **[J.O.]**, is an adult individual residing at 13611 Floris Street in Herndon, Virginia 20171.

Response:  Admitted in part and denied in part.  The School Board admits that J.O. is an adult individual.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegation and, therefore, it denies the allegations.

65.     At all times material, [J.O.] was a minor and a student with [B.R.] at the middle school.

Response:  Admitted.

66.     Defendant, **[P.H.]** ("Assistant Principal [P.H.]") is, at all times material, an adult individual and Assistant Principal and/or educator at the middle school and maintains a personal address and residence at 14803 Haymarket Lane in Centerville, Virginia 20152.  At all times material hereto, [P.H.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that P.H. was employed as an Assistant Principal at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

67.     Defendant, **[A.F.]** ("Principal [A.F.]") is, at all times material, an adult individual and Principal, and/or educator at the middle school and maintains a personal address and residence at 42448 Leesylvania Court, in Ashburn, Virginia 20148. At all times material hereto, Principal [A.F.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that A.F. was employed as a Principal at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

68.     Defendant, **[S.T.]** ("Assistant Principal [S.T.]") is, at all times material, an adult individual and Assistant Principal, and/or Educator at the middle school and maintains a personal address and residence at 47 Eisentown Drive, Lovettsville in Virginia, 20180.  At all times material hereto, [Assistant] Principal [S.T.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that S.T. was employed as an Assistant Principal at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

69.     Defendant, **[T.B.]** ("Assistant Principal [T.B.]") is, at all times material, an adult individual and Assistant Principal, and/or Educator at the middle school and maintains a personal address and residence at 1506 Crane Street in Falls Church, Virginia 22046. At all times material hereto, Assistant Principal [T.B.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that T.B. was employed as an Assistant Principal at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

70.     Defendant, **[B.H.]** ("Counselor [B.H.]") is, at all times material, an adult individual and guidance counselor of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, Counselor [B.H.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that B.H. was employed as a guidance counselor at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

71.     Defendant, **[J.F.]** ("Counselor [J.F.]") is, at all times material, an adult individual and guidance counselor of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, Counselor [J.F.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that J.F. was employed as a guidance counselor at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

72.     Defendant **[M.C.]** is, at all times material, an adult individual and educator of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, [M.C.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that M.C. was employed as a teacher at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

73.     Defendant **[M.P.]** is, at all times material, an adult individual and educator of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, [M.P.] was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that M.P. was employed as a teacher at Rachel Carson Middle School during the 2011-12 school year.  The School Board denies that M.P. maintains an office at FCPS.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

74.     Defendant **[F.T.]** is, at all times material, an adult individual and educator of the middle school and maintains an office at defendant, Fairfax County Public Schools, Gatehouse Administrative Center, 8115 Gatehouse Road in Falls Church, Virginia 22042. At all times material hereto, [F.T.], was acting as an employee, agent, servant and/or ostensible agent of Fairfax County School Board.

Response:  Admitted in part and denied in part.  The School Board admits that F.T. was employed as a teacher at Rachel Carson Middle School during the 2011-12 school year.  The School Board denies that F.T. maintains an office at FCPS.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, the allegations are denied.

75.     FCPS is responsible for the policies, procedures, practices, and training of the principals, vice principals, teachers, staff, and other personnel, including, but not limited to defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], under the employ of the Fairfax County Public Schools.

Response:   Admitted in part and denied in part.  The School Board admits that it is responsible for the policies it enacts and that FCPS promulgates procedures and provides training to employees pursuant to School Board policies.  All remaining allegations are denied.

76.    FCPS is responsible for the actions and omissions of its principals, vice principals, teachers, staff, and other personnel under its employ.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

77.    Defendants [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], were at all times relevant to this complaint, duly appointed and acting as educators, employees, agents, and/or servants on behalf of the Fairfax County Public Schools, acting under the color of law and under the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Virginia.

Response:  Admitted in part and denied in part.  The School Board admits that the above-named individuals were employed at Rachel Carson Middle School during the 2011-12 academic year.  The remainder of this paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, all remaining allegations are denied.

78.    At all times relevant hereto, Defendants [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.] were responsible for educating, safeguarding, and protecting students of RCMS from harm, including from the conduct of other RCMS students.

Response:  The School Board admits that Defendants A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T. each had educational, administrative, or counseling responsibilities at Rachel Carson Middle School during the 2011-12 school year.  The remaining allegations in this paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the remaining allegations are denied.

79.     At all times relevant hereto, defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], were acting within the course and scope of their employment with RCMS and/or FCPS.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that any of the referenced individuals is claimed to have inflicted harm on Plaintiff, the allegations are denied.

80.     Defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], are being sued in their individual and official capacities.

Response:  Admitted in part and denied in part.  The School Board admits that the above-mentioned individuals are defendants in this lawsuit.  All remaining allegations are denied.

81.     The FCSB educators, administrators and principals were responsible to provide a safe and enabling learning environment for [B.R.] that was free of discrimination and harassment based on her sex, which they failed to do, thus breaching their constitutional, statutory, fiduciary, and common law duties to [B.R.].

Response:  Admitted in part and denied it part.  The School Board admits that it seeks to provide students with a safe learning environment free from discrimination and harassment.  The School Board denies that it subjected Plaintiff to any discrimination, harassment, or other unlawful actions.  The remainder of this paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, any remaining allegations are denied.

82.     Defendants, FCSB, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], not only failed to provide a safe learning environment for [B.R.], but also failed to stop and/or prevent

harm to students, including [B.R.], despite knowing of the sexual harassment and verbal and physical abuse to which other students subjected [B.R.].

Response:  Denied.

83.     Defendants, **Mike/Mary Roes, Nos. 1-15** are unknown students of the middle school and other individuals who, upon information and belief, and at all times relevant and material hereto, participated in the physical and sexual assaults, rapes, and/or gang rapes of [B.R.].

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

84.     [B.R.] avers state law claims and complied with all requirements of the Virginia Tort Claims Act.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

## THE FACTS

85.     The FCPS claims publicly that "it does not tolerate acts of sexual or gender-based harassment."

Response:  Admitted in part and denied in part.  The School Board admits that FCPS does not tolerate acts of sexual or gender-based misconduct.  The School Board lacks knowledge or information sufficient to form a belief that those exact words were used on particular occasions and, therefore, denies the remaining allegations.

86.     That is untrue.

Response:  Denied.

87.     The FCPS also falsely boasts that it is "committed to conducting a prompt, thorough and impartial investigation" of reports of sexual harassment.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that it used this specific language in any public proclamation and, thus, the allegations are denied.

88.     The FCPS Anti-Harassment Statement also provides: "If the investigation reveals that sexual harassment created a sexually hostile environment PCPS [sic] will take prompt and effective steps to end the harassment, eliminate the hostile environment and prevent its recurrence, including .... protect[ing] the complainant and ensur[ing] her safety."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that this specific language appears in any public statement.  The School Board admits that, as a policy, "[w]hen an investigation reveals that sexual misconduct created a sexually hostile environment, FCPS will take prompt and effective steps to end the misconduct, prevent its recurrence, and remedy its effect—including continuing the interim measures as necessary to protect the reporting student and ensure his or her safety."  All remaining allegations are denied.

89.     In this case, the FCPS not only failed to take steps to protect [B.R.] and ensure her safety, it took affirmative steps to ensure that [B.R.] would endure repeated and ongoing sexual assaults.

Response:  Denied.

