**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1005

B.R.,

               Plaintiff – Appellee,

    v.

F.C.S.B.; S.T.; A.F.; P.A.H.; T.B.; B.H.; M.P.F.; M.C.; F.T.; J.F.; C.K.; J.O.,

               Defendants – Appellants,

    and

MIKE AND MARY ROES 1–15,

               Defendants.

--------------------------------------

NATIONAL WOMEN'S LAW CENTER AND 51 ADDITIONAL ORGANIZATIONS,

               Amici Supporting Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:19-cv-00917-RDA-TCB)

Argued: September 21, 2021                 Decided: November 2, 2021

Before GREGORY, Chief Judge, and NIEMEYER and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Gregory and Judge Richardson joined.

———————

**ARGUED:** Elbert Lin, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellants. Tejinder Singh, GOLDSTEIN & RUSSELL, P.C., Bethesda, Maryland, for Appellee. **ON BRIEF:** Michael E. Kinney, MICHAEL E. KINNEY, PLC, Reston, Virginia, for Appellants S.T., A.F., P.A.H., T.B., B.H., M.P., M.C., F.T., and J.F. Sona Rewari, Ryan M. Bates, HUNTON ANDREWS KURTH LLP, Washington, D.C., for Appellant F.C.S.B. Bruce M. Blanchard, James Paul Menzies Miller, ODIN, FELDMAN & PITTLEMAN, PC, Reston, Virginia, for Appellant J.O. James F. Davis, JAMES F. DAVIS, P.C., Fairfax, Virginia, for Appellant C.K. Thomas N. Sweeney, MESSA & ASSOCIATES, P.C., Philadelphia, Pennsylvania; Daniel H. Woofter, GOLDSTEIN & RUSSELL, P.C., Bethesda, Maryland, for Appellee. Emily Martin, Sunu P. Chandy, Neena Chaudhry, Shiwali Patel, Elizabeth Tang, NATIONAL WOMEN'S LAW CENTER, Washington, D.C.; Emily P. Mallen, Kimberly Leaman, Elizabeth T. MacGill, Katy (Yin Yee) Ho, SIDLEY AUSTIN LLP, Washington, D.C., for Amici National Women's Law Center and 51 Additional Organizations.

———————

NIEMEYER, Circuit Judge:

A female plaintiff commenced this action by filing a complaint in which she referred to herself by the pseudonym Jane Doe. In her complaint, she alleged in detail multiple acts of sexual harassment and sexual abuse, including rape, that were directed against her over the course of several months when she was a student at a middle school in Fairfax County, Virginia, and the school's inaction to end the offensive conduct when it was ongoing, all of which caused her serious injury. She claimed that the defendants, whom she named, violated her rights under Title IX of the Education Amendments of 1972 and other laws. And she explained that she was using a pseudonym to protect her privacy and health.

As the plaintiff alleged, the defendants undoubtedly knew the plaintiff's identity from the extensive details included in the 40-page complaint. Nonetheless, they filed motions to dismiss on the ground that the plaintiff's failure to provide her true name to the court had deprived it of subject-matter jurisdiction and that this jurisdictional flaw could no longer be remedied because the statute of limitations for the plaintiff's federal claims had lapsed a few days after she filed her complaint. In response, the plaintiff disclosed her true name to the court and requested that she be allowed to proceed under a pseudonym. The district court denied the defendants' jurisdictional motions, and, because the sensitive nature of the allegations warranted "the utmost level of privacy," it allowed the action to proceed pseudonymously. The court explained that while the plaintiff had not adhered to Federal Rule of Civil Procedure 10(a), which requires that the title of a complaint include the names of all parties, that failure was immaterial to the court's subject-matter jurisdiction.

We agree with the district court and affirm.

I

On July 12, 2019, shortly before her 20th birthday, the plaintiff commenced this action, alleging in her complaint that from October 2011 through February 2012, when she was a seventh-grade student at Rachel Carson Middle School in Fairfax County, Virginia, she was repeatedly "raped, sexually assaulted, sexually harassed, terrorized, extorted, bullied, and threatened with death by other students." She described the offensive conduct in detail and alleged that despite her "specific and repeated complaints to [school] administrators about the horrific environment and the discrimination she suffered," the officials "deflected, minimized, and ignored [her] serious complaints," leading her to suffer "life-altering trauma." She asserted claims under Title IX, 42 U.S.C. § 1983, and state law, and for jurisdiction, she invoked federal question jurisdiction under 28 U.S.C. § 1331, as well as supplemental jurisdiction under § 1367 for her state law claims.

