IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-00917 |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF IN SUPPORT OF INDIVIDUAL SCHOOL DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Michael E. Kinney (VSB #65056)
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Reston, Virginia 20191
Telephone:  (703) 956-9377
Facsimile:  (703) 956-9634
mk@kinneyesq.com

July 27, 2022

## Introduction

Plaintiff's latest amendment asserts additional claims against the Individual School Defendants, each of whom is either a current or former teacher, counselor, or administrator at Rachel Carson Middle School ("RCMS") in Fairfax County, Virginia.  The Second Amended Complaint now includes three claims under 42 U.S.C. § 1983; one claiming retaliation in violation of the First Amendment, the second claiming a violation of Equal Protection, and the third reviving a substantive due process claim that this Court previously dismissed (ECF 85, pp. 30 – 33) (ECF 138-1, Count III, IV and V, respectively).  Plaintiff also frames alleged inaction of the Individual School Defendants as gross negligence, claims arising under state tort law.  (*Id.*, Counts VII and VIII, ¶¶ 295 to 303).

The First Amendment retaliation claim is based on conclusory and implausible allegations that Plaintiff reported to the Individual School Defendants that she had been raped even though she first claimed to have been raped only after she no longer attended Rachel Carson Middle School ("RCMS").  The Equal Protection claim is not supported by any allegation of discriminatory intent.  The substantive due process claim fails because, as this Court has previously ruled, an alleged failure to protect Plaintiff against private violence is not a violation of Due Process.  In addition, the Individual School Defendants enjoy qualified immunity in their individual capacities for each of these § 1983 claims.  Finally, Plaintiff's two state law tort claims alleging gross negligence fail as a matter of law because Plaintiff's own allegations establish that the Individual School Defendants exercised some degree of care, which defeats a claim of gross negligence.

## Plaintiff's Allegations

Plaintiff primarily alleges that the Individual School Defendants failed to protect her from two former schoolmates—Defendants C.K. and J.O—who are also sued for assault and battery

(ECF 138.1, Counts IX and X), and other unnamed persons who "participated in the physical and sexual assaults, rapes, and/or gang rapes of Plaintiff" (ECF 138.1, ¶ 22). Taken as a whole, the Second Amended Complaint strains to suggest that the Individual School Defendants knew of, and failed to do anything about, alleged "physical and sexual assaults, rapes, and/or gang rapes of Plaintiff." But the amended pleading includes no allegation of specific fact to establish that any of the Individual School Defendants were, at any time while Plaintiff attended RCMS, aware of any sexual assault, sexual battery, rape, gang rape, or sexual violence against Plaintiff. In fact, Plaintiff's allegations establish that she did not tell anyone that she had been sexually assaulted until *after* she no longer attended RCMS. Consequently, according to Plaintiff's own allegations, it is not possible that any of the Individual School Defendants had any knowledge of any of alleged rape, sexual assault, or sexual violence at any time that Plaintiff attended RCMS.

Plaintiff alleges that in October of 2011, Defendants C.K. and J.O. sexually assaulted her on her way home from school. (ECF 138.1, ¶ 126) "Thereafter and until November 21, 2011, C.K. accosted Plaintiff at or near her bus stop nearly every day after school and sexually assaulted and battered her in the same or similar manner, as alleged *supra*." (*Id.*, ¶ 132) According to Plaintiff, C.K. "made death threats against her and her family if she ever reported the abuse." (*Id.*, ¶ 132) The amended pleading contains no allegation that Plaintiff reported to any of the Individual School Defendants that C.K. and J.O. assaulted her in October, that C.K. thereafter assaulted her on a daily basis until November 21, or that any Individual School Defendant had any knowledge of these alleged assaults otherwise. Plaintiff is not able to make any such allegation truthfully.

After Plaintiff began homebound studies, and thus no longer attended RCMS, she first told her mother, and then a therapist, that C.K. had sexually assaulted her. Plaintiff's parents removed her from school on February 10, 2012. (*Id.*, ¶¶ 193-94) "On or about February 23,

2012, FCPS and RCMS approved Plaintiff for homebound instruction for approximately thirty (30) days." (*Id.*, ¶ 197)  "In or about the last week of February 2012, after beginning homebound instruction, Plaintiff disclosed to her mother that she was sexually assaulted by C.K." (*Id.*, ¶ 198) "Thereafter, Plaintiff visited a mental health professional and disclosed, again, that she was a victim of sexual assault, sexual abuse, and rape." (*Id.*)  The amended pleading contains no allegation that Plaintiff, at any time before she withdrew from school, reported to A.F., or to any other Individual School Defendant, that she had been sexually assaulted, sexually abused, raped, or sodomized by C.K.  Plaintiff is not able to make any such allegation truthfully.

