IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:19-cv-00917-RDA-WEF |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE STIPULATED PROTECTIVE ORDER[1]

In its March 10, 2020, Order, this Court acknowledged that "Plaintiff's claims in her Complaint are *egregious*" and that "the subject matter of such claims certainly warrants the utmost level of privacy." Order at 47, *B.R. v. F.C.S.B.*, *et al.*, Civil Case No. 1:19-cv-00917 (E.D.Va. Mar. 10, 2020); *see also B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021). Rule 26(c) of the Federal Rules of Civil Procedure provide that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In light of the nature of the allegations at issue in this matter – the brutal gang rapes, sexual assaults, and repeated harassment of a 12-year old girl – and the nature of the materials involved in discovery in this matter -- including intensely personal photographs developed as part of a sexual assault nurse examiner report, therapy notes for the Plaintiff's current medical provider, and contact information for a person suffering from post-traumatic stress disorder –

---

[1] As described below in the Relevant Facts section, the parties have conferred regarding modifications to the Stipulated Protective Order, but where unable to come to an agreement.

there is good cause to amend the Stipulated Protective Order to create a designation for highly confidential/attorneys' eyes only material.

This protective order is requested to safeguard B.R., a child sex abuse victim and survivor of numerous gang rapes, from further physical, mental, and emotional harm. It seeks to ensure her safety by not disclosing her physical location and daily activities from her named perpetrators as well as 15 unnamed defendants who remain at large and pose a threat. According to her providers, even the perception that B.R.'s location is known causes great mental and emotional harm to her. The proposed order also serves to protect B.R. 's right to continuing medical treatment with total trust and confidence that medical records subpoenaed and shared are relevant, proportionate and not unduly burdensome.

The proposed order seeks to afford Plaintiff privacy with irrelevant sensitive or embarrassing personal matters (including unnecessary disclosure that she is a victim of child sex abuse) that add little to no value to the case. It also seeks to protect any matters she may have shared with her therapists in the course of her necessary treatment that otherwise fall under attorney client privilege.  Due to the highly sensitive nature of the records, the protective order also asks for attorney eyes only for all of B.R. 's medical, SANE, and therapy records (as well as any potential photographs or videos of abuse that may surface).

Moreover, in light of the needs of the case, which include allegations of a pattern or practice of downplaying sexual harassment and assault, and the provisions for the Family Educational Rights and Privacy Act ("FERPA") itself, which create an exception for materials produced in response to a lawful subpoena or court order, and in the interest of judicial efficiency, there is good cause to amend the FERPA provisions of the Stipulated Protective Order to expedite the production of responsive records.

## RELEVANT FACTS

This case arises from the severe sexual abuse of a 12-year-old child who was repeatedly gang raped, assaulted, and harassed. SAC at ¶ 173.  In April 2022, the parties (including plaintiff, represented by prior counsel) agreed to a Stipulated Protective Order, which was adopted by the Court.  ECF No. 135.  On September 9, 2022, Plaintiff filed two motions to quash or quash pending modification of the protective order three subpoenas to three of Plaintiff's most recent therapy providers, including Plaintiff's current therapist.  *See* ECF Nos. 185-189.  On September 14, 2022, Plaintiff provided a draft modified protective order to counsel for defendant F.C.S.B. for discussion.  On September 15, 2022, Plaintiff provided a draft modified protective order to counsel for all defendants for discussion.  On September 16, 2022, the Court directed the parties to confer regarding a modified protective order and, if unable to reach agreement, submit proposals for modifications to the Court by 5:00 pm on September 23, 2022.   Counsel for the parties conferred via telephone on Monday, September 19, 2022.  On Wednesday afternoon, September 21, 2022, the Defendants sent Plaintiff a set of collective response edits.  Plaintiff replied with alternative edits within 24-hours.  Shortly thereafter, Defendant F.C.S.B. "reject[ed]" Plaintiff's proposal and indicated that they would proceed with filing a brief regarding the protective order.  Thus, at this time, the parties have conferred regarding modifications of the Stipulated Protective Order and been unable to reach agreement. [2]

## EXPLANATION OF PROPOSED EDITS

"[W]hen a plaintiff asserts a claim of sexual harassment, the parameters of discovery have long been narrowed by the courts' interest in guarding against attempts to 'harass,

---

[2] The Court also requested that the plaintiff submit for in camera review any records that she would seek to protect. Plaintiff asks the Court to please note that at the time of this filing, the plaintiff does not yet have the records from her current treating doctor, Dr. Ward.  The plaintiff will submit the records, as appropriate and necessary, for in camera review as soon as they are received and reviewed by her counsel.

intimidate, and discourage the plaintiff in her efforts to prosecute her cause.'" *T.C. on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, Case Nos. 3:17-cv-01098, 3:17-cv-01159, 3:17-cv-01209, 3:17-cv-01277, & 3:17-cv-01427, 2018 WL 3348728 at *8 (M.D. Tenn. Jul. 9, 2018) (quoting *Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983)); *see also Mitchell v. Hutchings*, 116 F.R.D. 481, 483 (D. Utah 1987) ("Broad discovery has been coupled, however, with an array of protective orders designed to prevent discovery from being used as a tool of oppression rather than as a legitimate inquiry into relevant issues.").

