# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| B.R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 1:19-cv-00917-RDA-TCB |
| FAIRFAX COUNTY SCHOOL BOARD, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT DISCOVERY PLAN

Pursuant to the Court's May 12, 2022 Order, formal discovery was stayed pending motions to dismiss filed by several Defendants. On March 10, 2023 the Court resolved Defendants' motions to dismiss. Accordingly, pursuant to Fed. R. Civ. P. 26 and this Court's April 20, 2022 Order (ECF No. 129) ("the Order"), Plaintiff and Defendants Fairfax County School Board ("FCSB"), S.T., A.F., P.A.H., T.B., B.H., M.P.F., M.C., F.T., J.F., C.K., and J.O., by counsel, (collectively, "the Parties") have met and conferred on a Joint Discovery Plan. The Parties were able to reach agreement on some issues, and have set forth their agreement on those areas in this Plan. However, the Parties were not able to agree on a number of important areas. For those topics, each side has stated its respective position below, which the Parties will be prepared to address further at the status conference scheduled for April 19, 2023:

1. **Rule 26(f) Conference:** The Parties held a Rule 26(f) conference by telephone on March 21, 2023. The conference was attended by Gary Lawkowski and Jonathan Shaw for Plaintiff B.R., Ryan Bates, Sona Rewari, and Scott Burton for Defendant Fairfax County School

Board, Michael Kinney for Defendants S.T., A.F., P.A.H., T.B., B.H., M.P.F., M.C., F.T., and J.F., James Miller for Defendant J.O., and James Davis for Defendant C.K.

2. **Initial Disclosures:**  The Parties previously exchanged initial disclosures in May 2022 following the Court's April 20, 2022 scheduling order (ECF 129).  Plaintiff shall supplement her initial disclosures by no later than April 24, 2023 to provide a description of each witness's knowledge and contact information as required by Fed. R. Civ. P. 26(a)(1)(A)(i).  Any other supplementation by the Parties should be made seasonably in accordance with Fed. R. Civ. P. 26(e).

3. **Previously-Served Discovery Requests**:  The Plaintiff and FCSB have agreed that, unless a further extension is granted: (i) Plaintiff's responses to FCSB's First Set of Interrogatories and First Request for Production shall be due on April 11, 2023; and (ii) FCSB's Response to Plaintiff's First Set of Interrogatories shall be due on April 14, 2023.  The Parties agree that discovery requests served after the Court's May 12, 2022 discovery stay, but before March 10, 2023, shall be considered to have been "issued" as of March 24, 2023.  Any previously-served objections do not need to be re-served.

4. **Discovery Deadlines and Sequencing of Discovery**.  The Court's previous scheduling order of April 20, 2022, (ECF 129), issued before the discovery stay, set September 9, 2022 as the discovery deadline.  Due to the stay of discovery, the discovery cutoff and final pretrial conference dates previously set by the April 20 Order have lapsed.  The parties have conferred but have not reached agreement on deadlines or sequencing of discovery.

- <u>Plaintiff's Position</u>:   Plaintiff believes that phased discovery is appropriate for this matter.  By the time of the status conference, Plaintiff expects to have substantially completed her document production and, as the Court is aware, Defendants have already taken

document discovery from more than 60 third parties, including Plaintiff's family members. All told, Defendants have received thousands of documents totaling tens of thousands of pages. This was virtually all of Plaintiff's medical, educational, employment and police files, including SANE exam. The production included thousands of pages of psychotherapy notes from 2012, when Plaintiff was victimized, until present day, from no less than a dozen treating mental health professionals. By contrast, apart from FCSB's production of two insurance policies, no Defendant has yet produced a single document. In light of this imbalance, Plaintiff believes that depositions should not begin until all parties have certified that they have substantially completed their document productions. The parties have been working to complete those productions and should be able to do so promptly. Absent good cause shown, the deadline for substantial completion of party document production should be 30 days from the date that this Court approves a Discovery Plan.

