# Attachment 3

September 12, 2023

Dear Judge Fitzpatrick,

Character assignation and wild-eyed speculation. That's all the defense knows, and that's all that they tell Your Honor in their last filing.

In reality, I'm just asking for a short extension to comply with Your Honor's order. I have nothing to hide. The defense already has everything about me. The sad reality is that I was abused as a child, and they are just looking for dirt from my adult life to embarrass me. They are also making irrelevant attacks.

**My former attorneys collected everything that hit their search terms from all accounts that I have access to. I will <u>turn everything in this file</u> for review to the court or my new lawyers. There is no "partial subset."** I can't be clearer about this.

The unorganized briefing from the other side jumped from one topic to the next, making vague insinuations without offering many specific examples. For example, they state that there is "damning" information coming from third parties that I didn't produce but cannot give any examples (because there are none).

They also bring up the mysterious Facebook messages that C.K., my rapist, dropped on me on the last day of discovery, which I'm not sure what they have to do with anything (aside from the other side's own poor production), but I will discuss this later in the response. I will do my best to address each point:

### 1. I Did Not Discharge My Lawyers Because of the August 11th Order

Let me be as clear as possible: I did not fire my attorneys because of the August 11th order. I did everything I could to comply with Your Honor's order. I gave my lawyers access to all my accounts for weeks, and they had access until they were discharged on September 5, 2023. Again, as I predicted in my September 7th letter, the defense just offers speculation that this is why I terminated the relationship, but it is not true.

### 2. The Defense Does Not Have the Right to Learn About Why I Discharged My Attorneys

As I previously mentioned, I consulted with at least five respected attorneys about the conduct of my former lawyers, all of whom expressed serious concerns. One even contacted the Virginia State Bar Ethics Counsel. I will leave it at that.

As I said before, if Your Honor wants a more detailed explanation, I'm happy to provide it in camera or ex-parte (I'm not sure I know the difference). However, I do not want to do that. I'm not interested in getting the Bieber or Dhillon Law into trouble. To their credit, while I 100% stand by my decision to discharge them, they have been civil, professional, and courteous to me during this period of transition.

I know the defense is always eager to find dirt and embarrassing information on me, and they are relishing the opportunity to look into the attorney client relationship. After all, therapy is usually confidential, and they got access to that, so why wouldn't they want access to what I told my lawyers? However, just because I discharge my lawyers in the middle of a lawsuit doesn't mean I lose the attorney client privilege or confidentiality. I'm sure if that was the law, Hunton, with 800+ lawyers, would have cited a case or a rule. But they can't because that isn't how this works.

1

Any hearing that FCPS wants would divulge attorney client privilege, so it would have to be in camera/ ex parte. I think that would just create even more chaos and confusion, which leads to my next point.

### 3. I Have Nothing to Hide and Have Offered Three Reasonable Solutions to the Court. The Defense's "Solution" Just Causes Chaos

As stated above and in my other filings, I have nothing to hide and gave my lawyers all my passwords for weeks. On Wednesday September 6, 2023, I learned the Bieber Firm went through all my accounts, ran the search terms, and collected all the information. They just need someone to review what the "hits" revealed for responsiveness and privilege. Again, there is no limited subset. It is the whole compliance of Your Honor's order.

Your Honor, I have no idea what FCPS means about a partial subset. I just want to restate, **my former attorneys collected everything that hit their search terms from all accounts that I have access to. I will turn everything in this file** for review to the court or my new lawyers. There is no "partial subset."

While I haven't reviewed these documents out of respect for the process, there isn't a large volume. It comes from my current Instagram account, current Facebook account, and current email addresses. Importantly, I did not have any of these accounts when I was a 12-year-old being abused at Rachel Carson Middle School. I will explain this more below. My guess is that most of them are banal emails and Instagram memes I share with loved ones (from my adult life).

My understanding is that all the accounts I have access to, per my interrogatory response, have been searched. I even spent time recovering my LinkedIn (which I barely use), and my college email (which required me reaching out to my university) to be extra thorough. I have no clue what the defense means that there is only a partial production or a partial search. I think this is where FCPS is being dishonest. Mr. Bates has been speculating to my attorneys about accounts he thinks I may have had. I don't even know what those are. But Mr. Bates insists that I must have these, so therefore I only did a partial search. I cannot comment more on vague and unsubstantiated assertions. All I can say is that we did a full search.

