IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| B.R., | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 1:19-cv-00917-RDA-WEF |
| F.C.S.B., *et al.*, | ) |
| Defendants. | ) |

### DEFENDANT J.O.'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FRAUD ON THE COURT

The Plaintiff and Defendant J.O. met when they were in the 6th grade at Floris Elementary School. Shortly thereafter, they became best friends, and their friendship continued into 7th grade at Rachel Carson Middle School, ending around the time the Plaintiff left Rachel Carson in early 2012. The friendship waned when, according to Co.K. (the Plaintiff's boyfriend at the time), J.O. stopped believing the Plaintiff's stories about being sexually assaulted or attacked. Almost seven years later, while J.O. was a sophomore in college, she was served with this lawsuit where she first learned that her former best friend's unbelievable stories now included falsely accusing J.O. of being involved in a sexual assault upon the Plaintiff. Since that day, J.O. has spent the past four years living under the weight of the Plaintiff's lie and the burden of this litigation, which includes the publication of her name at the time of filing. Discovery in this case (largely obtained from independent, third-party sources due to the Plaintiff's unwillingness and alleged inability to produce any of her real-time communications) has now exposed not only the Plaintiff's lies and the actual truth of her behavior and activities in 2011-2012, but also revealed the magnitude of the

1

Plaintiff's efforts to hide the truth and to attack and punish anyone who dared attempt to uncover it. These revelations, however, cannot undo the harm J.O. has endured over the intervening years.

**I.    J.O. JOINS IN AND INCORPORATES THE CONTENTS OF DEFENDANT F.C.S.B.'S MOTION AND BRIEF IN SUPPORT OF DISMISSAL FOR FRAUD ON THE COURT.**

Defendant F.C.S.B. has filed a Motion to Dismiss the Plaintiff's case for fraud on the court, along with an exhibit outlining many of the material untruths that the Plaintiff has alleged in pleadings and in her testimony. J.O. will not repeat Plaintiff's untruths in this Brief, and instead joins in and incorporates the contents of FCSB's Motion to Dismiss and Brief. Fed. R. Civ. P. 10(c). The content of FCSB's Brief not only helps this Court understand the Plaintiff's lies, her actual behavior, and her unending attempts to control discovery and shield critical information contradicting her allegations as reflected in the FCSB Brief, but it also shows how these actions have tainted these proceedings.

**II.    THE PLAINTIFF'S ASSERTION THAT J.O. SEXUALLY ASSAULTED HER IS PATENTLY UNTRUE, AND THE OVERWHELMING EVIDENCE SHOWS THAT THE PLAINTIFF'S ACTIVITIES IN 7TH GRADE WERE MARKEDLY DIFFERENT FROM WHAT SHE HAS ADVANCED IN THIS LITIGATION.**

From October of 2011, the time that the Plaintiff claims J.O. and C.K. brutally and unexpectedly sexually assaulted her, through her departure from Rachel Carson, the Plaintiff was extremely active on social media and incessantly messaging others. *See* Ex. A.[1] Indeed, her communications resulted in the Plaintiff's mother taking away her phone. *Id.* The Plaintiff also used other electronic devices, such as an iTouch, to communicate online when her mother had taken away the Plaintiff's phone. *Id.*

---

[1] Attached as Exhibit A are excerpts from Facebook conversations between the Plaintiff and C.K. that demonstrate what the Plaintiff was actually saying, planning and doing in November of 2011. As set forth in F.C.S.B.'s Brief (ECF #497) at footnote 7, "Facebook user" is the Plaintiff.

Evidence of the Plaintiff's communications includes a series of Facebook chat communications between the Plaintiff and C.K. in November of 2011, a critical time period shortly after which the Plaintiff claims that the sexual assault involving J.O. and C.K took place. These conversations show, without ambiguity or confusion, that the Plaintiff: (1) initiated a romantic relationship with C.K.; (2) that the Plaintiff very quickly engaged in explicit and graphic sexual discussions with C.K.; (3) that the Plaintiff stated she engaged in sexual activity with CK; (4) that the Plaintiff wanted to hide the relationship with C.K from J.O.; (5) that the Plaintiff repeatedly told C.K. that J.O. was a liar, including about the Plaintiff's interest in other boys; and (6) that J.O.'s supposed lies caused C.K. to break up with the Plaintiff. *Id.* In addition, those conversations revealed that the Plaintiff was in conflict with her parents, and that her mother would confiscate her phone, leading the Plaintiff to use other means to communicate with C.K. *Id.*

These communications are entirely consistent with other evidence that supports the conclusion that the allegations against J.O. are false, including the fact that the Plaintiff did not tell school personnel, the police, or Co.K. (her boyfriend immediately following C.K.) that J.O. was involved in any sexual assault until well after the Plaintiff had left Rachel Carson. They are also consistent with the evidence that shows J.O. was the Plaintiff's best friend at Rachel Carson through January of 2012, including the Plaintiff's statements to her then-boyfriend, Co.K. Excerpts of Co.K.'s deposition are attached at Exhibit B.

