**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|                          |     |                              |
| ------------------------ | --- | ---------------------------- |
|                          | )   |                              |
| B.R.,                    | )   |                              |
|                          | )   |                              |
|   Plaintiff,   | )   |                              |
|                          | )   | Civil No. 1:19-cv-00917-RDA-WEF |
| v.                       | )   |                              |
|                          | )   |                              |
| FAIRFAX COUNTY SCHOOL BOARD, | ) |                          |
| *et al.*,                | )   |                              |
|                          | )   |                              |
|   Defendants.  | )   |                              |

**PLAINTIFF B.R.'S BRIEF IN RESPONSE TO DEFENDANT
FAIRFAX COUNTY SCHOOL BOARD'S MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT ON TITLE IX DAMAGES</u>**

### TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

RESPONSE TO FCSB'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND
ADDITIONAL FACTS RELEVANT THERETO .......................................................... 4

STANDARD OF REVIEW ........................................................................................ 8

ARGUMENT ......................................................................................................... 8

I.      B.R. Can Recover Damages for Her Physical Injuries, Including Her ██████ ................... 8

        A.      It is undisputed that Cummings's holding does not, in any way, bar recovery of
                damages for physical injuries ..................................................................... 9

        B.      B.R. is suffering from numerous physical injuries .......................................... 10

        C.      ██████ is a physical injury, compensable in this action ................................... 11

II.     B.R. Can Obtain Damages for Diminution of Earning Capacity and Future Earnings
        Caused by Her Physical Injuries ............................................................................ 15

        A.      Cummings does not bar lost earnings damages ............................................... 15

        B.      B.R. has adduced sufficient evidence to support her lost earnings claim ............. 18

III.    B.R. Can Recover the Costs of Her Medical Treatment ............................................... 19

IV.     Cummings Does Not Apply To Title IX Claims .......................................................... 22

CONCLUSION ....................................................................................................... 26

CERTIFICATE OF SERVICE .................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Gorman*,
    536 U.S. 181 (2002).................................................................................................... 21

*Bradgon v. Abbott*,
    524 U.S. 624 (1998).................................................................................................... 13

*Brzonkala v. Va. Polytechnic Inst. & State Univ.*,
    169 F.3d 820 (4th Cir. 1999) ..................................................................................... 25

*Cannon v. Univ. of Chi.*,
    441 U.S. 677 (1979).................................................................................................... 18

*Clark v. Brown*,
    536 F. Supp. 3d 56 (E.D. Va. 2021) ........................................................................... 2

*Coleman v. Cedar Hill Indep. Sch. Dist.*,
    No. 3:21-CV-2080-D, 2022 WL 1470957 (N.D. Tex. May 10, 2022).................................... 22

*Crawford v. Davis*,
    109 F.3d 1281 (8th Cir. 1997) ................................................................................... 24

*Cummings v. Neighborhood Assistance Corp. of Am.*,
    No. 3:18-CV-1746, 2023 WL 5154987 (N.D. Tex. Aug. 10, 2023)........................................ 20

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    596 U.S. 212 (2022)...................................................................................................... 1

*Doe ex rel. Doe v. City of Pawtucket*,
    633 F. Supp. 3d 583 (D.R.I. 2022)............................................................................... 9

*Doe v. Fairfax Cnty. Sch. Bd.*,
    10 F.4th 406 (4th Cir. 2021) ...................................................................................... 19

*Doe v. Fairfax Cnty. Sch. Bd.*,
    No. 1:18-cv-614, 2023 WL 424265 (E.D. Va. Jan. 25, 2023).................................... 14, 16, 22

*Doe v. Purdue Univ.*,
    No. 4-18-CV-89-JEM, 2022 WL 2828238 (N.D. Ind. July 20, 2022).................................... 22

*Doe v. Town of N. Andover*,
    No. 1:20-cv-10310, 2023 WL 3481494 (D. Mass. May 16, 2023)......................................... 10

*Escue v. N. Okla Coll.*,
    450 F.3d 1146 (10th Cir. 2006) ................................................................................. 24

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
  503 U.S. 60 (1992) ................................................................................................ 25

*Franks v. Ky. Sch. for the Deaf*,
  142 F.3d 360 (6th Cir. 1998) ............................................................................... 24

*Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*,
  280 F.3d 98 (2d Cir. 2001) ................................................................................... 23

*K.G. v. Woodford County Board of Education*,
  No. 5:18-555-DCR, 2022 WL 17993127 (E.D. Ky. Dec. 29, 2022) ...................... 14

*Kadel v. N. Carolina State Health Plan for Teachers & State Emps.*,
  12 F. 4th 422 (4th Cir. 2021) .............................................................................. 23

*Loera v. Kingsville Independent School District*,
  No. 2:21-CV-00031, 2023 WL 6131459 (S.D. Tex. Feb. 2, 2023) ...................... 14

*Marietta Area Healthcare, Inc. v. King*,
  No. 5:21-CV-25, 2022 WL 1073335 (N.D. W. Va. Apr. 8, 2022) ........................... 2

*Nev. Dep't of Hum. Res. v. Hibbs*,
  538 U.S. 721 (2003) .............................................................................................. 24

*Norfolk S. Ry. Co. v. Brotherhood of Locomotive Eng'rs*,
  217 F.3d 181 (4th Cir. 2000) ............................................................................... 25

*Pennington v. Flora Cmnty. Unit Sch. Dist. No. 35*,
  No. 3:20-CV-11-MAB, 2023 WL 348320 (S.D. Ill. Jan. 20, 2023) ................... 9, 21

*Rice v. Cmnty. Health Ass'n*,
  203 F.3d 282 (4th Cir. 2000) ...................................................................... 16, 17, 18

*Ross v. Berryhill*,
  No. 3:18-cv-42, 2019 WL 289101 n.10 (E.D. Va. Jan. 3, 2019) ........................... 13

*Smith v. Wade*,
  461 U.S. 30 (1983) ............................................................................................... 25

*T.F. v. Greenwood ISD*,
  No. 7:20-CV-215-ADA, 2022 WL 17477597 ........................................................ 14

*Thorpe v. Va. State Univ.*,
  6 F. Supp. 2d 507 (E.D. Va. 1998) ....................................................................... 24

*United States v. Mgmt. Consulting, Inc.*,
  636 F. Supp. 3d 610 (E.D. Va. 2022) ..................................................................... 8

*Unknown Party v. Ariz. Bd. of Regents*,
   641 F. Supp. 3d 702 (D. Ariz. 2022) ....................................................................... 18

