**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| | ) | |
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:19-cv-00917-RDA-WEF |
| v. | ) | |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO ALL DEFENDANTS'
<u>MOTIONS TO DISMISS FOR FRAUD ON THE COURT</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.     INTRODUCTION ..................................................................................... 1

II.    LEGAL STANDARD.............................................................................. 5

III.   ARGUMENT ......................................................................................... 8

      A.    Defendants' Arguments that Plaintiff's Complaint, and Amendments Thereto, Constitute a "Fraud on the Court" is Procedurally Improper, and Substantively Unsupported ....................................................................... 9

      B.    The "Narratives" Plaintiff Gave to Her Experts Were Not a "Fraud on the Court"............................................................................................. 13

      C.    The Recently-Produced Facebook Messages Do Not "Reveal" Plaintiff's "Perjury and Falsehoods" ...................................................................... 16

      D.    Plaintiff Did Not Commit "Fraud on the School System, Police and Federal Government"........................................................................................ 18

      E.    FCSB Uses Misleading Innuendo and Its Own Falsehoods to Accuse Plaintiff of "Prevarication, Obfuscation and Falsehoods During Discovery" ................... 22

      F.    Dismissal Would Violate Plaintiff's Seventh Amendment Rights ...................... 26

IV.   CONCLUSION...................................................................................... 27

CERTIFICATE OF SERVICE ......................................................................... 29

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Langley,*
    2023 WL 2588559 (E.D. Va. Mar. 21, 2023) ........................................................................ 9

*Asterbadi v. Leitess,*
    176 F. App'x 426 (4th Cir. 2006) ...................................................................................... 5

*California v. Green,*
    399 U.S. 149 (1970) ................................................................................................ 6, 11

*Cleveland Demolition Co. v. Azcon Scrap Corp.,*
    827 F.2d 984 (4th Cir. 1987) ........................................................................................... 6

*Dice v. Akron, Canton & Youngstown R. Co.,*
    342 U.S. 359 (1952) ..................................................................................................... 26

*Dimick v. Schiedt,*
    293 U.S. 474 (1935) ..................................................................................................... 26

*Fox ex rel. Fox v. Elk Run Coal Co.,*
    739 F.3d 131 (4th Cir. 2014) ............................................................................. 6, 11, 13, 16

*Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters,*
    675 F.2d 1349 (4th Cir. 1982) ......................................................................................... 6

*In re Harlow v. Wells Fargo & Co.,*
    2022 WL 17586716 (Bankr. W.D. Va. Dec. 12, 2022) ............................................................ 5

*Jafari v. Old Dominion Mgmt. Co.,*
    2015 WL 13039548 (E.D. Va. Oct. 20, 2015) ....................................................................... 5

*Jeffrey M. Brown Assocs., Inc. v. Rockville Center Inc.,*
    7 F. App'x 197 (4th Cir. 2001) ....................................................................................... 10

*Martin v. Commonwealth,*
    Record No. 1966-04-4, slip op. at __ (Va. Ct. App. Sept. 6, 2005) .......................................... 17

*McBride v. Commonwealth,*
    605 S.E.2d 773 (Va. Ct. App. 2004) ................................................................................. 17

*Motley v. Virginia,*
    2018 WL 1472491 (E.D. Va. Mar. 26, 2018), *aff'd,* 741 F. App'x 171 (4th Cir. 2018) .......... 10

*N. S., Only Child of Decedent Stokes v. Kansas City Bd. of Police Comm'rs,*
    143 S. Ct. 2422 (2023) .................................................................................................... 6

*Olajuwon v. Ofogh*,
  2023 WL 3026710 (E.D. Va. Apr. 20, 2023) ..................................................... 9

*Power Home Solar, LLC v. Sigora Solar, LLC*,
  554 F. Supp. 3d 797 (W.D. Va. 2021) ......................................................... 5

*United States  v. Fuller*,
  2014 WL 4384061 (E.D. Va. Sept. 4, 2014)................................................... 19

*United States v. MacDonald*,
  161 F.3d 4, 1998 WL 637184 (4th Cir. Sept. 8, 1998) .................................... 5, 8, 17

*United States v. Mercer*,
  205 F. App'x 144 (4th Cir. 2006) ............................................................ 6

*United States v. Mgmt. Consulting, Inc.*,
  636 F. Supp. 3d 610 (E.D. Va. 2022) ......................................................... 11

*United States v. Shaffer Equip. Co.*,
  11 F.3d 450 (4th Cir. 1993) ................................................................ 7

*White v. Turner*,
  671 F. App'x 162 (4th Cir. 2016) ........................................................... 9

*Young v. City of Mount Ranier*,
  238 F.3d 567 (4th Cir. 2001) .............................................................. 10

*Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*,
  547 F. App'x 166 (4th Cir. 2013) .......................................................... 10

## **Rules**

Fed. R. Civ. P. 8(d)(2)..................................................................... 10

Fed. R. Civ. P. 56 ....................................................................... 11

## **Other Authorities**

§ 3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.) ........................................... 6

Civil, § 3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.) .................................... 6

VA Code Ann. § 18.2-61A(iii) ............................................................ 1, 17

VA Code Ann. § 18.2-63C(i)............................................................... 1, 17

## I.       INTRODUCTION

In its Motion, FCSB spares nothing in its attempt to publicly smear Plaintiff by reframing a factual and evidentiary dispute at issue in this case as a "fraud on the Court."  This is nothing more than a thinly veiled attempt to avoid the accountability of a public jury trial, where the disputes between the parties can be resolved by a jury from this community.[1]

To that end, FCSB accuses Plaintiff of "perjury," and declares that she has "practiced a massive fraud on the Court" because she dares to disagree with them on the facts to be litigated in this case.  *E.g.*, ECF No. 500 at 14, 29.  FCSB salaciously, and indeed gratuitously, quotes from "the Facebook messages" upon which almost its entire motion is based.  And as further evidence of its irresponsible and offensive rhetoric, in its brief FCSB uses air quotes around the word "rape," and states that Plaintiff "offered, invited and enthusiastically participated in sexual activity with C.K."  *Id.* at 15.  Stunning to see that a governmental organization charged with the responsibility of educating and protecting the youth of this County would allow its lawyers to argue, *in its name*, that a 12-year-old girl is not only capable of giving consent for oral sex, or vaginal or anal intercourse, but also that she can "invite" it.   VA Code Ann. § 18.2-63C(i) ("a child under the age of thirteen shall not be considered a consenting child"); VA Code Ann. § 18.2-61A(iii) (defining sexual intercourse with a child under the age 13 as rape).

