**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

|  |  |
|---|---|
| B.R., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:19-cv-00917-RDA-WEF |
| FAIRFAX COUNTY SCHOOL BOARD, et al., | ) ) ) |
| Defendant. | ) ) ) ) |

**REPLY IN SUPPORT OF DEFENDANT FAIRFAX COUNTY SCHOOL BOARD'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON TITLE IX DAMAGES**

Ryan M. Bates (VSB No. 74661)
Sona Rewari (VSB No. 47327)
Scott W. Burton (VSB No. 90601)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
rbates@HuntonAK.com
srewari@HuntonAK.com
burtons@HuntonAK.com

*Counsel for Defendant*
*Fairfax County School Board*

December 1, 2023

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

   I.   *Cummings* applies to Title IX. ................................................................................ 2

   II.  *Cummings* bars Plaintiff's claims related to emotional distress, including PTSD. ............ 6

      A.  Plaintiff seeks emotional-distress damages barred by *Cummings*. .............................. 6

      B.  *Cummings* bars Plaintiff's damages related to PTSD. ................................................. 7

   III. *Cummings* bars recovery of the cost of treatment for emotional distress. ....................... 11

   IV. Plaintiff's claims for damages based on lost earning capacity are barred under the
       rationale of *Cummings* and the Fourth Circuit's decision in *Rice*. .................................. 14

CONCLUSION .................................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*A.T. v. Oley Valley Sch. Dist.*,
    No. 17-4983, 2023 WL 1453143 (E.D. Pa. Feb. 1, 2023) ......................................................12

*Abdulsalam v. Bd. of Regents of Univ. of Neb.*,
    No. 4:22-CV-3004, 2023 WL 4266378 (D. Neb. June 29, 2023)............................................5

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
    57 F.4th 791 (11th Cir. 2022) ................................................................................................4

*Barnes v. Gorman*,
    536 U.S. 181 (2002)...................................................................................................8, 12, 17

*Coleman v. Cedar Hill Indep. Sch. Dist.*,
    No. 3:21-cv-2080-D, 2022 WL 1470957 (N.D. Tex. May 10, 2022)......................................5

*Crawford v. Davis*,
    109 F.3d 1281 (8th Cir. 1997) ................................................................................................4

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    596 U.S. 212 (2022)....................................................................................................*passim*

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)...............................................................................................................3

*Doe 1 v. Curators of Univ. of Mo.*,
    No. 19-cv-04229, 2022 WL 3366765 (W.D. Mo. Aug. 15, 2022) ...........................................5

*Doe next friend of Doe v. City of Pawtucket*,
    633 F. Supp. 3d 583 (D.R.I. 2022)...............................................................................8, 10, 11

*Doe v. Duerfahrd*,
    No. 4:18-CV-72-JVB-JEM, 2022 WL 17253080 (N.D. Ind. Nov. 28, 2022) .......................10

*Doe v. Fairfax Cnty. Sch. Bd.*,
    No. 1:18-cv-00614, 2023 WL 424265 (E.D. Va. Jan. 25, 2023).........................11, 14, 16, 17

*Doe v. Sch. Bd. of Palm Beach Cnty.*,
    No. 21-81560-CIV, 2022 WL 17988203 (S.D. Fla. Nov. 22, 2022) ......................................10

*Franks v. Ky. Sch. for the Deaf*,
    142 F.3d 360 (6th Cir. 1998) ................................................................................................4

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998)...............................................................................................................3

*Gross v. Weber*,
    186 F.3d 1089 (8th Cir. 1999) .................................................................................4

*J.C. v. Bd. of Regents of Univ. Sys. of Ga.*,
    No. 1:20-CV-4445, 2023 WL 4938054 (N.D. Ga. Aug. 1, 2023) ..........................11

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ...............................................................................................3

*K.G. v. Woodford Cnty. Bd. of Educ.*,
    No. 5:18-555-DCR, 2022 WL 17993127 (E.D. Ky. Dec. 29, 2022) ....................10

*Lask v. Kan. City, Kan. Cmty. Coll. Bd. of Trs.*,
    No. 23-2074-JWB, 2023 WL 5034375 (D. Kan. Aug. 8, 2023)...............................4

*Loera v. Kingsville Indep. Sch. Dist.*,
    No. 2:21-cv-00031, 2023 WL 6131459 (S.D. Tex. Feb. 2, 2023) ...........................9

*Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*,
    No. 3:20-cv-11, 2023 WL 348320 (S.D. Ill. Jan. 20, 2023) ..........................8, 12, 13

*Redgrave v. Boston Symphony Orchestra, Inc.*,
    855 F.2d 888 (1st Cir. 1988) .................................................................................15

*Rice v. Community Health Association*,
    203 F.3d 283 (4th Cir. 2000) .......................................................................1, 14, 16

*S.C. v. Metro. Gov't of Nashville*,
    --- F.4th ----, 2023 WL 7644306 (6th Cir. Nov. 15, 2023)....................................4

