**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:19-cv-00917-RDA-WEF |
| v. | ) | |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF B.R.'S BRIEF IN RESPONSE TO DEFENDANT**
**FAIRFAX COUNTY SCHOOL BOARD'S MOTION FOR**
<u>**SANCTIONS DUE TO SPOLIATION**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................. 1

SUMMARY OF THE ARGUMENT ....................................................................... 4

    A.    B.R. did not destroy any evidence which she was under a duty to preserve .......... 4

    B.    While not improper in their own right, the actions of B.R.'s mother are not imputed to B.R. .............................................................................................. 7

    C.    In addition to the legal insufficiencies in the Motion, FCSB's factual assertions are unsupported ................................................................................ 8

STANDARD OF REVIEW ...................................................................................... 9

ARGUMENT ........................................................................................................ 12

I.    FCSB Cannot Establish The Criteria for Rule 37(e) Sanctions ....................... 12

    A.    B.R. did not have a duty to preserve ESI in 2012 ................................. 12

    B.    FCSB has not demonstrated by "clear and convincing evidence" that B.R. intended to deprive FCSB of information in this case .......................... 16

II.    Mrs. R.'s Actions Cannot Be Imputed to B.R. For Purposes of Rule 37(e) Sanctions .... 18

III.    FCSB Has Not Demonstrated that Half of The ESI It Asserts Was Lost Even Belonged| to B.R. .............................................................................................. 22

CONCLUSION ...................................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................ 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Andra Grp., LP v. JDA Software Grp., Inc.*,
No. 3:15-mc-11-K-BN, 2015 WL 12731762 (N.D. Tex. Dec. 9, 2015).............................. 8, 21

*AXIS Ins. Co. v. Terry*,
No. 2:16-cv-01021-JHE, 2018 WL 9943825 (N.D. Ala. Apr. 23, 2018) ...................... 7, 20, 21

*Castro v. Smith*,
No. 16-CV-8147 (JGLC), 2023 WL 5371311 (S.D.N.Y. Aug. 22, 2023).............................. 21

*Davis v. Cap. One, N.A.*,
No. 1:22-cv-00903 (AJT/IDD), 2023 WL 6964051 (E.D. Va. Oct. 20, 2023)................ 6, 9, 12

*Doe v. Fairfax Cnty. Sch. Bd.*,
No. 1:18-cv-00614-LO-MSN, 2019 WL 8887763 (E.D. Va. June 28, 2019) ........................... 3

*Fowler v. Tenth Planet, Inc.*,
--- F. Supp. 3d ----, 2023 WL 3569816 (D. Md. May 19, 2023) .................................... 9, 10, 19

*Goodman v. Praxair Servs., Inc.*,
632 F. Supp. 2d 494 (D. Md. 2009)......................................................................................... 10

*Haysbert v. Bloomin' Brands, Inc.*,
No. 4:20cv121, 2021 WL 5003284 (E.D. Va. July 9, 2021) ....................................... 10, 12, 20

*Huggins v. Prince George's Cnty.*,
750 F. Supp. 2d 549 (D. Md. 2010)......................................................................................... 10

*In re Correra*,
589 B.R. 76 (Bankr. N.D. Tex. 2018).......................................................................................... 7

*Jennings v. Frostburg State Univ.*,
--- F. Supp. 3d ----, 2023 WL 4567976 (D. Md. June 27, 2023) .................................. 10, 16, 19

*Johns v. Gwinn*,
503 F. Supp. 3d 452 (W.D. Va. 2020) ................................................................................ passim

*Lee v. Belvac Prod. Mach., Inc.*,
No. 20-1805, 2022 WL 4996507 (4th Cir. Oct. 4, 2022) ........................................................... 9

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
No. 15cv9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ............................ 24

*Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*,
2 F.3d 544 (4th Cir. 1993) .......................................................................................................... 7

*Martin v. Commonwealth*,
  Record No. 1966-04-4, slip op. at __ (Va. Ct. App. Sept. 6, 2005)............................................ 4

*McBride v. Commonwealth*,
  605 S.E.2d 773 (Va. Ct. App. 2004) ............................................................................................ 4

*Owen v. Rutherford Supply Corp.*,
  No. 3:19cv225–HEH, 2020 WL 2764815 (E.D. Va. Jan. 30, 2020) ................................ passim

*Pavelic & LeFlore v. Marvel Ent. Grp.*,
  493 U.S. 120 (1989).................................................................................................................... 7

*Wall v. Rasnick*,
  42 F.4th 214 (4th Cir. 2022) ...................................................................................................... 9

## **Statutes**

Va. Code Ann. § 18.2-63(C)(i) (West 2023) .................................................................................. 4

Va. Code Ann. § 18.2-61(A)(iii) (West 2023) ............................................................................... 4

## **Rules**

Fed. R. Civ. P. 37(e)(2)(B) ......................................................................................................... 11

Fed. R. Civ. P. 37(e) .......................................................................................................... passim

## INTRODUCTION

Fairfax County School Board ("FCSB") seeks to hamstring B.R.'s ability to obtain justice for the sexual abuse she suffered as a result of FCSB's deliberate indifference based almost entirely on its allegation that *her mother*, seven years before this lawsuit was filed, did not "preserve **every single electronic device and account**" B.R. used *as a 12-year-old* despite the fact that neither B.R. nor her mother had planned the instant lawsuit at the time.  Br. at 1.  According to FCSB, B.R.'s mother, Mrs. R., who is not a party to this case, was under a duty to preserve B.R.'s electronic devices and accounts "no later than March 2012" because Mrs. R. should have anticipated that B.R. would file this case seven years later.  And, FCSB insists, without any evidence, that Mrs. R.'s intent in taking certain actions to protect her daughter against harmful exposure to social media was instead done with a seven-year forethought to intentionally deprive FCSB of the information's use in this case.

Unsurprisingly, the Court has already rejected the core premise of FCSB's Motion:

> [P]eople delete e-mails.  People delete text messages . . . . without there necessarily being a nefarious inference. . . .  **I don't think you can go back to 2012 or 2014 and just say, you know, let me know every e-mail that was deleted or every text message that was deleted** . . . .  If there was a discovery request that was propounded and if there were steps taken after the discovery request was made to delete information that was responsive to the discovery request, that's one thing. . . . **there's a line of demarcation** . . . **that line is when the discovery requests were propounded** . . . what I'm going to need is a very specific linear connection between here is the discovery request that was made . . . and here is . . . why we think its requires further relief either to . . . evaluate whether or not there's a spoliation issue or whether or not there is some other mechanism by which the Court needs to compel compliance with the discovery request.  So, I think its going to have to be that . . . linear.

