**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:19-cv-00917-RDA-WEF |
| v. | ) | |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF B.R.'S BRIEF IN SUPPORT OF MOTION
FOR SANCTIONS DUE TO SPOLIATION**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 5

LEGAL STANDARD ............................................................................................................... 11

ARGUMENT ........................................................................................................................... 14

      A.    Sanctions are warranted under the Court's inherent authority due to the spoliation of student-witnesses' written statements and T.B.'s notebook ............ 15

      B.    Sanctions are warranted under Rule 37(e) due to the spoliation of the ESI stored on A.F.'s school-issued laptop .................................................................. 20

            1.    Sanctions are warranted under Rule 37(e)(1) .......................................... 22

            2.    Sanctions are warranted under Rule 37(e)(2) .......................................... 23

CONCLUSION ........................................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................. 26

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. BNSF Ry. Co.*,
   --- F. Supp. 3d. ----, 2023 WL 4418221 (S.D. Iowa July 6, 2023) ............................................. 4

*Borum v. Brentwood Vill., LLC*,
   332 F.R.D. 38 (D.D.C. 2019) ...................................................................................................... 14

*Broccoli v. Echostar Commc'ns Corp.*,
   229 F.R.D. 506 (D. Md. 2005) ............................................................................................ 16, 21

*Brown Jordan Int'l, Inc. v. Carmicle*,
   No. 14-cv-60629, 2016 WL 815827 (S.D. Fla. Mar. 2, 2016) ................................................ 24

*Burris v. JPMorgan Chase & Co.*,
   566 F. Supp. 3d 995 (D. Ariz. 2021) ...................................................................................... 22

*Collins v. Tri-State Zoological Park of W. Md., Inc.*,
   No. 1:20-cv-01225-PX, 2021 WL 5416533 (D. Md. Nov. 19, 2021) ...................................... 13

*Davis v. Capital One, N.A.*,
   No. 1:22-cv-00903 (AJT/IDD), 2023 WL 6964051 (E.D. Va. Oct. 20, 2023) ........................ 12

*Doe v. Fairfax Cnty. Sch. Bd.*,
   1 F.4th 257 (4th Cir. 2021) ............................................................................................... 14, 15

*Doe v. Fairfax Cnty. Sch. Bd.*,
   No. 1:18-cv-00614-LO-MSN, 2019 WL 8887763 (E.D. Va. June 28, 2019) .................. *passim*

*Doe v. Norwalk Cmty. Coll.*,
   248 F.R.D. 372 (D. Conn. 2007) .................................................................................. 16, 17, 21

*Estate of Bosco ex rel. Kozar v. County of Sonoma*,
   640 F. Supp. 3d 915 (N.D. Cal. 2022) .................................................................................... 24

*Fowler v. Tenth Planet, Inc.*,
   --- F. Supp. 3d ----, 2023 WL 3569816 (D. Md. May 19, 2023) ................................. 13, 14, 23

*Goodman v. Praxair Servs., Inc.*,
   632 F. Supp. 2d 494 (D. Md. 2009) ........................................................................................ 15

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   341 F.R.D. 474 (S.D.N.Y. 2022) ............................................................................................ 21

*Moody v. CSX Transp., Inc.*,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017) .................................................................................... 21

*N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*,
   No. 3:06-CV-2234, 2008 WL 2571227 (M.D. Pa. June 25, 2008)........................................... 15

*Paul v. W. Express, Inc.*,
   No. 6:20-cv-51, 2023 WL 1930363 (W.D. Va. Feb. 10, 2023) ........................................... 13, 17

*Pleasants v. Commonwealth*,
   203 S.E.2d 114 (Va. 1974)................................................................................................. 15

*Silvestri v. Gen. Motors Corp.*,
   271 F.3d 583 (4th Cir. 2001) ..................................................................................... 11, 13, 16

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
   327 F.R.D. 96 (E.D. Va. 2018) ..................................................................................... *passim*

*U.S. E.E.O.C. v. Suntrust Bank*,
   8:12-cv-1325-T-33MAP, 2014 WL 1364982 (M.D. Fla. Apr. 7, 2014)........................... 16, 21

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   269 F.R.D. 497 (D. Md. 2010).............................................................................................. 20

*Wall v. Rasnick*,
   42 F.4th 214 (4th Cir. 2022) ................................................................................. 13, 14, 22, 23

## **Rules**

Fed. R. Civ. P. 37 ........................................................................................................ *passim*

# INTRODUCTION[1]

Plaintiff B.R. was repeatedly sexually abused and harassed by her classmates and others while she was a seventh-grade student at Rachel Carson Middle School ("RCMS") during the 2011–2012 school year.  In response to B.R.'s reports of the sexual abuse and harassment, Defendant Fairfax County School Board ("FCSB") and its agents acted with deliberate indifference by responding to her reports in a clearly unreasonable—and at times insulting and abusive—manner which caused B.R. to undergo further sexual abuse and harassment, in violation of Title IX.

Although the parties disagree on the issue of the sufficiency of FCSB's response, there can be no dispute that much of the evidence related to that response largely rested in the sole custody of FCSB (and that of the individual school Defendants), and FCSB had a duty to preserve that evidence.  Indeed, FCSB acknowledged the importance of adequate record retention regarding this precise type of evidence as part of its 2014 settlement with the United States Department of Education Office of Civil Rights ("OCR") arising out of the OCR's investigation of FCSB's response to B.R.'s reports of sexual harassment and abuse.  In the Voluntary Resolution Agreement between FCSB and the OCR arising out of that investigation, FCSB agreed to create both a "plan . . . for the creation of a centralized database in [FCSB] in which documentation of [FCSB] investigations and outcomes of sexual and gender-based harassment allegations are compiled and maintained" as well as "an interim system of centralized data collection that documents [FCSB] investigations and outcomes of sexual and gender-based harassment allegations" which was to be

---

[1] In a transparent attempt to inoculate its own misconduct, FCSB filed its own "spoliation" motion two months ahead of the Court's deadline for filing pretrial motions alleging that B.R. should be sanctioned because her mother failed to preserve certain electronic devices and accounts seven years before this suit was filed.  That Motion was referred to, and denied by, Judge Fitzpatrick.  ECF No. 612.

"implement[ed] . . . until . . . the centralized database [was] operational."   Ex. 1 (Voluntary Resolution Agreement) at BR_WOR_9992–93.

Yet, the evidence is clear that FCSB destroyed and/or failed to preserve critical evidence related to B.R.'s claim.

