**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:19-cv-00917-RDA-WEF |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT FAIRFAX COUNTY SCHOOL BOARD'S**
**OMNIBUS MOTION *IN LIMINE***

Sona Rewari (VSB No. 47327)
Ryan M. Bates (VSB No. 74661)
Scott W. Burton (VSB No. 90601)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
srewari@HuntonAK.com
rbates@HuntonAK.com
burtons@HuntonAK.com

*Counsel for Defendant Fairfax County School Board*

January 12, 2024

## TABLE OF CONTENTS

**Page**

A.　MIL #1:  Dismissed Equal Protection Claim .................................................. 1

B.　MIL #2:  Criminal Activities By Non-Parties Against Non-Parties ................................ 3

C.　MIL #3:  Claims Against the 15 Unnamed "Mike Roe" and "Mary Roe" Defendants ...... 4

D.　MIL #4:  School Board's Policies, Procedures, and Actions After March 1, 2013 ........... 5

E.　MIL #5:  August 2014 VRA and OCR Letter .................................................... 5

F.　MIL #6:  2020 VRA and Associated Letter ...................................................... 8

G.　MIL #7:  Fairfax County Youth Survey Reports ................................................ 8

H.　MIL #8:  The School Board's Finances or Annual Budget ............................... 10

I.　MIL #9:  Disparagement of Defense Counsel, the Cost, or Conduct of Defense............ 10

J.　MIL #10:  Testimony by Plaintiff or any Lay Witness Regarding Plaintiff's Medical Diagnoses ................................................................................ 12

K.　MIL #11:  Plaintiff's Medical and Mental Health Treatment Records............................ 13

L.　MIL #12:  Age of Consent .................................................................. 13

M.　MIL ##13 & 14:  Never-Disclosed and Improperly Disclosed Witnesses ...................... 17

　　1.　MIL #13:  Witnesses Who Were Not Disclosed by Plaintiff in Discovery　18

　　2.　MIL #14:  Witnesses Who Were Not Properly Disclosed by Plaintiff in Discovery　19

N.　MIL #15:  Alleged Retaliation Against Plaintiff's Brother ............................. 20

O.　MIL #16:  Alleged Threats to Plaintiff's Fiancé ....................................... 20

P.　MIL #17:  Damages Not Properly Disclosed under Fed. R. Civ. P. 26(a)(1)(A)(iii) ....... 21

Q.　MIL #18:  Treatment at Holy Name Medical Center ...................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*,
   No. 19-CV-505, 2020 WL 4574493 (E.D. Va. Aug. 7, 2020)................................................23

*Barnes v. Gorman*,
   536 U.S. 181 (2002)...........................................................................................................10

*Bostic v. Smyrna Sch. Dist.*,
   No. 01-0261 KAJ, 2003 WL 723262 (D. Del. Feb. 24, 2003) .............................................16

*Bresler v. Wilmington Tr. Co.*,
   855 F.3d 178 (4th Cir. 2017) ..............................................................................................18

*C.S. v. Madison Metro. Sch. Dist.*,
   34 F.4th 536 (7th Cir. 2022) ...............................................................................................16

*Chancellor v. Pottsgrove Sch. Dist.*,
   501 F. Supp. 2d 695 (E.D. Pa. 2007) ..................................................................................16

*Cougill v. Prospect Mortg., LLC*,
   No. 1:13-cv-1433-JCC, 2014 WL 348539 (E.D. Va. Jan. 31, 2014).......................................1

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)..........................................................................................13, 14, 16, 17

*Dillard v. Smith*,
   558 F. Supp. 3d 308 (W.D. Va. 2021) .................................................................................25

*Doe v. Bd. of Educ. of Prince George's Cnty.*,
   605 F. App'x 159 (4th Cir. 2015) ..........................................................................................8

*Doe v. Fairfax Cnty. Sch. Bd.*,
   No. 1:18-cv-614-MSN, 2023 WL 424265 (E.D. Va. Jan. 25, 2023).......................................1

*Draper v. Airco, Inc.*,
   580 F.2d 91 (3d Cir. 1978)..................................................................................................11

*F.W. Woolworth Co. v. Wilson*,
   74 F.2d 439 (5th Cir. 1934) ................................................................................................11

*Fiberglass Insulators, Inc. v. Dupuy*,
   856 F.2d 652 (4th Cir. 1988) ............................................................................................6, 7

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
   503 U.S. 60 (1992)..............................................................................................................13

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998)...................................................................................................7

*Howard v. State Farm Mut. Auto Ins. Co.*,
   316 S.C. 445, 450 S.E.2d 582 (S.C. 1994) .............................................................11

*Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*,
   No. 1:20-CV-425, 2023 WL 6800328 (M.D.N.C. Oct. 12, 2023)...........................19

*Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*,
   No. 2:18-CV-320, 2020 WL 6817060 (E.D. Va. Nov. 3, 2020)..............................22

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) .....................................................................5

*Jennings v. Univ. of N.C.*,
   482 F.3d 686 (4th Cir. 2007) ..................................................................................14

*Koufakis v. Carvel*,
   425 F.2d 892 (2d Cir. 1970)....................................................................................12

*Mary M. v. N. Lawrence Cmty. Sch. Corp.*,
   131 F.3d 1220 (7th Cir. 1997) ..........................................................................15, 16

*McCoy v. Robinson*,
   No. 3:08CV555, 2011 WL 5975277 (E.D. Va. Nov. 28, 2011) ..............................12

*Meritor Savings Bank, FSB v. Vinson*,
   477 U.S. 57 (1986)............................................................................................13, 14

*Moody v. Maine Cent. R. Co.*,
   823 F.2d 693 (1st Cir. 1987)..............................................................................24, 25

*Morrissey v. Welsh Co.*,
   821 F.2d 1294 (8th Cir. 1987) ................................................................................11

*Mountain Valley Pipeline, LLC v. 1.30 Acres of Land*,
   No. 7:18-CV-00607, 2019 WL 4306981 (W.D. Va. Sept. 11, 2019)......................20

*New York Cent. R. Co. v. Johnson*,
   279 U.S. 310 (1929)................................................................................................11

*Ruddy v. Bluestream Pro. Serv., LLC*,
   No. 1:18-CV-1480, 2020 WL 13694227 (E.D. Va. July 16, 2020).........................23

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
   318 F.3d 592 (4th Cir. 2003) ............................................................................18, 23

*Saudi v. Northrop Grumman Corp.*,
   427 F.3d 271 (4th Cir. 2005) ..............................................................21

*Schiff v. Kennedy*,
   691 F.2d 196 (4th Cir. 1982) ..............................................................4

*Silicon Knights, Inc. v. Epic Games, Inc.*,
   No. 5:07-CV-275-D, 2012 WL 1596722 (E.D.N.C. May 7, 2012) .......................23

*Simmons v. Wawa, Inc.*,
   No. 4:16-CV-120, 2017 WL 2713738 (E.D. Va. Mar. 23, 2017) .........................25

