IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

B.R.                                      )
                                          )
      Plaintiff,                         )
                                          )   Civil Action No. 1:19-cv-917 (RDA/WEF)
      v.                                 )
                                          )
F.C.S.B., *et al.*,                       )
                                          )
      Defendants.                        )

## ORDER

This matter comes before the Court on the parties' motions in *limine*. Dkt. Nos. 630; 632; 634; 640; 647; 649; 655; 662; and 773. After submission of responses to and replies in support of the motions *in limine*, the Court heard argument on the motions during a four-hour hearing conducted on March 6, 2024. Each of the motions addresses multiple issues. As discussed during the hearing, even though the Court does not hold that all such evidence is excluded, the parties should strive to avoid introducing evidence relating to extraneous investigations conducted by the Fairfax County Police Department, the Department of Education, or other entities that are not parties to this litigation. Furthermore, the parties are instructed that, if during trial a party believes that the door has been opened on a matter that was excluded pretrial, that party is directed to first bring the issue to the attention of the Court outside of the presence of the jury.

For the reasons stated from the bench and set forth below, where necessary, each of the motions *in limine* (Dkt. Nos. 630; 632; 634; 640; 647; 649; 655; and 662) is GRANTED-IN-PART and DENIED-IN-PART and the motion *in limine* (Dkt. 773) is DENIED; and it is

FURTHER ORDERED that the Individual School Defendants' Omnibus Motion *in Limine* (Dkt. 630) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is granted insofar as school policies and regulations instituted after Plaintiff withdrew from Rachel Carson Middle School in February 2012 are not relevant to the Individual School Defendants. The Motion is denied insofar as it seeks to exclude evidence regarding school policies and regulations predating Plaintiff's withdrawal in February 2012. Insofar as the Individual School Defendants' Motion addresses the issue of damages, that issue is more fully addressed with respect to docket number 649 and the ruling with respect to FCSB's motion applies with equal force to the other Defendants. Insofar as the Motion seeks to preclude evidence regarding Plaintiff's treatment at Holy Name Medical Center that motion is taken under advisement and may be renewed during trial; and it is

FURTHER ORDERED that the Motion *in Limine* by Defendant CK (Dkt. 632) is GRANTED-IN-PART and DENIED-IN-PART. The motion is granted with respect to certain Twitter posts made by Defendant CK and with respect to general disciplinary records pertaining to CK, except to the extent that Plaintiff may use disciplinary records that pre-date Plaintiff's withdrawal from Fairfax County Public Schools to establish notice to Defendant FCSB. The motion is denied with respect to school disciplinary records relating to CK exposing himself to a female student. With respect to the request for a general limiting instruction regarding the relevance of certain evidence, counsel may draft – in consultation with counsel for all parties – a suggested limiting instruction for the Court to read to the jury at the beginning of the case. Any such instruction should be submitted to the Court no later than Thursday, March 14, 2024; and it is

FURTHER ORDERED that the Motion *in Limine* by Defendant JO (Dkt. 634) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is granted with respect to: (i) school disciplinary records that relate to JO's grades, health, and administrative records; (ii) general disciplinary records pertaining to JO, except to the extent that Plaintiff may use disciplinary records that pre-date Plaintiff's withdrawal from Fairfax County Public Schools to establish notice to Defendant FCSB; and (iii) social media posts by JO after the relevant time period. The Motion is denied with respect to school disciplinary records from a February 2011 incident involving nude photographs and with respect to social media posts regarding this litigation (Plaintiff Exhibits 547 and 583). But Plaintiff is warned that, if she introduces those exhibits, the entire statement will come in; and it is

FURTHER ORDERED that Plaintiff's First Motion *in Limine* (Dkt. 640) is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff seeks to preclude certain testimony from Dr. Sara Jennings. As discussed during the hearing, no party disputes that Dr. Jennings may testify that the findings from the sexual assault exam were nonspecific. With respect to alternative theories of causation, Dr. Jennings concedes that she is not offered as an expert on causation nor is she a pediatric gastroenterologist. Although Dr. Jennings may testify generally regarding possible explanations for scarring in that area, she may not testify or speculate as to causes in Plaintiff's case specifically and she may not validate or connect her opinions regarding possible causes generally with Plaintiff's medical records or medical history. Dr. Jennings lacks the requisite expertise to draw that connection and therefore, under *Daubert v. Merrell Dow Pharm., Inc.*, 509 US 579 (1993) and *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999), she will not be permitted to validate her opinions or opine regarding a more likely cause of the scarring observed on Plaintiff; and it is

