# IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| B.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:19-cv-00917-RDA-WEF |
| v. | ) | |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFF B.R.'S OPPOSITION TO DEFENDANTS' BILLS OF COSTS</u>

Plaintiff B.R. opposes Defendant Fairfax County School Board ("FCSB") and the Individual School Defendants' ("ISDs") Bills of Costs pursuant to Local Civil Rule 54(D). Defendants seek almost $250,000 in taxable costs from a single civil rights Plaintiff. These bills of costs should be denied in their entirety because of Plaintiff's inability to pay and the potential chilling effect that taxing costs will have on prospective civil rights plaintiffs and victims of sexual and/or gender-based violence who seek to vindicate their rights in the civil justice system.[1]

If the Court exercises its discretion to tax costs against Plaintiff, she respectfully requests the Court stay any decision regarding Defendants' bills of costs pending the resolution of post-trial motions and any subsequent appeal. Further, the amount should be reduced to remove costs which are not properly taxable under Local Rule 54(D) and the Court's Taxation of Costs Guidelines. As

---

[1] In *Doe v. Fairfax Cnty. Sch. Bd.,* Civil Action 1:18-cv-00614 (E.D. Va.), another Title IX claim brought against the school system by a student, FCSB prevailed at trial and attempted to tax the plaintiff nearly $50,000. *Doe,* 1:18-cv-00614 at ECF No. 343. After the plaintiff filed an opposition including a Declaration establishing her inability to pay a cost award, FCSB withdrew its request for costs. *Id.* at ECF Nos. 343-1 and 348.

set forth herein, only $83,654.90 of FCSB's costs are taxable, an amount still beyond Plaintiff's ability to pay.

## I.  LEGAL STANDARD

Even where the taxation of costs is authorized by statute, a court has discretion to deny an award of costs when good reason for the denial is articulated, or when there is an element of injustice in a presumptive cost award. *Ellis v. Grant Thornton LLP*, 434 F. App'x. 232, 235 (4th Cir. 2011).

Courts may consider several factors in determining whether a denial of costs is appropriate: (1) misconduct by the prevailing party worthy of a penalty; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided. *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999).

The Fourth Circuit has relied on the *Cherry* factors above to deny costs where plaintiffs do not have the financial means to pay the award. *See King v. E. Shore Water*, LLC, 2013 U.S. Dist. LEXIS 122341, at *4-5 (D. Md. Aug. 22, 2013). In *Levy v. Lexington County*, 2012 U.S. Dist. LEXIS 180782 (D.S.C. Dec. 20, 2012), one reason the court denied costs was because plaintiffs, with yearly incomes of $44,598 and $109,647, but with outstanding debt of $21,000, were of "modest means." 2012 U.S. Dist. LEXIS 180782, at *7. Similarly, in *Musick v. Dorel Juvenile Group*, Inc., 2012 U.S. Dist. LEXIS 17734 (W.D. Va. Feb. 13, 2012), the court declined to award costs, noting that plaintiffs were unable to pay costs "due to their limited financial resources." 2012 U.S. Dist. LEXIS 17734, at *4. Finally, in *Merritt v. Old Dominion Freight Line, Inc.*, 2009 U.S. Dist. LEXIS 41872 (W.D. Va. May 15, 2009), the court declined to award costs primarily

because plaintiff "presented substantial evidence of her inability to pay the costs claimed by the Defendant." 2009 U.S. Dist. LEXIS 41872, at *2.

In addition to evaluating a non-prevailing party's income, the court may also consider past and future medical expenses when assessing a non-prevailing party's ability to pay a bill of cost. *N.O. by Orwig v. About Women Ob/Gyn, PC*, 440 F. Supp. 3d 565, 568 (E.D. Va.) (Ellis, J.) (denying $28,613 bill of costs where the plaintiff made under $30,000 a year and had significant past and future medical debt).

In addition to inability to pay, courts should take into account whether an award of costs will have a chilling effect on other potential plaintiffs who are deciding whether to avail themselves of the courts to vindicate their rights. *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1080 (9th Cir. 1999) (recognizing the potential downside occasioned by high-cost awards against civil rights plaintiffs); *Doe v. Rutherford Cnty.*, 86 F. Supp. 3d 831, 857 (M.D. Tenn. 2015) (denying costs in Title IX case in part "because the potential chilling effect of rendering a full cost award could deter future plaintiffs").

