UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **B.R.,** | : | |
| | : | |
| **Plaintiff,** | : | Civil Action |
| | : | No. 1:19-cv-00917-RDA-WEF |
| **v.** | : | |
| | : | April 1, 2024 |
| **F.C.S.B.,** | : | 2:03 p.m. |
| **et al.,** | : | |
| | : | |
| | : | VOLUME 10 - PM SESSION |
| **Defendants.** | : | |
| | : | |
| ............................. | : | |

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**
**BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.,**
**UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the Plaintiff:          **Jonathan Fahey, Esq.**
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
2300 N Street NW
Suite 643a
Washington, DC 20037
202-536-1702
Email: Jfahey@holtzmanvogel.com

**Alison Anderson, Esq.**
BOIES SCHILLER FLEXNER, LLP
2029 Century Park East
Suite 1520
Los Angeles, CA 90067
213-995-5720
Email: Alanderson@bsfllp.com

APPEARANCES:   (Cont.)

For the Plaintiff:          **Brittany Zoll, Esq.**
                            BOIES SCHILLER FLEXNER, LLP
                            100 SE 2nd Street
                            Suite 2800
                            Miami, FL 33131
                            610-804-1787
                            Email: Britzoll@gmail.com

                            **Andrew Brenner, Esq.**
                            BOIES SCHILLER FLEXNER, LLP
                            100 SE 2nd Street
                            Suite 2800
                            Miami, FL 33131
                            305-539-8400
                            Email: Abrenner@bsfllp.com"

                            **Robert Keefe, Esq.**
                            BOIES SCHILLER FLEXNER, LLP
                            100 SE 2nd Street
                            Suite 2800
                            Miami, FL 33131
                            850-585-3414
                            Email: Rkeefe@bsfllp.com

For Defendant F.C.S.B.:     **Ryan Bates, Esq.**
                            HUNTON ANDREWS KURTH, LLP
                            2200 Pennsylvania Avenue, NW
                            Washington, DC 20037
                            202-955-1596
                            Email: Rbates@hunton.com

                            **Sona Rewari, Esq.**
                            HUNTON ANDREWS KURTH, LLP
                            2200 Pennsylvania Avenue, NW
                            Washington, DC 20037
                            202-955-1974
                            Email: Srewari@huntonak.com

                            **Scott W. Burton, Esq.**
                            HUNTON ANDREWS KURTH, LLP
                            2200 Pennsylvania Ave NW
                            Washington, DC 20037
                            202-955-1664
                            Email: Burtons@huntonak.com

APPEARANCES:  (Cont.)

For Defendant F.C.S.B.:          **Kevin Elliker, Esq.**
                                 HUNTON ANDREWS KURTH, LLP
                                 2200 Pennsylvania Avenue,
                                 NW
                                 Washington, DC 20037
                                 804-788-8200
                                 Email: Kelliker@huntonak.com

For the Defendants               **Michael E. Kinney, Esq.**
S.T., A.F., P.A.H., T.B.,        THE LAW OFFICE OF MICHAEL E.
B.H., M.P.F., M.C., F.T.,        KINNEY, PLC.
J.F.:                            1801 Robert Fulton Drive
                                 Suite 120
                                 Reston, VA 20191
                                 Email:  Mk@kinneyesq.com

For the Defendant J.O.:          **Bruce Blanchard, Esq.**
                                 ODIN, FELDMAN & PITTLEMAN, PC.
                                 1775 Wiehle Avenue
                                 Suite 400
                                 Reston, VA 20190
                                 Email:  Bruce.blanchard@ofplaw.com

Court Reporter:                  **Scott L. Wallace, RDR, RMR, CRR**
                                 Official Court Reporter
                                 United States District Court
                                 Eastern District of Virginia
                                 401 Courthouse Square
                                 Alexandria, VA  22314-5798
                                 Cell: 443-584-6558
                                 Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               **C O N T E N T S**

2

3                    **EXAMINATIONS**                    **Page**

4    CROSS-EXAMINATION OF FABIO ZULUAGA              6
     BY MR. BRENNER

5

6                      **EXHIBITS**

7    **DESCRIPTION**

8    Plaintiff's Exhibit 132 admitted               8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              <u>**AFTERNOON SESSION, APRIL 1, 2024**</u>

2    (2:02 p.m.)

3              THE COURT:  Are we ready to bring the jury back in?

4              MR. BRENNER:  The plaintiff is.

5              MS. REWARI:  Yes.

6              (Jury in at 2:02 p.m.)

7              THE COURT:  You may be seated.

8              Mr. Brenner.

9              MR. BRENNER:  May I proceed, Your Honor?

10             THE COURT:  You may.

11             <u>CROSS-EXAMINATION OF FABIO ZULUAGA</u>

12   <u>BY MR. BRENNER:</u>

13   **Q.**    Dr. Zuluaga, first of all, did I pronounce it right or

14   not right?

15   **A.**    Yeah, you are.

16   **Q.**    Okay.  I introduced myself to you in the hallway just

17   now, but my name is Andrew Brenner, and I represent the

18   plaintiff in this matter, okay?

19   **A.**    Okay.

20   **Q.**    I'm just going to ask you some follow-up questions on

21   what Ms. Rewari covered with you, okay?

22   **A.**    All right.

23             MR. BRENNNER:  If you could -- could we publish -- I

24   believe Plaintiff's 132 is in evidence, Your Honor.  Can I

25   confirm that?  They had a defense number.  It's --

1           THE COURTROOM CLERK:  Plaintiff's 132, no.

2           (Discussion had off the record.)

3   BY MR. BRENNER:

4   **Q.**     Okay.  Can you look in your book at Plaintiff's 132,

5   please, Doctor?

6   **A.**     Yes.

7   **Q.**     Do you recognize that as an email exchange that starts

8   with the family's email to Dr. Dale on February 10th?

9   **A.**     I do.

10  **Q.**     And it has an exchange between yourself and the family,

11  and I think you -- yourself and the family, and I think there's

12  one email exchange between you and Dr. Dale's executive

13  assistant?

14  **A.**     Correct.

15          MR. BRENNER:  If we could move 132 into evidence, Your

16  Honor.

17          THE COURT:  We may.

18          We're getting some weird feedback.

19          MR. BRENNER:  Yeah.  I don't know if it's me.

20          What did I do?

21          THE COURT:  I think it may be from our friend Scott down

22  there.

23          Test, one, two, three.

24          MR. BRENNER:  Testing, one, two, three.

25          THE COURT:  Still there.  Go ahead and take down the

```
 1   simultaneous.  See if that works.

 2        Yes, sir.

 3        Test, one, two three.

 4        MR. BRENNER:  Testing, one, two, three.

 5        THE COURT:  It's better.

 6        MR. BRENNER:  It's better?

 7        THE COURT:  Yes.

 8        MR. BRENNER:  Okay.  Thank you, Judge.

 9        I don't know if -- did you formally admit 132?  I don't

10   know where we got.

11        THE COURT:  It was not in, but it can be.

12        MR. BRENNER:  I would like to move it in now.

13        THE COURT:  Without objection?

14        MS. REWARI:  Without objection.

15        (Plaintiff's Exhibit 132 admitted into the record.)

16        MR. BRENNER:  May we publish?

17        THE COURT:  You may.

18   BY MR. BRENNER:

19   Q.    So I want to set -- Dr. Zuluaga, you see 132 in your

20   book?

21   A.    I do.

22   Q.    Okay.  So, if you go -- you see there's an email there

23   from B████ family to Dr. Dale?

24   A.    Yes.

25   Q.    Okay.  And then if you go back one page or -- page 1.
```

1    Okay.  And then Dr. Dale responds to the family and says that he

2    is -- is it fair to say he's assigning you to this?

3    **A.**    Correct.

4    **Q.**    Okay.  And that's on February 13th, right?

5    **A.**    Yes.

6    **Q.**    Okay.  February 13th is the first time you hear anything

7    at all about the situation with B███████ at Rachel Carson, correct?

8    **A.**    Yes, correct.

9    **Q.**    Before that time you have had zero notifications from the

10   school about this situation, right?

11   **A.**    Yes.

12   **Q.**    There's been no reports of any sexual harassment made to

13   you, correct?

14   **A.**    Correct.

15   **Q.**    No reports of bullying, correct?

16   **A.**    Correct.

17   **Q.**    No reports of what you refer to as "vulgar language," and

18   we'll get into that a little bit more later, correct?

19   **A.**    Right.

20   **Q.**    It's all news to you, right?

21   **A.**    Yes.

22   **Q.**    And attached to that letterhead, had an email from -- you

23   can bring that back up, Mr. Brown.  Go a couple of pages back.

24        Okay, do you see there there were two e-mails attached?

25   I think you may have covered this with Ms. Rewari, but there was

1    an email from B█████ mom to Mr. F██████, and that email is

2    dated February 10th.

3         Do you see that?

4    **A.**    Yes.

5    **Q.**    And then there was another email, January 27th, I think,

6    from B████ herself to Mr. F█████ and Ms. Weaver.

7    **A.**    Yes.

8    **Q.**    Do you see that?

9    **A.**    I do.

10   **Q.**    Okay.  And you would have read those when Dr. Dale

11   assigned those to you, right?

12   **A.**    Correct.

13   **Q.**    And you would have immediately -- and I think you said

14   this -- immediately at least identified this as a potentially

15   serious issue, correct?

16   **A.**    Yes.

17   **Q.**    The allegations that were being made, which you knew

18   nothing about, one way or the other, were allegations that, if

19   true, would certainly be violative of Fairfax County's school

20   board policies, right?

21   **A.**    Yes.

22   **Q.**    And therefore, you made the decision to jump into action

23   and arrange for a quick meeting with the family, right?

24   **A.**    Yes.

25   **Q.**    Now, when Ms. Rewari was questioning you, she said

1    that -- she was asking you:  Do you normally get a chronology or

2    a narrative from the administrators?

3         Do you remember those questions?

4    **A.**    I do.

5    **Q.**    And what you told her was, actually, the first thing you

6    like to do is meet with the family.  So you didn't urgently

7    request anything from the school at that point, correct?

8    **A.**    I did request a chronology, and as you might remember, I

9    was going to meet with the mom, with the family right away.

10   **Q.**    Right.  You were meeting on the 16th, and we'll see that,

11   that you did meet on the 16th?

12   **A.**    I did meet on the 16th; however, the original request

13   that I had was on that Monday.  Mom changed the date.

14   **Q.**    Okay.  So you were going to meet a couple days earlier,

15   is that --

16   **A.**    Yes, correct.

17   **Q.**    So instead of meeting on the 14th, you met on the 16th.

18   Am I getting that right?

19   **A.**    Yes, I believe so.

20   **Q.**    But the school administrators, on their own -- and

21   Ms. Rewari showed it to you -- they urgently faxed you

22   a 14-page, single-space recitation of their version of what

23   happened, right?

24   **A.**    I did request for that document.  I made the request.

25   **Q.**    Listen to my question.

1  **A.**    Correct.

2  **Q.**    On their own -- I showed you a request -- they

3  immediately put together a 14-page, single-space document, put

4  it in a fax, clicked "urgent" on there and sent it to you for

5  stuff that they said that they had done over the last four --

6  three months, right?

7  **A.**    Right.

8  **Q.**    Okay.  And you took that, right?  That's the first you

9  learned of anything about it, other than what was in Ms. R.'s

10  email that was forwarded to you, correct?

11  **A.**    Correct.

12  **Q.**    Okay.  And so they rushed to get you -- so you would have

13  it; they wanted you to have their version of events, right?

14  **A.**    They -- yes.

15  **Q.**    Yeah.  And this is stuff that all had taken place over

16  the months, but they weren't collecting this stuff

17  contemporaneously.  They weren't keeping a narrative, keeping a

18  log.  No, this was all after the fact, once they knew that your

19  office was going to be involved, correct?

20      MS. REWARI:  Objection.  Lack of foundation, calls for

21  speculation.

22      THE COURT:  Overruled.  It's cross-examination.

23      THE WITNESS:  The document was produced at my request.

24  BY MR. BRENNER:

25  **Q.**    I understand that.  It's a big deal at the school level

```
 1    when an email goes -- let's just step back for a second.
 2         A parent e-mails the superintendent of the schools?
 3    A.    Correct.
 4    Q.    Right?
 5    A.    Yes.
 6    Q.    And says the administrators at one of your schools have
 7    neglected my daughter, has failed to protect her, and I've had
 8    to pull her out of school.
 9         That's a big deal in the school world, right?  That's not
10    a good day for the administrators, right?
11    A.    Yes.
12    Q.    They don't want that kind of report.  So they
13    immediately -- they immediately started writing this thing,
14    talking about all the stuff they had did, which they had not
15    documented before.  That's fair, right?
16    A.    I don't believe it's fair.
17    Q.    Okay.  So let's see which part is unfair.  The immediate
18    part.  They would not have known the superintendent was getting
19    involved before the superintendent knew, right?
20    A.    Correct.
21    Q.    Okay.  So what happens is, is the superintendent gets an
22    email on the 10th, right?
23    A.    Right.
24    Q.    We look at that Exhibit 132.  Do you see that?
25    A.    Yes.
```

1   **Q.**    Okay.  That email is not copied to Mr. F███████ or anyone

2   else at Rachel Carson, correct?

3   **A.**    Correct.

4   **Q.**    Okay.  You get it on the 13th, right?

5   **A.**    Right.

6   **Q.**    That email is Dr. -- it's Dr. Dale, right?

7   **A.**    Yes.

8   **Q.**    I want to get the title right.

9         It's from Dr. Dale to the family, copying you, right?

10  **A.**    Right.

11  **Q.**    No copy to the school?

12  **A.**    Yes.

13  **Q.**    Someone reaches out to the school and says this complaint

14  came in, right?

15  **A.**    Correct.

16  **Q.**    Okay.  Who does that?

17  **A.**    Either myself or my cluster director.

18  **Q.**    You don't remember?

19  **A.**    I believe it was the cluster director, but I'm not a

20  hundred percent sure.

21  **Q.**    And it would not have been before the 13th, right?

22  **A.**    Right.

23  **Q.**    So sometime either the 13th, the 14th, or the 15th --

24  well, let's go back a second.

25        The email -- the exhibit -- the thing that's faxed to the

1    school.

2         Can I see Exhibit 200, please?

3         Do you have Exhibit 200 still up there with you?  It's in

4    the white notebook.

5         MR. BRENNER:  May I approach, Your Honor?

6         THE COURT:  You may.

7    BY MR. BRENNER:

8    **Q.**    So Exhibit 200 is a fax from the school from T█ B█████,

9    correct?

10   **A.**    Yes.

11   **Q.**    Did you know Ms. B█████?

12   **A.**    I did.

13   **Q.**    She was an assistant principal at Rachel Carson at the

14   time, right?

15   **A.**    Correct.

16   **Q.**    It's on February 15th?

17   **A.**    Yes.

18   **Q.**    Okay.  What is the time of the first fax?

19   **A.**    One second.  I think it's 1:30 p.m.

20   **Q.**    Say it again.  1:00 or -- 1:30?

21   **A.**    Date and time, it's 1:55, 13:55.

22   **Q.**    So 2:00.

23        So some time between February 13th, and we don't know

24   when after that, the school gets notified.  By February 15th,

25   they have -- they have got everyone together, and they have

1  written a memo to you to say "Dr. Zuluaga, I know you heard from

2  the parents, but here's what we did," Right?