**A.      FCPS Students Sexually Harassed, Assaulted, Taunted, and Bullied [B.R.] at School**

90.     This matter involves peer-to-peer physical assault and bullying while [B.R.] was a student at the Rachel Carson Middle School from October, 2011 through February, 2012.

Response:  The School Board admits only that Plaintiff bases this lawsuit on alleged student-on-student assault and bullying that allegedly took place during the 2011-12 academic

year.  The School Board denies that it subjected Plaintiff to unlawful conduct.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

91.     During the 2011-2012 school year, [B.R.], was a seventh-grade student in the care, custody, and control of FCPS.

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff was a seventh-grade student during the 2011-12 academic year.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, all remaining allegations are denied.

92.     Beginning on or about October 30, 2011, [B.R.] fended off the unwelcomed sexual advances of her peer, David Neill.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

93.     [B.R.]'s peers then began spreading rumors at RCMS that she was sexually promiscuous and that she gave "blow jobs" and "hand jobs."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

94.     [B.R.]'s peers called her names, stating that she was a "slut," "whore," "hoe," "lesbian," and "bi-sexual."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

95.     When [B.R.] arrived to RCMS on the morning of October 31, 2011, male students surrounded her at her locker before her first period class, called her names, thrusted their pelvises at her, and made unwelcomed sexual advances towards her.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

96.     On or about November 1, 2011, [B.R.] reported to her teachers and to RMCS' hallway monitors stationed at or near her locker, that a group of teenage boys called her names, touched her, hurt her, and made her feel uncomfortable when she went to her locker.

Response:  Denied.

97.     Male students at RCMS accosted [B.R.] at her locker before her first period class and in between her classes.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

98.     [B.R.]'s peers fondled her and placed their hands under her shirt, down her pants, up her skirt, made lewd sexual comments to her, teased her, and threatened her.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

99.     [B.R.] feared going to her locker to get textbooks for her classes.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

100.    The boys' unwelcomed sexual touching and harassment of [B.R.] prevented her from getting to class on time.

<u>Response</u>:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

101.    On or about November 1, 2011, when the seventh-grade honor student [B.R.] reported to her homeroom teacher, [M.C.], that she was tardy because she was being "hurt" by other students at her locker.

<u>Response</u>:  Denied.

102.    [M.C.] did nothing to help [B.R.].

<u>Response</u>:  Denied.

103.    Deliberately indifferent, [M.C.] did not investigate [B.R.]'s report.

<u>Response</u>:  Denied.

104.    After homeroom, [B.R.]'s male peers followed her into the hallway.

<u>Response</u>:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

105.    [B.R.]'s peers surrounded, touched, and called her names when she changed classes or returned to her locker to change textbooks.

<u>Response</u>:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

106.    [B.R.]'s science teacher, [F.T.], monitored the hallway near [B.R.]'s locker.

<u>Response</u>:  Admitted.

107.    Defendant [F.T.] witnessed students' abuse and harass [B.R.] at her locker.

<u>Response</u>:  Denied.

108.    In fact, [B.R.] frequently asked [F.T.] for help opening her locker to deter her male assailants.

Response:  Denied.

109.    Deliberately indifferent, [F.T.] did nothing to help [B.R.] and did not investigate or discipline [B.R.]'s assailants.

Response:  Denied.

110.    On or about November 1, 2011, [B.R.] told her history teacher, [M.P.], that she felt unsafe and was bullied in the hallways.

Response:  Denied.

111.    Deliberately indifferent, [M.P.] did not investigate [B.R.]'s report of feeling unsafe or being bullied.

Response:  Denied.

112.    School officials, however, instructed [B.R.] to seek help from the guidance counselor, [B.H.].

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff was encouraged to speak with B.H.  All remaining allegations are denied.

113.    Deliberately indifferent, Counselor [B.H.] told [B.R.] that she was "too busy" to meet.

Response:  Denied.

114.    Counselor [B.H.] advised [B.R.] to return the following day.

Response:  Denied.

115.    [B.R.]'s peers harassed her at school the next day, and she returned to Counselor [B.H.]'s office seeking protection from her peers.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

116.   [B.R.] asked to speak with Counselor [B.H.] because she was afraid to walk the hallways at RCMS and needed help.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

117.   Again, deliberately indifferent, Counselor [B.H.] was unavailable to speak with [B.R.].

Response:  The School Board denies that it engaged in deliberately indifferent conduct. The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, the remaining allegations are denied.

118.   Later that week, [B.R.] observed Counselor [B.H.] in the hallways of RCMS and told [B.H.] she felt unsafe at RCMS and needed help.

Response:  Denied.

119.   Even after that, Counselor [B.H.] made no effort to meet with [B.R.].

Response:  Denied.

120.   [B.R.] repeatedly sought out and begged Counselor [B.H.] for help.

Response:  Denied.

121.   Deliberately indifferent, Counselor [B.H.] did nothing.

Response:  Denied.

122.   After Counselor [B.H.] repeatedly ignored [B.R.]'s pleas for help, [B.R.] returned to the student services office and asked to speak with another FCPS guidance counselor.

Response:  The School Board denies that B.H. "repeatedly ignored" any of Plaintiff's "pleas for help."  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the allegations.

123.     [B.R.] reported to Counselor [J.F.] that male students at RCMS bullied her, that she felt uncomfortable in the hallways and that she feared for her safety because she was being touched inappropriately by male students.

Response:  Denied.

124.     Deliberately indifferent, Counselor [J.F.] did not investigate [B.R.]'s requests, but simply advised her that the bullying would cease over time.

Response:  Denied.

125.     It didn't.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied.

126.     The harassment, touching, taunting, and bullying that [B.R.] experienced at RCMS did not cease; it grew worse.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied.

127.     FCPS students now bullied [B.R.] at school, on her bus ride home from school, and off campus.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied.

**B.     FCPS Students Raped, Tortured, Abused, Threatened, And Extorted [B.R.]**

128.     In early November of 2011, [B.R.] was sexually assaulted by two RCMS students, [C.K.] and [J.O.]

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied.

129.    [J.O.] approached [B.R.] in gym class and asked about hanging out with an older FCPS student, [C.K.], after school.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

130.    [B.R.] declined [J.O.]'s invitation.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

131.    [C.K.] and [J.O.], however, followed [B.R.] when she was walking home.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

132.    [J.O.] and [C.K.] then tackled [B.R.] from behind and held her to the ground.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

133.    They removed [B.R.]'s clothing, digitally penetrated her vagina, and fondled [B.R.]'s breasts.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

134.    [C.K.] sat on top of [B.R.] while [J.O.] photographed [B.R.], using a cell phone, as she lay helpless with her shirt and pants removed.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

135.    [C.K.] and [J.O.] then forced [B.R.] to perform oral sex on [C.K.].