The plaintiff did not include her name in the complaint, using instead the fictitious name Jane Doe, and she did not seek leave of court to do so. She explained in her complaint that while she was using a "fictitious and anonymous name" "due to the harmful effect of the public disclosure of her identity," she nonetheless was a real person, "an adult individual and citizen of the United States of America." She also alleged that the defendants either knew or should have known her name and therefore would suffer no prejudice from her using a pseudonym. Her allegation regarding the defendants' knowledge of her identity was supported in particular by her allegation that in August 2012

she had filed an administrative complaint with the U.S. Department of Education's Office of Civil Rights, describing in "detail[] numerous instances of peer-to-peer physical assault and bullying she endured . . . from October 2011 through February 2012." Moreover, she alleged that to resolve that complaint, Fairfax County Public Schools entered into a Voluntary Resolution Agreement with the Department of Education in 2014 in which the school system agreed to implement reforms and expressly acknowledged the plaintiff's "right to file a private suit in federal court."

The defendants filed motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (for lack of subject-matter jurisdiction) and 12(b)(6) (for failure to state a claim). They argued, among other things, that "Plaintiff's failure to seek permission to proceed pseudonymously [was] a *jurisdictional* defect that require[d] dismissal." (Emphasis added). According to the defendants, the pseudonymous filing meant that a case had not been commenced on July 12, 2019, when she filed her complaint, and she could no longer correct the jurisdictional flaw because the limitations period for her federal claims had expired a few days after the complaint had been filed.

In response, the plaintiff filed an amended complaint and a motion for leave to proceed under a pseudonym. She attached affidavits, filed under seal, disclosing her real name to the court for the first time. The defendants filed motions to strike and dismiss the amended complaint, arguing that the amended complaint's federal claims were untimely and that any order authorizing the plaintiff to proceed pseudonymously would not "relate back" for limitations purposes to the date she filed her original complaint because the court never had subject-matter jurisdiction over that complaint.

Following a hearing, the court, by order dated March 10, 2020, denied the defendants' motions to dismiss the Title IX claim and granted the plaintiff's motion to proceed pseudonymously. It rejected the defendants' argument that the plaintiff's federal claims were barred by the statute of limitations, disagreeing with the premise that the "Plaintiff's failure to provide her name in her Original Complaint [was] a jurisdictional defect." It also agreed that the "*highly* sensitive and . . . *immensely* personal nature" of the allegations "warrant[ed] the utmost level of privacy." Indeed, it noted that because of "the seriousness of the alleged offenses and the wide-ranging ramifications" that the allegations might hold for all the parties, it was "necessary to not only protect the privacy interests of the accuser, but also the accused." The court accordingly ordered "that, from this point forward, in this litigation, each party will be referred to by . . . initials." Thus, the plaintiff became "B.R." (to whom we refer less impersonally with the arbitrarily assigned fictitious name of "Kate"). The court recognized Kate's violation of Federal Rule of Civil Procedure 10(a) in failing to include her name in the original complaint, but it refused, as a matter of justice, to dismiss the action based on such a "nuanced [procedural] circumstance," rather than resolving the case "based on . . . merit." Finally, the court dismissed Kate's § 1983 claim for failure to state a claim. In short, the court allowed Kate to proceed with her Title IX claim and related state law claims and to do so using her initials, rather than her name.

On the defendants' motion, the district court included in its order a 28 U.S.C. § 1292(b) certification to enable the defendants to seek permission from us to appeal "the question of whether a plaintiff's failure to obtain leave of court to file a complaint pseudonymously is a jurisdictional defect such that a later order granting leave to proceed

pseudonymously does not relate back to the original filing for purposes of the statute of limitations." By order dated January 5, 2021, we granted the defendants' motion for permission to appeal that issue.

II

At the heart of the defendants' argument is the contention that because Kate filed her complaint using a pseudonym, the district court lacked subject-matter jurisdiction over the action. According to the defendants, a "district court's jurisdiction does not attach unless and until a plaintiff tells the court who she is." This is so, they maintain, because "the scope of Article III is informed by the common law," and "[a]nonymous complaints would not have been understood as valid 'Cases' or 'Controversies' to the 'expert feel of lawyers' in the common law 'courts at Westminster.'" (Quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000)).