"On or about March 2, 2012, Plaintiff's mother took Plaintiff to the local Fairfax County Police Department ('FCPD') precinct where Plaintiff reported C.K. sexually assaulted, sexually abused, and raped her." (*Id.*, ¶ 199)[1]  Thus, on March 6, 2012, after Plaintiff no longer attended RCMS, the police detective investigating Plaintiff's report informed A.F. of the accusations she had made.  (*Id.*, ¶ 204)  The police detective who investigated Plaintiff's accusations against C.K. concluded that those accusations were false.  (*Id.*, ¶ 208)  The Second Amended Complaint is otherwise silent as to the outcome of the police investigation of Plaintiff's claim that C.K. had raped her.  In any event, Plaintiff does not allege that any of the Individual School Defendants had anything to do with the police detective's conclusion that Plaintiff's rape accusation was false or with the outcome of the police investigation.

Plaintiff now broadly alleges that three years before Plaintiff became a student at RCMS, "organized gangs and co-conspirators began targeting juvenile females in Fairfax and northern Virginia to intimidate and coerce them into participating in commercial sex acts." (*Id.*, ¶ 40) Plaintiff does not allege that C.K. was a member of such alleged organized gang or that he was a

---

[1] Plaintiff does not allege that she informed the police that she had been sexually assaulted, sexually abused, or raped by anyone other than C.K.

co-conspirator targeting juvenile females in Fairfax County.  Neither does Plaintiff allege that any Individual School Defendant had any knowledge that C.K. was a gang member or co-conspirator.  Plaintiff is not able to make any such allegation truthfully.

Plaintiff does not allege that she herself was a target of any such alleged organized gang or co-conspirator.  Neither does Plaintiff allege that any Individual School Defendant had any knowledge that Plaintiff was a target of any gang or co-conspirator.  Plaintiff is not able to make any such allegation truthfully.

Plaintiff alludes to 1 to 15 other "unknown students of RCMS and other individuals who, upon information and belief, and at all times relevant, participated in physical and sexual assaults, rapes, and/or gang rapes of Plaintiff."  (*Id.*, ¶ 22)  Some time in December of 2011, "a male student accosted her in the hallway and forced her into a nearby closet where Plaintiff was physically assaulted and battered, sexually assaulted and battered, sexually abused, and raped by three unknown males (Mike Roes 1 – 3)."  (*Id.*, ¶ 173)  Plaintiff does not allege that she reported this to any of the Individual School Defendants.  Thereafter, "[o]n numerous separate and distinct occurrences while Plaintiff was on campus at RCMS after regular school hours, as alleged supra, from December 2011 until Plaintiff began homebound instruction in February 2012, Plaintiff was accosted by male students and/or unknown males (Mike and Mary Roes 1-15) who, following a similar modus operandi of Plaintiff's physical assault and battery, sexual assault and battery, sexual abuse, and rape in December 2011, forced Plaintiff into a nearby closet where they repeatedly physically assaulted and battered, sexually assaulted and battered, sexually abused, and raped Plaintiff."  (*Id.*, ¶ 176)[2]  Plaintiff does not allege that she reported to

---

[2] There is no allegation that Plaintiff told her mother about any of these assaults when she disclosed the alleged assault by C.K.  Similarly, there is no allegation that Plaintiff reported to the police any of these alleged numerous assaults when she and her mother accused C.K. of sexual assault, sexually abuse, and rape.

4

any of the Individual School Defendants any such alleged rape or gang rape by any of these alleged 15 unknown students and other individuals.  Plaintiff is not able to make any such allegation truthfully.

Throughout the latest amended pleading, Plaintiff repeatedly alleges that the Individual School Defendants acted with "deliberate indifference."  (ECF 138.1, ¶¶ 58, 235, 240, 260, 266, 270, 275, 276, 277, 278, 283, and 290)  Plaintiff alleges "[a]fter receiving Plaintiff's reports of sexual harassment and assault in or about October, 2011, Defendants M.P.F., M.C., and F.T. acted with deliberate indifference."  (*Id.*, ¶ 276)  Plaintiff does not specify what reports of sexual harassment or assault M.P.F., M.C., or F.T. supposedly received in October 2011.  Nonetheless, Plaintiff concludes that "by not investigating or reporting Plaintiff's reports to senior administrative officials, M.P.F., M.C., and F.T. increased the risk of private danger to Plaintiff." (*Id.*)