### a. Highly Confidential Material (Attorney's Eyes-Only Designation)

Plaintiff proposes to add a new category of materials, "highly confidential material." As described more fully in section 4, "Highly confidential material" is intended to be an "attorneys' eyes only" category for particularly sensitive materials. These particularly sensitive materials are:

- Therapy notes from Plaintiff's current treating doctor;
- The photographs in Plaintiff's Sexual Assault Nurse Examiner ("SANE") report;
- Photographs in Plaintiff's medical records;
- Photographs or video of sexual abuse;
- Plaintiff's current address, phone number, and email address, and
- The current address, phone number, and email address of members of Plaintiff's immediate family.

### i. Therapy Notes from Plaintiff's Current Treating Doctor

As described in Plaintiff's Motion to Quash Subpoena to Dr. Rachel Ward, Plaintiff's current mental health provided has attested to concerns that the disclosure of her records of treatment "would create a risk of harm to B.R.'s safety, well-being, and trust in the treatment process by destroying the confidentiality of the patient-therapist relationship." *See* ECF No.

4

186-1 (Declaration of Dr. Rachel Ward, MD). Dr. Ward went on to attest that "[i]n [her] professional opinion, if B.R. loses the right to privacy of her present-day mental health treatment notes, she loses the ability to speak freely, develop trust, or feel safe in a setting that requires that safety and trust for healing to take place." *Id.* Further limiting the scope of dissemination of records of Plaintiff's current mental health treatment helps mitigate some of these harms by striking a more equitable balance between the defense's need for information sufficient to assess the claims against them and conduct a defense and Plaintiff's need to be able to receive effective mental health treatment.

As the Supreme Court has recognized "Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996). Accordingly, "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id. See also Vasconcellos v. Cybex Intern., Inc.*, 962 F. Supp. 701, 708-709 (D. Md. 1997) (noting that concern that disclosure of therapy records would harm the confidential patient-therapist relationship "is still an important consideration to the Court, even if [the Plaintiff] has placed her mental state at issue.").

In a similar situation, this Court recognized that "[a] plaintiff seeking emotional distress damages 'has a right to have discovery limited to information that is directly relevant to the lawsuit'" and specified that while some of Plaintiff's medical records were relevant and discoverable, "[a]ll documents produced will be designated 'Attorney's Eyes Only' so that only counsel for Defendant and their legal assistant will view them." *Cappetta v. GC Services, Ltd. Partnership*, 266 F.R.D. 121, 126, 127 (E.D.Va. 2009) (quoting *Vasconcellos v. Cybex Int'l, Inc.*,

962 F. Supp. 701, 709 (D. Md. 1997).  The Court should do likewise here and effectively

designate records of Plaintiff's current health treatment "attorney's eyes only."

>    ii.    **Photographs in Plaintiff's SANE Report**

The wider dissemination of the photographs contained in Plaintiff's SANE report is

unnecessary and would subject Plaintiff to embarrassment and undue burden.  The SANE report

was prepared while Plaintiff was a child, and documents injuries to highly intimate areas of

Plaintiff's body.  There is no reason that individual defendants would need to review these

photographs.  The findings of this examination are described in writing elsewhere in the SANE

Report, providing an alternative avenue for defense counsel to appraise their clients of the

content therein.  Moreover, section 4 provides an avenue for the Defendants to obtain review of

the photographs by their own experts and to depose the reports' authors as necessary.

Accordingly, the balance of equities favors limited disclosure – these photographs are extremely

personal and present a high risk of personal embarrassment and burden that is disproportionate to

the minimal value of allowing individual defendants' access.

>    iii.    **Photographs in Plaintiff's Medical Records**

A similar rationale applies to other photographs in Plaintiff's medical records.  While

some other photographs, such as headshots, may be innocuous, others may be of a substantially

more personal nature.  By classifying photographs contained in medical records as highly

confidential, Plaintiff seeks to avoid a situation where unnecessarily embarrassing or

burdensome materials have been widely disseminated to individual defendants before the parties

are able to effectively identify and designate such materials as further restricted.