Plaintiff proposes that depositions commence 14 days following substantial completion of party document discovery and that the period allowed for all fact discovery, including depositions and any remaining document discovery, conclude 45 days thereafter. Because expert testimony in this case will necessarily depend on information elicited during fact discovery—for example, Plaintiff's Title IX expert will take into account the testimony of certain defendants and other school officials in opining on whether FCSB complied with its obligations—it would be infeasible to require that expert reports be prepared before fact discovery has been completed. Accordingly, Plaintiff has proposed a separate expert discovery phase to follow the completion of fact discovery, as set forth in Paragraph 13, below.

- <u>Defendants' Position</u>: Given that both sides already agree that the parties will need to take depositions well in excess of the five non-party deposition limit in the Court's April

20 Order and, the fact that the witnesses are scattered across the country, and the logistical challenges of scheduling depositions with five sets of counsel of record, Defendants believe that phased discovery would be inappropriate and highly impractical. Moreover, the parties have already collected document discovery from over 60 third-parties, so there is no need to postpone depositions until party document discovery has been completed.

5. **Service of Pleadings and Papers:** The Parties will serve all pleadings, motions and other papers filed with the Court electronically as provided by the Federal Rules of Civil Procedure, the Local Rules of this Court, and other orders of the Court. The Parties agree to serve by e-mail all discovery requests and written responses, and any other papers that are not filed with the Court which shall be deemed equivalent as service by hand. For purposes of calculating response deadlines, any discovery requests that are served after 6:00 p.m. Eastern Time shall count as service the next business day.

6. **Meet-and-Confer Conferences:** The Parties shall be available, through their respective counsel, to participate in meet-and-confer conferences (either in-person or by telephone) within three (3) business days of a written request (including by e-mail), except when that Party's lead counsel is on vacation or in trial. For any discovery disputes, the Parties shall use the Court's expedited hearing process for non-dispositive motions and shall set all such motions for hearing on the earliest hearing date available on the Court's calendar, unless none of the counsel of record for each party to that specific motion are available on such date.

7. **Protective Order:** The Court has already entered an Amended Protective Order (ECF No. 205).

8. **Electronically Stored Information:** The Parties shall indicate in their discovery requests the manner in which they are seeking the production of electronically stored information

(ESI). If the receiving party disagrees with the requested ESI format (including production of metadata), then the receiving party shall notify the requesting party within fourteen (14) days of service of the discovery request and the Parties shall meet and confer to discuss the production format.

9. **Privilege Log:**

- <u>Plaintiff's Position</u>: The parties have been unable to reach agreement on a stipulation to depart from the default rule that all documents that a party withholds from production based on a claim of privilege are to be listed on a privilege log. This Court did not enter the previously submitted Joint Discovery Plan and, far from considering it a binding agreement, Defendants' first draft of this document included an entirely new draft of a stipulation regarding privilege logs that led to a series of proposals and counterproposals on which the parties ultimately could not reach agreement. Accordingly, Plaintiff's position is that the default rule should apply to all parties and the Court should not impose a stipulation on the Plaintiff in the absence of an agreement.

Defendants' position would, as a practical matter, exempt them from preparing substantial privilege logs while imposing on the Plaintiff the significant burden of logging many documents clearly protected by the work-product doctrine, including many communications with Plaintiff's counsel, simply because Plaintiff's mother and brother—who serve as necessary intermediaries for counsel and, when necessary, make litigation decisions on her behalf pursuant to powers of attorney when she is incapacitated by, or unable to communicate directly with counsel due to, the PTSD from which she suffers as a result of the repeated rapes and sexual assault she underwent as a child—were involved in those communications.