I offered three very common-sense solutions for how to solve a problem nobody could have predicted when Your Honor made the August 11th order. I offered to have substitution counsel finish the production and I offered to do the production myself and have substitution counsel double check, and I offered to have Your Honor do an in-camera review. If I wanted to hide anything, why would I offer an in-camera review? Again, the defense is just making wild speculation and diverting the Court's attention and resources.

I do want to say, with due respect to my former lawyers, there is a reason I don't want my former lawyers to do the review. They have demonstrated, for reasons unrelated to the filing that I don't want to get into, that they do not have my best interests at the top of their minds. I'm afraid that they will not want to spend time or energy advocating for my best interests, and simply turnover non-responsive documents to save themselves time and argument with FCPS' aggressive counsel that's always eager to bill. This is what happened with my fiancé's photos. Even though Your Honor quashed the subpoena for all photos he took of me (thank you!), my lawyers still turned over all his photos of me (the "compromise" was every photo taken outside my home) to avoid having to come back to court. Now, my rapists and their rape-enabling lawyers have all the photos of me and my finance during our happiest

moments and times I am trying to rebuild my life. I don't know how to explain how horrible and violating that feels.

While a non-responsive conversation might be irrelevant to my case, I still do not want it turned over. Just because I was raped as a child and bring a lawsuit, does not mean I lose my privacy. Both Judge Alston and the 4th Circuit have said this case needs to be handled with the "utmost privacy." People who raped me as a kid, and administrators that covered up the abuse, do not have a right to read conversations from my adult life that have nothing to do with my health or this lawsuit. I deserve to have lawyers I trust—or Your Honor—I welcome you to look at my documents, see what's privileged, and determine what documents and communications are relevant for my rapists (and their lawyers) to read.

Finally, it's incredibly unfair that rapists and those that cover up child sexual abuse have lawyers they trust to review their productions, but I could get stuck with those I have discharged. Everyone has to play by the same rules. There isn't one set of rules for victims of modest means and another for institutions with $3 billion budgets.

My three proposed solutions also create less work for everyone. FCPS' lawyers are the only ones that bill $1,000 an hour to come to court. I don't want to have to come to court, my former lawyers definitely don't want to come to court, and Mr. Blanchard complains every time he has to come to court—as he claims he took the case pro bono (but does not disclose that J.O.'s family owns a chain of automotive stores, and his firm provides legal services). I also don't want to make Your Honor do more unnecessary work. If Your Honor grants FCPS' "solution", there will be more hearings, more briefing, and more arguments.

If you grant my solutions, the August 11th order will be complied with very shortly. For example, if I reviewed the documents where my new lawyers would then go through it again, I could have my part done by Friday. I could also deliver the files to Your Honor for an in-camera review by the end of the week, as well.

### 5. The Court Cannot Force Me to Keep a Lawyer I Discharged.

FCPS is also dishonest with their legal argument. In all their legal examples, there isn't a single example of a judge forcing a client in a civil case to stick with a lawyer they have fired. All the cases he cited involved different fact patterns that don't have to do with a client discharging their lawyer. Mr. Bates, as an officer of the court, should have stated this to Your Honor clearly. Instead, he skipped over this, hoping the court would make a mistake. Even with Hunton Andrews 800 lawyers, they could not find one case where a judge forced a plaintiff to keep working with a legal team, she no longer had faith in.

FCPS also tried to trick Your Honor by failing to properly cite Rule 1.16. The rules are very clear. 1.16(a) says a lawyer "shall" withdraw "if a lawyer is discharged." Rule 1.16(c) just says that the lawyer has to file a motion that provides "notice." So, I would argue that if the court forced Ms. Hague and Mr. Warrington to continue to represent me after I discharged them, it would force them to break the attorney rules.

In addition, 28 USC 1654 says I have the right to proceed pro se, as does the 4th Circuit precedent. FCPS does not even bring these to Your Honor's attention.