Finally, the discovery and existence of these communications, coupled with the fact that the Plaintiff has produced no evidence of these or any of her other relevant communications from her time at Rachel Carson, provide clear evidence of the Plaintiff's efforts to hide the truth. In response to orders from this Court compelling her to produce account information, the Plaintiff claims to have no memory of many of the accounts she used, and no specific information about

what happened to the communication devices she used, beyond vague statements about forgetting some accounts and passwords, and her, or her mother's, possible deletion of some accounts or communications.

The harm to J.O. from the Plaintiff's lies is unquestioned. She has had to spend her college years and early-to-mid 20s living under the oppressive and grotesque weight of being an accused sex offender when there was not only an absence of evidence to support the allegation, but also affirmative evidence, in the possession and knowledge of the Plaintiff, that showed the Plaintiff's ever-expanding and ever-evolving narratives were false.

### III. THE PLAINTIFF HAS USED THIS LAWSUIT TO ATTACK THOSE WHO CHALLENGED, INVESTIGATED, OR DISBELIEVED THE PLAINTIFF'S ALLEGATIONS.

The Plaintiff has used this lawsuit to vehemently attack J.O. and anyone else who challenged or disbelieved her allegations. This behavior began with the filing of the lawsuit, and the publication of J.O.'s full name while the Plaintiff, without compliance with Court Rules, filed anonymously. In so doing, the Plaintiff ensured that J.O.'s name would be tied to allegations of rape through major internet search engines. Not only did the lawsuit contain allegations against J.O. that the Plaintiff had never made to her, to the Fairfax County Public School system, or to the Fairfax County Police Department, but they were also immediately picked up by the national press. Thus, J.O. first learned of these allegations at almost the same instant that the national press did.

Thereafter, the record in this case shows that the Plaintiff used the lawsuit to make other salacious allegations against J.O. to further hamper her involvement in her defense. For example, the Plaintiff's attorneys repeatedly asserted in Court filings and in oral argument before the bench that J.O. and the other individually named defendants presented an immediate threat to the Plaintiff, requiring special discovery rules prohibiting J.O. and others from attending the Plaintiff's

deposition in person, despite the indisputable fact that J.O. had neither seen, spoken to, or attempted to communicate with the Plaintiff since January of 2012 when J.O. and the Plaintiff were friends in the 7th grade. There has never been a single shred of evidence offered to support this alleged threat, and the Plaintiff is fully aware that no such evidence exists.

The Plaintiff also used the proceedings to personally attack not only the individual defendants, but also others who challenged her allegations as well as all defense counsel. The clearest and most glaring example of this is found in the Plaintiff's direct letters to this Court in September of this year when the Plaintiff was temporarily without counsel. Unrestrained and emboldened, the Plaintiff unleashed her vitriol, which included calling a former Marine, Secret Service Officer, and 22-year decorated veteran of the Fairfax County Police Department a "crooked cop" who covered up the Plaintiff's alleged abuse. ECF #425-2. She referred to defense counsel as "rape-enabling lawyers," baselessly accused counsel individually and collectively of lying, deceit, and unethical conduct, and attacked counsel by name, going so far as to even falsely accuse one defense attorney of trying to induce her to commit suicide. ECF #425-4.

And in perhaps the most vicious examples of her desire to use these proceedings to inflict pain on those who contested her story, the Plaintiff's counsel questioned J.O. and C.K. in their depositions about deeply personal and wholly unrelated issues concerning, in J.O.'s case, her mother, and in C.K.'s case, his deceased father. The questions concerning the Plaintiff's mother, from whom she has been estranged since she was 10 years old (several years before J.O. ever met the Plaintiff), and the allegations relating to C.K.'s father, who died before C.K. was a year old, were outrageous, painful, and had no connection to any allegation or issue in this case. To make matters worse, in C.K.'s deposition, the Plaintiff's counsel even suggested in his questions that C.K.'s mother may not have told him about the actual circumstances of his father's death.

However, this horrible inquiry did not stop there, as the Plaintiff's counsel also interposed questions whether various people had done anything to him that "made him feel uncomfortable" while he was growing up, including his grandfather who raised him, and moved into questions about his race. These questions were not designed to discover evidence potentially admissible at trial—they were purely intended to intimidate J.O. and C.K., and to hurt them. Attached as Exhibits C and D are excerpts of J.O.'s and C.K.'s depositions, respectively, containing the questions pursued by the Plaintiff's counsel.

## CONCLUSION

For those reasons, and as further detailed in F.C.S.B.'s Brief, the fraud on this Court and the attack on the integrity of this Court encompasses more than the Plaintiff's lies about her time at Rachel Carson, the actions of the Defendants, and the shielding of highly relevant and critical information, but also includes the use of the lawsuit as a vehicle to hurt, and to impugn the character of, anyone and everyone who dared to test her changing and untruthful allegations.

As such, dismissal of this lawsuit is the only proper, and just, action.

Respectfully submitted,

/s/ Bruce M. Blanchard
Bruce M. Blanchard, Esq. (VSB #23778)
James P. Miller, Esq. (VSB #89409)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Tel: (703) 218-2102 (Blanchard direct)
(703) 218-2154 (Miller direct)
Fax: (703) 218-2160
Bruce.Blanchard@ofplaw.com
Jim.Miller@ofplaw.com
*Counsel for Defendant J.O.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all parties.

/s/ Bruce M. Blanchard