*Unknown Party v. Arizona Board of Regents*,
   No. CV-18-01623, 2022 WL 17459745 (D. Ariz. Dec. 6, 2022) ...................................... 14, 17

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
   888 F.3d 651 (4th Cir. 2018) ................................................................................ 8

*Wilson v. Garcia*,
   471 U.S. 261 (1985).......................................................................................... 25

**Rules**

Fed. R. Civ. P. 56............................................................................................... 8

**Other Authorities**

*Instructing Juries on Noneconomic Contract Damages*,
   81 Fordham L. Rev. 1221 (2012)............................................................................ 21

**INTRODUCTION**

Fairfax County School Board's ("FCSB") motion for partial summary judgment purports to be based on  the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022).  However, FCSB grossly exaggerates the holding in *Cummings*.  Indeed, FCSB's motion seems to be directed at a set of facts that has little resemblance to the facts at issue here. To be clear, the holding in *Cummings* is limited to a far narrower set of damages than FCSB attempts to exclude.  For example, and as FCSB admits, *Cummings* does not preclude recovery for damages associated with physical injuries, including the treatment costs for those injuries.  There is no dispute that B.R. is suffering from severe physical injuries, and has had and will continue to incur significant treatment costs associated with those injuries.  These physical injuries are well-documented in her medical records (dating back to the time of the incidents alleged in this action), and B.R. has offered the testimony of multiple experts who have opined that these injuries are a result of the alleged misconduct of FCSB and the non-moving individual Defendants.  On the other hand, FCSB has not retained any experts to refute the existence of any of these physical injuries.[1]

Although FCSB's motion seeks to prevent B.R. from recovering "emotional distress" damages, nowhere in the text of the motion does it identify which of B.R.'s injuries it asserts are for "emotional distress."  Instead, *in a footnote* related to the treatment cost issue, FCSB includes ██████████████████████ as an example of "emotional distress" damages for which treatment costs should not be allowed.  Mot. at 10 n.4.  Thus, this Court should not entertain any

---

[1] The only physical injury addressed by FCSB's expert is B.R.'s ███████████████, but even there the expert does not dispute the existence of the injury.  Instead, Dr. Seth Tuwiner did not offer an opinion on whether B.R. has ██████████████, *see* Ex. 13 (Dr. Tuwiner Depo. Tr.) at 227:5–10, but instead offered the more limited opinion of when that injury occurred, *see id.* at 226:20–227:4 (confirming that his "only opinion . . . regarding ████████████ . . . is that . . . [B.R.] does not have it as a result of . . . the alleged abuse between October 2011 and March 2012").

1

argument that ███, or any of B.R.'s other documented physical injuries, are "emotional distress" damages excluded under *Cummings*.[2]   However, because B.R.'s ███████ and her other physical injuries are so central to her overall damages claim, she will address why those are not properly characterized as "emotional distress" damages in this response brief.

FCSB has not retained any experts to refute the existence of any of these physical injuries.[3] Importantly, as it relates to the ███████ B.R. suffers from, one of FCSB's medical experts expressly admits that he has no basis to dispute that B.R. suffers from ███████, *see* Ex. 14 (Dr. DeRight Depo. Tr.) at 12:2–13:4, and the other retained expert eagerly offered in his report and at his deposition that he was not asked by FCSB to offer any opinion on the issue, *see* Ex. 9 (Dr. Tuwiner Expert Report) at 5 ("I am not offering an opinion as to whether B.R. suffers from ███████ . . . ."); *id.* at 12 ("I am not offering an opinion on whether or not B.R. has ███ in relation to the reported alleged events occurring 10/2011 through 3/2012 time frame."); Ex. 13 (Dr. Tuwiner Depo. Tr.) at 51:21–22 ("I'm not here to give an opinion about

---

[2] Substantive arguments cannot be raised solely in a footnote. *See Clark v. Brown*, 536 F. Supp. 3d 56, 66 n.16 (E.D. Va. 2021) ("To be sure, Defendant's initial threshold Motion to Dismiss contains a one sentence footnote stating, in conclusory fashion, that Count 3 fails to allege facts sufficient to establish the existence of a hostile work environment based on Plaintiff's protected whistleblowing activity.  This one sentence footnote does not, however, sufficiently raise or preserve this argument for review." (internal citation omitted)); *Marietta Area Healthcare, Inc. v. King*, No. 5:21-CV-25, 2022 WL 1073335, at *7 (N.D. W. Va. Apr. 8, 2022) ("The United States Court of Appeals for the Fourth Circuit has explained that ruling on an issue minimally addressed is 'unfair to [the opposing party] and would risk an improvident or ill-advised opinion on the legal issues raised.'  This reasoning has led district courts to decline to consider arguments only raised in a footnote."(internal citation omitted)).

[3] The only physical injury addressed by FCSB's expert is B.R.'s ███████, but even there the expert does not dispute the existence of the injury.  Instead, Dr. Seth Tuwiner did not offer an opinion on whether B.R. has ███████, *see* Ex. 13 (Dr. Tuwiner Depo. Tr.) at 227:5–10, but instead offered the more limited opinion of when that injury occurred, *see id.* at 226:20–227:4 (confirming that his "only opinion . . . regarding ███████ . . . is that . . . [B.R.] does not have it as a result of . . . the alleged abuse between October 2011 and March 2012").

. . . the ███ .").[4]

Nevertheless, FCSB seems to imply that ███ is nothing more than a type of "emotional distress." This remarkable position finds no support in the record. In fact, the only evidence in this case will be that ███ is one of B.R.'s physical injuries. B.R. has proffered testimony from multiple experts that will explain that not only does ███ cause physical changes to the ███, it causes other physical injuries that are documented in B.R.'s medical records including, *but not limited to*, ████████. Here again, not only has FCSB failed to proffer any expert testimony to refute B.R.'s experts' findings, its own expert admitted that "pharmacological . . . chemical changes ███ . . . drive th[e] symptoms" of ███. Ex. 13 (Dr. Tuwiner Depo. Tr.) at 103:4–104:3.

FCSB's other arguments fare no better. First, FCSB argues that the "logic" of *Cummings* precludes B.R. from seeking lost/diminished earnings. To be clear, *Cummings* does not address lost earnings damages at all. And, to the extent *Cummings* provides guidance on this issue, it is that plaintiffs in these actions should be afforded the full range of damage options traditionally available in breach of contract actions. And, as demonstrated below, there is no reasonable dispute that lost earnings damages are traditionally available in breach of contract actions.[5]

Next, FCSB argues that B.R. cannot recover the costs of her treatment for "emotional

---

[4] ████████████████

[5] FCSB has cited no case to the contrary. Instead, FCSB points to cases not allowing lost earnings for breach of contract where the alleged injury is "reputational harm." Of course, B.R. is not claiming that her "reputation" as a sex abuse victim has damaged her future earning capacity. To the contrary, and as supported by competent expert testimony, her claim is that her inability to sustain a career is "████████████████" *See* Ex. 6 (Young Expert Report) at 16.