And on what basis does FCSB base these accusations of "fraud on the Court?"  That a 12-year-old girl set out to create a fraud because her "boyfriend" of a couple of weeks "broke up with [her]," and then carried that fraud with her for over a decade that has included hundreds, if not

---

[1] In one form or another, each of the individual Defendants has joined FCSB's Motion (ECF 496 (Motion), ECF 500 (Sealed Brief in Support)), and this Memorandum is in opposition to all of the Defendants' filings.  ECF 530, 531, 537.  However, especially when addressing direct statements and arguments in FCSB's brief in support, Plaintiff will at times refer to the pending matter as FCSB's Motion.

thousands, of hours of mental and physical medical treatment?  That a 12-year-old girl who, by everyone's account, had no sexual experience prior to these events which occurred while she was in her 7th grade year,[2] was actually a voracious seeker and participant in anal and oral sex with an 8th grade student she had met at most just days or weeks earlier?[3]

FCSB's Motion is essentially all based on approximately 250 pages of "Facebook messages" purportedly between Defendant CK and an unknown account labeled as "Facebook user."  Defendants have had these messages in their possession since at least August 8th.[4]  And yet, more than three months later, and now facing a firm trial date set by the Court, FCSB proclaims that it has "uncover[ed] the truth" in the form of "smoking-gun messages" that require this case to be dismissed for "fraud on the Court."

According to FCSB, these messages were "located" by CK in his Facebook "archive" *after* Plaintiff's (and his own) deposition, and *after* he responded to a request for production denying the existence of any Facebook communications with Plaintiff.  Ex. 5 (Apr. 24, 2023 Def. CK's Responses to Plaintiff's First Request for Production of Documents, Answer to RFP 18); Ex. 6 (Aug. 31, 2023 Ltr. from J. Davis).  Indeed, these messages were not produced to Plaintiff until the last day of fact discovery.  If FCSB were being fully transparent, it would have informed the Court that saying CK "located" the messages is a bit misleading.  In truth, it was FCSB's counsel

---

[2] *See, e.g.*, Ex. 1 (JO Dep.) at 204:8-14; Ex. 2 (BR Dep. Vol. II) at 186:4-187:21.

[3] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

[4] As discussed below, Defendants raise a few other issues that do not revolve around the "Facebook messages."  These too are without merit and, even if the factual claims regarding them are true, they fall far short of the standard for dismissal for "fraud on the Court."

that, apparently on the last day of discovery, "assist[ed]" CK in finding these messages that he himself previously said did not exist. Ex. 6 (Aug. 31, 2023 Ltr. from J. Davis).

Not only has CK denied having extensively messaged with Plaintiff on Facebook, but he also has never sworn that these messages *on which this Motion relies* are authentic and/or that the "Facebook user" reflected in the exchange is Plaintiff. He did not do so at the time the messages were produced to Plaintiff, he did not do so at the time FCSB filed its motion to dismiss, and he did not do so when he filed his own "Memorandum in Support" of the motion. ECF 537. In fact, the only *party* that has communicated directly to the Court regarding the authenticity of the messages is Plaintiff, and she disputes their authenticity. ECF 425-4 at 9; *see also* ECF 425-3 at 6; ECF 425-6 at 10.

The absence of a sworn statement from CK on this issue may be explained by the fact that the story laid out in those messages is completely at odds with almost everything *he* told the police near the time of incidents in question, what *he* stated in his sworn interrogatory responses in this case, and what *he* testified to at his deposition.[5] If, at trial, CK elects to attempt to authenticate these messages and to identify Plaintiff as "Facebook user," and the Court allows them into evidence, these discrepancies can (and will) be explored through cross-examination, and a jury will then have the opportunity to assess the credibility of those claims in light of CK's other statements and sworn testimony.

However, at this point, there is no competent evidence before the Court to even consider, let alone conclude as a matter of law, that the "Facebook messages" upon which FCSB's Motion

---

[5] Unsurprisingly, FCSB does not suggest that CK also committed a "fraud on the Court" based on these inconsistencies. It hurls that attack only on Plaintiff.

relies are authentic and/or that the "Facebook user" taking part in those messages is Plaintiff.[6] Indeed, according to FCSB, there are two participants in the message string, Plaintiff and CK. One of them (Plaintiff) has communicated directly to the Court that she finds the messages to be suspicious, suspects that they may have been forged by CK, and that she has no memory of these messages being from her. *Id.*

On the other hand, CK stands tellingly silent on the issue in connection with the instant Motion, although in prior testimony and statements he, *just like Plaintiff*, has no memory of any extensive "Facebook messages" between them. This is fatal to Defendants' motion as there is, at best, a factual dispute regarding these messages—this obviously falls far short of the clear and convincing evidence necessary to making a showing of "fraud on the Court." *See* Legal Standard, *infra*.[7]

It should not go unnoticed that Defendants chose not to file for summary judgment on the so-called "smoking-gun messages" they now say proves their case, and instead chose to pursue a "fraud on the Court" theory. As discussed below, moving for summary judgment would have required Defendants to demonstrate that the "Facebook messages" are an undisputed fact.