## Other Authorities

Restatement (Second) of Contracts § 351 (1981) ...........................................................14

Restatement (Second) of Torts § 924 (1979).................................................................16

24 Williston on Contracts § 66:4 (4th ed.)..............................................................15, 16

## **INTRODUCTION**

There is no reasonable argument that Plaintiff may still recover damages under Title IX for her claimed emotional conditions or their treatment.  Plaintiff's Opposition to the Fairfax County School Board's Motion for Partial Summary Judgment requires the Court to ignore the plain language of *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), the logic of decades of Supreme Court precedent, and the uniformity of lower court decisions that have applied *Cummings* to Title IX claims, including Judge Nachmanoff's ruling this past January.  The Court should decline her invitation to stand alone in allowing emotional distress damages under Title IX after *Cummings*.

Plaintiff's Opposition also urges the Court to revolutionize how the justice system regards mental disorders.  Her argument that post-traumatic stress disorder ("PTSD") is a "physical" ailment and not an "emotional" or "mental" ailment is based on the opinion of an academician who is not a medical doctor, holds the same opinion about all mental disorders, and has never even met Plaintiff.  No court has allowed such an end-run around *Cummings*.  This Court should decline to be the first to do so.

Finally, Plaintiff's Opposition asks the Court to disregard the clear mandate of the Fourth Circuit's decision in *Rice v. Community Health Association*, 203 F.3d 283 (4th Cir. 2000), which holds that damages for lost earnings in a breach of contract case—the analytical framework that must be applied to Plaintiff's Title IX damages in the wake of *Cummings*—are unavailable, absent pleading and proof of identifiable professional opportunities that were available to the plaintiff and were in the contemplation of the parties at the time of the contract.  No such identifiable professional opportunities were pled in the Second Amended Complaint.  Nor could they have been, given Plaintiff was a middle-school student at the time.  This defect is not cured by Plaintiff's expert report that speculates that Plaintiff could have grown up to become a lawyer or doctor.  No

1

post-*Cummings* court has found such damages recoverable by a Title IX plaintiff who was a student in middle or even high school at the time of the alleged Title IX violations.

The Court should, therefore, grant the School Board's motion for partial summary judgment, and rule that Plaintiff cannot obtain damages from the School Board for any (a) emotional distress, including her claimed PTSD and physical maladies attributed to her PTSD; (b) costs of past or future treatment of such non-recoverable emotional distress; and (c) diminished earning capacity or lost earnings. Put differently, with regard to Plaintiff's claimed physical and mental conditions, Plaintiff may obtain only the costs of medical examination and treatment for any alleged physical harm she claims to have sustained during the alleged assaults; she cannot recover damages for any physical or emotional malady or ailment associated with her emotional or mental response to the alleged events.

## ARGUMENT

### I.   *Cummings* applies to Title IX.

The central legal question presented by the School Board's motion is the effect of *Cummings* on the damages that Plaintiff seeks to recover under Title IX. Ignoring a plethora of authority against her, including the text of the *Cummings* majority and dissenting opinions, and the uniform response of the lower courts post-*Cummings* (including Judge Nachmanoff's detailed opinion last January), Plaintiff urges this Court to proclaim that *Cummings* does not apply to Title IX claims. *See* Pl.'s Br. in Response to Def. FCSB's Mot. for Partial Summ. J. on Title IX Damages ("Opp'n") (ECF No. 555) at 23. Plaintiff's brief invites clear legal error. The Court should decline the invitation.

*Cummings* itself belies Plaintiff's argument that the ruling does not apply to Title IX claims. All nine Justices—including the three in dissent—identified Title IX as one of the four Spending Clause statutes covered by the Court's holding. *See* 596 U.S. at 217-18 (identifying

Title IX as one of the "four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds"); *id.* at 231 (Breyer, J., dissenting) (listing Title IX among the four Spending Clause statutes affected by the Court's decision).

Plaintiff next argues that the contract-law analogy in *Cummings* does not apply to Title IX claims because Title IX "was passed pursuant to Congress's power under both the Spending Clause … and its power under Section 5 of the Fourteenth Amendment." Opp'n at 23. But that argument, too, is refuted by the text of *Cummings.* The claims in *Cummings* did arise under other Spending Clause statutes (the Rehabilitation Act and Affordable Care Act), but the Court emphasized that the "contract-law analogy" applies "in actions brought to enforce Spending Clause statutes." *Id.* at 219-20. As if to drive that point home, the Court's articulation of that analogy came directly from an earlier decision in a Title IX case. *Id.* at 219 (explaining that "consideration of whether a remedy qualifies as appropriate relief" under a Spending Clause statute is informed by "what amounts essentially to a contract between the Government and the recipient of funds") (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)). Plaintiff's argument against the contract-law analogy thus contradicts both *Cummings **and*** a line of precedent using that precise lens that goes back twenty-five years.[1]