Ex. 1 (Sept. 19, 2023 Hr'g Tr.) at 24:22–28:10 (emphasis added).[1]

---

[1] At this hearing, the Court directed counsel to work with B.R. to attempt to access her legacy email and social media accounts.  B.R. and her counsel fully complied with that Order, and provided Defendants with a detailed notice of that compliance on September 26th.  *See* Ex. 12 (Sept. 26, 2023 Ltr. from A. Brenner) at 1–6.

But before turning to the lack of any merit in FCSB's Motion, it is important to understand the context (or pretext) for FCSB's filing. To be sure, spoliation of evidence can cause prejudice which "cannot be overstated." *See* Br. at 3. But it is FCSB and its employees, not B.R. or Mrs. R., who have admittedly failed to preserve critical evidence in this case.

For example, B.R.'s classmates testified at their depositions that they provided written statements to school officials *about the abuse and bullying they witnessed B.R. suffer* that FCSB does not appear to have preserved. Ex. 2 (O.B. Depo. Tr.) at 78:20–80:1; Ex. 3 (Co.K. Depo. Tr.) at 161:9–163:20, 202:13–212:7. Indeed, FCSB has acknowledged its inadequate record keeping regarding this precise type of evidence as part of its settlement with the United States Department of Education Office of Civil Rights (OCR).

Yet, in what can only be described as an example of projection, FCSB has the audacity to accuse B.R. of preserving what she believed helps her case, "and destroy[ing] the rest." *See* Br. at 26. Even more concerning are the admissions of Defendant A.F., the Principal of Rachel Carson Middle School at the time of the incidents at issue. He testified at his deposition that, upon his retirement in 2015, he "made sure [he] witnessed" his school-issued laptop being wiped so that the information stored on it was not preserved anywhere. Ex. 4 (A.F. Depo. Tr.) at 102:18–106:18. Indeed, A.F.'s approach appears to have been standard operating procedure for school officials in Fairfax County rather than an isolated incident. *See* Ex. 5 (Aug. 15, 2014 OCR Complaint Resolution Letter) at BR_WOR_9985–86. This is especially troubling because it occurred a year *after* the OCR required FCSB to " ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████ ," Ex. 5 (Aug. 15, 2014 OCR Complaint Resolution Letter) at BR_WOR_9993, because the OCR's investigation of FCSB's response to B.R.'s reports of sexual abuse revealed "█████████

2

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████," Ex. 5 (Aug.

15, 2014 OCR Complaint Resolution Letter) at BR_WOR_9985–86.

This case is not the first in which FCSB has spoliated *the same type* of evidence relevant to a Title IX claim brought against it by a student in its care.  In *Doe v. Fairfax County School Board*, then-Magistrate Judge Nachmanoff found that FCSB (like here) destroyed "formal witness statements of [the] plaintiff [and three of her friends]," school officials' "interview notes," and "text messages between [school officials]" relevant to the plaintiff's Title IX claim.  *See Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614-LO-MSN, 2019 WL 8887763, at *6 (E.D. Va. June 28, 2019).  Judge Nachmanoff further found that "FC[SB] did engage in culpable, negligent conduct— bordering on grossly negligent conduct" because "***FC[SB] has a history of failing to appropriately respond to students' complaints of sexual harassment . . . [and] completely disregarded its own protocol by failing to preserve the relevant documents in the instant action***."  *Id.* at *7 (emphasis added).[2]

Understandably anxious after Judge Nachmanoff's sanctions ruling in *Doe* and in light of its knowledge of its spoliation of evidence in this case, FCSB elected to file its own "spoliation" Motion well before the January 12, 2024 deadline for pretrial motions, in an apparent attempt to

---

[2] Judge O'Grady overruled FCSB's objections to Judge Nachmanoff's Order, "agree[ing] that for the reasons stated in Judge Nachmanoff's Order spoliation sanctions are warranted, but . . . withhold[ing] ruling on what form of jury instruction is the appropriate sanction in this case" until he "had the opportunity to hear the evidence on the loss or destruction of the documents that is presented at trial."  Order at 1–2, *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614-LO-MSN, (July 23, 2019), Dkt. 253.  It appears that an adverse jury instruction was not ultimately given.

3

neutralize the issue.  ECF No. 475 at 2.  To be sure, B.R. will file several such motions at or near

that deadline, which may include motions regarding FCSB's and other Defendants' spoliation of

critical evidence of their conduct.

**SUMMARY OF THE ARGUMENT**

FCSB's extraordinary arguments in support of its quest for severe sanctions under Federal

Rule of Civil Procedure 37(e)—the latest in its salvo of motions seeking to avoid a jury's scrutiny

of its unlawful conduct[3]—fail for three independent reasons, each of which alone warrant summary

denial of FCSB's Motion.

**A.      B.R. did not destroy any evidence which she was under a duty to preserve**

FCSB's Motion is brought pursuant to Federal Rule of Civil Procedure 37(e).  Mot. at 1;

*see* Br. at 20.  However, as demonstrated below, FCSB has not and cannot establish Rule 37(e)'s

requirements for the sanctions it seeks.  For one, there is no evidence that B.R. anticipated litigation

in 2012 such that she had a duty to preserve her Facebook accounts, her Hotmail email, and her

cell phone.

---

[3] For the *second time* in as many weeks, FCSB—a school board charged with caring for over 150,000 children—asserts that a 12-year-old girl can "invite[] and welcome[] sexual contact with [a thirteen-year-old boy]."  Br. at 2; *see* ECF No. 500 at 15 ("**Plaintiff offered, invited, and enthusiastically participated in sexual activity with C.K.**" (emphasis in original)).  Needless to say, there is no such thing as a 12-year-old consenting to sexual contact under Virginia law, let alone "invit[ing] and welcom[ing]" it.  Va. Code Ann. § 18.2-63(C)(i) (West 2023) ("a child under the age of thirteen shall not be considered a consenting child"); Va. Code Ann. § 18.2-61(A)(iii) (West 2023) (defining sexual intercourse with a child under the age of 13 as rape); *see also Martin v. Commonwealth*, Record No. 1966-04-4, slip op. at __ (Va. Ct. App. Sept. 6, 2005) ("Virginia law has historically refused to recognize the consent of a victim under the age of fifteen — treating the child, as a matter of law, to be too emotionally and developmentally immature to engage in consensual sexual activities with another."); *McBride v. Commonwealth*, 605 S.E.2d 773, 775 (Va. Ct. App. 2004) ("The legislature's use of the term 'carnally know, without force' is a recognition of a long standing, fundamental tenet of Virginia's law that a minor child under the age of fifteen is incapable of consenting.").  One would think that a *school board*, charged with taking care of 150,000+ children, would understand this.