First, the person in charge of FCSB's response at RCMS, Principal A.F., intentionally and permanently deleted *all* of his electronic files when he left his full-time employment at the school in 2015. Ex. 2 (A.F. Depo. Tr.) at 102:18–106:18.   Specifically, A.F. confirmed that upon his retirement in 2015, he "made sure [he] witnessed" his school-issued laptop being wiped so that the information stored on it was not preserved anywhere.   *Id.*

There is also no dispute that A.F. specifically "directed [T.B.] to create a summary of the staff's response" to B.R.'s and her mother's reports of sexual harassment and abuse.   Ex. 3 (T.B. Depo. Tr.) at 66:4–8, 90:17–19.   As part of that task, T.B. interviewed other school officials and reviewed documents, yet she has admitted that she too intentionally destroyed the contemporaneous notes she took while drafting the document.[2]   *Id.* at 62:6–63:14, 70:4–21, 177:12–22.

Moreover, discovery has revealed that FCSB destroyed witness statements taken from B.R. and her classmates during its investigation of B.R's complaints, including written statements *about the abuse and bullying they witnessed B.R. suffer*.   Ex. 4 (O.B. Depo. Tr.) at 78:20–80:1; Ex. 5 (Co.K. Depo. Tr.) at 161:9–163:20, 202:13–212:7; Ex. 6 (B.R. Depo. Tr. (Vol. 2)) at 64:14–18. Disturbingly, school officials testified at their depositions that they remembered students writing statements that FCSB has not produced in this case, only to later attempt *in their errata sheets* to

---

[2] By separate Motion, B.R. is moving to exclude this document as hearsay for Defendants (B.R. may choose to use the document as an admission by a party).

improperly *change* their testimony to be that their "recollection of [the students] writing statements was not accurate."[3]  *Compare* Ex. 3 (T.B. Depo. Tr.) at 124:8–12, 126:7–10 ("[O.B.]'s second statement, by the way, is one of the ones that's missing. . . .  you're missing the statement that says she didn't see . . . the beginning of the interaction."), *and* Ex. 7 (S.T. Depo. Tr.) at 289:7–20 ("I don't have them anymore, but I do remember [three students] writing statements."), *with* ECF No. 322-2 (T.B. Errata) at 2 ("I appear to have suggested that O.B. gave a second written statement . . . I now recall that . . . O.B. did not provide a second written statement."), *and* ECF No. 320-2 (S.T. Errata) at 3 ("My recollection of [the three students] writing statements was not accurate.").[4]

This case is not the first in which FCSB has spoliated *the same type* of evidence relevant to a Title IX claim brought against it by a student in its care.  In *Doe v. Fairfax County School Board*, then-Magistrate Judge Nachmanoff found that FCSB (like here) destroyed (1) "formal witness statements of [the] plaintiff," two of her classmates, and the perpetrator; (2) school officials' "interview notes"; and (3) "text messages between [school officials]" relevant to the plaintiff's Title IX claim.  *See Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614-LO-MSN, 2019 WL 8887763, at *6 (E.D. Va. June 28, 2019).  Judge Nachmanoff further found that "FC[SB] did engage in culpable, negligent conduct—bordering on grossly negligent conduct" because "***FC[SB] has a history of failing to appropriately respond to students' complaints of sexual harassment***

---

[3] B.R. moved to strike these improper attempts by S.T. and T.B. to impermissibly change their testimony in their errata sheets.  ECF No. 320 (S.T.); ECF No. 322 (T.B.).  B.R. withdrew her motions to strike after S.T. and T.B. submitted amended errata sheets that did not change their testimony about remembering the existence of written statements which FCSB has not produced. *See* ECF No. 344; *Compare* ECF No. 320-2 at 3 (S.T. original errata sheet), *and* ECF No. 322-2 (T.B. original errata sheet), *with* Ex. 8 (S.T. amended errata sheet), *and* Ex. 9 (T.B. amended errata sheet).

[4] Pinpoint citations to documents filed on the docket are to the ECF-generated page numbers at the top of documents.

*. . . [and] completely disregarded its own protocol by failing to preserve the relevant documents in the instant action.*" *Id.* at *7 (emphasis added).[5]  The fact that the spoliation occurred at a different school within the Fairfax County school system reveals this is a result of pattern and practice, not a mere mistake.  *See Anderson v. BNSF Ry. Co.*, --- F. Supp. 3d. ----, 2023 WL 4418221, at *9 (S.D. Iowa July 6, 2023) (finding defendant's "extensive pattern and practice of willful misconduct are sufficient to establish [defendant] acted with the intent required for the Court to impose a spoliation sanction").

With there being no reasonable dispute that FCSB, including through its agent individual school employees, both intentionally destroyed and failed to preserve relevant documents and electronically stored information that it knew it should have preserved (and had formally agreed to preserve as part of the resolution of the OCR proceedings arising out of the incidents at issue in this case), FCSB should not be allowed to rely on the subset of the relevant evidence it chose to preserve at trial, and the jury should be instructed regarding the consequences of spoliation.  For these reasons and others discussed herein, B.R. respectfully requests her Motion for Sanctions be granted.

---

[5] Judge O'Grady overruled FCSB's objections to Judge Nachmanoff's Order, "agree[ing] that for the reasons stated in Judge Nachmanoff's Order spoliation sanctions are warranted, but . . . withhold[ing] ruling on what form of jury instruction is the appropriate sanction in this case" until he "had the opportunity to hear the evidence on the loss or destruction of the documents that is presented at trial." Order at 1–2, *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614-LO-MSN, (July 23, 2019), ECF No. 253. It appears that although an adverse jury instruction was not ultimately given, Judge Nachmanoff's spoliation finding "stood," as FCSB's counsel in that case and this one stated at recent hearing.  *See* ECF No. 616 (Dec. 15, 2023 Hr'g Tr.) at 34:11–22 ("[W]e had a spoliation finding from Judge Nachmanoff as a magistrate judge . . . .  Judge Nachmanoff's order stood in the sense that he made that recommendation, he made that ruling pretrial.").

## **RELEVANT FACTUAL BACKGROUND**

B.R. was sexually abused and harassed by her classmates and others when she was a seventh-grade student at RCMS.  B.R. and her mother reported the sexual harassment to school officials.  *E.g.*, Ex. 10, FCSB-BR-009948 at 948–51; Ex. 11, FCSB-BR-001148 at 48.   They reported it to numerous school officials, and on multiple occasions. Ex. 12 (B.R. Depo. Tr. (Vol. 1)) at 135:6–21; 343:13–344:19, 346:12–347:20; Ex. 13 (Mrs. R. Depo. Tr.) at 123:17–146:3.  But school officials failed to take B.R.'s and her mother's reports seriously, even dismissing the issue as a "boy-girl thing."  Ex. 13 (Mrs. R. Depo. Tr.) at 234:22–236:15; Ex. 14, FCSB-BR-001579 at 580.