*Stollings v. Ryobi Techs., Inc.*,
   725 F.3d 753 (7th Cir. 2013) ..............................................................11

*Studco Bldg. Sys. U.S., LLC v. 1st Advantage Fed. Credit Union*,
   509 F. Supp. 3d 560 (E.D. Va. 2020) .....................................................4

*Taylor v. Shreeji Swami, Inc.*,
   820 Fed. Appx. 174 (4th Cir. 2020)......................................................24

*TecSec v. Adobe, Inc.*,
   No. 1:10-cv-115-LO, 2018 WL 11388472 (E.D. Va. Nov. 21, 2018)....................1

*Whittenburg v. Werner Enters., Inc.*,
   561 F.3d 1122 (10th Cir. 2009) .......................................................10, 11

*Wilson v. Bd. of Educ. of Prince George's Cnty.*,
   No. 12-CV-02092-AW, 2013 WL 12246628 (D. Md. Oct. 30, 2013) ..................12

*Zellars v. NexTech Ne., LLC*,
   895 F. Supp. 2d 734 (E.D. Va. 2012) ...................................................25

**Statutes**

42 U.S.C. § 1983...............................................................................1

Virginia Code § 18.2-63 ................................................................13, 17

**Other Authorities**

*Dep't of Ed., Office for Civil Rights, Sexual Harassment Guidance: Harassment of
   Students by School Employees, Other Students, or Third Parties*, 62 Fed. Reg.
   12,034, 12,040 (Mar. 13, 1997) ......................................................14, 15

Fed. R. Civ. P. 4(m) ...........................................................................4

Fed. R. Civ. P. 26(a) ...............................................................17, 18, 19, 21

Fed. R. Civ. P. 26(a)(1)(A)(iii) ...................................................................21, 22, 23, 24

Fed. R. Civ. P. 26(e)(1)...............................................................................................22

Fed. R. Civ. P. 37(c) ...............................................................................17, 23, 24

Fed. R. Evid. 401 .............................................................................................2, 8, 9, 10

Fed. R. Evid. 403 .............................................................................................2, 7, 8, 10

Fed. R. Evid. 408 ...............................................................................................6, 7, 8

Fed. R. Evid. 701 ...............................................................................................12

*Sexual Harassment Guidance: Harassment of Students by School Employees,*
*Other Students, or Third Parties*, 62 Fed. Reg. 12034, 12039-12040 (1997) ........................14

U.S. Dep't of Education Office for Civil Rights, *Protecting Civil Rights,*
*Advancing Equity*: *Report to the President and Secretary of Education Under*
*Section 203(b)(1) of the Department of Education Organization Act, FY 13-*
*14, Washington, DC* (2015), Appendix: Index of Cases Resolved with
Agreements ................................................................................................................7

Defendant Fairfax County School Board ("the School Board") respectfully files this Brief in Support of its Omnibus Motion *in Limine*.

The "main purpose of a motion *in limine* is to streamline the trial by keeping irrelevant or improper evidence out of the courtroom." *TecSec v. Adobe, Inc.*, No. 1:10-cv-115-LO, 2018 WL 11388472, at *7 (E.D. Va. Nov. 21, 2018). "Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury." *Cougill v. Prospect Mortg., LLC*, No. 1:13-cv-1433-JCC, 2014 WL 348539, at *1 (E.D. Va. Jan. 31, 2014). Accordingly, it is also "proper at the motion *in limine* stage for a court to preclude from trial arguments 'without factual or legal support.'" *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-614-MSN, 2023 WL 424265, at *1 (E.D. Va. Jan. 25, 2023) (quoting *TecSec*, 2018 WL 11388472, at *7). The decision to grant or deny a motion *in limine* is within the district courts discretion. *Id.; Cougill*, 2014 WL 348539, at *1.

## A.     MIL #1:  Dismissed Equal Protection Claim

The Court should preclude Plaintiff from presenting any argument or evidence regarding Plaintiff's now-dismissed Equal Protection claim under 42 U.S.C. § 1983, which alleged that the School Board had an unconstitutional custom or practice of "downplaying allegations of sexual harassment and assault," of "deliberate indifference to sexual assault," or "failure to properly train school employees." ECF 236, at 15, 18-19. To bolster this claim, Plaintiff had cited "data and evidence showing sexual assault, sexual harassment, and sex trafficking were widespread issues in the county's Schools," and alleged that the School Board "employees, either generally or as a custom, downplayed reports of sexual assault, harassment, or sex trafficking. . . ." *Id.* at 16. But the Court found Plaintiff had not alleged a plausible claim under any of these theories and dismissed this claim in March 2023, *id.* at 19, 22, before any party discovery was taken.

Despite dismissal of this claim, Plaintiff's proposed trial exhibits include all the same "data and evidence" that she had argued supported this claim. *See* ECF 464, Plaintiff's List of Proposed Trial Exhibits, at Exhibits 44, 54, 57, 58, 101, 173, 220, 342. The Court should preclude Plaintiff's arguments and evidence of an allegedly unconstitutional custom or practice, or that "sexual assault, sexual harassment, and sex trafficking were widespread issues in the county's Schools" as they are not relevant to any claim remaining in this case and are unduly prejudicial.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiff's allegations and evidence about districtwide customs or practices are not relevant to any claim or issue still in this case. The only claims that remain in this case are: Plaintiff's Title IX deliberate indifference claim against the School Board; Title IX retaliation claim against the School Board; First Amendment retaliation claim against Defendants A.F., S.T., and P.A.H., and common law tort claims against the nine Individual School Defendants and the two former student-defendants, C.K. and J.O.

This case involves allegations made by a single student at a single school. Allowing Plaintiff to suggest that her allegations typify, or are part of a larger pattern or practice within the Fairfax County Public Schools, would mislead the jury and sow confusion regarding the issues to be decided. Fed. R. Evid. 403. It would also result in unfair prejudice to the School Board who conducted discovery in reliance on the Court's March 2023 Order dismissing her claim based on this theory. Moreover, it would cause undue delay, for the School Board would be forced to rebut these suggestions with evidence of all the things it has done, both at a districtwide level and within each of the 200+ schools other than Rachel Carson Middle School ("RCMS"), to combat these societal problems.

**B.     MIL #2:  Criminal Activities By Non-Parties Against Non-Parties**

The Court should preclude Plaintiff from presenting any argument or evidence regarding criminal conduct allegedly perpetrated by non-parties against other non-parties.  Plaintiff's proposed list of trial exhibits includes a number of documents relating to criminal charges brought against various individuals who are non-parties and who were charged with criminal conduct against other non-parties, in various parts of Northern Virginia.  *See, e.g.,* ECF 464, Plaintiff's Proposed Trial Exhibits, at Exhibits 54 (Affidavit in support of criminal complaint in *United States v. Alexander Rivas*) (available at ECF 155-5); 58 (Indictment in *United States v. Jose Ciro Juarez-Santamaria*) (available at ECF 155-6); 173 (Affidavit in support of criminal complaint in *United States v. Justin Deonta Strom*) (available at ECF 155-4); 220 (Criminal indictment in *United States v. Strom*) (available at ECF 155-3); and 342 (News articles re: sex trafficking rings) (available at ECF 155-7).  These are among the same exhibits that were appended to Plaintiff's Second Amended Complaint ("SAC") in her attempts to state an Equal Protection Claim.