FURTHER ORDERED that Defendants' Motion *in Limine* to Limit and Exclude Evidence from Treating Providers (Dkt. 647) is GRANTED-IN-PART and DENIED-IN-PART. With respect to the seven improperly disclosed treating providers (Drs. Saylor, Ward, Trager, Cigna, Ms. Traham, Ms. Jalazo, and Ms. Rosato), the Court will permit the providers to testify in a limited capacity based on an analysis of the *Southern States* factors and following Judge Novak's decision in *Roop v. Desousa*, 660 F. Supp. 3d 477 (E.D. Va. 2023). Thus, the seven treating providers will only be permitted to testify as to their observations of Plaintiff's condition and their treatment of Plaintiff and *not* to any causes, diagnosis, prognosis, or future medical needs. The Court will exclude testimony from the undisclosed providers: Drs. Brice Jackson, Heather Brillhart, and R.J. An analysis of the *Southern States* factors is below:

- To begin with, the Court finds that Plaintiff was required to list the treating providers in as witnesses under Rule 26(a)(2)(C). Courts in this Circuit generally recognize that treating providers are required to be listed as witnesses under the Rule as witnesses who will not provide an expert report but nonetheless will touch on matters that is based on specialized knowledge or expertise. *See, e.g., Ace American Ins. Co. v. McDonald's Corp.*, 2012 WL 2523883, at \*3 (D. Md. June 28, 2012) (holding that "hybrid witnesses such as treating physicians are governed by Rule 26(a)(2)(C)"); *Mayo v. City of Huntington*, 2022 WL 1298742, at \*1 (S.D. W. Va. Apr. 29, 2022) ("Treating physicians typically fall within the second category of expert witnesses, typically called a 'hybrid' witness.").

   - Having found that Plaintiff was required to list the seven improperly disclosed treating physicians treating providers pursuant to Rule 26(a)(2)(C), the Court must now determine whether to exclude their testimony pursuant to the *Southern States* factors. The Court finds that, given Plaintiff's prior counsel's comments in the hearings before Judge Fitzpatrick, there is surprise to Defendants that these treating physicians would be testifying in a hybrid expert witness status. Although Defendants had the opportunity to and noticed depositions for these individuals and collected documents from these individuals, those depositions were cancelled in part based on the reliance on statements by prior Plaintiff's counsel that the treating physicians would not be called as experts. Permitting Defendants to cure that surprise now, by deposing the treating physicians would significantly disrupt the trial scheduled to begin in just two weeks. Moreover, Plaintiff can only contend that three of the seven treating providers at issue are important, because only Drs. Saylor and Ward and Ms. Trahan are listed as "will call" on Plaintiff's

4

witness list.  Plaintiff's explanation for the improper disclosure appears to be twofold, one based on the positions taken by prior counsel and one based on the misunderstanding of whether hybrid witnesses were required to be disclosed pursuant to Rule 26(a)(2)(C).  Courts recognize that this is no excuse.  *Roop*, 660 F. Supp. 3d at 484; *Springs ex rel. C.S. v. Waffle House, Inc.*, 2021 WL 119303, at *3 (D.S.C. Jan. 13, 2021).  In sum, the *Southern States* factors favor excluding the expert portion of the seven improperly disclosed witnesses' testimony, but permitting them to testify to their observations and treatment as a laywitness as they were disclosed as such.

o   With respect to the three undisclosed treatment providers (Drs. Brice Jackson, Heather Brillhart, R.J.), the weight of each of the *Southern States*' factors discussed above is magnified.  Moreover, Plaintiff offers no explanation for why Dr. Brillhart and RJ were not disclosed to Defendants.  Plaintiff states that she only began seeing Dr. Jackson at the close of discovery but offers no explanation as to why she sought new treatment providers so close to the end of discovery if she intended to rely on their testimony.  At some point discovery must end and at that point new witnesses will not be permitted to testify at trial.  To hold otherwise, would erase all limits on discovery and taking Plaintiff's argument to the extreme would permit parties to rely on treating physicians obtained in the days before or even during trial with no opportunity for any discovery.