Denial of costs is also warranted where, like here, the case in question is "close and difficult one." *Skeberdis v. Brill*, 2019 WL 5625849, at *2 (D. Md. Oct. 31, 2019) (explaining this and collecting cases). Both legal complexity and factual complexity are important factors when evaluating this factor. *Id*; *see also Bennett v. CSX Transp., Inc.*, 2015 WL 233223, at *1 (E.D.N.C. Jan. 16, 2015) ("While a Title VII or FELA claim itself is not particularly novel or complex, the factual issues presented in this matter were difficult and indeed hotly contested at trial and on appeal.") (quotations omitted). In addition, "[a] case may be characterized as difficult based upon the length of trial, the number of witnesses, and the amount of evidence submitted to the jury." *Skeberdis*, 2019 WL 5625849, at *3.

Even where the court decides to award costs, the amount must be limited to only those costs authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). The standard is not, as Defendants' requests clearly contemplate, that the award should be "for every expense [they] ha[ve] seen fit to incur in the conduct of [their] case." *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964); *Hinton v. Trans Union, LLC*, 2009 U.S. Dist. LEXIS 132406, *3 (E.D. Va. Sept. 2, 2009); *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1998). Indeed, the Supreme Court has held that statutes allowing for the imposition of costs must be construed narrowly. *See Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019) (collecting cases and explaining that the award of costs are to be construed narrowly and limited to those expressly stated in 28 U.S.C. § 1920). Indeed, courts look poorly upon "losing litigants" being "unfairly saddled with exorbitant fees…". *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 255 (4th Cir. 2013) (citing *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 250 (1975)).

The general taxation of costs statute provides six categories of costs that may be taxed: (1) clerk and marshal fees, (2) transcript fees, (3) printing and witness fees, (4) copying fees, (5) docket fees under 28 U.S.C. § 1923, and (6) compensation of court appointed experts, interpreters, and special interpretation services. *See* 28 U.S.C. § 1920. Also, this Court's Local Civil Rule 54(D)(1) requires that a "bill of costs shall distinctly set forth each item thereof so that the nature of the charge can be readily understood" and those costs set forth "will be disallowed if proper documentation is not provided." E.D. Va. Loc. Civ. R. 54(D)(1). A request for an excessive award

of costs is recognized as an independent reason for denial of a presumptive cost award. *N.O. by Orwig* 440 F. Supp. 3d at 568.[2]

## II.    ARGUMENT

### A. The Court Should Deny Defendants' Requests to Tax Costs in Their Entirety.

The inability of the losing party to pay suffices to justify a denial of costs. *Doe v. Rutherford County*, 86 F. Supp. 3d at 855 (denying costs in Title IX case).

B.R. is a 24-year-old with a disability, as determined by her medical providers and the Social Security Administration, that prevents her from working. ███████████████ ████████████████████████████████████████████. ██████████████████████████, B.R. faces significant financial challenges. ████████████████████████████ ██████████████████. Moreover, B.R. will continue to need significant medical treatment over her lifetime for the foreseeable future.[3]

Given these circumstances, B.R. is financially incapable of bearing any additional costs. This is in stark contrast to FCSB which has substantial resources.

A denial of Defendants' requests for costs where B.R. has no meaningful income is consistent with courts' decisions both within and outside this District to deny costs where the non-moving party is of a similar financial stature as B.R. *See Agha v. SunTrust Bank*, 2015 U.S. Dist. LEXIS 46501, at *7 (E.D. Va. Apr. 8, 2015) (O'Grady, J.) (denying costs, in part, because plaintiff

---

[2] E.D.V.A. Local Rule 54(e) states: "Any party applying for costs which are not recoverable or which are excessive shall be subject to sanction under Fed. R. Civ. P. 11." This further underscores the intent that eligible costs are to be construed narrowly and excessive requests for costs should be denied.

[3] See Declaration of B.R., attached hereto as Exhibit A.

was full-time student and had no income, and was therefore of "sufficiently modest means to warrant denying Defendant an award of costs based on Plaintiff's inability to pay them"); *Rutherford County*, 86 F. Supp. 3d at 856-57 (denying costs in Title IX case). Given B.R.'s inability to pay anything other than a nominal cost award—notably to Defendants with resources that far outweigh B.R.'s—the Court should deny Defendants' requests for costs in their entirety. *Videckis v. Pepperdine Univ.*, 2017 WL 4785942, at *2 (C.D. Cal. Oct. 23, 2017) (denying costs in Title IX case because, among other things, "[t]here [was] no evidence that Plaintiffs' financial resources as students would rival or outweigh Pepperdine's own"). The Fourth Circuit has approved of district courts denying bill of costs when the ability to pay, and amount taxed, was far less dire than the situation here. *See Ellis v. Grant Thornton LLP*, 434 F. App'x. 232, 235 (4th Cir. 2011) (holding the trial court did not abuse its discretion in finding that when the non-prevailing party's annual salary at trial was $52,630.00 and he had since retired, an award of $61,957.45 in costs would work a substantial hardship on the non-prevailing party).