3       They did it in a matter of 24 to 48 hours, correct?

4  **A.**    Correct.

5  **Q.**    Something never -- they've never put down on paper

6  before, correct?

7  **A.**    This chronology before, this particular chronology, no.

8  **Q.**    Well, no.  Is there -- is there -- you talked about

9  another chronology with Ms. Rewari, they didn't put that one

10  together before either?

11  **A.**    Correct.

12  **Q.**    This is the first one?

13  **A.**    This is the first --

14  **Q.**    Right.  And you would agree with me, it paints -- it

15  paints them in a really favorable light, right?

16  **A.**    It does.  As far as I'm concerned, it gave me a

17  description of the structure they put in place to support the

18  student.

19  **Q.**    Right.  And we'll get to that.

20       So -- well, it's more than that.  But --

21  **A.**    Okay.

22  **Q.**    -- we'll get to that in a minute?

23       But the point is is they are making sure before you sit

24  down with the family that you know that this is -- this is their

25  side of the story, right?

1    **A.**    Right.

2    **Q.**    Okay.  And, in fact, it's the first, other than what you

3    got from the family, it's the first --

4    **A.**    Correct.

5    **Q.**    -- first recitation of the story from the school side,

6    right?

7    **A.**    Right.

8    **Q.**    Okay.  Now, you -- you said that you then do an

9    investigation, right?  Well, you meet with the family on the

10    16th to be --

11    **A.**    Correct.

12    **Q.**    Okay.  Why don't we go through that meeting first, and

13    then we'll get to your investigation?

14    **A.**    All right.

15    **Q.**    Okay.  So if you could look in your book under 160,

16    Plaintiff's 160.

17    **A.**    Yeah.

18    **Q.**    I think this was moved into evidence but had a defense

19    number, I think.  This is the email of the meeting.

20    　　　　Do you see that -- that it's an email from the family to

21    you on February 17th?

22    **A.**    Yes, I have.

23    **Q.**    And it's memorializing a meeting that happened on the

24    16th?

25    **A.**    Correct.

1        MR. BRENNER:  Okay.  Your Honor, I believe it's already in

2   under another exhibit, but I'll just -- for recordkeeping, I'll

3   move it in under this number just to keep us flowing.

4        THE COURT:  Without objection?

5        MS. REWARI:  I believe this is in as Plaintiff's

6   Exhibit 160.

7        MR. BRENNER:  Oh, 160 is in?

8        MS. REWARI:  Yes.

9        MR. BRENNER:  Okay.  May I publish, Your Honor?

10        THE COURT:  You may.

11   BY MR. BRENNER:

12   **Q.**    Okay.  So you meet with the family on the 16th, and we

13   know that because the e-mail's on the 17th, right?

14   **A.**    Yes.

15   **Q.**    Right?

16        Now, there were parts of the email that Mr. -- Ms. Rewari

17   read to you.  I want to read to you a couple of more parts that

18   we didn't go over, you didn't have a chance to go over?

19   **A.**    Okay.

20   **Q.**    So they thank you for meeting with them, that you

21   described as a cordial meeting, right?

22   **A.**    Right.

23   **Q.**    And they thank you for spending time with them.

24        By the way, your -- your testimony is you had never met

25   them before?

1   **A.**    I don't -- I don't remember meeting them before, but it

2   sounds like based on the email that she knew about me.

3   **Q.**    Okay.  And they tell you they're hopeful that -- the

4   first thing they say is they're hopeful that they'll be able

5   to -- B███ will be able to get an education in a safe and

6   positive learning environment within FCPS.  That was their goal

7   for the meeting or their recounting of the meeting to you,

8   right?

9   **A.**    Yeah, that was her version of the meeting, yeah.

10  **Q.**    Okay.  Her version, did you say?

11  **A.**    That was what she recalled from the meeting, yeah.

12  **Q.**    But it's different than your recollection, is that going

13  to be your testimony?

14  **A.**    Yeah, my recollection is that she really wanted -- she

15  did not want her daughter to come back to Carson.

16  **Q.**    Well, this doesn't say Carson, it says, "We once -- we

17  are, once again, hopeful B███ will be able to get an education

18  in safe and positive learning environment within FCPS."

19  **A.**    Correct.

20  **Q.**    And you say that that was not consistent with what they

21  expressed?

22  **A.**    This part is consistent.

23  **Q.**    That part is consistent.  Okay.

24          Okay.  This part, I don't -- I don't think you went over,

25  so let's go over it.

1       They're asking you to implement appropriate measures and

2  training at Rachel Carson Middle School for administration and

3  counselors so they can deal more effectively with issues of

4  bullying and sexual harassment, extortion, and death threats; do

5  you see that?

6  **A.**    Yes.

7  **Q.**    Okay.  So a couple of things there.  One is they're

8  asking you in addition to things about B███ --

9  **A.**    Right.

10  **Q.**    You're saying she doesn't want to go to Rachel Carson,

11  they're saying you have a problem at Rachel Carson, in their

12  opinion.

13  **A.**    Right.

14  **Q.**    And you need to look into it, and you need to provide

15  additional training, okay?

16  **A.**    Correct.

17  **Q.**    You agree with that -- do you agree that that was said at

18  the meeting or no?

19  **A.**    Now that I read it, it's hard for me to remember that

20  that is exactly what --

21  **Q.**    Okay.

22  **A.**    -- what was said.

23  **Q.**    It was hard.  It was 12 years ago?

24  **A.**    Right.

25  **Q.**    Okay.  You have no reason to doubt that that was talked

```
 1   about at the meeting as it's written the next day much closer in

 2   time, right?

 3   A.    Right.

 4   Q.    Nowhere in your testimony today did you -- did you tell

 5   Ms. Rewari that at any point that you went to the administrators

 6   at Rachel Carson and offered them additional training on these

 7   things.  You didn't testify to that, correct?

 8   A.    Correct.

 9   Q.    And you didn't do that, correct?

10   A.    Correct.

11   Q.    Okay.  And then she says, "It is our hope that no other

12   bullying victim at the school will have to endure what B█████

13   had to unnecessarily bear."

14         Again, she's telling you put aside B████, who's probably

15   not going to come back to Rachel Carson?

16   A.    Right.

17   Q.    Which she made clear?

18   A.    Right.

19   Q.    You've got a problem, you should look at it, and you did,

20   right?  You didn't make any changes, right?

21   A.    I didn't make any changes in terms of my role was to

22   ensure that the school -- the principal and the assistant

23   principals and directors of student services put the structures

24   as soon as B████ brought these issues to their attention that

25   they immediately acted -- acted up on those concerns or
```

1    allegations and that they took -- took them very seriously.

2    That was --

3    Q.    So -- so now I understand your role.  You understood your

4    role --

5    A.    Correct.

6    Q.    -- was to look only into the problem or potential problem

7    as it related to B████, right?

8    A.    In this case, that was my main concern.

9    Q.    Well, not your main concern because you didn't do

10   anything to address what is being alleged at that time to be

11   real structural issues at Rachel Carson.  You saw that as

12   someone else's role?

13   A.    No, the system does provide professional development and

14   support to principals, teachers in terms of bullying and

15   harassment, and how to protect the students.  The system has a

16   system.  I don't -- I don't remember if that particular time the

17   system, Fairfax system, provided that kind of professional

18   development.  We do have a very robust --

19   Q.    I'm sorry, what is that?

20   A.    A very robust, a large professional development

21   department who provides all types of training.  So at this

22   point, I don't remember specifically if during that time or

23   after I met with the parents if the system provided that kind

24   of --

25   Q.    Right.  You would remember, for example, in response to

1    meeting with -- with B█████ parents if you had gone and given

2    the administrators additional training.  That didn't happen,

3    right?

4    **A.**    I didn't -- I didn't ask the school or mandate the school

5    to take additional training.

6    **Q.**    Okay.  Now -- okay.  So you -- you testified a couple of

7    times that what you understood the issue to be was that B█████

8    and her family were claiming that she was subjected to some

9    vulgar name-calling; do you recall that?

10    **A.**    I do.

11    **Q.**    Okay.

12         MR. BRENNER:  And you can bring that back up.  I'm sorry,

13    Mr. Brown.

14    BY MR. BRENNER:

15    **Q.**    Well, here -- here it's a little more than that, you

16    agree, right?  They're telling you -- they're reporting to you

17    following the meeting that she's been subjected to bullying,

18    sexual harassment, extortion, and death threats.  That's a

19    little bit more than vulgar name-calling, right?

20    **A.**    Correct.

21    **Q.**    Okay.  So now do you remember a little better that

22    they -- that the -- the problem was a little broader than vulgar

23    name-calling?

24    **A.**    Yes.

25    **Q.**    Okay.  Now, Ms. Rewari asked you specifically, because

```
 1   it's -- and I'll tell you, it's been an issue, she asked you
 2   specifically, she said:  Dr. Zuluaga, at no point were you made
 3   aware that the school had been advised that B███ was subjected
 4   to physical unwanted physical touching?
 5        Do you remember telling Ms. Rewari that?
 6        MS. REWARI:  Objection, Your Honor, I think that misstates
 7   my question.
 8   BY MR. BRENNER:
 9   Q.   Well, let me ask you.  Do you remember testifying that
10   you were never told that B███ was subjected to unwanted
11   physical touching?
12        THE COURT:  Do you recall that question, sir?
13        THE WITNESS:  I don't.
14   BY MR. BRENNER:
15   Q.   You can answer.
16   A.   Ask the question again.
17   Q.   Sure.
18        Do you -- do you recall testifying that you -- that you
19   or the school was never told that B███ had been subjected to
20   unwanted physical touching?
21   A.   I do.
22   Q.   You do remember testifying to that, right?
23   A.   Yeah, yeah.
24   Q.   Okay.  So let's -- let's look at one of the documents
25   that you shared with the jury, which is Exhibit 200, I believe.
```

1    BY

2         MR. BRENNER:  Just the first page, please.

3         It's Defendants' 200.

4         No, I'm sorry, it's the wrong --

5         (Brief pause in proceedings.)

6         MR. BRENNER:  I apologize.  Permission to publish?

7         THE COURT:  You may.

8    BY MR. BRENNER:

9    Q.    So the -- this is your -- the letter you wrote that you

10   testified about on June 29th, I believe?

11        MR. BRENNER:  Can you scroll to the top so I can see the

12   letter?

13        THE WITNESS:  Okay.

14        MR. BRENNER:  Just scroll to the top so we can see -- show

15   the letter.

16   BY MR. BRENNER:

17   Q.    Okay.  June 29th, this is the letter.  Do you remember

18   testifying?

19   A.    I do.

20   Q.    Okay.  And you write to Ms. -- Mrs. R, "Specific concerns

21   brought to the school's attention by you and/or B█████ related

22   to alleged sexual harassment, inappropriate touching,

23   name-calling, and other bullying."

24        And you say they were thoroughly investigated.  Does that

25   refresh your recollection that all the way back in time before

1    you even knew about this that B███ and her family had been

2    reporting inappropriate touching at school?

3    **A.**    It does.

4    **Q.**    Yeah.  That's your letter?

5    **A.**    That's my letter.

6    **Q.**    Okay.  Now, the other thing, if you could scroll down

7    just a little, you reference in that paragraph the SRO.  Were

8    you aware that one of the allegations in the -- that B███ had

9    made was that she had been slapped by a fellow student?  Are you

10   aware of that?

11   **A.**    I -- without seeing a document -- do you have a document

12   here that I may --

13   **Q.**    Well, first, I want to know -- first, you told the jury

14   that you did an investigation, which included talking to all of

15   the administrators?

16   **A.**    Right.

17   **Q.**    You talked to them individual -- well, let me back up a

18   second.

19          When you said "administrators," did you talk to the

20   principal?

21   **A.**    Correct.

22   **Q.**    You talk to Ms. Weaver?

23   **A.**    Yes.

24   **Q.**    Did you talk to the three assistant principals?

25   **A.**    I did.

1   **Q.**    Did you talk to the guidance counselors?

2   **A.**    I don't remember talking to the guidance counselors.

3   **Q.**    Okay.  And did you talk to any teachers?

4   **A.**    No.

5   **Q.**    Okay.  So you got -- you talked to those five people

6   individually, which -- well, correct me if I'm wrong, you talked

7   to Mr. F████████?

8   **A.**    Yes.

9   **Q.**    Dr. Weaver?

10  **A.**    Yes.

11  **Q.**    T██ B██████, who we've discussed?

12  **A.**    Correct.

13  **Q.**    P████ H██████?

14  **A.**    Right.

15  **Q.**    And S██████ T█████?

16  **A.**    Correct.

17  **Q.**    Do I have all the people you talked to?

18  **A.**    I believe so.

19  **Q.**    And did you talk to them each individually and then you

20  talked to them collectively?

21  **A.**    Correct.

22  **Q.**    Okay.  And in your -- and then the other part of your

23  investigation, you said, is you reviewed all of the students'

24  statements.  Do you remember that?

25  **A.**    Their comments, yes.

```
 1    Q.    The what?

 2    A.    Their comments.

 3    Q.    Their comments.  What are their comments?

 4          THE COURT:  C-O-M-M-E-N-T-S, comments.

 5  BY MR. BRENNER:

 6    Q.    Yeah.  I'm trying to understanding what that is.

 7    A.    Comments, whatever the students wrote during the

 8  investigation that the administrators conducted, I was able to

 9  read that.

10  BY MR. BRENNER:

11    Q.    Okay.  What we've been referring to in this trial as

12  student statements, these are the handwritten statements --

13    A.    Oh, I'm sorry.  Okay.  Student statements.

14    Q.    Your calling -- you're referring to those as comments?

15    A.    And the student statements is the right word.

16    Q.    I'm just making sure we're using the same words.

17    A.    Okay.

18    Q.    And you said you reviewed all of those?

19    A.    I believe so.

20    Q.    So, uh, you also made some references to the SRO.  Do you

21  remember who the SRO was at the time?  The student resource?

22    A.    I believe -- I remember him.  I don't remember his name.

23  I don't remember her name.  I -- yeah.

24    Q.    Do you remember if it's a man or a woman?

25    A.    I think it's a lady.
```

1    **Q.**    Okay.  The female SRO, were you aware that there was an

2    allegation from B▮▮▮ investigated by the SRO that another

3    student had slapped B▮▮▮?  Are you familiar with that?

4    **A.**    I don't recall that part.

5    **Q.**    You don't recall that.

6         In this letter you don't say that that allegation, the

7    SRO found an eyewitnesses to that allegation.  You don't tell

8    the parents that.  Is that because you didn't know it?

9         THE COURT:  There were a lot of parts in that question.

10   Can you ask it again?

11        MR. BRENNER:  Sure.  Many commas and no periods.  Let me

12   try it again.

13   BY MR. BRENNER:

14   **Q.**    Were you aware that the student resource officer had a --

15   **A.**    Who, the student resource officer?

16   **Q.**    Yes.

17   **A.**    Okay.  Excuse me.

18   **Q.**    Okay.  I'll call it the SRO.

19        Were you aware that the SRO had investigated an

20   allegation that another student had slapped my client?

21   **A.**    If it's not in this letter, I was as detailed -- I was

22   responding to all the details, and I was as thorough as normally

23   I am.  If it's not in this letter, I may not have been aware of

24   that incident.