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

136.    They threatened to send the topless photographs of [B.R.] to other FCPS students if she refused.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

137.    At school the next day, [C.K.] and [J.O.] fueled rumors among peers that [B.R.] was sexually promiscuous.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

138.    FCPS's students increasingly bullied [B.R.] at school.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

139.    On November 9, 2011, [B.R.] took the late bus home from school and encountered [C.K.] waiting for her at her bus stop.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

140.    [C.K.] brandished a knife and threatened [B.R.] with physical violence if she did not follow him to a secluded area nearby.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

141.    [C.K.] cut [B.R.] with his knife, held her to the ground against her will, and removed her clothing.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

142.    He then, again, forced [B.R.] to perform oral sex.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations

143.    During the course of this violent encounter, [C.K.] threatened to kill her and her family if she did not satisfy his sexual demands.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

144.    Thereafter, [C.K.] raped [B.R.] nearly every day after school, at or near her bus stop until November 21, 2011.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

145.    Each rape grew more violent with increasing emotional abuse and threats of physical violence to [B.R.] and her family.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

146.    When [B.R.] tried to avoid [C.K.] at her bus stop and when she tried to escape [C.K.], he caught her and beat her with his fist until she submitted.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

147.    [C.K.] tortured [B.R.], burning her with his lighter and cutting her with his knife.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

148.    [C.K.] penetrated [B.R.]'s vagina and anus with sex toys and, other times, he penetrated [B.R.]'s vagina with his foot or his hand.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

149.    [C.K.] told [B.R.] that he was grooming her for the enjoyment of his "friends."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

150.    He repeatedly threatened to kill [B.R.] and her family if she ever told anyone of the violent rapes.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

151.    [C.K.] told [B.R.] and other FCPS students that [B.R.] was his "property."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

152.    During school, between November 9, 2011 and November 21, 2011, [C.K.] followed [B.R.] to and from her classes.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

153.    [B.R.] was constantly in fear for her life.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

154.    Although [B.R.] repeatedly sought the assistance of FCPS personnel and guidance counselors during this time frame, they did not provide her any help because of their deliberate indifference.

Response:  Denied.  Plaintiff did not report to the school as described above that she had been sexually assaulted or raped.

**C.    FCPS' Deliberate Indifference to [B.R.]'s Abuse Emboldened Her Attackers**

155.    On the morning of November 21, 2011, [B.R.] and her mother met with RCMS assistant principals, [S.T. and P.H.], and guidance counselor [B.H.], to discuss a sexually explicit voicemail that [C.K.] placed to her on November 14, 2011.

Response:  Admitted in part and denied in part.  The School Board admits that S.T. and B.H. met with B.R. and her mother on or about November 21, 2011.  The School Board denies the remaining allegations.

156.    [B.R.]'s mother also told [B.H., S.T., and P.H.] that [C.K.] stole fifty dollars ($50.00) from her daughter.

Response:  Denied.

157.    [B.R.] gave [S.T., P.H., and B.H.] a written and verbal report that she was "scared to come to school," that she feared for her safety in the hallways of RCMS, and that she was the victim of peer-to-peer sexual harassment at RCMS.

Response:  Admitted in part and denied in part.  The School Board admits that school administration took a verbal and written statement from Plaintiff on or about November 21, 2011 and the statement outlines Plaintiff's concerns.   All remaining allegations are denied.

158.    [B.R.] identified [J.O.], David Neill, and [C.K.] as FCPS students who bullied her.

Response:  The School Board admits that B.R.'s statement identified J.O., David Neill, and C.K.  All remaining allegations are denied.

159.     [B.R.]'s written statement is included here: [statement omitted]

Response:  Denied.

160.     In response to [B.R.]'s complaints, [S.T.] warned [B.R.] and her mother that [C.K.] "had been in enough trouble" and asked [B.R.] and her mother not to "ruin a kid's life."

Response:  Denied.

161.     Assistant Principal [S.T.], Assistant Principal [P.H.], and Counselor [B.H.] advised [B.R.] and her mother that they would investigate.

Response:  Admitted in part and denied in part.  The School Board admits that an administrator advised Plaintiff and her mother, among other things, that they would conduct an investigation.  All remaining allegations are denied.

162.     Assistant Principal [S.T.] had a personal relationship with Defendant [C.K.] and his family.

Response:  Denied.

163.     Though [B.R.] reported there were additional FCPS students sexually harassing her at school, she did not know the students' names, and FCPS did nothing to investigate these students' identities.

Response:  Denied.

164.     FCPS administrators did nothing to safeguard [B.R.] from [C.K., J.O.], or any one of the other students who bullied [B.R.] during the course of FCPS's "investigation."

Response:  Denied.

165.     In fact, not only did [J.O.] physically assault [B.R.] before the school day ended on November 21, 2011, her peers sexually harassed her that day.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

166.    [B.R.]'s mother notified FCPS employees that [B.R.] would be removed from school until after the Thanksgiving break until FCPS completed its "investigation" into her complaints.

Response:  The School Board admits that Plaintiff's mother e-mailed S.T., P.H., and B.H. on November 21, 2011, stating that she would be keeping Plaintiff home until after Thanksgiving. All remaining allegations are denied.

167.    Within twenty-four hours, however, FCPS administrators completed the sham "investigation" and contacted [B.R.]'s parents and requested they return to the middle school for a meeting to discuss their "findings."

Response:  Admitted in part and denied in part.  The School Board admits that S.T. contacted Plaintiff's mother on the morning of November 22, 2011 to arrange a follow-up meeting later that day.  All remaining allegations are denied.

168.    At the November 22, 2011 meeting, FCPS administrators claimed [B.R.] mutually agreed to meet [C.K.].

Response:  Denied.

169.    Assistant Principal [S.T.] advised [B.R.]'s parents that her investigation led her to believe that [B.R.] was "sexually active" with [C.K.].

Response:  Denied.

170.    Assistant Principal [S.T.] ignored, however, signs that [C.K.] forcibly sexually assaulted [B.R.].

Response:  Denied.

171.    Assistant Principal [S.T.] rejected [B.R.]'s claims that [C.K.] was "bullying" her.

Response:  Denied.

172.    [S.T.] dismissed [C.K.]'s misconduct with [B.R.] as a "boy-girl thing."

Response:  Denied.

173.    [S.T.], however, acknowledged that [C.K.] extorted fifty ($50) dollars from [B.R.].

Response:  Denied.  The investigation found that Plaintiff agreed to loan $50 to C.K.

174.    FCPS did not punish or reprimand Defendant [C.K.] for extorting [B.R.].

Response:  Admitted in part and denied in part.  The School Board admits that C.K. was
not formally disciplined for receiving the $50 loan from Plaintiff.  The School Board denies that
it found any evidence of extortion and denies all remaining allegations.

175.    Instead, Assistant Principal [S.T.] insulated [C.K.] from reprisal by any responsible
adults or authorities.

Response:  Denied.

176.    In fact, Assistant Principal [C.K.] [sic] related information supposedly gleamed
from Defendant [C.K.] to [B.R.'s] parents in order to dissuade [B.R.] and [B.R.'s] parents from
any further reports.

Response:  Denied.

177.    FCPS, by and through [P.H.] and [S.T.], advised [B.R.] and her parents the middle
school would advise [B.R.]'s teachers of [B.R.]'s reports of harassment and bullying by her peers
and to be on the lookout for such behavior in the hallways and near [B.R.]'s locker throughout the
school day.

Response:  Admitted in part and denied in part.  The School Board admits that P.H. and/or
S.T. told Plaintiff and her mother of a comprehensive plan to help Plaintiff, which included

advising Plaintiff's core teachers of the general nature of what Plaintiff had reported (which at that time involved no allegations of rape or sexual assault), that they should be visible in the locker pod, that they should be on the lookout for any harassing behavior, and that any concerns should be immediately reported.  All remaining allegations are denied.

178.    [P.H.] and [S.T.] also said that they would move [B.R.'s] physical education locker away from [J.O.] and closer to the view of the teacher.

Response:  Admitted.

179.    Instead, FCPS moved [B.R.'s] physical education locker to an area outside the view of the teacher.

Response:  Denied.

180.    As a result, [B.R.] was subjected to physical assault and bullying at the hands of Defendant [J.O.]

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, the allegations are denied.

181.    With deliberate indifference, FCPS failed to implement their "plan."

Response:  Denied.