For support, the defendants rely on three nineteenth-century treatises, as well as an 1876 decision from the Indiana Supreme Court, for the proposition that early "American practitioners followed the 'general rule' that the initial pleading must identify" the parties by their true names. (Citing 1 Joseph Chitty & Thomas Chitty, *A Treatise on the Parties to Actions, and on Pleading* 244–45 (8th Am. ed. 1840) ("The general rule is, that the declaration should pursue the writ in regard to the *[C]hristian and surnames of the parties*"); James Gould, *A Treatise on the Principles of Pleading, in Civil Actions* 86 (3d ed. 1849) ("The parties should be described by their *proper names* . . . for the purpose of identifying them. And no other form of description, it seems, can supply the omission of

7

their proper names"); Edwin E. Bryant, *The Law of Pleading under the Codes of Civil Procedure* 182 (1894) ("The full, true Christian and surnames of all the parties plaintiff and defendant should be given" in the title of the complaint); and *Pollock v. Dunning*, 54 Ind. 115, 117–18 (1876) (holding that "an unincorporated company can not sue in the name of their firm, but must proceed in the individual names of their members" based on the "settled" "principle . . . that in all actions the writ and declaration must both set forth, accurately, the [C]hristian and surname of each plaintiff and each defendant, unless the party is a corporation" (cleaned up))). Relying on this history, the defendants reason that there is no "Case" or "Controversy" within the meaning of Article III when the plaintiff has not identified herself to the court with her true name. They assert that this makes sense because without the plaintiff's true name, the court cannot be sure that there is a real person behind the complaint. The defendants conclude that because the court's knowledge of the plaintiff's name is an essential jurisdictional component, the court in this case did not obtain jurisdiction until November 2019, when Kate first disclosed her name to the court. At that point, however, the two-year limitations period that the defendants maintain applies to her Title IX claim had expired, rendering that claim untimely. Moreover, they note, with no Title IX claim, the court could not exercise supplemental jurisdiction over the state law claims.

While Kate contends that the limitations period for her Title IX claim is longer, she points out that we need not resolve that dispute because even under the two-year limitations period advanced by the defendants, her Title IX claim, as alleged in her original complaint, was indisputably timely. She argues that her filing of her original complaint

8

pseudonymously without disclosing her real name to the court "has nothing to do with jurisdiction." Instead, she contends, her complaint properly invoked the court's jurisdiction by "plead[ing] the facts necessary to establish [her] Article III standing, as well as the district court's statutory jurisdiction." At bottom, she argues that the defendants are "attempt[ing] to use fancy legal footwork to transform a meaningless technicality into a case-dispositive weapon" and that we should instead "affirm the district court's order granting [her] leave to amend her complaint and proceed under a pseudonym."

The issue presented by the parties in this interlocutory appeal, therefore, is whether Kate's failure to disclose her true name to the district court when she filed her complaint deprived the district court of subject-matter jurisdiction. To address this, we begin with some fundamentals.

Although the term "jurisdiction" has been used somewhat loosely on occasion in the past, it is now well established that it refers to "the courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Moreover, few, if any, precepts are more fundamental than that "'federal courts are courts of limited jurisdiction,' constrained to exercise only the authority [1] conferred by Article III of the Constitution and [2] affirmatively granted by federal statute."

*In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).

Congress, of course, granted original jurisdiction to district courts over "all civil actions *arising under* the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). Moreover, when such original jurisdiction exists, it also granted to district courts "supplemental jurisdiction over all other claims that are [sufficiently] related to claims in the action within such original jurisdiction." *Id.* § 1367(a). It is beyond dispute in this case in which Kate alleged claims under Title IX and § 1983 for violations of federal law that the district court had *statutory* subject-matter jurisdiction. Our focus, therefore, is directed to whether Kate's pseudonymous complaint fell outside the scope of the power conferred to federal courts by the Constitution.

Article III of the Constitution provides that "[t]he judicial Power of the United States . . . shall extend to" nine specified categories of "Cases" and "Controversies." U.S. Const. art. III, §§ 1, 2. Accordingly, "the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). By requiring that there be a "Case" or "Controversy" for a federal court to act, Article III restricts the federal judicial power "to *the traditional role of Anglo-American courts*, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (emphasis added). In this manner, "the words 'cases' and 'controversies' . . . limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through

the judicial process." *Flast v. Cohen*, 392 U.S. 83, 94–95 (1968). Strict adherence to the requirement thus ensures that "federal courts [do] not intrude into areas committed to the other branches of government" and is thus essential to maintaining the Constitution's separation of powers. *Id.* at 95. As the Supreme Court recently stated in summarizing these fundamental principles,

> Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions. As Madison explained in Philadelphia, federal courts instead decide only matters "of a Judiciary Nature." 2 Records of the Federal Convention of 1787, p. 430 (M. Farrand ed. 1966).
>
> *In sum, under Article III, a federal court may resolve only "a real controversy with real impact on real persons."*

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (emphasis added) (citation omitted).