Similarly, according to Plaintiff, "Defendants S.T., A.F., P.A.H., and B.H. affirmatively acted with recklessness and deliberate indifference beginning on or about November 21, 2011 after they possessed actual knowledge that Plaintiff was a victim of sexual violence and sexual harassment."  (*Id.*, ¶ 277)  No allegation specifies how S.T., A.F., P.A.H., or B.H. had any knowledge that Plaintiff was a victim of sexual violence or that they had verified any sexual harassment of Plaintiff.  Nonetheless, Plaintiff concludes that "[t]he actions of S.T., A.F., P.A.H., and B.H. increased the risk of private danger to Plaintiff."  (*Id.*)

Finally, "[o]n November 21, 2011, Plaintiff and her parents reported her sexual assaults and sexual harassment to B.H., S.T., and P.A.H."[3]  (*Id.*, ¶ 257)  "Following Plaintiff's November

---

[3] The allegation that Plaintiff and her parents reported any sexual assault to B.H., S.T., and P.A.H on November 21, 2011, contradicts the allegation that Plaintiff first told her mother about the alleged rape by C.K. three months later.  (ECF 138-1, ¶ 198).  If Plaintiff's reported to B.H., S.T., and P.A.H on November 21, 2011 that Plaintiff had been sexually assaulted, the

21, 2011 report, S.T., P.A.H., A.F., B.H. and J.F. increased the risk of private danger to Plaintiff by failing to have adult supervision with Plaintiff between classes after promising and assuring Plaintiff and her parents that Plaintiff would have adult supervision to ensure her safety and protection at RCMS."[4]  (*Id.*, ¶ 278)  "These assurances and actions also constituted affirmative acts of recklessness and deliberate indifference."  (*Id.*)

## ARGUMENT

### I.     Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

While the court accepts well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions disguised as factual allegations.  *Iqbal*, 556 U.S. at 679-81.  Accordingly, a pleading that offers only a "formulaic recitation of the elements of a cause of action will not do."  *Id.* at 678; *Twombly*, 550 U.S. at 557.  Nor will a

---

amended pleading does not reveal why they would have waited until March of 2012 to inform the police.

[4] Plaintiff contradicts the allegation that S.T., P.A.H., A.F., B.H. and J.F. failed to provide adult supervision between classes.  On December 9, 2011, Plaintiff's mother reported to J.F. and B.H that Plaintiff "said yesterday was a great day at school.  She attributes this to the guidance and hallway 'shadowing' provided by you."  (ECF 142-1)

complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.  Pleadings that "are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

"Courts may also consider exhibits attached to the complaint."  *De'lonta v. Fulmore*, 745 F. Supp. 2d 687, 690 (E.D. Va. 2010) (citations omitted).  [W]here a conflict exists between 'the bare allegations of the complaint and any attached exhibit, the exhibit prevails'"  *Id.* (citations omitted.)

## II.    The First Amendment retaliation claim relies on implausible allegations.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 1999).  "However, not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation."  *Id.*   A plaintiff seeking to recover under § 1983 for retaliation must establish three elements: (1) the plaintiff's right to speak was protected; (2) the plaintiff suffered some adverse action in response to her exercise of a protected right; and (3) a causal relationship between the plaintiff's speech and the defendant's retaliatory action.  *Id.* at 685-86.

### a.  Plaintiff's allegations that she reported "sexual abuse" and "sexual violence" are not plausible.

Plaintiff alleges First Amendment protection in "making statements and reports of sexual abuse, sexual harassment, and sexual violence as alleged *supra* to Defendants S.T., A.F., P.A.H., T.B., B.H., M.P.H., M.C., F.T., and J.F."  (ECF 138.1, ¶ 245)  This allegation is not plausible because Plaintiff first disclosed to her mother that she had been raped after Plaintiff no longer attended RCMS and Plaintiff's mother did not inform the police of any rape until some months after they are alleged to have occurred.  "On or about February 23, 2012, FCPS and RCMS

approved Plaintiff for homebound instruction for approximately thirty (30) days." (ECF 138.1, ¶ 197) "In or about the last week of February 2012, after beginning homebound instruction, Plaintiff disclosed to her mother that she was sexually assaulted by C.K. Thereafter, Plaintiff visited a mental health professional and disclosed, again, that she was a victim of sexual assault, sexual abuse, and rape." (*Id.*, ¶ 198) "[O]n March 7, 2012, FCPS and RCMS approved Plaintiff for homebound instruction for an additional thirty (30) days." (*Id.*, ¶ 209) "Plaintiff then spent the next year under homebound instruction." (*Id.*, ¶ 210)