>    iv.    **Photographs or Video of Sexual Abuse**

Paragraph 127 of the Second Amended Complaint alleges that defendant J.O. took photographs of Plaintiff during a violent sexual assault and threatened to send pictures taken during the assault to other students.  ECF No.155.  Other individuals, including the unknown defendants, may also possess photographs or videos of abuse.  As noted above, Plaintiff was 12 years old at the time of the events described in the Complaint.  Under Virginia law, sexually explicit visual material that depicts an identifiable minor is classified as child pornography, the mere possession of which is a criminal offense.  *See* Va. Code §§ 18.2-374.1; 374.1:1.  Given the extremely strong public policy interest in preventing the dissemination of such materials, as well as the tremendous potential for undue embarrassment, annoyance, and oppression from the dissemination of any such materials, including any such photographs produced during discovery, it stands to reason that any photographs or videos depicting sexual abuse should receive the highest level of protection.  Moreover, under section 4 of the proposed protective order, persons depicted or alleged to have been involved in events depicted in any such content would still retain the ability review materials as necessary to conduct their defense.

### v.    Plaintiff and Plaintiff's Family's Current Contact Information

Finally, Plaintiff proposes to treat current contact information for Plaintiff and Plaintiff's immediate family as highly confidential information.  The Complaint alleges that at least one named defendant repeatedly threatened to harm Plaintiff and members of Plaintiff's immediate family, including by making repeated death threats.  Moreover, the Complaint alleges that several unknown individuals were involved in violent assaults against Plaintiffs, and that such assaults were consistent with other incidents perpetrated by known gang members.  While some may dismiss such threats based on the passage of time, Plaintiff and her family have taken them sufficiently seriously to move several times and take measures to limit access to their contact

information.  Providing the current contact information and physical address of Plaintiff and her family to the individuals Plaintiff alleges violently assaulted her risk oppression and undue burden while providing little additional value to the defense, particularly since such information can be redacted from larger documents to allow the defense to share the contents with their clients.

**b.  FERPA Protected Documents**

Plaintiff is concerned that the current provisions concerning FERPA protected information will lead to impractical delays in producing information and improperly limit lines of inquiry during any deposition of school board members or employees.  FERPA is not supposed to be a prohibitive bar to the release of information in response to a subpoena.  To wit, FERPA explicitly permits the release of protected information in response to a lawfully issued subpoena, as long as parents and students involved are provided reasonable advanced notice.  *See* 20 U.S.C. § 1232g(b)(2); 34 C.F.R. § 99.31(a)(9).

The Complaint alleges that F.C.S.B. had a practice of downplaying allegations of sexual harassment and/or assault that amounted to a "custom," and that F.C.S.B. failed to properly train its employees to respond to allegations of sexual harassment and/or assault.  In addition, Plaintiff alleges that the Individual School Defendants violated her equal protection rights by engaging in disparate treatment.  All of these claims will likely involve discovery into allegations of sexual harassment and/or assault by other F.C.P.S. students during a relevant time period and further investigation into the facts and circumstances of such claims.  This discovery is likely to involve FERPA-protected information, and this investigation is likely to require identifying information. The time frames set forth in the Stipulated Protective Order would make this discovery and processing extremely difficult.  As currently drafted, the Stipulated Protective Order provides

nearly a month to adjudicate any student objection to the disclosure of any FERPA-protected information, during which time such information will not be disclosed.

In addition, the current Stipulated Protective Order provides that parties may object to the disclosure of FERPA protected information during the course of a deposition unless said information involves a student who has been provided notice and an opportunity to object. This provision creates a substantial risk of placing Plaintiff in a catch-22 when deposing school employees: in order to ask about other instances of sexual harassment or abuse, Plaintiff has to be able to identify them. However, Plaintiff would be limited in her ability to identify them because deponents could claim that such information is protected by FERPA, triggering a 14-24 day long process.

### c. Unnecessary Exposure of Plaintiff as A Victim of Child Sexual Abuse

As discussed above, courts above significantly limit the scope of discovery to prevent unwarranted harassment of victims of sexual violence. Both this Court and the Fourth Circuit have emphasized the need to treat this matter with the utmost privacy.

Notwithstanding the above, counsel for Defendant F.C.S.B. contacted a former Professor of the plaintiff, Major Emma Schiller of the United States Army. Major Schiller did not know the plaintiff until she was in college—years after the abuse. Moreover, the plaintiff never disclosed to MAJ Schiller she was the victim of sexual violence, nor that she had a pending lawsuit about the same. When defense counsel reached out to MAJ Schiller, Schiller responded by asking if this was a reference for a job.