Such materials are protected work-product.  Federal Rule 26(b)(3) provides in pertinent part that:

(3) *Trial Preparation: Materials.*

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)*. But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure.* If the court orders discovery of those materials*, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.*

Fed. R. Civ. P. 26(b)(3) (emphasis added).  Plaintiff's mother and brother (who himself is an attorney), who serve as her agents (that is, her "representatives") pursuant to powers of attorney, have been intimately involved in the preparation and prosecution of her lawsuit since well before she reached the age of majority and continue to work closely with Plaintiff and her counsel to prepare her case for trial.  Communications and other documents that they have prepared or been copied on regarding her lawsuit and the administrative complaint that she previously filed with the Department of Education's Office of Civil Rights are documents "prepared in anticipation of litigation or for trial by or for another party or its representative" and frequently include or reflect the "mental impressions, conclusions, opinions, or legal theories of Plaintiff's "attorney or other representative concerning the litigation."  As such, they are work-product—and often core opinion work-product—that Defendants are plainly not entitled to see. Opinion work product "represents the actual thoughts and impressions of [Plaintiff's] attorney," and "the protection can be claimed by [Plaintiff] or [her] attorney." *In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342 (4th Cir. 1994). Opinion work product "enjoys a nearly

absolute immunity" from production and "can be discovered only in very rare and extraordinary circumstances." *Id*. Furthermore, it is well-settled that "'opinion work product immunity now applies equally to lawyers and non-lawyers alike.'" *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1219 (4th Cir. 1976), quoting *Duplan v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 737 (4th Cir. 1974).

It is worth emphasizing the nature of the powers of attorney pursuant to which Plaintiff's mother and brother have been acting on her behalf since December 2018. The document in question is the New York Statutory Short Form Power of Attorney Form prepared by the New York State Bar Association. In it, Plaintiff granted her mother and brother authority "with respect to the following subjects as defined in sections 5-1502A through 5-1502N of the New York General Obligations Law." Included in that list was "(H) claims and litigation." Section 5-1502H of the New York General Obligations Law provides that an agent to whom such authority has been granted has been vested with, among other things, authority: (1) "To assert and to prosecute before any court…any cause of action…which the principal has…"; (4) "In connection with any action or proceeding, at law or otherwise, to perform any act which the principal might perform … and generally to bind the principal in the conduct of any litigation or controversy as seems desirable to the agent"; (5) "to settle, and to propose or to accept a compromise with respect to, any claim existing in favor of or against the principal…"; (8) "To hire, to discharge, and to compensate any attorney…"; and (10) "In general, and in addition to all the specific acts in this section enumerated, to do any other act or acts, which the principal can do through an agent, in connection with any claim by or against the principal or with litigation to which the principal is or may become or be designated a party." N.Y. Gen Obl. Law 5-1502H.

Moreover, even if Plaintiff's mother and brother were not actively engaged in helping her and her counsel prepare her case—and they are—and did not have and exercise a decisionmaking role when Plaintiff is incapacitated—and they do—there would be no waiver of work-product protection under Fourth Circuit law simply because they received copies of the documents in question. "To waive work product protection, the disclosure of 'the contents of otherwise protected work product [must be] to someone with interests adverse to his or those of the client, *knowingly* increasing the possibility that an opponent will obtain and use the material.'" *Est. of Bryant v. Baltimore Police Dep't,* No. ELH-19-384, 2020 WL 6363965, at *3 (D.Md. Oct. 29, 2020) (emphasis added) (quoting *Owens v. Mayor & City Council of Baltimore,* No. CV 11-3295-GLR, 2015 WL 6082131, at *2 (D.Md. Oct. 14, 2015)). *See In re Doe,* 662 F.2d 1073, 1081 (4th Cir. 1981) (citations omitted) ("[W]hen an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection."). *See also* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2020) ("disclosure of a document to third persons does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information"). There can be no serious argument that any disclosure to Plaintiff's mother and brother—who are not only her close family members but also her agents—amounts to disclosures to persons with interests adverse to those of Plaintiff. Accordingly, the work-product protection will bar any effort by Defendants to access any such documents Plaintiff must list on a privilege log.

Yet despite the protected status of such documents, Defendants seek to impose upon Plaintiff a rule under which Plaintiff must log every document that her mother or brother were involved in while avoiding any obligation to create any substantial privilege log themselves. If the goal of modifying the standard rule were, as Defendants contend, to avoid the cost/burden of useless logging activity, as opposed to inflicting a lopsided burden upon Plaintiff, then an agreement would provide that benefit equally to both sides. The agreement that Defendants have proposed and that Plaintiff has rejected would impose a lopsided burden upon Plaintiff. While Plaintiff would certainly have preferred to reach an agreement that worked for all parties, she should not be forced to accept one that benefits only Defendants. Accordingly, the default rule should apply.