While I'm not a constitutional expert and I am just a 24-year-old crime victim, I know that I have the right to due process and a fair trial. I believe that if Your Honor forces me to keep lawyers I have terminated, my constitutional rights will have been violated and this will be an appellate issue.

6. **FCPS Will Not Be Harmed by a Short Delay**

Your Honor should not believe FCPS' argument about a delay. I'm just asking for a short time to find new counsel and for them to review a small number of documents after an already huge amount I've produced, and they have gathered from third parties.

In truth, nobody wants this case over more than me. I have been fighting against FCPS since I was 12—half my life. However, it was FCPS that filed a baseless interlocutory appeal because I used a pseudonym, which the 4th Circuit not only rejected, but said "turned logic on its head." My former lawyers asked for a pretrial conference in 2020, but FCPS filed a motion to stop this. FCPS also received a discovery stay last year and it lasted for nine months. It's dishonest for them to say that I can't have a short extension when they have been the ones that dragged this process out for years. In total they have been the ones who have delayed my case encroaching on 4.5 years.

7. **The Defense's Motion Is Full of Dishonesty**

Finally, FCPS' motion is full of dishonesty and character attacks. It's somewhat hard to know where to start, so I will address them in turn to tell the court about the truth of things:

A. **The Defense Lawyers Lied to the Court About the August 11th Order and Again Misrepresent It**

Your Honor, I'm not looking to have a battle about the August 11th Order. Your Honor made his ruling, I respect it, and I'm complying with it. However, I will just say, as a baseline, that the other side made false insinuations to the court.

First, the reason they asked for my lawyers to get access to my accounts is because they claim I'm disabled and incapable of running the search terms. As Your Honor can probably see from my letters this week, just because you have serious health issues, including severe PTSD and TBI, that does not mean I'm a vegetable. I graduated from a top university with hard work, perseverance and disability accommodations. Every day is a struggle, but I am a human being with autonomy.

The defense lawyers, on August 11th, had deposed me for 14 hours. They knew I graduated from Columbia University with a strong GPA and had worked at Sidley Austin in a legal training program until I had to quit because of a flare up of my disability. Despite knowing all this, they made me out to be a vegetable that couldn't even type in basic search terms, hit download or screenshot, and send them to my lawyers. So, they were not being straight forward with the court.

Second, as mentioned, in my earlier letter, Ms. Rewari said that my privacy was protected because I trust my lawyers. Sadly, that is no longer true, as evidenced by me reaching out to five separate lawyers to discuss their conduct. So, the basis of the August 11 order made by the defense was false.

Finally, as I explained in my other letters, I do think it's unfair that the other defendants, including J.O. and C.K., two of my rapists, and the individual school defendants who work for the government, get to pick and chose what they turnover with almost no attorney involvement, while I, the victim, and under a microscope. This process has not been fair.

4

B.  **I Went Above and Beyond in My Production. FCPS and the Defense Is Lying About Production Deficiencies to Hide Their Spoliation**

Your Honor, as I previously stated, I went above and beyond with my production. From conversations with lawyers about this case, I've learned that Plaintiffs in these types of injury lawsuits usually turn over a few hundred documents, at most. Apparently, individual Plaintiffs usually only turn over a small number of documents, with the defense turning over the vast majority. This has not been the case with me.

If I understand things, FCPS has turned over about 11,000 pages of documents. Between my family and me, we have turned over 42,000 pages of documents. How is this fair, that a family turns over more than a massive school system? I gave them everything, which I will repeat include deeply personal communications between me and loved ones talking about my health, painful essays and poetry about my abuse, emails with employers and educators talking about my disability, and anything else related to this lawsuit. With their over 70+ subpoenas, the defense has every single medical record from my birth until today, including 12 years of therapy records. The therapy records are at least 5,000 pages, and have me talking about my abuse from 2012, when I left Carson Middle School, until today. They also have every single employment file from me, every single academic file from me, and have sent subpoenas to close friends and loved ones to learn more about my life. Then, when that wasn't enough, in August, I went back and ran even more search terms, and gave my lawyers even more documents for review, but this too was not enough, apparently.