3

distress." Most of the treatment costs B.R. is seeking are for her physical injuries, ranging from her ▮▮▮▮▮ to her ▮▮▮▮▮. Because there is no dispute that recovery for physical injuries in Title IX private enforcement actions remains available post-*Cummings*, there can also be no dispute that the cost of treatment for such injuries is also compensable.

As to the treatment costs for purely "emotional distress," this issue is also not squarely addressed in *Cummings*, and lower courts have reached different conclusions on this question. B.R. submits that allowance for these types of purely economic damages are more consistent with the *Cummings* framework for allowing recovery of damages typical in contract actions. Either way, the question of what type of conditions particular treatment relates to should be decided by a jury after full presentation of the evidence. Accordingly, FCSB's motion directed at B.R.'s treatment costs for "emotional distress" should be denied.

**RESPONSE TO FCSB'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS AND ADDITIONAL FACTS RELEVANT THERETO**

1.      Undisputed that B.R. initiated this lawsuit on July 12, 2019. Disputed to the extent that FCSB characterizes B.R.'s 269-paragraph Complaint as alleging only that "she had been raped, sexually assaulted, harassed, threatened, and bullied over a period of time during her seventh grade year at Rachel Carson Middle School, between October 2011 and February 2012." FCSB ignores the Complaint's allegations regarding FCSB's deliberate indifference to B.R.'s reports of the sexual abuse which is directly relevant to the Title IX claims at issue in FCSB's motion. *E.g.*, ECF No. 1 ¶¶ 2–13. FCSB also ignores the expert testimony detailing its numerous violations of Title IX. *See* Ex. 8 (Cantalupo Expert Report) at Opinions I & II; *see, e.g.*, Ex. 11 (Cantalupo Depo. Tr.) at 164:19–167:13, 176:17–178:2, 185:17–186:22. In any event, the Complaint speaks for itself.

2.      Undisputed.

4

3.      Disputed to the extent FCSB selectively quotes two paragraphs from the Second Amended Complaint.   B.R.'s two Title IX claims against FCSB incorporate hundreds of paragraphs of factual allegations regarding the injuries B.R. sustained as a result of FCSB's deliberate indifference to her reports of sexual abuse.  *See* ECF No. 155 ¶¶ 225, 237, 323.  Her claims are further supported by competent expert testimony.  Ex. 8 (Cantalupo Expert Report) at Opinions I & II]; *see, e.g.*, Ex. 11 (Cantalupo Depo. Tr.) at 164:19–167:13, 176:17–178:2, 185:17–186:22.[6]  In any event, the Second Amended Complaint speaks for itself.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed that B.R.'s Rule 26(a)(1) disclosures include a computation of her damages.  Disputed to the extent footnote 2 implies that B.R. may not continue to update or revise the calculation of damages.  Indeed, FCSB has insisted that B.R.'s ongoing treatment is relevant, and has demanded (and obtained) leave to continue its record collection from B.R.'s health care providers indefinitely.  *See* ECF No. 473.

7.      Undisputed.

8.      Disputed to the extent FCSB's characterization of B.R.'s answer to Interrogatory No. 16 implies that B.R.'s answer was improper.  Undisputed that B.R. claims both economic and non-economic damages; that B.R. continues to incur medical expenses and economic losses as her damages are ongoing; that the "Expense Chart" attached as an exhibit to B.R.'s answer to Interrogatory No. 16 lists B.R.'s medical and therapeutic expenses through 2020; that the "Expense Chart" attached as an exhibit to B.R.'s answer to Interrogatory No. 16 does not include alternative therapeutic modalities, travel expenses to and from treating healthcare providers, associated

---

[6] FCSB has not proffered any expert testimony to rebut the opinions of Ms. Canatalupo.

expenses for the service dog, tutor, and costs associated with relocating the family; and that B.R.'s answer to Interrogatory No. 16 explained that her "life long and future economic damages will be submitted in conjunction with [her] expert[s'] reports."

9.      Undisputed.  In any event, the "Expense Chart" attached as an exhibit to B.R.'s answer to Interrogatory No. 16 speaks for itself.

10.     Disputed that B.R. served only two expert reports "related to damages."  In addition to Alex Karras's and Gary Young's expert reports, and the voluminous medical records reflecting the injuries B.R. suffered as a result of FCSB's deliberate indifference to her reports of sexual abuse, *see generally* Exs. 15–27, B.R. served numerous expert reports "related" to the damages she suffered as a result of FCSB's Title IX violations.  Those additional expert reports include, for example, Dr. Eileen Ryan's and Dr. Joshua Cisler's expert reports and rebuttal expert reports.  *See* Ex. 1 (Dr. Cisler Expert Report); Ex. 2 (Dr. Cisler Rebuttal Report); Ex. 3 (Dr. Ryan Expert Report); Ex. 4 (Dr. Ryan Rebuttal Report). ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



        ▮▮▮▮    FCSB has proffered no evidence, expert or otherwise, to rebut these findings; indeed, FCSB's own expert admitted that that he "can't dispute" that "pharmacological . . . chemical changes ▮▮▮▮ . . . drive th[e] symptoms" of ▮▮▮▮. Ex. 13 (Dr. Tuwiner Depo. Tr.) at 103:4–104:3.

        With respect to FCSB's characterization of Mr. Karras's opinions, it is undisputed that Mr. Karras's expert report opines on the costs associated with B.R.'s future medical treatment and projects costs of $1,543,622.46. B.R. does dispute that Mr. Karras "acknowledged that all the expenses listed in his report are associated with treatment of psychiatric conditions or physical manifestations of psychiatric conditions." Mr. Karras testified at his deposition that he relied on the diagnoses of ▮▮▮▮ reflected in B.R.'s medical records and in other experts' reports and that the expenses listed in his report include treatment for B.R.'s ▮▮▮▮. Ex. 12 (Karras Depo. Tr.) at 92:4–98:17. As demonstrated by Dr. Cisler's and Dr. Ryan's unrefuted expert opinions, ▮▮▮▮ is a physical injury. Ex. 1 (Dr. Cisler Expert Report) at Section III.C; *see* Ex. 2 (Dr. Cisler Rebuttal Report) at 1; Ex. 4 (Dr. Ryan Rebuttal Report) at 1.