---

[6] The messages themselves raise more questions than answers. For example, it is clear the account that is now labeled "Facebook user" never identified Plaintiff by name as the earliest messages in the string demonstrate that CK did not know who the person was that he was communicating with. And the evidence in the record is that students at Rachel Carson Middle School in this time period would create fake Facebook accounts and pretend to be others. Indeed, Plaintiff admits she did just that in 2012 under the name "Jenni Taylor," and has explained why she did so. Ex. 2 (BR Dep. Vol. II  94:16-100:5). But others did it too. ███████████████████████

[7] In its Motion, FCSB acknowledges that it currently lacks the evidence to support a "fraud on the Court," asking instead for an "evidentiary hearing" at which it can "demonstrate" its entitlement to dismissal. Plaintiff opposes this as it is an unwarranted attempt by FCSB to pre-litigate trial issues in attempt to have a strategic advantage.

Knowing that they cannot do so, Defendants attempt to avoid the scrutiny of their evidence through the normal processes, and ask the Court to simply assume the authenticity of the messages.

It should go without saying, but our system of justice has a mechanism for resolving these types of evidentiary disputes.  Specifically, where one party makes claims and the other side disputes those claims, the law allows for trials where those disputes are resolved by the collective judgment of a jury of peers.  Plaintiff looks forward to presenting her evidence to a jury and stands ready to accept their judgment.  FCSB seems determined to avoid that fate at all costs.

As demonstrated below, FCSB's Motion does not prove "fraud on the Court."  Instead, it shows that FCSB did not believe BR's claims when she was a 12-year-old girl crying for its help and protection, and that FCSB does not believe her now when she is a 24-year sexual assault survivor seeking justice.  FCSB can choose its litigation position, but its subjective disbelief of her is not a basis to dismiss this case for "fraud on the Court."

## II.    LEGAL STANDARD

A "finding of fraud on the court is rare and extreme." *In re Harlow v. Wells Fargo & Co.*, 2022 WL 17586716, at *13 (Bankr. W.D. Va. Dec. 12, 2022).  "A party asserting fraud on the court must establish that the conduct complained of was part of a deliberate scheme to directly subvert the judicial process." *Asterbadi v. Leitess*, 176 F. App'x 426, 430 (4th Cir. 2006) (internal citation omitted).  And it has the burden to do so by clear and convincing evidence.[8] *See United States v. MacDonald*, 161 F.3d 4 (Table), 1998 WL 637184, at *2 (4th Cir. Sept. 8, 1998) (fraud on the court must be established by clear and convincing evidence); *Power Home Solar, LLC v. Sigora Solar, LLC*, 554 F. Supp. 3d 797, 807 (W.D. Va. 2021) ("A party must establish fraud on the court by clear and convincing evidence."); *Jafari v. Old Dominion Mgmt. Co.*, 2015 WL

---

[8] FCSB fails to even acknowledge the standard of proof in its own Motion.

13039548, at *3 (E.D. Va. Oct. 20, 2015) ("Importantly, "[t]he party alleging fraud on the court must prove it by clear and convincing evidence, and all doubts are resolved in favor of sustaining the prior court action.") (citation omitted).

Where, like here, the gravamen of the claim of "fraud on the Court" is centered on a series of evidentiary disputes, a trial is the forum for resolution, not a motion to dismiss for fraud on the Court, as the former "permits each side to present its own case as well as to test its opponent's in order to expose vulnerabilities of every sort and variety." *Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 137 (4th Cir. 2014). Indeed, as the Fourth Circuit observed in *Fox*, a critical component of the trial "is cross-examination, which the Supreme Court has recognized is the 'greatest legal engine ever invented for the discovery of truth.'" *Id.* (quoting *California v. Green*, 399 U.S. 149, 158 (1970)). And our court system primarily relies on jurors, not judges, to resolve these types of factual disputes. *N. S., Only Child of Decedent Stokes v. Kansas City Bd. of Police Comm'rs*, 143 S. Ct. 2422 (2023) (Sotomayor, J. dissent from the denial of certiorari) ("It is the jury's role to decide factual disputes over what happened and draw factual inferences from the evidence presented."); *United States v. Mercer*, 205 F. App'x 144, 145 (4th Cir. 2006) ("Witness credibility is solely within the province of the jury[.]"); *see also* O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions - Civil, § 3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.) ("After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts.").

To be sure, fraud on the court is not "garden-variety fraud," *Fox*, 739 F.3d at 135, and usually involves the "corruption of the judicial process itself." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987) (citation omitted). And, ordinarily a finding of

fraud on the court is limited to the most egregious cases, including "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982).

Even if the Court finds that the movant has proven misconduct by clear and convincing evidence (which, as demonstrated herein, Defendants cannot and have not done here), that is only the first step in the analysis. In those instances, and "[m]indful of the strong policy that cases be decided on the merits, and that dismissal without deciding the merits is the most extreme sanction, a court must not only exercise its inherent power to dismiss with restraint, but it may do so only after considering several factors, which we have detailed under other circumstances." *United States v. Shaffer Equipment Company*, 11 F.3d 450, 462 (4th Cir. 1993) (citations omitted).

To that end, courts in this Circuit often use the factors laid out in *United States v. Shaffer Equip. Co.* (the "*Shaffer* factors") with keen attention to its mandate that "[s]ince orders dismissing actions are the most severe, such orders must be entered with the greatest caution."[9] *Id.* Indeed, in *Shaffer* itself, the Fourth Circuit found dismissal was too severe a sanction even where, in an environmental suit, the government attorneys concealed from the court that the Environmental Protection Agency's on-site coordinator for cleanup had misrepresented his credentials and that civil and criminal investigations were pending against him. *Id.* at 463 ("[T]he district court did not adequately address the broad policies of deciding the case on the merits where the orderly

---

[9] The *Shaffer* factors are: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Id.* at 462–63.

administration of justice and the integrity of the process have not been permanently frustrated, and of exercising the necessary restraint when dismissal is based on the inherent power."). The Court need not reach those factors here as Defendants have not met their burden of showing "fraud on the Court" by clear and convincing evidence.