Unsurprisingly, Plaintiff cites **zero** cases adopting her proposed Fourteenth Amendment workaround. There are none. Plaintiff's citations regarding Congress's Section 5 authority are further inapposite because those courts asked only whether Congress **could have** enacted Title IX

---

[1] *See, e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005) (applying contract-law analogy because "Title IX was enacted as an exercise of Congress' powers under the Spending Clause"); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999) (observing the Supreme Court has "repeatedly treated Title IX as legislation enacted pursuant to Congress's authority under the Spending Clause"); *Gebser*, 524 U.S. at 287 ("Title IX's contractual nature has implications for our construction of the scope of available remedies.").

under Section 5 of the Fourteenth Amendment to abrogate Eleventh Amendment immunity.  *See, e.g.*, *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (noting that abrogation asked only "whether Congress could have enacted the legislation at issue" under the Fourteenth Amendment, not "whether [Congress] had the specific intent to legislate pursuant to that authority") (citing *Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997)).

Worse, Plaintiff fails to cite authority that directly contravenes her far-fetched argument. Indeed, she relies on a Sixth Circuit decision from 25 years ago—*Franks*—to support the proposition that Congress could have used Section 5 of the Fourteenth Amendment to impose Title IX requirements on states, Opp'n at 24, but she does not tell the Court that the Sixth Circuit held just two weeks ago—and one week before she filed her brief—that "**Cummings *leaves little doubt that emotional distress damages are no longer permitted for violations of Title IX*.**"  *S.C. v. Metro. Gov't of Nashville*, --- F.4th ----, 2023 WL 7644306, at *7 (6th Cir. Nov. 15, 2023) (emphasis added).  She likewise points to the Eighth Circuit for support for her argument that Congress could have acted pursuant to the Fourteenth Amendment, but she omits that court's unequivocal assertion that Title IX "***was enacted*** pursuant to the Spending Clause."  *Gross v. Weber*, 186 F.3d 1089, 1092 (8th Cir. 1999) (emphasis added); *see also Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022) (noting "Congress passed Title IX pursuant to its authority under the Spending Clause").  In fact, nothing in the Title IX-Eleventh Amendment immunity line of cases can be understood to diverge from the Supreme Court's use of the contract-law analogy to determine the remedies available for Spending Clause statutes like Title IX.

Plaintiff also fails to tell the Court that the district courts confronted with her Fourteenth Amendment theory for avoiding *Cummings* have uniformly rejected it.  *See Lask v. Kan. City,*

*Kan. Cmty. Coll. Bd. of Trs.*, No. 23-2074-JWB, 2023 WL 5034375, at *5 (D. Kan. Aug. 8, 2023) (holding that, without language indicating an intent to make emotional distress damages available in Title IX, "Congress's authority to enforce the Fourteenth Amendment 'through appropriate legislation' cannot justify implying an emotional damages remedy in Title IX"); *Abdulsalam v. Bd. of Regents of Univ. of Neb.*, No. 4:22-CV-3004, 2023 WL 4266378, at *6 (D. Neb. June 29, 2023) (rejecting plaintiff's "argument that Title IX should be analyzed under a separate rubric than other Spending Clause statutes for purposes of determining whether damages for emotional distress are recoverable"); *Doe 1 v. Curators of Univ. of Mo.*, No. 19-cv-04229, 2022 WL 3366765, at *2 (W.D. Mo. Aug. 15, 2022) (rejecting Fourteenth Amendment argument and observing that, "in every case in which the Supreme Court has addressed the obligations imposed and the remedies available under Title IX, it has applied a Spending Clause analysis and analogized to contract law."). In truth, the federal courts are unified in their position that *Cummings* applies to Title IX. *See* Def.'s Br. in Supp. of Mot. for Partial Summ. J. on Title IX Damages ("Br.") (ECF No. 489) at 8 & n.8 (collecting cases).[2]

---

[2] Plaintiff cites two decisions that she says "declined to extend *Cummings*'s holding beyond the RA and the ACA." Opp'n at 23 n.15. The first, *Doe v. Purdue University*, was a conclusory order on a motion in limine that allowed evidence of emotional distress at trial, but that same court subsequently granted the defendant judgment as a matter of law because "[e]motional damages on the Title IX claim are not available pursuant to the recent Supreme Court case, *Cummings v. Premier Rehab Keller.*" Sept. 22, 2022 Trial Tr. 629:18-22, *Doe v. Purdue Univ.*, No. 18-CV-89-JEM (N.D. Ind. Sept. 22, 2022) ECF No. 210 (attached as Ex. 1).