4

In March 2012 (the date from which FCSB declares B.R. had a duty to preserve), B.R. was 12 years old.  There is no dispute that she was under intensive medical care for, among other things, ███████████████████.  *See generally* Exs. 6–8.  There is no evidence that she even knew what a lawsuit was at that age, let alone clear and convincing evidence that she was contemplating one against FCSB at the time.  In fact, it was not until 2019, seven years later, that she filed this lawsuit.

As it relates to Mrs. R., and contrary to FCSB's assertions, there is no evidence that she was contemplating filing a lawsuit on behalf of her daughter in 2012.  Indeed, the evidence is clear that Mrs. R. had three things on her mind at the time relevant to this Motion:  (1) protecting her daughter from further harm; (2) getting her daughter the help she desperately needed; and (3) seeking assistance from the federal government to try to get FCSB to respond appropriately to her daughter's suffering.

To accomplish the first of these three objectives, which FCSB now wants to use as a basis to dismiss B.R.'s lawsuit, Mrs. R. followed (1) the advice from B.R.'s health care providers; and (2) guidance she had read regarding bullying through social media, and prevented her daughter's continued exposure to certain social media accounts where she believed the abuse of her daughter had occurred and/or been amplified.  Ex. 9 (Mrs. R. Depo. Tr.) at 59:11–60:10, 411:6–412:18.

To accomplish the second and third objectives (*i.e.*, helping her daughter with her educational needs and seeking help from governmental authorities to compel changes by FCSB to protect other students), Mrs. R. did indeed consult with counsel.  For the objective of helping her daughter get necessary educational accommodations, those attorneys assisted Mrs. R. in trying to obtain an Individualized Education Plan (IEP) from FCSB which would help her 12-year-old daughter obtain an education.  For the third objective (*i.e.*, seeking help from governmental

authorities to compel changes by FCSB to protect other students), she consulted with counsel regarding the filing of a discrimination complaint with the OCR to secure FCSB's compliance with its obligations under Title IX to protect students like B.R. from the type of abuse alleged in this case.

In short, FCSB's speculation regarding *why* Mrs. R. consulted with counsel in 2012 is wrong. Indeed, the only competent record evidence demonstrates that Mrs. R.'s filing of a complaint with the OCR with the assistance of the National Women's Law Center, who also brought in Arnold & Porter, and her retention of Lisa Fagan, a special education lawyer, was for the purposes of developing an IEP for B.R. and seeking help from government authorities to ensure that FCSB " ███████████████████████████████████████████████████████

███████████████████████████████████████████████████ " Ex. 9 (Mrs. R. Depo. Tr.) at 379:18–382:12; *see* Ex. 10 (Sept. 12, 2023 OCR Notification and Data Request Letter) at BR_WOR_8719–_8722; Ex. 11 (June 14, 2023 Ltr. from L. Fagan) at FCSB-BR-007762.

Indeed, apart from the speculation of a teenage boy based on a conversation he recalls with B.R. and Mrs. R. (discussed below), there is no evidence that Mrs. R. (or 12 year-old B.R.) was contemplating the filing of this lawsuit in 2012. Indeed, the Court need not speculate about this fact because we know that Mrs. R. not only was not contemplating such a lawsuit back then, *we know that she never filed one*. And even if there were any evidence that B.R. or Mrs. R. anticipated this litigation in 2012 (again, there isn't) such that a duty to preserve ESI arose, there is no evidence, let alone "clear and convincing evidence,"[4] that Mrs. R.'s actions to prevent her

---

[4] "In this District, a movant must demonstrate that sanctions are appropriate under Rule 37(e) by a clear and convincing standard of proof." *Davis v. Cap. One, N.A.*, No. 1:22-cv-00903 (AJT/IDD), 2023 WL 6964051, at *16 (E.D. Va. Oct. 20, 2023). FCSB conspicuously fails—yet

daughter's continued exposure to harmful social media and similar information reaching her through her cell phone were done with the intent to deprive FCSB of their use in this case. Similarly, there is no evidence that B.R. forgot the password to her Hotmail account with the intent to deprive FCSB of its use in this case. In fact, B.R.'s Hotmail account has not been "deleted" by anyone. Rather, B.R. has not accessed this account since at least 2012—when she was twelve years old—and has forgotten the password during the seven years between her last access and this litigation. Ex. 12 (Sept. 26, 2023 Ltr. from A. Brenner) at 1–2; Ex. 13 (B.R. Depo. Tr. Vol. 2) at 24:13–25:6. And, despite her best efforts, B.R. has been unable to reset the password. Ex. 12 (Sept. 26, 2023 Ltr. from A. Brenner) at 1–2. Forgetting the password to an email account B.R. has not accessed since she was twelve years old is not "clear and convincing evidence" of an intent to deprive FCSB of its use in this case.

> **B.   While not improper in their own right, the actions of B.R.'s mother are not imputed to B.R.**

Rule 37(e) applies only to "a party."[5] Other than forgetting her password to an email account she used a decade ago, FCSB does not allege that B.R. has deleted anything. That is

---

again—to even acknowledge the "clear and convincing evidence" standard of proof in its own Brief. *See generally* ECF 500 (omitting any mention that FCSB has the burden to prove "fraud on the court" by "clear and convincing evidence").