Emboldened by school officials' failure to act on B.R.'s and her mother's reports of sexual harassment, the perpetrators began to sexually abuse B.R.  Ex. 12 (B.R. Depo. Tr. (Vol. 1)) at 352:16–353:5.  B.R. again reported what was happening to her to school officials.  *Id.* at 370:2–372:16.  But school officials again failed to take B.R.'s reports seriously.  *Id.* at 370:2–372:16.

A.F. was the principal of RCMS, and he was responsible for determining whether B.R.'s complaints of sexual harassment and abuse triggered RCMS's obligation to investigate under Title IX.  Ex. 2 (A.F. Depo. Tr.) at 241:20–23.  A.F. would have been notified of B.R.'s complaints "before the start of the investigation" and would have been informed about how school officials "were going to proceed with the investigation."  *Id.* at 246:16–248:7.

Part of the school's response to B.R.'s and her mother's reports was to collect written statements from student-witnesses.  *See* Ex. 3 (T.B. Depo. Tr.) at 124:8–12; Ex. 7 (S.T. Depo. Tr.) at 289:7–20.  As A.F. testified at his deposition, each witness's written statement should have been retained "in a locked filing cabinet" at RCMS.  Ex. 2 (A.F. Depo. Tr.) at 223:3–225:22.  But FCSB failed to preserve each written statement it collected as part of its investigation of B.R.'s reports

of sexual harassment and abuse, including statements from B.R. herself.  Specifically, FCSB has not produced all of the written statements it collected from B.R, *see* Ex. 6 (B.R. Depo. Tr. (Vol. 2)) at 64:14–18, and it has also not produced all of the written statements it collected from B.R.'s classmates.  For example, FCSB produced three written statements by O.B., but O.B. testified at her deposition that she recalled writing more than three statements, including "a statement about J.O. slapping B.R." in the locker room which O.B. witnessed and which FCSB did not preserve. Ex. 4 (O.B. Depo. Tr.) at 78:20–82:16.  Indeed, Defendant T.B. confirmed at her deposition (but later attempted to retract in an errata sheet) that at least one of O.B.'s written statements "is one of the ones that's missing."  Ex. 3 (T.B. Depo. Tr.) at 124:8–12.

Additionally, in both a statement he wrote in April 2012 and at his deposition in this case, another classmate (Co.K.) asserted that he wrote four statements which he provided to school officials, but FCSB has produced only one statement from Co.K.  Ex. 15, BR_WOR_5009 at 09; Ex. 5 (Co.K. Depo. Tr.) at 161:9–163:20, 202:13–212:7; Ex. 16, FCSB-BR-006000 at 00–01.  Moreover, and even more troubling, Co.K. testified that school officials pressured him to change his written statements.  School officials pulled Co.K. out of class to write his first statement "in the middle of February" 2012.  Ex. 15, BR_WOR_5009 at 09.  In his first statement, dated February 15, 2012, Co.K. wrote that, the week before, a male student said B.R. was "a douche, a bitch, a slut, and a whore . . . directly to [Co.K.'s] face as [B.R.] was standing there."  Ex. 16, FCSB-BR-006000 at 00.

School officials pulled Co.K. from class a second time "in late February/early March" and asked him "to write another statement and to evaluate [his] previously written statement to see if [he] wanted to change it any way."  Ex. 15, BR_WOR_5009 at 09.  Co.K. testified at his deposition that he sensed that the school officials wanted him to change his first statement.  Ex. 5 (Co.K.

Depo. Tr.) at 203:7–205:16. Co.K. wrote a second statement and gave it to school officials. *Id.* at 207:10–208:11.

School officials pulled Co.K. from class a third time "around the middle of March." Ex. 15, BR_WOR_5009 at 09. According to Co.K., he was pulled from class because a school official "wanted [him] to evaluate the second statement [he] made and she had put check marks where she wanted [him] to reconsider [his] statements." *Id.* Co.K. testified at his deposition that he "felt pressure" during this third interview to change his statement. Ex. 5 (Co.K. Depo. Tr.) at 209:16–20. Co.K. wrote a third statement and gave it to school officials. *Id.* at 209:21–210:10.

School officials pulled Co.K. from class a fourth time "for more than 20 minutes and . . . asked [him] to evaluate" his third written statement. Ex. 15, BR_WOR_5009 at 09. Co.K. testified at his deposition that he again felt "pressured" by school officials to change his third statement during this fourth interview. Ex. 5 (Co.K. Depo. Tr.) at 211:6–8. Co.K. wrote a fourth statement and gave it to school officials. *Id.* at 211:13–212:2. After this fourth instance of school officials pulling Co.K. from class to pressure him to change his written statements, Co.K.'s mother contacted the school to demand that school officials "[s]top pulling him out of class" because "he's given . . . four statements" and "doesn't know anything else." *Id.* at 212:8–17.

In each of his four written statements, Co.K. "wrote about how the sexual comments were being spread around the school and how BR was being harassed, bullied and receiving death threats." Ex. 15, BR_WOR_5009 at 09; Ex. 5 (Co.K. Depo. Tr.) at 211:13–212:2 (testifying that his fourth written statement was "the same thing [as his third statement], just with more detail"). In short, each of Co.K.'s four written statements were consistent with the harassment B.R. has testified she was experiencing and reporting to school administrators and other school employees,

and which FCSB now denies.  *See* Ex. 12 (B.R. Depo. Tr. (Vol 1)) at 135:6–21; 343:13–344:19, 346:12–347:20.

Despite Co.K. giving all four written statements to school officials, and despite Co.K.'s testimony that school officials annotated his second written statement with checkmarks where they "wanted [him] to reconsider [his] statements" and that each successive written statement from Co.K provided "more detail," FCSB has produced only the first of Co.K.'s four written statements regarding the sexual harassment and bullying he witnessed B.R. suffer.  Notably, two of the school officials who were involved in pressuring Co.K. to change *his* written statements—T.B. and S.T.— are the same two school officials who attempted to change *their* deposition testimony in this case that they remembered the existence of certain written statements to not remembering the existence of those written statements. *Compare* Ex. 3 (T.B. Depo. Tr.) at 124:8–12, 126:7–10 ("[O.B.]'s second statement, by the way, is one of the ones that's missing. . . . . you're missing the statement that says she didn't see . . . the beginning of the interaction."), *and* Ex. 7 (S.T. Depo. Tr.) at 289:7– 20 ("I don't have them anymore, but I do remember [three students] writing statements."), *with* ECF No. 322-2 (T.B. Errata) at 2 ("I appear to have suggested that O.B. gave a second written statement . . . I now recall that . . . O.B. did not provide a second written statement."), *and* ECF No. 320-2 (S.T. Errata) at 3 ("My recollection of [the three students] writing statements was not accurate.").