Evidence of such criminal wrongdoing by non-parties against other non-parties has no relevance to any claim still in this case.  Plaintiff does not allege that she ever had any interactions with these non-parties.  She did not produce in discovery any documents pertaining to these individuals or the criminal activity alleged in these proposed exhibits.  She did not identify any of these individuals as persons with knowledge in her initial disclosures or in her responses to discovery.  What may have happened between and among these non-parties, at other locations or at other times, has simply no bearing on any issue in this case.

Even if such evidence had any conceivable relevance to the claims in this case, that minimal probative value would be far outweighed by the risk of unfair prejudice.  Evidence and arguments regarding criminal acts perpetrated by non-parties against non-parties is very likely to confuse and mislead the jury regarding the issues to be decided in this case.  Plaintiff's proposed exhibits

describe allegations of sexual violence and gang activity, which are highly inflammatory and likely to incite a jury's passions and fears.  It would be unduly prejudicial to the defense to allow Plaintiff to introduce these alleged instances of criminal conduct, involving non-party perpetrators and victims, with no direct relationship to this case.  Each of the incidents described in these documents involves its own constellation of facts and would invite multiple trials-within-a-trial.  The exhibits themselves are inadmissible hearsay, and any alleged facts surrounding these events could only be established through the testimony of individuals who have not been identified by any party as witnesses in this case.

**C.**     **MIL #3:  Claims Against the 15 Unnamed "Mike Roe" and "Mary Roe" Defendants**

The Court should preclude Plaintiff from referring to, or offering any evidence or argument of the claims raised in the SAC against 15 unnamed "Mike and Mary Roe" Defendants.[1]  Though the SAC was filed in June 2023, Plaintiff has never served or identified the unnamed "Roe" Defendants.  So her claims against those individuals are subject to dismissal under Federal Rule of Civil Procedure 4(m).[2]  Because Plaintiff has never served the 15 "Roe" Defendants, she also cannot recover a verdict or judgment against them in this trial.  Her claims against the Roe Defendants, therefore, are not relevant, and allowing Plaintiff to refer to her claims against these

---

[1]  The School Board does not seek to foreclose Plaintiff from referring to unidentified individuals or their alleged conduct.  It only seeks to preclude Plaintiff from referring to them as "unnamed Defendants" or otherwise informing the jury that she had also sued 15 unnamed individuals.

[2]  *See also Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982) ("if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice"); *Studco Bldg. Sys. U.S., LLC v. 1st Advantage Fed. Credit Union*, 509 F. Supp. 3d 560, 567 (E.D. Va. 2020) (dismissing Doe defendant because "Plaintiff has not provided sufficient affirmative evidence to identify John Doe's citizenship for the purpose of federal jurisdiction or to overcome the Court's concern of permitting suits against unnamed parties to remain on the docket").

unnamed Roe Defendants would be unduly prejudicial to the named Defendants. *See, e.g., Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 557 (E.D.N.Y. 2011) (precluding plaintiff from referring to his claims against unnamed "John Doe" officer who was never served with complaint).

**D.**     **MIL #4:  School Board's Policies, Procedures, and Actions After March 1, 2013**

The Court should preclude Plaintiff from referring to, or offering any evidence of, the School Board's policies, procedures, or actions after the events at issue in this case.  Plaintiff stopped coming to RCMS on February 10, 2012, and does not claim any alleged sexual harassment or assaults after that date.  Moreover, Plaintiff withdrew from Fairfax County Public Schools ("FCPS") altogether on March 1, 2013, when she enrolled in a private school in another state.

The SAC does not allege any wrongful acts or omissions by the School Board vis-à-vis Plaintiff at any time in 2013, let alone after March 1, 2013.  Yet, Plaintiff has included on her list of proposed trial exhibits dozens of School Board policies, regulations, training materials, meeting minutes, resolutions, that post-date March 2013, some by months and others by years.  *See, e.g.,* Plaintiff's Proposed Exhibits 343-49, 356, 358, 362, 371, 375, 376, 430, 432, 437.

Because Plaintiff was not a student at FCPS after March 1, 2013, the School Board's policies, procedures, and actions after that date are not relevant to the claims in this case.  Any minimal probative value will be far outweighed by the undue delay and risk of jury confusion posed by such evidence.

**E.**     **MIL #5:  August 2014 VRA and OCR Letter**

The Court should also preclude Plaintiff's Exhibits 369 and 370, which consist of the August 2014 Voluntary Resolution Agreement ("2014 VRA") between FCPS and the U.S. Department of Education Office of Civil Rights ("OCR"), and the associated August 2014 letter from OCR, as well as any other evidence or argument about the 2014 VRA or the Letter.  *See* Exhibits A (Plaintiff's Proposed Ex. 369) & B (Plaintiff's Proposed Ex. 370).  The 2014 VRA and

Letter reflect a compromise reached in August 2014, to resolve the administrative Title IX action initiated by Plaintiff in August 2012.  Both the 2014 VRA and OCR Letter should be excluded under Rules 408 and 403 of the Federal Rules of Evidence.

Rule 408 prohibits the use of settlement offers or agreements to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  Rule 408 is animated by two rationales: "(1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position. . . .  (2) [P]romotion of the public policy favoring the compromise and settlement of disputes."  Fed. R. Evid. 408, advisory committee note (1972).  Because of the strong policy in promoting settlements, the federal Rule "is broader than the common law exclusionary rule in many jurisdictions," and also applies to "a completed compromise of a claim arising out of the *same transaction* between a third person and a party to the suit being litigated."  *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654–55 (4th Cir. 1988) (internal quotation omitted; emphasis in original).

The 2014 VRA and Letter fall squarely within the ambit of Rule 408.  The VRA was a settlement agreement arising out of the same events as those at issue in this case.  Moreover, its terms expressly state that OCR "has made *no determination* that the Division has violated Title IX or any other law enforced by OCR" and that the VRA "*does not constitute and is not to be interpreted as any acknowledgement or admission of noncompliance* with applicable law or liability on the part of the Division or its employees."  Ex. A, at 1 (emphases added).  The VRA additionally provides that the exchanged payment "does not constitute any admission or agreement by FCPS of liability . . . . and that any such payment is not intended to be admissible in any legal proceeding."  *Id*.  The agreement was reached more than a year after Plaintiff withdrew from FCPS,

-6-

and more than two years after her alleged harassment had ended.  The 2014 VRA and Letter are not relevant to any of Plaintiff's remaining claims, which concern the School Board's actions in 2011 and 2012.