and it is FURTHER ORDERED that Defendant FCSB's Omnibus Motion *in Limine* (Dkt. 649) is GRANTED-IN-PART and DENIED-IN-PART.  The disposition of the various issues raised in the Motion is as follows:

- The Motion is granted with respect to exhibits attached to the complaint regarding sex trafficking, including Plaintiff's Exhibits 54, 58, 173, 220, and 342.  The criminal complaints, affidavits, and indictments included indicate that sex trafficking was occurring in Fairfax County, but do not establish any connection to Fairfax County Public Schools.

- The Motion is denied with respect to certain youth surveys, including those attached to the complaint and listed as Plaintiff's Exhibits 44, 57, 101, 427, 552, 553, 554, 555, and 731.  Although the Court agrees with FCSB that this evidence is not relevant to notice, the proposed exhibits are still relevant as to the reasonableness of FCSB's response to Plaintiff's alleged complaints and whether FCSB was deliberately indifferent.  *See Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 271 (4th Cir. 2021) (a court determines whether the school's response to plaintiff's reports of harassment was "clearly unreasonable in light of the known circumstances"); *Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 35 F.4th 459, 465-66, 468 (6th Cir. 2022) (reversing district court's summary judgment for defendant on plaintiff's Title IX claim because the

plaintiff proffered evidence that the school board "was aware of issues with sexual harassment in the school system well before the [plaintiff] reported [her] incident[]"); *Doe v. Indep. Sch. Dist. 31*, 2020 WL 4735503, at *13 (D. Minn. Aug. 14, 2020) (denying motion to dismiss Title IX claim because "prior complaints"—including "previous instances of sexual abuse by one other teacher in the District"—"were sufficiently similar in substance to alert the District to the possibility of Plaintiff's sexual abuse on-line").

- The Motion is granted with respect to the unidentified Mike and Mary Roe Defendants, in that Plaintiff will not refer to them as defendants in this case.

- The Motion is granted with respect to School Board Policies and Regulations that post-date Plaintiff's March 2013 withdrawal from Fairfax County Public Schools, unless FCSB opens the door to such policies by arguing feasibility. The Motion is denied with respect to School Board Policies and Regulations that predate Plaintiff's March 2013 withdrawal from Fairfax County Public Schools.

- The Motion is granted with respect to the 2014 Voluntary Resolution Agreement, 2020 Voluntary Resolution Agreement, and 2020 Office of Civil Rights Letter. The Motion is denied with respect to the 2014 Office of Civil Rights Letter ("2014 OCR Letter"), but the parties are directed to confer regarding certain redactions to the 2014 OCR Letter. *See Distaff, Inc. v. Springfield Contracting Corp.*, 984 F.2d 108, 111 (4th Cir. 1993) ("Government reports which include findings and opinions from an official investigation are admissible under Rule 803(8) if the contents are trustworthy."). Any references to a negotiated "resolution" should be redacted pursuant to Federal Rule of Evidence 408. Plaintiff is advised that she should carefully consider whether it is advisable to introduce evidence of OCR's investigation because it may open the door to the results of other investigations that Plaintiff wishes to exclude.

- The Motion is granted with respect to any references to FCSB's Finances or Budget.

- The Motion is granted with respect to any arguments or references that disparage defense counsel and is also granted with respect to any arguments regarding the cost of the defense. The Motion is denied with respect to FCSB's strategic choices, as this comes too close to preventing Plaintiff from arguing her case. *See Sowers v. RJ Reynolds Tobacco Co.*, 975 F.3d 1112, 1125 (11th Cir. 2020) ("Every defendant has a right to present a defense, but not to prevent the plaintiff from replying to it. . . . Mrs. Sowers' attorney didn't attack R.J. Reynolds for putting forward a defense, he attacked the substance of the defense it put forward, replying to the arguments the company made in its closing argument"); *GEICO v. Gomez-Cortes*, 2022 WL 2173377, at *7 (S.D. Fla. June 15, 2022). Plaintiff is advised that she will have limited leeway in this regard.