Additionally, taxing costs in a civil rights or Title IX matter like this runs significant risk of discouraging other vulnerable victims from pursuing their civil rights. The chilling effect of awarding costs is a relevant consideration in determining whether it is proper to award costs to a prevailing party. *Rutherford Cnty.*, 86 F. Supp. 3d at 855; *see also Crotty v. Prop. Owners' Ass'n*, 2019 U.S. Dist. LEXIS 71462, at *14 (D.S.C. Apr. 29, 2019) (denying fees requests and acknowledging "potential chilling effect" in civil rights cases); *Videckis*, 2017 WL 4785942, at *3; *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1080 (9th Cir. 1999) ("[T]he imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation. . . . Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown v. Board of Educ.*, 347

U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).").  For example, in *Videckis*, two students brought Title IX claims against Pepperdine University for discrimination and harassment on the basis of their sexuality.  *Videckis*, 2017 WL 4785942 at *3.  Like here, the jury found for Defendants on all counts.  On Pepperdine's request for the court to reconsider its decision not to tax costs, the court found that various factors weighed in favor of denying costs.  Notably, it stated that "awarding costs would discourage a prospective civil rights plaintiff, especially a student, from vindicating their rights under Title IX."  *Id.*

As the court in *Stanley* explained, civil rights plaintiffs, both successful and unsuccessful, have contributed to much of this nation's progress.  Here, although B.R. did not prevail, she helped set important precedents about survivor privacy and damages available under Title IX, as well as contributed to solidifying the jurisprudence that public school officials violate a student's First Amendment rights if they retaliate against a student who reports bullying or harassment.

This "chilling effect" is especially important in the context of sexual and gender-based violence.  "There are few crimes so violative of human autonomy and dignity as rape." *Doe v. Sidar*, 93 F.4th 241, 250 (4th Cir. 2024) (Wilkinson, J., concurring).  Despite this, rape remains widespread yet chronically under-reported and therefore under-prosecuted.[4]  The civil justice system remains an important avenue for victims to invoke their rights.  Taxing B.R. with almost $250,000 in costs would send a chilling message to survivors of such violence.  The facts of the case also make the exacerbate this concern.  If the Plaintiff here, who was 12 at the time of her abuse went to the police, obtained a positive rape kit, and was subsequently diagnosed with PTSD independently by at least 15 providers over 12 years is financially ruined for trying to vindicate

---

[4] Morgan, R., & Oudekerk, B. (2019). Criminal victimization, 2018 (NCJ 253043). U.S. Department of Justice, Bureau of Justice Statistics. https://www.bjs.gov/content/pub/pdf/cv18.pdf (explaining that only between 25%-40% of sexual assaults are even reported to the police).

her rights in the civil justice system, the chilling effect this would send to the community cannot be understated.

The "closeness and difficulty of the issues decided" factor also favors denying the Defendants' bill of costs. *See Skeberdis*, 2019 WL 5625849, at *3 (D. Md. Oct. 31, 2019). Here, the trial lasted five weeks and involved 33 witnesses, including 7 experts, called between all the parties. This included experts to talk about complex issues related to child sexual abuse, obligations of school districts who receive federal funds, and difficult medical and scientific evidence. This is significantly more complex than the two-week trial with some expert witnesses that warranted denial of costs in *Skeberdis*. *Cf. McKinley v. The Salvation Army*, 2017 WL 2799889 (W.D. Va. June 27, 2017) ("closeness" factor not met when trial only lasted three days and was factually simple). The case also presented many difficult legal issues, many of which the B.R. prevailed on. For instance, B.R. won the defense-initiated interlocutory appeal before the 4th Circuit. *B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021). B.R. also survived two motions to dismiss,[5] two motions for summary judgment,[6] and a Rule 50 motion.[7] Just days before the case was submitted to the jury, the Court opined, "a reasonable jury could determine that F.C.S.B. was deliberately indifferent to the sexual harassment that B.R. alleged and that such deliberate