25   **Q.**    Right.  And that you weren't aware, then, that the

1    student resources officer had found an eyewitness to that?  You

2    wouldn't have known that, right?

3    **A.**    Not that I remember.

4    **Q.**    In fact, what you know -- the only things you actually

5    know is what these folks told you and wrote to you, right?

6    **A.**    Remember, I also read all the comments from the students

7    that were involved in these incidents.

8    **Q.**    Okay.  And we'll go through your investigation again.

9    You talked to those five people individually?

10   **A.**    Correct.

11   **Q.**    You talk to them all as a -- you get them all in the same

12   room and talk to them again?

13   **A.**    Right.

14   **Q.**    And then you say you reviewed all the student comments?

15   **A.**    Right.

16   **Q.**    But you actually don't remember any of them, as you sit

17   here today, do you?

18   **A.**    I don't remember all the comments, but I remember reading

19   them for sure.

20   **Q.**    Do you remember any of them?  For example, you pointed

21   out with Ms. Rewari, you went through the narrative put together

22   by your fellow FCSB employees, and one of the things Ms. Rewari

23   pointed out to you was a statement from B███ in November of

24   2021.  Do you remember that?

25   **A.**    Yes, I do remember that.

1    **Q.**    And she said you see it says first statement.  And you

2    said, yep, first statement.

3        Do you see that?  Remember that?

4        It's not in there.

5    **A.**    It's not in here?

6    **Q.**    Not yet.

7        Do you remember that testimony?

8    **A.**    I do --

9    **Q.**    What was in that statement?  What was B███ complaining

10   about?

11   **A.**    She said that the students were bullying and harassing

12   her.

13   **Q.**    Do you know any more detail than that?

14   **A.**    I don't recall them without seeing the document.  I just

15   don't recall all of that.

16   **Q.**    So I'll show you the document, but short of me showing

17   you the document, all you remember is her saying bullying and

18   sexual harassment?

19   **A.**    And if I recall properly, that a lot of the bullying was

20   happening during the first period.

21   **Q.**    Okay.

22   **A.**    By the lockers and --

23   **Q.**    Okay.  So let's bring up Plaintiff's Exhibit --

24       MR. BRENNER:  Your Honor, excuse me, may I publish

25   Plaintiff's 77, which is already in evidence?

1        THE COURT:  You may.

2        THE WITNESS:  Which is --

3    BY MR. BRENNER:

4    **Q.**    It should be in the --

5    **A.**    Black folder?

6    **Q.**    -- the black binder.

7    **A.**    Which section?

8    **Q.**    It should be 77.  There should be numbers here.  I'm

9    going to pull it up.

10        Can you read it off the screen?

11   **A.**    I can.

12   **Q.**    Do you recall ever seeing that document before?

13   **A.**    I do.

14   **Q.**    Okay.

15   **A.**    Yes, I do.

16   **Q.**    Is that what you remember to be B█████ first statement,

17   what you testified as her first statement?

18   **A.**    I believe so.  I believe so, yes.

19   **Q.**    The jury's read through it in quite amount of detail, so

20   I'm going to focus on the second page, okay?

21   **A.**    Okay.

22   **Q.**    Okay.  So, on the second page, she identifies three --

23   what she calls "bullies," by name.

24        Do you see that?

25   **A.**    Yes.

1   **Q.**    Had you ever seen a statement from C.K. -- I'm just going

2   to use initials, okay?

3       Have you ever seen a statement from C.K. about this

4   incident?

5   **A.**    I believe there was a statement from him.

6   **Q.**    Okay.

7   **A.**    Or -- or a comment that one of the assistant principals

8   took from him saying that he -- where he was denying all of

9   these allegations.

10  **Q.**    Okay.  So your recollection is that there is -- and I

11  don't want to get tied up in words -- just let me try to make

12  our record clear.

13      I call them student statements; you call them comments.

14  We're talking about the same thing?

15  **A.**    The same thing, yes.

16  **Q.**    This, for example, would be what you consider a comment

17  from B█████, right?

18  **A.**    Correct, or a student statement.

19  **Q.**    Either one.

20  **A.**    I would correct myself.

21      MS. REWARI:  Your Honor --

22      THE COURT:  The rhythm is being lost.  So give him a

23  chance to answer the question before you ask another one.

24      MR. BRENNER:  I will, Your Honor.  I apologize.

25  BY MR. BRENNER:

1    **Q.**    By the way, I'm not going to say if, because I do it

2    intentionally.  When I cut you off -- I'm trying not to -- just

3    raise your hand and tell me to stop, okay?

4    **A.**    All right.

5    **Q.**    I'm going to try my best, though.

6    **A.**    Not a problem.

7    **Q.**    So your memory, as you sit here today, is that there was

8    a statement from C.K. and he denied everything?

9    **A.**    Correct.

10   **Q.**    Okay.  Now, what about J.O., statement or no statement?

11   **A.**    I believe also it was a statement taken by one of the

12   assistant principals, a student statement.

13   **Q.**    Okay.  And do you remember what J.O. said about this --

14   these -- about B███████ complaints?

15   **A.**    I do remember that they had an exchange of -- if I recall

16   this properly without seeing any documents right now -- is that

17   there were a lot of exchanges between them, the two of them, and

18   they were not appropriate.  The comment were just not

19   appropriate.

20   **Q.**    I'm sorry?

21   **A.**    The comments were not appropriate.

22   **Q.**    Between the two of them?

23   **A.**    Between the two of them, yeah.

24   **Q.**    By the way, before you came here today, did you go back

25   and review anything?  Other than the school board's narrative,

1    did you go back and review the statements before you came here

2    today?

3    **A.**      Today?

4    **Q.**      Any time during the last day, two days, three days?

5    **A.**      I have reviewed some of the comments, yes, but I --

6    **Q.**      Okay.  When is the last time you think you reviewed the

7    C.K. one?

8    **A.**      Probably a week, two weeks ago.

9    **Q.**      Okay.  J.O., the same?

10   **A.**      Yes.

11   **Q.**      The next one is D.N.  Do you think there was a statement

12   from D.N.?

13   **A.**      I believe there was also a statement -- yeah, student

14   statement given to some of the assistant principals.

15   **Q.**      By D.N.?

16   **A.**      By D.N.

17   **Q.**      What did D.N. say?

18   **A.**      D.N., if I recall properly, denied -- he mentioned that,

19   in some of the comments or statements that he made, that he

20   engaged in some kind of inappropriate sexual contact with the

21   student.

22   **Q.**      You think that D.N. in his statement said that he engaged

23   in inappropriate sexual -- you said content or contact?

24   **A.**      Contact.

25   **Q.**      So your memory of the D.N. statement is that he said that

1    he engaged in inappropriate sexual contact with my client?

2    That's your memory?

3    **A.**    Well, my -- he didn't state it that way.  He just said

4    that, yes, that they were having some kind of a -- oral sex.

5    **Q.**    Oral sex, did you say?

6    **A.**    Yeah.

7    **Q.**    Okay.

8    **A.**    At --

9    **Q.**    And when did you review that one last?

10    **A.**    I don't remember exactly when, but I know that -- but the

11    student denied all those allegations.  But I do remember that

12    D.N., this particular name, and B████, your client, were -- they

13    were engaging in some kind of a relationship, that's kind of the

14    origin of all of this.

15    **Q.**    And you think that came from D.N.  Okay.

16    You would agree with me that if -- if -- you would agree

17    with me that when the school receives a student's statement like

18    B███ wrote here --

19    MR. BRENNER:  Can you take the -- take this down for one

20    second and bring up the first page?

21    BY MR. BRENNER:

22    **Q.**    If the student -- excuse me.  If the school receives a

23    statement like this, which, for example -- you know, the

24    students are accusing her of, you know, giving out oral sex to

25    everyone and letting everyone go down her pants and calling her

1    a slut and a whore, you would agree that that requires and your

2    School Board policies would require a fair investigation of

3    that, right?

4    **A.**    Correct.

5    **Q.**    A prompt investigation of that?

6    **A.**    Correct.

7    **Q.**    Unbiased investigation of that?

8    **A.**    Yes.

9    **Q.**    And if -- if there -- if -- is it your position that at

10   that point when something like this comes in, the school has no

11   obligation to report it to your office or anyone else at the

12   School Board level?

13   **A.**    It's best practice to provide to inform my office about

14   this kind of --

15   **Q.**    Okay.  So just on the allegation, the --

16   **A.**    Right.

17   **Q.**    -- best practice would be to inform your office, right?

18   **A.**    Yes.

19   **Q.**    Okay.  And you know that didn't happen here, right?

20   **A.**    Correct.

21   **Q.**    Okay.  If you go to the second page, another best

22   practice is to -- well, let me ask you this:  Is it best

23   practice to take statements from the alleged -- I'm going to

24   call them -- I'm going to call them offenders, I'm trying to use

25   neutral language.

1    **A.**    Okay.

2    **Q.**    Okay.  It would be good best practice to take statements

3    from them, right?

4    **A.**    Correct.

5    **Q.**    And your recollection is the school did that, right?

6    **A.**    I -- my recollection is that when I -- I read the

7    investigation conducted by one of the assistant principals, but

8    I don't remember seeing their statements.

9    **Q.**    You do not or you do?

10    **A.**    I don't.

11    **Q.**    Of the -- of the offenders, you don't remember seeing --

12    you told me you did remember seeing those?

13    **A.**    Let me see.  I'm a little confused.

14    **Q.**    I don't want to confuse you, so take your time.

15    **A.**    Right.  I do remember reading the statements from the

16    students that they -- they denied --

17    **Q.**    Okay.

18    **A.**    Yeah, I do.

19    **Q.**    Now, the four people on the -- I guess it's on the right,

20    those would be -- those would be described as -- would it be

21    fair to describe them as witnesses or observers, that at least

22    that -- that B███████ identified?

23    **A.**    Yeah.

24    **Q.**    Right.  Best practices would be -- best practices would

25    be to also take statements from them, correct?

1    **A.**    Correct.

2    **Q.**    Have you ever seen a statement taken from A.J. at this

3    time?

4    **A.**    I would prefer -- it's just if I could see A.J. -- the

5    name instead of the A.J., I will feel more --

6    **Q.**    Well, is it your testimony that there are statements

7    taken from any of the people identified as witnesses?  You have

8    a recollection of that?

9    **A.**    I do believe, yes, reading that there were statements

10   taken by one of the assistant principals.

11   **Q.**    Of A.J., M.J., J.H., and D.M.?

12   **A.**    Right.

13   **Q.**    Okay.  And you don't know what they say?  You want to see

14   them?

15   **A.**    I do want to see them.

16   **Q.**    Okay.  And if I don't have them, then I can't show them

17   to you, that's fair, right?

18   **A.**    If you don't have them.

19          MS. REWARI:  Objection.

20          THE COURT:  That's argumentative.

21          MR. BRENNER:  Okay.

22   BY MR. BRENNER:

23   **Q.**    You -- when you were preparing to come here in the last

24   week or so --

25   **A.**    Right.

 1  **Q.**      -- no one showed you those, did they?

 2          MS. REWARI:  Objection, Your Honor.  Argumentative.

 3          THE COURT:  Well, he's asked a different question so --

 4  BY MR. BRENNER:

 5  **Q.**    The truth is you've never seen statements from those

 6  people, have you?

 7  **A.**    I believe that what I have seen is the statements that

 8  were taken from the assistant principal in -- in the report.

 9  **Q.**    Right.  But that's -- that -- that doesn't tell us

10  anything.  That just tells us you've seen some statements, it

11  doesn't tell us what statements the assistant principal took.

12  So do you know --

13          MS. REWARI:  Objection, Your Honor, argumentative.

14          THE COURT:  All right.  Let's see if -- sir, by looking at

15  the document in front of you right now --

16          THE WITNESS:  Right.

17          THE COURT:  -- do you have any reference as to what A.J.

18  is or who that person is?

19          THE WITNESS:  I'm trying -- I am trying to remember the

20  initials and to make sure I have all the facts as clear as

21  possible, yeah.

22          THE COURT:  Okay.

23          THE WITNESS:  I'm trying.

24          THE COURT:  For purposes of this examination, Mr. Brenner,

25  I think the doctor would prefer, for purposes of this examination

1    only, if you could make a specific reference to that person, if

2    you have that.

3                THE WITNESS:  Correct.

4                MR. BRENNER:  Your Honor, I don't think I have that.

5                THE COURT:  Oh, okay.

6                MR. BRENNER:  So --

7                THE COURT:  What he's suggesting is he's at a disadvantage

8    because he can't line A.J. up with his recollection.

9                MR. BRENNER:  Right.  Well --

10   BY MR. BRENNER:

11   **Q.**    All right.  Well, we'll see -- we'll see -- we'll talk to

12   Ms. T███ about whether --

13   **A.**    Okay.

14   **Q.**    -- these statements exist.

15   **A.**    Right, right.

16   **Q.**    Let's -- now, I want to focus first on J.O., who you said

17   you saw a statement from, okay?

18   **A.**    Okay.

19   **Q.**    Now, when you were testifying earlier today on the

20   questioning from the School Board's counsel, you made a point to

21   say that it is -- it is normal, advisable, and appropriate to go

22   back and look at a student's records when you're evaluating

23   these types of issues.  Do you remember testifying to that,

24   about that?

25   **A.**    I do, I remember.

42

1   **Q.**     In fact, you said it would be totally normal and

2   appropriate to go all the way back to elementary school to see

3   what's going on with that student, right?

4   **A.**     Right.

5   **Q.**     Now, that would be equally appropriate if you were

6   looking at the -- trying to understand the complainant, which in

7   this case was B███, or if you were trying to understand the

8   alleged offender, you would do the same process, right?

9   **A.**     Correct.  I was just -- yeah, when we educators --

10  remember, the student, the alleged victim here, she was in 7th

11  grade.

12  **Q.**     Yes, sir.

13  **A.**     So going back to elementary school is just -- elementary

14  schools go K through 6th, right?  So definitely we want to know

15  what -- what was done in the other school.  When we're having

16  these issues at the elementary level, not that I'm saying that

17  we did, but the question was -- I remember the question that

18  counsel asked me:  Is it common for you to go all the way

19  down -- back to elementary school to figure out what is the root

20  cause of the problem?

21         And the answer is:  Yes, we do it.

22  **Q.**     And all I'm asking you to confirm for me is that would

23  apply equally to the complaining student as -- also as to the

24  offending student?

25  **A.**     Correct, yeah.

1    **Q.**    Okay.  So --

2         MR. BRENNER:  I believe Exhibit 198, page 11 is already in

3    evidence.  Your Honor, I just want to make sure the right page

4    comes up.

5         THE COURT:  Yes, sir.

6         MR. BRENNER:  Your Honor, could I republish 77 for one

7    moment?

8         THE COURT:  Yes, sir.

9    BY MR. BRENNER:

10   **Q.**    Okay.  So, on the bottom there where it says -- it starts

11   with "D.N.," it's about -- right there, about five lines up from

12   the bottom.

13   **A.**    Okay.

14   **Q.**    It says, "D.N. said I gave him oral sex, which is

15   completely false, and I sent naked pictures which, again, isn't

16   true."

17        Do you see that?

18   **A.**    I do.

19   **Q.**    And in this statement, you agree with me, the three

20   alleged offenders are J.O., D.N., and -- and C.K., right?