182.    FCPS left [B.R.] vulnerable to further harassment and abuse despite [B.R.'s] and her mother's November 21, 2011 verbal and written reports.

Response:  Denied.

183.    FCPS also failed to advise [B.R.'s] teachers that she was the victim of bullying.

Response:  Denied.

184.    For example, [B.R.'s] drama teacher, Josh Bickford, admitted to [B.R.] that he was never advised by FCPS staff or principals that she was bullied.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, the allegations are denied.

185.    As a result of FCPS's sham investigation into [B.R.]'s reports of sexual harassment and bullying at RCMS, FCPS emboldened [B.R.]'s peers to retaliate against her for "snitching."

Response:  Denied.

186.    When [B.R.] returned to school after Thanksgiving break, students relayed [C.K.]'s threats to [B.R.] including that [C.K.] had a gun, that [C.K.] was not afraid to use it, and that he was going to kill her.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

187.    As FCPS students grew more confident in their ability to assault [B.R.] and escape the consequences, they became more overt with their advances.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

188.    On or around December 14, 2011, during history class, a male classmate put his hands down [B.R.]'s pants.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.  This allegation was not reported to FCPS.

189.    When [B.R.] reported the incident to her teacher, [M.F.] told [B.R.] that she "needs to learn to be a big kid" and to "deal with the situation yourself."

Response:  Denied.

190.   One afternoon in December of 2011, [B.R.] had to stay late at RCMS with her Spanish teacher for additional instruction.

Response:  Denied.

191.   When [B.R.] left the classroom, a male student accosted her in the hallway.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.  This allegation was never reported to FCPS.

192.   The student forced [B.R.] into a maintenance closet where [B.R.] was assaulted by three, unidentified, Spanish speaking adult males.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.  This allegation was never reported to FCPS.

193.   This was the first time [B.R.] was raped at school.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.  This allegation was never reported to FCPS.

194.   Beginning in December 2011 and continuing through February 2012, [C.K.] and other students raped [B.R.] on RCMS campus during and after school hours.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.  These allegations were never reported to FCPS.

195.   Each and every time [B.R.] was raped on RCMS property, an RCMS teacher and/or staff member was located nearby.

38

Response:  Denied.

**D.      FCPS' Actions Constitutes a State Created Danger Within the Meaning of 42 U.S.C. § 1983.**

196.    As set forth above, this is worse than a case where a state actor fails to act in the response to a deprivation of a citizen's constitutional rights.

Response:  Denied.

197.    In response to [B.R.]'s complaints, the FCPS took plenty of actions.

Response:  Admitted.

198.    Each affirmative act by the FCPS created, fostered and maintained a danger for [B.R.] in violation of her constitutionally protected rights.

Response:  Denied.

199.    For instance, on November 22, the day after she submitted her written statement to FCPS officials, Defendant [S.T.] informed [B.R.]'s parents that she had finished her "investigation" of the sexual harassment and invited them in for a meeting to discuss her findings. OCR Complaint at ¶ 18.

Response:  Admitted in part and denied in part.  The School Board admits that S.T. contacted Plaintiff's mother on the morning of November 22, 2011 to arrange a follow-up meeting later that day.  All remaining allegations are denied.

200.    During that meeting later in the day, Defendant [S.T.] told [B.R.]'s parents that she had spoken with Defendant [C.K.] and concluded that the situation appeared to be a "boy-girl thing." *Id.*

Response:  Admitted in part or denied in part.  The School Board admits that S.T. told or suggested to Plaintiff's mother that she had interviewed C.K.  All remaining allegations are denied.

201.    Defendant [S.T.] then told the [B.R.]'s parents that [B.R.] herself may have engaged in sexual behavior about which they were not aware. *Id.*

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

202.    Far from attempting to determine whether [B.R.]'s complaints were correct, Defendant [S.T.] attempted to turn the tables on the complainant and insinuate her wrongdoing to her parents. *Id*.

Response:  Denied.

203.    The insinuation that [B.R.] was promiscuous created danger which protected and enabled the perpetrator to continue his assaults on her. *Id*.

Response:  Denied.

204.    The state created danger is prohibited and actionable under 42 U.S.C. § 1983.

Response:  This paragraph consists of a legal conclusion to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

205.    During this meeting with [B.R.]'s parents, Defendant [S.T.] also explained that she had been able to recover the $50 that Defendant [C.K.] extorted from [B.R.], and jokingly told [B.R.]'s mother that she needed to return the money to her before she spent it herself on Christmas shopping. *Id*.

Response:  Admitted in part and denied in part.  The School Board admits that S.T. obtained $50 from C.K.'s mother and returned it to Plaintiff's mother.  All remaining allegations are denied.

206.    The FCSB's response to [B.R.]'s serious complaint that extortion was something to joke about fostered a state created danger to [B.R.]. *Id*.

Response:  Denied.

207.    In response to [B.R.]'s reports of bullying and threats, FCSB insulated Defendant [C.K.] from reprisal and intervention by his parents or any responsible authorities.

Response:  Denied.

208.    [S.T.] dealt directly with Defendant [C.K.] only.

Response:  Denied.

209.    Insulating Defendant [C.K.] from reprisal by responsible adults subjected [B.R.] to a state created danger.

Response:  Denied.

210.    When [B.R.]'s mother met with school officials she informed them that [B.R.] was receiving death threats at school, Counselor [B.H.] stated that the school did not "have the time or the manpower" to protect her. *Id*. at ¶21.

Response:  Denied.

211.    During another instance, FCPS officials created an environment in which her constitutional rights were trampled.

Response:  Denied.

212.    [B.R.] told Teacher [M.P.] that a student was assaulting her by grabbing her genitalia.

Response:  Denied.

213.    [B.R.] specifically advised Teacher [M.P.] that her classmate was grabbing her "down there."

Response:  Denied.

214.    In response, Teacher [M.P.] scolded [B.R.] and told her that she would have to tolerate the abuse "like a big girl" and "deal with it yourself."

Response:  Denied.

215.    When [B.R.] tried to move away from this attacker, Teacher [M.P.] commanded that [B.R.] sit near her attacker.

Response:  Denied.

**E.    [B.R.]'s Parents Removed Her from the Dangerous and Discriminatory School Environment**

216.    From October 2011 through February of 2012, [B.R.] was repeatedly threatened with violence and was the victim of physical and emotional abuse while a student at the middle school.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

217.    As a result of the severe physical and emotional torment she was suffering at the hands of her abusers both on and off school property, [B.R.]'s school performance began to suffer.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff suffered "severe physical and emotional torment."  All remaining allegations are denied.

218.    Following the November 21, 2011 meeting with RCMS administrators and staff, [B.R.] received an increased number of death threats directed to her and to her family for "snitching."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

219.    From November 22, 2011 through February 8, 2012, [B.R.] continued to report to her teachers and FCPS staff that she was repeatedly sexually harassed and bullied and that she feared for her life and safety.

Response:  Admitted in part and denied in part.  The School Board admits that, during that three month period, Plaintiff reported various incidents to FCPS staff.  All remaining allegations are denied.

220.    On January 27, 2012, [B.R.] emailed Principal [A.F.] and recounted the "sexual harassment, physical harassment, and name calling" she endured at the middle school.

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff e-mailed A.F. on January 27, 2012, and that she alleged to have been the subject of "sexual harassment, physical harassment, and name calling."  All remaining allegations are denied.

221.    [B.R.] told Principal [A.F.] that the middle school needed to educate its students on the meaning bullying and its effect on victims to prevent further sexual harassment, physical assaults, and name calling.