In short, the cases and controversies that Article III assigns to federal courts refer to real disputes among real persons, involving actual or threatened injuries that can be redressed in a judicial proceeding. It follows therefore that Article III does not assign to federal courts any power to address hypothetical circumstances, give advisory opinions, or resolve abstract disputes.

Based on these principles, we have no difficulty concluding that when Kate filed her complaint in July 2019, her civil action qualified as a "Case" or "Controversy" within the meaning of Article III. While she did not include her real name in the complaint as required by Federal Rule of Civil Procedure 10(a) — explaining that she used a pseudonym

11

for privacy and health reasons — everything else about *what she alleged* was real. She alleged a "real controversy with real impact on real persons." *TransUnion*, 141 S. Ct. at 2203. In her complaint, Kate described actual historical incidents of rape and sexual abuse, not hypothetical ones, giving times and places for them. She described particular injuries that she suffered from the alleged misconduct, for which she seeks damages that a court can award. And she alleged all the elements of a Title IX claim, over which federal courts have jurisdiction. Of course, what Kate alleged remain allegations that must be proved to entitle her to any recovery. Nonetheless, there is nothing in her complaint to suggest that what she alleged was fictitious. Kate's dispute with the defendants therefore was a real case, a real controversy, that federal courts have jurisdiction to resolve. And, when measured against what constitutes Article III standing, her allegations showed that she possessed the kind of "personal stake" necessary for standing — i.e., that she suffered "a concrete and particularized injury caused by the defendant[s] and redressable by the court." *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In these circumstances, there was no risk of the district court issuing an advisory or hypothetical opinion in resolving her claims. Instead, the only role the court was asked to serve was the quintessentially judicial one of using the adversarial process to resolve a genuine dispute between real parties with a real stake in the outcome of the proceedings — in other words, "the traditional role of Anglo-American courts." *Summers*, 555 U.S. at 492.

Thus, when considering the components of what constitutes an Article III case or controversy, it is evident that a plaintiff's initial failure to tell the court her name in no way detracts from them. Stated otherwise, a plaintiff's failure to disclose her name to the court

12

at the time she files a complaint is immaterial to whether that civil action qualifies as a case or controversy.

The defendants' principal and perhaps only argument to counter this conclusion focuses on historical pleading practice. The defendants emphasize the Supreme Court's recognition that "a century's worth of precedent and practice in American courts" can inform whether a particular rule is jurisdictional, *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 155 (2013) (cleaned up), as well as its statement that "Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process," *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798 (2021) (cleaned up) (quoting *Vt. Agency*, 529 U.S. at 774). From there, they cite nineteenth-century authorities demonstrating the existence of *a pleading rule* — the historical antecedent to our modern Rule 10(a) — requiring complaints to include the proper names of all parties to argue that "anonymous or pseudonymous lawsuits like this one were unknown at common law." Finally, they conclude from these premises that such a lawsuit cannot qualify as a case or controversy. But that conclusion simply does not follow.

To be sure, in analyzing whether a plaintiff possesses the requisite personal interest to make a dispute qualify as a "Case," the Court has indeed "look[ed] to the . . . common law." *Uzuegbunam*, 141 S. Ct. at 797–98; *see id.* at 801–02 (holding that "[b]ecause nominal damages were available at common law in analogous circumstances, . . . a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right"); *see also Vt. Agency*, 529 U.S. at

13

774 (relying on "the long tradition of *qui tam* actions in England and the American Colonies" to conclude "that the United States' injury in fact suffices to confer standing on" a relator). But the fact that the Court regularly relies on the common law in analyzing standing, an established Article III requirement, does not suggest that we should now suddenly transform a *common law pleading requirement* into part of the "irreducible constitutional minimum" necessary for an Article III "Case" or "Controversy" to exist. *Lujan*, 504 U.S. at 560. And even the defendants' own nineteenth-century authorities indicate that what they call the "plaintiff identification rule" was nothing more than that — a pleading requirement that may well have been mandatory and subjected a suit to dismissal for noncompliance but that did not affect the adjudicatory *power* of the court. *See Pollock*, 54 Ind. at 117–18 (holding not that the trial court lacked jurisdiction but that because the appellees had sued "in the name of their firm," rather than in their own "individual names," they lacked "legal capacity to sue in the manner and in the form in which they proceeded"). In short, the mere fact that "pseudonymous lawsuits . . . were unknown at common law" does not require the conclusion that a plaintiff who files such an action now fails to present the court with an Article III case or controversy.

Moreover, while it may be true that "pseudonymous plaintiffs were once a rarity," *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 81 (D.C. Cir. 2019) (Williams, J., concurring in part and dissenting in part), it is also undoubtedly true that the practice has become increasingly common over the last 50 years. And during that time period, the Supreme Court has never suggested that a case or controversy does not exist if a plaintiff sues under a pseudonym without first revealing her true name to the court.