There is no allegation that Plaintiff ever returned to school at RCMS after she began homebound studies. Consequently, it is not plausible to allege that Plaintiff reported to any Individual School Defendant, during the time that she was a student at RCMS, that she had been raped, sexually abused, or had experienced sexual violence. Similarly, it is not plausible that Plaintiff's parents made such reports to the Individual School Defendants during her attendance at RCMS but then waited months to inform the police. The improbable allegations that Plaintiff reported "sexual abuse" and "sexual violence" to the Individual School Defendants during her attendance at RCMS appear calculated to augment alleged reports of bullying and student-on-student harassment. Those discrepant allegations are no more than formulaic conclusions that are not entitled to the assumption of truth.

### b.  Plaintiff fails to satisfy the second or third elements of a First Amendment retaliation claim.

Plaintiff does not allege that she suffered some adverse action *in response to* her exercise of a protected right. Instead, Plaintiff alleges that the Individual School Defendants took multiple actions "that adversely affected her First Amendment rights." (*Id.*, at ¶ 246) There is no allegation that any of the Individual School Defendants took any adverse action against Plaintiff in response to alleged "reports of sexual abuse, sexual harassment, and sexual violence," even if it

were plausibly alleged that Plaintiff made such reports.  Indeed, no such allegation can be

plausibly made because, among other reasons, Plaintiff did not disclose the alleged sexual abuse

or sexual violence to anyone until after she no longer attended RCMS.

Having failed to allege facts to establish the second element of a retaliation claim, the

Second Amended Complaint cannot satisfy the third element, a causal relationship between

Plaintiff's speech and any retaliatory action by any of the Individual School Defendants.  The

Second Amended Complaint fails to allege facts to establish the essential elements of a First

Amendment retaliation claim.  This Court should dismiss Count III.

### III.   Plaintiff has not plausibly alleged a violation of the Equal Protection Clause.

"The Equal Protection Clause, which prohibits States from denying persons the equal

protection of the laws, keeps governmental decisionmakers from treating differently persons who

are in all relevant respects alike." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020).  The

clause is "essentially a direction that all persons similarly situated should be treated alike." *Grimm*

*v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 606 (4th Cir. 2020).  In the Fourth Circuit, there are

generally two ways to plead an equal protection violation.  The first is to allege that the plaintiff

was subject to disparate treatment, and that it resulted from intentional and purposeful

discrimination.  *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  The second is to plead

school personnel's deliberate indifference to student-on-student harassment.  *Feminist Majority*

*Found. v. Hurley*, 911 F.3d 674 (4th Cir. 2018).  Plaintiff's allegations fail either way.

### a.  Plaintiff does not plausibly allege intentional discrimination and disparate treatment.

To plead an equal protection claim under the disparate treatment theory, "a plaintiff

must . . . demonstrate that [s]he has been treated differently from others with whom [s]he is

similarly situated and that the unequal treatment was the result of intentional or purposeful

discrimination." *Morrison*, 239 F.3d at 654. Once that showing is made, the Court must decide whether the disparate treatment was justified under the requisite level of scrutiny. *Monegain v. Dep't of Motor Vehicles*, 491 F. Supp. 3d 117, 141 (E.D. Va. 2020). Thus, to plead an equal protection violation under the disparate treatment theory, Plaintiff must show that (1) she was treated differently than those similarly situated, (2) the difference in treatment resulted from intentional or purposeful discrimination, and (3) the difference in treatment was not justified under intermediate scrutiny. *Id.* Each named defendant must have had personal knowledge of and involvement in the alleged violation of a plaintiff's constitutional rights for the action to proceed against that defendant. *De'Lonta*, 745 F. Supp. 2d at 690-91.