As a result of this inquiry, Plaintiff had to disclose to MAJ Schiller that she was the victim of child sexual abuse, as well as the fact she had this lawsuit pending. This was a grave

violation of Plaintiff's privacy, and inconsistent with this Court and the Fourth Circuit's emphasis that this matter be handled with appropriate sensitivity.

Plaintiff has already produced thousands of pages records, including psychotherapy notes from the time she was 12 until today and non-mental health medical records. The defense has subpoenaed the employment files of past employers and every single school she has attended since junior high, with virtually no objection. These educational records include all individualized educational plans (IEPS) and disability accommodations. F.C.P.S. also gave plaintiff an 8-hour psychological exam when she was 12 and social security has adjudicated plaintiff disabled for post-traumatic stress disorder. The defense will depose the plaintiff, and will likely depose the plaintiff's entire immediate family, as well as her treating psychiatrist.   At a certain point, the need to identify additional people in Plaintiff's current life to determine her emotional state is outweighed by the harm it causes the plaintiff. Indeed, the defense, at the September 16, 2022, motion hearing already indicated that the therapy records were the most important evidence of plaintiff's current emotional state.

While the defense is entitled to investigate their case, that right has to be coupled with the need to protect the plaintiff's safety and health. The proposed protective order strikes this balance, requiring the defendants to demonstrate good cause before contacting someone that personally knows the plaintiff but lacks personal knowledge of the events in the complaint. *See Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. Sept 7, 2012) (Noting that just because a plaintiff claims emotional damages, "that is hardly justification for requiring the production of every thought she may have reduced to writing, or indeed, the deposition of everyone she may have talked to." (quoting *Rozell v. Ross-Holst*, Case No. 05 Civ. 2936, 2006 WL 163143 at *3-4 (S.D.N.Y. Jan. 20, 2006) (Mem. Op.)).

**d.  Prohibit Any Inquiry into Plaintiff and Her Immediate Family's Location**

FRCP 26(b) limits to discovery to only "relevant" information. Here, the location of the plaintiff and her immediate family, who are all represented by counsel who is in contact with defense counsel, along with their address, has no bearing on any of her claims, nor on her damages. It makes no difference if she lives a block from the courthouse or in another country.

However, as described above, the plaintiff has a real, and substantial fear about her physical safety. Moreover, her treating therapist has long written to this court explaining that "even the perception her whereabouts" will cause her great distress.

Moreover, attorney eyes only is not adequate to protect the plaintiff's location from inadvertent disclosure. Between the 2020 cyber breach[3] and the 2021 FOIA release,[4] FCPS has already shown unable to adequately safeguard protected information.

**e.  Other Issues**

In section 1, Plaintiff proposes adding a catch-all phrase "or other records protected under [the Health Insurance Portability and Accountability Act ("HIPAA")" to the definition of "confidential materials."  This is intended as a catch-all for health records that mirrors the broad protections provided in the Stipulated Protective Order for educational records protected under FERPA.

While we have not seen defendants' final proposal, versions circulated while the parties were conferring included an amendment to redesignate and reproduce all confidential or highly

---

[3] Wainman, Laura, Hackers post FCPS student, teacher personal information on dark web, WUSA9, October 10, 2020
https://www.wusa9.com/article/news/education/fairfax-county-public-schools-student-teacher-data-hacked-on-dark-web-ransomware-attack/65-6e6d455b-a652-440f-beb3-aac6abf80465
[4] Minock, Nick, Virginia judge's ruling favors Fairfax County moms seeking to expose school board spending, WJLA, November 21, 2021
https://wjla.com/news/crisis-in-the-classrooms/virginia-judge-ruling-favors-fairfax-county-moms-fcps-school-board-spending-debra-tisler-callie-oettinger-goldwater-institute

material within 14 days of the entry of a revised protective order.  This provision – particularly the requirement to reproduce materials -- would be burdensome and unnecessary.  To date, thousands of pages of documents have been produced, largely by third parties associated with Plaintiff.  The proposed categories of highly confidential information are straightforward, and do not require a high degree of subjective judgment to implement.

## CONCLUSION

For the foregoing reasons, the Stipulated Protective Order should be modified as proposed.

Dated: September 23, 2022                     Respectfully submitted,

/s/ David A. Warrington
David A. Warrington (VSB No. 72293)
Gary M. Lawkowski (VSB No. 82329)
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: 703.574.1206
Facsimile: 415.520.6593
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

Karin M. Sweigart*
DHILLON LAW GROUP INC.
177 Post Street
Suite 700
San Francisco, CA 94108
Telephone: 415-433-1700
Facsimile: 415-520-6593
ksweigart@dhillonlaw.com

*Admitted *pro hac vice*

*Counsel for Plaintiff B.R.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Date: September 23, 2022

By: /s/ David A. Warrington
David A. Warrington