- <u>Defendants' Position</u>: Nearly a year ago, and as memorialized in the Parties' initial Joint Discovery Plan (ECF 136), the Parties agree that, in conjunction with a Party's production, the following items need not be identified any Parties' privilege log: (i) privileged communications sent between a Party and its counsel on or after July 12, 2019; (ii) communications between any Party and its counsel related to the administrative complaint filed by Plaintiff in August 2012; (iii) documents, material, and other things created after July 12, 2019 by a Party's counsel, or at the request of a Party's counsel, in conjunction with this action. The Parties have been operating under this agreement for the last year, which has benefited Plaintiff and her Family Members in that they have not been required the log the above-mentioned materials in conjunction with their productions.

Plaintiff is a 23-year old adult and the only party-plaintiff in this case. However, just recently, Plaintiff has taken the position that two of her relatives—her mother and brother who are separately identified as witnesses in Plaintiff's Rule 26(a)(1) disclosures—should *also* be

considered a "Party" in the above mentioned stipulation because they acted in the capacity of a Power of Attorney on behalf of the Plaintiff. Plaintiff made this request so that she could both withhold these documents and eliminate the requirement to log them. As the Court may recall, Plaintiff's mother and brother previously claimed that they should be treated as "Parties" by virtue of this Power of Attorney (*see* ECF 214), but that argument was rejected by the Court (ECF 222). When Defendants refused to accept Plaintiff's two relatives as "Parties," Plaintiff reneged on the above-mentioned agreement in total.

Defendants request that the Court adopt the Parties' privilege logging agreement stipulated to nearly a year ago and as set forth in ECF 136. And, because Defendants dispute Plaintiff's assertion of privilege or work product as to communications involving these family member-witnesses, Plaintiff should be required identify any such documents on a privilege log, thereby permitting Defendants to assess Plaintiff's claims of privilege and/or work product.

**10. Depositions:**

   **a. Number of Depositions**:

- Plaintiff's Position: Each side shall be permitted to take up to 10 depositions (including *de bene esse* depositions) of non-party fact witnesses in addition to the deposition of any other party for any purpose permissible under the Federal Rules of Civil Procedure. In addition to the depositions of each named defendant, up to three additional school officials' depositions shall count as "Party" depositions. The deposition of any expert witness who will testify at trial will not count against these limits.

- Defendants' Position: Plaintiff disclosed over 100 individuals in her Initial Disclosures. As such, the Parties will require depositions beyond the typical limit. Defendants propose that each side should be permitted to take up to 20 depositions, which shall not include

Party and experts (including treating providers expected to testify at trial) depositions, without prejudice to seek leave of court to take additional depositions. Lastly, given that there are nine (9) current and former School Board employees who already are Parties to this action, Defendants submit that only one additional school employee's deposition should count as a "Party" deposition.

    b. **Deposition Attendance:**

- <u>Plaintiff's Position</u>: Only Parties and their counsel and retained experts may attend depositions in person and/or remotely, except that Plaintiff's mother or brother may attend to assist counsel. This is essential, since Plaintiff was a traumatized 12-year-old who had been brutally sexually abused, and her parents/older brother are essential to proper preparation of Plaintiff's case. Any Parties seeking an exception to this must file a motion and notice or hearing at least five business days before the date of the deposition in question. Notwithstanding any other provision of this Discovery Plan, to minimize the chances of retraumatizing Plaintiff, the following conditions shall apply to her deposition: (a) the deposition shall be conducted via Zoom or other remote conferencing system and no defendant may appear on camera or speak during the deposition; (b) Plaintiff may take breaks as needed to get support from her treating therapist; (c) Plaintiff's mother shall be in a nearby room and available to provide support for Plaintiff; and (d) Plaintiff's deposition shall be scheduled for a day on which a Magistrate Judge will be available to rule on any dispute that might arise. Consistent with the Amended Protective Order in this case (ECF No. 205), defendants shall not inquire into the plaintiff's or the plaintiff's family's current or future location, or address during any deposition. Courts consistently allow accommodations outside of those normally provided in the Federal Rules of

Civil Procedure for victims of sexual abuse. *See, e.g., Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00132, 2022 U.S. Dist. LEXIS 125296 (E.D. Tex. July 14, 2022).