On top of all that, FCPS got a 14-hour deposition of me. When I tell lawyers that FCPS got a 14-hour deposition in federal court, let alone the "rocket docket", they are shocked and in disbelief. Nobody has ever heard of anything like this. I believe the defense tricked Your Honor into granting the extra 7 hours, because they said there were multiple parties. But then during my second deposition, the other parties started yielding their time to FCPS. Your Honor stopped this when I refused to answer more questions until someone called the court.

In the deposition, Ms. Rewari asked me horrific questions. She asked me about my sex life when I was a 12-year-old child before my abuse, she asked me to physically reenact my rapes, and she asked to see my scars, which she knows are on my inner thighs. All of this happened while Mr. Bates and Mr. Blanchard scoffed and rolled their eyes. It was so bad, that even the Fairfax Times ran a story about Mr. Blanchard's misbehavior during my deposition. Here is a link to the story:

https://www.fairfaxtimes.com/articles/fcps-pays-587-500-to-settle-one-sexual-assault-case-fights-another/article_83eed2f8-21ba-11ee-b429-b7b2f56b2d90.html

Then, I had to do multiple medical exams, including an 8-hour psychological exam that left me wiped out for two days. And I did this just days after my deposition. And the psychological exam was on top of another FCPS psychological exam I did when I was 12, which confirmed my PTSD and trauma. You even advised there should be time in between each exam but Mr. Bates dis not abide by your guidance and my team didn't feel like opposing. So I the victim suffering from PTSD had muster my strength and

courage to comply. On top of this, they deposed my entire family, including my finance, and are now still trying to depose my college ex.

Then, out of respect for the August 11th order, I turned over all my accounts to my lawyers for a final review. They again ran the search terms and collected all documents. These documents are just pending an attorney review, as described above.

Meanwhile, FCPS only produced about 11,000 documents if I understand properly. So I have done much more than FCPS with discovery. As I explained in my other letters, the defendants withheld written conversations about the case, lawyers for Fairfax hid evidence from me, and the defendants destroyed hard-drives and shredded documents important to my case. We also have no idea how FCPS did their production, and whether or not lawyers supervised anything.

What message does this send to victims and survivors of sexual violence, Your Honor? That if you are raped as a child and bring a lawsuit, your life will be picked apart, but Your rapists and their enablers can hide, withhold, and cherry pick what they want to share. This is not right.

### C. There Are NO "Damning" Things from Third Parties

FCPS makes grand statements that "damning" evidence keeps coming in from third parties but that this is missing from my production. FCPS is lying once again.

The truth is that much of the stuff from third parties strongly helps my case. For instance, FCPS plays dumb and pretends that I was never sexually abused as a child. Then they subpoena my therapist who treated me from age 13 to age 16, and they find repeated, detailed discussions about my abuse in the closet by unknown people, as well as abuse by C.K. and J.O. They subpoena all my schools and find that after I was abused at Carson Middle, I always had an IEP for PTSD. They subpoenaed all my employers and find out that I asked for disability accommodations for PTSD. They subpoena the Fairfax Police, and they find my rape kit with physical injuries that corroborate my abuse. So, I have no clue what they are talking about.

FCPS makes big statements but fails to back it up with evidence. As far as I understand, they only have two examples where they supposedly "found" things from third parties. Let me address both of these.

FCPS is mad that they apparently did not get two emails from 2018. First of all, these emails were from 5 years after my abuse, but two years before this lawsuit. Second, these emails are not relevant to anything. They aren't about my abuse, and they aren't really about my health. Third, I turned them over to my lawyers and they likely weren't considered relevant or responsive.

I would also like to explain to Your Honor why these emails became relevant. In June, when the court gave FCPS five extra depositions, they represented to my former team and Your Honor that they wanted to depose additional students who were at Carson Middle School when I was abused, as well as some of my doctors.

I guess this too was a lie. Somehow, Mr. Kinney got the idea that I lied on my resume when I was 17 years old and got an internship at PriceWaterHouse Cooper (PWC) because of fabrications on my resume. This is totally false. I also I don't know what this has to do with me being raped as a child (other than FCPS just trying to say I'm someone who lies). This then turned into a seven-hour deposition with PWC about whether I lied to get the job (I did not). The emails that both PWC and I turned over about

6

this actually validated my position—that I worked there without issue and stopped working because I did not want to continue after my internship. Of course, FCPS and Mr. Kinney do not tell you this entire context.