        11.    Undisputed that B.R. provided an expert report from Mr. Gary Young, who opined on what B.R.'s earnings would have been as an adult but for the "▮▮▮▮ ▮▮▮▮" B.R. suffers as a result of FCSB's deliberate indifference

to her reports of sexual abuse.  Ex. 16 (Young Expert Report) at 16.  Mr. Young's expert opinions regarding B.R.'s lost employment opportunities and diminished earnings speak for themselves.

## STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. Mgmt. Consulting, Inc.*, 636 F. Supp. 3d 610, 614 (E.D. Va. 2022) (Alston, J.) (alterations adopted and internal quotation marks omitted); *accord Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).  "A disputed fact presents a genuine issue if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Mgmt. Consulting, Inc.*, 636 F. Supp. 3d at 614 (internal quotation marks omitted).  "The moving party bears the initial burden to show the absence of a material fact." *Id.* (internal quotation marks omitted). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (quoting *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008)).

"On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party." *Id.*  "This is a fundamental principle that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists." *Id.* (internal quotation marks omitted).  "At the summary judgment stage, the Court's function is not itself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (alterations adopted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## ARGUMENT

I. **B.R. Can Recover Damages for Her Physical Injuries, Including Her** ▮▮▮▮

FCSB does not dispute that B.R. can recover damages for her physical injuries.  Yet, by

way of a footnote it appears to ask this Court to decide, as a matter of law, that B.R. cannot recover damages related to her ███, analogizing it to the amorphous "emotional distress" damages precluded by *Cummings*.[7]

### A. It is undisputed that *Cummings*'s holding does not, in any way, bar recovery of damages for physical injuries

The Court in *Cummings* precluded damages solely for "emotional distress," finding that such damages were not traditionally available in breach of contract actions. *See Cummings*, 596 U.S. at 221–22. Accordingly, the Court did not allow the plaintiff in *Cummings* to recover for "humiliation, frustration, and emotional distress," the only damages sought in that case. *See id.* at 217. However, damages for physical injury are among the traditionally available contract remedies. *See, e.g.*, Restatement (Second) of Contracts § 347 cmt. c. (Am. Law Inst. 1981) ("Consequential losses include such items as injury to person or property resulting from defective performance."). For this reason, courts have held post-*Cummings* that Title IX plaintiffs may recover damages stemming from physical injuries. *See Doe ex rel. Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 590 (D.R.I. 2022) (denying defendant's motion for summary judgment on Title IX plaintiff's damages for medical expenses for treatment of physical injuries because "many sources to which the Supreme Court referred in *Cummings* also noted the availability of damages for physical injury in breach of contract actions" and "these damages have been available in breach of contract actions"); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) ("Plaintiffs very clearly requested medical expenses, which the allegations attribute to treatment for physical injuries they suffered as a result of bullying, as well as treatment for the psychological injuries. As the Court sees it, these are

---

[7] The applicability of *Cummings* to Title IX cases is discussed in Section IV, *infra*.

compensatory damages for economic losses, which *Cummings* did not preclude.”(internal citation omitted)); *Doe v. Town of N. Andover*, No. 1:20-cv-10310-IT, 2023 WL 3481494, at *12 (D. Mass. May 16, 2023) (“*Cummings* does not bar [the plaintiff’s] Title IX claims wholesale where she seeks remedies beyond emotional distress damages.”).  FCSB does not argue otherwise.  *See* Mot. at 10 n. 4.

### B.   B.R. is suffering from numerous physical injuries

FCSB’s motion ignores the fact that this is not an “emotional distress” case.  Indeed, there can be no dispute[8] that B.R. is suffering from numerous physical injuries resulting from the abuse, neglect, failure to protect, etc. alleged in this matter.

For example, B.R’s medical records document the following physical injuries, among others: ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[8] The “no dispute” language herein is directed at the existence of the injuries.  The cause of those injuries and the alleged misconduct are admittedly facts in dispute, which will need to be decided by the jury.

████████████████████████████████████████████████████████████

████████████████████████████████████████████

The existence of these injuries is not in dispute.

**C.**      ████      **is a physical injury, compensable in this action**

Notwithstanding the above, FCSB appears to be asking that damages related to B.R.'s ████ be excluded as part of the category of "emotional distress" damages discussed in *Cummings*. However, FCSB has offered no evidence or testimony to dispute the opinion of B.R.'s experts who have testified that ████ is itself a physical injury, and that it causes other physical injuries. In fact, FCSB's own expert agreed, admitting that that he "can't dispute" that "pharmacological . . . chemical changes ████████ . . . drive th[e] symptoms" of ████. Ex. 13 (Dr. Tuwiner Depo. Tr.) at 103:4–104:3. Hence, damages resulting from it are compensable in this action.

The unrebutted testimony from B.R.'s experts establishes that ████ is a physical injury, and that it causes other physical injuries and symptoms such as the ones documented in B.R.'s medical records. For example, B.R. has proffered the expert testimony of Dr. Joshua Cisler who concluded that B.R. has "████████████████████████." Ex. 1 (Dr. Cisler Expert Report) at Section III.C. Dr. Cisler is a clinical psychologist with specialized training and research on trauma and how it "████████████████" *Id.* at Section I. He has done extensive research ████████████████████████████████████ ████. *Id.*

Dr. Cisler opines that based on B.R.'s ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████," and "████████████████████████████ ████████████████████████," *Id.* at Section III.C. He further opines that "████████

11



" *Id.* at Section III.A.

As detailed in Dr. Cisler's expert report, numerous peer-reviewed studies show that individuals with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

" *Id.* at Section III.B; *see* Ex. 2 (Dr. Cisler Rebuttal Report) at 1 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Again, there will be no expert evidence to the contrary as FCSB elected not to retain an expert to testify about whether B.R. has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In other words, these issues are undisputed, and defeat FCSB's motion to the extent it seeks to preclude recovery of damages related to B.R.'s ▮▮▮▮.

Similarly, B.R. has also put forth the expert testimony of Dr. Eileen Ryan on this issue. Dr. Ryan is a clinical psychiatrist, who also serves as the Vice Chair of Clinical Services for the Department of Psychiatry at the Ohio State University School of Medicine and Wexner Medical Center. Ex. 3 (Dr. Ryan Expert Report) at App'x A. She reviewed B.R.'s medical records and conducted nearly 16 hours of forensic medical evaluation of B.R. over a two-week period earlier this year. *Id.* at 1. Dr. Ryan also interviewed B.R.'s mother, brother and fiancée, as well as one of B.R.'s treating physicians. *Id.*

Based on her extensive work, Dr. Ryan opined that B.R.'s "

 *Id.* at 36 (emphasis added).  Dr. Ryan further opined that " ███

███████████████████████████████████████████ "  Ex.