### III.   ARGUMENT

Admittedly, FCSB's Motion has a lot of words.

Indeed, in its sprawling 27-page brief (and the follow-on filings by the other Defendants), FCSB purports to make no less than 10 "different" arguments in support of its claim that Plaintiff has committed a fraud on the Court. However, with the exception of a few throw-away arguments which will be addressed separately below, virtually all of FCSB's arguments boil down to the following syllogism: **(1) On the last day of discovery, Defendants "located" certain Facebook messages allegedly between CK and "Facebook user" from 2011; (2) Defense counsel say that they are authentic, and that Plaintiff is the "Facebook user" in these messages; and (3) Therefore, anything Plaintiff has said (before or during this lawsuit) that is inconsistent with those messages must be a "fraud on the Court."**

The obvious flaws in this argument are that FCSB has not shown by "clear and convincing evidence" that the Facebook messages in question are authentic; that the "Facebook user" is Plaintiff; and that even if the Facebook messages were authentic, that they establish a "fraud on the Court." Indeed, they have not even attempted to do so other than through the unsworn assertions of their counsel. In short, these flaws render the Motion without merit, and bordering on, if not entirely, frivolous.

Surely, each of the Defendants (or at least their counsel) know that "fraud on the Court" can only be established by "clear and convincing evidence." *See MacDonald*, 1998 WL 637184, at *2. Yet, that standard appears nowhere in any of the Defendants' briefs. Nor, frankly, do the

briefs make any attempt to meet that heavy evidentiary burden.  In fact, there are no sworn affidavits or declarations substantiating the central claim in the Motion.  Specifically, glaringly absent is a sworn declaration or affidavit from CK as to the authenticity of the messages, or the identity of "Facebook user."[10]

Knowing that these omissions render the Motion a legal nullity, it is fair to question the purpose of this filing.  Specifically, while the Motion does not even mention let alone attempt to satisfy the necessary legal burden (*i.e.*, clear and convincing evidence), it did provide Defendants the platform to slander and defame Plaintiff under the auspices of an unsworn court filing.

Plaintiff will address each of the categories of Defendants' arguments in the order they are presented in FCSB's Motion.  In doing so, the arguments below will have some repetition for the simple reason that Defendants have repackaged and restated their "anything that is inconsistent with Facebook messages is a 'fraud on the Court'" argument so many times.

A.    **Defendants' Arguments that Plaintiff's Complaint, and Amendments Thereto, Constitute a "Fraud on the Court" is Procedurally Improper, and Substantively Unsupported**

On ECF pages 8-11 of its brief, FCSB posits the novel position that Plaintiff's unverified Complaint, First Amended Complaint and Second Amended Complaint are each a "fraud on the Court."  As a preemptive matter, unverified complaints are not statements of the party, and hold no evidentiary value.  *See, e.g.*, *Olajuwon v. Ofogh*, 2023 WL 3026710, at *2 (E.D. Va. Apr. 20, 2023) (unsworn complaint is not admissible evidence); *Allen v. Langley*, 2023 WL 2588559, at *3

---

[10] As discussed below, it is hard to imagine that none of the defense counsel recognized this deficiency, and asked CK to cure it.  We know that he has not done so.  Instead, in his joinder filing, instead of swearing to the authenticity issues highlighted herein, he avoids the issue entirely, claiming (through his lawyer) generically that "he will not repeat Plaintiff's untruths in [his] brief." ECF 537 at 1.  In *infra* p. 12, Plaintiff will point out some, but not all, of the reasons that may have caused CK not to swear to the authenticity of the messages or to swear that Plaintiff is "Facebook user" in those messages.

9

(E.D. Va. Mar. 21, 2023) (refusing to consider unverified allegations in complaint because such allegations do "not constitute admissible evidence").  At most, these are statements of counsel not chargeable to his or her client, and cannot serve as "admissions" of the party.  *See Allen*, 2023 WL 2588559, at \*3.  Moreover, statements in complaints that have been subsequently amended are essentially a legal nullity.  *See White v. Turner*, 671 F. App'x 162, 163 (4th Cir. 2016) ("[A]n amended pleading supersedes the original pleading, rendering the original pleading of no effect.") (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001)); *Jeffrey M. Brown Assocs., Inc. v. Rockville Center Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) (same); *see also Motley v. Virginia*, 2018 WL 1472491, at \*2 n. 7 (E.D. Va. Mar. 26, 2018) (advising that an amended complaint "must stand or fall of its own accord"), *aff'd*, 741 F. App'x 171 (4th Cir. 2018).

　　Not surprisingly, Defendants have cited a grand total of ***0 cases*** in support of the proposition that statements made in unverified complaints (not to mention ones that have been replaced by amendment) can serve as the basis for a finding of "fraud on the court."[11]  Plaintiff is not aware of any either.  On the substance of this claim, FCSB's argument is that Plaintiff has committed "fraud on the Court" not because the allegations of her three Complaints contradict each other (this too would not be "fraud on the Court"),[12] but instead because there are additional facts in support of her claim made in the successive amendments to the complaints.  Specifically, Defendants scream "fraud" because Plaintiff's first complaint included allegations of sexual

---

[11] Throughout out this brief, Plaintiff will point out that Defendants have cited virtually no case law to support their arguments.  Instead, FCSB includes a section at the end of its brief citing generic case law about "fraud on Court," yet makes no connection between the facts of those cases and the facts here.

[12] Indeed, there is nothing untoward about pleading alternative facts in the *same* complaint, let alone successive ones.  Fed. R. Civ. P. 8(d)(2); *see also Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*, 547 F. App'x 166, 168 n. 3 (4th Cir. 2013) ("[Plaintiff] was permitted to set out conflicting alternative theories in its complaint without one constituting an admission against the other.").

assault by her fellow student CK, the second one also included facts implicating unknown other individuals, and the third included allegations of gang activity.[13]   Of course, there is nothing untoward or improper about amending complaints.  Fed. R. Civ. P. 15.