The second, from the Northern District of Texas, is utterly irrelevant and has nothing to do with the "extension" of *Cummings*'s holding. The plaintiff in that case asserted violations of the Americans with Disabilities Act, Rehabilitation Act, Family Medical Leave Act, and Texas labor law. *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-cv-2080-D, 2022 WL 1470957, at *1 (N.D. Tex. May 10, 2022). While ruling on a motion to compel production of physical and mental health records, the court noted that the recent *Cummings* decision affected the availability of emotional distress damages under the Rehabilitation Act, but it did "not alter the court's analysis as it relate[d] to her other claims"—none of which were asserted under a Spending Clause statute, let alone Title IX. *Id.* at *3 n.2.

Plaintiff's argument that *Cummings* does not apply to Title IX claims thus would require this Court to ignore the plain language of the decision, defy the logic in decades of Supreme Court precedent, and reject the uniformity of decisions reached by the lower courts in the 18 months since *Cummings*.   The Court should decline the invitation to stand alone in its reading of *Cummings*.

## II.   *Cummings* bars Plaintiff's claims related to emotional distress, including PTSD.

Plaintiff also argues that *Cummings* does not bar recovery for her PTSD and the physical maladies she attributes to her PTSD because those are "physical injuries" rather than emotional ones.  Opp'n at 8-15.  That, too, is plainly wrong.

### A.   Plaintiff seeks emotional-distress damages barred by *Cummings*.

At the outset, Plaintiff complains that "nowhere in the text of the motion does [the School Board] identify which of B.R.'s injuries it asserts are for 'emotional distress,'" and suggests that PTSD is referred to as such in only a passing footnote.  Opp'n at 1.  This assertion is nonsensical.

The School Board provided the laundry list of categories from Plaintiff's Second Amended Complaint "that clearly fall within [*Cummings*'s] holding."  *See* Br. at 9 (listing "injuries, damages and losses" Plaintiff alleged in the SAC, including emotional distress, fear, anxiety, trauma, mental anguish, humiliation and embarrassment, inconvenience, personal and social limitations, embarrassment, humiliation, loss of dignity, pain and suffering, depression, severe acute traumatic stress disorder, ***severe post-traumatic stress disorder***, severe depression and anxiety, nightmares and flashbacks, eating disorders, other psychiatric disabilities and deficits, physical manifestations of emotional and psychiatric distress, neurological, cognitive, and emotional deficits, and loss of enjoyment of life and life's pleasures).  That mélange of maladies cites to the SAC, which was also the source of the School Board's recitation of Plaintiff's alleged damages listed in ¶ 3 of its Statement of Undisputed Material Facts.  *See* Br. at 2.  In particular, the School Board recited

6

verbatim more than a dozen categories or groups of damages listed in SAC ¶ 323, including "[p]ast present, and future physical pain and mental anguish," "humiliation and embarrassment," "inconvenience," and "depression, anxiety, fear, emotional distress, and mental anguish." *See* Br. at 2 (SUMF ¶ 3). Plaintiff did not take note of the School Board's references to ¶ 323 in her response but, as she says, "the Second Amended Complaint speaks for itself." Opp'n at 5.

As the injuries recited above and listed in the SAC indicate, what Plaintiff asserts *is* almost entirely "an 'emotional distress' case." Opp'n at 10. Plaintiff does not deny that losses related to "mental anguish," "fear," or "humiliation" are precisely the kinds of emotional distress injuries barred by *Cummings*. *See id.* at 9 (admitting that the Supreme Court "did not allow the plaintiff in *Cummings* to recover for 'humiliation, frustration, and emotional distress'") (quoting *Cummings*, 596 U.S. at 217). Indeed, other than PTSD, Plaintiff does not attempt to distinguish any of the injuries the School Board identifies from SAC ¶ 323 from the emotional distress damages barred in Title IX cases. Because there is no dispute as to all those emotional conditions or damages, the School Board is entitled to summary judgment on the issue of these alleged harms.[3]

## B.    *Cummings* bars Plaintiff's damages related to PTSD.

As to Plaintiff's claim for damages based on her alleged PTSD, she cannot avoid the effect of *Cummings* with the peculiar theory that this disorder is "a physical injury." Opp'n at 11. As an initial matter, this argument is a red herring. *Cummings* does not distinguish "emotional" from

---

[3] Plaintiff is wrong to claim that "[t]he existence of these [physical] injuries is not in dispute." Opp'n at 11. The School Board noted its dispute regarding "[t]he existence of any TBI," Br. at 10 n.4, and likewise disputes the existence of Plaintiff's other claimed physical injuries. The School Board's partial summary judgment motion does not ask the Court to resolve the *existence* of any particular injury, but instead asks the Court to rule on the *availability* of damages under Title IX.

7

"physical" injuries, or opine that physical injuries are compensable in contract cases.  Instead, the Supreme Court followed a "straightforward" analysis to conclude that, like punitive damages, emotional distress damages "'are generally not available for breach of contract,'" and therefore unavailable under Title IX.  596 U.S. at 221-22 (quoting *Barnes v. Gorman*, 536 U.S. 181, 185, 187 (2002)).[4]  And even if *Cummings* could somehow be read to endorse an exception for physical ailments, Plaintiff's attempt to recast PTSD as a physical ailment rather than a mental ailment is incorrect as a matter of law.