[5] By its plain terms, Rule 37(e) applies only to "a party." Fed. R. Civ. P. 37(e); *see Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993) ("We give the Federal Rules of Civil Procedure their plain meaning." (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989)). District courts in this Circuit and across the country have applied Rule 37(e)'s plain terms and held that it applies to parties and does not apply to non-parties. *E.g.*, *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020) ("Rule 37(e) provides for sanctions when 'a *party* fails to take reasonable steps to preserve ESI." (alterations adopted)); *AXIS Ins. Co. v. Terry*, No. 2:16-cv-01021-JHE, 2018 WL 9943825, at *5 (N.D. Ala. Apr. 23, 2018) ("Rule 37(e) is premised on '*a party*' failing to take reasonable steps to preserve evidence it had a duty to preserve." (emphasis added)); *In re Correra*, 589 B.R. 76, 123 (Bankr. N.D. Tex. 2018) ("The court does not think Rule 37(e) applies here with regard to Ms. Gianardi. Even though the underlying facts seem to involve precisely what Rule 37(e) addresses—a failure to preserve electronically stored information in the anticipation or conduct of litigation—the reality is that Ms.

because she did not.  To get around this inconvenient fact, FCSB points to the actions Mrs. R. took to protect her daughter, like consulting lawyers to help her get an IEP, and initiating OCR proceedings to protect other students from harm, as being undertaken as an "agent" for B.R.

There is no dispute that Mrs. R. is not, and has never been, "a party" to this litigation. Accordingly, even if FCSB could meet its burden under Rule 37(e) to show that B.R. had a duty to preserve B.R.'s electronic devices and accounts in 2012, and that Mrs. R. acted with the intent to deprive FCSB of the information's use in this case (as explained, it has done neither), Mrs. R.'s actions are only relevant in the Rule 37(e) analysis in this case to the extent they can be imputed to B.R.  But there is no evidence—none—that Mrs. R. took any of the actions FCSB now complains about at B.R.'s behest such that Mrs. R.'s actions could be imputed to B.R. for purposes of Rule 37(e) sanctions.

### C.     In addition to the legal insufficiencies in the Motion, FCSB's factual assertions are unsupported

Key elements of FCSB's Motion are based on its speculation regarding certain factual disputes.  For example, FCSB identifies five "fake Facebook profiles."  However, in addition to the Facebook profile under her own name, B.R. has acknowledged only one additional profile she used (*i.e.*, "Jenni Taylor").   FCSB's only evidence that three of the other "fake Facebook profiles"—the "High School Freshman," "Adrianna Capsulo," and "Christina Affains" profiles— belonged to B.R. is that a fellow student, Co.K., "deduced" and "speculated" that B.R. had been

---

Gianardi was **not a party yet** when she manipulated the Computer. She was a non-party witness at that point in time. . . .   *Rule 37(e) applies only to parties*." (bold emphasis in original, italic emphasis added) (footnotes omitted)); *Andra Grp., LP v. JDA Software Grp., Inc.*, No. 3:15-mc-11-K-BN, 2015 WL 12731762, at *16 (N.D. Tex. Dec. 9, 2015) ("Even if p202 had a duty to preserve evidence, *Rule 37(e) would not apply because p202 is not a party*." (emphasis added)).

behind them.   Co.K.'s deductive reasoning is not clear and convincing evidence that these Facebook accounts belonged to B.R.

FCSB also declares that the "Facebook user" profile reflected in the approximately 250 pages of "Facebook messages" C.K. produced on the last day of discovery also belonged to B.R. However,  as B.R. has already explained in response to FCSB's recent Motion to Dismiss for Fraud on the Court, FCSB's counsels' *ipse dixit* that B.R. is the unidentified "Facebook user" in those messages does not make it so.  *See* ECF No. 567 at 8–9, 12.

## STANDARD OF REVIEW

"The alleged spoliation of the electronically stored information at issue here is governed by Rule 37(e)."[6]  *See Lee v. Belvac Prod. Mach., Inc.*, No. 20-1805, 2022 WL 4996507, at *3 (4th Cir. Oct. 4, 2022) (citing *Wall v. Rasnick*, 42 F.4th 214, 222–23 (4th Cir. 2022)).  "To trigger Rule 37(e), four criteria must be met:  (1) the party was under a duty to preserve the ESI at issue; (2) the ESI at issue was not preserved; (3) the loss of the ESI was due to the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery."  *Fowler v. Tenth Planet, Inc.*, --- F. Supp. 3d ----, 2023 WL 3569816, at *6 (D. Md. May 19, 2023).  It is the moving party's burden to establish each of the four criteria by clear and convincing evidence.  *Davis*, 2023 WL 6964051, at *16 ("[A] movant must demonstrate that sanctions are appropriate under Rule 37(e) by a clear and convincing standard of proof.").

As to the first criteria, a party is under a duty to preserve ESI if (1) "the party should have reasonably anticipated litigation" and (2) "the party reasonably should have known that the evidence at issue might be relevant to such litigation."  *Johns*, 503 F. Supp. 3d at 462.  "[T]he mere

---

[6] Here, FCSB's Motion centers around an alleged failure to preserve Electronically Stored Information ("ESI").

existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation." *Jennings v. Frostburg State Univ.*, --- F. Supp. 3d ----, 2023 WL 4567976, at *33 (D. Md. June 27, 2023) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 510 (D. Md. 2009). "Rather, this duty begins 'somewhere between knowledge of the dispute and direct, specific threats of litigation.'" *Id.* (quoting *Huggins v. Prince George's Cnty.*, 750 F. Supp. 2d 549, 560 (D. Md. 2010). "District courts within the Fourth Circuit have concluded that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence," and "[w]here these actions are absent, the events imputing reasonable anticipation of litigation are highly case specific and fact dependent." *Id.* (internal quotation marks and citations omitted).

As to the third criteria, "spoliation must involve more than the 'negligent loss or destruction of evidence,' as 'the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction.'" *Owen v. Rutherford Supply Corp.*, No. 3:19cv225–HEH, 2020 WL 2764815, at *1 (E.D. Va. Jan. 30, 2020) (citation omitted); *see Jennings*, 2023 WL 4567976, at *35 ("In order to impose sanctions for spoliation with respect to ESI, there is a heightened standard of culpability."); *Fowler*, 2023 WL 3569816, at *7 ("[T]o the extent that such pre-amendment cases are explicitly inconsistent with current Rule 37(e)—such as justifying dismissal or an adverse inference instruction on conduct falling short of a specific finding of intent to deprive—the Court no longer views them as persuasive in addressing spoliation of ESI."). A movant must prove an "intent to deprive by clear and convincing evidence, especially when—as here—an adverse inference instruction is requested." *Haysbert v. Bloomin' Brands, Inc.*, No. 4:20cv121, 2021 WL 5003284, at *4 (E.D. Va. July 9, 2021).