A.F. testified at his deposition that he "saw the statements from the students that did write statements and were interviewed by" school officials as part of the investigation into B.R.'s reports. Ex. 2 (A.F. Depo. Tr.) at 285:10–16.  However, contrary to O.B.'s deposition testimony that she wrote a statement about witnessing "J.O. slapping B.R." in the locker room, Ex. 4 (O.B. Depo. Tr.) at 78:20–82:16, and Co.K.'s April 2012 written statement and deposition testimony in

8

this case that he "wrote that [he] had witnessed the sexual name-calling and threats BR had been receiving for the past few months" in each of the four written statements he provided to school officials, Ex. 15, BR_WOR_5009 at 09; Ex. 5 (Co.K. Depo. Tr.) at 211:13–212:2, A.F. claimed at his deposition that he did not review any written statements "where a student provided a statement of firsthand knowledge where he or she witnessed name-calling directed towards [B.R.] . . . using sexual terms," Ex. 2 (A.F. Depo. Tr.) at 286:19–288:1.  According to A.F., because "[t]here w[ere] no witnesses to the fact" of the sexual harassment and abuse B.R. reported, the school (under the leadership and direction of A.F.) deemed B.R.'s reports "unverified."  Ex. 2 (A.F. Depo. Tr.) at 286:24–288:1, 399:6–401:6.

A.F. also met with Detective Frederick Chambers of the Fairfax County Police Department to discuss Detective Chambers' investigation of B.R.'s reports of rape and sodomy.  Ex. 17 (Det. Chambers Depo. Tr. (Vol. 1)) at 97:7–14, 147:6–18, 172:1–12; Ex. 18 (Det. Chambers Depo. Tr. (Vol. 2)) at 8:9–9:2, 11:16–12:2]  Detective Chambers did not document the specific details of his conversation with A.F.  Ex. 18 (Det. Chambers Depo. Tr. (Vol. 2)) at 8:18–9:2.  Thus, the only documentation of the details of Detective Chambers' discussion with A.F. regarding the investigation of B.R.'s reports of rape and sodomy would have been in A.F.'s possession.

A.F. also directed T.B. to draft a post-hoc "summary of what had been done" by school officials in response to B.R.'s and her mother's reports of sexual harassment and abuse.  Ex. 3 (T.B. Depo. Tr.) at 63:9–66:8.  As she "compil[ed] the school's response," T.B. interviewed A.F. and other school officials—"everybody [she] felt [she] needed to talk to to get the accurate description of the way that we had responded."  *Id.* at 63:13–14, 67:6–19, 71:7–13, 106:14–107:2. "A.F. assigned this [task] to [T.B.] because [she was] very thorough and . . . a writer and he knew that [she] would do the best [she] could to come up with an accurate summary of what had been

done." *Id.* at 101:2–5.  Indeed, T.B. testified that she was "obsessive" about taking notes and was "sure [she] took notes" in her personal notebook as she interviewed school officials for the purpose of drafting the summary document.  *Id.* at 70:4–21.  But T.B. confirmed that upon her retirement in 2016, she "cleared [her notes] out" and "got rid of them."  *Id.* at 70:15–21, 177:12–22, 237:13–19.

Despite A.F. having responsibility to determine whether B.R.'s complaints of sexual harassment triggered RCMS's obligation to investigate under Title IX, having monitored how school officials were going to proceed with the investigation of B.R.'s complaints, and having met with Detective Chambers to discuss Detective Chambers' investigation of B.R.'s reports of rape and sodomy, A.F. did not retain *any* electronically stored information ("ESI") pertaining to the investigation of B.R.'s complaints of sexual harassment and abuse, his discussion with Detective Chambers about Detective Chambers' investigation of B.R.'s reports of rape and sodomy, or his discussions with T.B. about the drafting of the post-hoc summary of the school's response to B.R.'s complaints.  In fact, upon his retirement in 2015, it is not just that A.F. failed to take adequate steps to preserve this critical evidence—he admitted that he intentionally made sure all of his ESI would be permanently destroyed.  Specifically, A.F. testified that he "made sure [he] witnessed it when [his school-issued laptop] was reimaged" so that the information on his school-issued laptop was not preserved anywhere.  Ex. 2 (A.F. Depo. Tr.) at 102:18–106:18.

The intentional destruction of the ESI stored on A.F.'s school-issued laptop in 2015 and the destruction of T.B.'s written notes in 2016 are particularly egregious because both violate FCSB's 2014 agreement with the OCR that FCSB would "creat[e] . . . a centralized database in [FCSB] in which documentation of [FCSB] investigations and outcomes of sexual and gender-based harassment allegations are compiled and maintained."  Ex. 1 (VRA) at BR_WOR_9993.

FCSB was required to report its plan for implementing both an interim and long-term centralized database to the OCR no later than August 31, 2014, and to "immediately" implement the plans upon the OCR's approval. *Id.*

As a result of its agreement with the OCR, FCSB "created the Bullying and Harassment Management System ('BHMS')." *Doe*, 2019 WL 8887763, at *6. "Administrators were instructed that any investigative records such as student interviews or those things should be uploaded into the BHMS including administrators' notes." *Id.* Thus, once FCSB officials "bec[o]me aware of [a student's] sexual assault claim, they should . . . upload[] all documentary evidence into the BHMS." *See id.*

But, just as in *Doe*, the testimony from O.B., Co.K., A.F., S.T., and T.B. demonstrates that FCSB "fail[ed] to upload the relevant documents" from A.F.'s school-issued laptop, T.B.'s notebook and the written statements from students "to the BHMS *as required by its own policy*" and in direct contravention of its obligations under its agreement with the OCR. *See id.* at *8. Of course, this is only the evidence that is known to have been destroyed; T.B.'s destruction of her notebook and FCSB's reimaging of A.F.'s laptop makes it impossible to determine what else was destroyed although the evidence would certainly include T.B.'s notes from her interviews of school officials related to their response to B.R.'s claims, and ESI relating to A.F.'s interactions with the police investigation of B.R.'s rape claims.