The public policy underlying Rule 408 further supports exclusion of the 2014 VRA and the Letter.  In just the years 2013 and 2014, OCR entered into a total of 1,310 resolution agreements with covered institutions.[3]  Were such resolution agreements to become admissible as evidence in private actions like this one, school systems would be discouraged from making such agreements with OCR.  *See Fiberglass Insulators*, 856 F.2d at 654 ("[T]he spectre of a subsequent use [of settlement negotiations] to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent.").

Even if Plaintiff could somehow circumvent the bar of Rule 408—which she cannot—the 2014 VRA and Letter should be precluded under Rule 403 because any probative value they may have is substantially outweighed by their prejudicial effect.  The VRA and Letter inject into the case a legal framework and standard that are different than that which govern a private claim under Title IX.  Indeed, the Supreme Court has expressly stated that noncompliance with the Department of Education's administrative requirements—including the requirements regarding sexual harassment policies and grievance procedures—"does not establish the requisite actual notice and deliberate indifference" for a private claim under Title IX.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998).  Abiding *Gebser*, the Fourth Circuit has held that a plaintiff cannot

---

[3] U.S. Dep't of Education Office for Civil Rights, *Protecting Civil Rights, Advancing Equity*: *Report to the President and Secretary of Education Under Section 203(b)(1) of the Department of Education Organization Act, FY 13-14, Washington, DC* (2015), Appendix: Index of Cases Resolved with Agreements (publicly available at https://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2013-14.pdf) (last visited 1/10/2024).

use evidence of noncompliance with policies to prove a Title IX deliberate indifference claim. *Doe v. Bd. of Educ. of Prince George's Cnty.*, 605 F. App'x 159, 169 (4th Cir. 2015).  Moreover, because the VRA involves a governmental agency, a jury could easily be misled or confused about its bearing on the issues in this case.

F.      **MIL #6:  2020 VRA and Associated Letter**

The Court should also preclude Plaintiff's Exhibits 431 and 432, which are the September 2020 Voluntary Resolution Agreement ("2020 VRA") between FCPS and the U.S. Department of Education Office of Civil Rights ("OCR"), that resolved a complaint of harassment involving the conduct of a former coach toward students on a team at one of the County's 30 high schools, and a related Letter from OCR.  *See* Exhibits C (Plaintiff's Proposed Ex. 431) & D (Plaintiff's Proposed Ex. 432).  The 2020 VRA and Letter are inadmissible under Rule 408, for all the reasons discussed in the preceding section.  They also should be excluded under Rule 401 and 403, as they do not pertain to any of the individuals involved in this case, postdate the relevant events by more than eight years, and present a significant risk of confusing and misleading the jury.

G.      **MIL #7:  Fairfax County Youth Survey Reports**

The Court should preclude the Fairfax County Youth Survey Reports that are peppered throughout Plaintiff's list of proposed Exhibits, including her proposed Exhibits 44 (excerpts from 2009 Survey Report previously filed as Exhibit M to the SAC, ECF 155-13), 426 (2019 Survey Report), 552 (2009 Survey Report), 553 (2010 Survey Report), 554 (2011 Survey Report), 555 (2012 Survey Report), and 731 (2011 Survey Report).  Plaintiff attached the Youth Survey to the SAC in support of her now-dismissed Equal Protection claim.  The Fairfax County Youth Survey is a "comprehensive, anonymous, and voluntary survey that examines behaviors, experiences, and other factors that influence the health and well-being of the county's youth" and is used by the County of Fairfax "to monitor trends in substance abuse, health, mental health, and delinquency,

in order to support county efforts to plan, evaluate, and improve community and school programs designed to prevent health problems and promote healthy behaviors." Exhibit E (Plaintiff's Proposed Ex. 552) at BR_WOR_11396. The 2009 Survey, for example, included approximately 200 questions, that were administered to nearly 40,000 students in the 6th, 8th, 10th, and 12th grades. *See id.*

The Survey Reports, and any references to them, should be precluded under Rule 401 because they are not relevant to any of the claims remaining in this case. Plaintiff had pointed to a single question on the 2009 Survey to try to bolster her Equal Protection claim. *See* ECF 169, Pl.'s Opp'n to Partial Mot. to Dismiss and Strike, at 17. But that claim has been dismissed.[4] ECF 236. Indeed, as the Court observed, data that sexual assault, sexual harassment, and sex trafficking are issues in the County's school does not by itself "support the assertion that F.C.S.B. employees were acting unconstitutionally in addressing those issues." *Id.* at 16.

The claims remaining in this case are solely about Plaintiff's alleged experiences at RCMS. But the tabulated results in these reports are not specific to any individual school, let alone RCMS (which has no 6th, 10th, or 12th grade students). The Surveys were administered to students in elementary, middle, and high schools all over Fairfax County. Ex. E, Plaintiff's Proposed Ex. 552, at BR_WOR_11396. The Survey Reports reveal nothing about RCMS and do not tend to prove

---

[4] The Survey Report did not even support the point for which it was cited by Plaintiff. She had argued that there was a "discrepancy" between the survey results and FCPS's reported cases of sexual harassment and assault, and that this discrepancy suggested a custom or practice of downplaying sexual harassment and assault. But there was no discrepancy. The question to which Plaintiff pointed simply asked students whether they had experienced *any* sexual harassment by "anyone." Ex. E, at BR_WOR_11626, tbl. B11. It did not distinguish between harassment by another student or a non-student. *Id.* Nor did it distinguish between in-school and out-of-school incidents. *Id.* The question also did not ask whether they had reported any harassment to their school. *Id.*

or disprove anything about the events at issue in this case.  The Survey Reports simply have no relevance to any claim in this case.  Even if the Survey Reports had some marginal relevance, they are inadmissible hearsay, and their prejudicial effect substantially outweighs any probative value.

**H.      MIL #8:  The School Board's Finances or Annual Budget**

The Court should preclude, under Rules 401 and 403, Plaintiff from referring to, offering any evidence of, or eliciting any testimony regarding the School Board's finances, including the 404-page Annual Budget for Fiscal Year 2012 that is Plaintiff's proposed Exhibit 104.  Punitive damages have not been pled against the School Board, nor are they available under Title IX. *Barnes v. Gorman,* 536 U.S. 181, 186–87 (2002).  So the School Board's budget or financial condition is not relevant to any issue in this case.  Allowing evidence, arguments, or commentary regarding the School Board's finances would be unfairly prejudicial.  Indeed, "[c]omments on the wealth of a party have repeatedly and unequivocally been held highly prejudicial, and often alone have warranted reversal."  *Whittenburg v. Werner Enters., Inc.,* 561 F.3d 1122, 1130 n.1 (10th Cir. 2009).