- The Motion is granted insofar as FCSB seeks to preclude Plaintiff or other laywitnesses from testifying as to causation or to Plaintiff having certain diagnoses because such testifying is outside the scope of their knowledge and/or must rely on hearsay.  Laywitnesses may testify as to their observations and Plaintiff may have some leeway regarding nonhearsay purposes of testimony regarding her interactions with her treatment providers

- The Motion is granted insofar as Plaintiff agrees not to refer to specific medical records during opening statements but denied insofar as Defendants seek to preclude Plaintiff from identifying her medical issues, treatments, and other damages during opening statements.

- With respect to the issue of consent, the parties should refer to the disposition of that issue as it pertains to Plaintiff's motion *in limine* on the same issue.

- The Motion is granted with respect to the testimony of Josephine Evola, Esq. and Lisa Fagan, Esq., who were never disclosed as witnesses.  Pursuant to an analysis of the *Southern States* factors,[1] these witnesses are precluded from testifying.  These witnesses were not disclosed, were not deposed, and any possible testimony would be complicated by the fact that both are attorneys.

- The Motion is granted with respect to the testimony of Abby Harris, Maya Hossain, Olivia Palchus, and Rebecca Spurrier.  Contact information for these witnesses is not available to either party even at this late date.  Given that trial is now only ten days away, it is unreasonable for Plaintiff to continue to list these individuals as witnesses and unfair to Defendants to continue to threaten to call these witnesses.  The Motion is denied with respect to the testimony of Jayde Survey.  This witness has always been disclosed to Defendants and Plaintiff's provided contact information regarding this witness as soon as it was available.  Based on the argument of counsel at the hearing, it appears that counsel have a sense of this witness's testimony based on prior statements that this witness has given.  Accordingly, it is not unfair surprise to permit this witness to testify.

- The Motion is granted with respect to any retaliation alleged against Plaintiff's brother.

- The Motion is granted with respect to any alleged threats against Plaintiff's fiancé.

- The Motion is granted with respect to damages and Plaintiff is limited to the damages she disclosed in her May 2022 disclosures.  Rule 26 requires that the party seeking damages provide "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiff did so in her May 2022

---

[1] *See S. States Rack & Fixture, Inc. v. Sherwin-Williams, Co.* 318 F.3d 592, 596 (4th Cir. 2003).

disclosure but does not argue that she has provided updated computations since that date. Instead, she claims that FCSB could have done calculations on their own based on the information that she provided. "The plaintiff is the master of the complaint and it is not incumbent on defendants to cure its deficiencies." *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 294 n.8 (4th Cir. 2018). The maxim also applies to damages; it is incumbent on the party seeking damages (BR) to inform the other party (FCSB) of the basis on which those damages are calculated. *See Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227, at *4 (E.D. Va. July 16, 2020) (excluding damages evidence when a party failed to disclose computations); *City & Cnty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (holding that Rule 26 requires "more than a lump sum statement of the damages allegedly sustained"); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (holding that defendants' disclosure of hundreds of pages of documents detailing the basis for defendants' damages claim did not satisfy Rule 26); *Gillum v. ICF Emergency Mgmt. Servs., LLC*, No. 08-cv-314, 2009 WL 1458200, at *3 (M.D. La. May 21, 2009) (holding that "vague assertions of damages" in interrogatories or depositions do not satisfy a party's obligation under Rule 26). FCSB has relied on the computations provided from May 2022 throughout the pre-trial process and would be substantially prejudiced by a new computation produced mere days before trial. Moreover, Plaintiff has not shown that the failure to disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Therefore, the appropriate result of the failure to disclose is that Plaintiff is "not allowed to use that information or witness to supply evidence . . . at a trial." *Id.* Plaintiff may only rely on the damages from the May 2022 disclosure.

- The Motion is taken under advisement as it pertains to Plaintiff's treatment at Holy Name Medical Center and may be renewed during trial.

and it is FURTHER ORDERED that Defendants' Motion to Limit/Exclude Experts (Dkt. 655) is GRANTED-IN-PART and DENIED-IN-PART. The disposition of the various issues raised in the Motion is as follows:

- The Motion is granted to the extent that no expert shall be permitted to testify or opine on the credibility or veracity of any witness' testimony. This ruling applies to *all* parties and their expert witnesses.