---

[5] ECF Nos. 85, 236.
[6] ECF Nos. 620, 805.
[7] ECF No. 970.

indifference resulted in ongoing sexual harassment and enabled C.K. and others to continue harassing." ECF No. 970 at 5-6.[8]

Saddling B.R. with a crushing and financially ruining bill of costs under these circumstances would, in effect, punish Plaintiff for exercising her constitutional rights and is fundamentally unfair, infringing on her due process rights and the First Amendment Right to petition her government for a redress of grievances. An award of almost $250,000 could be construed as an excessive fine under the Eighth Amendment. In short, B.R. should not be punished with financial ruin just because she did not prevail in a complex trial with many legal issues.[9]

Accordingly, Defendants' bills of costs should be denied in their entirety.

### B. A Ruling Granting Any Portion of Taxable Costs Should be Deferred Pending the Resolution of Post-Trial Motions and Plaintiff's Forthcoming Appeal.

If the Court does not deny Defendants' requests for costs in their entirety, then, in the interest of judicial economy, an evaluation and ruling on Defendants' bills of costs should be held in abeyance pending the resolution of B.R.'s post-trial motions and, if necessary, her appeal of the underlying jury verdict. *Blankenship v. NBCUniversal, LLC*, 2023 WL 2656763, at *1 (S.D. W.

---

[8] Although Defendants prevailed on all counts before the jury, it is also true that evidence of FCSB's alleged wrongdoing was substantiated at trial. As the court is well-aware, and in fact, instructed the jury, "deliberate indifference is a high bar." *See Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 268 (4th Cir. 2021) (explaining this). Similarly, gross negligence is similarly a difficult standard, as is First Amendment retaliation. *See* ECF No. 236 at 33, 44. Failure to clear these difficult hurdles is not the equivalent of a jury's blessing of Defendants' conduct. On the contrary, it is undisputed that the school system did not follow federal Title IX guidance, did not conduct an independent investigation into the alleged rape of a 12-year-old by another student with a history of sexual misconduct, and did not notify the Title IX coordinator, at any point, of Plaintiff's ordeal. Trial Tr. Vol. 3 at 86:1-86:13. Indeed, the Assistant Superintendent admitted in testimony that FCSB did not follow best practices in Plaintiff's case. Trial Tr. Vol. 10 at 37-39.

[9] B.R. recognizes that the Constitutional arguments are likely matters of first impression. B.R. respectfully submits the Court can deny the bill of costs without grappling with the Constitutional issues but seeks to preserve all such Constitutional arguments for any potential appeal.

Va. Mar. 27, 2023) ("It would be unwise at this time to expend judicial resources adjudicating defendants' proposed bill of costs and plaintiff's objections until finality has been realized."); *see also American Heartland Port, Inc. v. American Port Holdings, Inc.*, 53 F. Supp. 3d 871 (N.D. W. Va. 2014) (finding it premature to decide the bill of costs when matters remain pending on appeal); *CSX Transp., Inc. v. Pierce*, 2013 WL 5375983 at *3 (N.D. W. Va. Sept. 25, 2013) ("In the interest of judicial economy, this Court finds that holding CSX's motion for attorneys' fees and litigation expenses and bill of costs in abeyance pending the resolution of any appeal of the underlying jury verdict or other resolution of this civil action is the proper course of action at this time."); *N.O. by Orwig*, 440 F. Supp. 3d at 567 (adjudicating and denying cost petition after appeal).

If Plaintiff receives a favorable ruling on her post-trial motions or her appeal, the costs associated with the current judgment in favor of Defendants becomes moot. Accordingly, a ruling on Defendants' bills of costs should be deferred until a resolution of these post-trial proceedings.

### C. If Costs are Taxed, Defendants' Bills of Costs Should be Reduced for Certain Non-Taxable Costs.

For the reasons set forth below, the Defendants' bills of costs are excessive. This, too, is grounds for denial in its entirety. *N.O. by Orwig*, 440 F. Supp. 3d at 568 (noting excessiveness of request as a basis for denying costs request).

However, if the Court exercises its discretion to tax costs against B.R., then, as demonstrated below, Defendants' bills of cost should be reduced for certain costs that are not taxable under the law.[10]

---

[10] FCSB repeatedly bemoans that its bill of costs is "only a fraction" of its actual costs. However, this is by design. "Taxable costs are a fraction of the nontaxable expenses borne by litigants" and it is often the case that "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.,* 566 U.S. 560, 573 (2012).