21        MR. BLANCHARD:  Your Honor --

22        THE WITNESS:  Right.

23        MR. BLANCHARD:  -- I'm going to object.  This is --

24   relates to D.N., what's highlighted.

25        MR. BRENNER:  I will clear --

1        MR. BLANCHARD:  He's clumping people together in this

2    exhibit.

3        MR. BRENNER:  I'll make it clear.

4        THE COURT:  All right.  Go ahead and make the correction.

5        And, again, based upon representations of counsel, I'm

6    depending on the person who is the proponent of the witness to

7    actually make objections.  I will allow it because of these

8    original circumstances, but Ms. Rewari is responsible for making

9    objections.

10       And I get it, it's making reference to your client, but

11   you all have informed me that one person is going to do the

12   examination for people, so I'm relying on that.  If things have

13   changed, just let me know.

14       MR. BLANCHARD:  Your Honor --

15       THE COURT:  I made my point --

16       MR. BLANCHARD:  {Indiscernible}.

17       THE COURT:  I've made my point.

18   BY MR. BRENNER:

19   **Q.**    Okay.  And let me -- let me just -- let me clear it up.

20       Exhibit 77 alleges three different offenders doing some

21   of the -- some of the stuff the same, some of them are doing

22   stuff different than each other.  You agree with that, right?

23   **A.**    Right.

24   **Q.**    Okay.  This particular -- this particular part, B█████

25   talking about basically using naked pictures of her, right?

1   **A.**    Right.

2   **Q.**    And that is specific as to D.N., right?

3   **A.**    Correct.

4   **Q.**    But if you were -- if you were -- best practices, you

5   wouldn't say, well -- you would look at -- you would want to

6   look at the background of all three of these individuals when

7   you're assessing the viability or to verify the complaint.

8   That's fair, right?

9   **A.**    Right.

10  **Q.**    Okay.  So --

11          MR. BLANCHARD:  May we approach?

12          THE COURT:  Give me a general purpose.

13          MR. BLANCHARD:  The reference here to naked pictures do

14  not tie in in any foundation to my client right now.

15          THE COURT:  Well, I still don't know what you want to

16  approach for, but come on.

17          (Following sidebar discussion had on the record:)

18  ████████████████████████████

19  ████████████████████████████████████████

20  ██████████████████████████████████████████

21  ████████████████████████████████████████████

22  ███████████████████████████████████

23  ███████████████

24  ██████████████████████████████████████████

25  ████████████████████████████████████████

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



14          THE COURT:  Without reading it into evidence.

15          MR. BRENNER:  I'm not going to read it into evidence.  I

16     will not read it into evidence.

17          THE COURT:  Okay.

18          MR. BRENNER:  And I will tell him not to read it into

19     evidence.

20          THE COURT:  What we're going to do is this:  I am going to

21     let you follow that format of questioning.  If you vary, I'm

22     going to stop you --

23          MR. BRENNER:  Yes.

24          THE COURT:  -- in front of the jury.  And you'll have to

25     deal with whatever consequence is associated with that.

1        MR. BRENNER:  I know.  I understand.

2        THE COURT:  But we are getting a little far afield when we

3    start talking about things in 2nd grade, 3rd grade, 6th grade,

4    and all of that.

5        MR. BRENNER:  Just so you know, Your Honor, both of

6    these -- both of these things happened the semester before B.R.'s

7    complaints.  It's not, like, five years ago.

8        THE COURT:  Right.  How much longer do you think you're

9    going to be?

10        MR. BRENNER:  It's going to be a while, so tell me when

11    you want to break.

12        THE COURT:  Okay.  I told them 3:00, so I'm going to let

13    them go.

14        MR. BRENNER:  Okay.

15        MS. REWARI:  Mr. -- Dr. Zuluaga has a flight scheduled

16    tomorrow.

17        MR. BRENNER:  So when can he be back?

18        THE COURT:  When is his flight?

19        MS. REWARI:  I can find out.

20        THE COURT:  You can find out.

21        (Discussion had off the record.)

22        THE LAW CLERK:  He reports that his flight is on Thursday.

23    Tomorrow, he has an important doctor's appointment, but he just

24    said that he could maybe rearrange things.

25        THE COURT:  He's got an -- he's got an important

1    appointment here tomorrow.

2         MS. REWARI:  Sorry.  I misunderstood.

3         MR. BRENNER:  So we're going to stop for the day?

4         MR. BLANCHARD:  One point of clarification.  When he shows

5    him the document, if he identifies and says {indiscernible}, the

6    jury's taking notes, they're going to write it down and correlate

7    it again to David Neill, so it's --

8         THE COURT:  Depending on the way the questions are asked,

9    they may not correlate it to anybody.

10        MR. BLANCHARD:  Okay.

11        (Sidebar discussion concluded.)

12        THE COURT:  I apologize for the length of that bench

13   conference.  So, suffice it to say that everybody is trying to do

14   their job as best they can, and it is up to the Court to sort of

15   sort out those things, and sometimes it takes a little longer

16   than we think.

17        That's the bad news.  The good news is, because we have

18   other things we need to sort out, and I promised you 3:00, I'm

19   going to let you go for the day.

20        Remember the Court's instructions.  Do not discuss the

21   case or any aspect of the case with anyone while the case is

22   pending, and please, to the extent you can, stay away from social

23   media and print media.

24        Tomorrow, I believe we are 10 -- starting at 10:00, so

25   we'll see you in the morning at 10:00.

1          (Jury out at 3:06 p.m.)

2          THE COURT:  You can step down, Doctor.

3          You may be seated.  Thank you, ladies and gentlemen.

4          Okay.  We made a transcript with regard to the last issue

5     before the Court.  The Court's going to take a look at the

6     transcript, and I believe we're going to ultimately end up with

7     where we ended up with Mr. Brenner, and that is that the

8     questions will be specific.  You can refresh recollection, to the

9     extent you can, that particular item.  Because of the nature of

10    it, it's not going to be read into evidence unless another

11    foundation basis is provided for it.

12         MR. BRENNER:  And with the benefit of the evening,

13    maybe I'll just -- with the benefit of the evening, maybe I'll

14    decide that I have enough on it and move to the next topic.

15         THE COURT:  A good meal can resolve a lot of things.

16         So -- all right.  All right.  Ladies and gentlemen, thank

17    you again, we'll see you at 10 tomorrow.  We are sort of getting

18    off track with regard to our projection of witnesses.  It appears

19    that the doctor is going to be on the stand for how long?

20         MR. BRENNER:  I really don't know, Judge.  I'll try to

21    advise Ms. Barry tonight.  When I look at my outline, I'm going

22    to try to get rid of some stuff.

23         THE COURT:  All right.  And, Ms. Rewari, obviously you're

24    going to want to conduct a redirect of sorts.

25         MS. REWARI:  Yes.

```
 1        THE COURT:  And let me remind people that it's the Court's
 2   preference that a redirect or reexamination not take any longer
 3   than the cross-examination.  We don't need to go over ground that
 4   we've already covered.
 5        Because of the special circumstances, Mr. Blanchard, if
 6   you want to question the doctor, I'll allow you to do that,
 7   because, as I said from the beginning, and again nobody believed
 8   me when I said it, but your client's interests diverge in some
 9   respects from the rest of the defendants.  So I will give you an
10   opportunity when reference is made to your client to do further
11   examination, if you choose.
12        MR. BLANCHARD:  Yes, sir.  If things go --
13        THE COURT REPORTER:  Counsel, I can't hear you.
14        MR. BLANCHARD:  If things go as we discussed, my hope is I
15   won't have any questions.
16        THE COURT:  All right.
17        MR. BLANCHARD:  But I'll just have to see in the morning.
18        THE COURT:  Very good.
19        Who do you anticipate after Dr. Zuluaga?
20        MR. BRENNER:  It's probably expert -- oh, Marcella
21   Rustioni, and then it's Ms. T████, and then the resumption of the
22   plaintiff's mom.
23        THE COURT:  Best guesstimate?
24        MR. BRENNER:  I'm doing none of them, so I'm going to turn
25   it over to Ms. Anderson.
```

 1          THE COURT:  Ms. Anderson.

 2          MS. ANDERSON:  Best guesstimate for Rustioni's direct is

 3     40 minutes or less.

 4          THE COURT:  Okay.  Who's doing the cross?

 5          MR. ELLIKER:  (Raised hand).

 6          THE COURT:  Okay.  Been pretty efficient so far.  All

 7     right.

 8          MS. ANDERSON:  Yeah, we're a good team.

 9          And then Ms. T____, I would estimate -- again, it sort of

10     depends on the answers, about an hour and 10, hour and 15.

11          THE COURT:  Who's doing Ms. T____?

12          MR. BATES:  I am, Judge.  And this is one of the witnesses

13     where the scope is going to exceed, so we do not have to call her

14     in our case, so I would imagine two, two and a half hours.

15          THE COURT:  From your perspective?

16          MR. BATES:  From mine.

17          THE COURT:  Okay.  And again, I'm depending on your

18     representations that say, okay, we're going to cover things in

19     the cross-examination that are outside of the scope of the direct

20     because we're going to actually use this as a direct witness.

21     But what I don't want to hear, unless something is really, really

22     strange, we're calling her back to the stand.  You know,

23     that's -- that's not efficient.  So, I would hope that the

24     commitment for cross and redirect being accomplished at the same

25     time sustains throughout the course of the litigation, unless

1    something really unusual happens.

2          MR. BATES:  That's the plan, Your Honor.

3          THE COURT:  Which in this case may well be the case.

4          But anything else about the other witnesses that you

5    anticipate?  Because it looks like we may be able to get through

6    two or three tomorrow?

7          MS. ANDERSON:  And then after that, time permitting, we're

8    likely rolling into B█████ R.

9          THE COURT:  Excuse me?

10         MS. ANDERSON:  Plaintiff's mom.

11         THE COURT:  Plaintiff's mom, which will --

12         MS. ANDERSON:  We're going to bring her back.

13         THE COURT:  -- be long.

14         MS. ANDERSON:  Yes.

15         THE COURT:  Okay.  Very good.

16         Thank you, ladies and gentlemen.

17         (Proceedings adjourned at 3:12 p.m.)

18

19

20

21

22

23

24                    **C E R T I F I C A T E**

25

                     I, Scott L. Wallace, RDR-CRR, certify that

1        the foregoing is a correct transcript from the record of
         proceedings in the above-entitled matter.
2

3        /s/ Scott L. Wallace                    4/1/24
         ----------------------------           ----------------
4        **Scott L. Wallace, RDR, CRR                Date**
           **Official Court Reporter**
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| / | 29th [2] - 25:11, 18 | A |
|---|---|---|

**/s** [1] - 66:4

**29th** [2] - 25:11, 18
**2:00** [1] - 15:22
**2:02** [2] - 6:2, 6
**2:03** [1] - 1:6
**2nd** [5] - 2:3, 7, 11; 55:1; 60:4

## 1

**1** [3] - 1:5; 6:1; 8:25
**10** [4] - 1:7; 61:25; 62:18; 64:11
**100** [4] - 2:3, 7, 11; 47:5
**10:00** [2] - 61:25; 62:1
**10th** [3] - 7:8; 10:2; 13:22
**11** [1] - 43:3
**12** [1] - 20:24
**120** [1] - 3:7
**132** [9] - 5:8; 6:24; 7:1, 4, 15; 8:9, 15, 19; 13:24
**13:55** [1] - 15:21
**13th** [6] - 9:4, 6; 14:4, 21, 23; 15:23
**14-page** [2] - 11:22; 12:3
**14th** [2] - 11:17; 14:23
**15** [1] - 64:11
**1520** [1] - 1:21
**15th** [3] - 14:23; 15:16, 24
**160** [4] - 17:15; 18:6
**16th** [7] - 11:10-12, 17; 17:10, 24; 18:12
**1775** [1] - 3:10
**17th** [2] - 17:21; 18:13
**1801** [1] - 3:7
**198** [1] - 43:3
**1:00** [1] - 15:20
**1:19-cv-00917-RDA-WEF** [1] - 1:4
**1:30** [2] - 15:19
**1:55** [1] - 15:21

## 2

**200** [5] - 15:2, 8; 25:1, 4
**20037** [5] - 1:17; 2:15, 19, 22; 3:3
**2011** [2] - 49:25; 50:6
**2012** [1] - 52:4
**20190** [1] - 3:11
**20191** [1] - 3:8
**202-536-1702** [1] - 1:18
**202-955-1596** [1] - 2:16
**202-955-1664** [1] - 2:23
**202-955-1974** [1] - 2:19
**2021** [1] - 30:25
**2024** [2] - 1:5; 6:1
**2029** [1] - 1:20
**213-995-5720** [1] - 1:22
**2200** [4] - 2:15, 18, 22; 3:3
**22314-5798** [1] - 3:15
**2300** [1] - 1:16
**24** [1] - 16:3
**27th** [1] - 10:5
**2800** [3] - 2:3, 7, 11

## 3

**305-539-8400** [1] - 2:8
**33131** [3] - 2:4, 8, 12
**3:00** [2] - 60:13; 61:19
**3:06** [1] - 62:2
**3:12** [1] - 65:18
**3rd** [1] - 60:4

## 4

**4/1/24** [1] - 66:4
**40** [1] - 64:4
**400** [1] - 3:11
**401** [1] - 3:15
**443-584-6558** [1] - 3:16
**48** [1] - 16:3

## 5

**547** [1] - 50:2
**583** [1] - 50:2
**5th** [1] - 55:1

## 6

**6** [1] - 5:4
**610-804-1787** [1] - 2:4
**643a** [1] - 1:17
**6th** [8] - 42:15; 45:22; 50:18; 55:1; 56:5, 8-9; 60:4

## 7

**77** [4] - 32:1, 9; 43:7; 44:21
**7th** [2] - 42:11; 55:1

## 8

**8** [1] - 5:8
**804-788-8200** [1] - 3:4
**850-585-3414** [1] - 2:12
**8th** [1] - 55:2

## 9

**90067** [1] - 1:21

## A

**A.F** [1] - 3:6
**A.J** [6] - 39:3, 5-6, 12; 40:18; 41:9
**able** [5] - 19:4, 17; 28:9; 65:6
**above-entitled** [1] - 66:2
**abrenner@bsfllp.com** [1] - 2:9
**accomplished** [1] - 64:25
**accused** [3] - 48:25; 55:18; 58:18
**accusing** [3] - 36:25; 53:23; 57:22
**act** [1] - 50:13
**acted** [2] - 22:1
**Action** [1] - 1:4
**action** [1] - 10:22
**addition** [1] - 20:9
**additional** [4] - 20:16; 21:7; 23:3, 6
**address** [2] - 22:11; 51:15
**addressed** [1] - 50:6
**adjourned** [1] - 65:18
**administration** [1] - 20:3
**administrative** [1] - 49:18
**administrator** [1] - 58:1
**administrators** [9] - 11:2, 20; 13:6, 10; 21:6; 23:3; 26:16, 20; 28:9
**admit** [1] - 8:9
**admitted** [2] - 5:8; 8:15
**advisable** [1] - 41:22
**advise** [1] - 62:22
**advised** [1] - 24:4
**afield** [2] - 52:23; 60:3
**AFTERNOON** [1] - 6:1
**ago** [4] - 20:24; 35:9; 48:24; 60:8
**agree** [10] - 16:14; 20:18; 23:17; 36:17; 37:2; 43:20; 44:23; 56:14
**ahead** [2] - 7:25; 44:5
**aided** [1] - 3:18
**al** [1] - 1:6
**alanderson@bsfllp.com** [1] - 1:22
**Alexandria** [1] - 3:15
**Alice** [1] - 58:20
**aligned** [1] - 47:5
**Alison** [1] - 1:19
**allegation** [9] - 29:3, 7-8, 21; 37:16; 47:22; 52:5; 55:10
**allegations** [9] - 10:17; 22:2; 26:9; 33:10; 36:12; 52:13, 22; 58:5
**alleged** [7] - 22:11; 25:23; 37:24; 42:9, 11; 43:21; 59:7
**allegedly** [1] - 57:20
**alleges** [1] - 44:21
**alleging** [1] - 48:19
**allow** [4] - 44:8; 54:1; 63:7
**allowed** [1] - 46:2
**aloud** [2] - 56:23, 25
**ALSTON** [1] - 1:11
**amount** [1] - 32:20
**ancillary** [2] - 52:16; 53:3
**Anderson** [3] - 1:19; 64:1