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff offered a proposal to A.F. to "educate the students" on bullying and its effect on students to help prevent bullying at Rachel Carson Middle School.  All remaining allegations are denied.

222.    Principal [A.F.], Assistant Principal [P.H.], and Assistant Principal [T.B.], met [B.R.]'s parents on January 27, 2012 to discuss FCPS's handling of [B.R.]'s reported peer-on-peer abuse to FCPS staff.

Response:  Admitted in part and denied in part.  The School Board admits that P.H. and T.B. met with Plaintiff's mother on January 27, 2012 to discuss various matters pertaining to Plaintiff.  All remaining allegations are denied.

223.    Specifically, [B.R.] reported verbally and in writing that FCPS students retaliated against her for "snitching."

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff wrote in a January 27, 2012 e-mail to A.F. that other Rachel Carson Middle School students may be "afraid to be made fun of even more (being called a snitch and more rude names)."  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the allegations.

224.    Assistant Principal [P.H.] and Assistant Principal [T.B.] did not know "what else the school could do to help [B.R.]," but FCPS did not investigate the students that threatened [B.R.].

Response:  Denied.

225.    Rather, FCPS's staff treated [B.R.] as a nuisance.

Response:  Denied.

226.    They discouraged her from reporting and speaking out against her bullies and instead treated [B.R.] as if *she* was a "distraction" to her peers.

Response:  Denied.

227.    On February 9, 2012, an unknown FCPS student called [B.R.] a "douchebag," "asshole," and a "bitch" in the school cafeteria.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

228.    FCPS staff reprimanded [B.R.] and threatened her with disciplinary action for standing up for herself.

Response:  Denied.

229.    That same day, [B.R.] made verbal and written reports to FCPS staff that she felt unsafe in school because she received multiple death threats from her peers.

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff reported in writing that two unknown female students told her "someones going to kill you."  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the allegations.

230.    Assistant Principal [T.B.] dismissed [B.R.]'s reports calling the death threats "just something kids say."

Response:  Denied.

231.    FCPS did not investigate the death threats and they did nothing to protect [B.R.] from her peers.

Response:  Denied.

232.    [B.R.]'s parents picked their daughter up from school early on February 9, 2012 out of concern for their daughter's safety.

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff was picked up from school early on February 9, 2012.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

233.    On February 10, 2012, [B.R.]'s parents withdrew [B.R.] from school at the recommendation of [B.R.]'s physicians.

Response:  Denied, as worded.  Plaintiff requested and received homebound instruction until she ultimately withdrew from school in 2013.

234.    [B.R.]'s parents picked her up from school at RCMS for the last time.

Response:  Admitted in part and denied in part.  The School Board admits that, on this day, Plaintiff was picked up from RCMS for the last time.  The School Board lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

235.     [B.R.] did not return to school because FCPS failed to protect her from ongoing, peer-on-peer sexual harassment and violence.

Response:  Denied.

236.     Because she had withdrawn from school, [B.R.] was prohibited from participating in RCMS' academic and extracurricular programs.

Response:  Denied.

237.     On February 10, 2012, [B.R.]'s parents advised FCPS school superintendents, Jack Dale and Fabio Zuluaga, of the sexual harassment and abuse their daughter endured at school.

Response:  Admitted in part and denied in part.  The School Board admits that Dr. Dale and Dr. Zuluaga received an e-mail on February 10, 2012.  The content of the e-mail speaks for itself.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies those allegations.

238.     On February 16, 2012, Zuluaga met with [B.R.]'s parents and advised that the FCPS would investigate FCPS' students' bullying and harassment of [B.R.].

Response:  Admitted in part and denied in part.  The School Board admits that Dr. Zuluaga met with Plaintiff's parents and advised them that he would review the school's handling of the matter.  All remaining allegations are denied.

239.     On March 1, 2012, [B.R.]'s parents learned that [C.K.] had raped [B.R.].

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of this allegation and, therefore, denies the allegations.

240.     [B.R.]'s parents filed a police report on March 2, 2012.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies them.

241.    Detective Fred Chambers, a former FCPS employee, interviewed [B.R.] on March 5, 2012.

Response:  The School Board denies that Fred Chambers was formerly employed by FCPS. The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

242.    [B.R.] underwent a SANE (Sexual Assault Nurse Examiner) evaluation on March 5, 2012.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

243.    The evaluation revealed contusions inside [B.R.]'s anus which ultimately corroborated her report of anal penetration.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations.

244.    Detective Chambers met with Principal [A.F.] on March 6, 2012 to discuss [B.R.]'s rape.

Response:  Admitted in part and denied in part.  The School Board admits that Detective Chambers relayed to A.F. that Plaintiff reported to the police that she had been sexually assaulted off school property by another student.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, the allegations are denied.

245.     On March 7, 2012, [B.R.]'s physician prohibited [B.R.] from returning to classes at RCMS, stating "the boy who perpetrated this crime plus many of his friends who assisted him remain in Rachel Carson Middle School."

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

246.     FCPS took no steps to investigate the rape.

Response:  Denied.

247.     FCPS permitted [B.R.]'s rapist to remain on campus but took no steps to facilitate [B.R.]'s return to a safe and supportive school environment.

Response:  Denied.  The School Board cannot respond to the allegation of a "rapist" remaining "on campus" as that individual is not identified in this allegation, nor is the School Board aware of any "rapist" being on school property as alleged.

248.     Instead, FCPS punished [B.R.] for reporting the harassment and rape to Fairfax police.

Response:  Denied.

249.     FCPS retaliated against [B.R.] by interfering with her ability to complete Homebound Instruction.

Response:  Denied.

250.     FCPS also refused to address the fact that [B.R.] suffered serious emotional trauma and disability as a result of abuse that she experienced at RCMS.

Response:  Denied.

251.     Instead, FCPS officials labeled the former honor student as an "emotionally disturbed" child.

Response:  Denied.

252.    Under the guise of a school investigation, and in the course and scope of his authority as principal of RCMS, Principal [A.F.] visited [B.R.]'s elementary school to dig up "dirt" on [B.R.] and inquire if she was a "troubled child."

Response:  Denied.

253.    [B.R.] then spent the next one-and-a-half years under homebound instruction.

Response:  Denied.  Plaintiff was on homebound instruction for just over a year.

254.    During that time, FCPS officials banned [B.R.]'s parents from picking up her assignments from RCMS.

Response:  Denied.

255.    FCPS officials directed that [B.R.]'s homebound instructors to use "code names" in emails regarding [B.R.] so as not to be subject to discovery in a lawsuit and to avoid public disclosure requirements.

Response:  Denied.

256.    During the remainder of [B.R.]'s seventh grade school year, students were advised not to discuss any matters concerning [B.R.] with anyone given the potential that FCPS was facing liability for their reckless indifference to [B.R.]'s rights, and/or their failure to safeguard [B.R.] against sexual harassment and assault on school property.

Response:  Denied.

257.    It was not until June 29, 2012, and only upon inquiry from [B.R.]'s mother, that Fabio Zuluaga advised [B.R.] and her parents that the allegations of sexual harassment, touching, taunting, name-calling, physical violence, and bullying reported by [B.R.] could not be verified by RCMS officials.

Response:  Denied.

258.    During her eighth-grade year, [B.R.] continued to receive Homebound Instruction.

Response:  Admitted.

259.    [B.R.] lived as a prisoner in her own home and felt unsafe to leave her residence for fear of retaliation by [C.K.].

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, the allegations are denied.

260.    In failing to take meaningful steps to address her sexual assault, sexual harassment, rape, and extortion, FCPS officials forced [B.R.] to endure one of the most hostile educational environments imaginable.