14

Indeed, it has suggested the contrary. In addressing justiciability in *Roe v. Wade*, the Court noted that the plaintiff had filed her complaint under a pseudonym in March 1970 and had "filed an alias affidavit with the District Court" in May of that year. 410 U.S. 113, 124 (1973). Yet, "[d]espite the use of the pseudonym," the Court observed that "no suggestion [had been] made that Roe [was] a fictitious person," and it "accept[ed] as true, and as established, her existence," as well as "her pregnant state, as of the inception of her suit" and "her inability to obtain a legal abortion in Texas." *Id.* Having accepted those allegations as true, the Court observed further that "[v]iewing Roe's case *as of the time of its filing . . . , there can be little dispute that it then presented a case or controversy*." *Id.* (emphasis added). To be sure, the justiciability issue addressed by the Court was not the effect of the pseudonymous filing but whether Roe's case had become moot during the course of the litigation when she was no longer pregnant. *Id.* at 124–25. But even so, the Court expressly remarked on the plaintiff's "use of [a] pseudonym" — and her filing of an "alias affidavit" two months after she filed the complaint — before concluding that "she presented a justiciable controversy." *Id.*; *see also Doe v. Bolton*, 410 U.S. 179, 186–87 (1973) (concluding that it followed from *Roe* that "Doe presents a justiciable controversy," even though when "[a]n offer of proof" was made as to Doe's identity, the district court had "*deemed it unnecessary to receive that proof*" (emphasis added)). These Supreme Court cases thus support our conclusion that the use, vel non, of pseudonyms in pleading is immaterial to the case or controversy inquiry.

We are also not persuaded by the defendants' additional argument that a plaintiff's disclosure of her identity to the court should be treated as jurisdictional because it is

15

necessary to ensure that a real person, not a phantom, stands behind the complaint. When Kate filed her pseudonymous complaint, she alleged that she *was* a real person — "an adult individual and citizen of the United States." Of course, should that allegation prove to be false, there are remedies available. *See, e.g.*, Fed. R. Civ. P. 11(c). But the mere possibility that an unscrupulous attorney might file suit in the name of a non-existent Jane or John Doe, while yet attempting to secure a real plaintiff, is no reason to declare that the disclosure of the plaintiff's name is dispositive of the court's *power* to adjudicate the dispute.

Finally, the defendants rely on the Tenth Circuit's decision in *National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989), which held that "[a]bsent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them" — a holding that two other circuits have relied on in unpublished decisions, *see Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 594–95 (8th Cir. 2016) (per curiam); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636–37 (6th Cir. 2005). But after considering the issue closely, we conclude that *Gibbs* represents the kind of "drive-by jurisdictional ruling[] of [the] sort" that was more common before Supreme Court decisions like *Steel Company* made clear that the term subject-matter jurisdiction means "the courts' statutory or constitutional *power* to adjudicate the case." 523 U.S. at 89, 91. Indeed, *Gibbs* was decided before *Steel Company*.

Notwithstanding our conclusion that Kate's pseudonymous filing had nothing to do with the district court's jurisdiction, we do not intend to trivialize the importance of complying with Rule 10(a). That Rule plainly states that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008); *see also Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts"). Recognizing that "[p]seudonymous litigation undermines the public's right of access to judicial proceedings," we have accordingly held that "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Pub. Citizen*, 749 F.3d 246, 273–74 (4th Cir. 2014).

Yet, while pseudonymous litigation thus implicates the "customary and constitutionally-embedded presumption of openness in judicial proceedings," *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981), we reject the suggestion that a plaintiff's failure to disclose her name to the court at the outset of the litigation denies the court the *power* to resolve the dispute. Rather, a district court that possesses jurisdiction over such an action — and thus has not just the power but the "virtually unflagging" *duty* "to hear and decide" it, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)

17

(cleaned up) — also possesses, as a corollary, the inherent power to require the plaintiff to identify herself under seal to the court and to the defendants. *See ACLU v. Holder*, 673 F.3d 245, 256 (4th Cir. 2011) (recognizing that the "core Article III power" is "the ability of a lower federal court to decide a case over which it has jurisdiction" and that courts also have "those powers necessary to the exercise" of that duty, including those powers "necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority" (cleaned up)).

At bottom, despite not knowing Kate's true name at the time she commenced this action, the district court possessed both the statutory and constitutional authority to resolve it. The court's March 10, 2020 order, which was appealed to us on a § 1292(b) certification, is therefore

AFFIRMED.