Plaintiff makes no allegation that she was treated differently than any similarly situated student. Indeed, she does not point to any report of sexual harassment or assault by a male student that was investigated or addressed in some preferential way. Nor does Plaintiff allege that any female student was disciplined based on the sexual harassment or assault allegations of a male student. Indeed, Plaintiff alleges that another female student, J.O., participated in the alleged harassment of Plaintiff but was not disciplined or investigated. (ECF 138.1, ¶¶ 126–27, 147) There can be no disparate treatment when male and female students are treated the same.[5]

---

[5] A "class of one" equal protection theory, if that is what Plaintiff intends, would give no life to this claim. A plausible class-of-one equal protection claim must show that a plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Nofsinger v. Va. Commonwealth Univ.*, 2012 WL 2878608, at *10 (E.D. Va. July 13, 2012) (*quoting Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), aff'd, 523 F. App'x 204 (4th Cir. 2013)). The class-of-one theory applies when "the existence of a clear standard against which departures, even for a single plaintiff, [can] be readily assessed." *Enquist v. Or. Dep't of Agriculture*, 553 U.S. 591, 602 (2008). But the theory is ill-suited and improper for the public employment or education context where discretionary decision-making necessarily requires subjective individualized assessments. *Nofsinger*, 2012 WL 2878608, at *10. Here, as Plaintiff alleges, the Individual School Defendants made discretionary decisions about investigations and discipline based on their assessment of the facts. (ECF 138-1, ¶ 157) Consequently, a class-of-one claim is not available to Plaintiff.

*See Borkowski v. Balt. Cty., Maryland*, 492 F. Supp. 3d 454, 471–73 (D. Md. 2020) (finding that, even "where Plaintiffs allege by implication differences in how female and male sexual assault cases are pursued," they "fail[ed] to plead facts that female sexual assault complainants, as a class, were treated any differently than those 'similarly situated'").

Even if Plaintiff could point to treatment that was different from similarly situated students, she has not alleged purposeful or intentional discrimination on the part of any Individual School Defendant.  In fact, Plaintiff alleges that school personnel failed to address her reports of alleged harassment "because . . . disciplinary rates were measured by governmental entities and non-profits when evaluating the performance of a school division, individual schools, and school officials."  (ECF 138-1, ¶ 160)  Thus, according to Plaintiff, school personnel were motivated not by discriminatory animus—but, rather, by the "self-serving" desire to make their performance, as measured against that metric, appear better than it was.  (*Id.*)  "[I]f true, these allegations are troubling, but fail to state a discriminatory purpose."  *Borkowski v. Balt. Cty.*, Maryland, 414 F. Supp. 3d 788, 809–10 (D. Md. 2019) (dismissing counts where defendants allegedly were motivated to underreport and avoid investigating sexual assault because of "professional, personal, or political self-interests" in lower incident rates).

In any event, this alleged motivation to ignore reports of sexual harassment is not an express policy of the School Board, as Plaintiff alleges.  (ECF 138-1, ¶ 143)  At most, Plaintiff alleges only a "custom" or "practice."  (*Id.*, ¶ 101)  There is "no controlling authority. . . that allows an allegation of biased 'custom' to qualify as intentional or purposeful discrimination for the purposes of an Equal Protection clause analysis . . . ."  *Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156 (E.D.N.C. Aug. 3, 2018); *see also Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 81 (4th Cir. 2016) (affirming dismissal of equal protection claim for intentional discrimination where there was "no allegation of overt discriminatory animus on the part of any Appellee").

### b. Plaintiff does not plausibly allege deliberate indifference in response to student-on-student harassment.

An equal protection claim may be based on a school administrator's deliberate indifference to known student-on-student sexual harassment. *Feminist Majority*, 911 F.3d 674.[6] Under this theory, a plaintiff must satisfy three elements. First, she must be "subjected to discriminatory peer harassment." *Feminist Majority*, 911 F.3d at 702. "Secondly, the plaintiff must allege that the school administrator 'responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of *known circumstances*.'" *Id.* (emphasis added) (citation omitted.) "Third, the plaintiff must allege that the school administrator's deliberate indifference was motivated by a discriminatory intent." *Id.*, at 703.

Plaintiff fails to allege facts to substantiate her conclusory allegations of deliberate indifference to reports of harassment. As the Fourth Circuit has explained, deliberate indifference means that the school administrator knew about the harassment and "acquiesced in that conduct by refusing to reasonably respond to it." *Feminist Majority*, 911 F.3d at 703. Plaintiff alleges the opposite. Plaintiff made a few complaints to the Assistant Principals S.T., P.A.H., and T.B. about verbal harassment. (ECF 138-1, ¶¶ 139–40, 183) Each time, S.T., P.A.H., and T.B. looked into the incident and determined that no other steps needed to be taken. (*Id.*, ¶¶ 142, 144-45, 147, 151, 155, 184 187, 192) Further, administrators S.T. and P.A.H responded by arranging for J.F. and B.H to shadow Plaintiff between classes for two days in response to her