- Defendants' Position:  Plaintiff's deposition should be conducted in-person and without any limitations outside of those provided in the Federal Rules of Civil Procedure. Disputed allegations of sexual abuse do not exempt Plaintiff from generally applicable discovery obligations.  With this being said, Defendants do not object to providing Plaintiff with additional breaks and Plaintiff's mother being in a nearby room so long as the substance of her testimony is not discussed during the breaks.  Plaintiff's mother and brother are key witnesses and are non-parties who are not covered by the Protective Order.  Their attendance at depositions would be improper.  With regard to Plaintiff's request pertaining to Plaintiff and her family member's location, Defendants will adhere to the Amended Protective Order.

    c. **Deposition Location:**

- Plaintiff's Position: The Parties will allow all depositions to be conducted remotely via zoom.

- Defendants' Position:  All depositions of witnesses within the subpoena range shall be in person at the location of the deposing Party's choosing so long as it is within the Division or any other location that the Parties mutually agree.   The deposing Party shall have the option to depose witnesses outside the subpoena range via videoconferencing and the parties shall develop a protocol for any such depositions.

    d. **Deposition Scheduling:**

- Plaintiff's Position:  The Parties agreed to work diligently to schedule mutually convenient times and locations for depositions.

- Defendants' Position: Defendants agree that the Parties should work diligently to schedule depositions at mutually convenient times and locations. However, given prior interactions in this case and the short discovery window, Defendants are concerned that Plaintiff's counsel will not make themselves reasonably available for the discovery necessary in this case. Accordingly, Defendants submit that the Parties should provide their availability within two business days of another Party's request, except that this time period is tolled (i) while a Party's lead counsel is on vacation or in trial and (ii) in extraordinary circumstances in which a Party is unreachable. If availability is not provided within that timeframe, then the noticing Party may proceed with noticing a deposition at a time/date of the Party's choosing and that date shall not be changed except when emergency situations arise.

  e. **Deposition Length:** The Parties would like to proactively address the length of the depositions of Plaintiff and her father.

- Plaintiff's Position: Depositions shall last no longer than the standard 7 hours, except that Plaintiff's 78-year-old father has suffered serious health issues and cognitive decline that necessitate the limiting of his deposition to four (4) hours.

- Defendants' Position: Fed. R. Civ. P. provides that "[t]he court *must* allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 26(d)(1) (emphasis added). Given that there are twelve (12) defendants in this case, Plaintiff has alleged multiple sexual assaults by known and unknown individuals that took place over an extended time period, and Plaintiff has pled non-overlapping claims, Defendants collectively request up to fourteen (14) hours to depose the Plaintiff, which effectively gives each set of defense counsel a half day. Moreover, Defendants believe that length of the

deposition of Plaintiff's father—who is a critical witness in this case—should not be limited. With this being said, Defendants agree to provide Plaintiff's father with additional breaks and any reasonable accommodations that he may seek.

**11.     Rule 35 Physical and Mental Examinations**:

- Plaintiff's Position:  In light of the extensive disclosure of Plaintiff's medical records—thousands of pages—over a ten-year period and the ability of Defendants to depose Plaintiff's health care providers, Plaintiff takes the position that a physical Medical Exam—much less a series of them—is not necessary and would cause significant harm and additional trauma to Plaintiff.  Moreover, on March 5, 2012, at the age of 12, plaintiff submitted to a Sexual Assault Nurse Exam (SANE). The SANE exam included a physical examination of Plaintiff's body, including an internal vaginal exam.  Defendants are well aware of the SANE exam and have been in possession of the SANE report since 2020. Additionally, in August 2012, FCSB had their own neuropsychologist administer a nine-hour neuropsychological exam when she was 12—just months after her abuse, which produced a lengthy report.   As such, it is not necessary to force Plaintiff to undergo additional medical exams and to force Plaintiff to undergo additional psychological exams conducted by anyone other than one of her trusted medical providers could place her at risk for severe mental and physical harm. *See T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:17-CV-01098, 2018 U.S. Dist. LEXIS 113517, at *24 (M.D. Tenn. July 9, 2018)(collecting cases and discussing need for court to safeguard against harassment of sexual abuse survivors).