C.O.K. was my friend when I was 12 years old. Apparently, someone named "Adriana" messaged him on Facebook in 2012. C.O.K. turned over messages with "Adriana", which do not discuss my abuse or anything else relevant to this case. When asked why he turned these over, he speculated that he never met Adriana in real life and suspected it could be me using a fake account. I testified that I never had an account on Facebook with the name "Adriana", so how could I have these messages. Again, this is what I mean by the defense telling half the story. They claim they get information from third parties that they think I should have, but if I never had a Facebook page named "Adriana," how could I have this information?

What FCPS doesn't want to say about C.O.K. is that he testified that he remembers, after all these years, the school defendants trying to force him to change student statements where he talked about me being the victim of sexual harassment and assaults. When Mr. Kinney asked him if he was accusing the school defendants of misconduct, he said "it was certainly on the line." C.O.K. also said he gave many student statements talking about sexual misconduct against me, but only a small number were given to me. This is what I mean about deflection—FCPS creates fake issues that have nothing to do with anything to hide their own misconduct that came from the disgusting crime of hiding the sexual abuse of a child.

I have also turned over communications that the defense argues is harmful to my case. For example, in 2012, I created a Facebook account under the alias "Jenni Taylor." In this account, I told C.O.K. that I was someone who was abusing and hurting B.R., though I did not name any abuser by name. This was a cry for help, and after months of nobody listening to me, after desperation, I did this. I sent it to C.O.K. because I knew the administrators were pulling him out of class, and I wanted him to give it to the administrators so that someone would help me. As soon as I was pulled out of school and in the safety of my home, I told my mom that the Jenni Taylor chats were made by me, and we turned them over to the police. I then turned these chats over to my lawyers in this litigation. FCPS has argued this hurts my case (I don't agree), but regardless, they got this information from me. So this refutes their argument, as well. Mr. Blanchard's argument that only the police provided these is untrue. The police obtained them from me and my mother.

### D. Mr. Bates and Mr. Kinney Have Purposefully Withheld Helpful Documents from Third Parties

As I discussed in my other letter, the defense is making a huge issue about "damning" information from third parties, which don't exist. Yet Mr. Bates and Mr. Kinney continue to hide and withhold helpful evidence they collect from third parties. I sent them an email last week, giving them the benefit of the doubt and the chance to turn them over, but they ignored this. At this point, I can only assume they are withholding the evidence, in violation of Rule 3.4.

I don't understand how it's appropriate or fair for Mr. Bates to get a communication between 12-year-old me and a witness where I disclose my sexual abuse, and how he can just hide it. This is unethical and unfair, and Your Honor should address it.

### E. The Defense Caused the Issues with the C.K. Chats, Not Me.

As I explained in my other letter, on the last day of discovery, C.K. magically "found" about two weeks' worth of Facebook messages between him and a "Facebook User." FCPS and the other defendants, desperate to find some way to avoid being held accountable for covering up child abuse, are latching onto these messages as a get out of jail card, but they are not.

First, as I said before, the messages do not say my name. Instead, they just say "Facebook User." They look highly suspicious. What FCPS continues to hide from the court is that I deny, including in an interrogatory, that I have any recollection of these particular messages. So, it's very dishonest for FCPS and their lawyers to claim that these messages are from me, when that's highly disputable.

Second, even if the messages are "real", C.K. has absolutely perjured himself. He constantly changes his story. When the police interviewed him when I was 12, he told them one story about one sexual encounter. Then when he was deposed, he told another story about a one-time sexual encounter. Now, the messages which I'm assuming he is claiming are real, speak about six sexual encounters/rapes.

Third, and Your Honor, this is more for the lawyers than the court, let me be very clear. I'm not afraid of any "messages" from C.K. He would make me text him all the time so that I would look like his girlfriend, and he stated that nobody would believe me if I reported due to texts and it was his insurance policy. I went along to placate him and because I was scared. This has always been what happened to me and I have always been consistent.  In addition, 12 is not the age of consent. Which is absolutely sick that the defense is even trying the "lying slut" defense of a 12-year-old child.