4 (Dr. Ryan Rebuttal Report) at 1.  Further, it is Dr. Ryan's "███████████████

███████████████████████████████████

█████████████████████████ "  Ex. 3 (Dr. Ryan Expert Report)

at 36.  Dr. Ryan also opined that B.R. has suffered other physical injuries associated with her

███, including ██████████████████████████████████████

████████████████████ [10]  *Id.* at 37.

        As detailed in the facts section above, B.R.'s history of other physical injuries flowing from

the incidents alleged in this case are well-documented throughout her medical records.  *See* Section

I.B., *supra*.  Oddly, none of this is mentioned in FCSB's motion,[11] which creates the misleading

picture that this is merely an "emotional distress" damages case analogous to the claims for

"humiliation, frustration, and emotional distress" presented in *Cummings*.  Obviously, it is not.

---

[9] Tellingly, none of the FCSB's experts dispute that B.R. has ████.  Dr. Jonathan DeRight
admitted as much, *see* Ex. 14 (Dr. DeRight Depo. Tr.) at 12:2–13:4, while Dr. Tuwiner stated that
he was not offering any opinion on whether B.R. has ████, *see* Ex. 13 (Dr. Tuwiner Depo. Tr.)
at 51:21–22 ("I'm not here to give an opinion about . . . the ████."); *see also* Ex. 9 (Dr. Tuwiner
Expert Report) at 5 ("I am not offering an opinion as to whether B.R. suffers from ████████
████████████ . . . ."); *id.* at 12 ("I am not offering an opinion on whether or not B.R. has
████ in relation to the reported alleged events occurring 10/2011 through 3/2012 time frame.").

[10] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

[11] FCSB's decision to not inform the Court of essentially *any* of the record on the medical
issues central to its motion is an implicit admission that this evidence and related expert testimony
defeats its motion.

Each of the cases FCSB cites involved damages that were not tied to a specific diagnosis of physical injuries.  In the case that it relies on most heavily, *Doe v. Fairfax County School Board*, No. 1:18-cv-00614-MSN-IDD, 2023 WL 424265 (E.D. Va. Jan. 25, 2023), the plaintiff only proffered invoices relating to expenses for treatment for "stomach-related issues" and appears to have presented no medical expert evidence to support her vague assertion.  *See* 2023 WL 424265, at *6.  The other cases relied on by FCSB likewise do not involve the type of evidence of physical injuries present here.

For example, the plaintiff in *Loera v. Kingsville Independent School District*, No. 2:21-CV-00031, 2023 WL 6131459 (S.D. Tex. Feb. 2, 2023), only proffered evidence that he "had been diagnosed with depression and anxiety" and suffered "shame and embarrassment."  *See* 2023 WL 6131459, at *4, *report and recommendation adopted in part and rejected in part*, 2023 WL 6130548, at *7 (S.D. Tex. Sept. 19, 2023).  The plaintiff in *K.G. v. Woodford County Board of Education*, No. 5:18-555-DCR, 2022 WL 17993127 (E.D. Ky. Dec. 29, 2022), only proffered evidence that he had been treated for "anxiety, depression, diet, anger, fear, obsessive thoughts, and stress."  *See* 2022 WL 17993127, at *1.  The plaintiff in *Unknown Party v. Arizona Board of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17459745 (D. Ariz. Dec. 6, 2022), limited his claim to two categories of damages: "emotional distress or reputational harm."  *See* 2022 WL 17459745, at *5 n.5.  And the plaintiffs in *T.F. v. Greenwood ISD*, No. 7:20-CV-215-ADA, 2022 WL 17477597 (W.D. Tex. Dec. 5, 2022), "made no actual claim for damages" and "present[ed] no injuries other than the losses to [a] non-party."  *See* 2022 WL 17477597, at *9.

In summary, the fact that (1) the undisputed evidence demonstrates that B.R. has suffered numerous physical injuries, including but not limited to ████ ; and (2) damages for physical injuries, including but not limited to ████ , are compensable under Title IX, defeats FCSB's

14

motion.  Ultimately, a jury will have to decide whether FCSB's alleged violations of Title IX, as well as the acts of the individual Defendants, were the proximate cause of those injuries.

## II.    B.R. Can Obtain Damages for Diminution of Earning Capacity and Future Earnings Caused by Her Physical Injuries

FCSB argues that B.R. is precluded from seeking damages for diminution of earning capacity and future earnings.  Its argument is two-fold.  First, FCSB argues that *Cummings* precludes these types of damages.  Second, FCSB argues that these damages are unavailable here because B.R. "has not pled any specific job opportunities that were available to her *in the [seventh] grade*."  Mot. at 12 (emphasis added).

As set forth below, the first argument finds no support in *Cummings*.  The second argument is not supported by the law and, if adopted by this Court, would lead to the absurd result that a defendant would be immune from lost earnings damages, regardless of the severity of the injury its conduct causes, so long as the damage is inflicted before its victim enters the work force.

### A.    *Cummings* does not bar lost earnings damages

*Cummings* does not in any way address, let alone bar, the recovery of economic damages associated with lost earnings.  Indeed, as discussed above, the holding in *Cummings* relates to "emotional distress" damages.  *Cummings* does, however, provide a structural framework for determining the damages available in private actions to enforce statutes enacted pursuant to the Spending Clause, holding that defendants found to have violated these statutes are liable for all "the *usual* contract remedies in private suits."  *See Cummings*, 596 U.S. at 221 (emphasis in original).

There is no reasonable dispute that damages for lost earnings are traditionally available contract remedies in private suits.  Indeed, the case FCSB relies on most heavily throughout its brief unequivocally states that "[c]onsequential damages for lost earning capacity may be awarded

15

in breach of contract cases." *Fairfax Cnty. Sch. Bd.*, 2023 WL 424265, at *6 (citing 24 Williston on Contracts § 66.4 (4th ed. 2022)); *accord Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 288–89 (4th Cir. 2000) ("[N]o court—anywhere—has held that a plaintiff cannot recover consequential damages if he has alleged and proved that breach of an employment contract resulted in the loss of future identifiable professional opportunities. . . . ." (internal quotation marks omitted)).