Notably, Defendants have not moved *even now* for summary judgment based on the "Facebook messages."[14]   To do so, Defendants would have been compelled to come forward with undisputed facts based on admissible evidence from which the Court could conclude, as a matter of law, that Plaintiff's allegations lacked merit.  *United States v. Mgmt. Consulting, Inc.*, 636 F. Supp. 3d 610, 614 (E.D. Va. 2022) (Alston, J.) ("Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  They chose not to do so for the obvious reason that, even if admitted into evidence, the "Facebook messages" do nothing more than create a factual dispute that only a jury can resolve.  *Id.* ("A disputed fact presents a genuine issue if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").  Defendants have filed this specious "fraud on the Court" motion instead of a motion for summary judgment in an obvious attempt to shield their "smoking-gun [Facebook] messages," ECF 500 at 5, from the scrutiny of the adversarial process, including but not limited to cross-examination.  *Fox*, 739 F.3d at 137 ("One elementary component of the adversary system is cross-examination, which the Supreme Court has recognized is the 'greatest legal engine ever invented for the discovery of truth.'") (quoting *California v. Green*, 399 U.S. 149, 158 (1970)).

---

[13] Defendants have other criticisms such as changing the allegation regarding the date of the first alleged assault by a month, or that some of the threats made by CK were further expounded on.
[14] FCSB moved for partial summary judgment on the issue of which types of damages are allowable under Title IX private enforcement actions.  None of the other Defendants moved for summary judgment at all, yet all joined in this Motion to Dismiss.

So, what changed since FCSB and the other Defendants all answered the Second Amended Complaint?  Nothing, except Defendants "located" the "Facebook messages."  That is why, stripped to its core, FCSB's argument is really that the statements in Plaintiff's Complaints are a "fraud on the Court" because they are different than the content of some of the "Facebook messages."[15]

As set forth above, the evidentiary value of those messages is, at this point and in connection with this Motion, largely non-existent.  In the record before the Court, they are approximately 250 pages of unauthenticated messages allegedly between CK and an account identified only as "Facebook user."  Those messages are not only inconsistent with Plaintiff's recollection of the events in question, they are directly at odds with what CK says occurred between him and Plaintiff.   For example, CK was asked directly by the police in 2012 (*i.e.*, near the time of the events in question) whether he communicated with Plaintiff via Facebook.  His answer was ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████.  This interview was just months after the incidents in question.  Does that mean CK committed a fraud on the police, and now a "fraud on the Court," as the Defendants' motion accuses Plaintiff of?  Or, does it perhaps explain why CK has not sworn to the authenticity of the "Facebook messages"?[16]

---

[15] FCSB cavalierly states "we now know" that each version "Plaintiff has told the Court . . . has been false."  It is unclear who the "*we*" in this proclamation is, but the alleged falsity of Plaintiff's statements is the defense position and has not been tested let alone proven by the clear and convincing evidence that the instant Motion requires.

[16] There are numerous other inconsistencies between CK's statements and testimony, and the Facebook messages.  Those will be explored at trial should CK take the witness stand and attempt to authenticate the messages.

In short, for the procedural and substantive reasons outlined above, nothing in Plaintiff's three Complaints can or does constitute a "fraud on the Court."

### B.       The "Narratives" Plaintiff Gave to Her Experts Were Not a "Fraud on the Court"

FCSB argues that the "narratives" Plaintiff gave to her experts in the case amount to a "fraud on the Court."  ECF 500 at 11–12.  Again, FCSB cites no case law where a case was dismissed based on an alleged falsity in the statements provided by a party to an expert.  More importantly, its factual assertions cannot withstand scrutiny.

First, for the most part, FCSB is arguing that because the narrative Plaintiff provided to her experts is not consistent with the unauthenticated, last minute "Facebook messages," that narrative is a "fraud on the Court."  For the reasons articulated above, there is no reason on the current record to credit the "Facebook messages" at all, let alone as the sole truth as Defendants suggest.  At most those messages create multiple fact questions for the jury to decide.

Of course, there is no case law in FCSB's motion to support the preposterous argument that what Plaintiff tells her experts can be a "fraud on the Court."  If Defendants believe that Plaintiff's experts' opinions are based on a faulty foundation because of what they were told by Plaintiff (or any other reason), the remedy is to attempt to discredit those opinions through cross-examination at trial, not to dismiss the case.  *Fox*, 739 F.3d at 137 ("A party relying on weak evidence to sustain its case runs the risk that its experts will crumble upon cross-examination or otherwise be impeached by the opposing party. The presence of that deterrent means, however, that routine evidentiary disputes as this cannot clear the high bar for an action for fraud on the court.") (citation omitted).

Defendants specifically argue "fraud on the Court" because of a statement in the report of Dr. Eileen Ryan, a psychiatry expert from Ohio State University.  Dr. Ryan has extensive

13

experience treating sexual assault victims.  As part of her work in this case, Dr. Ryan interviewed Plaintiff for approximately 16 hours over the course of two weeks, and also interviewed others. She also reviewed Plaintiff's medical records related to her work in this case.

Defendants take issue with part of Dr. Ryan's expert report where she states that ████ ████████████████████████████████████████████████████ Defendants provide no context for this, including failing to advise the Court what Dr. Ryan and Plaintiff both testified to at deposition regarding same.

Plaintiff was asked repeatedly by FCSB counsel in her deposition how often she was assaulted (as a reminder, Plaintiff is being asked to recall over 10 years later the details of traumatic events she experienced *when she was 12 years old*).  *See, e.g.*, Ex. 2 (BR Dep. Vol. II) 175:8–176:2; 176:21-177:5; 326:10-19; 328:13-329:10. ███████████████████████ ████████████████████████████████████████ Candidly and consistently, Plaintiff testified that ████████████████████████ ██████████████████████ She also testified that ████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ FCSB, a school board charged with caring for over 150,000 children, cannot seriously contend that Plaintiff's inability to estimate the amount of times she was raped as a 12-year-old girl, or even evidence that her estimates may be high, constitute a "fraud on the Court."