Plaintiff's theory that PTSD is a physical ailment rests on the opinions of her expert witness, Joshua Cisler, an academician who is a psychologist—not a medical doctor—and  holds the same beliefs about *all* mental disorders, not just PTSD.  This theory would require the justice system to revolutionize its categorization of *all* mental disorders—not just PTSD—and to treat all mental disorders as physical ailments.  The exception that Plaintiff seeks to create would swallow the rule.

The Court need look no further than the report and testimony of Dr. Cisler to understand why. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Cisler Expert Rept. (ECF No. 555-1) at 5 (emphasis added).  He confirmed in his deposition his belief that "most mental health disorders … are produced by changes in the brain."  Cisler Dep. at

---

[4] Where courts have allowed claims related to physical harm to go forward, those damages have been tied to quantifiable expenses or costs associated with treatment for injuries sustained during the incident giving rise to plaintiff's Title IX claim.  *See, e.g.*, *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-cv-11, 2023 WL 348320, at *2-4 (S.D. Ill. Jan. 20, 2023) (declining to dismiss Title IX claim requesting "medical expenses, which the allegations attribute to treatment for physical injuries they suffered as a result of bullying"); *Doe next friend of Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 590 (D.R.I. 2022) (declining to grant summary judgment as to damages that "stem from medical examination and treatment for physical harm that the minor [p]laintiff might have sustained during her sexual assault").

43 (attached as Ex. 2).  Anxiety disorder, major depression, and eating disorder, for example, are also caused by physical changes in the brain.  *See id.* at 53.  Then, Dr. Cisler admitted, "I cannot think of a mental health disorder that would not involve changes to the brain."  *Id.* at 54.  ███

████████████████████████████████████████████████████████████

███████████████████████████████████  Cisler Expert Rept. (ECF No. 555-1) at 16.  Dr. Cisler has never examined Plaintiff or any of her medical records, and he admitted that his opinions are not specific to Plaintiff, but rather apply to anyone with any mental disorder. Cisler Dep. at 46-48, 76-77.

Plaintiff's novel theory thus has no limiting principle.  If ***every*** mental health disorder involves physical changes to the brain, then ***any*** mental disorder would be an exception to *Cummings* under Plaintiff's untethered interpretation of the law.  Though Plaintiff argues that PTSD is a special exception to *Cummings,* she offers no explanation for why Dr. Cisler's opinions take PTSD out of the reach of *Cummings*, but do not create the same loophole for the depression, eating disorders, and anxiety that are also among Plaintiff's diagnosed conditions and claimed damages.[5]  Nor does she explain how his opinions can be limited to any particular mental disorder. Confoundingly, Plaintiff even concedes that a plaintiff who "had been diagnosed with depression and anxiety" cannot get around the rule of *Cummings*.  Opp'n at 14 (quoting *Loera v. Kingsville Indep. Sch. Dist.*, No. 2:21-cv-00031, 2023 WL 6131459, at *4 (S.D. Tex. Feb. 2, 2023), *report & recommendation adopted in part, rejected in part*, 2023 WL 6130548 (Sept. 19, 2023)).  And she does not protest against the application of *Cummings* to a plaintiff who "proffered evidence that

---

[5] Plaintiff's own forensic psychiatrist Dr. Eileen Ryan has opined ████████████████████ *See* Ryan Expert Rept. (ECF No. 555-3) at 34-35.  Yet, Plaintiff makes no argument that these conditions are exceptions, thus seemingly conceding that these fall under the bar of *Cummings*.

he had been treated for 'anxiety, depression, diet, anger, fear, obsessive thoughts, and stress.'" *Id.* (quoting *K.G. v. Woodford Cnty. Bd. of Educ.*, No. 5:18-555-DCR, 2022 WL 17993127, at *1 (E.D. Ky. Dec. 29, 2022)). Yet, she offers no reasoning or explanation for why those other mental health disorders would not be compensable as Title IX damages but PTSD would be. The answer is because there is none.

Not surprisingly, no court has allowed this type of end-run around *Cummings*. Instead, courts nationwide have consistently identified PTSD as a form of emotional distress covered by *Cummings* and thus precluded as damages in Title IX cases. *See, e.g.*, *City of Pawtucket*, 633 F. Supp. 3d at 589-90 (identifying "post traumatic syndrome" as one of "varying forms or descriptions of emotional distress" and granting summary judgment on such damages); *Doe v. Duerfahrd*, No. 4:18-CV-72-JVB-JEM, 2022 WL 17253080, at *1, 3 (N.D. Ind. Nov. 28, 2022) (granting motion for judgment on the pleadings under *Cummings* in a case where the plaintiff alleged she had "been diagnosed with Post Traumatic Stress Disorder, panic disorder, and agoraphobia" attributed to her assaults); *Doe v. Sch. Bd. of Palm Beach Cnty.*, No. 21-81560-CIV, 2022 WL 17988203, at *5, 7 (S.D. Fla. Nov. 22, 2022) (granting summary judgment under *Cummings* where plaintiff had "post-traumatic stress and emotional distress caused from her assault," though noting the finding as "functionally moot" given the availability of such damages for remaining tort claims).