FCSB requests remedies ranging from an Order allowing only a one-sided presentation of the evidence regarding social media to an adverse jury instruction.  *See* Br. at 3, 30.  Because FCSB has failed to establish that *any* sanctions are warranted, neither is warranted here. Moreover, as to the one-sided presentation of evidence regarding social media, it is unclear what FCSB is even asking for.  The only specific request is that B.R. be precluded from testifying about social media she did not produce, specifically identifying the "collage" of Facebook messages she received, sent, or even viewed.  *See* Br. at 30.  It will be up to the District Court, in conducting the trial, to ensure that any evidence admitted (related to social media or otherwise) satisfies the criteria for admission as provided for in the Federal Rules of Evidence.  Whichever side seeks to admit this type of evidence will be subject to the same rules.

FCSB's request regarding an adverse jury instruction is not just unwarranted, it also appears to be something FCSB acknowledges it has not established an entitlement to under the current record.  Specifically, although FCSB requests that the jury be instructed that it "may conclude that the missing data would have disclosed information adverse to Plaintiff and undermined her claims in this litigation," *see* Br. at  30, it then states that "***it is not yet seeking sanctions under Rule 37(e)(2)***," *see id.* at 30 n.10 (emphasis added).   But an adverse jury instruction like the one FCSB requests is *only* available under Rule 37(e)(2).  *See* Fed. R. Civ. P. 37(e)(2)(B) ("[O]nly upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may [the court] . . . instruct the jury that it may or must presume the information was unfavorable to the party[.]"); *see* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Subdivision (e)(2) applies to jury instructions that permit or require the jury to presume or infer that lost information was unfavorable to the party that lost it.").

In any event, "[i]n this District, a movant must demonstrate that sanctions are appropriate under Rule 37(e) by a clear and convincing standard of proof," *Davis*, 2023 WL 6964051, at *16, "especially when—as here—an adverse inference instruction is requested," *Haysbert*, 2021 WL 5003284, at *4.

## ARGUMENT

### I.      FCSB Cannot Establish The Criteria for Rule 37(e) Sanctions

FCSB has not and cannot meet its burden to prove by "clear and convincing evidence" that Rule 37(e) sanctions are warranted here.[7]   First, there is no evidence that B.R.[8] anticipated litigation in 2012, when she was 12 years old.  And even assuming all of the ESI FCSB claims has been lost belonged to B.R.,[9] there is also no evidence that B.R. destroyed anything, let alone knew "that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction."  *See Owen*, 2020 WL 2764815, at *1.

### A.      B.R. did not have a duty to preserve ESI in 2012

FCSB contends that "the overwhelming weight of evidence" shows that B.R. was anticipating litigation was therefore "under a duty to preserve by no later than March 2012."  Br. at 22–23.  FCSB's "overwhelming" evidence that a lawsuit for money damages was being contemplated and planned for by B.R. in 2012 is:  (1) Co.K.'s speculation about what he

---

[7] It bears repeating that this is the second time in recent motions that FCSB has failed to inform the Court of the "clear and convincing evidence" standard of proof its Motions require. *See generally* ECF 500 (omitting any mention that FCSB has the burden to prove "fraud on the court" by "clear and convincing evidence").

[8] The irrelevance of Mrs. R.'s actions to the Rule 37(e) analysis in this case is discussed in Section II, *infra*.

[9] FCSB's failure to offer any competent evidence that four of the "Fake" Facebook accounts belonged to B.R. is discussed in Section III, *infra*.

remembers B.R. and Mrs. R. telling him in 2012; (2) Mrs. R.'s statement to Detective Chambers during a March 8, 2012 interview that she was ███████████████████████████████ ███████████████████ and that the NWLC "███████████████████████████████████ █████" Br. at Ex. 25, 63:23–64:2; and (3) Mrs. R.'s correspondence with and retention of attorneys who prepared protected work product in 2012 for the purposes of developing an IEP for B.R. and seeking to have the OCR file a Title IX enforcement action. *See id.* FCSB's "overwhelming" evidence crumbles upon closer inspection.

To be clear, there is no evidence that twelve-year-old B.R. anticipated suing FCSB. Although not acknowledged in FCSB's Motion, B.R. was asked about this issue in her deposition, and she testified that she did not decide to sue FCSB until "██████████████████████." Ex. 13 (B.R. Depo. Vol. 2) at 398:6–17.

The only evidence in this case regarding consultations with lawyers in 2012 relates to Mrs. R. (not B.R.), and it is that Mrs. R. worked with those attorneys for the purposes of (1) developing an IEP for B.R., and (2) ensuring that FCSB implemented proper policies and procedures to comply with its duties under Title IX moving forward.  There is no evidence that Mrs. R. did either of these things in 2012 anticipating that her daughter would bring this litigation against FCSB seven years later.  Indeed, the evidence is directly to the contrary.

As Mrs. R. explained at her deposition, when she sought the assistance of government authorities within and outside of FCSB she simply "



" Ex. 9 (Mrs. R. Depo. Tr.) at 379:18–382:12.

The documentary evidence is consistent with Mrs. R.'s deposition testimony. In June 2012, attorney Lisa Fagan wrote to a school official that she "████████████████████████████

████████████████████████████████████████████████████████████████" Ex. 11

(June 14, 2012 Ltr. from L. Fagan) at FCSB-BR-007762. Ms. Fagan's June 2012 letter attached

an "███████████████████████████████," which stated under the heading

"███████" that "████████████████████████████████████████████

████████████████████████████████" Ex. 11 (June 14, 2012 Ltr. from L.

Fagan) at FCSB-BR-007762–64. Nothing in Ms. Fagan's letter indicates that she had been

retained in anticipation of this litigation against FCSB.[10]

And in August 2012, Mrs. R., NWLC, and Arnold &Porter met with school officials "█

████████████████████████████████████████." Ex. 14 (Aug. 7, 2012 email

from F. Zuluaga to Mrs. R.) at FCSB-BR-007624–25. And, following that meeting, no lawsuit

was filed by Mrs. R. against FCSB. Instead, having made the determination that FCSB had failed

to appropriately respond to B.R.'s complaints of a sexually hostile education environment created

by other students at her school, NWLC filed a discrimination complaint with the OCR on B.R.'s

behalf. Ex. 10 (Sept. 12, 2023 OCR Notification and Data Request Letter) at BR_WOR_8719.