## LEGAL STANDARD

"Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Doe*, 2019 WL 8887763, at *3 (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). "A court's authority to levy sanctions on a spoliation motion derives from two sources."

*Id.* "First, under federal law, the court has inherent power to control the judicial process and litigation, which is 'necessary to redress conduct which abuses the judicial process.'" *Id.* "Second, under the Federal Rules of Civil Procedure, courts may impose sanctions for spoliation that violates a court order or for the loss of electronically stored information ('ESI') that should have been preserved in the anticipation or conduct of litigation." *Id.* (citing Fed. R. Civ. P. 37). Under either framework, the moving party must demonstrate that sanctions are appropriate by "clear and convincing" evidence. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018) (applying a "clear and convincing evidence standard" under both the inherent authority framework and the Rule 37(e) framework); *Davis v. Capital One, N.A.*, No. 1:22-cv-00903 (AJT/IDD), 2023 WL 6964051, at *16 (E.D. Va. Oct. 20, 2023) ("In this District, a movant must demonstrate that sanctions are appropriate under Rule 37(e) by a clear and convincing standard of proof.").

"For a court to impose a sanction under its inherent power, the party seeking sanctions must show (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery." *Steves & Sons, Inc.*, 327 F.R.D. at 104. For a court to impose sanctions for the loss of ESI under Federal Rule of Civil Procedure 37(e), the moving party "must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Id.*

12

Under its inherent authority, the court "has broad discretion in choosing an appropriate sanction for spoliation" that "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590. "The appropriate remedy depends on the spoliating party's exact 'culpable state of mind': ordinary negligence, gross negligence, or bad faith." *Paul v. W. Express, Inc.*, No. 6:20-cv-51, 2023 WL 1930363, at *3 (W.D. Va. Feb. 10, 2023); *see Collins v. Tri-State Zoological Park of W. Md., Inc.*, No. 1:20-cv-01225-PX, 2021 WL 5416533, at *4 (D. Md. Nov. 19, 2021) ("Any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset."). "To impose an adverse inference instruction, the moving party must show that the spoliating party acted either willfully or in bath faith in failing to preserve relevant evidence." *Paul*, 2023 WL 1930363, at *3 (internal quotation marks omitted). "If a defendant's conduct was merely negligent, an adverse inference instruction is not an appropriate sanction." *Id.* (internal quotation marks omitted).

"Under Rule 37(e), when 'electronically stored information that should have been preserved is lost because a party failed to take reasonable steps to preserve it,' then 'upon a finding or prejudice to another party from loss of the information,' the court 'may order measures no greater than necessary to cure the prejudice.'" *Wall v. Rasnick*, 42 F.4th 214, 222 (4th Cir. 2022) (quoting Fed. R. Civ. P. 37(e)(1)). "Accordingly, only a finding of prejudice is required for such not-greater-than-necessary sanctions." *Id.* "The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim." *Fowler v. Tenth Planet, Inc.*, --- F. Supp. 3d ----, 2023 WL 3569816, at *6 (D. Md. May 19, 2023). "To show prejudice resulting from the spoliation, a

party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 47 (D.D.C. 2019).

"[W]here the spoliator 'acted with the intent to deprive another party of the information's use in the litigation,' the court may 'presume that the lost information was unfavorable to the party,' 'instruct the jury that it may or must presume the information was unfavorable to the party,' or 'dismiss the action or enter a default judgment.'" *Wall*, 42 F.4th at 222 (quoting Fed. R. Civ. P. 37(e)(2)); *see Fowler*, 2023 WL 3569816, at *6 ("To justify the more severe sanctions of Rule 37(e)(2) . . . the moving party must demonstrate that the failure to preserve was motivated by an intent to deprive the moving party of the use of the information in the litigation.").

As explained below, FCSB's spoliation of evidence warrants sanctions under both the Court's inherent authority and Rule 37(e).

## ARGUMENT

FCSB's spoliation of critical, contemporaneous evidence of information provided to school officials about the veracity of B.R.'s complaints of sexual harassment and abuse warrants sanctions. "Under Title IX, a school acts with deliberate indifference where its response to the alleged harassment or the lack of any such response is clearly unreasonable in light of the known circumstances." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 271 (4th Cir. 2021). The written statements by B.R. and other student-witnesses of the sexual harassment and abuse B.R. suffered, T.B.'s written notes regarding her interviews of school officials about what they had done in response to B.R.'s and her mother's reports of sexual harassment and abuse, and the ESI related to the response to B.R.'s complaints of sexual harassment and abuse and reports of rape and sodomy that was stored on A.F.'s school-issued laptop are key to showing what FCSB knew at the time as well as to understanding whether FCSB's response to B.R.'s complaints was "clearly

unreasonable in light of the known circumstances." *See id.*  But FCSB has deprived B.R. of that evidence's use in this case by destroying it.

As a threshold matter, the conduct of A.F., as principal of RCMS, and the conduct of T.B., S.T. and other school officials, is imputed to FCSB because A.F., T.B., S.T. and other school officials are "duly authorized agent[s] of the school board." *See Pleasants v. Commonwealth*, 203 S.E.2d 114, 649 (Va. 1974) ("By law, each county school board in Virginia is a body corporate. As with other bodies corporate, it can act only through its duly authorized agents.  That a school board, of necessity, must delegate responsibility for the day to day operation of schools to its agents and employees has been recognized by statute. . . .   As the duly authorized agent of the school board . . . the principal[] was required to supervise the teaching and instruction of the students and was charged with maintaining order and discipline in the school." (citations and footnote omitted)). "A party may be held responsible for the spoliation of relevant evidence done by its agents." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 522 n.16 (D. Md. 2009); *N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, No. 3:06-CV-2234, 2008 WL 2571227, at *7 (M.D. Pa. June 25, 2008) ("A party to a law suit, and its agents, have an affirmative responsibility to preserve relevant evidence.").

### A. Sanctions are warranted under the Court's inherent authority due to the spoliation of student-witnesses' written statements and T.B.'s notebook

Each of the three requirements for sanctions under the Court's inherent authority are met.

*First*, FCSB had an obligation to preserve (1) B.R.'s written statements about the sexual harassment and abuse she suffered and other students' written statements regarding the sexual harassment and abuse they witnessed B.R. suffer immediately upon receipt of the written statements; and (2) T.B.'s notes of her post-hoc interviews of school officials immediately upon T.B.'s creation of the notes.  Initially, FCSB entered into an express agreement with the OCR to

15

"maintain[]" precisely the type of evidence it destroyed and/or failed to preserve here.  Ex. 1 (VRA) at BR_WOR_9993.  Moreover, FCSB also had a common law duty to preserve.