**I.      MIL #9:  Disparagement of Defense Counsel, the Cost, or Conduct of Defense**

The Court should preclude Plaintiff from referring to, offering any evidence of, or eliciting any testimony that attempts to criticize defense counsel or their law firm, or discusses other cases in which the firm has represented the School Board, what the School Board has paid or is paying in defense of this case, or the manner in which this case has been litigated, including any motions or appeals filed by the School Board.  Plaintiff made such numerous unjustified attacks in her deposition.  A sample of such attacks can be seen in the letter Plaintiff sent to Magistrate Judge Fitzpatrick, which included calling defense counsel "dishonest" and "aggressive" "rape-enabling lawyers"; accusing them of "unethical" conduct, "abuse of process"; "bad faith," "lying" to the Court, and other violations of the Virginia Rules of Professional Conduct; and claiming that

defense counsel have filed briefs in service of a "goal" of getting to Plaintiff "ultimately to kill [herself] over this litigation." *See, e.g.,* ECF 425-4, at 2-10; ECF 425-5, at 2-3, ECF 425-6, at 2-11.

Such attacks are not only unjustified, but they are improper, unfairly prejudicial, and if allowed to be made before a jury will prevent a fair trial. As one court of appeals aptly stated, "[e]very individual and entity has the right to mount a non-frivolous defense against allegations of . . . misconduct. In preparing that defense, a party can—indeed, often must—spend not inconsiderable amounts of money. . . . To imply or argue that the mere act of defending oneself . . . is reprehensible serves no proper purpose, and for time out of mind it has been the basis for appellate courts ordering new trials." *Whittenburg,* 561 F.3d at 1130–31 (citing *New York Cent. R. Co. v. Johnson,* 279 U.S. 310, 318 (1929), *amended sub nom.* 49 S. Ct. 417 (1929)) (reversing for new trial in light of "bitter and passionate attack on petitioner's conduct of the case, under circumstances tending to stir the resentment and arouse the prejudice of the jury"); *Morrissey v. Welsh Co.*, 821 F.2d 1294, 1303–04, 1303 n. 4 (8th Cir. 1987) (reversing for new trial on issue of damages in part because counsel in closing argument commented that defendant-company "spent large amounts on the defense of the case to blame everyone but himself for the collapse" of a building wall); *F.W. Woolworth Co. v. Wilson,* 74 F.2d 439, 442–43 (5th Cir. 1934) (reversing for new trial in part because counsel in closing declared opposing party's case to be "trumped up"); *Draper v. Airco, Inc*., 580 F.2d 91, 96 (3d Cir. 1978) (finding improper "repeated vituperative and insulting references to the defendants and defendants' counsel"); *Howard v. State Farm Mut. Auto Ins. Co.,* 316 S.C. 445, 449, 450 S.E.2d 582, 585 (S.C. 1994) (cautioning bar against form of closing argument where counsel talked about opposing party going out and hiring "the biggest, baddest law firm in the State," having "resources" and being willing to "fight us for every dime,"

and spending large sums of money defending its case); *accord, e.g., Stollings v. Ryobi Techs., Inc.,* 725 F.3d 753, 761 (7th Cir. 2013) (stating that "argument aimed at a party's counsel is improper and risks depriving the party of a fair trial" and remanding for new trial); *Koufakis v. Carvel,* 425 F.2d 892, 904 & n. 16 (2d Cir. 1970) (remanding for new trial in part because of attacks on opposing counsel).

Defense counsel, their representation, or the manner in which this case has been litigated are not proper subjects for testimony or argument at trial, and the Court should preclude any attorney argument or witness testimony on these topics.

**J.**    **MIL #10:  Testimony by Plaintiff or any Lay Witness Regarding Plaintiff's Medical Diagnoses**

The Court should preclude Plaintiff from offering or eliciting any testimony from Plaintiff, her family members, or any other lay witness regarding any diagnoses of Plaintiff's physical or mental conditions, including Plaintiff's claimed diagnoses of a traumatic brain injury and post-traumatic stress disorder.  A plaintiff's (or other lay witness') account of what she was told by a medical provider is inadmissible hearsay to prove the existence of such a condition.  *See, e.g., McCoy v. Robinson,* No. 3:08CV555, 2011 WL 5975277, at *2 (E.D. Va. Nov. 28, 2011) (holding that Plaintiff's affidavit restating what a doctor and nurse told her was inadmissible hearsay); *Wilson v. Bd. of Educ. of Prince George's Cnty*., No. 12-CV-02092-AW, 2013 WL 12246628, at *2 (D. Md. Oct. 30, 2013) (doctor's notes and testimony about their contents excluded as inadmissible hearsay).  Neither Plaintiff nor her lay witnesses are qualified to render medical diagnoses or testify about their causation. Fed. R. Evid. 701.  Plaintiff and her lay witnesses should be limited to testifying only about any symptoms experienced or exhibited by Plaintiff, and precluded from relaying or rendering any medical diagnoses.

**K.**     **MIL #11:  Plaintiff's Medical and Mental Health Treatment Records**

The Court should preclude Plaintiff from discussing in her opening statement and from offering or eliciting any lay witness testimony regarding the contents of any of Plaintiff's medical and mental health records before such records have been admitted in evidence.  Plaintiff has listed thousands of pages of such records as potential trial exhibits.  Some of these exhibits consist of the entirety of a provider's response to a subpoena, and are rife with double- and triple-hearsay.  While Plaintiff may be able to lay a foundation for the admission of some information contained within some of her medical records, the admissibility of any specific record will depend on its individual contents, the witness through which it is offered, and/or the purpose for which it is offered.

**L.**     **MIL #12:  Age of Consent**

The Court should preclude Plaintiff from telling the jury in her opening statement, and presenting or eliciting testimony, that she lacked the legal capacity to consent to sexual intercourse when she was twelve years old, by virtue of Virginia Code § 18.2-63 or some other provision of Virginia's criminal code.

Virginia Code § 18.2-63 does not have any relevance to this case.  This is a case under Title IX, in which Plaintiff must demonstrate that she was subjected to sexual harassment.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (institutions may be liable under Title IX for peer-to-peer "sexual harassment … that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school").  Sexual advances must be "unwelcome" to constitute harassment*.  Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986).

While *Meritor* is a Title VII case, the Supreme Court expressly relied on *Meritor* in finding that Title IX's proscription against sex discrimination includes sexual harassment. *Franklin v. Gwinnett Cnty. Pub. Schs.,* 503 U.S. 60, 75 (1992) ("Title IX placed on the Gwinnett

County Public Schools the duty not to discriminate on the basis of sex, and 'when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s] on the basis of sex.'") (quoting *Meritor*, 477 U.S. at 64).

The Supreme Court in *Davis* also relied on *Meritor* and Title VII's hostile work environment principles to find sexual harassment between students actionable under Title IX.  526 U.S. at 651.  It also noted that OCR had "recently adopted policy guidelines providing that student-on-student harassment falls within the scope of Title IX's proscriptions."  *Id.* at 647-48 (citing Department of Education, Office of Civil Rights, *Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, 62 Fed. Reg. 12034, 12039-12040 (1997)).  That OCR 1997 Guidance also applied Title VII hostile environment principles to student-student harassment, and expressly stated that:  "In order to be actionable as harassment, sexual conduct must be unwelcome.  Conduct is unwelcome if the student did not request or invite it and "regarded the conduct as undesirable or offensive." *Dep't of Ed., Office for Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, 62 Fed. Reg. 12,034, 12,040 (Mar. 13, 1997).