- The Motion is granted to the extent that Dr. Eileen Ryan's testimony will be limited to her opinions with respect to psychiatric conditions and will not be permitted to opine on the cause of Plaintiff's non-psychiatric conditions. *See Cordell v. Astrue*, No. 1:06-cv-00920, 2008 WL 906343, at *6 (S.D. W. Va. Mar. 31, 2008) (affirming social-security ALJ determination that a psychiatrist "was not qualified to render an opinion regarding Claimant's physical condition"); *Emody v. Medtronic, Inc.*, 238 F. Supp. 2d 1291, 1295 (N.D. Ala. 2003) (noting

8

"[a] psychiatrist would not be qualified to state any such opinion" regarding the cause of the plaintiff's physical pain or injury); *Martinez v. Brown*, No. 96- 808, 1997 WL 124338, at *4 (Vet. App. Mar. 10, 1997) (holding a psychiatrist is "not qualified to render a decision as to whether the appellant's injuries were aggravated by service" so "[h]is opinion regarding the appellant's physical disabilities are not probative medical evidence").

- The Motion is granted to the extent that Gary Young will not be permitted to testify regarding Plaintiff's lost earnings capacity. The Court has already ruled on summary judgment that Plaintiff's claims of lost earnings potential as to FCSB is not permitted under *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022). In that Memorandum Opinion and Order, the Court described Mr. Young's findings as "speculative" and noted issues with Mr. Young's mathematical calculations. As the Third Circuit has explained: "[A]lthough mathematical exactness is not required, [expert] testimony of post-injury earning capacity must be based upon the proper factual foundation." Put another way, an "expert's testimony [regarding future earnings loss] must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000) (internal citations omitted). Mr. Young's opinions as to lost earnings capacity, even where relevant to the non-Title IX claims, do not meet this standard. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir.1994) (explaining that an "expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."); *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996) ("Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future ... prospects."). The Motion will be denied as it pertains to Mr. Young's opinions regarding Plaintiff's *capacity* to work. Here, Mr. Young is on more solid ground relying on the supporting opinions of other experts, but that is permissible. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 3337796, at *8 (E.D. Va. Aug. 3, 2022) ("Experts can rely on the opinions of other experts if others in their field would reasonably do so.").

- The Motion is granted-in-part and taken-under-advisement-in-part with respect to Nancy Cantalupo. Defendants are correct that Cantalupo's first opinion invades the province of the jury. In that regard, Professor Cantalupo opines that FCPS's alleged failures "ultimately caused FCPS to violate Plaintiff's Title IX rights" and their "discriminatory bias" in addressing Plaintiff's complaints. Dkt. 659-4 at 15, 18. Courts routinely hold that such expert opinions invade the province of the jury. *See, e.g., Doe v. Coastal Carolina Univ.*, No. 4:18-cv-268-SAL, 2021 WL 1651057, at *3 (D.S.C. Mar. 8, 2021) ("Because expert testimony on this issue would supplant the jury's role in evaluating and determining the facts, Bullard may not testify as to whether the University violated Title IX."); *Doe by Watson v. Russell Cnty. Sch. Bd.*, 292 F. Supp. 3d 690, 718 (W.D. Va. 2018) (concluding expert's opinion that school was "'deliberately indifferent' to