## 1. *Witness Fees*

### a. Expert Witness Fees

Defendants improperly seek to recover $14,009.52 for "expert witness appearance fees." ECF 985 at 8. Specifically, they seek to tax B.R. for fees paid to experts for their time to appear at depositions. This is impermissible. Expert witness fees are not recoverable beyond the daily statutory rate ($40) set forth in 28 U.S.C. §1821(b). *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

The issue of expert witness appearance fees was specifically taken up by the Supreme Court in *Crawford Fitting*, which held that "a federal court may only tax expert witness fees in excess of the $[40]-per-day limit set out in §1821(b) *only when the witness is court-appointed*." *Crawford Fitting Co.*, 482 U.S. at 442. The Fourth Circuit follows this decision. *O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728, 737 (E.D. Va. 1998), *aff'd*, 188 F.3d 502 (4th Cir. 1999) ("Expert witness fees, absent explicit statutory or contractual authority, are not taxable as costs in amounts exceeding the statutory limit for witness fees of $40 per day."); *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987) ("expert witness fees, absent explicit statutory or contractual authority, are not taxable as costs in amounts exceeding the statutory limit for witness fees of $30 per day").

Decisions from courts in this District reinforce this rule. *See, e.g.*, *Ford v. Zalco Realty, Inc.*, 708 F. Supp. 2d 558, 563 (E.D. Va. 2010). In *Ford*, for example, the court taxed the statutory fee of $40 per person for the expert but disallowed any fees Defendant requested for the deposition of experts. Judge O'Grady wrote, "the courts have consistently held that this only covers the

statutory witness fee under 28 U.S.C. §1820 and does not include the hourly fee charged by expert witnesses." *Id.*[11]

Accordingly, the expert witness fees paid by FCSB for the depositions of six expert witnesses, none of which were court appointed, are not taxable beyond the daily statutory rate of $40 each.

**FCSB's bill of costs should be reduced by $13,769.52.**

> b. <u>Travel and Lodging Costs for Non-Party and Non-Expert Witness, Mary Ann Panarelli</u>

FCSB seeks reimbursement of $2,666.56 in hotel and airfare costs for a non-party, non-expert witness, Mary Ann Panarelli. These costs should be denied because they are outside the scope of taxable costs and are unreasonable.

Ms. Panarelli was on the stand for less than two hours. This included her direct examination, Plaintiff's cross and Defendants' re-direct. She was not an expert in the case and her factual testimony was far from consequential. Yet, Defendants are seeking reimbursement for *four* nights in a hotel room and the entirety of her cross-country airfare. This is improper.

Under §§ 1920, 1821 and the Eastern District of Virginia's Taxation of Costs Guidelines, the "costs of travel for witnesses beyond the subpoena jurisdiction is limited to 100 miles from

---

[11] FCSB cites to an E.D. Va. Case, *Booking.com, B.V. v. Hirshfeld*, 2019 WL 221573 (E.D. Va. June 3, 2021), in support of their request for expert witness fees. But that case is inapposite. The issue before the court in *Booking.com* was what costs are recoverable by plaintiff after a successful claim against the United States Patent and Trademark Office ("USPTO"). The Court noted that under Fed. R. Civ. P. 26(b)(4)(E) certain expenses related to the depositions of experts are usually paid by the opposing party. But given the statute covering suits against the USPTO, plaintiff paid the costs for its own experts. After judgment, plaintiff sought reimbursement of those costs under Rules 26 and 54, which the court denied finding no authority to award them under the statutes governing that action. The court did not, as FCSB suggests, hold that such expenses are recoverable under § 1920. That ruling would run afoul of clear Fourth Circuit precedent, limiting recovery of such costs to the $40 witness fee. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987).

place of trial" (Ms. Panarelli resides in Colorado) and 2) reasonable subsistence set by the per diem rates. *See* Eastern District of Virginia's Taxation of Costs Guidelines at 6(A)(2) and (4). The per diem air travel rate is $1.67 per mile[12] and the per diem lodging for Alexandria, Virginia is $258.[13]

Thus, Ms. Panarelli's taxable costs are the daily witness fee ($40) pursuant to §1821(b), $176 for the cost of travel up to 100 miles ($1.67 x 100 miles) and lodging at a per diem rate of $258 per day ($258 x 3 days[14]).

**Accordingly, FCSB's bill of costs should be reduced by $1,596.56**.

## 2. *Transcripts*

### a. Deposition Transcripts

FCSB seeks $78,793.56 for deposition and videographic depositions taken during discovery. The ISDs seek $45,225.37 for same. Certain of these depositions were not reasonably necessary at the time of the taking of the deposition and thus, Defendants' costs should be reduced accordingly.