**ANDERSON** [7] - 51:25; 64:3, 9; 65:8, 11, 13, 15
**Andrew** [2] - 2:6; 6:17
**ANDREWS** [4] - 2:14, 18, 21; 3:2
**Angeles** [1] - 1:21
**answer** [4] - 24:16; 33:24; 42:22; 55:25
**answers** [1] - 64:11
**anticipate** [3] - 47:13; 63:20; 65:6
**apologize** [4] - 25:7; 33:25; 49:13; 61:13
**APPEARANCES** [3] - 1:13; 2:1; 3:1
**apply** [1] - 42:24
**appointment** [2] - 60:24; 61:2
**approach** [3] - 15:5; 45:12, 17
**appropriate** [10] - 20:2; 34:19, 22; 41:22; 42:3, 6; 55:10, 18; 57:21
**APRIL** [1] - 6:1
**April** [1] - 1:5
**argue** [2] - 51:1
**arguing** [1] - 51:1
**argument** [5] - 48:24; 50:24; 52:5, 12; 58:17
**argumentative** [3] - 39:21; 40:3, 14
**arrange** [1] - 10:23
**aside** [1] - 21:15
**aspect** [1] - 61:22
**assassination** [1] - 52:19
**assessing** [1] - 45:8
**assigned** [1] - 10:11
**assigning** [1] - 9:2
**assistant** [11] - 7:13; 15:13; 21:23; 26:25; 33:8; 34:13; 35:15; 38:8; 39:11; 40:9, 12
**associated** [1] - 60:1
**attached** [2] - 9:22, 24
**attention** [2] - 21:25; 25:22
**Ave** [1] - 2:22
**Avenue** [4] - 2:15, 18; 3:3, 10
**aware** [14] - 24:4; 26:9, 11; 29:2, 15, 20, 24; 30:1; 53:20; 54:9, 12, 16; 57:18

## B

**B.H** [1] - 3:6
**B.R** [3] - 1:3; 52:1; 59:1
**B.R.'s** [3] - 52:24; 55:5; 60:7
**background** [1] - 45:7
**bad** [2] - 50:13; 61:18
**B**▋ [3] - 15:8, 11; 27:12
**BARAN** [1] - 1:15
**Barry** [1] - 62:22
**based** [2] - 19:2; 44:6
**basis** [1] - 62:12
**BATES** [3] - 64:13, 17; 65:3
**Bates** [1] - 2:14
**bear** [2] - 21:14; 55:3
**BEFORE** [1] - 1:11
**beginning** [2] - 47:6; 63:8
**behalf** [1] - 48:20

**belief** [1] - 47:1
**B**▋ [21] - 9:7; 10:6; 19:5; 20:9; 21:15, 25; 22:8; 23:8; 24:4, 11, 20; 26:2, 9; 29:3; 30:24; 31:10; 33:18; 36:13, 19; 42:8
**B**▋ [7] - 8:23; 10:1; 23:2; 32:17; 34:15; 38:23; 44:25
**B**▋ [3] - 19:17; 21:13; 25:22
**bench** [1] - 61:13
**benefit** [3] - 52:15; 62:13
**best** [4] - 34:6; 37:14, 18, 22-23; 38:3, 25; 45:5; 51:12; 53:1; 61:15; 63:24; 64:3
**better** [3] - 8:5; 23:22
**between** [6] - 7:10, 12; 15:23; 34:18, 23
**big** [2] - 12:25; 13:9
**B**▋ [1] - 65:9
**binder** [1] - 32:7
**bit** [3] - 9:18; 23:20; 52:21
**black** [2] - 32:6
**Blanchard** [10] - 3:9; 46:17, 23; 47:2; 48:13, 23-24; 56:11; 58:11; 63:6
**BLANCHARD** [23] - 43:22, 24; 44:2, 15, 17; 45:12, 14, 20, 25; 46:21; 47:4, 8; 49:7, 10, 13; 50:9; 54:21; 56:2; 61:5, 11; 63:13, 15, 18
**Blanchard's** [4] - 47:12; 50:25; 52:21; 57:19
**board** [1] - 10:20
**Board** [7] - 37:3, 13; 47:10; 49:1; 52:7; 57:25; 58:10
**Board's** [1] - 41:21
**board's** [1] - 35:1
**BOIES** [4] - 1:20; 2:2, 6, 10
**book** [3] - 7:4; 8:20; 17:15
**bootstrapping** [2] - 56:6; 57:20
**bottom** [2] - 43:11, 13
**bought** [1] - 47:7
**boyfriend** [1] - 48:16
**break** [1] - 60:12
**BRENNER** [87] - 5:4; 6:4, 9, 12; 7:3, 15, 19, 24; 8:4, 6, 8, 12, 16, 18; 12:24; 15:5, 7; 18:1, 7, 9, 11; 23:13, 15; 24:9, 15; 25:3, 7, 9, 12, 15, 17; 28:6, 11; 29:12, 14; 31:25; 32:4; 33:25; 34:1; 36:20, 22; 39:22; 40:5; 41:5, 7, 10-11; 43:3, 7, 10; 44:1, 4, 19; 48:3; 49:6, 8; 50:5, 21; 51:24; 52:13; 53:7, 19; 54:3, 7, 18; 56:13, 21, 24; 57:2, 8, 12, 22; 58:3; 59:16, 19, 24; 60:2, 6, 11, 15, 18; 61:4; 62:13, 21; 63:21, 25
**Brenner** [9] - 2:6; 6:8, 17; 40:25; 47:19; 50:19; 52:12; 55:19; 62:8
**BRENNNER** [1] - 6:23
**Brief** [1] - 25:6
**bring** [10] - 6:3; 9:23; 23:13; 31:24; 36:21; 46:6; 52:7; 55:3; 65:13
**Brittany** [1] - 2:2
**britzoll@gmail.com** [1] - 2:5

**broader** [1] - 23:23
**brought** [2] - 21:25; 25:22
**brown** [1] - 9:23
**Brown** [1] - 23:14
**Bruce** [1] - 3:9
**bruce.blanchard@oflaw.com** [1] - 3:12
**bullies** [1] - 32:24
**bullying** [11] - 9:15; 20:5; 21:13; 22:15; 23:18; 25:24; 31:12, 18, 20; 45:20; 48:25
**Burton** [1] - 2:21
**burtons@huntonak.com** [1] - 2:23
**BY** [24] - 5:4; 6:12; 7:3; 8:18; 12:24; 15:7; 18:11; 23:15; 24:9, 15; 25:2, 9, 17; 28:6, 11; 29:14; 32:4; 34:1; 36:22; 39:23; 40:5; 41:11; 43:10; 44:19

## C

**C.K** [11] - 33:2, 4; 34:9; 35:8; 43:21; 48:18; 51:14; 54:10; 56:22; 58:17
**C.K.'s** [2] - 48:17; 58:16
**CA** [1] - 1:21
**care** [1] - 54:20
**career** [1] - 58:24
**Carson** [11] - 9:7; 14:2; 15:13; 19:15; 20:3, 11-12; 21:7, 16; 22:12
**case** [10] - 22:9; 42:8; 52:18; 55:10; 61:22; 64:15; 65:4
**caught** [2] - 52:15; 53:2
**Cell** [1] - 3:16
**Century** [1] - 1:20
**certain** [2] - 46:15
**certainly** [2] - 10:19; 47:11
**certify** [1] - 66:1
**chance** [3] - 18:18; 33:24; 49:12
**changed** [2] - 11:13; 44:14
**changes** [2] - 21:21
**character** [1] - 52:19
**characterizing** [1] - 53:2
**children** [2] - 54:25
**choose** [1] - 63:12
**chronology** [5] - 11:1, 8; 16:7, 9
**circumstances** [3] - 44:9; 55:5; 63:6
**Civil** [1] - 1:4
**claiming** [1] - 23:9
**clarification** [1] - 61:5
**clarified** [1] - 51:10
**clarify** [2] - 51:8, 23
**class** [1] - 48:18
**clear** [7] - 21:18; 33:13; 40:21; 44:1, 4, 20; 46:21
**CLERK** [2] - 7:1; 60:23
**clicked** [1] - 12:4
**client** [14] - 29:21; 36:2, 13; 44:11; 45:15, 22; 46:5, 7; 47:12, 16; 50:12; 52:23; 63:11
**client's** [7] - 45:20; 47:14; 48:25;

50:16; 52:21; 63:9
**closer** [2] - 21:2; 58:15
**clumping** [1] - 44:2
**cluster** [2] - 14:17, 19
**collecting** [1] - 12:16
**collectively** [1] - 27:21
**coming** [3] - 47:24; 52:3; 56:2
**commas** [1] - 29:12
**comment** [3] - 33:8, 17; 34:19
**comments** [14] - 28:1, 3-5, 8, 15; 30:7, 15, 19; 33:14; 34:22; 35:6, 20
**COMMENTS** [1] - 28:5
**commitment** [1] - 64:25
**common** [1] - 42:19
**complainant** [2] - 42:7; 48:8
**complaining** [2] - 31:10; 42:24
**complaint** [14] - 14:13; 45:8; 48:9, 19; 50:13; 51:5; 52:1; 53:11, 14
**complaints** [2] - 34:15; 60:8
**completely** [2] - 43:16; 56:6
**computer** [1] - 3:18
**computer-aided** [1] - 3:18
**concern** [3] - 22:9; 53:23
**concerned** [2] - 16:16; 52:25
**concerns** [2] - 22:1; 25:21
**concluded** [1] - 61:12
**conduct** [1] - 62:25
**conducted** [2] - 28:9; 38:8
**conference** [1] - 61:14
**confirm** [2] - 6:25; 42:23
**confuse** [1] - 38:15
**confused** [1] - 38:14
**confusing** [1] - 53:4
**consequence** [1] - 60:1
**consider** [1] - 33:17
**consistent** [3] - 19:21, 23
**Cont** [2] - 2:1; 3:1
**contact** [4] - 35:21, 24-25; 36:2
**contemporaneously** [1] - 12:17
**content** [1] - 35:24
**context** [1] - 52:17
**copied** [1] - 14:1
**copy** [1] - 14:11
**copying** [1] - 14:9
**cordial** [1] - 18:21
**correct** [61] - 7:14; 9:3, 7-8, 13-16, 18; 10:12, 15; 11:7, 16; 12:1, 10-11, 19; 13:3, 20; 14:2, 15; 15:9, 15; 16:3, 6, 11; 17:4, 11, 25; 19:20; 20:17; 21:8-11; 22:6; 23:21; 26:22; 27:7, 13, 17, 22; 30:11; 33:19, 21; 34:10; 37:5, 7, 21; 38:5; 39:1; 41:4; 42:10; 43:1; 45:4; 48:7; 49:10; 66:2
**correction** [1] - 44:5
**correlate** [2] - 61:7, 10
**counsel** [3] - 41:21; 42:19; 44:6
**Counsel** [1] - 63:14
**counselors** [3] - 20:4; 27:2
**County** [2] - 49:21; 57:13

**County's** [1] - 10:19
**couple** [5] - 9:23; 11:14; 18:17; 20:8; 23:7
**course** [1] - 65:1
**Court** [6] - 3:13; 61:15; 62:6; 66:5
**Court's** [4] - 50:9; 52:18; 56:9; 61:21; 62:6; 63:2
**Courthouse** [1] - 3:15
**COURTROOM** [1] - 7:1
**cover** [1] - 64:19
**covered** [3] - 6:9; 9:25; 63:5
**credit** [1] - 48:7
**cross** [11] - 12:22; 47:2; 57:17, 23-24; 58:21; 59:5; 63:4; 64:5, 20, 25
**CROSS** [2] - 5:4; 6:11
**cross-examination** [5] - 12:22; 47:2; 59:5; 63:4; 64:20
**CROSS-EXAMINATION** [2] - 5:4; 6:11
**CRR** [3] - 3:13; 66:1, 5
**cut** [1] - 34:3

**D**

**D.M** [1] - 39:12
**D.N** [17] - 35:12, 16-19, 23; 36:1, 13, 16; 43:12, 15, 21, 25; 45:3; 53:23; 57:20
**D.N's** [1] - 53:8
**D.N.'s** [2] - 53:5, 7
**Dale** [6] - 7:8; 8:23; 9:1; 10:10; 14:6, 9
**Dale's** [1] - 7:12
**Date** [1] - 66:5
**date** [3] - 11:13; 15:21; 50:14
**dated** [1] - 10:2
**daughter** [2] - 13:7; 19:15
**David** [10] - 46:5; 50:15, 19, 21; 51:19, 22; 56:3, 7; 61:8
**days** [3] - 11:14; 35:5
**DC** [5] - 1:17; 2:15, 19, 22; 3:3
**deal** [4] - 12:25; 13:9; 20:4; 60:1
**death** [2] - 20:5; 23:19
**decide** [3] - 53:4; 58:12; 62:15
**decision** [3] - 10:22; 58:21
**Defendant** [3] - 2:14; 3:2, 9
**defendant** [2] - 49:15, 22
**defendants** [1] - 63:10
**Defendants** [2] - 1:8; 3:5
**Defendants'** [1] - 25:4
**defense** [3] - 6:25; 17:18; 46:16
**definitely** [1] - 42:15
**denied** [7] - 34:9; 35:19; 36:12; 38:17; 49:8, 15, 24
**denying** [1] - 33:9
**department** [1] - 22:22
**describe** [1] - 38:22
**described** [2] - 18:21; 38:21
**DESCRIPTION** [1] - 5:7
**description** [1] - 16:17
**detail** [2] - 31:14; 32:20