Response:  Denied.

261.    Such misconduct by school officials constitutes both "deliberate indifference" under Title IX and a state created danger under §1983.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, all allegations are denied.

262.    FCPS' failure to respond adequately to [B.R.]'s complaints of sexual assault, sexual harassment, rape, and extortion by other FCPS students constitutes sex discrimination in violation of Title IX of the Education Amendments of 1972 ("Title IX").

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, all allegations are denied.

## INJURIES

263.    By reason of the sexual harassment, assault, touching, taunting, name-calling, bullying, and rape suffered by [B.R.] beginning in October 2011 and lasting through February

2012, [B.R.] suffered in the past, and will continue to suffer in the future, the following injuries/damages:

a. Past and future embarrassment;

b. Past and future humiliation;

c. Past and future loss of dignity;

d. Past and future pain and suffering;

e. Pelvic pain, physical deformities, and internal derangement of her vagina, cervix, uterus, and anus;

f. Depression, anxiety, fear, emotional distress and mental anguish;

g. Severe Acute Traumatic Stress Disorder, Severe Post-Traumatic Stress Disorder, Severe depression and anxiety, Nightmares and Flashbacks, Eating Disorders, and other psychiatric disabilities and deficits;

h. Physical manifestations of emotional and psychiatric distress;

i. Traumatic brain injury with neurological, cognitive, physical, and emotional deficits;

j. Stress induced cardiac injuries, conditions, deformities, and deficits;

k. Past and future loss of enjoyment of life and life's pleasures;

l. Past and future loss of earnings;

m. Past and future medical expenses; and

n. Other injuries, damages, and losses as more fully described herein.

<u>Response</u>:  The School Board denies that Plaintiff is entitled to any relief based on its or FCPS's actions.  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies those allegations.

**-COUNT I-**
**TITLE IX**
**[B.R.] V. FAIRFAX COUNTY SCHOOL BOARD**

264.    [B.R.] incorporates each and every allegation set forth above.

Response:  The School Board incorporates by reference its answers to paragraphs 1–263 above.

265.    Title IX of the Education Amendments of 1972 ("Title IX") 20, U.S.C. §1681(a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

Response:  The statute referenced in paragraph 265 speaks for itself.

266.    Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 34 C.F.R. §106(b) provides:

> ... A Recipient shall adopt and publish grievance procedures providing for prompt equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

Response:  The regulation referenced in paragraph 266 speaks for itself.

267.    [B.R.] was a student at an educational institution receiving federal funds.

Response:  Admitted.

268.    In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme held that a recipient of federal funds violates Title IX and is subject to a private damages action, where the funding recipient is "deliberately indifferent" to known acts of student-on-student sexual harassment.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

269.    The United States Supreme Court has held that a plaintiff in a student-on-student harassment case may prevail in a Title IX damages action against a school board where: a) the school board is deliberately indifferent to known sexual harassment; b) the harassment is so severe,

pervasive, and objectively offensive that it can be said to deprive the victim of access to education opportunities or benefits provided by the school; and, c) the school exercised substantial control over the harasser and the context in which the harassment occurred. Davis, 526 U.S. at 645-46, 650.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

270.    [B.R.] was subjected to harassment and assault at the hands of other students at FCPS based on her sex.

Response:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff was "subjected to harassment and assault at the hands of other students at FCPS."  Whether that harassment and assault was "based on her sex" is a legal conclusion to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

271.    The harassment was so severe and pervasive that it created a hostile and abusive environment in an educational setting.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

272.    [B.R.] and her parents reported the sexual assaults and sexual harassment to FCPS administrators and employees.

Response:  Admitted in part and denied in part.  The School Board admits that Plaintiff and her mother reported certain incidents, but not any rapes or sexual assaults as alleged.  All remaining allegations are denied.

273.   FCPS administrators knew [B.R.] was sexually and physically assaulted, sexually harassed, bullied, and extorted by other FCPS students based on multiple reports from [B.R.] and other students and based on personal observations by FCPS employees.

<u>Response</u>:  Denied.

274.   FCPS was obligated to address these reports because student-on-student sexual assault is a form of sex discrimination prohibited by Title IX.

<u>Response</u>:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

275.   [B.R.] suffered sexual assault and sexual harassment that was severe, pervasive, objectively offensive, and created a hostile educational environment for [B.R.] based on her sex.

<u>Response</u>:  The School Board lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff "suffered sexual assault and sexual harassment" and, therefore, denies that allegation.  The remaining allegations consist of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

276.   The individuals with actual knowledge of [B.R.]'s sexual assaults, sexual harassment, extortion, and verbal and physical abuse had the authority to investigate and take corrective action to address the sexual assault.

<u>Response</u>:  The School Board denies that it had "actual knowledge" of Plaintiff's "sexual assaults, sexual harassment, extortion, and verbal and physical abuse."  Therefore, all allegations in this paragraph are denied.

277.   FCPS was further obligated to address these reports under Title IX because FCPS had substantial control over the student who sexually assaulted, sexually harassed, and extorted

[B.R.], as well as the context in which the harassment occurred – during school hours on school grounds.

    Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

    278.    By its acts and omissions, FCPS was deliberately indifferent to [B.R.]'s sexual assault and created a hostile education environment for her. FCPS's deliberate indifference included, without limitation:

1. Failing to timely address [B.R.]'s November 21, 2011 written and verbal reports of sexual harassment, extortion, physical and verbal abuse at the hands of FCPS's students, including [C.K.] and [J.O.];

2. Conducting a sham investigation and confirming [B.R.]'s report that she was extorted by her assailant for fifty dollars ($50.00), but dismissing knowledge of a sexual relationship between [B.R.] and her assailant as a "boy-girl thing" on account of FCPS's assistant principal's objectively outrageous insinuation that the then seventh-grade [B.R.] was sexually promiscuous and FCPS's assistant principal's reluctance to ruin an already troubled teenage boy's life;

3. Learning of [B.R.]'s sexual assault at the hands of a male FCPS student and disregarding the assault as a "boy-girl" thing;

4. Discouraging [B.R.] from reporting sexual harassment, bullying, and verbal and physical abuse at the hands of her assailant by telling [B.R.]'s parents that seventh-grade [B.R.] had engaged in consensual sexual encounters with the assailant, and implying to [B.R.] and her parents that FCPS would not validate [B.R.]'s November 21, 2011 reports of sexual harassment and abuse because it would harm [B.R.]'s male assailant;

5. Conducting a sham investigation into the identities of the older male students who harassed [B.R.] by refusing to permit [B.R.] to search an RCMS

yearbook but instead recommending that [B.R.] follow her assailants to their classes after they sexually harassed [B.R.] in order for [B.R.] to identify the students to FCSB's staff, specifically [S.T.];

6.     Failing to take disciplinary action against [B.R.]'s assailants, [C.K.] and [J.O.];

7.     Emboldening [B.R.]'s assailants and other FCPS students to retaliate against [B.R.] for [B.R.]'s November 21, 2011 written and verbal reports of sexual harassment, extortion, physical and verbal abuse to FCPS's administrators, including:

       a.     threatening [B.R.]'s life and the lives of her family members for being a "snitch";

       b.     sexually harassing, intimidating, and verbally abusing [B.R.] on School grounds on November 21, 2011;

       c.     physically assaulting and torturing [B.R.] with weapons during school hours *on* school grounds, and after hours *on* and *off* school grounds, until February 10, 2012 when [B.R.] was removed from RCMS at the request of her physician;

       d.     raping [B.R.] during and after school hours *on* school grounds until February 10, 2012 when [B.R.] was removed from RCMS at the request of her physician;

       e.     forcibly grabbing [B.R.] and touching [B.R.] under her shirt and down her pants *during* class; and,

       f.     Verbal abuse and bullying on the basis of her sex;