---

[6] The *Feminist Majority* decision does not recognize such a claim against school personnel who are not administrators. Explaining its reasoning, the court observed that it "the school administrator has the power and opportunity to both address and rectify the sexual harassment." 911 F.3d at 702. Further, "the administrator's failure to exercise that power can result in the harassment victim suffering further injury." *Id.* Only A.F., S.T., P.A.H, and T.B. are school administrators. (ECF 138-1, ¶¶ 4 – 7) B.H. and J.F. are counselors (*id.*, ¶¶ 8-9) and M.C., M.P.F., and F.T., are teachers (*id.*, ¶¶ 10 – 12).

claims about harassment.  (*Id.*, ¶¶ 166-68; ECF 142-1)  These actions negate conclusory allegations of deliberate indifference on the part of the school administrators.

Even if Plaintiff could show deliberate indifference on the part of any school administrator, she has not alleged facts to substantiate the conclusory allegation of discriminatory intent.  (*Id.*, ¶ 269)  In fact, as already shown, Plaintiff forecloses any plausible allegation of discriminatory intent by alleging that A.F., S.T., P.A.H., and T.B. were "motivated to portray FCSB, FCPS, and RCMS as a safe environment" and did so by "sweeping . . . under the rug" her sexual harassment claims "because" division schools and personnel were evaluated on such matters.  (*Id.*, ¶¶ 160–62)  Plaintiff thus fails to allege the elements necessary to state a plausible equal protection claim for deliberate indifference to student-on-student harassment.

### c.  The Equal Protection claim is duplicative.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotations omitted).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and should be dismissed on the basis that it is duplicative.  *Id.* at 166. (citation omitted); *see also*; *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (citing *Graham*); *J.S., ex rel. Duck v. Isle of Wight Cnty. School*, 368 F. Supp. 2d 522, 527 (E.D. Va. 2005) (citing *Graham*).

In this case, Plaintiff is attempting to assert an Equal Protection claim against the Individual School Defendants in Count IV and an Equal Protection claim against the School Board in Count VI.  The School Board has notice of Plaintiff's Equal Protection claim and has responded to it.  Consequently, the Equal Protection claims against the Individual School Defendants are duplicative.  This Court should dismiss Count IV on that basis.

IV.     **The alleged failure to protect Plaintiff from third parties does not constitute a Due Process violation.**[7]

The Fourth Circuit has held that "'to establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission.'" *Smith v. Sch. Bd. of City of Chesapeake*, No. 2:18cv589, 2019 WL 2656204 at *5 (E.D. Va. June 27, 2019) (Davis, C.J.) (quoting *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015) (emphasis in *Smith*.) "[T]he state-created danger exception is a narrow one and ... for the doctrine to apply, there must be affirmative action, not inaction, on the part of the State which creates or increases the risk that the plaintiff will be harmed by a private actor." *Id.* (quoting *Robinson v. Lioi*, 536 F. App'x 340, 343-44 (4th Cir. 2013).) "Such factual scenarios subject governmental entities to claims that are tantamount to a claim that the state 'directly caused harm to the plaintiff.'" *Id.* (citation omitted.)  Accordingly, "the Fourth Circuit has recognized that 'apart from situations involving custody, the Supreme Court has never applied a deliberate indifference standard merely because the State created a danger that resulted in harm.'" *Id.* (citation omitted.)

Accordingly, this Court has already ruled that "Plaintiffs Fourteenth Amendment claim fails pursuant to Rule 12(b)(6) because, under established precedent, Defendant F.C.S.B.'s alleged failure to protect Plaintiff against private violence, is not a violation of Due Process." (ECF 85 at 30)  The Court accordingly dismissed the substantive due process claim made against both the School Board (*Id.* at 30) and the Individual School Defendants (*Id.* at 37) in the Amended Complaint.  Like its predecessor, the Second Amended Complaint repeatedly alleges deliberate

---

[7] The Individual School Defendants incorporate the School Board's legal arguments in support of its Motion to Dismiss Amended Complaint (ECF 55 at 11-19, ECF 74 at 12-19) and their own legal arguments in support of their Motion to Dismiss Amended Complaint (ECF 57 at 6-7; ECF 75 at 6)

indifference on the part of the Individual School Defendants.  (ECF 138.1, ¶¶ 58, 235, 240, 260, 266, 270, 275, 276, 277, 278, 283, and 290)  As this Court observed in dismissing Plaintiff's previous substantive due process claim, "[i]t cannot be said that the Defendants both took affirmative action and no action at the same time."  (ECF 85 at 33)