- Defendants' Position:  Plaintiff has put her mental and physical condition at issue. Defendants submit that the SANE report, which is itself disputed, is not a substitute for examinations as provided in Rule 35.  Defendants believe that more than one Rule 35 exam will

be necessary given that Plaintiff alleges injuries affecting various different bodily systems—*e.g.*, neurological injuries, cardiac injuries, pelvic injuries, psychological injuries, "internal derangement of her vagina, cervix, uterus, and anus," and unspecified "bodily injuries, permanent in nature." The total number of Rule 35 exams necessarily depends upon (among other things) the nature of Plaintiff's alleged injuries, information obtained in discovery pertaining the injuries, and the number of experts (each of whom possess differing specialties) retained to examine Plaintiff's claimed injuries. *See* 8A Charles A. Wright et al., Federal Practice and Procedure § 2234, at 475 (2nd ed. 1994) (listing cases where repeated examinations were ordered). Defendants submit that, when a Rule 35 exam is requested, Plaintiff shall provide her availability within two (2) business days, and that no counsel or other individuals shall be permitted to attend the exam(s).

      **12.**    **Interrogatories, Requests for Production, and Requests for Admissions:** The Parties do not believe that any changes need to be made to the Court's Scheduling Order regarding the number of permissible interrogatories or requests for production. The Plaintiff may serve up to 35 requests for admissions as to factual matters, and the Defendants may serve up to 35 requests for admissions on the Plaintiff as to factual matters. There shall be no limit on the number of requests for admissions regarding the authenticity of documents or things.

      **13.**    **Expert Discovery:**

- <u>Plaintiff's Position</u>: Any party seeking to introduce expert testimony shall file its designation of testifying experts and shall serve on all parties, but not file, the materials required by Fed. R. Civ. P. 26(a)(2) on or before 21 days following the conclusion of the Deposition Discovery Phase and that any party seeking to introduce expert testimony in rebuttal to expert testimony so designated by the opposing party shall file its designation of testifying experts and

15

shall serve on all parties, but not file, the materials required by Fed. R. Civ. P. 26(a)(2) within 21 days thereafter.  Any evidence that is solely contradictory or rebuttal to evidence ("reply reports") to such responsive expert disclosure(s) shall be served, but not filed, within 7 days thereafter.  The depositions of all experts shall be completed within 14 days following the deadline for service of such reply reports.  Given Plaintiff's status as a 23-year-old on Social Security disability, to avoid a manifest injustice, F.C.S.B. will pay for all costs associated with depositions of any of their experts or experts retained by the individual school board defendants.

- Defendants' Position:  By seventy-five (75) days prior to the discovery cutoff, Plaintiff shall provide all disclosures required by Fed. R. Civ. P. 26(a)(2) to include witnesses required to provide reports under Fed. R. Civ. P. 26(a)(2)(B) and witnesses who are not required to provide reports pursuant to Fed. R. Civ. P. 26(a)(2)(C).  Defendants shall provide all disclosures required by Fed. R. Civ. P. 26(a)(2) by thirty-five (35) days prior to the discovery deadline.  Plaintiff shall serve her rebuttal expert reports, if any, by twenty-one (21) days prior to the discovery deadline.  Pursuant to Fed. R. Civ. P. 26(b)(4)(E), the party seeking discovery must pay the expert's fees for responding to discovery unless "manifest injustice would result."  There is no "manifest injustice" in requiring a plaintiff to pay for deposing an expert retained to rebut her disputed and unproven allegations.