Also, even if C.K. and I were boyfriend and girlfriend (which we never were!), it still doesn't excuse all the school administrators retaliating against me when I asked for their help. So this whole thing is a distraction, and the defense's intimidation isn't going to work. I'm eager for my day in court.

However, just to discuss the discovery problem now, the fact that C.K. "found" these messages on the last day of discovery shows that he and his lawyers did a lousy job with their production and sandbagged me, despite certifying to production months earlier. I discussed this more in my letter the other day, but this is the defense's fault, and not my fault. It isn't fair that they are trying to turn the tables on their own discovery issues and put it on me.

### F.  I Do Not Have Access to My Accounts from When I was 12 Years Old

The defense is insinuating that since C.K. found these messages, counsel needs to search my accounts to see if they exist on my account as well.

As I mentioned above, this is yet another example of dishonesty. The messages are not between "B.R." and "C.K." They are between C.K. and a "Facebook User." So, these messages, assuming they are even real, would not be on my account.

Another important detail the defense is hiding from Your Honor is that I do not have access to my accounts from when I was 12 years old. As I and my family explained in testimony, we fled the state of Virginia and cut ties with almost everyone when we left. We did this because my doctors said this was best for my health, and we were also afraid for my safety.

8

I know this might sound crazy, but when you have been sexually abused repeatedly, and the people supposed to protect you—the school and the police—do nothing and then begin to retaliate, you really begin to fear for your life. My family and I did not want anyone from the past reaching out to me, so I lost access to my Facebook account from that time period, along with my email address. I did not have any other accounts from that period. Unfortunately, I don't know what happened to my phone from that time as we moved five times to many different states for my safety, education, and healthcare.

I explained this all repeatedly in interrogatory answers and in my depositions. The accounts my former lawyers have searched are from my adulthood. The Facebook they searched I did not have until after I left Virginia and Rachel Carson Middle School. So, they should not find anything from 2011-2012 on my accounts. Again, they don't explain this clearly, creating a false impression for the court.

Mr. Blanchard also insinuates that I spoliated at the age of 12 because I don't have text messages from 2011–2012-time frame. What he fails to disclose to the court is that neither his clients nor anybody else in this litigation has any text messages from the time of my abuse. This includes the school defendants, whose emails show they were texting and using blackberries. So, if this is "spoliation" everyone is guilty of it.

### 8. **The Character Attacks Are Unnecessary**

All I'm asking for is a short extension and to briefly proceed pro se. I'm not a lawyer, but these seem like pretty routine asks. In response, the defense makes irrelevant and nasty character attacks against me. I do not think this is right.

Lastly, Your Honor, I don't think anyone has broached this with you but it is problematic for the defense to have current access to my therapy notes, as they are aware where my current state of mind is and can exploit that as a legal strategy. Mr. Kinney publishing a nasty and unhinged brief is meant to trigger my PTSD so that I ultimately kill myself over this litigation and for having the courage to speak up. I will say the only thing I haven't produced yet in this litigation is my dead body and I believe with absolute certainty the defendant's goal is to accomplish this so none of the other 800 victims (according to their own records) come forward. If you look at the behavior of the defendants, they have not operated in good faith and have continued to abuse me throughout this process. I will not be silent whether or not I win this litigation or not.

Writing these motions and replies over the last few days have been really hard and triggering for my PTSD. I do not feel in a good headspace. Which is why I continue to state that I need counsel to help represent me and I am trying very hard to secure this. But in the interim I have tried to work with opposing counsel. I specifically asked for them to send me their filings so that I could have access and know what their responses were. They ignored my email and never sent me any of their filings. I had to scramble to find them and to Ms. Hague's credit she did send them. But it was not right, and it felt as if the other side was intentionally trying to punish me.

In conclusion, I ask Your Honor to give me a short extension to find new counsel to complete the review of the documents. If that isn't acceptable, please allow me to review them myself for now and with my new lawyers to double check or let me know how to do an in-camera review.

    Respectfully, B.R. (I certify I wrote this myself)