Nevertheless, FCSB relies on the line of cases holding that a plaintiff cannot seek damages for lost earnings based on "damages to reputation." These cases are irrelevant to B.R.'s. Specifically, B.R. is not claiming lost earning capacity because she now has the "reputation" of a sexual assault victim. As FCSB well knows, B.R.'s claim is that she is unable to sustain meaningful employment because she suffers from ███████████████████████████████ ████████████████████████. Her claim is supported by competent expert testimony, *none of which is refuted by expert testimony from any of the Defendants*.

Relying on Dr. Ryan's ██████ diagnosis and opinion (again, undisputed by any defense expert) that B.R.'s "████████████████████████████████████████████ ████████████████████████████████," Mr. Young opines that B.R.'s "████████████████ ████████████████████████████████████" Ex. 6 (Young Expert Report) at 5–6. According to Mr. Young, B.R. "████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████" Ex. 6 (Young Expert Report) at 16. FCSB has elected not to offer any expert opinion in response to Mr. Young's opinion.

The evidence B.R. has marshalled in support of her claim for lost employment opportunities and diminished wages distinguishes this case from the evidence of "general difficulty obtaining employment" in *Doe v. Fairfax County School Board*. *See* 2023 WL 424265, at *6. For

example, B.R. has identified particular employment opportunities she lost or was unable to maintain because of her physical injuries, including her work ████████████████

████████████████████████████████████████████████████████████████

████████████████ . Ex. 10 (B.R. Depo. Tr. (Vol. 1)) at 159:20–162:8, 179:7–184:8.

Mr. Young's expert opinion is that B.R. would have held a professional career—like a physician or an attorney—but for the physical harm B.R. suffered as a result of FCSB's Title IX violations. *See* Ex. 6 (Young Expert Report) at 12. And Mr. Young specifically identifies the symptoms of B.R.'s ███████ which render her incapable of working as a physician or an attorney, including a "████████████████████████████████████████████████████

████████████████████████████████████████████████████" Ex. 6 (Young Expert Report) at 6, 10–13.

And unlike the plaintiffs in the other cases cited by FCSB, B.R.'s lost employment opportunities and diminished earnings are the result of her physical injuries, not the result of "reputational harm." In *Rice v. Community Health Association*, for example, a doctor sued the hospital that had employed him for breach of contract after the hospital "suspended [the doctor] for alleged sexual harassment, refusal to treat certain patients, and other violations of the employment agreement and employee handbook." 203 F.3d at 285. After trial, the jury awarded the doctor consequential damages for lost professional opportunities. *See id.* at 285, 287. On appeal, the Fourth Circuit vacated the consequential damages award because the doctor's claim "constitute[d] only a nonspecific allegation of damage to reputation" which was "simply too speculative" to have been reasonably anticipated by the contracting parties. *Id.* at 289–90 (internal quotation marks omitted).

And in *Unknown Party v. Arizona Board of Regents*, the plaintiff, a college athlete, brought

a Title IX claim against the Arizona Board of Regents ("ABOR"), seeking damages for lost employment opportunities as a college wrestling coach caused by the **reputational harm** he suffered as a result of ABOR's Title IX violation.  *See* 2022 WL 17459745, at \*1-2.  In particular, the plaintiff alleged that his unlawful expulsion from college for alleged sexual misconduct foreclosed his ability to become a college wrestling coach.  *See id.* at \*1 nn.1-2; *see also Unknown Party v. Ariz. Bd. of Regents*, 641 F. Supp. 3d 702, 708, 726–27 (D. Ariz. 2022) (denying motion to exclude the plaintiff's expert's opinions "relating to [the plaintiff's] alleged economic loss, or 'the economic harm resulting from ABOR's unlawful expulsion of [the plaintiff]'" (alteration adopted and internal quotation marks omitted)).

Unlike the plaintiffs in *Rice* and *Unknown Party*, B.R. does not allege that FCSB's deliberate indifference to the sexual abuse she suffered merely tarnished her "reputation."  Rather, B.R. claims, and her expert concludes, that the permanent physical injuries she suffered as a result of the misconduct alleged here, including but not limited to her ███, have foreclosed her ability to have a professional career as a physician, an attorney, or any other occupation.  This case is therefore nothing like *Rice* and *Unknown Party* where the plaintiffs' consequential damages were caused by mere "reputational harm" stemming from the defendants' alleged unlawful actions.

**B.      B.R. has adduced sufficient evidence to support her lost earnings claim**

Finally, this Court should decline to adopt FCSB's position that damages for lost employment opportunities or diminished earnings attributable to physical injuries suffered by children as a result of school officials' deliberate indifference to known acts of student-on-student sexual misconduct are *per se* too "speculative" to recover in Title IX cases because it will be years after the violations before they enter the work force.  It would be unconscionable and plainly contrary to Congress's intent of "provid[ing] individual citizens effective protection against [discriminatory] practices," *see Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979), if school

officials were immunized from any portion of the permanent and life-altering injuries suffered by middle and high school-aged children simply because of their age at the time of the Title IX violation.[12]

### III.   B.R. Can Recover the Costs of Her Medical Treatment

FCSB sets up a classic "straw man" argument in its effort to preclude B.R.'s effort to recover the costs of her medical care.  Specifically, FCSB erroneously characterizes B.R.'s medical treatment costs damages as being for "emotional distress," and then argues that *Cummings* bars recovery for them.

FCSB does not argue that measurable economic damages, such as the cost of treatment for physical injuries flowing from a breach of contract, are not "traditionally available."  *See Cummings*, 596 U.S. at 230.  Here, B.R. is seeking the cost of treatment for all of her injuries, including her well-documented *physical* injuries.  As discussed above, B.R. is suffering from physical injuries including, but not necessarily limited to, ██████████████████████████ ████████████████████████████████.  And, as FCSB itself admits, it is not seeking summary judgment for the costs of medical treatment for physical injuries:

> The School Board, however, is not asking for summary judgment as to any expenses that Plaintiff can prove were incurred in the diagnosis or treatment of Plaintiff's claimed ████.[13]  This motion instead applies only to those medical

---

[12] This is a particularly unsettling position for *this* party to make, given that its core mission is to educate the youth of this community to prepare them to be productive members of society. To create a rule that allows FCSB immunity from damages where its conduct prevents an individual from achieving their full potential because it is inflicted before she can prove "specific job opportunities available" to her as a seventh grader would indeed be perverse.  Alas, FCSB has in other cases exhibited a disconnect between its charge to serve the public and its aggressive litigation position.  *E.g.*, *Doe v. Fairfax Cnty. Sch. Bd.*, 10 F.4th 406, 412 (4th Cir. 2021) (Wynn, J., concurring in the denial of rehearing en banc) (rejecting the notion that schools faced with lawsuits related to sexual assaults get "one free rape").