Conspicuously, FCSB fails to inform the Court that its counsel specifically questioned Dr. Ryan about this specific estimate which it now claims amounted to a "fraud on the Court."[17]  Far

---

[17] FCSB repeatedly claims in its brief that Plaintiff did not experience "false memories" while neglecting to tell the Court that Dr. Ryan explained how "███████████" and "████ ████████" can easily explain what FCSB now argues is "fraud on the Court."

from that number being essential to her opinion, Dr. Ryan testified that (1) she did not rely on the actual number of assaults and ███████████████████████; and (2) it would not be at all unusual for a sexual assault victim ███████████████ because they often experience "███████████████████████████" and feel like they were being "███████████████ ████████."





Defendant never really articulates how it contends that Plaintiff's sworn deposition testimony, even when juxtaposed against Dr. Ryan's report, amounts to "fraud on the Court." Nevertheless, if FCSB and the other school Defendants believe it is a wise trial strategy to cross-examine Plaintiff on her inability to precisely recall the *amount* of times she was sexually assaulted as a 12 year old child while they were responsible for protecting her, they can do so.  And a jury can decide what weight to give that testimony, and Dr. Ryan's expert opinion regarding same, as our system of justice requires.  *See Fox*, 739 F.3d at 137.

### C.    The Recently-Produced Facebook Messages Do Not "Reveal" Plaintiff's "Perjury and Falsehoods"

In the next section of its brief (pp. 9-15), Defendant argues that the discrepancy of the content of the "Facebook messages" and other testimony in the case amounts to a "fraud on the Court."  As discussed above, the "Facebook messages" are nothing more than unauthenticated hearsay that establish (or reveal) nothing.  Indeed, at trial, if those messages are admitted into evidence, the jury will have an opportunity to address their legitimacy and if they represent communications between CK and Plaintiff.

This simple fact does not change just because FCSB's counsel decides to lace its pleading with prurient details such as two children performing oral sex on each other, one of them "f---ing the tits of the other," or "pop[ping] the cherry" of a 12-year-old girl.  Indeed, seemingly having

16

lost all sense of precisely what they are arguing (not to mention that they are a governmental body charged with educating children), it is in this section that FCSB actually argues that "Plaintiff offered, invited and enthusiastically participated in sexual activity with C.K."  Putting aside that Plaintiff has denied that these messages are from her, there is no such thing as a 12-year-old consenting to such sexual activity under Virginia law, let alone "enthusiastically participat[ing]" in it.  VA Code Ann. § 18.2-63C(i) ("a child under the age of thirteen shall not be considered a consenting child"); VA Code Ann. § 18.2-61A(iii) (defining sexual intercourse with a child under the age of 13 as rape); *see also Martin v. Commonwealth*, Record No. 1966-04-4, slip op. at __ (Va. Ct. App. Sept. 6, 2005) ("Virginia law has historically refused to recognize the consent of a victim under the age of fifteen — treating the child, as a matter of law, to be too emotionally and developmentally immature to engage in consensual sexual activities with another."); *McBride v. Commonwealth*, 605 S.E.2d 773, 775 (Va. Ct. App. 2004) ("The legislature's use of the term 'carnally know, without force' is a recognition of a long standing, fundamental tenet of Virginia's law that a minor child under the age of fifteen is incapable of consenting.").  One would think that a school board would understand this.

Again, even assuming *arguendo* that FCSB is able to introduce these messages into evidence, Plaintiff will present evidence *at trial* demonstrating how the messages are not consistent with anyone's version of what transpired between CK and Plaintiff, when she was 12 and he was 13.  They are not consistent with what either Plaintiff or CK told the police at the time, or what either of them have testified to in this case.  A jury will have the opportunity to resolve these discrepancies if the Facebook messages are admitted into evidence.

It is FCSB's burden to prove "fraud on the Court" by "clear and convincing evidence." *See MacDonald*, 1998 WL 637184, at *2. Reliance on the unauthenticated "Facebook messages" as the sole arbiter of the truth falls far short of meeting that heavy evidentiary burden.

**D.    Plaintiff Did Not Commit "Fraud on the School System, Police and Federal Government"**

In the next section of its brief, Defendant charges Plaintiff with defrauding the school system, police and the Federal Government.[18]   ECF 500 at 19-25. Consistent with the theme of the rest of its Motion, Defendant makes no attempt to demonstrate how Plaintiff's statements to the school system, the police and the Federal Government over 10 years ago (and over 5 years before this case was even filed) could constitute "fraud on the Court." Indeed, this section (yet another devoid of *any* case law supporting its position) is just another opportunity for Defendant to repackage its argument that anything that Plaintiff says that contradicts the "Facebook messages" is, by definition, a "fraud on the Court." This is nonsense for the reasons already articulated herein.

As it relates to the alleged "fraud on the police," the Motion points to the "Jenni Taylor" Facebook messages. However, the basic facts about the "Jenni Taylor" messages are not in dispute. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[18] ████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

Undoubtedly, the parties will have different explanations for Plaintiff's conduct in creating this pseudonym and posting what she did, and a jury can assess those differences. But the facts are not in dispute, and there is no "fraud on the Court" in the "Jenni Taylor" messages from 2012.

FCSB's other evidence of "fraud on the police" is equally unavailing. Indeed, it appears to be yet another attempt to discredit Plaintiff because her statements to the police are not consistent with the "Facebook messages." This is not "fraud on the Court" for the reasons already articulated. *See, e.g.*, *United States v. Fuller*, 2014 WL 4384061, at *5 (E.D. Va. Sept. 4, 2014) ("[A]t most, Defendant has only show[n] an inconsistency between a prior agent interview and a witness's testimony at trial. . . . Moreover, Defendant was able to highlight this inconsistency with [the witness's] past testimony, thereby preventing any prejudice.").