Plaintiff's focus on the physical maladies allegedly caused by her PTSD does not change the calculus. *See* Opp'n at 11 (averring that Plaintiff's PTSD "causes other physical injuries and symptoms such as the ones documented in [Plaintiff's] medical records").[6] When emotional

---

[6] It is inaccurate for Plaintiff to state that Dr. Ryan "opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Opp'n at 13. In fact, Dr. Ryan admitted in her deposition that

distress damages are precluded, it would make little sense to create an exception for the physical manifestations of such emotional conditions.  Judge Nachmanoff recognized as much when he excluded from Title IX damages a plaintiff's treatment for "stomach-related issues," which were caused by her emotional distress.  *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614, 2023 WL 424265, at *6 (E.D. Va. Jan. 25, 2023).  Plaintiff theorizes that the flaw in that case must have been that the plaintiff "presented no medical expert evidence to support her vague assertion." Opp'n at 14.  Not so.  Judge Nachmanoff contrasted the medical expenses for treatment of the stomach ailments with those that related to "physical harm that [the] minor Plaintiff might have sustained during her sexual assault."  *Fairfax Cnty. Sch. Bd.*, 2023 WL 424265, at *6 (quoting *City of Pawtucket*, 633 F. Supp. 3d at 590).  Without that connection to the alleged assault, the damages for those injuries "are proxies for impermissible emotional distress damages." *Id.*

So, too, here.  Plaintiff's claimed physical maladies "associated with her PTSD" are ailments allegedly caused by her PTSD, not injuries that she sustained during the course of any alleged sexual assault.  Such claimed physical manifestations of PTSD fall as clearly under *Cummings* as does the PTSD itself.

III.    ***Cummings* bars recovery of the cost of treatment for emotional distress.**

Plaintiff's theory for why her mental health treatment expenses are recoverable despite *Cummings* also requires the Court to accept her theory that PTSD is an exception to *Cummings*. For the reasons discussed above, Plaintiff is wrong.

Put simply, money "damages for counseling and psychiatric treatment relate directly to the emotional harms suffered by [Plaintiff]—in other words, to her emotional distress."  *J.C. v. Bd. of*

---

████████████████████████████████████████████████

*See, e.g.*, Ryan Dep. 218-219 (attached as Ex. 3).

*Regents of Univ. Sys. of Ga.*, No. 1:20-CV-4445, 2023 WL 4938054, at *4 (N.D. Ga. Aug. 1, 2023) (citing *Fairfax Cnty. Sch. Bd.*, 2023 WL 424265, at *6).  That is why courts have granted summary judgment to Title IX defendants like the School Board regarding "compensatory emotional distress damages" that include "claims for past, present and future medical expenses based on emotional distress such as bipolar disorder, anxiety, humiliation, embarrassment, frustration and alcohol and drug addiction and past, present and future emotional pain and suffering/mental distress."  *E.g.*, *A.T. v. Oley Valley Sch. Dist.*, No. 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023).

Nevertheless, Plaintiff asserts that all "actual medical costs—regardless of whether they are due to physical injuries or not—are compensatory damages" that may be awarded under Title IX.  Opp'n at 21.  She purports to rely on just one case for that remarkable proposition, but even that single case does not support her argument.  In *Pennington v. Flora Community Unit School District No. 35*, the defendant sought outright dismissal of claims brought under the Rehabilitation Act and ADA based on *Cummings*.  2023 WL 348320, at *2.[7]  The court acknowledged *Cummings*, but pointed out that the plaintiffs "did not *only* request emotional damages."  *Id.* (emphasis added).  Rather, they "very clearly requested medical expenses, which the allegations attribute to treatment for *physical injuries* they suffered as a result of bullying, as well as treatment for the psychological injuries."  *Id.* (emphasis added).  The court surmised that "these are compensatory damages for economic losses, which *Cummings* did not preclude."  *Id.*

Plaintiff wishfully reads the phrase in *Pennington* —"as well as treatment for the psychological injuries"—to mean that the district court held that medical expenses for *both*

---

[7] The ADA incorporates the remedies that are available under the Rehabilitation Act, which itself incorporates the remedies of Title VI.  *See Barnes*, 536 U.S. at 185, 189.  Thus, although *Cummings* does not identify the ADA as one of the "four Spending Clause statutes"—alongside Title IX, Title VI, the Rehabilitation Act, and the Affordable Care Act—*Cummings* has the same effect on ADA claims.  *See, e.g.*, *Pennington*, 2023 WL 348320, at *2.