In August 2014, the OCR and FCSB entered into a "Voluntary Resolution Agreement" to

resolve NWLC's complaint in which FCSB agreed, among other things, to ████████████████

---

[10] The evidence that FCSB assumes exists, and speculates was destroyed, would likely have little to no relevance to the pursuit of an IEP or the initiation of OCR proceedings. As to the former, the focus is on what are the educational needs of the child. Why the student has those needs is largely immaterial. With regard to the OCR proceedings, the focus is squarely on the school board's compliance with Title IX obligations as they relate to all students, and such proceedings are primarily forward looking. Indeed, FCSB cites to no request by it that such evidence be produced as part of those proceedings, or that it be preserved at any time prior to the filing of the instant lawsuit. The undersigned is not aware of any either.

██████████████████████████.  *See* Ex. 5 (Aug. 15, 2014 OCR Complaint Resolution Letter) at BR_WOR_9982, _9988–98.  Mrs. R.'s efforts in 2012 to ensure that FCSB had the necessary policies and procedures in place to protect B.R. and other students from student-on-student sexual misconduct are not evidence that Mrs. R. anticipated that B.R. would one day sue FCSB.  This lawsuit was not filed for another seven years, and it was filed by B.R. after she reached the age of majority.

Tellingly, part of FCSB's "overwhelming evidence" is what one of B.R.'s friends, Co.K., says he remembers being told by Mrs. R. and B.R. about their intention "to sue FC[SB]" in 2012.  Br. at Ex. 10, 78:20–80:21.  Co.K. explained at his deposition that he sent the "Jenni Taylor" Facebook messages to Mrs. R. in March 2012 because he "believe[d], at this time, B.R., with the support of her mother, they were getting ready to sue FC[SB]."  *Id.* at 78:20–79:3.  There is no evidence that Co.K., at twelve years old, was capable of distinguishing between "suing" FCSB (which did not happen at the time) and initiating a discrimination complaint through the OCR to ensure FCSB's compliance with its obligations under Title IX (which did occur at the time).

Even assuming Co.K. somehow had an appreciation of this distinction as an 8th grade student, his deposition testimony is contradicted by Mrs. R.'s deposition testimony, B.R.'s deposition testimony, and the contemporaneous documentary evidence outlined above.  Accordingly, Co.K.'s testimony about his understanding of Mrs. R.'s and B.R.'s intentions in 2012 is hardly the type of "clear and convincing evidence" of whether either was contemplating litigation against FCSB that is required for Rule 37(e) sanctions.  Indeed, it is not "overwhelming evidence" of anything, let alone "clear and convincing" evidence of an intention to bring this claim against FCSB in 2012.

In short, the evidence shows that neither Mrs. R. nor B.R. anticipated litigation against FCSB in 2012.  B.R. was a twelve-year-old child suffering from the immediate aftermath of the severe trauma she suffered, and was not thinking about lawsuits.  And Mrs. R., with the assistance of counsel and the NWLC, pursued her goals of obtaining an IEP for B.R. and ensuring that FCSB had adequate policies and procedures in place to protect students' safety moving forward.

At most, the evidence shows "the mere existence of a dispute" between Mrs. R. and FCSB regarding FCSB's adherence to B.R.'s IEP and FCSB's commitment to ensuring students' safety, which "does not necessarily mean that parties should reasonably anticipate litigation." *Jennings*, 2023 WL 4567976, at *33 (alteration adopted).  Because there is not clear and convincing evidence that B.R. or Mrs. R. anticipated litigation in 2012, neither B.R. nor Mrs. R were under a duty to preserve B.R.'s electronic accounts and devices.  FCSB has failed to establish the first of the Rule 37(e) criteria, and its Motion should be denied.

### B.    FCSB has not demonstrated by "clear and convincing evidence" that B.R. intended to deprive FCSB of information in this case

FCSB does not even attempt to argue that Mrs. R. or B.R. acted with the intent to deprive FCSB of information in this case.  Instead, FCSB makes the circular argument that because deleting the Facebook accounts and replacing B.R.'s phone "w[as] the result of intentional conduct," the "intent to deprive" requirement for Rule 37(e) sanctions has been met.  *See* Br. at 24–26.  That is not what the law requires.

The obvious flaws in this argument are that FCSB has not shown by "clear and convincing evidence" that (1) B.R. "willfully engaged" in the conduct of forgetting the password to the Hotmail account which she hadn't accessed since she was twelve with the intent to deprive FCSB of evidence; nor that (2) Mrs. R. took actions to ensure that B.R. would not be further exposed to harmful social media for any reason other than to protect B.R. from further abuse and damage.

16

First, there is *no* evidence—let alone "clear and convincing evidence"—that B.R. *intentionally* forgot the password to her Hotmail email account in the years between the time she last accessed the account in 2012 and when she filed this lawsuit in 2019.   Indeed, the uncontradicted evidence is to the contrary.  Ex. 13 (B.R. Depo. Tr. Vol. 2) at 24:5–25:6 ("█████

████████████████████████████████████████████████████████████████

████████████████████████████████████████").  Moreover, FCSB also offers no evidence that B.R. "must have known [at age twelve] that the [Hotmail account] was relevant to some issue in the anticipated case." *See Owen*, 2020 WL 2764815, at *1.  According to FCSB, B.R. should have known, *at age twelve*, that, because "emails from Facebook regarding her account activity" were sent to the Hotmail account, and because her mother's attempts to cut-off her further exposure to harmful social media would later render her Facebook accounts inaccessible, the Hotmail email account would end up being relevant to a future lawsuit against FCSB that she was not then even contemplating.  *See* Br. at 24–25.  This is an incredible number of dots for a then 12-year-old child to speculatively connect, and FCSB offers no evidence to support its daisy chain of speculation.

Second, there is also *no* evidence—"clear and convincing" or otherwise—that the actions taken by Mrs. R. to prevent her daughter's exposure to harmful social media were done with the intent to deprive FCSB of their use in this case nearly a decade later.  In fact, the *only* evidence is the opposite; namely that Mrs. R.'s actions were taken for laudable and legitimate purposes; namely (1) to prevent her daughter's further exposure to harmful social media, and (2) to protect B.R. from further sexual abuse, and the damage she had suffered from it.[11]  Specifically, Mrs. R.