"The duty to preserve material evidence arises not only during litigation but also extends to the period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591.  FCSB should have known that the evidence it collected in responding to B.R.'s complaints and in its post-hoc investigation of its own response might have been relevant to anticipated litigation, and thus had an obligation to preserve any relevant evidence, as soon as B.R. first reported the sexual harassment to school officials.[6] *See Doe*, 2019 WL 8887763, at *5 (finding that FCSB's "duty to preserve started . . . when [school] administrators were informed of a potential sexual assault"); *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510–11 (D. Md. 2005) (finding defendant corporation was under a duty to preserve relevant evidence when the plaintiff informed his supervisors of an administrator's sexually harassing behavior); *U.S. E.E.O.C. v. Suntrust Bank*, No. 8:12-cv-1325-T-33MAP, 2014 WL 1364982, at *6 (M.D. Fla. Apr. 7, 2014) (finding defendant bank had a duty to preserve evidence from the date its employee complained to a human resources representative that she was the victim of sexual harassment); *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 377 (D. Conn. 2007) ("[T]he court believes the duty to preserve had arisen . . . as of th[e] date [the defendant

---

[6] In a prior Motion for Sanctions Due to Spoliation filed by it, FCSB argued that B.R. should be sanctioned because *her mother* failed to preserve certain ESI. ECF No. 551 at 7–8, 29 ("As her agent, Plaintiff's mother was subject to the same preservation duty as Plaintiff."). Specifically, FCSB argued that Mrs. R. had a duty to preserve all evidence related to B.R.'s complaints because she was anticipating litigation regarding same. *Id.* at 28–29. B.R. objected to this on several grounds, including that Mrs. R. is not a party to this litigation and there was not clear and convincing evidence that she anticipated litigation. *See* ECF No. 587 at 9–12, 17–20, 22–26; *see also* ECF No. 617 at 2. Judge Fitzpatrick concluded that Mrs. R did have a duty to preserve, although he denied FCSB's Motion. *See* ECF No. 616 at 55:2–7. Surely, given that FCSB has argued that B.R.'s mother had a duty to preserve evidence in these circumstances, it must concede that it too had such a duty.

16

college] was aware of [the plaintiff student's] allegations of sexual assault . . . ."). Indeed, as A.F. testified at his deposition, each witness's written statement collected during the investigation should have been retained "in a locked filing cabinet" at RCMS. Ex. 2 (A.F. Depo. Tr.) at 223:3–225:22.

*Second*, FCSB's destruction or loss of the students' written statements and T.B.'s notes "was accompanied by a culpable state of mind." *Steves & Sons, Inc.*, 327 F.R.D. at 104. Specifically, the evidence demonstrates that FCSB acted "willfully or in bath faith in failing to preserve relevant evidence."[7] *See Paul*, 2023 WL 1930363, at *3. Co.K.'s April 2012 statement and his deposition testimony demonstrate that school officials pressured Co.K. to change his account of the sexual harassment, bullying, and death threats he witnessed B.R. suffer—going so far as to put check marks next to the portions of his second written statement that they wanted him to "reconsider." Ex. 15, BR_WOR_5009 at 09; Ex. 5 (Co.K. Depo. Tr.) at 209:16–20, 211:6–8. But Co.K. refused to reconsider and instead "kept writing . . . the same thing, just with more detail."

---

[7] As set forth herein, there is clear and convincing evidence that FCSB acted willfully and with bad faith in failing to (1) preserve every written statement it collected from witnesses as part of its investigation of B.R.'s reports of sexual harassment and abuse and (2) preserve T.B.'s notes of her interviews of school officials regarding their response to B.R.'s reports. But even if the Court were to find that FCSB's conduct does not rise to the level of willfulness or bad faith, there can be no dispute that FCSB engaged in at least grossly negligent conduct in failing to preserve the written statements and T.B.'s notes by placing them in the locked filing cabinet as A.F. testified would have been standard operating procedure. *See Doe*, 2019 WL 8887763, at *7 ("**FC[SB] has a history of failing to appropriately respond to students' complaints of sexual harassment. . . . FC[SB] did engage in culpable, negligent conduct—bordering on grossly negligent conduct—by failing to upload documents to the BHMS *as required by its own policy*.**" (bold emphasis added)); *Norwalk Cmty. Coll.*, 248 F.R.D. at 379–80 ("[T]he court finds . . . the defendants' failure to place a litigation hold and preserve emails and hard drives relevant to Doe's allegations in this case to be at least grossly negligent, if not reckless."). And if FCSB did upload them to a digital repository, then FCSB's failure to retain such an electronic copy of the written statements and T.B.'s notes is a violation of Rule 37(e) requiring that FCSB retain such ESI.

Ex. 5 (Co.K. Depo. Tr.) at 211:17–212:2.  It is these statements that Co.K. refused the school officials' pressure to change that have been lost[8] or destroyed.

Co.K.'s written statements—particularly his second, third, and fourth written statements which provided "more detail" than his first but which FCSB has destroyed or otherwise failed to preserve—directly contradict A.F.'s deposition testimony that school officials were unable to verify B.R.'s complaints because there were no witnesses.  Similarly, O.B.'s written statement that she witnessed J.O. slap B.R. in the locker room, *see* Ex. 4 (O.B. Depo. Tr.) at 78:20–82:16, directly contradicts A.F.'s deposition testimony that school officials were unable to verify B.R.'s complaints because there were no witnesses.  It certainly appears that there were witnesses, and they provided written accounts of what they observed to school officials.  It also certainly appears that FCSB's subsequent destruction of, or failure to preserve, these witness statements supporting B.R.'s claim and refuting FCSB's defense was not the result of some accident.  T.B.'s and S.T.'s flagrant efforts to change their testimony admitting that the FCSB had lost witness statements further tangle the web.

Similarly, FCSB acted willfully and in bad faith by failing to preserve T.B.'s notes about what A.F. and other school officials told her as she investigated RCMS's response to B.R.'s reports of sexual harassment and abuse.  FCSB was well aware that T.B. had created a summary of the school's response to B.R.'s reports of sexual harassment because T.B. was acting pursuant to A.F.'s express direction that she do so.  Ex. 3 (T.B. Depo. Tr.) at 63:9–66:8, 90:18–19.  Yet FCSB—***two years after the OCR ordered it to maintain documentation of its investigations and outcomes of sexual and gender-based harassment allegations in order to resolve the OCR's***

---

[8] The use of the word "lost" here is charitable to FCSB as it would be quite the coincidence for FCSB to have merely "lost" the written statements it tried so hard to have the student who made them change.