The Fourth Circuit also has expressly stated, in an *en banc* ruling, "[w]e look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc).

Under these hostile environment principles, sexual advances must be "unwelcome" to constitute harassment.  *Meritor,* 477 U.S. at 68 ("The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'").  Indeed, consent is not the issue, for even "voluntary" sexual activity between adults may be "unwelcome."  *See id.* ("[T]he fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate

against her will, is not a defense to a sexual harassment suit . . . .  The correct inquiry is whether

respondent by her conduct indicated that the alleged sexual advances were unwelcome.").  Just as

all sexual activity between adults does not become "welcome" merely because they are adults,

sexual activity between minors does not become "unwelcome" just because they are minors.

Otherwise, schools would be responsible to enforce sexual mores in dating and romantic

relationships between students.  Nothing in Title IX puts funding recipients on notice of such an

enormous responsibility.

The **age** of a student may be relevant to assessing welcomeness,[5] but age-of-consent laws

do not themselves illuminate the question in student-student harassment cases, particularly when

the students are of similar age.  Age-of-consent laws, of course, can be relevant when the conduct

is a sexual relationship between an adult employee and a minor student.[6]  *Mary M. v. N. Lawrence*

---

[5] *See, e.g.,* 62 Fed. Reg. at 12040 ("In order to be actionable as harassment, sexual conduct must be unwelcome. Conduct is unwelcome if the student did not request or invite it and "regarded the conduct as undesirable or offensive. . . . Acquiescence in the conduct or the failure to complain does not always mean that the conduct was welcome. . . .  On the other hand, if a student actively participates in sexual banter and discussions and gives no indication that he or she objects, then the evidence generally will not support a conclusion that the conduct was unwelcome.  If younger children are involved, it may be necessary to determine the degree to which they are able to recognize that certain sexual conduct is conduct to which they can or should reasonably object and the degree to which they can articulate an objection.  Accordingly, OCR will consider the age of the student, the nature of the conduct involved, and other relevant factors in determining whether a student had the capacity to welcome sexual conduct.") (footnotes omitted).

[6] *See id.* ("OCR must consider particular issues of welcomeness if the alleged harassment relates to alleged 'consensual' sexual relationships between a school's **adult** employees and its students.  If elementary students are involved, welcomeness will not be an issue: OCR will never view sexual conduct between an adult school employee and an elementary school student as consensual.  In cases involving secondary students, there will be a strong presumption that sexual conduct between an adult school employee and a student is not consensual.  In cases involving older secondary students, subject to the presumption, OCR will consider a number of factors in determining whether a school employee's sexual advances or other sexual conduct could be considered welcome.") (emphasis added) (footnotes omitted).

*Cmty. Sch. Corp.*, 131 F.3d 1220 (7th Cir. 1997), illustrates this point, as that case involved a 21-year-old employee and a 13-year-old student. *Id.* at 1227. The court found that it was improper to ask a jury to determine whether the student had "welcomed" sexual activity with an adult, when it was a crime for the adult to have engaged in such activity. *Id.*; *see also, e.g., Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695 (E.D. Pa. 2007) (high school student could not "welcome" her teacher's sexual advances); *Bostic v. Smyrna Sch. Dist.*, No. 01-0261 KAJ, 2003 WL 723262, at *6 (D. Del. Feb. 24, 2003) ("long-standing law and policy governing the actions of an adult towards a child" barred any claim that sexual relationship between minor student and her adult track team coach was not harassment).

In an *en banc* decision in a case involving sexual relationship between a middle-school student and a school security employee, the Seventh Circuit explained the rationale of *Mary M.* the same way: "the onus is on school employees to reject the advances of minor students, who are both legally and mentally incapable of consenting to sexual contact . . . in Title IX cases, claims by an alleged harasser that his minor victim initiated or invited the challenged conduct are of no legal consequence whatsoever." *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 547 (7th Cir. 2022) (citing *Mary M.*, 131 F.3d at 1227).[7]

---

[7] *Mary M.* predated by two years the Supreme Court's decision in *Davis*, which pronounced that Title IX applies to student-student harassment. Indeed, the court in *Mary M.* specifically declined to address whether Title IX could be applied to student-student harassment at all. 131 F.3d 1226 & n. 7 (distinguishing cases applying welcomeness inquiry to student-student harassment cases and noting that the case before the court presents "no occasion to rule on whether this Circuit will recognize a claim for peer-to-peer sexual harassment"). Moreover, *Mary M.*'s declination to import the Title VII "welcomeness" inquiry to sexual activity between an elementary school student and an adult can only be understood as applying to the adult-minor context and a pre-*Davis* reading of Title IX, given that the *Davis* expressly used Title VII hostile environment principles to find student-student harassment actionable under Title IX.

Here, **all** of the former students accused of sexual harassment by Plaintiff were below the age of consent provided in Virginia Code § 18.2-63.  C.K. and J.O. were also protected  under Virginia law as they were 13 and 12 years old, respectively.  Virginia's age of consent law does not tend to prove or disprove whether Plaintiff was subjected to sexual harassment by her classmates.

Not only are the age of consent laws irrelevant, but allowing Plaintiff, her witnesses, or her attorneys to discuss the laws or their import presents a substantial risk of misleading and confusing the jury about the issues in the case.  Moreover, what the statute means and how it applies to sexual activity between minors are legal conclusions.  Instructing the jury on the relevant laws and their meanings is the province of the Court, not Plaintiff, her witnesses, or her counsel.

**M.**     **MIL ##13 & 14:  Never-Disclosed and Improperly Disclosed Witnesses**

The Court should preclude Plaintiff from presenting any testimony from witnesses who were not disclosed during discovery, or who were not properly disclosed during discovery.

The Court's Scheduling Order in this case states that no person may testify at trial "whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained."  ECF 129. Rule 37(c)(1) also provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The sanction of exclusion is "self-executing" and "automatic."  Fed. R. Civ. P. 37(c), Advisory Comm. Note to 1993 Amendment, ¶¶ 9-10.   In *Southern States*, the Fourth Circuit articulated five factors that courts "should be guided by" when deciding whether the nondisclosure of evidence was substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).  The burden of establishing substantial justification or harmlessness lies with the non-disclosing party. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

In this case, Plaintiff was required by Rule 26(a)(1) to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information" that she "may use to support [her] claims."  Fed. R. Civ. P. 26(a)(1).  She was also requested by the School Board's Interrogatory No. 8 to identify all individuals with knowledge of the facts alleged in her lawsuit or who have witnessed any of the unlawful conduct alleged in the lawsuit, and to provide the contact information for each such individual.  *See* Exhibit F, FCSB's First Set of Interrogs. to Pl., No. 8.