the risk of harm to the plaintiff and that the failure to provide adequate policy or training was a proximate cause of the sexual abuse" went "beyond the proper role of an expert witness"). Professor Cantalupo may be permitted to testify with respect to Title IX generally and with respect to gender stereotyping. *See, e.g., Hnot v. Willis Grp. Holdings Ltd.*, 2007 WL 1599154, at *2 (S.D.N.Y. June 1, 2007) (in employment discrimination case, expert allowed to testify regarding "the operation of gender stereotyping and the kinds of conditions in which such stereotyping most commonly flourishes"); *Beck v. Boeing Co.*, 2004 WL 5495670, at *2 (W.D. Wash. May 14, 2004) (expert permitted to "explain stereotyping and what conditions make it more or less likely to occur"). However, the Court has concerns regarding any testimony regarding stereotyping. Accordingly, Plaintiff is directed to submit to chambers, on or before Thursday, March 14, 2024, the questions she intends to put to Professor Cantalupo and the anticipated answers to such questions. In this regard, the Motion is taken under advisement. Assuming that any portion of Professor Cantalupo's testimony is permitted after the Court reviews counsel's anticipated questioning, the Motion is denied insofar as it seeks to exclude the opinions included in Professor Cantalupo's Supplemental Report. The Supplemental Report was provided shortly after the close of discovery, based on depositions taken and evidence produced at the close of discovery. The Supplemental Report expands on Cantalupo's opinions and the *Southern States'* factors do not warrant exclusion because it was provided very close in time to the close of discovery and well before trial, it was based on evidence produced at the close of discovery, the core opinions remain the same, and Plaintiff offered to have Defendants re-depose Cantalupo and Defendants declined. *See In re Accutane Prods. Liab. Litig.*, No. 8:04-md-2523-T-30TBM, 2007 WL 201091, at *1 (M.D. Fla. Jan. 24, 2007) (denying motion to strike supplemental expert report, served after the close of discovery, where the report contained new or additional rationale in support of the expert's conclusion, but the core opinions remained the same).

- The Motion is denied-in-part and taken-under-advisement-in-part with respect to Marcella Rustioni and Bill Woolf. As the Court has emphasized, the parties should strive to abstain from introducing evidence regarding the police investigation conducted in this case. To the extent FCSB raises a Rule 403 regarding potential confusion between the separate legal status of the School Board and the Police Department, the Motion is Denied. FCSB can elicit testimony making clear the separate legal status of the School Board and the Police Department. The Motion is otherwise taken under advisement and may be renewed during trial, because Rustioni's and Woolf's testimony are most relevant if FCSB relies on the police investigation as a defense.

- The Motion is denied insofar as it seeks to exclude the testimony of Dr. Joshua Cisler. Experts are not required to engage in any specific tests or to personally examine a plaintiff in order to form opinions – that is a matter for cross-examination. *See, e.g., Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (medical expert's testimony based on thirty years of experience and his review of

medical records and published materials was "'ground[ed] in the methods and procedures of science' and was not mere 'unsupported speculation.'"); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (explaining that "[t]he lack of an examination of [plaintiff] does not render [the medical expert's] testimony inadmissible" where the medical expert's opinion was based upon "experience in treating patients with electrical injuries" and review of the plaintiff's medical records); *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (reversing exclusion of medical expert based on his lack of firsthand knowledge or personal observation and explaining that the expert's "opinions and inferences were based on his review of [the plaintiff's] medical records, as well as his knowledge, experience, training and education").

and it is FURTHER ORDERED that Plaintiff's Omnibus Motion *in Limine* (Dkt. 662) is

GRANTED-IN-PART and DENIED-IN-PART.  The disposition of the various issues raised in

the Motion is as follows:

- The Motion is granted-in-part and denied-in-part insofar as it pertains to consent. Va. Code Ann. § 18.2-63C(i), which governs carnal knowledge of children, states that "a child under the age of thirteen shall not be considered a consenting child." The Court will grant the Motion insofar as Defendants CK and JO seek to argue that Plaintiff's consent is a defense to Plaintiff's assault and battery claims. Virginia Code § 18.2-63 plainly provide that a child under the age of 13 – as Plaintiff was here – cannot consent. The Court will generally deny the Motion insofar as it pertains to the deliberate indifference and retaliation claims under Title IX against FCSB. FCSB will be permitted to discuss whether Plaintiff "welcomed" the contact of CK and JO but will not be permitted to talk in terms of consent. While Plaintiff points to authority that seems to hold that a minor victim's initiation or invitation of conduct has no legal consequence, those cases were all focused on an adult school employee's involvement with a minor child. *See, e.g., Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220 (7th Cir. 1997) (holding that as a matter of law, a 13-year-old child, could not welcome the advances of a 21-year-old school employee). There is no authority holding that where the sexual harassment allegation focuses on incidents between two children of similar ages, the issue of welcomeness is irrelevant.  The only two cases Plaintiff cites involving relationships between two minor children are both distinguishable as cases involving students with severe learning disabilities and, in both cases, the factfinders did consider the issue of welcomeness. *Porto ex rel. SC v. Town of Tewksbury*, No. 04-10003-PBS, 2006 WL 1167782, at *1 (D. Mass. Apr. 28, 2006); *Dawn L. v. Greater Johnstown School District*, 586 F. Supp. 2d 332, 366 (W.D. Pa. 2008). The Title IX guidelines in effect at the time of the incident state: "In order to be actionable as harassment, sexual conduct must be unwelcome." 62 Fed. Reg. at 12,040. These guidelines did not equate "unwelcomeness" with state laws on rape or age of consent, but rather, stated: "Conduct is unwelcome if the student did not request or invite it and "regarded the conduct as undesirable or offensive." *Id.* The guidelines further explained that age can be relevant in construing the behavior of children: "[if] younger children are involved, it may be