Deposition fees are taxable when the taking of a deposition is reasonably necessary at the time of its taking. *LaVay Corp. v. Dominion Fed. Sav. & Loan*, 830 F.2d 522, 528 (4th Cir.1987), cert. denied, 484 U.S. 1065 (1988). The "proper inquiry is whether the deposition was necessary

---

[12] The 2024 GSA Per Diem rate for air travel is $1.76 per mile. *See* Per Diem Rates (mileage), U.S. General Services Administration, 2024, *https://www.gsa.gov/travel/plan-a-trip/transportation-airfare-rates-pov-rates-etc/privately-owned-vehicle-pov-mileage-reimbursement*

[13] *See*, Per Diem Rates (lodging), Virginia, U.S. General Services Administration, 2024, *https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-results?action=perdiems_report&fiscal_year=2024%20(Current%20Fiscal%20Year)&city=&state=VA&zip=*

[14] In light of the distance traveled and that Ms. Panarelli was on the stand for less than two hours, Plaintiff asserts that three days is generous.

to counsel's effective performance and proper handling of the case." *Cofield v. Crumpler*, 179 F.R.D. 510, 518 (E.D. Va. 1998).

Defendants' tactic in discovery was to subpoena and depose as many individuals and entities as they could (e.g., they even subpoenaed B.R.'s current eyeglass lens store, MyEyeDr.). However, this does not mean those actions were reasonably necessary to prepare the case for trial. Indeed, this District limits litigants to five non-party non-expert depositions. Here, Defendants took 22 depositions. Defendants' decision to take countless depositions of immaterial individuals does not mean B.R. should have to bear the cost of that strategy.

For example, Defendants insisted on deposing A.B., B.R.'s ex-boyfriend from college; Mr. B had rarely spoken to B.R. for many years and did not even meet B.R. until seven years after the events at issue. Mr. B never had any knowledge that bore on the merits of this case and Defendants knew as much when they insisted on deposing him over objection. Similarly, Defendants, in their costs briefing, claim the deposition of B.R.'s father and brother were necessary because they were "key witnesses in the case". ECF No. 985 at 5. This makes no sense. Defendants never called either one of them to testify during trial either by live testimony or through deposition. Nor did they ever use their testimony in any JMOL or summary judgment briefings.

As such, the deposition fees of Mr. R ($943.24), D.R. ($2,736.82)[15] and A.B. ($1,668.09) should not be taxed to B.R..[16]

---

[15] These amounts do not include the amount sought for video depositions of Mr. R and D.R. as those costs are addressed in the following section.

[16] FCSB's bill of costs contains two charges for the deposition of A.B. *See* ECF No. 984 at 8 ($437.79 and $1,230.30, respectively). Plaintiff assumes this was in error since this witness was only deposed once and only one invoice for A.B.'s deposition was included in Defendants' exhibits.

Additionally, FCSB and the ISDs are both separately seeking costs for the same depositions. ECF Nos. 983, 985. FCSB and the ISDs have shared resources at every stage of this litigation; there is no reason why B.R. should be taxed for thousands of dollars' worth of deposition transcript costs *twice*.[17]

**Accordingly, FCSB's bill of costs should be reduced by $5,348.15**.

If the Court taxes an amount to B.R. for FCSB's deposition costs, she should be required to pay such amount only once rather than to both FCSB and the ISDs.

**Accordingly, the ISDs' bill of costs for deposition transcripts ($45,225.37) should be removed in its entirety.**

b. <u>Video Depositions</u>

FCSB seeks reimbursements for the video recording of B.R., D.R., Mr. R and Ms. R's depositions *in addition* to the written transcripts.[18] The additional cost of obtaining the videos of these depositions is not taxable to B.R. and FCSB's bill of cost should be reduced accordingly.

While the Fourth Circuit permits taxation of the costs of video depositions, that conclusion "does not necessarily entitle [Defendants] to recover the costs of *both* transcribing and videotaping" the depositions. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 449 (4th Cir. 1999) (affirming District Court Order declining to award both stenographic and video recording of deposition). Defendants must demonstrate that obtaining the video—in addition to the written transcript—was "necessarily obtained for use in the case." *Id.* Further, the "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." *Id.*

---

[17] Relatedly, neither FCSB nor the ISDs provided any proof of payment as to these transcripts. Instead, both sets of Defendants simply attached their invoices from the court reporter.
[18] The ISDs do not seek reimbursement for any video depositions.