**detailed** [1] - 29:22
**details** [1] - 29:23
**determination** [2] - 50:8; 52:17
**development** [3] - 22:14, 19, 21
**different** [6] - 19:12; 40:4; 44:21, 23; 47:16; 52:21
**direct** [2] - 64:3, 20
**direction** [1] - 54:8
**directly** [1] - 54:12
**director** [2] - 14:17, 19
**directors** [1] - 21:24
**disadvantage** [1] - 41:8
**disagree** [1] - 58:12
**disciplinary** [11] - 45:21; 46:2; 47:14; 49:17, 20, 24; 50:17; 51:18; 57:4, 7, 16; 58:6, 9
**discipline** [1] - 50:17
**disciplined** [1] - 48:15
**discuss** [1] - 61:21
**discussed** [2] - 27:12; 63:15
**Discussion** [2] - 7:2; 60:22
**discussion** [2] - 45:18; 61:12
**disputing** [1] - 53:12
**distinct** [1] - 47:2
**DISTRICT** [3] - 1:1, 12
**District** [2] - 3:14
**diverge** [1] - 63:9
**divided** [1] - 46:14
**doctor** [3] - 41:1; 62:20; 63:7
**Doctor** [2] - 7:5; 62:3
**doctor's** [1] - 60:24
**document** [26] - 11:24; 12:3, 23; 26:12; 31:15, 17-18; 32:13; 40:16; 45:21; 48:3; 49:9; 54:9, 11, 15-16; 56:1, 4, 19, 21; 58:17; 59:13; 61:6
**documented** [5] - 13:15; 48:10; 51:6; 53:12
**documents** [4] - 24:25; 34:17; 48:5, 22
**done** [5] - 12:5; 42:16; 57:14; 59:9, 11
**doubt** [1] - 21:1
**down** [11] - 7:21, 25; 16:5, 24; 26:7; 36:20; 37:1; 42:20; 55:2; 61:7; 62:3
**Dr** [16] - 6:13; 7:8, 12; 8:19, 23; 9:1; 10:10; 14:6, 9; 16:1; 24:3; 27:10; 51:11; 60:16; 63:20
**Drive** [1] - 3:7
**during** [5] - 22:23; 28:8; 31:21; 35:5; 55:4

**E**

**e-mail's** [1] - 18:13
**e-mails** [2] - 9:24; 13:2
**East** [1] - 1:20
**EASTERN** [1] - 1:1
**Eastern** [1] - 3:14
**education** [2] - 19:5, 18
**educators** [1] - 42:10
**effectively** [1] - 20:4

efficient [2] - 64:7, 24
either [4] - 14:17, 23; 16:10; 33:20
elementary [10] - 42:3, 14, 17, 20; 53:6; 55:11, 14; 58:25
Elliker [1] - 3:2
ELLIKER [1] - 64:6
email [18] - 7:7, 12; 8:22; 9:22; 10:1, 5; 12:10; 13:1, 22; 14:1, 6, 25; 17:19; 18:16; 19:2
Email [12] - 1:18, 22; 2:5, 9, 13, 16, 20, 23; 3:4, 8, 12, 16
emotional [1] - 53:1
employees [3] - 30:23; 47:11
end [2] - 54:2; 62:7
ended [1] - 62:8
endure [1] - 21:13
engaged [5] - 35:21, 23; 36:2; 58:4, 10
engaging [1] - 36:14
enhances [1] - 54:5
ensure [1] - 21:23
entire [1] - 50:4
entitled [2] - 53:16; 66:2
environment [2] - 19:6, 18
equally [2] - 42:6, 24
Esq [11] - 1:15, 19; 2:2, 6, 10, 14, 17, 21; 3:2, 5, 9
establish [1] - 49:21
established [1] - 57:15
estimate [1] - 64:10
et [1] - 1:6
evaluating [1] - 41:23
evening [2] - 62:13
events [1] - 12:13
evidence [20] - 6:24; 7:15; 17:18; 32:1; 43:4; 46:1; 48:4, 17, 23; 50:13, 18; 54:3; 56:8; 59:15-17, 20; 62:11
exact [1] - 48:14, 24; 50:24
exactly [3] - 20:21; 36:11; 50:5
EXAMINATION [2] - 5:4; 6:11
examination [11] - 12:22; 40:25; 41:1; 44:13; 46:12; 47:2; 55:4; 59:5; 63:4, 12; 64:20
EXAMINATIONS [1] - 5:3
example [6] - 23:1; 30:21; 33:17; 36:24; 53:17; 54:11
exceed [1] - 64:14
except [1] - 49:19
exchange [4] - 7:7, 10, 12; 34:16
exchanges [1] - 34:18
excuse [7] - 29:18; 31:25; 36:23; 46:14; 48:11; 58:22; 65:10
executive [1] - 7:12
exhibit [3] - 14:25; 18:2; 44:3
Exhibit [11] - 5:8; 8:15; 13:24; 15:2, 8; 18:6; 25:1; 31:24; 43:3; 44:21
Exhibits [1] - 50:2
EXHIBITS [1] - 5:6
exhibits [1] - 50:4
exist [1] - 41:15

expert [1] - 63:21
exposing [3] - 48:18; 51:14; 58:18
expressed [1] - 19:22
extent [3] - 49:19; 61:23; 62:10
extortion [2] - 20:5; 23:19
eyewitness [1] - 30:2
eyewitnesses [1] - 29:8

## F

F.C.S.B [3] - 1:6; 2:14; 3:2
F.T [1] - 3:6
FABIO [2] - 5:4; 6:11
fact [4] - 12:18; 17:2; 30:5; 42:2
facts [4] - 40:21; 45:25; 48:13
Fahey [1] - 1:15
failed [1] - 13:7
fair [8] - 9:2; 13:15; 37:3; 38:22; 39:18; 45:9; 57:9
Fairfax [4] - 10:19; 22:18; 49:21; 57:13
false [1] - 43:16
familiar [1] - 29:4
family [15] - 7:10; 8:23; 9:1; 10:23; 11:6, 9; 14:9; 16:24; 17:3, 9, 20; 18:12; 23:9; 26:2
family's [1] - 7:8
far [8] - 16:16; 46:1; 52:23, 25; 53:18; 57:12; 60:3; 64:7
favorable [1] - 16:15
fax [3] - 14:2; 15:8, 18
faxed [2] - 11:21; 14:25
FCPS [2] - 19:6, 19
FCSB [1] - 30:23
February [10] - 7:8; 9:4, 6; 10:2; 15:16, 23-24; 17:21; 49:25; 50:6
feedback [1] - 7:18
FELDMAN [1] - 3:10
fellow [2] - 26:10; 30:23
female [1] - 29:2
figure [1] - 42:20
file [2] - 55:22, 24
files [4] - 52:8; 55:17; 56:18; 58:6
fine [3] - 49:2; 53:23; 55:21
first [27] - 6:13; 9:6; 11:5; 12:8; 15:18; 16:12; 17:2, 5, 12; 19:4; 25:3; 26:14; 31:2, 21; 32:17; 36:21; 41:17; 45:20; 48:3; 50:22; 52:13; 57:3
five [4] - 27:6; 30:10; 43:12; 60:8
FL [3] - 2:4, 8, 12
FLEXNER [4] - 1:20; 2:2, 6, 10
flight [3] - 60:16, 19, 23
flowing [1] - 18:3
focus [2] - 32:21; 41:17
folder [1] - 32:6
folks [1] - 30:6
follow [2] - 6:20; 59:22
follow-up [1] - 6:20
Following [1] - 45:18
following [1] - 23:18

FOR [1] - 1:1
foregoing [1] - 66:2
foremost [1] - 48:3
form [1] - 55:7
formally [1] - 8:9
format [1] - 59:22
former [1] - 47:11
forwarded [1] - 12:10
foundation [3] - 12:20; 45:15; 62:12
four [2] - 12:5; 38:20
F██████ [4] - 10:1, 6; 14:1; 27:8
Friday [1] - 46:13
friend [1] - 7:21
front [3] - 40:16; 57:8; 59:25
fruit [1] - 55:3
Fulton [1] - 3:7

## G

general [2] - 45:13; 49:18
genitalia [3] - 48:18; 51:14; 58:18
gentlemen [2] - 62:4, 17; 65:17
given [3] - 23:2; 35:15; 59:7
goal [1] - 19:6
grade [14] - 42:12; 45:22; 50:18; 55:1; 56:5, 8-9; 60:4
grades [1] - 49:17
granted [2] - 49:15
gross [3] - 48:19; 53:13; 58:4
ground [1] - 63:4
guess [2] - 38:20; 54:21
guesstimate [2] - 63:24; 64:3
guidance [2] - 27:2

## H

half [1] - 64:15
hallway [1] - 6:16
hand [1] - 34:4
hand) [1] - 64:6
handwritten [1] - 28:13
harassing [1] - 31:12
harassment [7] - 9:12; 20:5; 22:16; 23:19; 25:23; 31:19; 55:7
hard [2] - 20:20, 24
health [1] - 49:17
hear [3] - 9:6; 63:14; 64:22
heard [2] - 16:1; 52:2
help [1] - 55:8
herself [1] - 10:6
highlighted [2] - 43:25; 56:3
history [8] - 48:10, 18; 51:6, 12-13, 17-18; 52:24
hmm [2] - 45:24; 56:20
hold [5] - 49:11; 56:12
HOLTZMAN [1] - 1:15
Honor [25] - 6:9, 24; 7:16; 15:5; 18:1, 9; 24:7; 31:25; 33:22, 25; 40:3, 14;

41:5; 43:4, 7, 22; 44:15; 46:9; 51:3, 15; 54:7; 56:2; 60:6; 65:3

**Honor's** [1] - 54:8
**HONORABLE** [1] - 1:11
**hope** [3] - 21:12; 63:15; 64:24
**hopeful** [3] - 19:3, 17
**hour** [2] - 64:11
**hours** [2] - 16:3; 64:15
**H█████** [1] - 27:14
**hundred** [1] - 14:20
**HUNTON** [4] - 2:14, 18, 21; 3:2

**I**

**idea** [1] - 54:18
**identified** [3] - 10:14; 38:23; 39:8
**identifies** [3] - 32:23; 53:15; 61:6
**ignore** [1] - 58:14
**imagine** [1] - 64:15
**immediate** [1] - 13:17
**immediately** [6] - 10:13; 12:3; 13:13; 22:1
**implement** [1] - 20:2
**important** [2] - 60:24; 61:1
**inappropriate** [8] - 25:23; 26:3; 35:21, 24; 36:2; 45:23; 48:16; 56:5
**incident** [3] - 29:25; 33:5; 49:25
**incidents** [1] - 30:8
**included** [1] - 26:15
**indiscernible** [1] - 61:6
**indiscernible}** [1] - 44:17
**individual** [1] - 26:18
**individually** [3] - 27:7, 20; 30:10
**individuals** [2] - 45:7; 52:20
**inform** [2] - 37:14, 18
**informed** [2] - 44:12; 46:11
**initials** [2] - 33:3; 40:21
**instead** [2] - 11:17; 39:6
**instruction** [2] - 49:2; 51:3
**instructions** [1] - 61:21
**intentionally** [1] - 34:3
**interests** [2] - 47:5; 63:9
**introduce** [1] - 56:4
**introduced** [1] - 6:16
**introduces** [1] - 50:3
**investigate** [4] - 48:7; 53:17, 20; 59:6
**investigated** [5] - 25:25; 29:3, 20; 58:24; 59:1
**investigation** [11] - 17:9, 13; 26:15; 27:24; 28:9; 30:9; 37:3, 6, 8; 38:8; 55:5
**involved** [3] - 12:19; 13:19; 30:8
**involvement** [4] - 53:5, 7
**involving** [2] - 49:25; 52:19
**irrelevant** [1] - 58:18
**issue** [10] - 10:15; 23:8; 24:2; 49:1; 50:18, 20; 53:9, 11; 57:6; 62:5
**issues** [6] - 20:4; 21:25; 22:12; 41:24; 42:17; 52:16
**item** [1] - 62:10

**IX** [1] - 52:18

**J**

**J.F** [1] - 3:7
**J.H** [1] - 39:12
**J.O** [23] - 3:9; 34:11, 14; 35:10; 41:17; 43:21; 49:15, 19, 22; 51:9, 17, 22; 52:1, 5, 11; 53:6; 54:12; 56:5, 21; 57:4, 20, 22; 58:9
**J.O.'s** [3] - 49:17; 53:8, 22
**January** [1] - 10:5
**jfahey@holtzmanvogel.com** [1] - 1:18
**job** [1] - 61:15
**Jonathan** [1] - 1:15
**JOSEFIAK** [1] - 1:16
**JR** [1] - 1:11
**Judge** [6] - 8:8; 54:21; 56:14; 57:24; 62:21; 64:13
**JUDGE** [1] - 1:12
**jump** [1] - 10:22
**June** [3] - 25:11, 18; 52:4
**JURY** [1] - 1:11
**jury** [9] - 6:3; 25:1; 26:14; 53:4; 54:18; 56:7; 57:9; 58:12; 59:25
**Jury** [2] - 6:6; 62:2
**jury's** [3] - 32:20; 52:17; 61:7

**K**

**Keefe** [1] - 2:10
**keep** [1] - 18:3
**keeping** [2] - 12:17
**kelliker@huntonak.com** [1] - 3:4
**Kevin** [1] - 3:2
**kid** [1] - 55:14
**kind** [8] - 13:12; 22:18, 24; 35:21; 36:5, 14; 37:15
**Kinney** [3] - 3:5; 46:23; 47:10
**KINNEY** [1] - 3:6
**known** [2] - 13:18; 30:3
**knows** [2] - 52:16; 56:17
**KURTH** [4] - 2:14, 18, 21; 3:2

**L**

**lack** [1] - 12:20
**ladies** [3] - 62:4, 17; 65:17
**lady** [1] - 29:1
**language** [3] - 9:17; 38:1; 45:23
**large** [1] - 22:21
**last** [8] - 12:5; 35:5, 7; 36:10; 39:24; 46:13; 62:5
**LAW** [2] - 3:6; 60:23
**lawyers** [1] - 46:15
**lead** [1] - 46:12
**learned** [1] - 12:9

**learning** [2] - 19:6, 18
**least** [2] - 10:14; 38:22
**led** [1] - 50:24
**length** [1] - 61:13
**less** [1] - 64:4
**letter** [12] - 25:10, 13, 16, 18; 26:5; 29:7, 22, 24; 45:22; 46:7; 52:4; 54:22
**letterhead** [1] - 9:22
**letting** [1] - 37:1
**level** [3] - 12:25; 37:13; 42:17
**light** [1] - 16:15
**likely** [1] - 65:9
**limine** [4] - 49:5, 8, 15; 50:7
**limited** [1] - 46:3
**limiting** [1] - 51:3
**line** [2] - 41:9; 51:9
**lines** [1] - 43:12
**listen** [1] - 11:25
**litigation** [3] - 48:1; 50:1; 65:1
**LLP** [8] - 1:20; 2:2, 6, 10, 14, 18, 21; 3:2
**lockers** [1] - 31:23
**log** [1] - 12:18
**look** [24] - 7:4; 13:24; 17:15; 20:15; 21:20; 22:7; 24:25; 41:23; 45:6; 48:21; 51:12; 55:17, 22, 24; 56:1; 58:6, 8, 13, 15-16; 62:6, 22
**looked** [4] - 46:7; 52:8; 53:21; 57:16
**looking** [3] - 40:15; 42:7; 52:24
**looks** [1] - 65:6
**loop** [1] - 50:13
**Los** [1] - 1:21
**lost** [1] - 33:23