8.     Leaving [B.R.]'s assailants to roam RCMS's halls free and without securing [B.R.]'s safety and ensuring [B.R.] was not vulnerable to further assault by her assailants after FCPS's November 21, 2011 meeting with [B.R.] and [B.R.]'s parents;

9.      Failing to protect [B.R.] from the retaliation of her
        assailants as a result of her November 21, 2012
        verbal and written report of sexual harassment,
        verbal and physical abuse, extortion, and bullying at
        the hands of FCPS's students including on
        November 21, 2012;

10.     Proposing inadequate measures on November 22,
        2011 to address [B.R.]'s November 21, 2012 written
        and verbal reports to FCPS's assistant principal *after*
        [B.R.] was assaulted on school grounds on
        November 21, 2012;

11.     Unreasonably delaying and failing to implement
        halfhearted measures discussed at [B.R.]'s
        November 22, 2012 meeting with FCSB's assistant
        principal, [S.T.], including failing to move [B.R.]'s
        P.E. locker away from [B.R.]'s female assailant, and
        failing to inform [B.R.]'s teachers of:

        a.      [B.R.]'s November 21, 2011 verbal and
                written reports to [S.T.] that [B.R.] was
                "scared to come to school" because of verbal
                abuse by other FCPS students, sexual
                harassment at [B.R.]'s locker and on her
                school bus at the hands of FCPS students,
                extortion by [C.K.], verbal abuse, and cyber
                bullying;

        b.      The results of FCSB's and more specifically,
                [S.T.]'s sham investigation into [B.R.]'s
                November 21st verbal or written reports,
                including that she was touched;

        c.      [S.T.]'s findings that [B.R.] was threatened
                and extorted by another FCPS student,
                [C.K.];

        d.      [S.T.]'s findings that [C.K.] sexually abused
                [B.R.].

12.     Failing to investigate and take seriously [B.R.]'s
        written and verbal reports of "death threats"
        communicated to [B.R.] by other FCPS students
        beginning in December 2011 through February 10,
        2012, including [B.R.]'s report to [T.B.] on February

9, 2012 which was dismissed by Assistant Principal [T.B.] as "just something kids say";

13.    Ignoring [B.R.]'s notable distress from November 2011 until February 2012 when [B.R.] was removed from school;

14.    Threatening [B.R.] with possible punishment for reporting verbal abuse, death threats, and harassment at the hands of other FCPS students, including on February 8, 2012 when [B.R.] was verbally assaulted;

15.    Failing to investigate [B.R.]'s rape at the hands of another FCPS student;

16.    Failing to provide a safe learning environment for [B.R.] to return to RCMS *after* February 10, 2012;

17.    Failing to take disciplinary action against [B.R.]'s assailants;

18.    Failing to notify [B.R.] or her parents of [B.R.]'s rights under Title IX;

19.    Isolating [B.R.] from school activities instead of providing accommodations that would permit her to continue her education in a safe environment;

20.    Intimidating [B.R.] and her parents from pursuing legal rights;

21.    Retaliating against [B.R.] and her parents for reporting peer-on-peer rape and harassment by FCPS students;

Response:  This paragraph (and its subparts) consists of legal conclusions to which the School Board is not required to respond.  To the extent a response is required, all allegations are denied.

279.    FCPS actions and inactions caused [B.R.] to undergo harassment and make her liable or vulnerable to it.

Response:  Denied.

280.     FCPS's deliberate indifference to [B.R.]'s sexual harassment and sexual assault deprived her of access to educational opportunities and benefits provided by FCPS.

Response:  Denied.

281.     As a direct and proximate cause of FCPS's violation of [B.R.]'s rights under Title IX, [B.R.] has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety, trauma, lost future earnings and earning capacity, and expenses for past and future medical and psychological care.

Response:  This paragraph consists of legal conclusions to which the School Board is not required to respond.  To the extent that a response is required, the allegations are denied.

### -COUNT II-
### DEPRIVATION OF CONSTITUTIONAL RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983
### [B.R.] V. FAIRFAX COUNTY SCHOOL BOARD, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.]

282.     [B.R.] incorporates each and every allegation set forth above.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

283.     Generally, state actors are not liable for the acts of third parties unless the state itself creates the danger.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board does not respond to this allegation.

284.     In order to create a danger, the state has to take some affirmative steps.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

285.    Liability does not arise when the state stands by and does nothing in the face of danger.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

286.    Defendants, acting under the color of state law, Fairfax County School Board, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], took affirmative steps which created a danger to [B.R.] which deprived her of her constitutional rights.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

287.    As a direct, substantial and proximate result of the danger created by the FCSB, [B.R.] was deprived of her civil rights under the Fourteenth Amendment to the United States Constitution.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

288.    As a direct, substantial, and proximate result of the of the [sic] state-created danger set forth herein, [B.R.], was wrongfully and unlawfully deprived of her civil rights which were afforded to her under the United States Constitution.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

289.    As a direct, substantial and proximate result of the state-created danger set forth herein, B.R. suffered life-altering injuries.

Response:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

290.    As a direct, substantial, and proximate result of the of the [sic] state-created danger set forth herein, B.R. suffered life-altering abuse and trauma described herein.

<u>Response</u>:  Because Count II was dismissed by the Court's Order of March 10, 2020, the School Board is not required to respond to this allegation.

**-COUNT III-**
**ASSAULT AND BATTERY**
**VIRGINIA STATE LAW CLAIMS**
<u>**[B.R.] V. [C.K.]**</u>

291.    [B.R.] incorporates each and every allegation set forth above.

<u>Response</u>:  The School Board incorporates by reference its answers to all preceding paragraphs.

292.    Defendant, [C.K.], by and through his repeated threats and violent, forcible sexual contact with [B.R.] intended to cause harmful or offensive contact with [B.R.]'s person.

<u>Response</u>:  This count is not filed against the School Board and, thus, no response is required.

293.    [C.K.] intended to cause [B.R.] to perceive immediate apprehension of his groping, physical abuse, and unwanted sexual advances.

<u>Response</u>:  This count is not filed against the School Board and, thus, no response is required.

294.    [B.R.] reasonably believed [C.K.] would grope her, physically abuse her, and engage in unwelcomed sexual advances by groping her person.

<u>Response</u>:  This count is not filed against the School Board and, thus, no response is required.

295.    As a direct, substantial, and proximate result of [C.K.'s] intended harmful and offensive contact with [B.R.]'s person, [B.R.] suffered life-altering neurological, psychiatric, emotional, and physical injuries.

Response:   This count is not filed against the School Board and, thus, no response is required.

296.    At no point did [B.R.] consent to oral sex, vaginal sex, nor anal sex with [C.K.].

Response:   This count is not filed against the School Board and, thus, no response is required.

297.    [C.K.] forcibly raped and tortured [B.R.] on multiple occasions.

Response:   This count is not filed against the School Board and, thus, no response is required.

298.    [C.K.]'s violent rape of [B.R.] was not excused nor justified.

Response:   This count is not filed against the School Board and, thus, no response is required.

299.    As a direct, substantial, and proximate result of [C.K.]'s violent rape and objectively offensive contact with [B.R.]'s person, [B.R.] suffered life-altering neurological, psychiatric, emotional, and physical injuries.

Response:   This count is not filed against the School Board and, thus, no response is required.