Plaintiff tries again to convert alleged "deliberate indifference" into affirmative action. Plaintiff alleges that the Individual School Defendants "through their affirmative acts, acted recklessly and with deliberate indifference to Plaintiff resulting in a state created danger."  (ECF 138.1, ¶ 275)  "M.P.F., M.C., and F.T. acted with deliberate indifference by electing not to follow" the student conduct code.  (*Id.*, ¶ 276)  "S.T., A.F., P.A.H., and B.H. affirmatively acted with recklessness and deliberate indifference . . . ."  (*Id.*, ¶ 277)  The Second Amended Complaint does nothing to resolve the essential contradiction between action and alleged inaction that this Court previously rejected.  This Court should again reject this invitation to enlarge the narrow "state-created danger" exception and dismiss Count V of the Second Amended Complaint without further leave to amend.

### V.   The Individual School Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims.

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (citation omitted).  "Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the "qualified immunity test"): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person

would have known.'" *Id.* at 307.  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Feminist Majority*, 911 F.3d 703-04 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 308 (2015).)  "To be clearly established, a legal principle 'must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority'" *Id.* at 704 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  The Fourth Circuit has "long held that it is case law from this Circuit and the Supreme Court that provide notice of whether a right is clearly established." *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013) (citation omitted).

### a. Count III fails to meet the qualified immunity test because the allegations do not substantiate any violation of a federal or statutory or constitutional right.

As shown above, the allegations in Count III of the Second Amended Complaint do not substantiate the violation of a federal statutory or constitutional right.  Consequently, Plaintiff cannot establish the first prong of the qualified immunity test.  This Court should dismiss the claims against the Individual School Defendants in their individual capacity in Count III.

### b. Count IV fails to meet the qualified immunity test because an equal protection right to be free from deliberate indifference was not clearly established at the time of the alleged violation.

The Fourth Circuit has held that, as of 2014 to 2015, "the equal protection right to be free from a university administrator's deliberate indifference to student-on-student sexual harassment was not clearly established by either controlling authority or by a robust consensus of persuasive authority."  *Feminist Majority*, 911 F.3d at 706; *see also M.B. v. Chapel Hill-Carrboro City Sch. Bd. of Educ.*, No. 1:20-CV-796, 2021 WL 4412406, at *6 (M.D.N.C. Sept. 27, 2021) (finding qualified immunity where "Plaintiff alleges that Individual Defendants were deliberately indifferent to student-on-student sexual abuse even earlier, from 2011–2013. Thus, *Feminist*

16

*Majority* governs this issue, and this Court is bound by its determination. No clearly established right prohibited Individual Defendants' behavior in the years they were allegedly deliberately indifferent.").

In this case, Plaintiff alleges that the Individual School Defendants were deliberately indifferent to her claims of harassment from other students from October 2011 to February 2012. According to the Fourth Circuit's decision in *Feminist Majority*, the equal protection right to be free from a school administrator's deliberate indifference to student-on-student sexual harassment was not clearly established at that time. *Feminist Majority*, 911 F.3d at 706. If the right was not clearly established as to school administrators, it was not clearly established as to non-administrator school personnel. Therefore, this Court should dismiss the claim in Count IV against the Individual School Defendants in their individual capacities.

### c. Count V fails to meet the qualified immunity test because alleged inaction cannot create a "state-created danger."

State actors cannot be held liable under § 1983 under a "state-created danger" theory on the basis of alleged inaction and "deliberate indifference". As this Court has already ruled when it dismissed Plaintiff's substantive due process claims in the Amended Complaint, alleged "*inaction* did not violate the federal statutory and constitutional rights alleged." (ECF 85 at 39) (emphasis in original). Allegations of "deliberate indifference" on the part of the Individual School Defendants pervade the Second Amended Complaint. (ECF 138.1, ¶¶ 58, 235, 240, 260, 266, 270, 275, 276, 277, 278, 283, and 290) Accordingly, like the Amended Complaint, the allegations in the Second Amended Complaint cannot substantiate a violation of a federal statutory or constitutional right under the first prong of the qualified immunity test. According to controlling precedent governing the narrow "state-created danger" exception, no reasonable person would know of a "clearly established" constitutional right based on alleged inaction or

deliberate indifference.  Consequently, the allegations against the Individual School Defendants cannot satisfy the second prong of the qualified immunity test.