14. **Drafts and Counsel Communications with Experts:**  The Parties do not intend to change the provisions of Fed. R. Civ. P. 26(b)(4)(B) or (C).  Materials, communications, and other information exempt from discovery under this paragraph shall be treated as attorney work product and do not need to be included in a privilege log.

15. **Evidentiary Motions:**

- <u>Plaintiff's Position</u>:  The Parties agree that all motions to exclude experts or expert testimony, in whole or in part, shall be fully briefed and heard at least 45 days out from trial.  All other motions *in limine*, shall be filed in time to be fully briefed and heard at least two weeks prior to the trial date.

- <u>Defendants' Position</u>:  The Parties agree that all motions to exclude experts or expert testimony, in whole or in part, and all motions *in limine*, shall be filed in time to be fully briefed and heard at least two weeks prior to the trial date.

16. **Modification:**  A Party's agreement to the deadlines and limitations stated in this Joint Discovery Plan is without prejudice to its right to seek modifications of the plan and of the pretrial schedule pursuant to Fed. R. Civ. P. 16 and 26.  Nothing in this document shall be construed as a waiver of any sort.

17. **Possibility of Settlement:**  The Parties acknowledge that they have discussed their claims and defenses and the possibility of settlement by and through their respective counsel.  The Parties have discussed the possibility of conducting an early mediation or settlement conference.

18. **Trial Before Magistrate Judge**: The Parties do not consent to trial before a Magistrate Judge at this time.

Submitted Jointly by Counsel for the Parties:

| | |
|---|---|
| By:_____/s/ (with permission)_____<br>David A. Warrington (VSB No. 72293)<br>Jonathan M. Shaw (VSB No. 98497)<br>Gary M. Lawkowski (VSB No. 82329)<br>Karin Sweigert (*pro hac vice*)<br>DHILLON LAW GROUP INC.<br>2121 Eisenhower Avenue<br>Suite 402<br>Alexandria, VA 22314<br>Telephone:  (703) 574-1206 | By:_____/s/ Ryan M. Bates_____<br>Ryan M. Bates (VSB No. 74661)<br>Sona Rewari (VSB No. 47327)<br>Perie Reiko Koyama (*pro hac vice*)<br>Scott W. Burton (VSB No. 90601)<br>HUNTON ANDREWS KURTH LLP<br>2200 Pennsylvania Avenue, NW<br>Washington DC 20037<br>Telephone: (202) 955-1500<br>Facsimile: (703) 918-4018 |

Facsimile: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com
ksweigert@dhillonlaw.com

*Counsel for Plaintiff*

rbates@HuntonAK.com
srewari@HuntonAK.com
pkoyama@HuntonAK.com
burtons@HuntonAK.com

*Counsel for Defendant
Fairfax County School Board*

By: _____/s/ (with permission)\_\_\_\_\_
Michael E. Kinney (VSB #65056)
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Suite 120
Reston, Virginia 20191
Telephone: (703) 956-9377
Facsimile: (703) 956-9634
mk@kinneyesq.com

*Counsel for Defendants A.F., S.T., T.B., P.A.H., B.H., M.P.F, M.C., F.T., and J.F.*

By: _____/s/ (with permission)\_\_\_\_\_
James F. Davis (VSB #41387)
James F. Davis, P.C.
10513 Judicial Dr., Suite 200
Fairfax, VA 22030
Tel: (703) 383-3110
Fax: (571) 748-6564
jfd@jfdavislaw.com

*Counsel for Defendant C.K.*

By: _____/s/ (with permission)\_\_\_\_\_
Bruce M. Blanchard, Esq. (VSB # 23778)
James P. Miller, Esq. (VSB # 89409)
Odin, Feldman, & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Tel: (703) 218-2102 (Blanchard direct)
(703) 218-2154 (Miller direct)
Fax: (703) 218-2160
Bruce.Blanchard@ofplaw.com
Jim.Miller@ofplaw.com

*Counsel for Defendant J.O.*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

                                                /s/ Ryan M. Bates
                                        Ryan M. Bates (VSB No. 74661)