[13] FCSB does not explain why treatment costs for ████ are recoverable, yet the treatment costs for B.R.'s other physical injuries are not.  Of course, there is no such distinction.

expenses that Plaintiff claims were incurred in the diagnosis or treatment of her emotional distress, including diagnosis and treatment of her alleged ███████████ ███████████████████████████████████.

*See* Mot. at 10 n.4.

Hence, FCSB's motion for partial summary judgment on treatment costs is largely directed at claims different than the ones B.R. is making.  Treatment costs for physical injuries are clearly compensable.  The cost for B.R.'s past medical expenses are documented in her medical records.  For future costs, B.R. proffered the testimony from a life care planning expert, Alex Karras.  Mr. Karras is a certified life care planner.  Ex. 12 (Karras Depo. Tr.) at 23:7–23:14.  He reviewed B.R.'s medical records, and had conferences with two of her experts (Dr. Ryan and Dr. Binks).  *See* Ex. 7 (Karras Expert Report) at 1–7.  Based on his evaluation, he estimated future treatment costs, ████████████████████████ at just over $1.5 million.  *Id.* at 19; *see* Ex. 12 (Karras Depo. Tr.) at 94:14–100:13.  Again, FCSB has offered no expert testimony to the contrary.

To the extent there is a dispute over whether some small portion of B.R.'s treatment costs are related solely to "emotional distress" and are recoverable, that issue is not squarely addressed in *Cummings*.  The Court's holding in *Cummings* precludes only the recovery of generalized "emotional distress damages," not quantifiable actual costs of treatment for mental conditions caused by defendants' unlawful actions.  596 U.S at 230.  The petitioner in *Cummings* made general allegations that she had suffered "humiliation, frustration, and emotional distress" as a result of a physical therapy provider's refusal to provide her with an American Sign Language interpreter, *id.* at 216–17, and "stipulate[d] that her damages [were] limited to 'garden variety' emotional distress,"[14] *see Cummings v. Neighborhood Assistance Corp. of Am.*, No. 3:18-CV-

---

[14] As a law review article cited in *Cummings* explains, legal treatises describe "emotional distress" in the context of contract damages using various terms without distinguishing them,

1746-X, 2023 WL 5154987, at *1 (N.D. Tex. Aug. 10, 2023).  She did not present evidence that the defendant caused her to have a mental condition for which she had actual costs to treat.

"Emotional distress" damages operate much like "punitive damages" in that they are an amorphous, open-ended amount of damages that concerned the Court in *Cummings* because they are damages that defendants cannot anticipate when taking federal dollars.  Indeed, in *Cummings*, the Court looked to its decision in *Barnes v. Gorman*, 536 U.S. 181 (2002), where the Court barred punitive damages in private enforcement actions under Spending Clause antidiscrimination statutes as the foundation for reaching its decision in *Cummings*.  596 U.S. at 221–22.  Generalized "emotional distress" and punitive damages have few limits, are not based in actual monetary losses incurred by plaintiffs, and are far different than actual costs—including medical costs for mental health treatment—directly incurred due to the defendants' conduct, which are analogous to contract compensatory damages.

B.R. acknowledges, however, that district courts have reached different conclusions on this question.  At least one court has held that actual medical costs—regardless of whether they are due to physical injuries or not—are compensatory damages that are not barred by *Cummings*.  *See, e.g.*, *Pennington*, 2023 WL 348320, at *2.  That court reasoned:

> Plaintiffs did not only request emotional damages, as the School District contends. Plaintiffs very clearly requested medical expenses, which the allegations attribute to treatment for physical injuries they suffered as a result of bullying, *as well as treatment for the psychological injuries* (*see, e.g.*, Doc. 73, p. 10) (alleging that James R. was stabbed in the arm with a pencil by another student and had to have it surgically removed *and that James R. was hospitalized due to suicidal ideations*). As the Court sees it, these are compensatory damages for economic losses, which *Cummings* did not preclude. The School District's contention that Plaintiff is only claiming emotional damages is therefore without merit.

including "mental suffering," "mental distress," "mental anguish," "mental disappointment," "emotional trauma," "emotional disturbance," and "injury to a person's feelings."  David A. Hoffman & Alexander S. Radus, *Instructing Juries on Noneconomic Contract Damages*, 81 Fordham L. Rev. 1221, 1222 n.2 (2012); *see Cummings*, 596 U.S. at 228, 230 (citing same).

*Id.* at \*3 (emphasis added).  Courts that have held that medical expenses for purely emotional conditions are barred by *Cummings* do so by inferring that the *Cummings* Court would have precluded these damages as extensions of its bar against recovery for "emotional distress."  *See, e.g.*, *Doe*, 2023 WL 424265, at \*6.

The more persuasive reasoning is that *Cummings* only bars generalized and unquantifiable "emotional distress" that occur in the absence of a physical injury, and not economic damages based in actual treatment costs for mental conditions caused by the defendant's conduct as B.R. seeks in this case.  Even if the Court were to find that treatment costs for "emotional distress" type conditions are not compensable, a jury will have to decide how to allocate B.R.'s treatment costs between her physical and emotional distress injuries based on the evidence adduced at trial.

## IV.    *Cummings* Does Not Apply To Title IX Claims

In *Cummings*, the Court was tasked with deciding what damages are available to a private plaintiff seeking enforcement of the Rehabilitation Act of 1973 (the RA) and the Affordable Care Act (the ACA).  *Cummings*, 596 U.S. at 217–18, 230 ("[W]e hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes *we consider here*." (emphasis added)).  Admittedly, lower courts that have considered the applicability of *Cummings* to Title IX actions have concluded that "emotional distress" damages are likewise barred under Title IX.[15]  None of which are binding as the Fourth Circuit has not yet weighed in on this issue.

---

[15] *See, e.g.*, *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614-MSN-IDD, 2023 WL 424265, at \*34 & n.1 (E.D. Va. Jan. 25, 2023) (collecting cases).  Other courts have declined to extend *Cummings*'s holding beyond the RA and the ACA.  *See Doe v. Purdue Univ.*, No. 4-18-CV-89-JEM, 2022 WL 2828238, at \*4 (N.D. Ind. July 20, 2022) ("Because *Cummings* was not a Title IX action, it does not make evidence of emotional distress or harm inadmissible in this case."); *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-CV-2080-D, 2022 WL 1470957, at \*3 n.2 (N.D. Tex. May 10, 2022) ("Because [the plaintiff's] claims are not limited to the Rehabilitation Act, *Cummings* does not alter the court's analysis as it relates to her other claims.").