Defendants point out that the Detective assigned to investigate Plaintiff's complaints, Fred Chambers, had made a determination in 2012 that "a lot of the things" Plaintiff had told him were not true. Again, should Detective Chambers be called as a witness at trial, the jury will have an opportunity to assess the "investigation" he allegedly conducted, his own biases and motivations, as well as his respective interviews with Plaintiff, CK, and each of their mothers. From that evidence, the jury will have an opportunity to make its own determination of who is (and who is not) telling the truth. Plaintiff welcomes that scrutiny, while FCSB seems desperate to prevent it. It is fair to ask why that is.

The last part of this section of FCSB's brief centers on an alleged "fraud on the Federal Government." Specifically, FCSB claims there is "fraud on the Court" because the allegations in the Complaint Plaintiff initiated through the United States Department of Education Office of Civil Rights ("OCR") a decade ago. The gravamen of FCSB's claim is—surprise—that the allegations made by Plaintiff in her OCR action differ from the "Facebook messages," and are therefore a "fraud on the Government." Again, Defendant fails to explain, let alone cite any case law, how factual allegations Plaintiff made in her OCR proceeding could constitute "fraud on the Court" in this action. That is because they cannot.

Moreover, Plaintiff did not commit any fraud in her OCR proceeding. In fact, the OCR did its *own* investigation. As part of that investigation, OCR interviewed multiple FCSB employees and requested documents pertinent to Plaintiff's Title IX allegations, including but not limited to, documents related to Plaintiff, the Fairfax County Public Schools' ("Division")[19] policies and procedures for addressing sex discrimination and/or sexual harassment concerns, student, parent, faculty and staff access to these policies and procedures, and the Division's investigation of Plaintiff's numerous complaints. *See, e.g.*, Ex. 12 (BR_WOR_8719-BR_WOR_8722); Ex. 13 (BR_WOR_9153-BR_WOR_9154).

As a result of OCR's independent investigation, OCR and FCSB entered into a Voluntary Resolution Agreement ("VRA"). ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[19] FCSB is referred to as the Division in the OCR materials.





Needless to say, based on its own investigation, the OCR did not find that Plaintiff committed any "fraud."

**E.      FCSB Uses Misleading Innuendo and Its Own Falsehoods to Accuse Plaintiff of "Prevarication, Obfuscation and Falsehoods During Discovery"**

It would be reasonable to assume that a party accusing another of "fraud on the Court" so significant to warrant dismissal would make sure its Motion and supporting brief seeking same would be honest and above board.  If one made that assumption about FCSB here, they would be wrong.

First, FCSB implies in its Motion that Plaintiff's prior counsel withdrew because from their representation because of the "Facebook messages."  Specifically, FCSB claims that on a call after

the "Facebook messages" were produced, one of Plaintiff's counsel "*responded* that it was going to withdraw from the case."  In short, this is not true, and FCSB knows it.

The counsel who withdrew shortly after the production of the Facebook messages did so for reasons unrelated to the production of same.  And how we can be sure that FCSB was aware of that?  Because prior counsel outlined the timing of their withdrawal in a pleading to this Court, stating that its decision to withdraw was made in July, long before the "Facebook messages" were located by CK, and then produced to Plaintiff.  Specifically, in a sworn Declaration, the counsel in question confirmed that the law firm had made the decision to withdraw by July 10, 2023, a full month before CK produced those messages to Plaintiff and her counsel.  ECF 400-1 (Declaration of D. Warrington).  This decision was confirmed in writing to Plaintiff on August 7th, again *before* the "Facebook messages" had been produced.  To imply that counsel withdrew in response to the production of these messages is false, and FCSB knows it.[20]

Second, FCSB accuses Plaintiff of "fraud" because she did not identify the Facebook account that was allegedly communicating with CK via "Facebook messenger" in November 2012.  Of course, Plaintiff has stated that she has no recollection of these messages and does not believe they are from her.  Nobody knows, or at least nobody has attested to, the name of the account that CK was allegedly messaging with.  Recall, the messages are not from an identifiable account— instead they are from "Facebook user."  And, a review of the messages themselves reveals that even CK did not recognize the account name at the time.  ██████████████████

███████████████████████████████████████████████████

---

[20] FCSB's misrepresentation here cannot be sloughed off as a mere mistake.  Indeed, the sworn statements from prior counsel were necessitated by FCSB's objection to the firm's withdrawal, rendering any claim of not remembering these details not credible.  *See, e.g.*, ECF 391 (FCSB objecting to Plaintiff's Counsel's Motion to Withdraw).

███████   Accordingly, it is entirely disingenuous for FCSB to claim that Plaintiff is committing "fraud" for failing to identify a still as yet unidentified Facebook account.

Again, FCSB's claims of "fraud on the Court" almost all come down to the *assumption* that the "Facebook messages" are authentic and are from Plaintiff, and anything to the contrary is a "fraud on the Court."  As demonstrated repeatedly above, this assumption of authenticity is not warranted.

The third argument in this section is that Plaintiff committed a "fraud on the Court" when she told the Court in her September 12, 2023 letter that she told her mother she was behind the "Jenni Taylor" messages "as soon [she] was pulled out of school."  FCSB argues that this is a "fraud on the Court" because other evidence in the case indicates that Plaintiff may have told her mother a couple of weeks after she was pulled out of school that she was the author of the "Jenni Taylor" messages.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████   In other words, FCSB is claiming that it is a "fraud on the Court" for Plaintiff to have stated that she made this admission "as soon" as she was pulled out of school, and not a few weeks later.  This is obviously not "fraud on the Court"—but it is reflective of FCSB's desire to do everything it can to avoid having its conduct judged by a jury of the citizens of the community it is supposed to serve.