physical injuries and psychological injuries are compensable after *Cummings*.   But that interpretation ignores the very next paragraph.   There, the *Pennington* court rejected the "[p]laintiffs' request for 'compensatory damages' for 'mental, emotional, and ***psychological injuries*' and 'pain and suffering'" as "nothing more than a request for emotional damages."   *Id.* at \*4 (emphasis added).   ***The court thus struck that damages request***.   *See id.*

It would be illogical to read *Pennington* to mean that "compensatory damages" for "psychological injuries" are barred under *Cummings* yet the medical expenses for those same injuries are still available.   The only sensible reading of the decision is that, in response to the defendant's argument that whole claims should be dismissed, the district court found that the claims could survive because the plaintiffs sought not only damages for psychological injuries (which would be precluded) but also for the treatment of physical injuries that were inflicted on them during the bullying incidents.   On that basis, the court struck the psychological damages but declined to dismiss the claims in toto.   And even if *Pennington* stood for the principle Plaintiff suggests, it would be a clear outlier, far out of step with how other courts have approached the post-*Cummings* landscape.   *See* Br. at 8 & n.8 (collecting cases).   The availability of damages for psychological or emotional injuries does not hinge on whether the plaintiff can prove such damages with receipts or bills.   All such damages are precluded after *Cummings*.

Finally, in support of her quest for mental health treatment costs, Plaintiff offers another groundless circumvention argument:   "*Cummings* only bars generalized and unquantifiable 'emotional distress' that occur in the absence of a physical injury, and not economic damages based in actual treatment costs for mental conditions caused by the defendant's conduct as [Plaintiff] seeks in this case."   Opp'n at 21.   She again cites ***zero*** cases in support of that proposition, and there is little wonder why:   it defies *Cummings*.   In its decision, the Supreme

Court refused to engage in a "more nuanced" determination for when emotional distress damages *may* be awarded, such as in "a narrow and idiosyncratic group of cases, rather than making them available *in general*." 596 U.S. at 227-28. Yet that is what Plaintiff would have this Court do now. Though it should go without saying, this Court should apply *Cummings* as written: emotional distress damages are not available because they are not "traditionally available in suits for breach of contract." *Id.* at 230.

IV.   **Plaintiff's claims for damages based on lost earning capacity are barred under the rationale of *Cummings* and the Fourth Circuit's decision in *Rice*.**

Plaintiff does not and cannot disagree that *Cummings* teaches that the damages available to a plaintiff seeking to enforce the antidiscrimination provisions of Spending Clause statutes are limited to those remedies that were traditionally available for breach of contract. *See* Br. at 10-13; Opp'n at 15. She nevertheless claims that "damages for lost earnings are traditionally available contract remedies in private suits." Opp'n at 15. Not so.

The authorities on which she relies—which are the same as those cited by the School Board—show that lost earnings are ***not*** available as a matter of course in contract cases. Indeed, Plaintiff cites approvingly from *Rice v. Community Health Association*, *see id.* at 16, but she elides the critical qualifications made by the Fourth Circuit in that decision: a plaintiff may "recover consequential damages if ***he has alleged and proved*** that breach of an employment contract resulted in the ***loss of future identifiable opportunities, which the parties could have anticipated at the time they entered into the contract.***" 203 F.3d at 288-89 (emphases added). Judge Nachmanoff recognized the importance of that qualification when he explained that plaintiffs seeking damages related to future employment "must plead and prove 'future identifiable professional opportunities that would have been available to [them] absent the breach' and ***that***

14

***were in contemplation of the parties at the time of their contract.***"  *Fairfax Cty. Sch. Bd.*, 2023 WL 424265, at *6 (emphasis added).

*Rice* and *Doe* articulate the basic requirement that consequential damages must be foreseeable to the contracting parties ***at the time they enter into the contract***.  *See* Restatement (Second) of Contracts § 351 (1981) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach *when the contract was made*.") (emphasis added).  Thus, an opportunity is not "identifiable" simply because it is specified by a plaintiff.[8]  Instead, "identifiable" refers to whether the contracting parties could have anticipated or contemplated the opportunity when they entered into the contract.  *See, e.g.*, *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 893 (1st Cir. 1988) (upholding award of consequential damages where jury was instructed the award could be made "only if the harm was a foreseeable consequence within the contemplation of the parties to the contract when it was made").

Plaintiff's assertion of "identifiable" opportunities falls short on this front.  As the School Board pointed out, she did not plead and thus cannot prove the loss of any identifiable job opportunities that were available to her at the time of the alleged Title IX violations (*i.e.*, in 2011 and 2012), let alone at the time the "contract" was formed when she enrolled in the school system as a seven-year-old.  All she alleged was a broad claim of "lost future earnings and earning capacity," SAC ¶¶ 236, 241.  That is exactly the kind of "generalized evidence" that falls short under basic principles of contract law.