---

[11] Mrs. R. also took action to prevent her daughter from further abuse through calls, voicemails, and texts to her cell phone.

testified at her deposition that she 

" Ex. 9 (Mrs. R. Depo. Tr.) at 59:11–60:10, 411:6–412:18. Mrs. R.'s sworn and uncontradicted explanation of her actions is conspicuously absent from FCSB's Brief, replaced instead with FCSB's baseless conjecture regarding her intent.[12]

Because FCSB cannot show that B.R. "must have known that the evidence was relevant to some issue in the anticipated case, and thereafter *willfully* engaged in conduct resulting in the evidence's loss or destruction," *see Owen*, 2020 WL 2764815, at *1 (emphasis added), it has failed to show that Rule 37(e) sanctions are warranted. FCSB's Motion should be denied.

## II. Mrs. R.'s Actions Cannot Be Imputed to B.R. For Purposes of Rule 37(e) Sanctions

As demonstrated above, FCSB has not demonstrated that either Mrs. R. or B.R. "spoliated" evidence. Implicitly acknowledging the absurdity of its position that the failure of B.R. to remember the password for an email account she used as child can meet the Rule 37(e) criteria for a "spoliation" of evidence sanction, FCSB focuses its accusations primarily on the acts of her mother, Mrs. R. Before addressing the law related to this argument, the audacity of it should not be lost on this Court. FCSB is seeking to use the conduct of a mother, which there is no reasonable dispute (and certainly no contrary evidence) was directed at protecting and helping her 12-year-old child and other children, as a weapon to now deny her child the right to seek justice for herself.

---

[12]

Putting aside FCSB's failure to prove that Rule 37(e) sanctions would be warranted against Mrs. R. even if she were a party to this litigation, FCSB's attempt to pin Mrs. R.'s actions and intentions on B.R. fail for two reasons. First, the duty to preserve ESI under Rule 37(e) is only extended to non-parties like Mrs. R. in exceptional circumstances. *See Johns*, 503 F. Supp. 3d at 462–63 ("The duty to preserve does not generally apply to non-parties to the litigation unless some special relationship or duty arising by reason of an agreement, contract, statute, or other special circumstance counsels in favor of an exception." (internal quotation marks and citation omitted)). Such circumstances are not present here. *See* Discussion at pp. 20–21, *infra*.

Second, FCSB, mistakenly relying on Virginia law[13] and the federal cases applying the common law "spoliation doctrine" before the 2015 amendment to Rule 37(e), asserts that Mrs. R. "was acting on [B.R.']s behalf" . . . [a]s her agent" in 2012, was thus "subject to the same preservation duty as [B.R.]," and implies that Mrs. R's "intent" should be attributed to B.R. *See* Br. at 23 & 25, 26 n.10. But the 2015 Amendments to Rule 37(e), applicable here, impose a "heightened standard of culpability," *Jennings*, 2023 WL 4567976, at *35, that must be met to support "a finding of intent to deprive," *Fowler*, 2023 WL 3569816, at *7 ("[T]o the extent that such pre-amendment cases are explicitly inconsistent with current Rule 37(e)—such as justifying dismissal or an adverse inference instruction on conduct falling short of a specific finding of intent to deprive—the Court no longer views them as persuasive in addressing spoliation of ESI."); *see also Haysbert*, 2021 WL 5003284 ("[T]he Advisory Committee Notes to the 2015 amendments

---

[13] It is unclear what relevance the Virginia statutes cited by FCSB—regarding a parent's status as "natural guardian" over a minor child and a parent's ability to sue and sign pleadings on behalf of a minor child, *see* Br. at 23—have with respect to the Rule 37(e) analysis in this case, which was brought by B.R. on her own behalf as an adult  seven years after FCSB says Mrs. R. failed to preserve ESI.

19

recognized that the rule providing for an adverse instruction 'rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence.'" (citation omitted)), which cannot be imputed from a non-party to a party unless the moving party "establishes that [the non-party] destroyed [the ESI] at [the party's] behest or with [the party's] knowledge," *see AXIS Ins. Co.*, 2018 WL 9943825, at *5, *7 (explaining that a non-party's actions "are only relevant in the Rule 37(e) analysis to the extent they can be imputed to [a party to the litigation]"). FCSB has not demonstrated exceptional circumstances warranting in imposition of a duty to preserve ESI on Mrs. R. in 2012, nor has FCSB demonstrated that the actions taken by Mrs. R. to prevent her daughter's exposure to harmful information through social media or through her cell phone was at B.R.'s behest or with B.R.'s knowledge such that Mrs. R.'s intentions can be imputed to B.R. under Rule 37(e).

Because Rule 37(e) does not apply to non-parties, "[t]he duty to preserve does not generally apply to non-parties to the litigation unless some special relationship or duty arising by reason of an agreement, contract, statute, or other special circumstance counsels in favor of an exception." *Johns*, 503 F. Supp. 3d at 462–63 (internal quotation marks omitted). There is no "agreement, contract, [or] statute" that imposed on Mrs. R. a duty to preserve ESI in 2012. *See id.* Nor does some "other special circumstance counsel[] in favor of an exception." *See id.* Indeed, it seems that the only "special relationship" which courts have found sufficient to impose a duty to preserve to non-parties is "between correctional departments and individual officers" because "the departments 'ultimately bear responsibility for preserving evidence and litigating cases filed by prisoners, and so their failure to preserve evidence may be imputed to individual officer defendants in order to avoid unfair prejudice' to litigants who are or were incarcerated." *Castro v. Smith*, No.

20

16-CV-8147 (JGLC), 2023 WL 5371311, at *6 (S.D.N.Y. Aug. 22, 2023) (quoting *Johns*, 503 F. Supp. 3d at 463).

FCSB does not cite a single case where a court applying Rule 37(e) has held that a non-party parent of a minor child's failure to preserve ESI during the time the child is a minor is attributable to that child when the child reaches adulthood and brings her own lawsuit. In fact, all of the cases addressing the "special relationship" issue indicate that the circumstances of Mrs. R.'s relationship with B.R. in 2012 are insufficient to warrant imputation of Mrs. R.'s conduct to B.R in this lawsuit. *See Andra Grp., LP*, 2015 WL 12731762, at *15 ("evidence of a close working relationship" between a non-party and a party and evidence that the non-party was "aware of potential litigation by [the party]" insufficient to establish a "special relationship"); *AXIS Ins. Co.*, 2018 WL 9943825, at *7 (evidence that the non-party was "a courier of documents in th[e] case" and that the party "claimed [the non-party] as a dependent on [the party's] tax returns" insufficient to attribute the non-party's destruction of ESI to the party).