**investigation of FCSB's response to B.R.'s complaints of sexual harassment and abuse**, *see* Ex. 1 (VRA) at BR_WOR_9992–9—permitted T.B. to "g[e]t rid of" the notes she took of her interviews of school officials **about their response to B.R.'s complaints of sexual harassment and abuse**, Ex. 3 (T.B. Depo. Tr.) at 177:12–22.  FCSB willfully and with bad faith violated its agreement with the OCR by destroying documents relevant to its investigation of the very same incident that prompted the OCR to investigate FCSB in the first place.

*Third*, the written statements and notes that were destroyed or lost were "relevant" to B.R.'s claims, and were favorable to her.  *See Steves & Sons, Inc.*, 327 F.R.D. at 104.  "The crux of this matter is whether FC[SB] conducted a reasonable investigation into [B.R.'s] allegations based on what they knew at the time of the alleged incident[s]."  *See Doe*, 2019 WL 8887763, at *8.  Clearly, T.B.'s notes of what school officials told her about their response to B.R.'s allegations are relevant to B.R.'s claims.  And O.B.'s deposition testimony and Co.K.'s April 2012 written statement and his deposition testimony regarding the content of their written statements refute FCSB's assertions that B.R.'s reports of sexual harassment and abuse were not corroborated by eyewitnesses.  "It is implausible that the formal written statements . . . which show what information [FCSB] relied on in its investigation and [FCSB's] mentality during the investigation—are not relevant to the instant action."  *See Doe*, 2019 WL 8887763, at *8.  B.R.'s, O.B.'s and Co.K.'s written statements "are inarguably relevant to demonstrate what [FCSB] knew at the time of the investigation."  *See id.* But FCSB's destruction of their statements (and likely others) and T.B.'s notes leaves B.R. without the ability to use them in her case.

Accordingly, sanctions are warranted under the Court's inherent authority.  B.R. requests the Court (1) impose an adverse jury instruction requiring or permitting the jury to draw an adverse inference against FCSB and its agents as a result of its violation of its duty to preserve (and not

destroy) relevant evidence; (2) preclude FCSB and its agents from presenting any evidence or argument at trial regarding written statements it collected as part of its investigation of B.R.'s complaints; (3) preclude FCSB and its agents from presenting any evidence or argument at trial regarding T.B.'s investigation of FCSB's response to B.R.'s reports of sexual harassment and abuse; and (4) award B.R. her attorney's fees and costs incurred in conjunction with this Motion. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010) ("Sanctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default.").

**B.      Sanctions are warranted under Rule 37(e) due to the spoliation of the ESI stored on A.F.'s school-issued laptop**

Each of the four "threshold requirements" for Rule 37(e) sanctions due to FCSB's spoliation of the ESI stored on A.F.'s school-issued laptop are met by clear and convincing evidence. *See Steves & Sons, Inc.*, 327 F.R.D. at 104.

*First*, for the same reasons FCSB should have preserved T.B.'s notes and the written statements it collected as part of its response to B.R.'s complaints, the relevant ESI stored on A.F.'s laptop should not have been intentionally and permanently deleted by him. *See* Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve."). Additionally, FCSB destroyed the ESI on A.F.'s laptop in 2015, one year *after* FCSB agreed to "create[] . . . a centralized database in [FCSB] in which documentation of [FCSB] investigations and outcomes of sexual and gender-based harassment allegations are compiled and maintained," Ex. 1 (VRA) at BR_WOR_9993, a fact that is in addition to the many cases that hold

that an allegation of sexual misconduct alone is sufficient to trigger such a duty.  *See supra* Section A;  *Doe*, 2019 WL 8887763, at *5; *Broccoli*, 229 F.R.D. at 510–11; *Suntrust Bank*, 2014 WL 1364982, at *6; *Norwalk Cmty. Coll.*, 248 F.R.D. at 377.  There can be no dispute that FCSB had a duty to preserve, and not permanently destroy, the ESI on A.F.'s laptop.

*Second*, there is no dispute that the ESI stored on A.F.'s laptop is "lost."  *See Steves & Sons, Inc.*, 327 F.R.D. at 104.  A.F. unequivocally testified at his deposition that he "made sure [he] witnessed" his school-issued laptop being wiped so that the information stored on it was not preserved anywhere.  Ex. 2 (A.F. Depo. Tr.) at 102:18–106:18.

*Third*, the loss of the ESI stored on A.F.'s laptop "was due to a party's failure to take reasonable steps to preserve the ESI."  *See Steves & Sons, Inc.*, 327 F.R.D. at 104.  FCSB, as a sophisticated entity with "considerable experience in litigation," *see* Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment ("The court should be sensitive to the party's preservation efforts; some litigants . . . have considerable experience in litigation."), was under a duty—both under Rule 37(e) and under its agreement with the OCR—to back up the data on A.F.'s laptop or to suspend its practice of wiping its employees' laptops at termination of their employment. FCSB's failure to do either was a failure to take reasonable steps under Rule 37(e).  *See Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 429 (W.D.N.Y. 2017) ("[D]efendants destroyed or recycled [an employee's] laptop despite knowing that it likely contained relevant evidence that they never confirmed had been properly uploaded to another repository . . . . I find that defendants did not take reasonable steps to preserve the [ESI]."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 505 (S.D.N.Y. 2022) ("Even if the Court infers that these 25 hard drives were lost or became inaccessible due to the passage of time or in the ordinary course of Keurig's business, Keurig's failure to preserve this ESI was, at least, . . . a failure to take

reasonable steps under Rule 37(e).”); *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1016 (D. Ariz. 2021) (“Plaintiff engaged in an intentional, lengthy, and multifaceted scheme to destroy ESI, including performing factory resets on multiple phones and laptops . . . .”).

*Fourth*, the ESI that was lost when A.F.’s laptop was reimaged “cannot be restored or replaced through additional discovery.”  *See Steves & Sons, Inc.*, 327 F.R.D. at 104.  A.F. confirmed at his deposition that the ESI that was stored on his laptop was not preserved anywhere else.  Ex. 2 (A.F. Depo. Tr.) at 102:18–106:18.  Detective Chambers confirmed at his deposition that he did not document the specific details of his conversation with A.F.  Ex. 18 (Det. Chambers Depo. Tr. (Vol. 2)) at 8:18–9:2.  And T.B. confirmed that she “got rid of” the notes she took of her interview of A.F.  Ex. 3 (T.B. Depo. Tr.) at 67:15–19, 70:15–21, 177:12–22, 237:13–19.