### 1.    MIL #13:  Witnesses Who Were Not Disclosed by Plaintiff in Discovery

The Court should preclude Plaintiff from presenting any testimony from Josephine Evola, Esq. and Lisa Fagan, Esq.  They were not identified in Plaintiff's Rule 26(a)(1) disclosures in May 2022, or in either her two supplemental Rule 26(a)(1) disclosures in 2023.  From documents produced in this case, it appears that Ms. Evola was a federal government attorney employed by OCR in 2013, who was involved in investigating Plaintiff's administrative complaint; and Ms. Fagan was a special education attorney who represented Plaintiff and her mother in seeking and obtaining an Individualized Education Plan for Plaintiff in 2012.  Plaintiff has known about these individuals for over a decade.  Her failure to disclose is not substantially justified or harmless.  Therefore, these witnesses should be excluded from testifying at trial.  *See, e.g., Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, No. 1:20-CV-425, 2023 WL

6800328, at *5 (M.D.N.C. Oct. 12, 2023) (excluding witnesses that plaintiff failed to list on its Rule 26(a)(1) disclosures or supplements).

> 2.    **MIL #14:   Witnesses Who Were Not Properly Disclosed by Plaintiff in Discovery**

The Court should also preclude Plaintiff from offering the testimony of ██████, ██████ ██████ ██████, ██████, and ██████ because Plaintiff did not properly disclose them as potential witnesses during discovery.[8]  These are former RCMS students whose names were among the more than 100-plus persons listed in Plaintiff's Initial Disclosures.  But Plaintiff did not provide any addresses, phone numbers, or other contact information for any of them in her Initial Rule 26(a)(1) Disclosures in May 2022.  She did not provide such information in either of her two Supplemental Rule 26(a)(1) Disclosures in April or July 2023.  She did not provide their contact information in her response to School Board's Interrogatory No. 8, at any time during discovery.  And she did not provide their addresses or telephone numbers when she identified them on her Witness List on October 19, 2023, despite that Rule 26(a)(3) required her to "provide to the other parties and promptly file . . . the name and, if not previously provided, the address and telephone number of each witness."  Plaintiff has never disclosed this information, even to date.

If Plaintiff truly intends to call these witnesses to trial, then she had an obligation to provide their contact information during discovery, so that the School Board, or the other Defendants, could have deposed them.  Plaintiff's failure to comply with these obligations is neither substantially justified nor harmless and is highly prejudicial to the defense.  And any "offer to

_____

[8]  These individuals are identified only by their initials in the Witness List filed by Plaintiff. ECF 465.  Their names were disclosed in Plaintiff's "non-anonymized" witness list that was separately served on defense counsel.

make [undisclosed witnesses] available for another deposition does not entirely cure the prejudice because [Defendants] will not have the opportunity to develop or provide rebuttal opinions and evidence." *See also Mountain Valley Pipeline, LLC v. 1.30 Acres of Land*, No. 7:18-CV-00607, 2019 WL 4306981, at *6 (W.D. Va. Sept. 11, 2019).

**N.     MIL #15:  Alleged Retaliation Against Plaintiff's Brother**

The Court should preclude any argument, testimony, evidence, or other references to the claim made by Plaintiff that her older brother "felt" that he had been "retaliated against by school officials" and "had to graduate [from high school] early as a result." *See* ECF 425-2, at 6. Plaintiff's brother is not a party to this case.  He has not asserted, and could not assert, any claims on his own behalf in this case.  He was an 11th grade student during the 2011-12 school year, and thus, was not at RCMS during the events in question.  None of his high school teachers or administrators were identified by either side as persons with relevant knowledge.  His perceptions that he was "retaliated against" by staff at his high school, therefore, are not relevant to any issue in this case.  Moreover, any minimal probative value would be substantially outweighed by the prejudicial effect, as it would result in a trial-within-a-trial regarding what happened or did not happen to Plaintiff's brother.  Such evidence would also have the unduly prejudicial effect of trying to encourage the jury to decide this case based on improper considerations.

**O.     MIL #16:  Alleged Threats to Plaintiff's Fiancé**

The Court should preclude any argument, testimony, evidence, or other references to the claim made by Plaintiff and her fiancé A.M. that his "constitutional right to free speech," or any other legal right, was violated when the law firm by which he is employed (and not otherwise connected to this case) warned him to stop his tweets at the School Board's counsel regarding this case if he wanted to keep his job.  *See* ECF 425-6, at 6-7.  The tweets by Plaintiff's fiancé were directed to the individuals who represent or who previously represented the School Board, and

-20-

discussed the children of one such former attorney as well as the fact that he is a sitting judge and a candidate for a seat on the Fourth Circuit.  *See* Exhibit G, Dep. of A.M. at 194, 200-04; Exhibit H (FCSB Dep. Exs. 154, 155, 156, 157).

Plaintiff should be precluded from offering or eliciting any testimony about A.M.'s experience with his employer.  A.M. is not a party to this case.  He has not asserted, and could not assert, any claims on his own behalf in this case.  A.M.'s alleged experience with his employer is not relevant to any issue in this case.  Moreover, any minimal probative value would be substantially outweighed by the prejudicial effect, as it would result in a trial-within-a-trial regarding what happened or did not happen to Plaintiff's fiancé and why.  Such evidence would also have the unduly prejudicial effect of trying to encourage the jury to decide this case based on improper considerations.

**P.**     **MIL #17:  Damages Not Properly Disclosed under Fed. R. Civ. P. 26(a)(1)(A)(iii)**

The Court should preclude Plaintiff from presenting any evidence of, or eliciting any testimony, of any financial damages in excess of that which was set forth in her Rule 26(a)(1)(A)(iii) disclosures provided in May 2022.  *See* Exhibit I, Pl. Rule 26(a) Initial Disclosures.

"Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses."  *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005).  "A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case."  *Id.*

Rule 26(a)(1)(iii) requires that a party must provide to the other parties "a computation of each category of damages claimed by the disclosing party," and must also "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii); *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, No. 2:18-CV-320,

2020 WL 6817060, at *4 (E.D. Va. Nov. 3, 2020) ("a party's Rule 26(a)(1)(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations").

In this case, the **only** computation of Plaintiff's damages that she has ever provided to the School Board was in her Rule 26(a)(1) initial disclosures provided on May 13, 2022.  *See* Exhibit I.  There, she listed 21 medical and mental health providers, fourteen of which she included a "total amount" of claimed damages and the remainder of which she included only the placeholder, "xxx." *Id.*  Plaintiff has never supplemented these disclosures with any new or additional computations.[9] Fed. R. Civ. P. 26(e)(1).