necessary to determine the degree to which they are able to recognize that certain sexual conduct is conduct to which they can or should reasonably object and the degree to which they can articulate an objection." *Id.* The same guidelines had a more categorical approach for sexual relationships between a school's adult employees and minor students, where OCR would never consider the issue of welcomeness where elementary students were involved. The 2020 OCR Guidelines do mention statutory rape as a nonforcible sex offense under a new third category of sexual harassment conduct, but those amendments took effect on August 14, 2020 and are not retroactive.

- The Motion is granted-in-part and denied-in-part insofar as Plaintiff seeks to exclude any evidence that she suffered family abuse. The Motion is granted insofar as Defendants seek to introduce testimony from JO regarding alleged family abuse. Based on JO's deposition testimony, JO was purely speculating when she made comments and social media posts regarding any alleged family abuse. *See Morris v. Bland*, 666 F. App'x 233, 239 (4th Cir. 2016) (affirming exclusion of evidence where it was based on "nothing but mere speculation" and was likely to have a prejudicial effect). The Motion is denied insofar as Plaintiff seeks to preclude CK from testifying as to what Plaintiff told him. *See CPI Sec. Sys., Inc. v. Vivant Smart Home, Inc.*, No. 3:20-CV-504-MOC, 2024 WL 84707, at *9 (W.D.N.C. Jan. 8, 2024) (statements under Rule 801(d)(2)(A) are "exempted" from the personal knowledge requirement for testimony). The Motion will also be denied insofar as it seeks to preclude other evidence related to Plaintiff's family life. The communications between Plaintiff and her therapist could be relevant for any number of issues and whether the jury sees these emails as evidence of an abusive family, evidence of a troubled teenager, or evidence of a normal teenager complaining about family matters is for the lawyers to argue and for the experts to opine on.

- The Motion is denied insofar as Plaintiff seeks to exclude evidence or testimony regarding any sexual assault that she suffered after withdrawing from Fairfax County Public Schools. Evidence of other assaults do not fall within Rule 412. *See United States v. Berkley*, 127 F.3d 1100 (4th Cir. 1997) (Unpublished Table Decision) ("As a preliminary matter, we note that the evidence that Berkley sought to introduce by cross-examination was not evidence of prior sexual behavior per se, which is plainly governed by Rule 412, but is instead evidence of a prior accusation of sexual assault."); *United States v. Kettles*, 970 F.3d 637, 643 (6th Cir. 2020) (evidence of prior accusations of assault do not fall within Rule 412); *Gretzinger v. Univ. of Hawaii*, 156 F.3d 1246 (9th Cir. 1998) (unpublished Table Decision) (holding that district court did not abuse its discretion in admitting evidence of prior sexual assaults in Title IX case).

- The Motion is granted-in-part and denied-in-part insofar as it seeks to preclude testimony regarding litigation involving Plaintiff's family members. Defendants may introduce such testimony regarding Plaintiff's mother only insofar as it is relevant to their arguments regarding spoliation. The parties agree that litigation involving Plaintiff's father may be relevant to damages.

- The Motion is granted-in-part and denied-in-part insofar as it seeks to preclude testimony regarding Plaintiff's prior iterations of her complaint. Defendants may seek to impeach

Plaintiff regarding prior iterations of her operative complaint, but the complaints will not be admitted as evidence. Fed. R. Evid. 801(d)(2); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984); *Eastern Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1001 (7th Cir. 1997) (affirming district court where district court held, under Rule 403, that prior pleadings were not admissible as evidence but permitted the parties "to use the prior pleadings to impeach witnesses or to refresh recollection, minimizing prejudice").