FCSB has made no showing whatsoever as to why the videos were necessary in the case nor at trial. No videos were shown at trial, and they were never used in any other aspect of the case at any time. Thus, the cost of these video depositions should be removed from FCSB's bill of costs.

**Accordingly, FCSB's bill of costs should be reduced by $15,384.50.**

### c. Trial Transcripts

Defendants seek the costs of daily trial transcripts in the amount of $25,412.50. Daily trial transcripts for the convenience of counsel are not taxable as costs. *Tunnell v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 28163, at *10-11 (W.D. Va. Nov. 10, 2005); *see also* Taxation of Costs Guidelines for E.D. Va. at 4(B)(2) ("Not taxable – Costs of transcripts prepared solely for convenience of counsel"). While costs may be recovered where it is shown certain transcripts were a necessity, FCSB makes no showing as to why a daily transcript for a 5-week trial should be taxable.

**Accordingly, FCSB's bill of costs should be reduced by $25,412.50.**

### d. Police Interview Transcripts

Detective Chamber's interviews of B.R., her mother, C.K., and C.K.'s mother conducted at Child Help were produced to Defendants in video format (with audio). Defendants, on their own accord, chose to engage a court reporter to stenographically transcribe the interviews in written form. Because this was done for Defendants' convenience and not out of necessity, the cost should not be taxed to B.R. *See* Taxation of Costs Guidelines for E.D. Va. at 4(B)(2) ("Not taxable – Costs of transcripts prepared solely for convenience of counsel").[19]

---

[19] Indeed, we know this transcription was not necessary because the police interview transcripts and videos were specifically excluded at trial given this Court's rulings on police involvement.

**Accordingly, FCSB's bill of costs should be reduced by $2,327.40.**

### 3. *Fees for Service of Subpoenas*

FCSB seeks $6,666.41 in fees for service of summons and subpoenas. The ISDs seek $895 for same. These fees are non-taxable because §1920 does not permit taxation of fees of *private* process servers. 28 U.S.C. §1920 ("fees of the *clerk and marshal*" may be taxed); *Cofield v. Crumpler*, 179 F.R.D. 510, 516 (E.D. Va. 1998). Defendants recognize this and say as much in their briefing (and even cite cases holding same). *See e.g.*, *Webb v. Kroger Ltd. P'ship I*, 2017 WL 2651721 (W.D. Va. June 19, 2017) (following other courts in the district and denying costs for private process servers), cited by FCSB at ECF 984 at 13. Courts in this District have dealt with this issue directly and held that private process server fees are 1) <u>not</u> properly recoverable under the general taxation-of-costs statute and 2) until Congress has amended the language of such statute, such awards must be disallowed. *Cofield*, 179 F.R.D. at 515 (citing *D & B Countryside, L.L.C. v. Newell (In re D & B Countryside, L.L.C.)*, 217 B.R. 72 (Bankr. E.D. Va.1998)), noting how that court, which held private process servers were not taxable, "conducted an exhaustive review of the case law governing taxation of fees for service of subpoenas."

Because each of Defendants' invoices for service of summons and subpoenas were through private process servers, they are not permitted to tax these fees to Plaintiff.

**Accordingly, FCSB's bill of costs should be reduced by $6,666.41 and the ISDs' bill of costs should be reduced by $895.**

### 4. *Copying Costs*

#### a. <u>Unnecessary Binders</u>

FCSB seeks $68,052.84 in "copying and exemplification costs." ECF No. 984 at 11. $8,741.20 of the total is for copying costs for deposition binders, deposition exhibit binders,

witness binders and "doc review" binders. *Id.* The costs of these copies are not taxable, and FCSB's bill should be reduced accordingly.

Section 1920 provides that a court may tax fees used for photocopies necessarily obtained for use in the case. 28 U.S.C. 1920(4). The caveat, however, is that 'a prevailing party **may only be reimbursed for copies of documents it has submitted to the court and provided to opposing counsel**." *Webb v. Kroger Ltd. P'ship I*, 2017 WL 2651721, at *5 (W.D. Va. June 19, 2017); *Kennedy v. Toy Techs., Inc*., 484 F. Supp. 2d 502, 505 (W.D. Va. 2007); *accord Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's*, 2010 WL 452743, at *9 (W.D. Va. Feb. 8, 2010). "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." *Ford v. Zalco Realty, Inc*., 708 F. Supp. 2d 558, 563 (E.D. Va. 2010) (citing *Synergistic Int'l, LLC v. Korman*, No. 2:05cv49, 2007 WL 517676, at *5 (E.D. Va. Feb. 8, 2007)).