**M**

**M.C** [1] - 3:6
**M.J** [1] - 39:12
**M.P.F** [1] - 3:6
**machine** [1] - 3:17
**mail's** [1] - 18:13
**mails** [2] - 9:24; 13:2
**main** [2] - 22:9
**man** [1] - 28:25
**mandate** [1] - 23:5
**Marcella** [1] - 63:21
**matter** [3] - 6:18; 16:3; 66:2
**meal** [1] - 62:16
**mean** [1] - 46:1
**meaning** [1] - 54:11
**means** [2] - 51:18; 54:8
**meant** [2] - 51:24; 55:7
**measures** [1] - 20:2
**media** [4] - 49:22; 50:1; 61:24
**meet** [7] - 11:6, 9, 11-12, 14; 17:9; 18:12
**meeting** [17] - 10:23; 11:10, 17; 17:12, 19, 23; 18:20; 19:1, 7, 9, 11; 20:19; 21:2; 23:2, 18

**memo** [1] - 16:1
**memorializing** [1] - 17:23
**memory** [3] - 34:8; 36:1, 3
**mentioned** [1] - 35:19
**met** [3] - 11:17; 18:24; 22:24
**Miami** [3] - 2:4, 8, 12
**MICHAEL** [1] - 3:6
**Michael** [1] - 3:5
**middle** [1] - 55:14
**Middle** [1] - 20:3
**might** [1] - 11:8
**mine** [1] - 64:17
**minute** [2] - 16:22; 46:10
**minutes** [1] - 64:4
**misconduct** [6] - 48:10, 20; 51:7; 53:14; 58:4, 11
**misstates** [1] - 24:7
**misunderstood** [1] - 61:3
**mk@kinneyesq.com** [1] - 3:8
**mom** [6] - 10:1; 11:9, 13; 63:23; 65:11
**moment** [1] - 43:8
**Monday** [1] - 11:13
**months** [2] - 12:6, 16
**morning** [2] - 62:1; 63:18
**motion** [7] - 49:4, 8, 10, 14, 16, 24; 50:7
**move** [4] - 7:15; 8:12; 18:3; 62:15
**moved** [1] - 17:18
**MR** [115] - 5:4; 6:4, 9, 12, 23; 7:3, 15, 19, 24; 8:4, 6, 8, 12, 16, 18; 12:24; 15:5, 7; 18:1, 7, 9, 11; 23:13, 15; 24:9, 15; 25:3, 7, 9, 12, 15, 17; 28:6, 11; 29:12, 14; 31:25; 32:4; 33:25; 34:1; 36:20, 22; 39:22; 40:5; 41:5, 7, 10-11; 43:3, 7, 10, 22, 24; 44:1, 4, 15, 17, 19; 45:12, 14, 20, 25; 46:21; 47:4, 8; 48:3; 49:6-8, 10, 13; 50:5, 9, 21; 51:24; 52:13; 53:7, 19; 54:3, 7, 18, 21; 56:2, 13, 21, 24; 57:2, 8, 12, 22; 58:3; 59:16, 19, 24; 60:2, 6, 11, 15, 18; 61:4, 11; 62:13, 21; 63:13, 15, 18, 21, 25; 64:6, 13, 17; 65:3
**MS** [33] - 6:5; 8:14; 12:20; 18:5, 8; 24:7; 33:22; 39:20; 40:3, 14; 46:9, 20, 22; 47:5, 9, 20, 22; 51:15, 23, 25; 55:9, 21; 56:11; 60:16, 20; 61:3; 63:1; 64:3, 9; 65:8, 11, 13, 15
**muddled** [1] - 58:25

**N**

**naked** [8] - 43:16; 45:1, 14; 46:6; 47:17; 50:16; 56:4
**name** [11] - 6:17; 23:10, 20, 24; 25:24; 28:23; 32:24; 36:13; 39:6; 53:15
**name-calling** [4] - 23:10, 20, 24; 25:24
**narrative** [4] - 11:2; 12:17; 30:22; 35:1
**nature** [1] - 62:10
**need** [8] - 20:15; 46:21; 53:4; 58:15;

61:19; 63:4
**neglected** [1] - 13:7
**Neill** [9] - 46:5; 50:15, 21; 51:19, 22; 56:3, 7; 61:8
**Neill's** [1] - 50:20
**neutral** [1] - 38:1
**never** [8] - 16:5; 18:24; 24:11, 20; 40:6; 51:25; 52:5
**news** [1] - 9:20; 61:18
**next** [6] - 21:2; 35:12; 51:13; 53:9; 62:15
**nobody** [1] - 63:8
**none** [1] - 63:25
**normal** [4] - 41:22; 42:2; 59:4, 6
**normally** [3] - 11:1; 29:23; 55:16
**notebook** [1] - 15:4
**notes** [1] - 61:7
**nothing** [2] - 10:18; 50:21
**notice** [10] - 47:14; 48:5, 23; 49:1, 3, 21; 50:10; 51:1, 7, 11, 15, 17-20, 25; 52:7, 20
**notifications** [1] - 9:9
**notified** [1] - 15:24
**November** [2] - 30:24; 50:14
**nowhere** [1] - 21:5
**nude** [1] - 49:25
**number** [3] - 6:25; 17:19; 18:3
**numbers** [1] - 32:9
**NW** [5] - 1:16; 2:15, 18, 22; 3:3

**O**

**object** [1] - 43:24
**objecting** [1] - 52:6
**objection** [10] - 8:13; 12:20; 18:4; 24:7; 39:20; 40:3, 14; 46:17; 50:10
**objections** [2] - 44:8, 10
**obligation** [1] - 37:12
**observers** [1] - 38:22
**obviously** [1] - 62:24
**ODIN** [1] - 3:10
**OF** [5] - 1:1, 11; 3:6; 5:4; 6:11
**offender** [1] - 42:9
**offenders** [7] - 37:25; 38:12; 43:21; 44:21; 48:8, 10; 59:7
**offending** [1] - 42:25
**offered** [2] - 21:7; 45:25
**office** [4] - 12:19; 37:12, 14, 18
**OFFICE** [1] - 3:6
**officer** [3] - 29:15; 30:2
**Official** [2] - 3:13; 66:5
**once** [3] - 12:18; 19:16
**one** [42] - 7:12, 23-24; 8:3, 25; 10:18; 13:6; 15:19; 16:9, 12; 20:8; 24:25; 26:9; 30:23; 33:8, 20, 24; 34:12; 35:8, 12; 36:10, 20; 38:8; 39:11; 40:2; 43:7; 44:12; 46:19; 47:7; 48:13; 49:16; 50:5; 51:3, 13, 23; 53:5, 10; 56:22; 57:13; 61:5; 64:13

**one's** [1] - 53:12
**opinion** [1] - 20:13
**opportunity** [1] - 63:11
**oral** [4] - 36:5, 25; 43:15
**order** [4] - 49:14; 50:6, 25; 55:22
**origin** [1] - 36:15
**original** [2] - 11:12; 44:9
**otherwise** [1] - 57:8
**outline** [1] - 62:22
**outside** [1] - 64:20
**overruled** [1] - 12:22
**own** [3] - 11:20; 12:2; 46:5

**P**

**P.A.H** [1] - 3:6
**p.m** [6] - 1:6; 6:2, 6; 15:19; 62:2; 65:18
**page** [9] - 8:25; 25:3; 32:21, 23; 36:21; 37:22; 43:3
**Page** [1] - 5:3
**pages** [1] - 9:23
**paints** [2] - 16:14
**pants** [1] - 37:1
**paper** [1] - 16:5
**paragraph** [1] - 26:8
**parent** [1] - 13:2
**parents** [4] - 16:2; 22:24; 23:2; 29:9
**Park** [1] - 1:20
**part** [11] - 13:17; 19:23-25; 27:23; 29:5; 44:25; 49:15; 55:15
**particular** [16] - 16:7; 22:17; 36:13; 44:25; 49:9; 51:9; 53:9, 11, 22; 62:10
**parts** [3] - 18:16; 29:10
**pause** [1] - 25:6
**PC** [1] - 3:10
**pending** [1] - 61:23
**Pennsylvania** [4] - 2:15, 18, 22; 3:3
**people** [11] - 27:6, 18; 30:10; 38:20; 39:8; 40:7; 44:2, 13; 52:3; 58:4; 63:2
**percent** [2] - 14:20; 47:5
**period** [2] - 31:21; 49:23
**periods** [1] - 29:12
**permission** [1] - 25:7
**permitting** [1] - 65:8
**perpetrators** [1] - 53:15
**person** [5] - 40:19; 41:2; 44:7, 12; 57:9
**perspective** [1] - 64:16
**pertaining** [1] - 49:19
**P████** [1] - 27:14
**photographs** [2] - 49:25; 52:6
**photos** [1] - 52:1
**physical** [4] - 24:5, 12, 21
**pics** [1] - 51:10
**picture** [2] - 45:23; 56:10
**pictures** [17] - 43:16; 45:1, 14; 46:6; 47:17, 23-24; 48:16; 50:16; 51:18; 52:9, 11; 56:4; 57:23
**PITTLEMAN** [1] - 3:10
**place** [2] - 12:15; 16:17

**Plaintiff** [4] - 1:4, 15; 2:2; 50:3
**plaintiff** [5] - 6:4, 18; 46:5; 49:19; 50:14
**Plaintiff's** [8] - 5:8; 6:24; 7:4; 8:15; 17:16; 18:5; 31:24; 32:1
**plaintiff's** [5] - 7:1; 49:20; 63:23; 65:11
**plan** [1] - 65:3
**PLC** [1] - 3:6
**PLLC** [1] - 1:16
**PM** [1] - 1:7
**point** [18] - 11:7; 16:23; 21:6; 22:23; 24:3; 37:11; 41:21; 44:16, 18; 45:19; 50:25; 51:10, 15; 54:23; 56:13; 57:19; 58:20; 61:5
**pointed** [2] - 30:21, 24
**policies** [2] - 10:20; 37:3
**position** [2] - 37:10; 52:22
**positive** [2] - 19:6, 18
**possible** [1] - 40:22
**posting** [1] - 47:18
**posts** [2] - 49:22; 50:1
**potential** [1] - 22:7
**potentially** [1] - 10:14
**practice** [6] - 37:14, 18, 23-24; 38:3; 55:13
**practices** [4] - 38:25; 45:5; 51:12
**predate** [1] - 49:20
**prefer** [2] - 39:5; 41:1
**preference** [1] - 63:3
**preparing** [1] - 39:24
**pretty** [2] - 58:5; 64:7
**principal** [8] - 15:13; 21:23; 26:21; 40:9, 12; 55:11; 58:23
**principals** [8] - 21:24; 22:15; 26:25; 33:8; 34:13; 35:15; 38:8; 39:11
**print** [1] - 61:24
**problem** [10] - 20:12; 21:20; 22:7; 23:23; 34:7; 42:21; 52:9; 54:21; 56:25
**proceed** [1] - 6:9
**Proceedings** [2] - 3:17; 65:18
**proceedings** [2] - 25:6; 66:2
**PROCEEDINGS** [1] - 1:11
**process** [1] - 42:9
**produced** [2] - 3:17; 12:23
**professional** [3] - 22:14, 18, 21
**projection** [1] - 62:19
**promised** [1] - 61:19
**prompt** [1] - 37:6
**pronounce** [1] - 6:13
**proper** [3] - 53:24; 57:17; 58:21
**properly** [3] - 31:20; 34:17; 35:19
**proponent** [2] - 44:7; 46:19
**prospective** [1] - 46:11
**protect** [4] - 13:7; 22:16; 58:23; 59:3
**provide** [3] - 20:15; 22:14; 37:14
**provided** [3] - 22:18, 24; 62:12
**provides** [1] - 22:22
**Public** [1] - 49:21
**publish** [6] - 6:23; 8:16; 18:9; 25:7;

31:25; 54:3
**pull** [2] - 13:8; 32:10
**punishment** [1] - 48:15
**purpose** [5] - 45:13; 46:3; 56:2; 57:23
**purposes** [2] - 40:25; 41:1
**put** [12] - 12:3; 16:5, 9, 17; 21:15, 24; 30:22; 45:21; 50:10; 51:11
**putting** [1] - 51:5

**Q**

**questioning** [4] - 10:25; 41:21; 55:6; 59:22
**questions** [6] - 6:20; 11:3; 54:1; 61:9; 62:9; 63:16
**quick** [1] - 10:23
**quite** [1] - 32:20

**R**

**R.'s** [1] - 12:9
**Rachel** [9] - 9:7; 14:2; 15:13; 20:3, 11-12; 21:7, 16; 22:12
**raise** [1] - 34:4
**raised** [2] - 57:7; 64:6
**rbates@hunton.com** [1] - 2:16
**RDR** [3] - 3:13; 66:1, 5
**RDR-CRR** [1] - 66:1
**reaches** [1] - 14:13
**read** [19] - 10:10; 18:17; 20:20; 28:10; 30:7; 32:11, 20; 38:7; 49:11; 54:12, 15; 56:3, 23, 25; 59:16, 19; 62:11
**reading** [4] - 30:19; 38:16; 39:10; 59:15
**ready** [1] - 6:3
**real** [1] - 22:12
**realized** [1] - 52:9
**really** [7] - 16:15; 19:14; 55:2; 62:21; 64:22; 65:2
**rearrange** [1] - 60:25
**reason** [4] - 21:1; 47:13; 55:12, 16
**recalled** [1] - 19:11
**receives** [2] - 36:18, 23
**recitation** [2] - 11:22; 17:5
**recognize** [2] - 7:7; 57:3
**recollection** [9] - 19:12, 14; 26:1; 33:11; 38:6; 39:9; 41:9; 62:9
**record** [12] - 7:2; 8:15; 33:13; 45:18; 46:2; 47:14; 50:17; 57:4, 7; 58:9; 60:22; 66:2
**recordkeeping** [1] - 18:2
**records** [7] - 41:23; 49:17, 20, 25; 57:16
**recounting** [1] - 19:7
**redirect** [5] - 53:21, 24; 62:25; 63:3; 64:25
**reexamination** [1] - 63:3
**refer** [1] - 9:17

**reference** [6] - 26:8; 40:18; 41:2; 44:11; 45:14; 63:11
**references** [1] - 28:21
**referring** [2] - 28:12, 15
**refresh** [2] - 26:1; 62:9
**regard** [3] - 52:22; 62:5, 19
**regarding** [3] - 46:17; 50:1; 57:4
**relate** [1] - 49:17
**related** [3] - 24:8; 25:22; 55:6
**relates** [1] - 43:25
**relationship** [1] - 36:14
**relevant** [1] - 49:23
**relying** [1] - 44:13
**remember** [46] - 11:3, 8; 14:18; 19:1; 20:20; 22:17, 23; 23:1, 22; 24:6, 10, 23; 25:18; 27:3, 25; 28:22-25; 30:4, 7, 17, 19, 21, 25; 31:1, 4, 8, 18; 32:17; 34:14, 16; 36:11; 38:9, 12-13, 16; 40:20; 41:24; 42:1, 11, 18; 61:21
**remind** [1] - 63:2
**report** [3] - 13:12; 37:12; 40:9
**reported** [1] - 3:17
**REPORTER** [1] - 63:14
**Reporter** [3] - 3:13; 66:5
**reporting** [2] - 23:17; 26:3
**reports** [4] - 9:12, 15, 17; 60:23
**represent** [1] - 6:17
**representations** [2] - 44:6; 64:19
**republish** [1] - 43:7
**request** [7] - 11:7, 12, 24; 12:2, 23
**requested** [1] - 51:4
**require** [1] - 37:3
**requires** [1] - 37:2
**reset** [1] - 56:17
**resolve** [1] - 62:16
**resource** [3] - 28:22; 29:15
**resources** [1] - 30:2
**respect** [10] - 45:25; 47:9; 49:16, 24; 50:1, 10, 12; 51:20, 25
**respected** [1] - 50:11
**respects** [1] - 63:10
**responding** [1] - 29:23
**responds** [1] - 9:1
**response** [2] - 23:1; 50:7
**responsible** [1] - 44:9
**rest** [1] - 63:10
**Reston** [2] - 3:8, 11
**resumption** [1] - 63:22
**retaliated** [1] - 55:11
**retaliation** [1] - 55:15
**review** [3] - 35:1; 36:10
**reviewed** [5] - 27:24; 28:19; 30:15; 35:6
**REWARI** [26] - 6:5; 8:14; 12:20; 18:5, 8; 24:7; 33:22; 39:20; 40:3, 14; 46:9, 20, 22; 47:5, 9, 20, 22; 51:15, 23; 55:9, 21; 56:11; 60:16, 20; 61:3; 63:1
**Rewari** [18] - 2:17; 6:21; 9:25; 10:25; 11:21; 16:9; 18:16; 21:6; 24:1, 6; 30:22;