-COUNT IV-
ASSAULT AND BATTERY
VIRGINIA STATE LAW CLAIMS
[B.R.] V. [J.O.]

300.    [B.R.] incorporates each and every allegation set forth above.

Response: The School Board incorporates by reference its answers to all preceding paragraphs.

301.    Defendant, [J.O.], by and through her repeated threats of violence, intended to cause harmful or offensive contact with [B.R.]'s person when threatening [B.R.]'s life and bullying [B.R.] as described in this Complaint.

Response: This count is not filed against the School Board and, thus, no response is required.

302.    On each of those occasions, [J.O.] intended to cause [B.R.] to perceive immediate apprehension of physical abuse and/or unwanted sexual advances.

Response: This count is not filed against the School Board and, thus, no response is required.

303.    [B.R.] reasonably believed [J.O.] would strike her and/or engage in unwelcomed sexual advances by groping her person.

Response: This count is not filed against the School Board and, thus, no response is required.

304.    As a direct, substantial, and proximate result of [J.O.]'s intended harmful and offensive contact with, [B.R.]'s person, [B.R.] suffered life-altering neurological, psychiatric, emotional, and physical injuries.

Response: This count is not filed against the School Board and, thus, no response is required.

305.    At no point did [B.R.] consent to being digitally penetrated, fondled, or physically attacked by [J.O.].

Response:  This count is not filed against the School Board and, thus, no response is required.

306.    As set forth elsewhere in this Complaint, [J.O.] intended to and did contact [B.R.] when she held [B.R.] down to the ground, stripped her clothes, and digitally penetrated her vagina.

Response:  This count is not filed against the School Board and, thus, no response is required.

307.    [J.O.]'s violent sexual abuse of [B.R.] was not excused nor justified.

Response:  This count is not filed against the School Board and, thus, no response is required.

308.    Moreover, [J.O.] intended to, and did, strike and physically abuse [B.R.] on multiple occasions including in the locker room when [B.R.] was changing for Physical Education class.

Response:  This count is not filed against the School Board and, thus, no response is required.

309.    [J.O.]'s physical abuse of [B.R.] was not excused nor justified.

Response:  This count is not filed against the School Board and, thus, no response is required.

310.    [J.O.]'s conduct was objectively offensive.

Response:  This count is not filed against the School Board and, thus, no response is required.

311.    As a direct, substantial, and proximate result of [J.O.]'s abusive and unwanted sexual touching and objectively offensive contact with [B.R.]'s person, [B.R.] suffered life-altering neurological, psychiatric, emotional, and physical injuries.

Response:   This count is not filed against the School Board and, thus, no response is required.

-COUNT V-
STATE LAW - GROSS NEGLIGENCE
[B.R.] V. [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.]

312.    [B.R.] incorporates by reference each and every allegation set forth above.

Response:   The School Board incorporates by reference its answers to all preceding paragraphs.

313.    Defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], had a responsibility to supervise and ensure that all RCMS students, including [B.R.], have an education in an atmosphere conducive to learning, free of disruption, and threat to person.

Response:   This count is not filed against the School Board and, thus, no response is required.

314.    Defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], failed to discharge their duties to [B.R.] in a reasonable manner under the circumstances set forth in this Complaint.

Response:   This count is not filed against the School Board and, thus, no response is required.

315.    The conduct and/or inaction of defendants, [A.F., S.T., P.H., T.B., B.H., J.F., M.C., M.P., and F.T.], amounted to an utter disregard of prudence amounting to complete neglect of the safety of [B.R.].

Response:   This count is not filed against the School Board and, thus, no response is required.

316.    The aforementioned defendants' continual failures to timely investigate [B.R.]'s multiple written and verbal reports of death threats, sexual harassment, extortion, and peer-on-peer

bullying, their repeated failure to reprimand her reported assailants, their outrageous efforts to blame the victim of peer-on-peer harassment, and their ultimate and pervasive failure to protect [B.R.] from the hostile and disruptive educational environment which they created and that existed from October 2011 until February 2012 when [B.R.]'s parents were forced to remove B.R. from school, evinced a reckless disregard for [B.R.]'s safety.

Response:  This count is not filed against the School Board and, thus, no response is required.

317.    Defendants' gross negligence in failing to supervise and ensure that [B.R.] had an education in an atmosphere conducive to learning, free of disruption, and threat to person as described elsewhere in this Complaint was a direct and substantial cause of the [B.R.]'s injuries, damages, and losses.

Response:  This count is not filed against the School Board and, thus, no response is required.

## GENERAL DENIAL

All allegations not specifically admitted above are denied.  All relief requested is specifically denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

1.    For the reasons stated in the School Board's Motion to Dismiss. The Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Inconsistent Statements—Estoppel)

2.      Because Plaintiff did not provide to the U.S. Department of Education, Office of

Civil Rights the same version of the events that she now alleges in her Amended Complaint, her

claim is barred in whole or in part by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE
### (Intervening or Superseding Cause)

3.      If Plaintiff sustained injuries and incurred any expenses as claimed, they were

caused in whole or in part by the acts or omissions of others for whose intervening conduct or

negligence the School Board is not responsible.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

4.      Upon information and belief, Plaintiff has failed to mitigate any damages that she

allegedly has incurred. Plaintiff voluntarily withdrew from FCPS, which deprived her of certain

support, resources, and continued education.  To the extent that remaining at FCPS would have

reduced any damages Plaintiff now seeks in this lawsuit, the School Board is not liable for such

damages.

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to Join Parties Under Fed. R. Civ. P. 19)

5.      Plaintiff has failed to join a parties necessary for the just adjudication of her claim

under the requirements of Rule 19 of the Federal Rules of Civil Procedure, including but not

limited to, unnamed and unidentified individuals who participated in the "rapes" and "gang rapes"

of Plaintiff, because complete relief cannot be accorded among those already parties and others

have an interest in this action and are so situated that disposing of the action in their absence may

impair or impede their ability to protect that interest and/or will subject the School Board to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  The School

Board, therefore, reserve all rights under Rule 19, including without limitation to move to join

necessary parties or to move to dismiss the complaint for failure to join indispensable parties.


## SIXTH AFFIRMATIVE DEFENSE
### (Statute of Limitation)

6.      Plaintiff's federal claims are barred by the two-year statute of limitations for the

reasons stated in the School Board's Motion to Dismiss.


The School Board reserves the right to assert additional affirmative and other defenses

and/or otherwise supplement this Answer and Affirmative Defenses upon discovery of facts or

evidence rendering such action appropriate.


WHEREFORE, the School Board denies any liability to Plaintiff, denies that she is

entitled to any relief, and requests that judgment be entered in the School Board's favor and that

it be awarded all costs, fees and expenses in defending this action.


Dated:  April 21, 2020                          Respectfully submitted,


                                                FAIRFAX COUNTY SCHOOL BOARD

                                                        /s/
                                                _____
                                                Stuart A. Raphael (VSB No. 30380)
                                                Ryan M. Bates (VSB No. 74661)
                                                Perie Reiko Koyama (*pro hac vice*)
                                                Kelly R. Oeltjenbruns (*pro hac vice*)
                                                HUNTON ANDREWS KURTH LLP
                                                2200 Pennsylvania Avenue, NW

Washington DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
sraphael@HuntonAK.com
rbates@HuntonAK.com
pkoyama@HuntonAK.com
koeltjenbruns@HuntonAK.com

*Counsel for Defendant Fairfax County School Board*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2020, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

By: _____/s/_____

Stuart A. Raphael (VSB No. 30380)