This Court should again reject Plaintiff's attempt to enlarge the narrow "state-created danger" exception based on alleged inaction of the Individual School Defendants. This Court should dismiss the Count V with prejudice.

### VI.   The claims of gross negligence fail as a matter of law because Plaintiff's allegations establish that the Individual School Defendants exercised some degree of care.

By statute, the Individual School Defendants are not liable for civil damages resulting from the supervision, care, or discipline of students, except for gross negligence or willful misconduct.[8]  Va. Code § 8.01-220.1:2(A).  The Supreme Court of Virginia has defined "gross negligence" in exacting terms.

> Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence.... It is *very great* negligence, or the absence of slight diligence, or the want of even scant care.... It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, *magnified to a high degree* as compared with that present in ordinary negligence."

*Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378-779, 35 S.E.2d 71, 73 (1945) (emphasis added).

"It must be such a degree of negligence as would shock fair minded persons." *Morris v. Hamilton*, 225 Va. 372, 373, 302 S.E.2d 51, 53 (1983) (citation omitted).  "Because the standard for gross negligence [in Virginia] is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised *some degree of care*." *Elliott v. Carter*, 791 S.E.2d 730, 732 (2016) (citations and internal quotation marks omitted) (emphasis added); *see also Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991) (affirming

---

[8] Plaintiff does not allege any "willful misconduct" on the part of any of the Individual School Defendants.

that the plaintiff failed to establish a prima facie case of gross negligence when the evidence

showed that the defendant "'did exercise some degree of diligence and care' and, therefore, as a

matter of law, his acts could not show 'utter disregard of prudence amounting to complete

neglect of the safety of another'"). "Ordinarily, the question whether gross negligence has been

established is a matter of fact to be decided by a jury. Nevertheless, when persons of reasonable

minds could not differ upon the conclusion that such negligence has not been established, it is the

court's duty to so rule." *Elliott*, 791 S.E.2d at 732 (citation omitted).

In this case, the Second Amended Complaint establishes that the Individual School

Defendants exercised "some degree of care" of Plaintiff.  As Plaintiff alleged, S.T., P.A.H, and

J.F. agreed to "shadow" Plaintiff during class changes to ensure her safety.  (ECF 138.1. ¶ 166)

"Defendants S.T., A.F., P.A.H., T.B., B.H., M.P.F., M.C., F.T., and J.F. . . . promised Plaintiff

and her mother that they would shadow Plaintiff while she was in the hallways at RCMS so as to

protect her from the sexual harassment, sexual assault, sexual battery, and sexual abuse by other

students."  (*Id.*, ¶ 301)  "On December 8, 2011, Counselor J.F. affirmed the agreement and

promise to shadow Plaintiff by email to Plaintiff's mother wherein she promised to monitor

Plaintiff 'between change of classes of 1st and 3rd periods' on December 8 and December 9."

(*Id.*, ¶ 167)  This was three months before Plaintiff disclosed to her mother that she had been

sexually assaulted.  (*Id.*, ¶ 198)

By an email to J.F. and B.H. dated December 9, 2011, Plaintiff's mother confirmed that

the Individual School Defendants exercised some degree of care.  (ECF 142.1, Second Corrected

Exhibit P)  Plaintiff's mother relayed to J.F. and B.H that Plaintiff "said yesterday was a great day

at school.  She attributes this to the guidance and hallway 'shadowing' provided by you." (*Id.*)

The Second Amended Complaint thus establishes that the Individual School Defendants

exercised "some degree of care" in their alleged supervision of Plaintiff.  Consequently, the

19

Plaintiff's tort claims against the Individual School Defendants alleging gross negligence fail as a matter of law.  Therefore, this Court should dismiss Counts VII and VIII.

## **CONCLUSION**

This Court should dismiss the claims asserted against the Individual School Defendants in Counts III, IV, V, VII and VIII, without further leave to amend.

Respectfully submitted,

S.T., A.F., P.A.H., T.B., B.H., M.P.F., M.C., F.T., and J.F.

_____/s/_____

Michael E. Kinney (VSB #65056)
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Reston, Virginia 20191
Telephone:  (703) 956-9377
Facsimile:  (703) 956-9634
mk@kinneyesq.com

*Counsel for Defendants, S.T., A.F., P.A.H., T.B., B.H., M.P.F., M.C., F.T., and J.F.*

## **CERTIFICATE OF SERVICE**

I certify that on July 27, 2022, I will electronically file a copy of the attached BRIEF IN

SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT using the

CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all

Parties.


_____/s/_____
Michael E. Kinney (VSB #65056)