While *Cummings* referenced the "Spending Clause antidiscrimination statutes"—including, Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972 (Title IX), the RA, and the ACA—it did not undertake a separate analysis for Title IX actions. Specifically, because it was not presented in the case before it, the Court did not consider the implications flowing from the fact that Title IX was passed pursuant to Congress's power under **both** the Spending Clause (not allowing for emotional damages) **and** its power under Section 5 of the Fourteenth Amendment to enforce the Equal Protection Clause (which **allows for emotional damages**).

The RA and the ACA, the statutes at issue in *Cummings*, were both passed pursuant to only Congress's Spending Clause authority and courts have held that they specifically were not passed pursuant to Congress's authority to implement statutes to enforce the Equal Protection Clause (*i.e.*, Section 5 of the Fourteenth Amendment).   *See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) ("Because [Section] 504 of the Rehabilitation Act and Title II of the ADA offer essentially the same protections for people with disabilities, our conclusion that Title II of the ADA as a whole exceeds Congress's authority under [Section] 5 of the Fourteenth Amendment *applies with equal force to [Section] 504 of the Rehabilitation Act*. However, unlike Title II of the ADA, [Section] 504 was enacted pursuant to Congress's authority under the Spending Clause of Article I." (emphasis added and internal citation and footnotes omitted)); *Kadel v. N.C. State Health Plan for Tchrs & State Emps.*, 12 F. 4th 422, 437–39 (4th Cir. 2021) (explaining that the ACA's non-discrimination provision "unequivocally conditions the receipt of federal financial assistance upon a state's waiver of sovereign immunity," which "flows" from Congress's authority under the Spending Clause, and which is distinct from "Congress's authority to abrogate a state's sovereign immunity" under Section 5 of the Fourteenth

Amendment).

Unlike the RA and the ACA, Title IX was not **only** enacted pursuant to Congress's Spending Clause authority but also its Section 5 authority. *See Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) ("Since Title IX also proscribes gender discrimination in education, it follows that Congress had the authority, pursuant to Section 5, to make Title IX applicable to the states."); *Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997) ("Because the Supreme Court has repeatedly held that [Title IX's] *substantive* provisions proscribe gender discrimination in education, we are unable to understand how a statute enacted specifically to combat such discrimination could fall outside the authority granted to Congress by [Section] 5." (internal citation omitted)); *Thorpe v. Va. State Univ.*, 6 F. Supp. 2d 507, 516 (E.D. Va. 1998) (finding that Title IX "may be regarded as an enactment to enforce the Equal Protection Clause" because "Congress could have enacted Title IX under Section 5 of the Fourteenth Amendment" (internal quotation marks omitted)); *see also Escue v. N. Okla Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) ("Pursuant to its power under section five of the Fourteenth Amendment, Congress abrogated the States' Eleventh Amendment immunity under Title IX . . . ." (internal quotation marks omitted)).[16]

This distinction, that Title IX was also passed pursuant to Section 5 of the Fourteenth Amendment, is an important one. Statutes passed pursuant to Congress's authority to enact

---

[16] Congress can, and often does, rely on multiple sources of constitutional authority when enacting legislation. *See Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726–27 (2003) ("In enacting the FMLA, Congress relied on two of the powers vested in it by the Constitution: its Article I commerce power and its power under § 5 of the Fourteenth Amendment to enforce that Amendment's guarantees."). For this reason, the Supreme Court's recognition in *Cummings* that the enactment of Title IX was within Congress's Spending Clause authority does not foreclose the conclusion that Title IX was also a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment.

legislation to enforce rights granted under the Equal Protection Clause, like Title IX, allow for damages in any context, unconfined to traditional contract damages.  There is a "traditional presumption 'that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."  *Norfolk S. Ry. Co. v. Brotherhood of Locomotive Eng'rs*, 217 F.3d 181, 188 (4th Cir. 2000) (quoting *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 70–71 (1992)).  For example, courts have found that Section 1983 was passed pursuant to Congress's authority to enact legislation to protect rights granted by the Equal Protection Clause (*i.e.*, Section 5 of the Fourteenth Amendment).  *See Wilson v. Garcia*, 471 U.S. 261, 277 (1985) ("The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every 'person' subject to the jurisdiction of any of the several States.")(footnote omitted); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 871 (4th Cir. 1999) ("[I]t is indisputable that Congress enacted [the Civil Rights Acts of 1871 and 1875] for the precise purpose of remedying massive and systemic violations of equal protection by the States.").  A Section 1983 plaintiff may therefore recover both compensatory and punitive damages.  *E.g.*, *Smith v. Wade*, 461 U.S. 30, 34-36 (1983).

Because Title IX is a valid exercise of Congress's Section 5 power to enact legislation in furtherance of the Equal Protection Clause, *Cummings*'s "contract-law analogy" for Spending Clause legislation, *see* 596 U.S. at 219, does not "alter the traditional presumption in favor of any appropriate relief for violation of a federal right," *see Franklin*, 503 U.S. at 73.  B.R. is therefore able to recover emotional distress damages in her Title IX claims against FCSB.  FCSB's motion should be denied.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny FCSB's Motion for Partial Summary

Judgment on Title IX Damages.

Dated:  November 22, 2023

Respectfully submitted,

By:/s/ *Jonathan Fahey*
    JONATHAN L. FAHEY
    BROWN RUDNICK
    602 Thirteenth Street NW
    Washington, DC  20005
    Telephone: (202) 536-1702
    jfahey@brownrudnick.com

    ALISON L. ANDERSON
    (Pro Hac Vice)
    BOIES SCHILLER FLEXNER LLP
    725 S. Figueroa, 31st Floor
    Los Angeles, CA  90017
    Telephone: (213) 629-9040
    Facsimile:  (213-629-9022
    alanderson@bsfllp.com

    ANDREW S. BRENNER
    (Pro Hac Vice)
    BOIES SCHILLER FLEXNER LLP
    100 SE 2nd Street, Suite 2800
    Miami, FL  33131
    Telephone: (305) 539-8400
    Facsimile:  (305) 539-1307
    abrenner@bsfllp.com
    slicata@bsfllp.com

    *Counsel for Plaintiff, B.R*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 22, 2023, I electronically filed this document with

the Clerk of the Court using the CM/ECF system, which will send a notification of such filing

(NEF) to counsel of record for all Parties.

By: <u>/s/ *Jonathan Fahey*</u>
JONATHAN LEO FAHEY
BROWN RUDNICK
602 Thirteenth Street NW
Washington, DC  20005
Telephone: (202) 536-1702
jfahey@brownrudnick.com

27