Lastly, FCSB accuses Plaintiff of "fraud on the Court" for disclosing one of her mental health care providers late.  To be clear, FCSB has known about this provider since June 2023, and has collected records from her.  Also, at the time Plaintiff commenced treatment with this provider,

discovery in the case was stayed.  And Plaintiff disclosed this provider approximately two months

after the order entering a joint discovery plan following the stay of discovery being lifted.

Plaintiff has disclosed the names of her treating physicians throughout the case.  To date,

Defendant has subpoenaed records from well over 50 of Plaintiff's current and former physicians

(and other health care providers).  Defendant elected not to depose any of these physicians.  It is

not serious to suggest that the brief delay in disclosing the name of a single health care provider is

a "fraud on the Court"—indeed, Defendant cites no case law that would support such a finding.

This is nothing more than an attempted game of gotcha.[21]  Indeed, just recently Defendant

was crying foul because Plaintiff had not provided the precise location of where she obtained

prescriptive eyewear—in 2012!  Notably, Defendant is not even challenging Plaintiff's most

serious medical diagnoses.  For example, Plaintiff has been repeatedly diagnosed by non-litigation

related health care providers ████████████████████████████████████████████

███████ .  Defendant retained two medical experts and neither disputes these diagnoses.  ECF

555 at 13 & Exs. 9, 13-14.  In fact, one of them admitted he was not challenging these diagnoses,

and the other admitted that the assessment of whether Plaintiff ███████████ was outside of

the scope of the opinions FCSB asked him to offer.  *Id.*

---

[21] FCSB references other providers that were not disclosed.  To be clear, FCSB has been relentless in seeking Plaintiff's medical records, regardless if they relate to this action or not.  As recently as this week, FCSB was complaining that the "optometrist" that prescribed corrective eyewear to Plaintiff did not have a record of treating her.  Similarly, FCSB has also recently sought more information on other vision care providers, gastroenterologists, etc.  Plaintiff is mindful that the Court has allowed this discovery over her objection.  Notwithstanding, it is disingenuous to suggest that Plaintiff's failure to identify things like a childhood optometrist is a "fraud on the Court."  To the contrary, FCSB has abused this Court's license to conduct broad discovery to try to set Plaintiff up for a "fraud on the Court" motion.

## F.     Dismissal Would Violate Plaintiff's Seventh Amendment Rights

Putting aside Defendants' failure to meet the clear and convincing evidence standard laid out above, the relief requested in their Motion also violates Plaintiff's Seventh Amendment right to a jury trial.

The Seventh Amendment of the United States Constitutions enshrines the right to a jury trial in civil case. Asking this Court to resolve factual disputes usually left to juries, and to then dismiss this case based on that resolution would violate Plaintiff's constitutional rights. *See Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359 (1952).

In *Dice*, a judge overturned a jury verdict for an injured railroad worker's tort claim against his employer brought under federal law (FELA) on the grounds that the plaintiff signed a waiver of the right to sue. The employee-plaintiff contested this point factually, alleging the railroad defrauded him into signing away the right to sue, but the judge, after evaluating the evidence, made a factual determination that there was no fraud, and entered a judgment for the railroad.

The Supreme Court held that this was a violation of the plaintiff's right to a jury trial. "[T]he right to trial by jury is too substantial a part of the rights accorded by [federal law] to permit it to be classified as a mere 'local rule of procedure' for denial . . . ." *Dice*, 342 U.S. at 363.

Here, Defendants seek to have the Court do what the Supreme Court rejected in *Dice*: make a factual finding that implicates liability in a case where Plaintiff was entitled to a jury. This is the exact kind of "procedure" that infringes on the Seventh Amendment and has long been rejected by the Supreme Court. *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence, that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.").

Accordingly, because dismissal for purported fraud here would necessarily require the Court to resolve factual disputes that are reserved for juries, it would violate Plaintiff's Seventh Amendment rights.

## IV.    CONCLUSION

Defendants have the burden to demonstrate "fraud on the Court" by clear and convincing evidence.  As demonstrated above, at most Defendants have identified several evidentiary and factual disputes that will need to be resolved at trial.

Plaintiff filed this lawsuit in 2019.  Since then, she has been faced with a barrage of accusations and delay tactics, all aimed at depriving her of her day in court.  Plaintiff respectfully requests that the Motion to Dismiss be denied, and this case proceed to trial as scheduled on March 18, 2024.  After all, it seems to be Defendants' position that the evidence of its innocence and Plaintiff's dishonesty is overwhelming.  If so, they should have nothing to fear.

Dated: November 28, 2023

Respectfully submitted,

By: _____ /s/ *Jonathan Fahey* _____

JONATHAN L. FAHEY
(VSB No. 44854)
**BROWN RUDNICK LLP**
602 Thirteenth Street NW, Suite 600
Washington, DC  20005
Telephone: (202) 536-1702
Facsimile:  (202) 536-1701
jfahey@brownrudnick.com

ALISON L. ANDERSON
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa, 31st Floor
Los Angeles, CA  90017
Telephone: (213) 629-9040
Facsimile:  (213) 629-9022
alanderson@bsfllp.com

ANDREW S. BRENNER
(Pro Hac Vice)
BRITTANY ZOLL
(Pro Hac Vice)
ROBERT G. KEEFE
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL  33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307
abrenner@bsfllp.com
bzoll@bsfllp.com
rkeefe@bsfllp.com

*Counsel for Plaintiff B.R*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 28, 2023, I electronically filed this document with

the Clerk of the Court using the CM/ECF system, which will send a notification of such filing

(NEF) to counsel of record for all Parties.

By: <u>/s/ *Jonathan Fahey*</u>

JONATHAN L. FAHEY
(VSB No. 44854)
**BROWN RUDNICK LLP**
602 Thirteenth Street NW, Suite 600
Washington, DC  20005
Telephone: (202) 536-1702
Facsimile:  (202) 536-1701
jfahey@brownrudnick.com

29