Contrary to Plaintiff's assertion, her vocational expert's identification of specific career paths she *could* have pursued does not solve the problem because none of the jobs she may (or

---

[8] To be sure, the plaintiff must "prove with specificity that the defendant's breach actually adversely influenced or affected future job opportunities."  24 Williston on Contracts § 66:4 (4th ed.).

may not) have pursued as an adult could be anticipated or contemplated by the parties when Plaintiff was in the 7th grade. Plaintiff's reliance on hypothetical jobs that may become available to her post-high school or post-college does nothing to show that these opportunities were available to her when she was in 7th grade or that they were within the contemplation of both parties—both she and the School Board—when she was in middle school.

Plaintiff misreads both *Rice* and the School Board's explanation of the distinction between identifiable professional opportunities and general diminished earning capacity which the law categorizes as "reputational harm." The School Board does not contend that Plaintiff seeks damages for diminished earning capacity because the alleged Title IX violation injured her reputation. Instead, the relevant authorities explain that, without the specific allegations and proof of identifiable professional opportunities that would have been foreseeable, her claim "is plagued with the same problems as a claim for consequential damages for injury to reputation." *Rice*, 203 F.3d at 289. In other words, courts have treated such deficient assertions of lost earning capacity as "*essentially* claims of reputational harm [that] are not recoverable in contract law." *Doe*, 2023 WL 424265, at *6 (emphasis added); *see also* 24 Williston on Contracts § 66:4 (observing that "generalized evidence" regarding "difficulty in obtaining future employment following the defendant's breach" is insufficient because "such proof amounts essentially to an assertion that the defendant's breach harmed the plaintiff's reputation").

Plaintiff's focus on the connection of her "physical injuries" to her lost earnings claim is beside the point. Whether framed as physical or emotional, the Fourth Circuit made clear in *Rice* that *no* injury can be the basis for breach-of-contract damages related to future employment in the absence of pleading and proof of specific, identifiable opportunities that were contemplated by both parties when they entered the contract. Plaintiff made no such specific allegations in her

16

Second Amended Complaint.  And she lacks any such proof.  Indeed, Plaintiff acknowledges as much when she asserts that the "physical" injuries she attributes to the Title IX violation "have foreclosed her ability to have a professional career as a physician, an attorney, *or any other occupation*."  Opp'n at 18 (emphasis added).  That describes a tort remedy, not a contract remedy. *See* Restatement (Second) of Torts § 924, cmt. d (1979) (explaining that "future harm to the earning capacity of the injured person" may be calculated by "the difference between the earnings that the plaintiff probably would or could have received during his life expectancy but for the harm and the earnings that he will probably be able to receive during the period of his life expectancy now as determined").

It is no surprise that Plaintiff cannot cite a single post-*Cummings* case that has allowed a Title IX plaintiff who was in middle school or even high school at the time of the alleged Title IX violation to recover damages based on lost earnings.  Instead of explaining how her theory aligns with traditional contract law, Plaintiff accuses the School Board of imposing a nonsensical requirement that a middle schooler demonstrate an identifiable career opportunity years before entering the adult workforce.  But, in truth, the contract-law analysis that is dictated by *Cummings* and *Barnes*, and similar cases addressing Spending Clause legislation, requires the Court to heed that lack of proof.  In that vein, Plaintiff does not address, much less refute, Judge Nachmanoff's reasoning in *Doe* that the losses of post-college job opportunities are "too attenuated in time from [an] alleged Title IX violation during [a] Plaintiff's high school years to prove Defendant's 'breach actually adversely influenced or affected job opportunities.'"  *Doe,* 2023 WL 424265, at *6.

The School Board is thus entitled to summary judgment on Plaintiff's claims for diminished earning capacity and lost future earnings.

17

## **CONCLUSION**

For the reasons discussed above, and in the School Board's opening brief, the School Board respectfully requests the Court grant summary judgment in its favor as to Plaintiff's claim for damages against the School Board for (1) her claimed emotional distress injuries, including physical maladies attributed to her claimed emotional distress; (2) costs of past or future treatment of such emotional distress; and (3) diminished earning capacity or lost earnings.

Date:  December 1, 2023                              Respectfully submitted,

By: */s/ Ryan M. Bates*
    Ryan M. Bates (VSB No. 74661)
    Sona Rewari (VSB No. 47327)
    Scott W. Burton (VSB No. 90601)
    HUNTON ANDREWS KURTH LLP
    2200 Pennsylvania Avenue, NW
    Washington, DC 20037
    Telephone: (202) 955-1500
    Facsimile: (202) 778-2201
    rbates@HuntonAK.com
    srewari@HuntonAK.com
    burtons@HuntonAK.com

    *Counsel for Defendant*
    *Fairfax County School Board*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 1, 2023, I electronically filed this document with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to counsel of record for all Parties.

By:  *<u>/s/ Ryan M. Bates</u>*
Ryan M. Bates

19