And, as explained above, FCSB offers no evidence that Mrs. R. "must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." *See Owen*, 2020 WL 2764815, at *1. But even if FCSB could prove Mrs. R.'s intent to deprive FCSB of evidence by clear and convincing evidence, FCSB would still fail to show that Rule 37(e) sanctions are warranted against B.R. because FCSB offers not a shred of evidence that Mrs. R. destroyed any ESI at B.R.'s behest or even absent objection from her. *See AXIS Ins. Co.*, 2018 WL 9943825, at *7 (finding that a non-party's action were "not attributable to [the party]" where the moving party did not "establish[] that [the non-party] destroyed [the ESI] at [the party's] behest or with [the party's] knowledge").

In fact, the *only* evidence is that B.R. did *not* want Mrs. R. to take away her access to Facebook or her cell phone.

As FCSB highlights in its Brief, there was a physical altercation  If anything, the actions taken by Mrs. R. to restrict B.R.'s access to social media was done over her objection, not at her behest or pursuant to her direction.

Mrs. R. is not and has never been "a party" in this litigation. As a non-party, Rule 37(e) is inapplicable to her. Moreover, FCSB has not met its burden to show that Mrs. R. had a duty to preserve ESI in 2012, or that Mrs. R.'s conduct in 2012 is attributable to B.R. for purposes of Rule 37(e) sanctions in this case. For these reasons, FCSB's Motion should be denied.

### III. FCSB Has Not Demonstrated that Half of The ESI It Asserts Was Lost Even Belonged to B.R.

FCSB identifies a total of eight electronic accounts and devices which it asserts have been lost: (1) B.R.'s cell phone from 2011-2012, (2) B.R.'s Hotmail account; (3) the "B.R." Facebook account; (4) the "Jenni Taylor" Facebook account; (5) "The Fake [Facebook] Profile Used to Message C.K. in November 2011"; (6) "The Fake 'High School Freshman' [Facebook] Profile Used to Message Co.K. in January 2012; (7) "The Fake 'Adrianna Capsulo' [Facebook] Profile Used to Message Co.K. in December 2012"; and (8) "The Fake 'Christina Affairs' [Facebook] Profile Used to Message C.K. in January 2012." Br. at 16–19. For four of these eight things— items 5–8, the "Fake" Facebook profiles—FCSB has not even demonstrated that they belonged to B.R., let alone that she destroyed them. Thus, FCSB cannot meet its burden to show that

Rule 37(e) sanctions are appropriate based on the loss of these four "Fake" Facebook profiles because Rule 37(e) does not require a party to preserve ESI that is not "in the party's control." *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve.  For example, the information may not be in the party's control.").

B.R. has already demonstrated that the only evidence that "The Fake [Facebook] Profile Used to Message C.K. in November 2011" belonged to her is FCSB's counsels' insistence that 250 pages of Facebook messages between this fake account and C.K. are authentic and that B.R. is the unidentified "Facebook user" in these messages.  *See* ECF No. 567 at 6–9, 12–13.  The authenticity of these messages is hotly disputed.  Indeed, FCSB has done nothing to establish the messages' authenticity.  Glaringly absent is a sworn declaration or affidavit from C.K. as to the authenticity of the Facebook messages, or the identity of "Facebook user."[14]

And the only evidence that FCSB offers to show that the "High School Freshman," "Adrianna Capsulo," and "Christina Affains" Facebook accounts belong to B.R. is Co.K.'s *deductions*, *suspicions*, and "amateur opinion" of "just the way – just the typing – or the way the person's, like, texting."  *See* Br. at Ex. 10, 73:2–75:4 ("this is just my amateur opinion, I'm not, like a – whatever you call it – like a forensic type, whatever, you know what I'm saying"), 104:7–105:2 ("I began to – so I began to suspect this in my head, that it was B.R.").  To the extent this Court were to even allow such speculative testimony into evidence at trial, these assertions are

---

[14] FCSB filed a Motion to Dismiss for "Fraud on the Court" based primarily on these messages.  FCSB did not submit any evidence demonstrating the authenticity of the messages in that filing either.

plainly insufficient to establish by clear and convincing evidence that these Facebook accounts belonged to B.R., or that B.R. deleted them with the intent to deprive FCSB of their use in this litigation.

Put simply, FCSB cannot meet its burden to prove any of the Rule 37(e) criteria with respect to the four "Fake" Facebook accounts because there is no competent evidence that the accounts belonged to B.R.  And even if FCSB's counsels' argument and Co.K.'s suspicions were "evidence" that the accounts belonged to B.R., Rule 37(e) sanctions should not be imposed "on the basis of suspicion alone."  *See Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15cv9363 (ALC) (DF), 2018 WL 1512055, at *16 (S.D.N.Y. Mar. 12, 2018) ("[T]he presented evidence is capable of more than one interpretation, and this Court will not make a finding of intent to deprive on the basis of suspicion alone.").

## CONCLUSION

For the reasons stated above, the Court should deny FCSB's Motion for Sanctions Due to Spoliation.

Dated:  December 5, 2023

Respectfully submitted,

By: _____ /s/ *Jonathan Fahey* _____

JONATHAN L. FAHEY
(VSB No. 44854)
**BROWN RUDNICK LLP**
602 Thirteenth Street NW, Suite 600
Washington, DC  20005
Telephone: (202) 536-1702
Facsimile:  (202) 536-1701
jfahey@brownrudnick.com


ALISON L. ANDERSON
(Pro Hac Vice)

**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa, 31st Floor
Los Angeles, CA  90017
Telephone: (213) 629-9040
Facsimile:  (213) 629-9022
alanderson@bsfllp.com

ANDREW S. BRENNER
(Pro Hac Vice)
BRITTANY ZOLL
(Pro Hac Vice)
ROBERT G. KEEFE
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL  33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307
abrenner@bsfllp.com
bzoll@bsfllp.com
rkeefe@bsfllp.com

*Counsel for Plaintiff B.R*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2023, I electronically filed this document with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing

(NEF) to counsel of record for all Parties.

By: */s/ Jonathan Fahey*

JONATHAN L. FAHEY
(VSB No. 44854)
**BROWN RUDNICK LLP**
602 Thirteenth Street NW, Suite 600
Washington, DC  20005
Telephone: (202) 536-1702
Facsimile:  (202) 536-1701
jfahey@brownrudnick.com

25