### 1.     Sanctions are warranted under Rule 37(e)(1)

B.R. has undoubtedly suffered prejudice due to FCSB’s failure to take reasonable steps to preserve the ESI on A.F.’s laptop.  *See Wall*, 42 F.4th at 222 (explaining that “only a finding of prejudice is required for such not-greater-than-necessary sanctions” under Rule 37(e)(1)); *see also* Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment (“The rule does not place a burden of proving or disproving prejudice on one party or the other . . . placing the burden of proving prejudice on the party that did not lose the information may be unfair.”).  A.F. was responsible for determining whether B.R.’s complaints of sexual harassment triggered RCMS’s obligation to investigate under Title IX and monitored school officials’ investigation of B.R.’s complaints.  Ex. 2 (A.F. Depo. Tr.) at 241:20–23, 246:16–248:7.  The ESI on A.F.’s school-issued laptop would have revealed what A.F. (and, by extension, FCSB) knew when he determined that B.R.’s complaints could not be verified, *see* Ex. 2 (A.F. Depo. Tr.) at 286:24–288:1, 399:6–401:6, potentially including electronic copies of witness statements like O.B.’s and Co.K.’s.  Similarly, the ESI on A.F.’s laptop would have revealed any documentation of his discussion with Detective

Chambers about Detective Chambers' investigation of B.R.'s reports of rape and sodomy and of his interview with T.B. regarding his response to B.R.'s complaints. Ex. 17 (Det. Chambers Depo. Tr. (Vol. 1)) at 97:7–14, 147:6–18, 172:1–12; Ex. 18 (Det. Chambers Depo. Tr. (Vol. 2)) at 8:9–9:2, 11:16–12:2; Ex. 3 (T.B. Depo. Tr.) at 67:15–19, 106:14–107:2. As a result of the intentional destruction of this evidence, B.R. "cannot present evidence essential to [her] underlying claim." *See Fowler*, 2023 WL 3569816, at *6 ("The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim.").

Accordingly, sanctions under Rule 37(e)(1) are warranted. B.R. requests the Court (1) preclude FCSB and its agents from presenting any evidence or argument at trial regarding the content of the witness statements that have been produced in this case "to offset prejudice caused by failure to preserve other [written statements] that might contradict" them, *see* Fed. R. Civ. P. Rule 37(e) advisory committee note to 2015 amendment; (2) preclude FCSB and its agents from presenting any evidence or argument at trial regarding Detective Chambers' investigation of B.R.'s reports of rape and sodomy; (3) preclude FCSB and its agents from presenting any evidence or argument at trial regarding T.B.'s investigation of FCSB's response to B.R.'s reports of sexual harassment and abuse; (4) instruct the jury that FCSB had a duty to preserve the ESI on A.F.'s school-issued laptop and that the duty was violated when A.F.'s laptop was reimaged; and (5) award B.R. her attorney's fees and costs incurred in conjunction with this Motion.

### 2.     Sanctions are warranted under Rule 37(e)(2)

Sanctions are also warranted under Rule 37(e)(2) because there is clear and convincing evidence that the spoliation of the ESI on A.F.'s laptop was motivated by an intent to deprive B.R. of the use of the information in the litigation. *See Wall*, 42 F.4th at 222. It is undisputed that A.F. was directly involved in FCSB's investigation of B.R.'s complaints of sexual harassment and

abuse and discussed Detective Chambers' investigation of B.R.'s reports of rape and sodomy. Indeed, the facts and circumstances known to A.F. at the time he deemed B.R.'s complaints unverified are at the heart of the merits of this case. Given the issues in dispute in this case, it is difficult to imagine a source of ESI more relevant and useful than A.F.'s school-issued laptop. Yet, one year *after* the OCR required FCSB to "create[] . . . a centralized database in [FCSB] in which documentation of [FCSB] investigations and outcomes of sexual and gender-based harassment allegations are compiled and maintained," Ex. 1 (VRA) at BR_WOR_9993, A.F. "made sure [he] witnessed" his school-issued laptop being wiped so that the information stored on it was not preserved anywhere, Ex. 2 (A.F. Depo. Tr.) at 102:18–106:18.

Given the evidence of A.F.'s bad faith, the intentional nature of the destruction of the ESI on his laptop, and, relatedly, the significance of the lost ESI, B.R. has established that FCSB acted with the intent to deprive of her of the information's use in litigation. Rule 37(e)(2) sanctions are therefore appropriate. *See Estate of Bosco ex rel. Kozar v. County of Sonoma*, 640 F. Supp. 3d 915, 929 (N.D. Cal. 2022) (finding that evidence supported a reasonable inference that defendants acted with intent to deprive under Rule 37(e)(2) where defendants' employee "allow[ed] the missing [ESI] to go unnoticed until it was overwritten"); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-cv-60629, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (imposing adverse inference sanctions against defendant for spoliation of evidence because the court found that defendant failed to take reasonable steps to preserve ESI on his personal and company-owned devices). Accordingly, B.R. requests the Court (1) "instruct the jury that it may or must presume the information was unfavorable to" FCSB and its agents, *see* Fed. R. Civ. P. 37(e)(2)(B); and (2) award B.R. her attorney's fees and costs incurred in conjunction with this Motion.

**CONCLUSION**

B.R. respectfully requests that her Motion for Sanctions Due to Spoliation be granted and that the Court (1) impose sanctions calibrated to cure the prejudice resulting from the loss of B.R.'s, O.B.'s, Co.K.'s, and other students' written statements, and T.B.'s notes; and (2) impose sanctions under Rule 37(e)(1) and Rule 37(e)(2) calibrated to cure the prejudice resulting from the destruction of the ESI stored on A.F.'s school-issued laptop.

Dated:  January 12, 2024

Respectfully submitted,

By:  _____/s/ *Jonathan Fahey*_____

JONATHAN L. FAHEY
(VSB No. 44854)
**HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC**
2300 N Street NW, Ste 643
Washington, DC  20037
Telephone: (202) 737-8808
jfahey@holtzmanvogel.com

ALISON L. ANDERSON
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East, Suite 1520
Los Angeles, CA  90067
Telephone: (213) 629-9040
Facsimile:  (213) 629-9022
alanderson@bsfllp.com

ANDREW S. BRENNER
(Pro Hac Vice)
BRITTANY ZOLL
(Pro Hac Vice)
ROBERT G. KEEFE
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL  33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307

abrenner@bsfllp.com
bzoll@bsfllp.com
rkeefe@bsfllp.com

*Counsel for Plaintiff B.R*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

By: */s/ Jonathan Fahey*

*Counsel for Plaintiff B.R*