Nor did Plaintiff use her answers to the School Board's Interrogatories to provide the information required by Rule 26(a)(1)(A)(iii).   In its First Interrogatories, the School Board requested that Plaintiff "itemize by amount all the damages and other relief you are seeking and the manner in which such amounts were computed or calculated, including any claims for compensatory damages, attorneys' fees, costs, and/or any other type of monetary relief" sought. *See* Exhibit F, FCSB's First Set of Interrogs. to Pl., No. 16.   In response, Plaintiff referred the School Board to her responses to the School Board's document requests generally, which provided no such computation, and to an "Exhibit A" that purportedly contained her "economic losses up through 2020."[10]  *See* Exhibit J, Pl. Ans. to FCSB's First Interrogs., Ans. No. 16.  "Exhibit A"

---

[9] Plaintiff supplemented her Rule 26(a)(1)(A) disclosures three more times, but never updated or supplemented her damages computations, other than to reference the chart at Exhibit J.

[10] Plaintiff specifically disclaimed that the "Exhibit" included expenses for "Alternative Therapeutic Modalities, travel expenses to and from treating healthcare providers, associated expenses for the service dog, tutors, and costs associated with relocating the family," but promised such compilations would be forthcoming.  *Id.*  But no such supplement was ever provided.

contained a spreadsheet of "categories" of lump sum damages—"medical, legal, tuition, etc."—but did not explain how these lump sums were calculated or provide any supporting computation or information. *See* Ex. J.

That is plainly not enough. "[W]here a party only discloses a lump sum or merely refers to documents from which the opposing party can presume damages, **the disclosing party has not met its obligation**." *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493, at *4 (E.D. Va. Aug. 7, 2020) (emphasis added); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *5 (E.D.N.C. May 7, 2012) (interrogatory answers that do not contain specific computations of damages supported by documentary evidence do not fulfill a party's Rule 26(a)(1)(A)(iii) obligations).

Plaintiff's failure to supplement her Rule 26 disclosures is neither harmless nor justifiable. Indeed, the School Board is **still** in the dark as to any damages computation that Plaintiff intends to present at trial other than what was provided in May 2022, despite that discovery has long closed and trial is only two months away. The "automatic" and "self executing" exclusion sanction under Rule 37(c)(1) is appropriately applied here. *See* Fed. R. Civ. P. 37(c), Advisory Comm. Note to 1993 Amendment, ¶¶ 9-10; *S. States Rack & Fixture, Inc.*, 318 F.3d at 597 & n. 2; *Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227, at *4 (E.D. Va. July 16, 2020) ("It is also clear that the exclusion of damages evidence pursuant to Rule 37(c), Fed. R. Civ. P., is the appropriate sanction for plaintiff's failure to disclose a proper computation of her economic damages in this case.").

The Court should preclude Plaintiff from presenting any evidence of, or eliciting any testimony, of any financial damages in excess of that which was set forth in her Rule 26(a)(1)(A)(iii) disclosures at Exhibit I.

**Q.**     **MIL #18:  Treatment at Holy Name Medical Center**

The Court should preclude Plaintiff from offering or eliciting any testimony that attempts to attribute her visits to Holy Name Medical Center ("Holy Name") in the years 2017 to 2019, to Defendants' conduct or the alleged events of 2011 and 2012 at issue in this case.  Plaintiff listed over $100,000 in expenses from her treatments at Holy Name in her computation of damages in May 2022 (Ex. I), but none of her experts have opined on the causes of the conditions for which she was treated at Holy Name.  Moreover, the records that the School Board obtained from Holy Name, and the ███████ who treated Plaintiff for the same symptoms she reported to Holy Name in 2017, indicate that Plaintiff's reported symptoms and diagnoses were either so clearly unrelated—e.g., ██████████████████████████████████████ (2017), ██████████████████████████████ (2018)—or so non-specific—e.g., ████████████ (2019)—that any connection to the events of 2011 and 2012 is non-existent, or at least, non-obvious.  *See, e.g.,* Ex. K (Plaintiff's Proposed Ex. 450 (Holy Name Records)), at HOLY-00010, HOLY-00138, HOLY-00160, HOLY-00182, HOLY-00210, HOLY-00230; *see also* Ex. L, Summit Health Record of Treatment, dated November 2, 2017.

Where the connection between an event and an injury "is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile," expert testimony will not be required.  *Moody v. Maine Cent. R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987).  But where the connection is not obvious and the condition or its etiology is complex, expert testimony is required to establish causation.  *See, e.g., Taylor v. Shreeji Swami, Inc.*, 820 Fed. Appx. 174, 176 (4th Cir. 2020) (expert testimony necessary to establish causation for allegations of exacerbation of claustrophobia, PTSD, depression, anxiety, and GERD); *Moody*, 823 F.2d at 696 (expert testimony needed for emotional trauma); *Dillard v. Smith*, 558 F. Supp. 3d 308, 312–13 (W.D. Va. 2021) (expert testimony was required to establish causal link between defendants' alleged use of

excessive force and the subdural hematoma and seizure-like symptoms for which plaintiff was hospitalized more than one month later); *Simmons v. Wawa, Inc*., No. 4:16-CV-120, 2017 WL 2713738, at *4 (E.D. Va. Mar. 23, 2017) (expert testimony required to show causal link between plaintiff's gastroenteritis and his consumption of defendant's chicken sandwich); *Zellars v. NexTech Ne., LLC*, 895 F. Supp. 2d 734, 752 (E.D. Va. 2012), *aff'd* (July 17, 2013) (expert testimony required to show causal link between plaintiffs' headaches, fatigue, dizziness, nausea, sore throat, chest, stomach and epigastric pain, neck and back pain, body tremors, and other neurological symptoms, and their exposure to defendants' chemicals).

Given the complex nature of the conditions for which Plaintiff was treated in these records from 2017 to 2019, and the years that separate the events at issue from her treatment at Holy Name, expert testimony would be required to establish any causal link between her treatment at Holy Name and the events in 2011 and 2012. Yet, Plaintiff has not disclosed any medical professional who will so opine.[11] Plaintiff, therefore, should be precluded from offering or eliciting any testimony that attempts to attribute her treatment at Holy Name to the events of 2011 and 2012 or the Defendants' alleged conduct in this case.

## **CONCLUSION**

The School Board respectfully requests that the Court grant each of its motions *in limine*.

---

[11] Neither the treaters at Holy Name nor the specialist who treated Plaintiff for some of these conditions appear on Plaintiff's Witness List.

Dated: January 12, 2024                    Respectfully submitted,

                                           By: */s/ Sona Rewari*
                                                Sona Rewari (VSB No. 47327)
                                                Ryan M. Bates (VSB No. 74661)
                                                Scott W. Burton (VSB No. 90601)
                                                HUNTON ANDREWS KURTH LLP
                                                2200 Pennsylvania Avenue, NW
                                                Washington, DC 20037
                                                Telephone: (202) 955-1500
                                                Facsimile: (202) 778-2201
                                                srewari@HuntonAK.com
                                                rbates@HuntonAK.com
                                                burtons@HuntonAK.com

                                           *Counsel for Defendant Fairfax County School Board*


## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

                    By:   */s/ Sona Rewari*
                            Sona Rewari