•   The Motion is granted insofar as it applies to Detective Gaddell. The parties agree that, because Plaintiff will not be testifying as to any current safety fears, Detective Gaddell's testimony is not relevant.

•   The Motion is granted-in-part and denied-in-part insofar as it seeks to preclude evidence regarding the Fairfax County Police Department investigation. The Court again advises the parties that they should strive to avoid any evidence regarding any third-party investigations. At this time, however, the Motion will be denied to the extent it attempts to exclude the entire report. But, to the extent Defendants seek to introduce the FCPD investigation report, the Defendants are directed to redact the "unfounded" conclusion and any statements that remark on the credibility of a witness in this case, including both CK and Plaintiff. The Fourth Circuit has opined that similar reports "suffer from a[] risk of undue prejudice" because "they contain credibility determinations" and "tend to undermine the exclusive province of the jury." *United States v. MacDonald*, 688 F.2d 224, 230 (4th Cir. 1982). Other cases similarly recognize that these credibility determinations are the exclusive province of the jury. *See, e.g., United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995) ("[T]he evaluation of a witness's credibility is a determination usually within the jury's exclusive purview."); *United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003) ("It is impermissible for a prosecutor to ... elicit one witness' opinion that another witness has told the truth"). Thus, Defendants are directed to redact the report as to the "unfounded" finding – although the "closed" designation may remain – and are directed to redact references to the credibility of any witness and to instruct their witnesses to abide by the same rule with respect to their testimony.

•   The Motion is denied insofar as it seeks to preclude testimony that any of the Individual School Defendants have experienced sexual assault and that such experience would have guided their response to Plaintiff's allegations.

•   The Motion is denied insofar as it seeks to preclude Defendants from impeaching Detective Woolf using the internal affairs report. The Defendants are instructed that the report is only to be used for impeachment and that the report itself is not admissible.

•   The Motion is taken under advisement as it pertains to the so-called "BR Incidents" Memorandum and may be renewed during trial. Plaintiff is correct that the memorandum poses hearsay problems; indeed, there are issues of double hearsay because teachers and administrators were reporting information to ST who then wrote that information down and presented the memorandum to other people. The memorandum is thus hearsay and cannot be admitted for the truth of the matter asserted. Defendants argue that they intend to use it for a nonhearsay purpose based on the effect the memorandum had on certain

13

high-level administrators in responding to Plaintiff's allegations. The Court will address that issue as it is presented to determine whether the memorandum is indeed being offered for a nonhearsay purpose.

- The Motion is granted-in-part and denied-in-part insofar as it seeks to preclude testimony regarding whether a fall as a three-year-old caused or contributed to Plaintiff's alleged injuries. The Motion is granted insofar as Defendants may not ask any questions of their own experts regarding whether a childhood fall contributed to Plaintiff's alleged injuries, because Defendants failed to disclose any such opinions. The Motion is denied, however, insofar as it seeks to preclude Defendants from asking questions of Plaintiff's experts to probe the accuracy and foundation of Plaintiff's experts' opinions.

- Insofar as the Motion addresses issues regarding Dr. Jennings, disposition of that issue is governed by the Court's more specific ruling regarding Dr. Jennings with respect to docket number 640.

- The Motion is granted insofar as the parties agree that all experts should be confined to the opinions contained within the four corners of their report.

- The Motion is granted insofar as the parties agree not to discuss any of the alleged and contested Facebook messages in opening arguments before such messages are admitted into evidence (if such messages are admitted into evidence). The Motion is taken under advisement, and may be renewed during trial, to the extent it makes other arguments regarding the Facebook messages.

and it is FURTHER ORDERED that Defendants' Motion to Overrule Objections and Address Rule 412 (Dkt. 773) is DENIED as untimely. Moreover, most of the arguments raised in the Motion are addressed by the disposition of the other motions *in limine* discussed above; and it is

FURTHER ORDERED that the parties are DIRECTED to contact the chambers of Judge Fitzpatrick to conduct an additional settlement conference before trial.

It is SO ORDERED.

Alexandria, Virginia
March 8, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

14