Thus, while copies of items such as courtesy copies for the Court of various briefings and exhibits are taxable because they were made for production to the Court and opposing counsel, the costs of various binders prepared only for counsel (e.g., deposition binders, deposition exhibit binders, and document review binders), as well as documents prepared for both counsel and the witnesses (e.g., witness binders) are not taxable.

**Accordingly, FCSB's bill of costs should be reduced by 8,741.20.**[20]

b. <u>Trial Presentation Services</u>

FCSB also seeks to charge B.R. $ 36,957.50 for "in-trial presentation services provided by a third-party vendor, Cornerstone Discovery." As explained above, the Supreme Court has repeatedly held that 28 U.S.C. § 1920 is to be construed narrowly. *Rimini Street, Inc. v. Oracle USA, In*c., 586 U.S. 334 (2019). The Supreme Court, and the 4th Circuit, have repeatedly

---

[20] A chart itemizing the specific copy charges at issue are attached hereto as Exhibit B.

emphasized that costs are to be narrow in scope, and have rejected expansive interpretations such as this one to encompass a greater recovery of costs. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 562 (2012) (rejecting expansive interpretation of the word "interpreter"); *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 261, 272 (4th Cir. 2013) (rejecting an interpretation of 28 U.S.C. § 1920 that would make e-discovery costs the cost of exemplification and copying).[21]

Here, both *Taniguchi* and *Country Vinter*, are on point. Had Congress wanted to have put "in trial presentation services" as a recoverable cost, it could have said so. Otherwise, the Court should refrain from 'reading in' additional categories of recovery for in-trial presentation services.

**Accordingly, FCSB's bill of costs should be reduced by $36, 957.50.**[22]

### c. Copies of Medical Records from Third Parties

FCSB seeks $2,322.06 for costs related to obtaining the Plaintiff's medical records. Had Congress wanted to make medical records recoverable, it would have said so. Instead, FCSB is once again seeking the over-expansive interpretation of 28 U.S.C. § 1920 rejected in *Taniguchi* and *Country Vinter.*

**Accordingly, FCSB's bill of costs should be reduced by $2,322.06.**

### III.   CONCLUSION

As a young person with no resources or income beyond what she receives for social security benefits, B.R. is unable to pay costs taxed against her. Taxing hundreds of thousands of dollars against her would also discourage other victims from vindicating their civil rights. The

---

[21] Defendants cite an array of trial court orders, most of which are older than 10 years and outside of the 4th Circuit, to support taxing of costs for trial presentation. However, the binding guidance from the Supreme Court and the 4th Circuit, is that 28 U.S.C. § 1920 has a narrow scope.
[22] Without citation to authority, the Court in *Dewberry Engineers, Inc. v. Dewberry Group, Inc.*, 2022 WL 20804194 (E.D. Va. 2022) allowed for recovery of these costs.

excessiveness of this request in light of the complexity of the litigation should also be grounds to deny the taxing of costs.

If the Court exercises its discretion to tax costs, B.R. respectfully requests the Court reduce the amount to comply with the limitations of the law as set forth herein and apply any additional reductions the Court deems necessary and just, and refrain from imposing such costs until B.R.'s motion for a new trial and any subsequent appeal are fully resolved.

Dated: May 29, 2024

Respectfully submitted,

By:  _____/s/ *Robert G. Keefe*_____

ANDREW S. BRENNER
(Pro Hac Vice)
BRITTANY ZOLL
(Pro Hac Vice)
SAMANTHA PEDERSEN
(Pro Hace Vice)
ROBERT G. KEEFE
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL  33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307
abrenner@bsfllp.com
bzoll@bsfllp.com
spedersen@bsfllp.com
rkeefe@bsfllp.com

ALISON L. ANDERSON
(Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East, Suite 1520
Los Angeles, CA  90067
Telephone: (213) 629-9040
Facsimile:  (213) 629-9022
alanderson@bsfllp.com

JONATHAN L. FAHEY
(VSB No. 44854)
**HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC**
2300 N Street NW, Ste 643
Washington, DC  20037
Telephone:  (202) 737-8808
jfahey@holtzmanvogel.com

*Counsel for Plaintiff B.R.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2024, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

By: /s/ *Robert G. Keefe*

*Counsel for Plaintiff B.R.*