44:9; 51:2; 55:3; 58:22; 62:24
**rhythm** [1] - 33:23
**rid** [1] - 62:23
**rkeefe@bsfllp.com** [1] - 2:13
**RMR** [1] - 3:13
**road** [1] - 55:2
**Robert** [2] - 2:10; 3:7
**robust** [2] - 22:19, 21
**role** [4] - 21:22; 22:4, 13
**rolling** [1] - 65:9
**room** [1] - 30:13
**root** [1] - 42:20
**ROSSIE** [1] - 1:11
**ruling** [2] - 50:9, 11
**rushed** [1] - 12:12
**Rustioni** [1] - 63:22
**Rustioni's** [1] - 64:3
**Ryan** [1] - 2:14

**S**

**S.T** [1] - 3:6
**safe** [2] - 19:5, 18
**saw** [2] - 22:12; 41:18
**scheduled** [1] - 60:16
**SCHILLER** [4] - 1:20; 2:2, 6, 10
**school** [60] - 9:10; 10:19; 11:7, 20;
12:25; 13:8; 14:11, 13; 15:1, 8, 24;
17:5; 21:13, 23; 23:5; 24:4, 20; 26:3;
35:1; 36:18, 23; 37:11; 38:6; 42:3, 14,
16, 20; 46:23; 47:9, 15, 23-25; 48:6,
14-15, 21; 49:16, 24; 50:22; 51:1, 7, 11,
17; 52:1, 3, 5; 53:6, 8, 12-13, 15; 55:12,
14; 57:25; 58:10, 25
**School** [9] - 20:3; 37:3, 13; 41:21;
47:10; 49:1; 52:7; 57:25; 58:10
**school's** [2] - 25:22; 48:11
**schools** [4] - 13:2, 6; 42:15; 48:11
**Schools** [1] - 49:21
**scope** [2] - 64:14, 20
**Scott** [6] - 2:21; 3:13; 7:21; 66:1, 4
**scottwallace.edva@gmail.com** [1] -
3:16
**screen** [1] - 32:11
**scroll** [3] - 25:12, 15; 26:7
**SE** [3] - 2:3, 7, 11
**seated** [2] - 6:7; 62:4
**second** [8] - 13:1; 14:24; 15:19; 26:19;
32:21, 23; 36:21; 37:22
**section** [1] - 32:8
**see** [33] - 8:1, 19, 22; 9:24; 10:3, 8;
11:10; 13:17, 24; 15:2; 17:20; 20:6;
25:12, 15; 31:2, 4; 32:25; 38:14; 39:5,
14, 16; 40:15; 41:12; 42:3; 43:18;
52:24; 57:6; 58:13; 59:5; 62:1, 18;
63:18
**seeing** [7] - 26:12; 31:15; 32:13; 34:17;
38:9, 12
**seem** [1] - 52:15

**semester** [1] - 60:7
**send** [3] - 46:6; 47:17; 48:16
**sending** [1] - 51:9
**sense** [1] - 52:19
**sent** [4] - 12:4; 43:16; 47:16; 52:4
**separate** [1] - 47:2
**serious** [2] - 10:15; 58:5
**seriously** [1] - 22:2
**services** [1] - 21:24
**SESSION** [2] - 1:7; 6:1
**set** [1] - 8:19
**sex** [4] - 36:5, 25; 43:15
**sexual** [14] - 9:12; 20:5; 23:19; 25:23;
31:19; 35:21, 24; 36:2; 48:10, 19; 51:7;
53:13; 58:4, 11
**shared** [1] - 25:1
**short** [1] - 31:17
**shorthand** [1] - 3:17
**show** [11] - 25:15; 31:17; 39:17; 45:22;
50:15; 56:4, 18; 59:13
**showed** [3] - 11:21; 12:2; 40:2
**showing** [3] - 31:17; 47:15; 52:10
**shows** [1] - 61:5
**side** [3] - 16:25; 17:5; 46:16
**Sidebar** [1] - 61:12
**sidebar** [1] - 45:18
**simple** [2] - 54:5, 14
**simultaneous** [1] - 8:1
**single** [2] - 11:22; 12:3
**single-space** [2] - 11:22; 12:3
**sit** [3] - 16:23; 30:17; 34:8
**situation** [3] - 9:7, 10; 57:22
**slapped** [3] - 26:10; 29:4, 21
**slut** [1] - 37:2
**social** [3] - 49:22; 50:1; 61:23
**someone** [3] - 14:13; 22:13; 58:3
**sometime** [1] - 14:23
**sometimes** [1] - 61:16
**Sona** [1] - 2:17
**soon** [1] - 21:25
**sorry** [9] - 22:20; 23:13; 25:5; 28:14;
34:21; 61:3
**sort** [5] - 61:15, 19; 62:18; 64:10
**sorts** [1] - 62:25
**sounds** [1] - 19:2
**space** [2] - 11:22; 12:3
**speaking** [1] - 47:12
**special** [1] - 63:6
**specific** [6] - 25:21; 41:2; 45:3; 52:22;
58:14; 62:9
**specifically** [5] - 22:23; 24:1, 3; 46:13;
50:6
**speculation** [1] - 12:21
**spending** [1] - 18:23
**Square** [1] - 3:15
**srewari@huntonak.com** [1] - 2:20
**SRO** [8] - 26:8; 28:21; 29:2, 8, 19
**stability** [1] - 53:1
**stand** [3] - 47:1; 62:20; 64:23

**standard** [1] - 52:17
**start** [1] - 60:4
**started** [1] - 13:13
**starting** [2] - 55:2; 61:25
**starts** [2] - 7:7; 43:11
**state** [1] - 36:4
**statement** [29] - 30:24; 31:2, 10; 32:17;
33:2, 4, 6, 19; 34:9, 11-13; 35:12,
14-15, 23; 36:1, 18, 24; 39:3; 41:18;
43:20; 46:4; 47:15; 50:4; 52:10
**statements** [20] - 27:25; 28:13, 16;
33:14; 35:2, 20; 37:24; 38:3, 9, 16;
39:1, 7, 10; 40:6, 8, 11-12; 41:15
**States** [1] - 3:14
**STATES** [2] - 1:1, 12
**stay** [1] - 61:23
**step** [2] - 13:1; 62:3
**still** [4] - 7:25; 15:3; 45:16; 54:22
**stop** [3] - 34:4; 59:23; 61:4
**stopped** [2] - 47:24; 52:3
**story** [2] - 16:25; 17:5
**strange** [1] - 64:23
**Street** [4] - 1:16; 2:3, 7, 11
**structural** [1] - 22:12
**structure** [1] - 16:17
**structures** [1] - 21:24
**struggles** [1] - 55:15
**Student** [1] - 28:14
**student** [26] - 16:18; 21:24; 26:10;
28:13, 16, 22; 29:4, 15-16, 21; 30:2, 15;
33:14, 19; 34:13; 35:14, 24; 42:3, 14,
24-25; 47:16; 56:18; 58:24
**student's** [3] - 36:18; 41:23; 52:10
**students** [12] - 22:16; 28:8; 30:7;
31:12; 36:25; 38:17; 48:20, 22; 51:6,
13; 53:17; 55:17
**students'** [1] - 27:24
**stuff** [7] - 12:5, 15-16; 13:14; 44:22;
62:23
**subject** [1] - 49:4
**subjected** [5] - 23:9, 18; 24:4, 11, 20
**sued** [1] - 45:20
**suffice** [1] - 61:14
**suggest** [1] - 56:7
**suggesting** [1] - 41:8
**Suite** [5] - 1:17, 21; 2:3, 7, 11; 3:7, 11
**superintendent** [4] - 13:2, 18-19, 21
**support** [2] - 16:17; 22:15
**supposed** [1] - 56:15
**surplusage** [1] - 53:3
**suspended** [2] - 48:14; 58:19
**sustains** [1] - 65:1
**S▮▮▮** [1] - 27:16
**system** [11] - 22:14, 16-18, 24; 46:23;
47:9, 15, 25; 48:6

**T**

**T.B** [1] - 3:6

T[1] - 15:8
T[1] - 27:12
**teachers** [2] - 22:15; 27:4
**team** [1] - 64:9
**terms** [2] - 21:22; 22:15
T[5] - 27:16; 41:13; 63:22; 64:10, 12
**test** [2] - 7:23; 8:3
**testified** [4] - 23:7; 25:11; 32:18; 58:23
**testify** [3] - 21:8; 57:10, 13
**testifying** [7] - 24:10, 19, 23; 25:19; 41:20, 24; 46:18
**testimony** [6] - 18:24; 19:13; 21:5; 31:8; 39:7; 52:24
**testing** [2] - 7:24; 8:4
**therefore** [1] - 10:22
**they've** [2] - 16:5; 46:4
**thorough** [1] - 29:23
**thoroughly** [1] - 25:25
**threat** [1] - 47:18
**threatened** [2] - 50:15; 56:5
**threatening** [3] - 45:22; 48:15; 56:3
**threats** [3] - 20:5; 23:19; 46:6
**three** [17] - 7:23; 8:3; 12:6; 26:25; 32:23; 35:5; 43:20; 44:21; 45:7; 48:10; 49:22; 51:5; 53:15; 58:4; 65:7
**throughout** [1] - 65:1
**Thursday** [3] - 46:14; 60:23
**tie** [1] - 45:15
**tied** [2] - 33:12; 54:22
**Title** [1] - 52:18
**title** [1] - 14:8
**today** [8] - 21:5; 30:18; 34:8, 25; 35:3; 41:20; 50:10
**together** [5] - 12:3; 15:25; 16:10; 30:22; 44:2
**tomorrow** [6] - 60:17, 24; 61:2, 25; 62:18; 65:7
**tonight** [1] - 62:22
**took** [9] - 12:8; 22:2; 33:9; 40:12; 47:22; 52:1; 56:10
**top** [2] - 25:12, 15
**topic** [1] - 62:15
**TORCHINSKY** [1] - 1:15
**totally** [1] - 42:2
**touching** [5] - 24:5, 12, 21; 25:23; 26:3
**track** [1] - 62:19
**traditional** [1] - 52:19
**training** [6] - 20:3, 16; 21:7; 22:22; 23:3, 6
**TRANSCRIPT** [1] - 1:11
**transcript** [4] - 3:17; 62:5, 7; 66:2
**transcription** [1] - 3:18
**trial** [1] - 28:12
**TRIAL** [1] - 1:11
**true** [3] - 10:19; 43:17; 53:14
**truth** [1] - 40:6
**try** [8] - 29:13; 33:12; 34:6; 47:4; 58:21; 62:21, 23

**trying** [13] - 28:7; 34:3; 37:25; 40:20, 24; 42:7; 46:4; 50:13; 51:21; 55:19; 61:14
**turn** [1] - 63:25
**twice** [1] - 59:14
**two** [18] - 7:23; 8:3; 9:24; 34:18, 23-24; 35:5, 9; 46:9; 48:9, 20; 49:18; 51:6; 64:15; 65:7
**types** [2] - 22:22; 41:24

## U

**ultimately** [1] - 62:7
**um-hmm** [2] - 45:24; 56:20
**unbiased** [1] - 37:8
**under** [3] - 17:15; 18:2
**understood** [3] - 22:4; 23:8; 46:2
**unfair** [1] - 13:17
**United** [1] - 3:14
**UNITED** [2] - 1:1, 12
**unless** [3] - 62:11; 64:22; 65:1
**unnecessarily** [1] - 21:14
**unrelated** [1] - 56:6
**unusual** [1] - 65:2
**unwanted** [2] - 24:5, 11, 21
**up** [27] - 6:20; 9:23; 15:3; 22:1; 23:13; 26:18; 31:24; 32:10; 33:12; 36:21; 41:9; 43:5, 12; 44:20; 46:14, 21; 50:23; 52:7, 15; 53:2, 21; 55:3, 17; 61:15; 62:7
**urgent** [1] - 12:4
**urgently** [2] - 11:6, 21

## V

**VA** [3] - 3:8, 11, 15
**vary** [1] - 59:22
**verify** [1] - 45:8
**version** [4] - 11:22; 12:13; 19:9
**viability** [1] - 45:8
**victim** [2] - 21:13; 42:11
**view** [2] - 52:18; 54:23
**violating** [1] - 46:11
**violative** [1] - 10:19
**VIRGINIA** [1] - 1:1
**Virginia** [1] - 3:14
**VOGEL** [1] - 1:15
**VOLUME** [1] - 1:7
**vulgar** [4] - 9:17; 23:10, 20, 23

## W

**wait** [1] - 46:10
**Wallace** [4] - 3:13; 66:1, 4
**wants** [4] - 51:2, 8; 56:4; 59:2
**warned** [1] - 50:3
**Washington** [5] - 1:17; 2:15, 19, 22; 3:3

**Weaver** [3] - 10:6; 26:23; 27:10
**weeds** [1] - 54:24
**week** [3] - 35:9; 39:25; 48:24
**weeks** [1] - 35:9
**weird** [1] - 7:18
**white** [1] - 15:4
**whole** [1] - 52:15
**whore** [1] - 37:2
**Wiehle** [1] - 3:10
**withdrawal** [1] - 49:20
**WITNESS** [9] - 12:23; 24:14; 25:14; 32:3; 40:17, 20, 24; 41:4; 43:23
**witness** [15] - 44:7; 46:12, 18-19; 47:1, 3; 48:5; 52:8; 53:16; 55:4; 56:16; 57:9, 12; 64:21
**witnesses** [8] - 38:22; 39:8; 46:15, 23; 62:19; 64:13; 65:5
**woman** [1] - 28:25
**Wonderland** [1] - 58:20
**word** [2] - 28:16
**words** [2] - 28:17; 33:12
**works** [1] - 8:1
**world** [1] - 13:9
**Wow** [1] - 58:5
**write** [2] - 25:21; 61:7
**writing** [1] - 13:13
**written** [2] - 16:1; 21:2
**wrote** [5] - 25:10; 28:8; 30:6; 36:19; 50:14

## Y

**years** [2] - 20:24; 60:8
**yourself** [2] - 7:10

## Z

**zero** [1] - 9:9
**Zoll** [1] - 2:2
**Zuluaga** [7] - 6:13; 8:19; 16:1; 24:3; 51:11; 60:16; 63:20
**ZULUAGA** [2] - 5:4; 6:11